**KILPATRICK TOWNSEND & STOCKTON LLP**
Erick Durlach, Arizona Bar No. 024253
*edurlach@ktslaw.com*
Dennis L. Wilson, California Bar No. 155407
(*pro hac vice* motion forthcoming)
*dwilson@ktslaw.com*
Sara K. Stadler, New York Bar No. 2620276
(*pro hac vice* motion forthcoming)
*sstadler@ktslaw.com*
6909 E. Greenway Parkway, Suite 100
Scottsdale, Arizona 85254
Tel: (602) 726-7319
Fax: (623) 321-1009

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| EARLY WARNING SERVICES, LLC, | Case No. |
| Plaintiff, | **COMPLAINT** |
| v. | |
| WARREN VURL JOHNSON, BRANDON O'LOUGHLIN, AND P.A.Z.E., LLC, | |
| Defendants. | |

    This case is about an intellectual property attorney who was terminated for workplace misconduct, and who sought revenge by enlisting his high school classmate to act as a front man to help him extract money from his former client and employer using stolen company documents, privileged information, and a lawfare campaign involving baseless trademark claims.

1

**SUMMARY OF THE ACTION**

1.     Plaintiff Early Warning Services, LLC ("EWS") is an Arizona-based financial services technology leader empowering and protecting consumers, small businesses, and the U.S. financial system with cutting-edge fraud and payment solutions for more than three decades.

2.     EWS is most well-known as the operator of Zelle®, a digital payment network that helps consumers utilize their financial institution to send and receive money within minutes.

3.     EWS also is the operator of Paze℠, a reimagined digital wallet for ecommerce solution that banks and credit unions can offer to consumers and merchants.

4.     On or around September 8, 2014, Defendant Warren Vurl Johnson ("Johnson") started his position with EWS as Intellectual Property Counsel.

5.     At the time of his termination on January 19, 2023, Johnson was employed as EWS's Senior Intellectual Property Counsel with primary responsibility for acquiring, protecting, and enforcing EWS's patents and trademarks—including the PAZE and ⓩ marks at issue here.

6.     On August 8, 2022, EWS issued Johnson a written warning for workplace misconduct following multiple instances of unprofessional interactions with coworkers.

7.     Johnson responded to this written warning by protesting it, claiming he was not responsible for how his coworkers perceived his conduct, and declared the end of his employment at EWS was "imminent."

8.     Unbeknownst to EWS, Johnson also began sending EWS's documents from his work email account to his personal email account. Those documents comprised a large volume of sensitive materials and information of a highly confidential and sensitive nature.

9.     By the end of December 2022, Johnson's unprofessional behavior had escalated to the point that other EWS employees refused to continue working with Johnson. On January 19, 2023, EWS terminated Johnson's employment.

10.     Approximately six months later, Johnson filed a lawsuit for wrongful termination and other claims under Arizona law. To avoid the costs of litigation, the parties agreed to settle Johnson's claims, memorializing this settlement in a formal agreement (the "Settlement Agreement"), under which Johnson released his claims against EWS, agreed to maintain the confidentiality of EWS's "privileged, trade secret, proprietary or confidential information," and agreed not to disparage EWS "in any public forum." EWS considered the matter resolved.

11.     Despite this, Johnson and his high school classmate, Defendant Brandon O'Loughlin ("O'Loughlin"), had already concocted a scheme to extract money from EWS using EWS's privileged and confidential information by engaging in the following acts, among others:

    a.     Prior to Johnson's termination, he was responsible for providing legal advice to EWS on intellectual property issues in connection with EWS's development and launch of its Paze$^{SM}$ service. Given Johnson's role as EWS's Senior Intellectual Property Counsel, he was entrusted with, and privy to, confidential information regarding EWS's private and internal business plans and discussions regarding Paze$^{SM}$, including the company's interest in procuring particular domain names incorporating EWS's PAZE mark. On information and belief, Johnson secretly provided this information to O'Loughlin, resulting in O'Loughlin registering those domain names before EWS could do so.

    b.     O'Loughlin formed Defendant P.A.Z.E., LLC ("P.A.Z.E."), a sham gripe website at a domain name containing EWS's PAZE mark, with content directed at disparaging EWS and its business including the Zelle® and Paze$^{SM}$ services.

3

c. On information and belief, Johnson assisted in preparing trademark applications in P.A.Z.E.'s name, under O'Loughlin's signature, to register the PAZE and **PAŽE** marks, claiming use of those marks in connection with P.A.Z.E.'s nonexistent "services."

d. P.A.Z.E. sent EWS a series of communications threatening to engage in lawfare against EWS, including in the Trademark Trial and Appeal Board ("TTAB") of the United States Patent and Trademark Office ("USPTO"), and threatening EWS's business and reputation if EWS did not agree to purchase P.A.Z.E. and its various "assets."

e. Johnson further assisted in preparing legal documents in P.A.Z.E.'s name, under O'Loughlin's signature, for filing in the TTAB, attacking as invalid EWS's applications to register its PAZE and **Ž** marks that Johnson had earlier signed as EWS's former attorney.

12. As detailed below, Defendants' conduct violates several laws, and Johnson's conduct in particular constitutes a shocking breach of his fiduciary and ethical duties to EWS. Using information obtained as EWS's legal counsel over the course of eight years, and using his high school classmate O'Loughlin as a front man, Johnson has engaged in a campaign to extract money from his former client and employer by threatening its intellectual property rights and business reputation. EWS is entitled to injunctive and monetary relief.

## PARTIES

13. Plaintiff Early Warning Services, LLC is a Delaware limited liability company with its principal place of business at 5801 N. Pima Road, Scottsdale, Arizona 85250.

14. Defendant Warren Vurl Johnson is an Arizona resident with an address of 122 S. Hardy Drive, Apartment 59, Tempe, Arizona 85281. Johnson is an active member of the State Bar of Arizona and a registered patent attorney with the USPTO.

4

15.     Defendant Brandon O'Loughlin is a Nevada resident with an address of 1411 N. 23rd Street, Apartment 103, Las Vegas, Nevada 89101.

16.     Defendant P.A.Z.E., LLC is an Arizona limited liability company with an address of 550 W. Baseline Road, Suite 102-159, Mesa, Arizona 85210. O'Loughlin formed P.A.Z.E. on January 26, 2023, and is its Member and Manager.

### JURISDICTION AND VENUE

17.     The Court has subject matter jurisdiction over EWS's federal claims under the Lanham Act, 15 U.S.C. § 1121; the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836(c); the Federal Declaratory Judgment Act, 28 U.S.C. § 2201(a), and 28 U.S.C. §§ 1331 and 1338(a). The Court has subject matter jurisdiction over EWS's state law claims pursuant to 28 U.S.C. §§ 1338(b) and 1367.

18.     Because this action involves a registered trademark, the Court also has jurisdiction to entertain EWS's challenge to P.A.Z.E.'s trademark applications under 15 U.S.C. § 1119. *See BBK Tobacco & Foods LLP v. Central Coast Agriculture, Inc.*, 97 F.4th 668, 670 (9th Cir. 2024).

19.     The Court has personal jurisdiction over Johnson because he resides and is domiciled in the State of Arizona.

20.     The Court has general and specific personal jurisdiction over O'Loughlin and P.A.Z.E. because (a) O'Loughlin formed P.A.Z.E. in the State of Arizona, (b) P.A.Z.E. maintains its principal place of business in the State of Arizona, (c) P.A.Z.E. transacts and conducts business within the State of Arizona to such an extent that P.A.Z.E. is at home in the State, (d) as P.A.Z.E.'s Member and Manager, O'Loughlin directs P.A.Z.E.'s business operations within the State of Arizona, and (e) both O'Loughlin and P.A.Z.E. have purposefully availed themselves of Arizona law by targeting the State of Arizona and its residents through conduct giving rise to, and related to, EWS's claims.

21.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(2) and (c)(2), as well as 28 U.S.C. § 1400(a), because each of Defendants resides or may be

found in this District, and because a substantial part of the events giving rise to EWS's claims occurred in this District.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

**A.    EWS and Its Zelle® and Paze℠ Services**

22.    EWS is a financial services technology company that has empowered and protected consumers, small businesses, and the U.S. financial system with cutting-edge fraud and payment solutions for more than three decades.

23.    EWS's Zelle® service and Zelle Network® help consumers utilize their financial institution to send and receive money, generally without charge, within minutes.

24.    EWS's Paze℠ service enables shoppers to checkout online without having to share their card numbers with merchants.

25.    EWS has made substantial investments in its Zelle Network®, its ZELLE and **Ƶ** trademarks, and the goods and services identified by and offered under those marks. Because of EWS's considerable efforts to promote its Zelle Network® and Zelle® services, those services are widely used, and EWS's ZELLE marks have achieved a high level of recognition among owners of deposit accounts. In short, EWS's ZELLE marks are enormously valuable symbols of EWS's goodwill.

26.    EWS also has made substantial investments in its Paze℠ digital wallet service and its PAZE and **paze** trademarks. EWS views its Paze℠ service and PAZE and **paze** marks as extremely important assets of the company.

**B.    Johnson, O'Loughlin, and P.A.Z.E.**

27.    Johnson and O'Loughlin attended Mesa High School together and both graduated in 1999.

28.    Johnson joined EWS as its Intellectual Property Counsel on or about September 8, 2014, and his employment with EWS was terminated on January 19, 2023.

29.    Three days later, on January 22, 2023, O'Loughlin began registering domain names containing EWS's PAZE mark.

30.    One or more of the Defendants then launched a sham gripe website known as P.A.Z.E., first at www.pazewallet.com, then at www.paze.website. According to that website, P.A.Z.E. stands for "People Against Zelle Erryday [sic]." P.A.Z.E. claims to be "trying to bring to light the dark side of the banking industry," but its website and social media accounts focus solely on EWS, its Zelle® service, and its Paze<sup>SM</sup> service.

31.    On January 26, 2023, one week after termination of Johnson's employment with EWS, O'Loughlin formed P.A.Z.E. as an Arizona limited liability company.

## C.    EWS's Termination of Johnson's Employment

32.    Following a series of unprofessional interactions with coworkers dating to 2020, which coaching did not resolve, EWS issued a written warning to Johnson for workplace misconduct on August 8, 2022.

33.    Johnson protested EWS's written warning, claiming he was not responsible for how his coworkers perceived his conduct. On September 2, 2022, Johnson informed his leader of his intention to resign from EWS by the end of 2022.

34.    In the meantime, however, Johnson continued to perform his duties. On November 9, 2022, for example, Johnson signed and instructed the filing of several trademark applications on EWS's behalf, including EWS's Application Serial No. 97669754 to register the PAZE mark for various financial transaction services in International Class 36.

35.    On November 18, 2022, EWS's General Counsel, Tracy Cheney, presented Johnson with a transition plan setting a resignation date of January 1, 2023, and awarded Johnson a discretionary performance bonus of $50,000 relating to his earlier work on a patent matter. Johnson agreed to this transition plan on the same day, then backtracked and demanded more money.

36.    On November 28, 2022, Johnson requested an open-ended exit date. In or about December 2022, however, EWS learned that Johnson continued to engage in unprofessional conduct.

37.    On January 12, 2023, Johnson corresponded with EWS's marketing department about acquiring domain names containing EWS's PAZE mark. Johnson also instructed EWS's domain name vendor, Corporation Service Company ("CSC"), to run an availability report for domain names containing PAZE.

38.    On January 17, 2023, CSC provided Johnson with a report showing that numerous domain names were available for registration, including www.pazewallet.com and www.pazenetwork.com.

39.    Also on January 17, 2023, Ms. Cheney informed Johnson that his exit date would be February 10, 2023, "at the latest," in light of additional reports about Johnson's unprofessional conduct. Johnson objected to setting a firm exit date and informed Ms. Cheney that he would not resign until he had secured another job.

40.    On January 19, 2023, EWS discovered that Johnson had emailed various EWS confidential and proprietary emails and documents from his EWS email account to his personal email account at Gmail.com. Ms. Cheney terminated Johnson's employment and instructed him to return company equipment and delete EWS's confidential and proprietary materials in his possession.

**D.    EWS's Confidential and Proprietary Trade Secret Information**

41.    In connection with the services that EWS provides to financial institutions, consumers, and small businesses, EWS develops and maintains sensitive proprietary and confidential information.

42.    EWS's confidential and proprietary information constitute valuable trade secrets.

43.    EWS's trade secrets include, without limitation, information related to its proprietary patent and trademark strategies. EWS's ability to create innovative

products and develop coordinated, distinctive branding is critical to growing its business in the highly competitive financial services space.

44.    EWS therefore employs certain individuals to fill key roles focused on developing its patent and trademark portfolios and has invested a substantial amount of money, time, and energy in developing and executing its patent and brand strategies.

45.    In his role as Intellectual Property Counsel and Senior Intellectual Property Counsel, Johnson had knowledge of, and played an important role in developing and executing, EWS's patent and brand strategies. Among other things, Johnson had highly sensitive knowledge of EWS's future plans, including future patent, trademark, and domain name filings.

46.    EWS takes substantial precautions to safeguard its confidential and proprietary trade secret information.

47.    Information about EWS's patent and trademark strategies is maintained in a secured database that is accessible only by certain individuals, from certain electronic devices. Access to the secure databases is limited to only those individuals with a legitimate need for the information to effectively carry out their specific job duties.

48.    EWS's Employee Handbook requires employees to maintain the confidentiality of proprietary information both during employment and after departure from EWS.

49.    All EWS employees also must execute an Intellectual Property and Confidentiality Agreement governing nondisclosure of trade secrets and confidential information and, pursuant to EWS's User Responsibility Agreement, must acknowledge their responsibilities relating to security.

50.    EWS's Intellectual Property and Confidentiality Agreement, which Johnson executed, prohibits employees and former employees alike from disclosing, using, or disseminating any of EWS's confidential information, intellectual property,

or trade secrets, and must turn those materials over to EWS upon the termination of their employment. Employees acknowledge that breach of these obligations may cause irreparable injury, and that EWS may seek and obtain injunctive relief in addition to any available legal remedies.

51.     Further, under EWS's User Responsibility Agreement, which Johnson acknowledged and accepted, employees must not photograph any restricted or nonpublic data with any device or remove restricted data from the office on any form of media without management approval and an issue management ticket. The User Responsibility Agreement additionally prohibits use of personal equipment for official business on EWS's computing assets or networks without management authorization, security evaluation, and an issue management ticket.

52.     Johnson did not have EWS management's approval or authorization to photograph any restricted or nonpublic EWS data.

53.     EWS also requires key stakeholders with access to complete a trade secrets course annually. Johnson was subject to this requirement.

**E.     Johnson's Theft of EWS's Trade Secrets**

54.     On January 19, 2023, Johnson represented to Ms. Cheney that the only confidential document he had emailed to his personal email account was EWS's Employee Handbook, which he later claimed to have deleted.

55.     This was false. In fact, an investigation by EWS's Security and IT departments revealed that Johnson had sent large numbers of EWS's documents from his work email account to his personal email account in at least November 2022 and continuing until January 18, 2023. Those documents included EWS's internal legal documents related to its highly confidential patent and trademark matters and strategies, including indices of concept briefs and invention disclosures relating to EWS's patent portfolio, indices of EWS's trademark matters, documents relating to EWS's domain names, and a list of every matter on which Johnson was then working.

56.    The documents that Johnson sent to his personal email account were and are highly confidential and sensitive. Most are privileged. Johnson never sought and never obtained authorization to send these confidential and privileged documents to his personal email account or to remove them from EWS's system.

## F.    O'Loughlin's Acts of Cybersquatting

57.    On January 22, 2023, three days after Johnson's termination, O'Loughlin began registering domain names containing EWS's PAZE mark, including the www.pazewallet.com and www.pazenetwork.com domain names disclosed in CSC's first availability report.

58.    On information and belief, O'Loughlin ultimately registered at least 105 domain names containing EWS's marks or relating to EWS's business (collectively, the "Accused Domain Names").

59.    On January 26, 2023, O'Loughlin formed P.A.Z.E. as an Arizona limited liability company.

60.    On January 27, 2023, EWS instructed CSC to register several of the domain names shown as available in CSC's report. CSC informed EWS that several of those domains—including www.pazewallet.com and www.pazenetwork.com— were no longer available because someone else had registered them along with www.paze.website and www.paze.guru.

61.    EWS instructed CSC to acquire the domain name www.pazewallet.com from the registrant anonymously. On January 30, 2023, CSC advised EWS that the registrant of www.pazewallet.com had launched a website at that domain name under the name "P.A.Z.E.," or "People Against Zelle Erryday [sic]."

62.    CSC advised EWS that the registrant of the www.pazewallet.com domain name likely owned the following domain names as well:

paze.associates

paze.bargains

paze.business

11

| | |
|---|---|
| 1 | paze.capital |
| 2 | paze.cash |
| 3 | paze.cheap |
| 4 | paze.company |
| 5 | paze.consulting |
| 6 | paze.credit |
| 7 | paze.design |
| 8 | paze.dev |
| 9 | paze.digital |
| 10 | paze.directory |
| 11 | paze.discount |
| 12 | paze.email |
| 13 | paze.exchange |
| 14 | paze.finance |
| 15 | paze.financial |
| 16 | paze.fund |
| 17 | paze.guru |
| 18 | paze.mobi |
| 19 | paze.money |
| 20 | paze.services |
| 21 | paze.systems |
| 22 | paze.technology |
| 23 | paze.vip |
| 24 | paze.website |
| 25 | paze.work |
| 26 | paze.works |
| 27 | paze.world |
| 28 | pazealldayz.com |

| | |
|---|---|
| 1 | pazeblog.com |
| 2 | pazebofa.com |
| 3 | pazecart.com |
| 4 | pazechase.com |
| 5 | pazecheckout.com |
| 6 | pazeday.com |
| 7 | pazedaze.com |
| 8 | pazefaq.com |
| 9 | pazefraud.com |
| 10 | pazegroup.com |
| 11 | pazegroup.net |
| 12 | pazehelp.com |
| 13 | pazehgi.com |
| 14 | pazeinstore.com |
| 15 | pazeme.com |
| 16 | pazemerchant.com |
| 17 | pazenetwork.cash |
| 18 | pazenetwork.claims |
| 19 | pazenetwork.com |
| 20 | pazenetwork.credit |
| 21 | pazenetwork.discount |
| 22 | pazenetwork.finance |
| 23 | pazenetwork.fund |
| 24 | pazenetwork.net |
| 25 | pazenews.com |
| 26 | pazepayment.com |
| 27 | pazepayz.com |
| 28 | pazerules.com |

1    pazesupport.com

2    pazevisa.com

3    pazezelle.com

4    63.    In February 2023, EWS negotiated with O'Loughlin a potential purchase

5    of some or all of the Accused Domain Names.

6    64.    O'Loughlin agreed to transfer 55 of the Accused Domain Names to EWS

7    in return for $20,000, but refused to transfer others.

8    65.    P.A.Z.E. continues to maintain its purported gripe website at the domain

9    name www.paze.website. On that website, P.A.Z.E. claims to be "trying to bring to

10    light the dark side of the banking industry," but in fact, P.A.Z.E.'s website and social

11    media accounts focus solely on EWS, its Zelle® service, and its Paze$^{SM}$ service.

12    **G.    Defendants' Fraudulent Trademark Applications and Abusive Litigation**

13    66.    On November 2, 2023, P.A.Z.E. filed Application Serial No. 98252022

14    to register the **PAŻE** mark ("P.A.Z.E.'s **PAŻE** Application") for various nonexistent

15    "services" relating to the provision of "financial information via a website" in

16    International Class 36. This application claims January 23, 2023, as P.A.Z.E.'s date

17    of first use anywhere and in United States commerce.

18    67.    P.A.Z.E.'s **PAŻE** Application bears O'Loughlin's signature.

19    68.    On November 4, 2023, P.A.Z.E. filed Application Serial No. 98255290

20    to register the PAZE mark ("P.A.Z.E.'s PAZE Application") for various nonexistent

21    "services" relating to the provision of "financial information," "online instruction,"

22    and a website in International Classes 36, 41, and 42. This application claims January

23    23, 2023, as P.A.Z.E.'s date of first use anywhere and in United States commerce.

24    69.    P.A.Z.E.'s PAZE Application bears O'Loughlin's signature.

25    70.    Citing its applications to register **PAŻE** and PAZE as establishing its

26    entitlement to bring a statutory cause of action (formerly known as "standing") in

27    the TTAB, P.A.Z.E. initiated two proceedings against EWS (the "TTAB Proceedings"):

28

14

a.    On May 3, 2024, P.A.Z.E. petitioned to cancel EWS's Registration No. 5476070 of the ⚡ mark ("EWS's ⚡ Registration"), claiming EWS had never used that mark in commerce and engaged in fraud on the USPTO when filing the underlying application; and

b.    On May 16, 2024, P.A.Z.E. opposed EWS's Application Serial No. 97669754 to register the PAZE mark ("EWS's PAZE Application"), claiming EWS's PAZE mark was merely descriptive and EWS (i) had no *bona fide* intent to use that mark when it filed the application, (ii) had not used that mark in commerce when it filed its Amendment to Allege Use, and (iii) engaged in fraud on the USPTO in filing and prosecuting the application.

71.    Johnson had signed and instructed the filing of both the application underlying EWS's ⚡ Registration and EWS's PAZE Application during Johnson's former employment as EWS's intellectual property counsel.

72.    P.A.Z.E.'s filings in both TTAB Proceedings reflect knowledge of EWS's privileged and confidential information.

73.    P.A.Z.E. has repeatedly attached to its public filings in the TTAB Proceedings a document (the "Privileged Chat") depicting a Microsoft Teams chat between Johnson and Ms. Cheney, EWS's General Counsel, in which Johnson's identity is not shown. On information and belief, Johnson made a screen capture of the Privileged Chat in November 2022 while employed by EWS.

74.    Johnson and Ms. Cheney were the only parties to the Privileged Chat.

75.    P.A.Z.E. has repeatedly posted copies of the Privileged Chat on P.A.Z.E.'s website and social media accounts, then argued in the TTAB Proceedings that the Privileged Chat is not privileged because the document is "publicly available." In the TTAB Proceedings, P.A.Z.E. claims to have found the Privileged Chat on an undisclosed (and undocumented) Reddit thread that P.A.Z.E. claims is no longer available.

76.    In the TTAB Proceedings, EWS has filed several motions to seal the portions of P.A.Z.E.'s filings containing the Privileged Chat, and the TTAB has issued orders shielding P.A.Z.E.'s entire filings from public view pending its disposition of EWS's motions to seal. Despite the TTAB's orders, P.A.Z.E. has continued to file public documents containing the Privileged Chat in the TTAB Proceedings.

77.    Several of P.A.Z.E.'s filings in the TTAB Proceedings purport to bear O'Loughlin's signature but contain metadata disclosing that "Warren Johnson" is the author of those documents. Accurate and complete examples of documentation showing this metadata in P.A.Z.E.'s documents on the TTAB's website are attached as **Exhibit A**.

78.    In other words, despite having signed and instructed the filing of EWS's applications to register the PAZE and Ƶ marks while employed as EWS's legal counsel, Johnson has drafted P.A.Z.E.'s submissions in the TTAB Proceedings challenging the very same applications he signed on behalf of his former client and employer, EWS.

**H.    Defendants' Demands for Payment**

79.    Having thus laid the groundwork for Defendants' demands for payment, O'Loughlin sent EWS a letter on April 21, 2024, relaying P.A.Z.E.'s threats to file multiple proceedings against EWS in the TTAB, to appeal any adverse decisions in that forum, and to ensure that those disputes would become "very public" through "updates on my website and . . . updates to financial and intellectual property blogs" unless EWS agreed to purchase "all assets and information owned and held" by P.A.Z.E.

80.    P.A.Z.E. also floated the "chance of a cease-and-desist letter campaign immediately after the registration of [its] trademarks."

81.    When EWS did not respond to P.A.Z.E.'s April 21, 2024, letter, O'Loughlin sent EWS another letter on May 2, 2024, noting that P.A.Z.E. had "accelerated" the filing of its petition to cancel EWS's Ƶ Registration and again

1  threatened to file multiple TTAB proceedings against EWS and appeal any adverse

2  decisions.

3      82.    This letter also elaborated on P.A.Z.E.'s earlier threat to engage in a

4  "cease-and-desist letter campaign" by stating it would engage in this campaign "to

5  [EWS's] customers and merchants displaying the PAZE mark in a confusingly similar

6  way," to "commence immediately after [EWS's] PAZE application is denied." The

7  letter concluded by stating P.A.Z.E.'s belief that "we can come to an agreement where

8  PAZE, LLC is sold to [EWS] or dissolved, and the assets transferred to [EWS]."

9  **I.    Johnson's Wrongful Termination Action and the Parties' Settlement**

10      83.    On July 20, 2023, approximately six months after EWS's termination of

11  his employment, Johnson filed a civil action against EWS in Arizona Superior Court,

12  Maricopa County, for wrongful termination, withholding of wages, breach of the

13  implied covenant of good faith and fair dealing, and punitive damages under Arizona

14  law (the "Civil Action"). Johnson sought $1,274,998 in purported damages.

15      84.    To avoid the costs of litigation, the parties agreed to settle the Civil

16  Action in a Settlement Agreement bearing an effective date of August 24, 2023.

17      85.    Under the terms of the Settlement Agreement, EWS expressly denied

18  any wrongdoing or liability, and Johnson agreed to a general release of all of his

19  claims against EWS and agreed to dismiss the Civil Action with prejudice in return

20  for a settlement payment. EWS also agreed to retain a vendor to provide Johnson with

21  job placement services for three months.

22      86.    Under the terms of the Settlement Agreement, Johnson also affirmed that

23  "he has returned all of [EWS's] property, documents, and/or any confidential

24  information in his possession or control," agreed to "maintain the confidentiality of

25  all of [EWS's] privileged, trade secret, proprietary or confidential information," and

26  agreed "not to disparage or say or write negative things about [EWS] in any public

27  forum, such as media outlets or social networking sites."

28      87.    When EWS executed the Settlement Agreement, it was unaware that:

a. Johnson had not returned all of EWS's privileged and confidential documents;

b. Johnson was not maintaining the confidentiality of EWS's privileged and confidential information and trade secrets;

c. Johnson was secretly working with O'Loughlin and P.A.Z.E. to extract money from EWS, using EWS's privileged and confidential information and trade secrets; and

d. This scheme involved registering domain names containing EWS's PAZE mark that Johnson knew EWS was interested in obtaining, launching a sham gripe website disparaging EWS and its Zelle® and Paze℠ services in public, filing trademark applications to register versions of EWS's PAZE and Ƶ marks for nonexistent "services," and using those sham applications to attack EWS's trademark filings, which Johnson had signed on EWS's behalf while employed as EWS's legal counsel, using documents prepared by Johnson for O'Loughlin's signature.

## FIRST CLAIM FOR RELIEF
## <u>AGAINST ALL DEFENDANTS</u>
## Misappropriation of Trade Secrets Under
## the Defend Trade Secrets Act of 2016 ("DTSA")
## (18 U.S.C. § 1836)

88. EWS repeats and incorporates by reference the allegations in the preceding paragraphs.

89. The DTSA provides a cause of action for misappropriation of trade secrets "related to a product or service used in, or intended for use in interstate or foreign commerce." 18 U.S.C. § 1836(b)(1).

90. During Johnson's employment, EWS granted Johnson access to trade secrets related to its proprietary and competitively sensitive business and legal strategies. These include internal legal documents related to its highly confidential

patent and trademark matters and strategies, including indices of concept briefs and invention disclosures relating to EWS's patent portfolio, indices of EWS's trademark files, documents relating to EWS's domain names, the Privileged Chat, and a list of every matter on which Johnson was then working (collectively "EWS's Trade Secrets").

91.    EWS's Trade Secrets constitute "trade secrets" as defined by the DTSA.

92.    EWS's Trade Secrets derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, other persons who can obtain economic value from their disclosure or use.

93.    EWS's Trade Secrets are valuable to EWS and constitute a significant competitive advantage over EWS's competitors and others in the financial services space.

94.    EWS has, at all times, taken reasonable measures to keep EWS's Trade Secrets secret, including by requiring Johnson and other employees to execute and abide by agreements containing strict rules and requirements governing confidentiality. Johnson obtained access to EWS's Trade Secrets while an EWS employee and under confidentiality obligations arising from his employment agreement. This agreement obligated Johnson to maintain the confidentiality of the trade secrets and not to use them except for the benefit of EWS.

95.    EWS's Trade Secrets are related to products and services used in, or intended for use in, interstate or foreign commerce.

96.    As detailed herein, Defendants have used or will use EWS's Trade Secrets without a privilege to do so, or are threatening to do so. Defendants' conduct qualifies as misappropriation under 18 U.S.C. § 1839(5), giving rise to the remedies described in 18 U.S.C. § 1836(b)(3).

97.    Defendants' acts constitute a violation of the DTSA.

98.    Defendants know or have reason to know that they have acquired and used EWS's Trade Secrets improperly.

99.    As the direct and proximate result of Defendants' conduct as set forth herein, EWS has suffered and will continue to suffer irreparable injury, as well as significant damages in an amount to be proven at trial.

100.    Because EWS's remedy at law is in important respects inadequate, EWS is seeking, in addition to damages, injunctive relief under the DTSA to retrieve and protect EWS's Trade Secrets and prevent additional damages and irreparable harm resulting from Defendants' misappropriation and continued misuse of EWS's Trade Secrets.

101.    Defendants willfully and maliciously misappropriated EWS's Trade Secrets.

102.    EWS is entitled to recover compensatory and exemplary damages from Defendants pursuant to 18 U.S.C. § 1836.

103.    EWS is entitled to receive an award of its attorneys' fees and litigation expenses pursuant to 18 U.S.C. § 1836.

**SECOND CLAIM FOR RELIEF**

**<u>AGAINST ALL DEFENDANTS</u>**

**Misappropriation of Trade Secrets Under the**

**Arizona Uniform Trade Secrets Act**

**(A.R.S. § 44-401 *et seq.*)**

104.    EWS repeats and incorporates by reference the allegations in the preceding paragraphs.

105.    EWS owns EWS's Trade Secrets.

106.    EWS's Trade Secrets constitute "trade secrets" as defined by A.R.S. § 44-401.

107.    EWS's Trade Secrets derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable

20

through proper means by, other persons who can obtain economic value from their disclosure or use.

108.  EWS has, at all times, engaged in efforts reasonable under the circumstances to keep EWS's Trade Secrets secret, including by requiring EWS's employees to execute and abide by agreements containing strict rules and requirements governing confidentiality.

109.  Defendants know or have reason to know that they either (a) used improper means to acquire knowledge of EWS's Trade Secrets, or (b) at the time of disclosure or use, knew or had reason to know that their knowledge of EWS's Trade Secrets was derived from or through a person who had utilized improper means to acquire it, was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, or was derived from or through a person who owed a duty to EWS to maintain its secrecy or limit its use.

110.  As the direct and proximate result of Defendants' conduct as set forth herein, EWS has suffered and will continue to suffer irreparable injury as well as significant damages, in an amount to be proven at trial.

111.  Because EWS's remedy at law is in important respects inadequate, EWS is seeking, in addition to damages, injunctive relief to retrieve and protect EWS's Trade Secrets and prevent additional damages and irreparable harm resulting from Defendants' misappropriation and continued misuse of EWS's Trade Secrets.

112.  EWS is entitled to recover compensatory damages reflecting its actual loss caused by Defendants' misappropriation and the unjust enrichment caused by Defendants' misappropriation not accounted for in computing actual loss pursuant to A.R.S. § 44-403(A).

113.  Defendants willfully and maliciously misappropriated EWS's Trade Secrets. Accordingly, EWS is entitled to recover exemplary damages from Defendants pursuant to A.R.S. § 44-403(B).

**THIRD CLAIM FOR RELIEF**

**AGAINST DEFENDANT JOHNSON**

**Breach of Fiduciary Duty Under Arizona Law**

114.    EWS repeats and incorporates by reference the allegations in the preceding paragraphs.

115.    Johnson was employed as EWS's Intellectual Property Counsel and Senior Intellectual Property Counsel approximately between September 8, 2014, and January 19, 2023, thus creating an attorney-client relationship between Johnson and EWS.

116.    As EWS's counsel, Johnson was EWS's fiduciary, owing duties of loyalty and confidentiality to EWS.

117.    Johnson's duties of loyalty and confidentiality to EWS survived the termination of his employment by EWS.

118.    Johnson has breached his fiduciary duties to EWS, including by stealing EWS's Trade Secrets and using them to take legal actions adverse to EWS's interests. Johnson has put his own and O'Loughlin's interests before the interests of EWS.

119.    Johnson's breach of his fiduciary duties to EWS has actually and proximately caused injury to EWS, including, without limitation, EWS's inability to register domain names containing its PAZE mark and EWS's substantial costs relating to the defense of P.A.Z.E.'s TTAB Proceedings against EWS. But for Johnson's breach, these harms would not have occurred.

120.    EWS is entitled to an injunction against any further breach of Johnson's fiduciary duties to EWS.

121.    EWS also is entitled to monetary damages against Johnson in an amount to be proven at trial.

## FOURTH CLAIM FOR RELIEF
## AGAINST DEFENDANT O'LOUGHLIN
### Cybersquatting Under the Anticybersquatting
### Consumer Protection Act ("ACPA")
### (15 U.S.C. § 1125(d))

122. EWS repeats and incorporates by reference the allegations in the preceding paragraphs.

123. EWS owns all right, title, and interest in and to the ZELLE mark and PAZE mark in the United States, including all common law rights.

124. EWS's ZELLE mark and PAZE mark are valid marks entitled to protection under federal law and at common law.

125. Beginning in January 2023, O'Loughlin registered the Accused Domain Names, including www.pazewallet.com, www.pazenetwork.com, www.paze.website, and www.paze.guru, among many others.

126. EWS's ZELLE mark and PAZE mark are inherently distinctive and were inherently distinctive at the time O'Loughlin registered the Accused Domain Names.

127. The Accused Domain Names are identical or confusingly similar to EWS's ZELLE mark or PAZE mark.

128. O'Loughlin registered or has trafficked in the Accused Domain Names with a bad faith intent to profit in violation of 15 U.S.C. § 1125(d).

129. EWS is entitled to injunctive relief, including an order transferring the remaining Accused Domain Names to EWS, because O'Loughlin's actions have caused EWS irreparable harm, and without injunctive relief, EWS cannot control the continuing injury to its reputation and goodwill. No amount of money damages can adequately compensate EWS if it loses the ability to control the quality of services or purported "services" offered under its ZELLE and PAZE marks because of O'Loughlin's unauthorized uses of those marks in or at the Accused Domain Names.

130.   EWS also is entitled to recover, at its election, either (a) an award of actual damages, trebled pursuant to 15 U.S.C. § 1117(a), or (b) an award of statutory damages under 15 U.S.C. § 1117(d), along with its costs of this action.

131.   O'Loughlin's willful, malicious, and intentional actions make this an exceptional case and entitle EWS to recover its reasonable attorneys' fees under 15 U.S.C. § 1117(a).

## FIFTH CLAIM FOR RELIEF
## AGAINST ALL DEFENDANTS
### Unjust Enrichment Under Arizona Law

132.   EWS repeats and incorporates by reference the allegations in the preceding paragraphs.

133.   Defendants were enriched and EWS was impoverished as a result of Defendants' unlawful activities. As one example, Johnson' misappropriation of trade secrets and breach of fiduciary duty, and O'Loughlin's acts of cybersquatting, enabled Defendants to demand that EWS pay $20,000 to acquire certain of the Accused Domain Names, which EWS otherwise could have acquired at a much lower price, and incur costs of approximately $3,000 relating to transfer of those domain names.

134.   No justification for Defendants' enrichment and EWS's impoverishment exists. Allowing Defendants to retain those benefits would be unjust, and the ties of natural justice and equity oblige Defendants to compensate EWS for the benefits they received. EWS has no remedy for Defendants' unjust enrichment provided by law.

## SIXTH CLAIM FOR RELIEF
## AGAINST ALL DEFENDANTS
### Declaration of Noninfringement of an Unregistered Mark Under the Federal Declaratory Judgment Act, the Lanham Act, and Arizona Common Law
### (28 U.S.C. § 2201(a) and 15 U.S.C. § 1125(a))

135.   EWS repeats and incorporates by reference the allegations in the preceding paragraphs.

136.    In letters to EWS dated April 21, 2024, and May 2, 2024, P.A.Z.E. threatened to seek cancellation of EWS's **Z** Registration, oppose EWS's PAZE Application, and send "cease-and-desist letter[s]" to EWS's customers and merchants displaying EWS's PAZE mark "in a confusingly similar way."

137.    On May 3, 2024, and May 16, 2024, P.A.Z.E. followed through on its threats to seek cancellation of EWS's **Z** Registration and to oppose EWS's PAZE Application by filing the TTAB Proceedings.

138.    The use of the phrase "confusingly similar" in P.A.Z.E.'s May 2, 2024, letter is a reference to "likelihood of confusion," a doctrine comprising an essential element of claims for infringement of an unregistered trademark under the Lanham Act, 15 U.S.C. § 1125(a), and Arizona common law.

139.    P.A.Z.E.'s alleged **PAZE** mark is a stylized version of EWS's PAZE mark and contains a colorable imitation of EWS's **Z** mark.

140.    The necessary implication of P.A.Z.E.'s threats to send "cease-and-desist letter[s]" to EWS's customers and merchants for displaying EWS's PAZE mark in a "confusingly similar way" to P.A.Z.E.'s alleged **PAZE** mark is that P.A.Z.E. claims EWS's PAZE mark and **Z** mark infringe P.A.Z.E.'s trademark rights in its alleged **PAZE** mark.

141.    Coupled with P.A.Z.E.'s active litigation against EWS in the TTAB Proceedings, P.A.Z.E.'s threats in its April 21, 2024, and May 2, 2024, letters create a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment of noninfringement under 28 U.S.C. § 2201(a).

142.    On November 9, 2022, EWS applied to register its PAZE mark under Application Serial No. 97669754 for various financial transaction services in International Class 36.

143.    EWS first used its PAZE mark in United States commerce on March 26, 2023.

144.   EWS owns prior rights in its PAZE mark. For example, EWS filed its Application Serial No. 97669754 to register its PAZE mark before P.A.Z.E. claimed to begin using **PAŻE** and PAZE, and almost a year before P.A.Z.E. filed its applications to register its alleged marks.

145.   EWS's PAZE mark is inherently distinctive of EWS's services under the mark. EWS's PAZE mark is valid and protectable.

146.   On April 5, 2016, EWS applied to register its **Ż** mark under Application Serial No. 86965192 for "Financial transaction services, namely, providing secure payment and money transfer options and permitting account holders to make payment requests" in International Class 36. That application matured into Registration No. 5476070, which issued on May 22, 2018.

147.   EWS first used its **Ż** mark in United States commerce on August 28, 2016.

148.   EWS owns prior rights in its **Ż** mark.

149.   EWS's **Ż** mark is inherently distinctive of EWS's services under the mark. EWS's **Ż** mark is valid and protectable.

150.   EWS filed a Combined Declaration of Use and Incontestability under Sections 8 & 15 for EWS's **Ż** mark on April 26, 2024.

151.   P.A.Z.E. does not own any federal or state registrations covering its alleged PAZE and **PAŻE** marks.

152.   P.A.Z.E. has not made any *bona fide* use of its alleged PAZE and **PAŻE** marks in connection with any services as contemplated by the Lanham Act or Arizona law. P.A.Z.E. therefore lacks any trademark rights in its alleged PAZE and **PAŻE** marks.

153.   P.A.Z.E. cannot succeed in establishing that use of EWS's PAZE mark or **Ż** mark infringes any trademark rights in P.A.Z.E.'s alleged PAZE and **PAŻE** marks for at least the reasons that (a) EWS owns prior rights in its PAZE and **Ż** marks

and (b) P.A.Z.E. does not own any trademark rights in its alleged PAZE and **PAZE** marks.

154. EWS therefore is entitled to a declaratory judgment of noninfringement under 28 U.S.C. § 2201(a), 15 U.S.C. § 1125(a), and Arizona common law.

155. Because this action involves a registered trademark—namely, EWS's **Z** mark, which is the subject of EWS's **Z** Registration—EWS also is entitled to an order requiring the USPTO to invalidate P.A.Z.E.'s **PAZE** Application and P.A.Z.E.'s PAZE Application under 15 U.S.C. § 1119.

**SEVENTH CLAIM FOR RELIEF**

**<u>AGAINST DEFENDANT JOHNSON</u>**

**Breach of Contract Under Arizona Law**

156. EWS repeats and incorporates by reference the allegations in the preceding paragraphs.

157. EWS and Johnson entered into several valid contracts, including the Intellectual Property and Confidentiality Agreement, the User Responsibility Agreement, and the Settlement Agreement.

158. Johnson has breached the Intellectual Property and Confidentiality Agreement, the User Responsibility Agreement, and the Settlement Agreement by engaging in the wrongful actions alleged in detail above.

159. Johnson's breaches of the Intellectual Property and Confidentiality Agreement, the User Responsibility Agreement, and the Settlement Agreement have resulted in damage to EWS in an amount to be proven at trial.

160. Further, Johnson's breach of the Intellectual Property and Confidentiality Agreement has caused EWS irreparable injury, thus entitling EWS to obtain injunctive relief in addition to its legal remedies.

**PRAYER FOR RELIEF**

WHEREFORE, EWS prays for judgment as follows:

1.      That judgment be entered in favor of EWS and against Defendants on each of EWS's claims;

2.      That Defendants and each of their officers, agents, servants, employees, attorneys, directors, principals, subsidiaries, affiliates, related companies, successors, and assigns, and all those in active concert or participation with them, or any of them, who receive actual notice of the injunctions prayed for herein by personal service or otherwise, be preliminarily and then permanently restrained and enjoined from:

      a.      Acquiring, possessing, using, or disclosing any of EWS's Trade Secrets; and

      b.      Registering, acquiring, renewing, maintaining, or using any of the Accused Domain Names or any other domain names containing any of EWS's marks, including, without limitation, EWS's PAZE mark and **Ƶ** mark, or any confusingly similar variations of any of them;

3.      That the Court order each of Defendants to remove from public view and return to EWS all documents containing or reflecting any of EWS's Trade Secrets;

4.      That the Court order O'Loughlin to transfer the remaining Accused Domain Names and any other domain names owned or controlled by O'Loughlin containing any of EWS's marks, including, without limitation, EWS's PAZE mark and **Ƶ** mark, or any confusingly similar variations of any of them, to EWS;

5.      That the Court order each of Defendants to file with the Court and serve on counsel for EWS, within 30 days after the entry of judgment herein, a written report under oath setting forth in detail the manner in which each has complied with the orders of this Court;

6.      That the Court order the invalidation of P.A.Z.E.'s Application Serial Nos. 98252022 and 98255290 to register the alleged **PAŻE** and PAZE marks;

7.     That the Court find that:

a.     EWS owns prior rights in its PAZE mark, which is inherently distinctive of EWS's services under the mark and therefore valid and protectable;

b.     EWS owns prior rights in its **Ƶ** mark, which is inherently distinctive of EWS's services under the mark and therefore valid and protectable;

c.     P.A.Z.E. does not own any federal registrations of its alleged PAZE and **PAŻE** marks;

d.     P.A.Z.E. has not made any *bona fide* use of its alleged PAZE and **PAŻE** marks in connection with any services as contemplated by the Lanham Act, and accordingly, P.A.Z.E. lacks any trademark rights in those alleged marks; and

e.     EWS therefore is entitled to a declaratory judgment of noninfringement of P.A.Z.E.'s alleged trademark rights;

8.     That the Court award EWS its damages caused by Defendants' unlawful activities, Defendants' profits attributable to those activities, statutory damages if EWS so elects, exemplary and punitive damages, EWS's costs of this action, and EWS's reasonable attorneys' fees; and

9.     That the Court grant EWS such other and further relief as it deems just and equitable to make EWS whole for the damage caused by Defendants and to deter each of the Defendants from future misconduct.

DATED:  June 28, 2024                    Respectfully Submitted,

KILPATRICK TOWNSEND & STOCKTON LLP

*/s/Erick Durlach*
Erick Durlach
6909 E. Greenway Parkway, Suite 100

Scottsdale, Arizona 85254
Tel: (602) 726-7319
Fax: (623) 321-1009
*edurlach@ktslaw.com*

Dennis L. Wilson
1801 Century Park East, Suite 2300
Los Angeles, California 90067
Tel: (310) 777-3740
Fax: (310) 388-6097
*dwilson@ktslaw.com*

Sara K. Stadler
1114 Avenue of the Americas
New York, New York 10036
Tel: (404) 532-6908
Fax: (404) 541-3411
*sstadler@ktslaw.com*

# EXHIBIT A



| Proceeding no. | |
| --- | --- |
| Party | |
| Correspondence address | |
| Submission | |
| Filer's name | |
| Filer's email | ewslawsuit@joinpaze.com |
| Signature | /Brandon O'Loughlin/ |
| Date | 06/12/2024 |
| Attachments | Motion for Leave to Amend Opposition Brief.pdf(122768 bytes ) |

SStadler@ktslaw.com,
Agarcia@ktslaw.com, JVogel@ktslaw.com
Phone: 212-775-8700

**Serial #:** 97669754    Application File    Assignment

**Application Status:** OPPOSITION PENDING

**Mark:** PAZE

## Plaintiff

**Name:** P.A.Z.E. LLC

**Correspondence:** BRANDON OLOUGHLIN
P A Z E LLC
550 W BASELINE RD SUITE 102
MESA, AZ 85210
UNITED STATES
ewslawsuit@joinpaze.com,
contact@paze.guru

## Prosecution History

| # | Date | History Text | Due Date |
|---|------|--------------|----------|
| 15 | 06/17/2024 | PAPER RECEIVED AT TTAB | |
| 14 | 06/14/2024 | PAPER RECEIVED AT TTAB | |
| 13 | 06/13/2024 | P MOT TO AMEND OR SUPPLEMENT OPP BRIEF TO D MOT TO SEAL | |
| 12 | 06/12/2024 | SUSP PEND DISP OF OUTSTNDNG MOT | |
| 11 | 06/12/2024 | P MOT TO AMEND PLEADING/AMENDED PLEADING | |
| 10 | 06/11/2024 | P OPP/RESP TO MOTION | |
| 9 | 06/07/2024 | D CHANGE OF CORRESP ADDRESS | |
| 8 | 06/07/2024 | D SECOND MOTION TO SEAL | |
| 7 | 06/06/2024 | P MOT TO AMEND PLEADING/AMENDED PLEADING | |
| 6 | 06/06/2024 | SUSP PEND DISP OF OUTSTNDNG MOT | |
| 5 | 05/31/2024 | D CHANGE OF CORRESP ADDRESS | |
| 4 | 05/31/2024 | D MOTION TO SEAL | |
| 3 | 05/16/2024 | INSTITUTED | |
| 2 | 05/16/2024 | NOTICE AND TRIAL DATES SENT; ANSWER DUE: | 06/25/2024 |
| 1 | 05/16/2024 | FILED AND FEE | |

Results as of
06/17/2024 01:12 PM

**Search:**

---

*Document properties (dialog):*

**File name:** ttabvue-91291526-OPP-15.pdf
**File size:** 1,512 KB

**Title:** -
**Author:** Warren Johnson
**Subject:** -
**Keywords:** -
**Created:** 6/17/24, 2:10:05 AM
**Modified:** 6/17/24, 2:10:05 AM
**Application:** Acrobat PDFMaker 20 for Word

**PDF producer:** GPL Ghostscript 9.18
**PDF version:** 1.5
**Page count:** 21
**Page size:** 8.50 × 11.00 in (portrait)

**Fast web view:** No

Close



| Submission | Other Motions/Submissions |
| --- | --- |
| Filer's name | Brandon O'Loughlin |
| Filer's email | ewslawsuit@joinpaze.com, contact@paze.guru |
| Signature | /Brandon O'Loughlin/ |