**KILPATRICK TOWNSEND & STOCKTON LLP**
Erick Durlach, Arizona Bar No. 024253
*edurlach@ktslaw.com*
Dennis L. Wilson, California Bar No. 155407
(admitted *pro hac vice*)
*dwilson@ktslaw.com*
Sara K. Stadler, New York Bar No. 2620276
(admitted *pro hac vice*)
*sstadler@ktslaw.com*
6909 E. Greenway Parkway, Suite 100
Scottsdale, Arizona 85254-2149
Tel: (602) 726-7319
Fax: (623) 321-1009

**BRYAN CAVE LEIGHTON PAISNER LLP**
George C. Chen, Arizona Bar No. 019704
*george.chen@bclplaw.com*
Jacob A. Maskovich, Arizona Bar No. 021920
*jamaskovich@bclplaw.com*
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
Tel: (602) 364-7000
Fax: (602) 364-7070

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Early Warning Services, LLC,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>Warren Vurl Johnson; Brandon O'Loughlin; and P.A.Z.E., LLC,<br><br>　　　　Defendants. | Case No.<br><br>**DECLARATION OF TRACY CHENEY IN SUPPORT OF EARLY WARNING SERVICES, LLC'S MOTION FOR PRELIMINARY INJUNCTION** |

I, Tracy Cheney, declare under penalty of perjury as follows:

1. I am a resident of the State of Arizona, over eighteen years of age, and employed by Plaintiff Early Warning Services, LLC ("EWS") as its General Counsel. The statements made in this Declaration are true and based on my own personal knowledge and the business records that EWS maintains as part of the ordinary course of its business.

**A.   EWS's Business, Services, and Trademarks**

2. EWS is an Arizona-based financial services technology company empowering and protecting consumers, small businesses, and the U.S. financial system with cutting-edge fraud and payment solutions for more than three decades. EWS's offices are currently located at 5801 N. Pima Rd. Scottsdale, Arizona 85250.

3. EWS is best known as the operator of Zelle®, a digital payment network that helps consumers utilize their financial institution to send and receive money within minutes. EWS also is the operator of Paze℠, a reimagined digital wallet for ecommerce that financial institutions can offer to consumers and merchants. Accurate and complete copies of the homepages of EWS's websites for its Zelle® and Paze℠ services are attached as **Exhibit 1** to this Declaration.

4. EWS has made substantial investments in its Zelle Network®, its ZELLE and Z trademarks, its Paze℠ digital wallet service, its PAZE and paze trademarks, including through the development and execution of its related patent and brand strategies. EWS views these patents, trademarks, and services as extremely important assets of the company.

**B.   Johnson's Employment and Termination**

5. On or around September 8, 2014, EWS hired Defendant Warren Vurl Johnson ("Johnson") as its Intellectual Property Counsel.

6. Beginning in or around 2020, Johnson engaged in a series of unprofessional interactions with his coworkers and vendors. Coaching did not resolve these issues, so on August 8, 2022, following another incident, I issued a written

1

1  warning to Johnson for workplace misconduct. Johnson protested this written
2  warning, claiming he was not responsible for how his coworkers perceived his
3  conduct.

4      7.    On September 2, 2022, Johnson informed me of his intention to resign
5  from EWS by the end of 2022.

6      8.    In the meantime, Johnson continued to perform his duties. By 2022,
7  Johnson was employed as EWS's Senior Intellectual Property Counsel with primary
8  responsibility for acquiring, protecting, and enforcing EWS's intellectual property
9  rights—including the PAZE and Ƶ marks at issue in this case.

10     9.    In this role, Johnson was responsible for providing legal advice to EWS
11 on intellectual property issues, including in connection with EWS's development and
12 launch of its Paze$^{SM}$ service. In this capacity, Johnson was entrusted with, and privy
13 to, proprietary and confidential information regarding EWS's private and internal
14 business plans and discussions regarding the Paze$^{SM}$ service, including EWS's interest
15 in procuring particular domain names incorporating its PAZE mark.

16     10.    On or around November 3, 2022, I engaged in a Microsoft Teams chat
17 with Johnson on EWS's internal computer network (the "Privileged Chat"). Johnson
18 and I were the only parties to the chat. The chat reflected Johnson's legal advice to
19 EWS concerning EWS's contract negotiations and trademark applications. Thus, the
20 Privileged Chat is protected from disclosure by EWS's attorney-client privilege,
21 which EWS has not waived. EWS is informed and believes that Johnson made a
22 contemporaneous screen capture of the Privileged Chat while employed by EWS.

23     11.    On November 9, 2022, Johnson signed and instructed outside counsel to
24 file several trademark applications on EWS's behalf, including Application Serial No.
25 97669754 to register the PAZE mark for various financial transaction services in
26 International Class 36. An accurate and complete copy of this application is attached
27 as **Exhibit 2** to this Declaration.
28

12. On November 18, 2022, I presented Johnson with a transition plan in connection with termination of his employment with EWS setting a resignation date of January 1, 2023, and discussed awarding Johnson a discretionary performance bonus of $50,000 relating to his earlier work on an unrelated patent matter. Johnson agreed to this transition plan on the same day, then backtracked and demanded more money.

13. On November 28, 2022, Johnson requested an open-ended date for termination of his employment with EWS. I agreed not to set a firm exit date at that time. In or about December 2022, however, I became aware of additional reports of Johnson's unprofessional conduct. By the end of December 2022, Johnson's unprofessional behavior had escalated to the point that other EWS employees refused to continue working with Johnson.

14. On January 12, 2023, Johnson corresponded with EWS's marketing department about acquiring domain names containing EWS's PAZE mark. Johnson also instructed EWS's domain name vendor, Corporation Service Company ("CSC"), to run an availability report for domain names containing PAZE.

15. On January 17, 2023, CSC provided Johnson with a Microsoft Excel spreadsheet showing that numerous domain names were available for registration, including pazewallet.com and pazenetwork.com.

16. Also on January 17, 2023, I informed Johnson that his exit date would be February 10, 2023, at the latest. Johnson objected to setting a firm exit date and informed me that he would not resign until he had secured another job.

17. On January 19, 2023, I learned that Johnson had emailed EWS's proprietary and confidential information and records from his work email account to his personal email account at Gmail.com. I immediately terminated Johnson's employment and instructed him to return company equipment and delete EWS's proprietary and confidential materials in his possession.

18. Shortly after his termination, Johnson represented to me that the only confidential document he had emailed from his work email account to his personal email account was EWS's Employee Handbook, which he claimed to have deleted.

19. I learned this was false. An investigation by EWS's Security and IT departments revealed that Johnson had sent a volume of EWS's documents from his work email account to his personal email account in at least November 2022 and continuing until January 18, 2023. Those documents include detailed indices of confidential and proprietary business concept briefs and invention disclosures relating to EWS's patent portfolio, detailed indices of EWS's trademark matters, documents relating to EWS's domain names, and numerous contracts, including in draft form.

20. The documents that Johnson emailed from his work email account to his personal email account were and are highly confidential and sensitive. Most are privileged. Johnson never sought and never obtained authorization to send these confidential and privileged documents to his personal email account or to remove them from EWS's system.

21. Shortly after Johnson's termination, he sent me a series of texts and emails that I perceived as threats to harm EWS. Those communications included the messages, "We going to have some fun now," "how's early warning plan on defending against what's coming," and "there will be consequences, nothing you guys can't handle I'm sure."

22. Approximately six months after Johnson's termination, he filed a lawsuit against EWS for wrongful termination and other claims under Arizona law. To avoid the costs of litigation, EWS agreed to settle Johnson's claims. The parties memorialized this settlement in a formal agreement (the "Settlement Agreement") bearing an effective date of August 24, 2023. An accurate and complete copy of the Settlement Agreement is attached as **Exhibit 3** to this Declaration.

23. Under the terms of the Settlement Agreement, EWS expressly denied any wrongdoing or liability, and Johnson agreed to a general release of all of his

1  claims against EWS and agreed to dismiss the Civil Action with prejudice in return
2  for a settlement payment. EWS also agreed to retain a vendor to provide Johnson with
3  job placement services for three months.

4  24. In the Settlement Agreement, Johnson also affirmed that "he has returned
5  all of [EWS's] property, documents, and/or any confidential information in his
6  possession or control," agreed to "maintain the confidentiality of all of [EWS's]
7  privileged, trade secret, proprietary or confidential information," and agreed "not to
8  disparage or say or write negative things about [EWS] in any public forum, such as
9  media outlets or social networking sites." *See* **Exhibit 3**.

10 25. At the time it executed the Settlement Agreement, EWS was unaware of
11 Johnson's involvement with Defendants Brandon O'Loughlin ("O'Loughlin") and
12 P.A.Z.E., LLC ("P.A.Z.E."). EWS also was unaware that Johnson had not returned,
13 and was not maintaining the confidentiality of, EWS's proprietary and confidential
14 information and trade secrets. EWS uncovered Johnson's connection to O'Loughlin
15 and P.A.Z.E. on June 11, 2024, when the metadata contained in one of P.A.Z.E.'s
16 filings in the Trademark Trial and Appeal Board ("TTAB") identified Johnson as the
17 author of the document.

18 **C. Johnson's Involvement With O'Loughlin and P.A.Z.E. and Defendants'**
19 **Misappropriation of EWS's Proprietary and Confidential Information**
20 **and Trade Secrets**

21 26. On or around January 22, 2023, three days after Johnson's termination,
22 O'Loughlin began registering domain names containing EWS's PAZE mark,
23 including the pazewallet.com and pazenetwork.com domain names that CSC
24 disclosed in its first availability report to Johnson and that EWS intended to acquire.
25 Accurate and complete copies of Domain Tools' Whois History records for the
26 pazewallet.com and pazenetwork.com domain names dated January 23, 2023, are
27 attached as **Exhibit 4** to this Declaration.
28

Docusign Envelope ID: 6CC2E8BC-2644-4229-AE31-510FD4B67E61

27. On January 26, 2023, one week after Johnson's termination, O'Loughlin formed P.A.Z.E. as an Arizona limited liability company. An accurate and complete copy of the Articles of Organization for P.A.Z.E., downloaded on July 10, 2024, from the Arizona Corporation Commission website at https://ecorp.azcc.gov/, is attached as **Exhibit 5** to this Declaration.

28. On January 27, 2023, EWS instructed CSC to register several of the domain names shown as available in the January 17, 2023 report CSC provided to Johnson in his capacity as counsel for EWS. CSC advised EWS that several of those domains—including pazewallet.com and pazenetwork.com—were no longer available because someone else had recently registered them, along with paze.website and paze.guru. EWS later learned the registrant was O'Loughlin.

29. EWS instructed CSC to attempt to acquire the domain name pazewallet.com from the registrant. On January 30, 2023, CSC advised EWS that the registrant of pazewallet.com had launched a website at that domain name under the name "P.A.Z.E.," or "People Against Zelle Erryday [sic]."

30. CSC also advised EWS that the registrant of the pazewallet.com domain name likely owned the following domain names as well:

paze.associates

paze.bargains

paze.business

paze.capital

paze.cash

paze.cheap

paze.company

paze.consulting

paze.credit

paze.design

paze.dev

6

| | |
|---|---|
| 1 | paze.digital |
| 2 | paze.directory |
| 3 | paze.discount |
| 4 | paze.email |
| 5 | paze.exchange |
| 6 | paze.finance |
| 7 | paze.financial |
| 8 | paze.fund |
| 9 | paze.guru |
| 10 | paze.mobi |
| 11 | paze.money |
| 12 | paze.services |
| 13 | paze.systems |
| 14 | paze.technology |
| 15 | paze.vip |
| 16 | paze.website |
| 17 | paze.work |
| 18 | paze.works |
| 19 | paze.world |
| 20 | pazealldayz.com |
| 21 | pazeblog.com |
| 22 | pazebofa.com |
| 23 | pazecart.com |
| 24 | pazechase.com |
| 25 | pazecheckout.com |
| 26 | pazeday.com |
| 27 | pazedaze.com |
| 28 | pazefaq.com |

| | |
|---|---|
| 1 | pazefraud.com |
| 2 | pazegroup.com |
| 3 | pazegroup.net |
| 4 | pazehelp.com |
| 5 | pazehgi.com |
| 6 | pazeinstore.com |
| 7 | pazeme.com |
| 8 | pazemerchant.com |
| 9 | pazenetwork.cash |
| 10 | pazenetwork.claims |
| 11 | pazenetwork.com |
| 12 | pazenetwork.credit |
| 13 | pazenetwork.discount |
| 14 | pazenetwork.finance |
| 15 | pazenetwork.fund |
| 16 | pazenetwork.net |
| 17 | pazenews.com |
| 18 | pazepayment.com |
| 19 | pazepayz.com |
| 20 | pazerules.com |
| 21 | pazesupport.com |
| 22 | pazevisa.com |
| 23 | pazezelle.com |

24    31.    In February 2023, EWS negotiated with O'Loughlin a potential purchase of some or all of the domain names he had registered containing EWS's PAZE mark. O'Loughlin agreed to transfer 55 of the Accused Domain Names to EWS in return for $20,000, but refused to transfer others. EWS made the $20,000 payment by wire transfer payable to Heidi O'Loughlin at contact@paze.guru. An accurate and

8

complete copy of the Transaction Statement from Escrow.com is attached as **Exhibit 6** to this Declaration.

32. EWS later learned that Johnson and O'Loughlin attended Mesa High School together and both graduated in 1999. An accurate and complete copy of the Old Friends webpage for Mesa High School, listing members of the Class of 1999, is attached as **Exhibit 7** to this Declaration.

33. On April 21, 2024, O'Loughlin sent one of EWS's outside counsel a letter, on P.A.Z.E. letterhead, threatening to file multiple proceedings against EWS in the TTAB, appeal any adverse decisions in that forum, and ensure that those disputes would become "very public" unless EWS agreed to purchase P.A.Z.E.'s "assets and information." P.A.Z.E. also threatened the "chance of a cease-and-desist letter campaign immediately after the registration of [its] trademarks." An accurate and complete copy of this letter is attached as **Exhibit 8** to this Declaration.

34. When EWS did not respond to P.A.Z.E.'s April 21, 2024, letter, O'Loughlin sent another of EWS's outside counsel a letter on May 2, 2024. This letter again threatened to file multiple TTAB proceedings against EWS and appeal any adverse decisions. The letter also elaborated on P.A.Z.E.'s earlier threat to engage in a "cease-and-desist letter campaign" by stating it would engage in this campaign "to [EWS's] customers and merchants displaying the PAZE mark in a confusingly similar way," to "commence immediately after [EWS's] PAZE application is denied." The letter also reiterated P.A.Z.E.'s offer to sell its "assets" to EWS. An accurate and complete copy of this letter is attached as **Exhibit 9** to this Declaration.

35. On May 3, 2024, P.A.Z.E. filed a petition to cancel EWS's Registration No. 5476070 of its Z mark in the TTAB, claiming the mark is invalid and the underlying application was fraudulently submitted. That document contained a partial copy of the Privileged Chat. An accurate and complete copy of P.A.Z.E.'s petition for cancellation is lodged with the Court under seal. A redacted form is attached as **Exhibit 10** to this Declaration.

9

36. On or about April 5, 2016, Johnson had signed and instructed EWS's outside counsel to file the application underlying EWS's Registration No. 5476070 when he was employed as EWS's Intellectual Property Counsel. An accurate and complete copy of this underlying application is attached as **Exhibit 11** to this Declaration.

37. On May 16, 2024, P.A.Z.E. opposed EWS's Application Serial No. 97669754 to register the PAZE mark in the TTAB, claiming the mark is invalid and the underlying application was fraudulently submitted. As with P.A.Z.E.'s petition for cancellation, its notice of opposition contained a partial copy of the Privileged Chat. An accurate and complete copy of P.A.Z.E.'s notice of opposition is lodged with the Court under seal. A redacted form is attached as **Exhibit 12** to this Declaration.

38. As stated above, on November 9, 2022, Johnson signed and instructed EWS's outside counsel to file EWS's Application Serial No. 97669754 when he was employed as EWS's Senior Intellectual Property Counsel. *See* **Exhibit 2**.

39. P.A.Z.E.'s filings in both TTAB Proceedings reflect Johnson's knowledge of EWS's privileged and confidential information and trade secrets. This is not surprising, as several of P.A.Z.E.'s filings in the TTAB purport to bear O'Loughlin's signature but contain metadata disclosing that "Warren Johnson" is the actual author of those documents. Accurate and complete examples of documentation showing this metadata in P.A.Z.E.'s documents as viewed on the TTAB's public docketing system ("TTABVUE"), are attached as **Exhibit 13** to this Declaration.

40. P.A.Z.E. has repeatedly attached the Privileged Chat to its public filings in both TTAB proceedings, even after the TTAB *sua sponte* shielded P.A.Z.E.'s filings from public view.

41. P.A.Z.E. has filed motions in both TTAB proceedings to maintain public access to the Privileged Chat, claiming to have found the Privileged Chat on an undisclosed and undocumented Reddit thread that P.A.Z.E. claims is no longer

Docusign Envelope ID: 6CC2F8BC-3644-4229-AE31-F19FD4B67E61
Case 2:24-cv-01587-SMB   Document 17   Filed 07/23/24   Page 12 of 16

1  available. An accurate and complete copy of one of P.A.Z.E.'s filings making this claim (at pages 4, 7, and 12 of the exhibit) is lodged with the Court under seal. A redacted form is attached as **Exhibit 14** to this Declaration. As with the document as viewed on the TTAB's TTABVUE system, *see* **Exhibit 13**, the Document Properties for that document in .pdf format show "Warren Johnson" as its author.

42. P.A.Z.E.'s repeated public filings of the Privileged Chat in the TTAB proceedings have forced EWS to expend resources on filing five motions to seal (at last count) in an effort to remove the Privileged Chat from the TTAB's TTABVUE system. Accurate and complete copies of these filings are attached as **Exhibit 15** to this Declaration. EWS's motions to seal are pending before the TTAB, and EWS since has filed motions to suspend the TTAB proceedings pending termination of this action.

43. P.A.Z.E. also has repeatedly posted copies of the Privileged Chat on its website and social media accounts. An accurate and complete copy of P.A.Z.E.'s website at https://www.paze.website/ as of July 10, 2024, depicting the Privileged Chat, is lodged with the Court under seal. A redacted form is attached as **Exhibit 16** to this Declaration. EWS has been forced to submit numerous "takedowns" to X (f/k/a Twitter) and LinkedIn as well as the internet service provider (ISP) for P.A.Z.E.'s website, seeking to disable access to the Privileged Chat. In many cases, P.A.Z.E. has simply posted the Privileged Chat again, frustrating EWS's efforts to shield the Privileged Chat from public view. Defendants' continued posts of EWS's privileged, proprietary, and confidential information on online platforms requires EWS to expend additional resources on monitoring social media and submitting takedown requests.

**D.  EWS's Reasonable Efforts to Maintain the Secrecy of its Proprietary and Confidential Information and Trade Secrets**

44. In connection with the services that EWS provides to financial institutions, consumers, and small businesses, EWS develops and maintains sensitive proprietary and confidential information and trade secrets. This proprietary,

confidential, and trade secret information includes, without limitation, information related to EWS's proprietary patent and trademark strategies. EWS's ability to create innovative products and develop coordinated, distinctive branding is critical to growing the company's business in the highly competitive financial services space. Thus, maintaining the secrecy of EWS's proprietary and confidential information and trade secrets is critical to preserving EWS's ability to seek patent and trademark protection for its inventions and brands, preventing others from poaching EWS's inventions and goodwill, and maintaining EWS's competitive position.

45. EWS employs certain individuals to fill key roles focused on developing its patent and trademark portfolios and has invested a substantial amount of money, time, and energy in developing and executing its patent and brand strategies.

46. During Johnson's employment with EWS, he was one of those individuals. In his roles as Intellectual Property Counsel and Senior Intellectual Property Counsel, Johnson had privileged access to EWS's information concerning, and played an important role in developing and executing, EWS's patent and brand strategies. Among other things, Johnson had highly sensitive knowledge of EWS's future plans, including future patent, trademark, and domain name filings.

47. EWS takes substantial precautions to safeguard its confidential and proprietary trade secret information.

48. EWS restricts access to its computer systems through the use of multifactor authentication and employs a system of document-level security, including maintaining a password-protected, secure database restricted to individuals on a need-to-know basis and only accessible from EWS-deployed electronic devices. Johnson enjoyed such access.

49. EWS's Employee Handbook requires employees to maintain the confidentiality of proprietary information both during employment and after departure from EWS. Relevant excerpts of EWS's Employee Handbook as of Johnson's termination date are attached as **Exhibit 17** to this Declaration.

50. All EWS employees also must execute an Intellectual Property and Confidentiality Agreement governing nondisclosure of trade secrets and confidential information and, pursuant to EWS's User Responsibility Agreement, must acknowledge their responsibilities relating to security.

51. EWS's Intellectual Property and Confidentiality Agreement, which Johnson executed on August 15, 2014, prohibits employees and former employees alike from disclosing, using, or disseminating any of EWS's confidential information, intellectual property, or trade secrets, and must turn those materials over to EWS upon the termination of their employment. Employees acknowledge that breach of these obligations may cause irreparable injury, and that EWS may seek and obtain injunctive relief in addition to any available legal remedies. An accurate and complete copy of EWS's Intellectual Property and Confidentiality Agreement as executed by Johnson is attached as **Exhibit 18** to this Declaration.

52. Further, under EWS's User Responsibility Agreement, which Johnson acknowledged and accepted on April 24, 2019, February 10, 2020, June 9, 2021, and June 27, 2022, employees must not photograph any restricted or nonpublic data with any device or remove restricted data from the office on any form of media without management approval and an issue management ticket. Johnson did not have EWS management's approval or authorization to photograph any restricted or nonpublic EWS data.

53. The User Responsibility Agreement additionally prohibits use of personal equipment for official business on EWS's computing assets or networks without management authorization, security evaluation, and an issue management ticket. An accurate and complete copy of EWS's User Responsibility Agreement as of June 27, 2022, is attached as **Exhibit 19** to this Declaration.

54. Johnson lacked EWS management's authorization to screen capture the Privileged Chat, to send EWS's proprietary and confidential documents and trade secrets to his personal email address, to place and possess those materials on his

personal computing devices, to disclose those materials to any person (including the other Defendants), or to use those materials after his employment with EWS ended on January 19, 2023.

55.     EWS also requires key stakeholders with access to complete a trade secrets course annually. Johnson was subject to this requirement.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 23, 2024, in Scottsdale Arizona.

*Tracy Cheney*
Tracy Cheney

14

| | | |
|---|---|---|
| 1 | DATED: July 23, 2024 | Respectfully Submitted, |
| 2 | | |
| | | KILPATRICK TOWNSEND & STOCKTON LLP |

*/s/ Erick Durlach*
Erick Durlach
Dennis L. Wilson (admitted *pro hac vice*)
Sara K. Stadler (admitted *pro hac vice*)
6909 E. Greenway Parkway, Suite 100
Scottsdale, Arizona 85254
Tel: (602) 726-7319
Fax: (623) 321-1009
*edurlach@ktslaw.com*
*dwilson@ktslaw.com*
*sstadler@ktslaw.com*

BRYAN CAVE LEIGHTON PAISNER LLP
George C. Chen
Jacob A. Maskovich
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
Tel: (602) 364-7000
Fax: (602) 364-7070
*george.chen@bclplaw.com*
*jamaskovich@bclplaw.com*

15