WARREN V. JOHNSON
warrenvjohnson@gmail.com
122 S. HARDY DRIVE
Tempe, AZ
Plaintiff/Attorney

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| EARLY WARNING SERVICES, LLC<br><br>Plaintiffs,<br>v.<br><br>MR. WARREN V. JOHNSON;<br>BRANDON O'LOUGHLIN; P.A.Z.E., LLC<br><br>Defendants. | Case No.:<br><br>**DEFENDANT MR. WARREN JOHNSON'S COUNTER DECLARATION TO MR. PARAS SHAH'S DECLARATION IN SUPPORT OF PLAINTIFF'S REPLY** |

Defendant Mr. Warren Johnson's ("Warren") Counter Declaration to Plaintiff Mr. Paras Shah's ("Mr. Shah") Declaration supporting the EWS Reply to Warrens's Response to Plaintiff's Motion for a Preliminary Injunction, states as follows:

## I. KEY POINTS

- **LIMITED TENURE AND INVOLVEMENT OF PARAS SHAH**
  - Mr. Shah's brief tenure at EWS and limited involvement in significant intellectual property matters limit his ability to provide accurate testimony regarding my practices and responsibilities.

- **CHALLENGING SHAH'S PERSONAL KNOWLEDGE**
  - Mr. Shah lacks firsthand knowledge of the intellectual property indexes and other work processes that I managed, undermining the credibility of his statements.

- **RELEVANCE AND APPLICATION OF INTELLECTUAL PROPERTY POLICY**
    - The 2017 Intellectual Property Policy cited by Mr. Shah is outdated and irrelevant, as it had been replaced by a more recent policy that I drafted and updated.
- **CONTENT AND SECRECY OF THE INDEXES**
    - The indexes I maintained did not contain sensitive information that could be considered trade secrets, and any entries were kept broad and nonspecific to prevent disclosure.
- **CLARIFICATION ON METADATA AND EMAIL COMMUNICATIONS**
    - The presence of Frankie Ho's name in the metadata is due to the use of a template from my previous employment, and the email to Ms. Cheney was not a threat but a rhetorical statement.
- **REQUEST FOR DISMISSAL**
    - Given the lack of personal knowledge and the reliance on outdated policies, I request that the court dismiss the claims against me and deny the Plaintiff's motion for a preliminary injunction.

## II. INTRODUCTION

I am a Defendant in this case, I have personal knowledge of the facts stated herein, and if called as a witness, I will competently testify to these facts.

**Limited Tenure of Mr. Shah:** Mr. Paras Shah was employed at Early Warning Services (EWS) for a brief period of three months before my departure. During this time, his involvement in significant intellectual property matters, policies, and procedures was minimal, as he was based in Chicago. Mr. Shah's declaration is primarily based on information provided by Ms. Cheney, rather than his firsthand experience.

**Mr. Shah's Hiring and Training:** Upon informing Ms. Cheney of my intention to seek new employment, I volunteered to providing up to 30 days' notice and to hiring and training my replacement to ensure a smooth transition. I hired Mr. Shah in October.

As his direct supervisor and sole trainer during our brief overlap, I was fully aware of all projects, meetings, and assignments given to Mr. Shah.

**Mr. Shah's Handling of Warren's Indexes:** Due to geographical separation, with Mr. Shah in Chicago and myself in Arizona, our collaboration was limited despite my role as his direct supervisor and trainer. Mr. Shah was not privy to my practices or rationale, contrary to his claims. The manner in which Mr. Shah currently manages his indexes is his choice and bears no relevance to my practices or this lawsuit. What is pertinent is how I managed the indexes and the content I included.

To clarify, the specific entries I made in the indexes are not of significant relevance, as I deleted all information to create templates. At the time of emailing the indexes, I was adhering to standard work practices, despite the misinterpretations presented by Ms. Cheney and Mr. Shah for their purposes.

### III. MR. SHAH'S LACK OF "PERSONAL KNOWLEDGE"

**A. LEGAL STANDARD**

In legal proceedings, the concept of "personal knowledge" is a cornerstone of the credibility and admissibility of declarations and testimonies. Personal knowledge refers to information that a declarant has directly acquired through their own experiences or observations, rather than through hearsay, secondhand accounts, or speculation. This requirement is fundamental to the admissibility of evidence in court, ensuring that the information provided is based on firsthand experience, which is inherently more accurate and trustworthy.

In the case at hand, the Mr. Paras Shah's Declaration ("Shah's Dec") must be rigorously examined for personal knowledge. Any instances where the Mr. Shah fails to demonstrate true personal knowledge of the matters he discusses, either due to his short tenure with Warren or because what he is declaring happened prior to his arrival, there must be an exclusion of those statements.

## B. THE INTELLETUAL PROPERTY POLICY FROM 2017 IS NOT RELEVANT

Mr. Shah references an Intellectual Property Policy from 2017 to support his assertion that I should have known about the need for authorization to email myself copies of the indexes. It is important to note that the 2017 IP Policy had been supplanted by a more recent policy that I drafted and updated annually during my tenure at EWS. Additionally, the policy Mr. Shah cites refers to a "patent database," not the "indexes" that I managed. This distinction is crucial, as the terminology and scope of the policies differ significantly, and Mr. Shah's reliance on an outdated document misrepresents the current practices at EWS.

## IV. NO "PERSONAL KNOWLEDGE" OF MY JOB DUTIES

I was Mr. Shah's direct supervisor and was aware of all information he was exposed to for the three months we worked together. This information regarding my "duties" must have been provided by Ms. Cheney, and not accurately, yet Mr. Shah presents them as if they were his own "personal knowledge."

### A. WARREN HAD NO DUTY TO POPULATE THE INDEXES

Mr. Shah asserts that I was required to populate and maintain certain indexes within EWS's legal department. (id. *at ¶3)*. However, as his direct supervisor and the primary individual responsible for those indexes, I can confirm that populating these indexes was a discretionary task that I undertook to enhance the efficiency of my work. At no time was I under any formal obligation to maintain these indexes, nor were they considered essential to my job duties. Furthermore, Mr. Shah's tenure at EWS was too brief to provide him with sufficient insight into my work practices.at EWS.

### B. MY INDEXES COULD NOT DISCLOSE AN INVENTION

#### 1. Legal Standard of Undue Experimentation

The legal concept of "undue experimentation" refers to the level of disclosure required to enable a person skilled in the art to understand the invention. It must be demonstrated by "clear and convincing evidence that a person of ordinary skill in the art would not be able to practice the claimed invention without undue experimentation" (Alcon Research, 745 F.3d at 1188, quoting In re Wands, 858 F.2d 731, 36-37 (Fed. Cir. 1988)).

**2. Warren's Entries In His Indexes Did Not Meet the Undue Experimentation Standard**

Mr. Shah's claim that the titles and notes in the indexes could disclose sensitive information or trade secrets is unsupported by the facts. (*Id.* ¶4-5) The entries I made in the Concept Brief Index and Invention Disclosure Index were intentionally broad and nonspecific. This strategy ensured that no detailed or confidential information was revealed, even if the indexes were subject to discovery. Furthermore, I did not include any legal advice or consultations in these indexes, thereby safeguarding the confidentiality of EWS's intellectual property.

Mr. Shah's assertion that my notes contain "details of consultations" is also incorrect. (*Id.* at ¶6) I deliberately did not include details of consultations or legal conclusions in the indexes. From the outset at Ping® and continuing into my time at EWS, I populated the indexes as if they were discoverable,[1] ensuring confidentiality was maintained. This version maintains the original content's intent while enhancing clarity and readability for judicial review.

---

[1] This is likely the first meaningful thing I instructed Mr. Shah on when hired: treat the indexes as if they are deiscoverable. That has always been my standard of care with my indexes.

### C. MR. SHAH CANNOT HAVE PERSONAL KNOWLEDGE ABOUT MY TREATMENT OF THE INDEXES PRIOR TO HIS ARRIVAL

Mr. Shah's assertion that the confidentiality of my indexes provides Early Warning Services (EWS) with a competitive advantage and that maintaining their secrecy is crucial for protecting trade secrets is not supported by the facts. His claim that secrecy was my priority during the eight years I managed the indexes is unfounded and not based on his personal knowledge. I did not take measures to keep the indexes secret, rendering the assertions regarding trade secrets inherently false.

I did not label any content within the indexes as a trade secret. For example, in the Invention Disclosure Index, I used code words like "Stealth" instead of explicitly identifying information as a trade secret. This approach ensured that sensitive details remained obscured, even if the indexes were subject to discovery.

Furthermore, Mr. Shah's and Ms. Cheney's declarations address topics about which they lack personal knowledge, which undermines their credibility. For instance, Mr. Shah's claims about restricted access and measures to ensure the secrecy of the indexes are stated in the present tense. In reality, neither Mr. Shah nor Ms. Cheney had personal knowledge of who I granted access to my indexes or the reasons for such access, as I never disclosed this information to them.

### V. NO PERSONAL KNOWLEDGE OF THE PRIVILEGED CHAT

Mr. Shah had *no personal knowledge* of the "privileged chat." While I was his direct supervisor I gave him no information, let alone firsthand information regarding the Privileged Chat.

Mr. Shah's declaration regarding his personal knowledge must be information that Ms. Cheney imparted to Mr. Shah recently. (Id at ¶10)  Ms. Cheney and I were the only parties to the Privileged Chat. Neither  Mr. Shah or myself were ever involved in the

negotiations or the discussions surrounding the contract the Privileged Chat focuses on. That is also why the Privileged Chat came to be in the first place, it is Warren complaining to Ms. Cheney that he felt he should have been involved in the contract negotiations and then Ms. Cheney's indifferent reaction.

## VI. MR. SHAH CONFUSES THE PATENT DATABASE AND THE PATENT INDEX, AND THEIR RESPECTIVE CONTENTS

### A. THE PATENT INDEX IS NOT THE PATENT DATABASE

Mr. Shah conflates the substantial resources invested in developing the Patent Database with the minimal resources required to maintain the Patent Index, Invention Disclosure Index, and Concept Brief Index. He asserts that "EWS has invested significant resources to develop, maintain, and safeguard its indices. EWS invested these resources during Johnson's employment, and continues to make these investments to this day" (Id. at ¶9).

Mr. Shah cannot have known how much resources were invested in making the Indexes over a period of 8 years prior to his arrival, and I populated the indexes for my own reasons. This cost EWS nothing.

Mr. Shah's also makes the somewhat outlandish claim that salaries paid to employees constitute a "substantial investment of work, energy, and money" for trade secret protection. *Id.* By that logic every task performed by any employee would create trade secrets, rendering the requirement moot.

## VII. EWS KNOWS I HAD THE EVIDENCE TO DISCREDIT MS. CHENEY'S DECLARATION

Contrary to Mr. Shah's assertions, EWS was aware that I possessed copies of my performance reviews. I have evidence that challenges the accuracy and completeness of Ms. Cheney's account regarding my termination (Id. ¶18). These documents were exhibits in my Wrongful Termination Complaint. (See EXHIBIT 2).

Additionally, contrary to Mr. Shah's Declaration, I never served the wrongful termination complaint documents directly on EWS (See EXHIBIT 1). However, I did provide a complete version to their outside counsel, who would have shared it with them. This version included the documents Mr. Shah claims EWS was unaware I possessed.

Mr. Shah also alleges a two-year connection between me and the other defendants based solely on metadata. This is yet another assumption made by Mr. Shah to support Ms. Cheney's conspiracy theory.

### IX. MR. SHAH PERSONAL KNOWLEDGE ABOUT FRAKIE HO AND MY LETTER TO MS. CHENEY

It is true that Frankie Ho was my supervisor at Ping® golf. This fact is central to the metadata issue: he never worked at EWS. Yet, he is listed as the author of the indexes in question. (Id. ¶19)

Regarding the metadata in the indexes, the presence of Frankie Ho's name is explained by my use of a template originally created during my time at Ping Golf. This does not indicate any involvement by Mr. Ho at EWS. As for the email communication with Ms. Cheney, while it may have been ill-advised, it was not intended as a threat. My reference to Elizabeth Warren was a rhetorical device rather than an indication of any personal connection or intent to act against EWS.

### X. CONSLUSION

In conclusion, I respectfully request that the court dismiss the claims against me and deny the Plaintiff's motion for a preliminary injunction. The majority of Mr. Shah's declaration is based on information he did not personally observe or verify, rendering it unreliable. Furthermore, the policies and practices cited in Mr. Shah's declaration do not accurately reflect the operations during my tenure at EWS.

I declare under penalty of perjury that the foregoing is true and correct.

COUNTER DECLARATION OF DEFENDANT WARREN IN REPONSE TO DEFENDANT'S DECLARATION IN SUPPORT OF THE REPLY TO THE RESPONSE TO THE MOTION FOR PRELIMINARY INJUNCTION
- 8 -

Respectfully submitted of _19__ day of _August, 2024

____/Warren V Johnson/____
Warren Johnson

122 S Hardy Drive, Apt 59
Tempe, AZ 854281
208.317.1686
wjohnson@ipprotection.experts

# Certificate of Service

I, Warren V. Johnson, hereby certify that on August 19, 2024, I electronically filed the foregoing Counter Declaration to Plaintiff's Declaration in Support of the Reply to Warren's Response to Plaintiff's Motion for a Preliminary Injunction with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Respectfully submitted this __19___ day of __August_, 2024

___/Warren V Johnson/_____

Warren Johnson

122 S Hardy Drive, Apt 59
Tempe, AZ 854281

208.317.1686

wjohnson@ipprotection.experts