**KILPATRICK TOWNSEND & STOCKTON LLP**
Erick Durlach, Arizona Bar No. 024253
*edurlach@ktslaw.com*
Dennis L. Wilson, California Bar No. 155407
(admitted *pro hac vice*)
*dwilson@ktslaw.com*
Sara K. Stadler, New York Bar No. 2620276
(admitted *pro hac vice*)
*sstadler@ktslaw.com*
6909 E. Greenway Parkway, Suite 100
Scottsdale, Arizona 85254-2149
Tel: (602) 726-7319
Fax: (623) 321-1009

**BRYAN CAVE LEIGHTON PAISNER LLP**
George C. Chen, Arizona Bar No. 019704
*george.chen@bclplaw.com*
Jacob A. Maskovich, Arizona Bar No. 021920
*jamaskovich@bclplaw.com*
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
Tel: (602) 364-7000
Fax: (602) 364-7070

Attorneys for Plaintiff and Counterclaim-Defendant Early Warning Services, LLC

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Early Warning Services, LLC,<br><br>       Plaintiff and Counterclaim-Defendant,<br><br>   v.<br><br>Warren Vurl Johnson,<br><br>       Defendant and Counterclaim-Plaintiff; and<br><br>Brandon O'Loughlin and P.A.Z.E., LLC,<br><br>       Defendants. | Case No. CV-24-01587-PHX-SMB<br><br>**PLAINTIFF AND COUNTERCLAIM-DEFENDANT EARLY WARNING SERVICES, LLC'S REPLY IN SUPPORT OF ITS MOTION [46] TO DISMISS DEFENDANT AND COUNTERCLAIM-PLAINTIFF WARREN VURL JOHNSON'S AMENDED COUNTERCLAIMS [43]** |

# **TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................... 1

II. ARGUMENT .................................................................................................. 1

    A. *Noerr-Pennington* Immunity Bars Johnson's Counterclaims .............. 1

    B. The Absolute Litigation Privilege Also Applies. ................................. 4

        1. The TTAB Proceedings Are Judicial Proceedings. .................... 5

        2. EWS's Statements Relate to, Bear Upon, and Are Connected With the Issues Before the TTAB. ........................... 8

    C. Johnson's Fourth and Fifth Counterclaims Are Subject to Dismissal for the Additional Reason that They Rely on EWS's Allegedly Tortious Acts as of the Release Date. ................................ 10

III. CONCLUSION ............................................................................................. 11

# **TABLE OF AUTHORITIES**

**Cases**

*Alexander v. City of Mesa*,
  No. CV-14-00754-PHX-SPL, 2015 WL 13655673 (D. Ariz. Sept. 30, 2015), *aff'd*, 697 F. App'x 512 (9th Cir. 2017) .................................................... 10

*B & B Hardware, Inc. v. Hargis Indus.*,
  575 U.S. 138 (2015) ................................................................................................ 7, 8

*B&G Foods N. Am., Inc. v. Embry*,
  29 F.4th 527 (9th Cir. 2022) .................................................................................... 3

*Baldwin v. adidas Am., Inc.*,
  No. C2-02-265, 2002 WL 2012562 (S.D. Ohio July 29, 2002) ............................ 7

*Ball Corp. v. Xidex Corp.*,
  967 F.2d 1440 (10th Cir. 1992) .............................................................................. 6

*Biltmore Assocs., L.L.C. v. Twin City Fire Ins. Co.*,
  No. CV-05-4220-PHX-FJM, 2006 WL 2091667 (D. Ariz. July 21, 2006), *aff'd on other grounds,* 572 F.3d 663 (9th Cir. 2009) ................................. 9

*Burns v. Davis*,
  993 P.2d 1119 (Ariz. Ct. App. 1999) ................................................................. 5, 7

*Evans v. McAllister*,
  No. CIV 23-132-TUC-CKJ, 2023 WL 3345656 (D. Ariz. May 10, 2023) ............ 5

*GlobalTranz Enters. Inc. v. Shipper's Choice Glob. LLC*,
  No. CV-16-04038-PHX-ROS, 2017 WL 11609546 (D. Ariz. Feb. 23, 2017) ........................................................................................................................ 3

*Goldman v. Sahl*,
  248 Ariz. 512, 462 P.3d 1017 (Ct. App. 2020) ............................................. 4, 5, 9

*Green Acres Tr. v. London*,
  141 Ariz. 609, 688 P.2d 617 (1984) (en banc) ....................................................... 4

*Huffman v. JP Morgan Chase Bank, NA*,
  No. CV-22-00903-PHX-JJT, 2023 WL 2691455 (D. Ariz. Mar. 29, 2023) ........................................................................................................................ 5

*Lewis v. Oliver*,
  178 Ariz. 330, 873 F.2d 668 (Ct. App. 1993) ........................................................ 7

*Marek v. Old Navy (Apparel) Inc.*,
   348 F. Supp. 2d 275 (S.D.N.Y. 2004) .......................................................................... 7

*Or. Nat. Res. Council v. Mohla*,
   944 F.2d 531 (9th Cir. 1991) ....................................................................................... 2

*Orca Commc'ns Unlimited, LLC v. Noder*,
   236 Ariz. 180, 337 P.3d 545 (2014) ............................................................................ 3

*Prakash v. Altadis U.S.A. Inc.*,
   No. 5:10CV0033, 2012 WL 1109918 (N.D. Ohio Mar. 30, 2012) .............................. 7

*Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*,
   508 U.S. 49 (1993) .............................................................................................. 1, 3, 4

*Rodriguez v. Quality Loan Serv. Corp.*,
   No. CV-09-1853-PHX-FJM, 2010 WL 1644695 (D. Ariz. Apr. 22,
   2010), *aff'd,* 472 F. App'x 642 (9th Cir. 2012) ......................................................... 9

*Scoyni v. Salvador*,
   Nos. 20-35123, 20-35564, 2021 WL 5002213 (9th Cir. Oct. 28, 2021) ..................... 6

*State Farm Fire & Cas. Co. v. Amazon.com Inc.*,
   No. CV-17-01994-PHX-JAT, 2018 WL 1536390 (D. Ariz. Mar. 29,
   2018) ........................................................................................................................... 4

*Stetter v. Blackpool, LLC*,
   No. CV-09-1071-PHX-DGC, 2010 WL 4117256 (D. Ariz. Oct. 19,
   2010) ........................................................................................................................... 5

*Taraska v. Brown*,
   No. 1 CA-CV 18-0714, 2019 WL 6320968 (Ariz. Ct. App. Nov. 26,
   2019) ........................................................................................................................... 5

**Statutes**

15 U.S.C. § 1071 .................................................................................................................. 6

A.R.S. § 44-401 *et seq.* ....................................................................................................... 2

**Rules and Regulations**

37 C.F.R.
   § 2.116(a) .................................................................................................................... 6
   § 2.117(a) .................................................................................................................... 8

Fed. R. Civ. P. 37 ................................................................................................................. 6

LRCiv. 7.2(e) ....................................................................................................................... 1

United States Pat. & Trademark Ofc.,
   Trademark Trial and Appeal Board Manual of Procedure (June 2024)
   § 411.05 ......................................................................................................................... 6
   § 510.02(a) .................................................................................................................... 8
   § 703.01(b) .................................................................................................................... 6
   § 703.01(f)(2) ................................................................................................................ 6
   § 902 .............................................................................................................................. 6
   § 903 .............................................................................................................................. 6

## I. INTRODUCTION

Defendant Warren Vurl Johnson's ("Johnson") opposition to Plaintiff Early Warning Services, LLC's ("EWS") motion to dismiss his amended counterclaims misstates and misapplies the applicable law, misconstrues EWS's arguments, mischaracterizes Johnson's own allegations, and inappropriately argues both EWS's claims and his own counterclaims on the merits, even relying on extrinsic evidence to do so.[1] None of these efforts refutes the arguments in EWS's motion to dismiss (the "Motion"), and the Court therefore should dismiss Johnson's amended counterclaims in their entireties, and with prejudice.

## II. ARGUMENT

### A. *Noerr-Pennington* Immunity Bars Johnson's Counterclaims.

Johnson apparently concedes the *Noerr-Pennington* doctrine applies, but argues EWS cannot "hide behind" it because the "sham" exception applies. Dkt. 48 at 10, 15–22. In *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49 (1993), the Supreme Court "outline[d] a two-part definition of 'sham' litigation": "First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under *Noerr* . . . ." *Id.* at 60.

Second, if (and only if) the lawsuit is objectively baseless, "the court should focus on whether the baseless lawsuit conceals 'an attempt to interfere *directly* with the business relationships of a competitor' through the 'use [of] the governmental *process*—as opposed to the *outcome* of that process—as an anticompetitive weapon.'" *Id.* at 60–61 (alterations in original) (internal citation and citation omitted). Notably, "[o]nly if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation." *Id.* at 60.

---

[1] Johnson's opposition well exceeds the page limitation in LRCiv. 7.2(e) as well. *See also* Dkt. 24 (26 pages); Dkt. 29 ("Counter Declaration").

1

Johnson cannot satisfy the first *Professional Real Estate Investors* element by simply alleging (or arguing) that EWS's claims are meritless. As the Ninth Circuit instructed, "[n]ormally we accept as true all of the plaintiff's factual allegations, along with all reasonable inferences in the plaintiff's favor. Where a claim involves the right to petition governmental bodies under *Noerr-Pennington*, however, we apply a heightened pleading standard." *Or. Nat. Res. Council v. Mohla*, 944 F.2d 531, 533 (9th Cir. 1991).

For example, the counterclaim at issue in *Mohla* alleged the plaintiff's lawsuit was "filed with the knowledge it was baseless, . . . for the sole purpose of delaying and impeding Avison's logging operation," and therefore the plaintiff was not entitled to *Noerr-Pennington* immunity. *Id.* at 535. The court disagreed. The plaintiff "was not merely exploiting the governmental process; it was genuinely seeking judicial relief"—indeed, the counterclaimant conceded "that [the plaintiff] wanted the injunctive relief it requested in the underlying suit," but contended that it would be unable to obtain it. *Id.* Finding this "conclusory allegation fail[ed] to meet the heightened pleading standard" for claims involving *Noerr-Pennington* immunity, the court held the allegations "insufficient to overcome *Noerr-Pennington* protection" as a matter of law. *Id.* at 535–36. The same result is appropriate here.

Johnson primarily argues that EWS's claims for breach of fiduciary duty and unjust enrichment are meritless because they are preempted by EWS's trade secret claim under the Arizona Uniform Trade Secrets Act ("AUTSA"), A.R.S. § 44-401 *et seq*. This argument fails for several reasons. First, there is no such preemption because EWS's claims for misappropriation of trade secrets, breach of fiduciary duty, and unjust enrichment rest on facts particular to each cause of action; these claims are not coextensive. As one example, EWS's claim for breach of fiduciary duty alleges that "[a]s EWS's counsel, Johnson was EWS's fiduciary, owing duties of loyalty and confidentiality to EWS," which Johnson breached. Compl. ¶¶ 116, 118, Dkt. 1 at 22. As another example, EWS's claim for unjust enrichment alleges that "O'Loughlin's

acts of cybersquatting . . . enabled Defendants to demand that EWS pay $20,000 to acquire certain of the Accused Domain Names, which EWS otherwise could have acquired at a much lower price." *Id.* ¶ 133, Dkt. 1 at 24.

The AUTSA "preempts *only* those claims based on trade secrets." *GlobalTranz Enters. Inc. v. Shipper's Choice Glob. LLC*, No. CV-16-04038-PHX-ROS, 2017 WL 11609546, at *10 (D. Ariz. Feb. 23, 2017) (finding an "unjust enrichment claim is not based solely on trade secrets, meaning it is not preempted"); *see also Orca Commc'ns Unlimited, LLC v. Noder*, 236 Ariz. 180, 183, 337 P.3d 545, 548 (2014) ("[B]ecause Orca's unfair-competition claim, as alleged, is not limited to trade secrets, the superior court erred in dismissing that claim on preemption grounds."). Neither EWS's claim for breach of fiduciary duty nor its claim for unjust enrichment is so limited.

Even if the AUTSA did preempt EWS's claims for breach of fiduciary duty and unjust enrichment, those claims still would not be objectively baseless because each is "reasonably calculated to elicit a favorable outcome" under *Professional Real Estate Investors*. 508 U.S. at 60. Johnson relies on *B&G Foods North America, Inc. v. Embry*, 29 F.4th 527 (9th Cir. 2022), to support his claim of objective baselessness, but, even in that case, the court held an objective litigant could have concluded the lawsuit was "reasonably calculated to elicit a favorable outcome," and therefore *Noerr-Pennington* immunity applied. *Id.* at 538 (quoting *Pro. Real Est. Invs.*, 508 U.S. at 60).

Here, as in *Mohla*, Johnson's Amended Answer acknowledges that EWS's motion for preliminary injunction "appears aimed at securing a court order to seal this evidence, thereby preventing its public disclosure," Am. Ans. & Countercl. ¶ 154, Dkt. 43 at 43, and EWS's other claims are aimed at redressing Defendants' unlawful conduct and preventing it from recurring. Johnson cannot show otherwise, particularly at this stage of the proceedings.[2] This means that Johnson's pervasive

---

[2] Johnson's arguments on objective baselessness include the assertion that EWS filed its claims to "push [P.A.Z.E.] into a settlement." Dkt. 48 at 19. If true, this also would

3

allegations and arguments about EWS's alleged malice are insufficient to defeat EWS's Motion. Indeed, Johnson does not even attempt to show the relevance of these types of allegations to the *Noerr-Pennington* inquiry.

Finally, Johnson also takes aim at EWS's cybersquatting claim and request for a declaration of noninfringement, arguing both are objectively baseless, but again, his arguments (and extrinsic evidence) attempt to attack the merits of EWS's claims. Dkt. 48 at 20–22 (referring to exhibits); Dkt. 48-1; *see State Farm Fire & Cas. Co. v. Amazon.com Inc.*, No. CV-17-01994-PHX-JAT, 2018 WL 1536390, at *2 (D. Ariz. Mar. 29, 2018) (review on a motion to dismiss is "limited to the contents of the complaint") (citations omitted). These types of arguments are wholly inadequate to overcome *Noerr-Pennington* immunity.

### B. The Absolute Litigation Privilege Also Applies.

Under Arizona law, "[j]udges, parties, lawyers, witnesses and jurors" are absolutely privileged to publish allegedly defamatory statements "in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding" if the allegedly defamatory publication "relate[s] to, bear[s] on or [is] connected with the proceeding." *Goldman v. Sahl*, 248 Ariz. 512, 520, 462 P.3d 1017, 1025 (Ct. App. 2020) (second, third, and fourth alterations in original) (quoting *Green Acres Tr. v. London*, 141 Ariz. 609, 613, 688 P.2d 617, 621 (1984) (en banc)).

Contrary to Johnson's assertion that this privilege applies only to his counterclaims for defamation, Dkt. 48 at 8, the privilege "applies to [allegedly]

---

be "reasonably calculated to elicit a favorable outcome," *Prof. Real Est. Invs*, 508 U.S. at 60, but the more interesting point is that Johnson would only know the substance of EWS's discussions with Defendant P.A.Z.E., LLC ("P.A.Z.E.") if he had recently communicated with its current legal representative, Defendant Brandon O'Loughlin ("O'Loughlin"), whom Johnson claims not to know. *See* Am. Ans. & Countercl. ¶ 131, Dkt. 43 at 39 (lodged under seal) ("The lawsuit falsely accused Warren of conspiring to steal trade secrets with *someone he didn't know . . . .*" (emphasis added)).

'defamatory statements' in defamation claims as well as in other torts based on such statements." *Evans v. McAllister*, No. CIV 23-132-TUC-CKJ, 2023 WL 3345656, at *5 (D. Ariz. May 10, 2023) (citation omitted); *see also Huffman v. JP Morgan Chase Bank, NA*, No. CV-22-00903-PHX-JJT, 2023 WL 2691455, at *5 (D. Ariz. Mar. 29, 2023) (dismissing claim for intentional infliction of emotional distress); *Stetter v. Blackpool, LLC*, No. CV-09-1071-PHX-DGC, 2010 WL 4117256, at *2 (D. Ariz. Oct. 19, 2010) (dismissing both intentional and negligent "emotional distress claims to the extent they arise from conduct related to this litigation"). In other words, the absolute litigation privilege applies to *content*. *See Taraska v. Brown*, No. 1 CA-CV 18-0714, 2019 WL 6320968, at *3 (Ariz. Ct. App. Nov. 26, 2019) (finding "the content of . . . discovery responses was protected by the absolute litigation privilege" in connection with an abuse of process claim).

Johnson makes two arguments as to why the litigation privilege does not apply to his amended counterclaims: (1) that proceedings in the Trademark Trial and Appeal Board ("TTAB") of the United States Patent and Trademark Office are not judicial proceedings; and (2) that allegedly defamatory statements described in his amended counterclaims do not "relate[] to, bear[] on . . . connect[] with" the proceedings P.A.Z.E. initiated in the TTAB (the "TTAB Proceedings"). *See Goldman*, 248 Ariz. at 520, 462 P.3d at 1025. Johnson is incorrect on both counts.

### 1. The TTAB Proceedings Are Judicial Proceedings.

First, Johnson argues the TTAB Proceedings are not judicial proceedings because judicial proceedings share certain "hallmarks," including "compulsory attendance of witnesses, oath administration, sanctioning powers, contempt risk, and guaranteed judicial review." Dkt. 48 at 12–13 (citing *Burns v. Davis*, 993 P.2d 1119, 1124 (Ariz. Ct. App. 1999)). There are at least two issues with this argument.

First, as a factual matter, the *Trademark Trial and Appeal Board Manual of Procedure*, which governs TTAB proceedings, expressly provides that:

- A party may take the trial testimony of an unwilling witness residing in the United States by "secur[ing] the attendance of the witness by *subpoena*." United States Pat. & Trademark Ofc., Trademark Trial and Appeal Board Manual of Procedure ("TBMP") § 703.01(f)(2) (June 2024) (emphasis added).
- Parties submit trial testimony in the form of affidavits or declarations, which "must be *under oath* and subject to cross-examination." *Id.* § 703.01(b) (emphasis added).
- The TTAB has the "authority to enter *sanctions* for conduct or misconduct related to disclosures or discovery" under Federal Rule of Civil Procedure 37, "most portions of which are made applicable to Board proceedings by 37 C.F.R. § 2.116(a)." TBMP § 411.05 (emphasis added). While not including contempt, these sanctions "include, inter alia, striking all or part of the pleadings of the disobedient party, refusing to allow the disobedient party to support or oppose designated claims or defenses, drawing adverse inferences against [an] uncooperative party, prohibiting the disobedient party from introducing designated matters in evidence, and entering judgment against the disobedient party." *Id.* A sanctioned party can be required "to take an action which it would not otherwise be required to take by applicable rules, or to refrain from taking an action it would otherwise take." *Id.*
- Parties are *entitled to appeal* adverse decisions of the TTAB to the United States Court of Appeals for the Federal Circuit or seek review by filing a civil action in federal district court. TBMP §§ 902, 903; *see also* 15 U.S.C. § 1071.

Numerous courts have found TTAB proceedings sufficiently judicial in nature to qualify for protection under a litigation privilege. *See Scoyni v. Salvador*, Nos. 20-35123, 20-35564, 2021 WL 5002213, at *1 (9th Cir. Oct. 28, 2021) (holding "defamatory communications . . . to the [TTAB] . . . were protected by the litigation privilege"); *Ball Corp. v. Xidex Corp.,* 967 F.2d 1440, 1445 (10th Cir. 1992) (holding "private lawyers are entitled to absolute immunity from charges of defamation based

1  on statements in the quasi-judicial setting of [US]PTO proceedings"); *Prakash v.*
2  *Altadis U.S.A. Inc.*, No. 5:10CV0033, 2012 WL 1109918, at *11 (N.D. Ohio Mar. 30,
3  2012) (holding "the absolute privilege extends to Defendants' statements made . . .
4  during the [TTAB] Opposition Proceeding"); *Marek v. Old Navy (Apparel) Inc.*, 348
5  F. Supp. 2d 275, 282–83 (S.D.N.Y. 2004) (dismissing claims pursuant to litigation
6  privilege, holding "cancellation proceeding before the Board is quasi-judicial in
7  nature," explaining "it is adversarial in nature, it involves the application of
8  appropriate legal provisions to the facts, and it is subject to judicial review"); *Baldwin
9  v. adidas Am., Inc.*, No. C2-02-265, 2002 WL 2012562, at *3 (S.D. Ohio July 29,
10 2002) (granting motion to dismiss because the TTAB "is a quasi-judicial tribunal,"
11 such that "statements contained in defendant's petition for cancellation are clothed
12 with an absolute privilege").

13   While Johnson cites two cases purporting to hold to the contrary, *see* Dkt. 48
14 at 11–12, neither was decided on remotely similar facts. In *Burns v. Davis*, applicants
15 for a zoning variance brought a defamation action against opponents of the variance
16 in connection with statements made at a board of adjustment meeting. At this meeting,
17 "[n]o subpoenas were issued, no oaths were administered," the Board of Adjustment
18 did not "tak[e] on the role of a court," there was no indication the Board allowed
19 examination of witnesses, and "judicial review [was] not guaranteed." 196 Ariz. at
20 163, 993 P.2d at 1127. Equally inapposite is *Lewis v. Oliver*, 178 Ariz. 330, 333–34,
21 873 P.2d 668 (Ct. App. 1993), which involved defamation claims brought by a Federal
22 Aviation Administration investigator against an airline president for statements the
23 president made during an administrative investigation.

24   The Supreme Court has characterized the TTAB's procedures as "[i]n large
25 part . . . exactly the same as in federal court." *B & B Hardware, Inc. v. Hargis Indus.*,
26 575 U.S. 138, 158 (2015) (citation omitted). Indeed, "[s]o long as the other ordinary
27 elements of issue preclusion are met," the Court held "issue preclusion should apply"
28 to TTAB decisions "when the usages adjudicated by the TTAB are materially the

7

same as those before the district court." *Id.* at 160. Therefore, the TTAB Proceedings in this case are sufficiently "judicial" in every relevant respect.

### 2. EWS's Statements Relate to, Bear Upon, and Are Connected With the Issues Before the TTAB.

Johnson also argues EWS's statements in the TTAB Proceedings are not privileged because, in moving to suspend the proceedings pending the resolution of this action, EWS did not "confine its argument to considerations of judicial economy or potential conflicting results," but "used this filing to publish deeply defamatory statements about [Johnson]," who is "not involved" in the TTAB Proceedings.[3] Dkt. 48 at 12. Again, this argument fails to take into account the rules governing TTAB proceedings.

Motions to suspend proceedings in the TTAB are governed by 37 C.F.R. § 2.117(a) and TBMP § 510.02(a), the latter of which provides that "[w]henever it comes to the attention of the Board that a party or parties to a case pending before it are involved in a civil action that may have a bearing on the Board case, proceedings before the Board may be suspended until final determination of the civil action." TBMP § 510.02(a). "Most commonly, a request to suspend pending the outcome of another proceeding seeks suspension because of a civil action pending between the parties in a federal district court," as here. *Id.* "When a motion to suspend pending the outcome of a civil action is filed, the Board normally will require that a copy of the operative pleadings from the civil action be submitted, so that the Board can ascertain whether the final determination of the civil action may have a bearing on the issues before the Board." *Id.*

Pursuant to these rules, EWS filed a motion to suspend the TTAB Proceedings, attaching a copy of its Complaint in this action and briefly summarizing the issues

---

[3] EWS has sufficiently alleged Johnson's involvement in those proceedings. *See* Compl. ¶ 77, Ex. A, Dkt. 1 at 16, 31–34 ("Several of P.A.Z.E.'s filings in the TTAB Proceedings purport to bear O'Loughlin's signature but contain metadata disclosing that 'Warren Johnson' is the author of those documents.").

8

presented in both cases to enable the TTAB to determine whether this action may have a bearing on the Board case, warranting suspension of the latter. *See* Decl. of Tracy Cheney in Supp. of EWS's Mot. for Prelim. Inj. ¶ 42, Dkt. 17 at 12. As should be apparent from the allegations in the Complaint, EWS's allegations against Defendants are inextricably intertwined with P.A.Z.E.'s claims in the TTAB Proceedings, which EWS alleges were brought as part of a "scheme to extract money from EWS," in furtherance of which Johnson allegedly assisted O'Loughlin in preparing documents for P.A.Z.E. to file in the TTAB Proceedings. Compl. ¶¶ 11, 11(e), 70, Dkt. 1 at 3, 4, 14.

In view of these allegations, which must be taken as true, EWS's statements in connection with both the TTAB Proceedings and this action (a) were made "in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding" and (b) "relate[] to, bear[] on or [are] connected with the proceeding." *Goldman*, 248 Ariz. at 520, 462 P.3d at 1025 (citations omitted). Those statements therefore are absolutely privileged, and Johnson's counterclaims based on such statements must be dismissed with prejudice.

This includes Johnson's speculative allegations about defamatory statements that may or may not have been made "within EWS" and in his "broader professional circle." Am. Ans. & Countercl. ¶ 211, Dkt. 43 at 52. As Johnson acknowledges, he cannot offer any factual basis for these allegations. *See* Dkt. 48 at 14–15. *See Rodriguez v. Quality Loan Serv. Corp.*, No. CV-09-1853-PHX-FJM, 2010 WL 1644695, at *2 (D. Ariz. Apr. 22, 2010) (dismissing claim because party "cannot use discovery to conduct a fishing expedition in hope that some fact supporting an allegation will be uncovered"), *aff'd,* 472 F. App'x 642 (9th Cir. 2012); *Biltmore Assocs., L.L.C. v. Twin City Fire Ins. Co.*, No. CV-05-4220-PHX-FJM, 2006 WL 2091667, at *1 (D. Ariz. July 21, 2006) (dismissing complaint and explaining that "[t]he price of entry, even to discovery, is for the plaintiff to allege a *factual* predicate

concrete enough to warrant further proceedings, which may be costly and burdensome" (citation omitted)), *aff'd on other grounds,* 572 F.3d 663 (9th Cir. 2009).

### C.  Johnson's Fourth and Fifth Counterclaims Are Subject to Dismissal for the Additional Reason that They Rely on EWS's Allegedly Tortious Acts as of the Release Date.

Finally, Johnson's opposition concedes that the release provision in his Settlement Agreement with EWS "applies . . . to claims existing at the time of the settlement's execution," Dkt. 48 at 6, but argues Johnson did not suffer emotional distress until after the August 24, 2023, release date. Specifically, Johnson argues his emotional distress claims only arose "after nine months of unemployment, triggered by finding the summons and complaint on the cement outside his apartment." Opp. at 8. This allegation makes no sense, as Johnson's employment was terminated on January 19, 2023, and a John Doe matching Johnson's physical description and residing at Johnson's residence was personally served with process on July 1, 2024. *See* Dkt. 11.

Regardless of these factual inconsistencies, a claim for intentional infliction of emotional distress accrues under Arizona law "when a plaintiff knows or has reason to know of the injury which is the basis of his action." *Alexander v. City of Mesa*, No. CV-14-00754-PHX-SPL, 2015 WL 13655673, at *10 (D. Ariz. Sept. 30, 2015) (citation omitted), *aff'd*, 697 F. App'x 512 (9th Cir. 2017). For example, plaintiff in *Alexander* knew of the conduct underlying his emotional distress claim "at the time of his post-conviction relief proceedings . . . more than two years before he presented the instant claim." *Id.* at *9. Because this fact was apparent on the face of the complaint, the court dismissed the claim with prejudice under the applicable statute of limitations. *Id.* at *10.

Here, both Johnson's Fifth and Sixth Counterclaims allege emotional distress "*[a]s a direct result*" of EWS's alleged "extreme and outrageous conduct," including "[w]ithholding over $100,000 in bonuses owed to [Johnson] . . . [w]rongfully

10

terminating his employment after months of undue pressure . . . [and] [f]ailing to pay his bar fees without notice." Am. Answer & Countercl., Dkt. 43 ¶¶ 220, 222, at 54 (emphasis added). Johnson obviously knew of these events, which occurred several months before August 24, 2023. *See, e.g.*, *id.* at 24–28. Johnson's emotional distress claims against EWS therefore accrued, at least in part, on or before August 24, 2023, making them subject to Johnson's "general and complete release." Dkt. 46 at 24, App'x at 2. Thus, in addition to the bases for dismissal discussed above, Johnson's Fifth and Sixth Counterclaims also fail to state cognizable claims to the extent those claims are based on EWS's allegedly tortious conduct occurring on or before August 24, 2023.

## III. CONCLUSION

For the reasons set forth above and in EWS's Motion, each of Johnson's amended counterclaims is unsupported by facts sufficient to state a cognizable legal claim. This Court should grant the Motion in its entirety and dismiss Johnson's amended counterclaims with prejudice.

DATED: November 1, 2024.              Respectfully submitted,

                                                                                                                               KILPATRICK TOWNSEND & STOCKTON LLP

                                                  */s/ Erick Durlach*
                                                  Erick Durlach
                                                  Dennis L. Wilson (admitted *pro hac vice*)
                                                  Sara K. Stadler (admitted *pro hac vice*)
                                                  6909 E. Greenway Parkway, Suite 100
                                                  Scottsdale, Arizona 85254
                                                  Tel: (602) 726-7319
                                                  Fax: (623) 321-1009
                                                  *edurlach@ktslaw.com*
                                                  *dwilson@ktslaw.com*
                                                  *sstadler@ktslaw.com*

BRYAN CAVE LEIGHTON PAISNER LLP
George C. Chen
Jacob A. Maskovich
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
Tel: (602) 364-7000
Fax: (602) 364-7070
*george.chen@bclplaw.com*
*jamaskovich@bclplaw.com*

Attorneys for Plaintiff and Counterclaim-Defendant Early Warning Services, LLC

## CERTIFICATE OF SERVICE

I certify that on November 1, 2024, I electronically transmitted the foregoing document and any attachments to the U.S. District Court Clerk's Office using the CM/ECF System for filing with a copy served via that system. For parties not receiving service via CM/ECF, a copy will be transmitted via electronic mail as follows:

Brandon O'Loughlin *and* PAZE, LLC
1317 W. 13th Place
Tempe, AZ  85281
(623) 295-5438
contact@paze.guru

*Defendant Brandon O'Loughlin Individually and*
*as Authorized Representative for Defendant PAZE, LLC*

/s/ Erick Durlach