WARREN VURL JOHNSON
warrenvjohnson@gmail.com
2406 Alabama Street
Unit 7C
Lawrence, KS 66046
Plaintiff/Attorney *pro se*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

EARLY WARNING SERVICES, LLC

                Plaintiffs,

        v.

MR. WARREN V. JOHNSON;
BRANDON O'LOUGHLIN; P.A.Z.E.,
LLC

                Defendants.

Case No.: CV24-01587-PHX-SMB

**MOTION TO STAY PENDING
APPEAL AND REQUEST FOR
EXPEDITED REVIEW**

## INTRODUCTION

Defendant Warren Vurl Johnson respectfully moves this Court for a stay of its December 4, 2024 Order granting Plaintiff Early Warning Services LLC's ("EWS") Motion for Preliminary Injunction, pending resolution of Mr. Johnson's appeal to the United States Court of Appeals for the Ninth Circuit. Compliance with the injunction as presently framed would impose severe and irreparable burdens on Mr. Johnson, including the compelled disclosure of privileged materials and access to personal and professional digital devices—measures that infringe upon constitutional and statutory rights.

The injunction was based on a misapplication of the governing legal standards under the Winter test and a misunderstanding of material facts presented by the parties. Specifically, the Court improperly concluded that the Indexes "include business concepts briefs and invention disclosures related to EWS's patent portfolio, trademark matters, domain names, and various contracts." These are not facts that were plead by either party. Further the Court repeatedly referenced the misrepresented fact that Mr. O'Loughlin and

Mr. Johnson had a long history and were "high school classmates." While the court properly held the Privileged Chat was not a trade secret, the Court did hold that EWS demonstrated a likelihood of success on the merits of its trade secret misappropriation of the, despite compelling evidence that the information at issue is not legally protectable as a trade secret and that no actionable misappropriation remaining trade secret claims occurred. The Order further imposes sweeping and intrusive obligations, such as the turnover of all electronic devices for forensic imaging, which disproportionately harm Mr. Johnson and extend far beyond the scope necessary to protect EWS's purported interests.

A stay is warranted here to prevent the immediate and irreparable harm that will result from enforcing this extraordinary relief, particularly given the substantial likelihood that the appellate court will vacate or substantially narrow the injunction. Mr. Johnson therefore respectfully requests that this Court grant a stay of its Order pending appeal.

**LIKLIHOOD OF SUCCESS ON THE APPEAL**

Mr. Johnson has a strong likelihood of success on the merits of his appeal, as the preliminary injunction issued by the Court rests on fundamental misinterpretations of both the governing law and the factual record. Specifically, EWS's failed to establish the essential elements of its claims under the Defend Trade Secrets Act (DTSA) and the Arizona Uniform Trade Secrets Act (AUTSA). The injunction was also improperly granted based on speculative and unsupported allegations rather than clear evidence.

1. **REQUEST FOR EXPEDITED REVIEW**

Mr. Johnson respectfully requests expedited consideration of this Motion to Stay due to the immediate and irreparable harm imposed by the preliminary injunction. The Court's December 4, 2024 Order requires Mr. Johnson to surrender personal and professional electronic devices and online account credentials within 7 days. Compliance with these requirements would severely disrupt Mr. Johnson's employment, compromise personal privacy, and render

appellate review moot by imposing irreversible harm before a decision can be rendered.

Expedited review is necessary to ensure that Mr. Johnson's rights are preserved and that appellate relief remains meaningful. Mr. Johnson requests that the Court set an expedited briefing schedule or rule on this motion on an expedited basis.

**2.** **THE INDEXES**

- o The Court's conclusion that the indexes allegedly misappropriated by Mr. Johnson contain invention disclosures, business concept briefs, and contracts are demonstrably false and lacks any support in the record. The following points dismantle this claim:

The Nature and Origin of the Indexes

- ▪ The indexes in question were created by Mr. Johnson prior employment at EWS. They are not proprietary to EWS and were designed as generalized templates for organizing intellectual property portfolios.

- ▪ The indexes function as organizational tools that reference categories of information (e.g., docket numbers, filing dates) but do not themselves contain substantive materials such as invention disclosures, business concept briefs, or contracts. They serve as metadata summaries and not repositories for sensitive or confidential content by design.

Contents of the Indexes

- ▪ Mr. Johnson has provided evidence, including sworn declarations and exhibits, demonstrating that the indexes contain non-substantive data fields, such as:

   1. Docket numbers.

   2. Case or project names.

   3. Filing and due dates.

4.  Status updates.

These elements are administrative in nature and lack the detailed substance required to qualify as trade secrets or confidential business materials. There is no evidence or allegations that the indexes include the full text or substantive content of invention disclosures, business concept briefs, or contracts.

Contradictions in EWS's Assertions

- EWS has failed to identify specific examples of invention disclosures, business concept briefs, or contracts allegedly contained within the indexes. Any allegations to this effect are patently false, and provably false.

- Mr. Johnson systematically emailed blank templates of the indexes to his personal account, explicitly to preserve the formatting and structure—not to retain any proprietary or confidential EWS data, or to make the claim that because of these emails the indexes were not confidential.

Mr. Johnson's Efforts to Maintain Integrity

- Mr. Johnson deleted any substantive EWS data from his possession and ensured that the templates were devoid of confidential information. EWS was well aware of this practice at the time it was happening and never indicated to Mr. Johnson that it was a problem. EWS was aware of the indexes origin. This proactive measure underscores his intent to comply with ethical and legal obligations.

EWS's Mischaracterization of Index Utility

- EWS conflates the organizational function of the indexes with the substantive content of the underlying documents. While the indexes may reference invention disclosures or contracts by docket number or title, they do not include or reproduce the substantive content of

those materials. As a result, they cannot reasonably be considered trade secrets or confidential business documents.

<u>Lack of Harm or Use of Alleged Trade Secrets</u>

- EWS has not shown, or even particularly alleged or pleaded, how the indexes, in their alleged form, were used to harm its business or provide any competitive advantage to Mr. Johnson. Without substantive content, the indexes are functionally equivalent to a directory and do not have independent economic value.

EWS's assertion that the indexes contain substantive, confidential materials is baseless and unsupported by the evidence. Mr. Johnson has demonstrated through credible evidence that the indexes are organizational tools devoid of sensitive or proprietary information. This mischaracterization by EWS further undermines its likelihood of success on the merits and highlights the speculative nature of its claims.

**3. <u>EWS's Alleged Trade Secrets Do Not Qualify Such Under the Law</u>**

EWS asserts that Mr. Johnson misappropriated its "trade secrets," yet the evidence presented does not meet the statutory definition of a trade secret under either the DTSA or AUTSA. To qualify as a trade secret, information must (1) derive independent economic value from not being generally known or readily ascertainable through proper means and (2) be subject to reasonable efforts to maintain its secrecy. See 18 U.S.C. § 1839(3); A.R.S. § 44-401(4).

The alleged trade secrets, including domain name documents that are ascertainable through proper means as all available domains are publicly listed, were either publicly disclosed or not protectable. Further, the Indexes are made up of a majority of publicly available information and cryptic "notes" from Mr. Johnson referencing communications or decisions while not including the substance of either.

Insufficient Protective Measures: EWS failed to demonstrate that it took reasonable measures to protect its alleged trade secrets. Mr. Johnson's

use of an IP Policy from 2017, that was drafted prior to Mr. Johnson's employment, as evidence of Mr. Johnson's Indexes being trade secrets further undermines the claim that these materials were EWS's proprietary trade secrets. Mr. Johnson personally oversaw the editing and approval of the IP Policy yearly up until 2023. The version from 2017 shows the intention of EWS to mislead and present irrelevant information in support of their position.

## 4. No Evidence of Misappropriation by Mr. Johnson

Even if EWS could establish the existence of trade secrets, there is no evidence that Mr. Johnson misappropriated or used these secrets to the detriment of EWS. Misappropriation requires unauthorized use or disclosure, which EWS has not substantiated, particularly in view of the court's ruling that the Privileged Chat, the only document that EWS plausibly alleges was misappropriated, is *not a trade secret*. The Court's reliance on speculative assertions—such as the alleged metadata linking Mr. Johnson to filings by co-Mr. Johnson P.A.Z.E., LLC—cannot support the finding of the likelihood of success.

## 5. The Injunction Violates Mr. Johnson's Rights

The preliminary injunction imposes severe burdens on Mr. Johnson, including the turnover of electronic devices and privileged communications, in contravention of statutory and constitutional protections. The breadth and invasiveness of the injunction exceed what is necessary to preserve the status quo, violating both due process and Mr. Johnson's rights under the First and Fourth Amendments.

## 6. Procedural and Evidentiary Errors in Granting the Injunction

The injunction was granted based on incomplete and erroneous factual findings:

- Speculative Associations: The Court erroneously relied on a discredited claim that Mr. Johnson and co-defendant Brandon O'Loughlin were high school classmates at Mesa High School, and that Defendants

graduated in 1999, a premise derived from an unreliable public website that lists fictional characters as alumni. Mr. Johnson attended the entirety of his high school in Idaho, and did not graduate, receiving his GED, as shown I the record.

- **Failure to Acknowledge Defendant's Evidence:** Defendant provided substantial evidence refuting EWS's claims, including affidavits and documentation showing that key materials alleged to be trade secrets were developed independently and contain no sensitive or proprietary information.

## 7. Likelihood of Reversal on Appeal

The Court's errors in applying the law and its reliance on incomplete or speculative evidence create a strong likelihood of reversal on appeal. The Ninth Circuit has consistently held that preliminary injunctions should not be granted absent clear and convincing evidence on all four Winter factors, particularly where the alleged harms are speculative, and the balance of equities favors the Mr. Johnson.

For these reasons, Mr. Johnson has a substantial likelihood of success on the merits, justifying a stay of the injunction pending resolution of his appeal.

## **IRREPARABLE HARM IF THE INJUNCTION IS NOT STAYED**

Defendants will suffer severe and irreparable harm if the preliminary injunction is not stayed pending appeal. The injunction imposes unprecedented and unjustified intrusions into Defendant's professional and personal life, including the compelled turnover of electronic devices, online account credentials, and personal data, without any credible evidence that Mr. Johnson possesses EWS's confidential information, or that any has been misused. The harm Defendant faces include the following:

## 1. Disruption to Current Employment

The injunction requires Defendant to surrender electronic devices and credentials tied to his current employment. These devices include critical tools provided by his employer to fulfill his professional duties, such as:

- Company laptops, smartphones, and other hardware integral to his job performance.
- Online account credentials associated with his employer's systems and third-party applications.

The turnover of these devices and accounts would render Mr. Johnson unable to perform his job effectively, jeopardizing his ability to meet his professional obligations and maintain his livelihood. Such a disruption poses a grave risk to Mr. Johnson's new career, which he only recently secured after a lengthy period of unemployment.

## 2. Invasion of Personal Privacy

The injunction's broad and invasive scope compels Mr. Johnson to relinquish his personal electronic devices, including his phone, laptop, and other personal technology, for forensic imaging. These devices contain:

- Private communications unrelated to EWS.
- Sensitive personal data, such as financial records, family information, and health-related documents.

Requiring Mr. Johnson to surrender these devices without concrete evidence of wrongdoing violates his privacy rights and causes undue personal hardship.

## 3. Loss of Control Over Online Accounts

The injunction's demand for Mr. Johnson's online account credentials, including those unrelated to EWS, threatens to expose:

- Personal and professional emails.
- Social media accounts and communications.
- Online banking or other private accounts.

Forcing Mr. Johnson to turn over these credentials risks irreparable harm to his personal security and professional relationships, as the disclosure of such information may lead to unintended data breaches or reputational damage.

**4. Harm Without Evidence of Possession**

EWS has failed to provide credible evidence that Mr. Johnson possesses its confidential information or trade secrets. Mr. Johnson has consistently and unequivocally maintained that he does not retain any EWS property, confidential information, or trade secrets. Compelling Mr. Johnson to comply with the injunction in the absence of evidence of possession subjects him to undue hardship and unnecessary punitive measures.

**5. Prejudice to Defendant's Appeal**

Enforcement of the injunction will prejudice Mr. Johnson's ability to meaningfully pursue his appeal. If the injunction is enforced before appellate review, the harm suffered by Mr. Johnson—loss of professional tools, personal privacy violations, and reputational damage—cannot be undone even if the appellate court ultimately reverses or modifies the injunction. This renders appellate review effectively moot and denies Mr. Johnson the opportunity to protect his rights.

The irreparable harm Mr. Johnson faces far outweighs any speculative harm to EWS. The drastic and invasive measures imposed by the injunction lack any factual basis and will cause Mr. Johnson severe, irreparable harm to his career, privacy, and personal life. Mr. Johnson respectfully requests that this Court stay the injunction pending appeal to prevent these grave consequences.

**NO SUBSTANTIAL HARM TO PLAINTIFF**

EWS will not suffer substantial harm if the preliminary injunction is stayed pending appeal. The harms alleged by EWS are speculative, unsupported by evidence, and, in any event, adequately addressed by Mr. Johnson's established conduct and

commitments. Mr. Johnson has consistently and unequivocally abstained from using or disclosing any of the alleged confidential information since the settlement agreement, and EWS has failed to substantiate its claims of ongoing or imminent harm.

**1. Lack of Evidence of Use or Disclosure**

- EWS's allegations of harm rest entirely on speculation. EWS has not presented any concrete evidence that Defendant has used, disclosed, or retained its alleged confidential information or trade secrets.

- Mr. Johnson has explicitly denied possessing any of EWS's confidential materials and has adhered to this position throughout the litigation. The Court's findings of potential harm were based on theoretical risks, not demonstrable acts of misuse or disclosure.

**2. Defendant's Conduct Precludes Harm**

- Mr. Johnson has taken every reasonable step to ensure compliance with his obligations:
  - He has refrained from accessing or using any of the information at issue since the settlement agreement was executed.
  - He has fully cooperated with the litigation process and consistently maintained his professional and ethical obligations.

- Defendant's conduct demonstrates that there is no imminent or ongoing threat of harm to EWS, undermining the necessity of the injunction.

**3. Speculative Nature of Alleged Harms**

- The Court's conclusion that irreparable harm could result from the alleged possession of EWS's information was based on hypothetical scenarios. For example:
  - There is no evidence linking Defendant's alleged actions to any concrete damage to EWS's competitive position.
  - The alleged risk of misuse or dissemination of trade secrets has not materialized and remains purely conjectural.

- Injunctions are intended to address imminent, non-speculative harm. Here, the absence of evidence of actual harm or a credible threat underscores the overreach of the injunction.

**4. Plaintiff's Interests Are Protected Without the Injunction**

- Even if some residual risk exists, Plaintiff's interests are adequately safeguarded by Defendant's abstention from using the alleged information. This voluntary and demonstrable conduct obviates the need for the intrusive and punitive measures imposed by the injunction.

- Any EWS claim that the stay would harm its competitive position is baseless given Mr. Johnson's complete non-involvement with EWS's competitors and his demonstrated disinterest and ability to exploit any of the alleged trade secrets.

**5. The Balance of Hardships Favors the Stay**

- Staying the injunction will not impose any harm on EWS while preventing the severe and irreparable harm faced by Defendant. The alleged risks to EWS's business are speculative and hypothetical, while the harms to Defendant—loss of employment tools, invasion of privacy, and reputational damage—are immediate and concrete.

EWS has failed to demonstrate that it will suffer substantial harm absent enforcement of the injunction. Defendant's clear and consistent abstention from any use or disclosure of EWS's alleged confidential information eliminates any realistic threat of harm. Accordingly, a stay of the injunction is both equitable and necessary to protect Defendant from irreparable harm without imposing undue risk on Plaintiff.

**PUBLIC INTEREST**

The public interest strongly supports staying the injunction pending appeal. Preliminary injunctions are an extraordinary remedy, and their enforcement without clear evidence of necessity undermines principles of fairness, privacy, and judicial restraint. In this case, the injunction imposes severe and intrusive measures on Mr. Johnson based on

speculative allegations, creating serious concerns about overreach and fairness in the judicial process.

### 1. Upholding Privacy and Personal Freedom

- The public has a vested interest in protecting individuals from unwarranted invasions of their privacy. The injunction's requirement for Defendant to surrender personal electronic devices and online account credentials—including those tied to his current employment—poses significant risks to privacy and personal freedom.
- Allowing such an invasive injunction to proceed without concrete evidence of wrongdoing sets a troubling precedent that could erode privacy protections for others in similar situations.

### 2. Protecting Employment Rights and Economic Stability

- The public interest is served by ensuring individuals can maintain their livelihoods without unjustified interference. Enforcing this injunction would hinder Defendant's ability to perform his job, jeopardizing his employment and economic stability.
- A stay ensures that individuals are not deprived of their professional opportunities based on unproven and speculative claims, aligning with broader societal interests in economic security and fair treatment in the workplace.

### 3. Encouraging Judicious Use of Injunctive Relief

- The issuance of preliminary injunctions must adhere to stringent standards to prevent misuse. Public confidence in the judicial system depends on courts granting injunctive relief only when supported by clear and convincing evidence of imminent harm.
- Staying the injunction ensures that appellate courts have the opportunity to review the decision without the risk of irreversible harm, reinforcing public trust in the fairness and accountability of the judicial process.

### 4. Preventing Unnecessary Litigation and Overreach

- The injunction, as currently framed, risks expanding the scope of trade secret and confidentiality claims beyond their intended purpose, potentially chilling legitimate professional activities and interactions.
- Staying the injunction pending appeal serves the public interest by ensuring that courts carefully balance the rights of all parties, preventing overly broad or punitive measures that could stifle professional mobility and innovation.

**5. Minimal Impact on EWS and Broader Interests**

- The public interest is not served by enforcing an injunction that disproportionately harms Defendant while addressing speculative risks to EWS. Defendant's abstention from using or disclosing EWS's alleged confidential information demonstrates that the injunction is unnecessary to protect broader public or commercial interests.

The public interest supports granting a stay of the injunction to protect individual privacy, employment rights, and the integrity of the judicial process. A stay allows the appellate court to carefully review the case while avoiding the irreversible harms and chilling effects that would result from immediate enforcement of the injunction.

<strong>Conclusion</strong>

For the foregoing reasons, Defendant Warren Vurl Johnson respectfully requests that this Court grant a stay of its December 4, 2024 Order granting Plaintiff Early Warning Services LLC's Motion for Preliminary Injunction, pending the resolution of Defendant's appeal to the United States Court of Appeals for the Ninth Circuit.

Defendant has demonstrated a substantial likelihood of success on the merits, irreparable harm absent a stay, the absence of substantial harm to Plaintiff, and that the public interest favors granting a stay. Allowing the injunction to proceed while appellate review is pending would cause irreversible harm to Defendant, undermine fundamental privacy rights, and enforce measures based on speculative and unsupported allegations.

In the alternative, Defendant respectfully requests a temporary stay of the injunction to allow sufficient time to seek relief from the appellate court.

1

2

3    Respectfully Submitted,

4                                                            /s/Warren V Johnson

5                                                      Warren V. Johnson
                                              2406 Alabama Street, Unit 7C
6                                                   Lawrence, KS 66046
7                                                        208.317.1686
                                                 warrenvjohnson@gmail.com
8                                                              *Pro Se*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2
**Certificate of Service**

3

4
I, Warren V. Johnson, hereby certify that on December 4, 2024, I electronically filed

the foregoing Motion to Stay the Preliminary Injunction and an Expedited Review with

5
the Clerk of the Court using the CM/ECF system, which will send notification of such

6
filing to all counsel of record.

7

8

9
Respectfully submitted,

10
  /s/Warren V Johnson/

11
Warren Johnson

12
2406 Alabama St, Unit 7 C
Lawrence, KS 66046

13
warrenvjohnson@gmail.com

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 15 -