# EXHIBIT A

**KILPATRICK TOWNSEND & STOCKTON LLP**
Erick Durlach, Arizona Bar No. 024253
*edurlach@ktslaw.com*
Dennis L. Wilson, California Bar No. 155407
(admitted *pro hac vice*)
*dwilson@ktslaw.com*
Sara K. Stadler, New York Bar No. 2620276
(admitted *pro hac vice*)
*sstadler@ktslaw.com*
6909 E. Greenway Parkway, Suite 100
Scottsdale, Arizona 85254-2149
Tel: (602) 726-7319
Fax: (623) 321-1009

**BRYAN CAVE LEIGHTON PAISNER LLP**
George C. Chen, Arizona Bar No. 019704
*george.chen@bclplaw.com*
Jacob A. Maskovich, Arizona Bar No. 021920
*jamaskovich@bclplaw.com*
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
Tel: (602) 364-7000
Fax: (602) 364-7070

Attorneys for Plaintiff and Counterclaim-
Defendant Early Warning Services, LLC

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Early Warning Services, LLC,<br><br>　　　　Plaintiff and<br>　　　　Counterclaim-Defendant,<br><br>　　v.<br><br>Warren Vurl Johnson,<br><br>　　　　Defendant and<br>　　　　Counterclaim-Plaintiff;<br>　　　　and<br><br>Brandon O'Loughlin and P.A.Z.E.,<br>LLC,<br><br>　　　　Defendants. | Case No. CV-24-01587-PHX-SMB<br><br><br>**PLAINTIFF AND COUNTERCLAIM-DEFENDANT EARLY WARNING SERVICES, LLC'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT P.A.Z.E., LLC AND SUPPORTING MEMORANDUM** |

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................. i

TABLE OF AUTHORITIES ........................................................ iii

I.    BACKGROUND ................................................................ 1

    A.    Defendants' Scheme to Extract Payment from EWS ...... 1

    B.    EWS's Prior Rights in Its PAZE and Ƶ Marks ................ 3

    C.    P.A.Z.E.'s Lack of Trademark Rights in Its Alleged PAƵE and PAZE Marks .................................................. 4

    D.    P.A.Z.E.'s Default .......................................................... 5

    E.    Johnson's Subsequent Attempt to Litigate P.A.Z.E.'s Claims ............................................................................. 5

II.   ARGUMENT ..................................................................... 6

    A.    Legal Standard ............................................................... 7

    B.    The Court Has Subject Matter Jurisdiction Over This Dispute. ......................................................................... 8

    C.    The Court Has Personal Jurisdiction Over P.A.Z.E. ....... 9

    D.    The *Eitel* Factors Strongly Favor Entry of Default Judgment. ....................................................................... 9

        1.    The First, Sixth, and Seventh *Eitel* Factors Favor Default Judgment Because P.A.Z.E. Consciously Decided Not to Defend EWS's Claims. ................................................................. 9

        2.    The Second and Third *Eitel* Factors Favor Default Judgment Because EWS's Complaint and Supporting Evidence Establish P.A.Z.E.'s Liability ................................................................. 10

            a.    EWS Has Established P.A.Z.E.'s Liability for Trade Secret Misappropriation. ................................. 11

            b.    EWS Has Established P.A.Z.E.'s Liability for Unjust Enrichment. ............... 13

            c.    EWS is Entitled to a Declaration of Noninfringement of P.A.Z.E.'s Alleged PAƵE and PAZE Marks. ....................... 14

3.    The Fourth *Eitel* Factor Favors Default Judgment Because P.A.Z.E.'s Conduct Warrants the Damages EWS Seeks. ...................18

4.    The Fifth *Eitel* Factor Favors Default Judgment Because the Facts are Undisputed. ......................19

E.    EWS Is Entitled to Injunctive, Declaratory, and Monetary Relief on Its Claims Against P.A.Z.E. ..........................19

1.    A Permanent Injunction is Appropriate. ...............................19

2.    This Court Should Issue a Declaratory Judgment. ...............................................................................20

3.    This Court Should Issue an Order Invalidating P.A.Z.E.'s Pending Service Mark Application ....................21

4.    This Court Should Award EWS Its Actual Damages of $22,950.20, Exemplary Damages of Twice That Amount, and Post-Judgment Interest. ....................................................................22

5.    This Court Should Award EWS Its Attorneys' Fees Incurred in Preparing This Motion. .............................23

III.    CONCLUSION ........................................................................24

CERTIFICATE OF SERVICE .........................................................26

ii

# TABLE OF AUTHORITIES

**Cases**

*A&C Trade Consultants, Inc. v. Alvarez,*
No. 18-cv-05356-MMC, 2021 WL 4749436 (N.D. Cal. Oct. 12, 2021) ............... 24

*B & B Hardware, Inc. v. Hargis Indus., Inc.,*
575 U.S. 138 (2015)................................................................................................ 22

*Bank of Am., N.A. v. Carver,*
No. CV-24-08002-PCT-DGC, 2024 WL 4566689 (D. Ariz.
Oct. 24, 2024) ........................................................................................ 8, 9, 10, 19

*BBK Tobacco & Foods LLP v. Cent. Coast Agric., Inc.,*
97 F.4th 668 (9th Cir. 2024) ............................................................................ 15, 21

*Berkadia Real Est. Advisors LLC v. Wadlund,*
No. CV-22-00049-TUC-CKJ, 2022 WL 3213113 (D. Ariz. Aug. 9, 2022) .......... 11

*Capitol Specialty Ins. Corp. v. Chaldean LLC,*
No. CV-21-00342-PHX-MTL, 2022 WL 2953062 (D. Ariz.
July 26, 2022) ................................................................................................... 22, 23

*Corcamore, LLC v. SFM, LLC,*
978 F.3d 1298 (Fed. Cir. 2020) ............................................................................ 17

*Derek Andrew, Inc. v. Poof Apparel Corp.,*
528 F.3d 696 (9th Cir. 2008) ................................................................................ 24

*Doyle v. Al Johnsons Swedish Rest. & Butik, Inc.,*
101 U.S.P.Q.2d 1780 (T.T.A.B. 2012)................................................................... 18

*eBay Inc. v. MercExchange, LLC,*
547 U.S. 388 (2006)................................................................................................ 19

*Eitel v. McCool,*
782 F.2d 1470 (9th Cir. 1986) ............................................................................ 7, 8

*Fire Sec. Elec. & Commc'ns Inc. v. Nye,*
No. CV-23-02730-PHX-DLR, 2024 WL 620813 (D. Ariz. Feb. 14, 2024) .......... 11

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
564 U.S. 915 (2011)................................................................................................. 9

*HTS, Inc. v. Boley,*
954 F. Supp. 2d 927 (D. Ariz. 2013) .................................................. 10, 15, 22, 23

*In re Bahramian,*
Ser. No. 87444322, 2019 WL 5290184 (T.T.A.B. Sept. 24, 2019) ........................ 17

iii

*Jason Scott Collection, Inc. v. Trendily Furniture, LLC*,
  68 F.4th 1203 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 550 (2024) ........................23

*Landstar Ranger, Inc. v. Parth Enters.*,
  725 F. Supp. 2d 916 (C.D. Cal. 2010) ................................................................10, 19

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014) ..............................................................................................17

*Matal v. Tam*,
  582 U.S. 218 (2017) ..............................................................................................22

*McDermott v. S.F. Women's Motorcycle Contingent*,
  81 U.S.P.Q.2d 1212 (T.T.A.B. 2006), *aff'd*, 240 F. App'x 865
  (Fed. Cir. 2007)....................................................................................................6, 18

*PepsiCo, Inc. v. Cal. Sec. Cans*,
  238 F. Supp. 2d 1172 (C.D. Cal. 2002) ........................................................10, 14, 19

*Philanthropist.com, Inc. v. Gen. Conf. Corp. of Seventh-Day Adventists*,
  2021 U.S.P.Q.2d 643 (T.T.A.B. 2021), *aff'd*, No. 2021-2208,
  2022 WL 3147202 (Fed. Cir. Aug. 8, 2022) (per curiam) .......................................18

*Premier Funding Grp. v. Aviva Life & Annuity Co.*,
  No. CV-14-01633-PHX-DGC, 2014 WL 6885732 (D. Ariz. Dec. 8, 2014) .... 13, 14

*Radiance Found., Inc. v. N.A.A.C.P.*,
  786 F.3d 316 (4th Cir. 2015) ................................................................................17

*San Diego Cty. Credit Union v. Citizens Equity First Credit Union*,
  65 F.4th 1012 (9th Cir. 2023) ..........................................................................21, 22

*United States v. Taylor*, No. CV-23-00506-PHX-SMB, 2024 WL
  4837021 (D. Ariz. Nov. 20, 2024)......................................................................8, 10

*Universal Bldg. Maint. LLC v. Calcote*,
  No. SACV 22-1125 JVS (DFMx), 2022 WL 18397628 (C.D. Cal.
  Nov. 7, 2022) .......................................................................................................19

**Statutes**

15 U.S.C. §
  1063...................................................................................................................18
  1065.....................................................................................................................4
  1115(b)................................................................................................................4
  1119.................................................................................................7, 15, 21, 22
  1121.....................................................................................................................8
  1125(a) ................................................................................6, 8, 14, 20
  1125(a)(1)(A)......................................................................................................15

iv

18 U.S.C. §
  1836 *et seq.* .................................................................................... 8, 11
  1836(b)(3)(D) ..................................................................................... 23
  1836(c) ................................................................................................ 8
  1839(3) .............................................................................................. 11
  1839(3)(B) ......................................................................................... 11
  1839(5) .............................................................................................. 11
  1839(6)(A) ......................................................................................... 11

28 U.S.C. §
  1331 ..................................................................................................... 8
  1338(a) ................................................................................................ 8
  1367(a) ................................................................................................ 8
  1961 ..................................................................................................... 7
  2201(a) ................................................................................. 6, 8, 15, 20

A.R.S. §
  44-401 *et seq.* ................................................................................ 8, 11
  44-401(2) ........................................................................................... 11
  44-401(4) ........................................................................................... 11
  44-403 ............................................................................................ 7, 22
  44-403(B) ........................................................................................... 23
  44-404(3) ........................................................................................... 23

**Other Authorities**

2 J. Thomas McCarthy,
  *McCarthy on Trademarks and Unfair Competition*, § 19:3, Westlaw
  (5th ed. database updated Nov. 2024) ..................................................... 22

USPTO,
  *Trademark Manual of Examining Procedure* ("TMEP")
  (Nov. 2024), available at https://tmep.uspto.gov/RDMS/TMEP/
  current#/current/TMEP-1300d1e30.html
  § 1301.01 ...................................................................................... 16, 17
  § 1301.01(a) ....................................................................................... 17
  § 1301.01(a)(i) .................................................................................... 17
  § 1301.01(a)(ii) ................................................................................... 17

**Rules**

Fed. R. Civ. P.
  54(c) ................................................................................................... 23
  55(b) ............................................................................................... 5, 7

## I.    <u>BACKGROUND</u>

### A.    **Defendants' Scheme to Extract Payment from EWS**

Defendant Brandon O'Loughlin ("O'Loughlin") directly or indirectly formed Defendant P.A.Z.E., LLC ("P.A.Z.E.") on January 26, 2023, and is its Member and Manager. Compl. ¶ 16, Dkt. 1 at 5. Defendant Warren Vurl Johnson ("Johnson"), a member of the Arizona Bar, is the former Senior Intellectual Property Counsel for Plaintiff Early Warning Services, LLC ("EWS"). Compl. ¶ 5, Dkt. 1 at 2. EWS terminated Johnson's at-will employment on January 19, 2023. *Id.* ¶ 9, Dkt. 1 at 3; *see* Decl. Tracy Cheney Supp. Mot. Prelim. Inj. ("Cheney Decl.") Ex. 18 (¶ 11), Dkt. 18 at 7.

Johnson has repeatedly represented to this Court that he does not know and has no way to contact O'Loughlin. *See, e.g.*, Mot. Ext. Time Ans. at 2, Dkt. 14 at 2; Am. Counterclaims ¶ 131, Dkt. 43 at 39 (under seal). In fact, however, the evidence shows Johnson has known O'Loughlin and O'Loughlin's family members, Brent and Brody, since at least 2015, when Johnson used his former work email address ending in @earlywarning.com to exchange emails with O'Loughlin and Brent on multiple occasions, one of which included a reference to Johnson's fondness for Brody.[1] Declaration of Salman Zefar ("Zefar Decl.") ¶¶ 7–8, Ex. 1. In other words, Johnson and O'Loughlin's relationship spanned many years, with a history of trust and familiarity long predating the events giving rise to this action.

EWS's uncontested allegations establish that in the months before Johnson's termination, Johnson enlisted O'Loughlin's help with a scheme to extract money from EWS using EWS's trade secrets and privileged and confidential information, which Johnson had exfiltrated from EWS—including by emailing EWS's documents to his

---

[1] In addition, as of July 9, 2024, the website http://old-friends.co also listed both O'Loughlin and Johnson as members of the Mesa High School class of 1999 (Cheney Decl. Ex. 7, Dkt. 17-2 at 11, 19), although both Defendants dispute this fact. *See* Decl. Warren V. Johnson Opp. Mot. Prelim. Inj. at 4 ¶ 11, Dkt. 24-1 at 4; Mot. Dismiss Compl. at 12, Dkt. 45 at 12.

personal email account. Compl. ¶¶ 11, 40, 55, Dkt. 1 at 3–4, 8, 10. In furtherance of this scheme, Johnson informed O'Loughlin that EWS was interested in registering certain domain names in connection with EWS's launch of its PAZE service. *Id.* ¶ 11(a), Dkt. 1 at 3. Within a week of Johnson's termination, O'Loughlin registered those domain names before EWS could do so, and then formed Defendant P.A.Z.E., LLC. *Id.* ¶¶ 11(a), (b), 37, 38, 55, 57–60, Dkt. 1 at 3, 8, 10–11.

O'Loughlin used P.A.Z.E. to create a sham gripe website and social media accounts targeting EWS's business and reputation, then (again, as P.A.Z.E.) applied to register **PAŻE** and PAZE as service marks with the United States Patent and Trademark Office ("USPTO"), allegedly with Johnson's assistance. *Id.* ¶¶ 11(b), (c), 61, 66–69, Dkt. 1 at 3–4, 11, 14. Having thus laid the groundwork, P.A.Z.E. sent letters to EWS's counsel threatening "lawfare" against EWS, and threatening EWS's business and reputation, if EWS did not purchase P.A.Z.E. and its various "assets." *Id.* ¶¶ 11(d), 79–82, 136, Dkt. 1 at 4, 16–17, 25; Cheney Decl. Exs. 8, 9, Dkt. 17-3 at 22–29.

P.A.Z.E. followed through on these threats by commencing judicial proceedings in the USPTO's Trademark Trial and Appeal Board ("TTAB") opposing EWS's PAZE application and challenging the registration of EWS's **Ż** mark (the "TTAB Proceedings"), in both cases based on P.A.Z.E.'s claimed rights in the service marks **PAŻE** and PAZE. Compl. ¶¶ 11(e), 70, 137, 140, Dkt. 1 at 4, 14–15, 25; Cheney Decl. Exs. 10, 12, Dkt. 17-3 at 4–152; Dkt. 17-4.

P.A.Z.E. also repeatedly posted screen shots of a privileged Microsoft Teams chat between Johnson and EWS's General Counsel, Tracy Cheney (the "Teams Chat") on P.A.Z.E.'s website and social media accounts, and in P.A.Z.E.'s public filings in the TTAB. Compl. ¶¶ 73–75, Dkt. 1 at 15; Cheney Decl. Exs. 10, 12, 16, Dkts. 19-1, 19-2, 19-3 (under seal). When EWS sought to shield its privileged information from public view by filing motions to seal, P.A.Z.E. repeatedly reposted the Teams Chat in the TTAB Proceedings, even after the TTAB sealed P.A.Z.E.'s

2

filings containing the Teams Chat. Compl. ¶ 76, Dkt. 1 at 16; Cheney Decl. Ex. 14, Dkt. 19-3 (under seal).

Prior to initiating this lawsuit, EWS suspected a connection between Johnson, O'Loughlin, and P.A.Z.E. On June 12, 2024, and June 17, 2024, this connection was confirmed when P.A.Z.E. filed documents in the TTAB Proceedings containing metadata showing "Warren Johnson" as the author of those documents, which were purportedly signed by O'Loughlin on P.A.Z.E.'s behalf. Compl. ¶ 77 & Ex. A, Dkt. 1 at 16, 32–34. EWS filed its Complaint against Johnson, O'Loughlin, and P.A.Z.E. on June 28, 2024 (Dkt. 1), and personally served Johnson on July 1, 2024. Dkt. 11. After locating O'Loughlin, EWS personally served Defendants O'Loughlin and P.A.Z.E. on September 11, 2024. Dkts. 33, 34.

Since then, EWS has continued to diligently investigate its claims, and has identified additional connections between Johnson, O'Loughlin, and P.A.Z.E., including emails between Johnson and O'Loughlin dating to 2015 and additional metadata showing that the same user ("warre") created *both* (a) documents filed with P.A.Z.E.'s Application Serial No. 98252022 to register the alleged **PAZE** mark *and* (b) Johnson's opposition to EWS's motion to dismiss his counterclaims (Dkt. 48). Declaration of Paras Shah ("Shah Decl.") ¶¶ 2–5, Exs. 1–2. All this evidence shows that the Defendants are working together to perpetrate the scheme alleged in EWS's Complaint.

**B.    EWS's Prior Rights in Its PAZE and Ƶ Marks**

Defendants' scheme, in part, involves challenging EWS's PAZE and Ƶ marks, in which EWS enjoys priority. *First*, on April 5, 2016, EWS applied to register its Ƶ mark under Application Serial No. 86965192 for various financial transaction services in Class 36. Compl. ¶ 146, Dkt. 1 at 26; *see* Cheney Decl. Ex. 11, Dkt. 17-3 at 154–59. EWS first used its Ƶ mark in United States commerce on August 28, 2016. Compl. ¶ 147, Dkt. 1 at 26. EWS's Ƶ application subsequently matured into Registration No. 5476070, which issued on May 22, 2018, and that registration has

become incontestable.[2] Compl. ¶¶ 146, 150, Dkt. 1 at 26. EWS's ⚡ mark is inherently distinctive for EWS's services under the mark, and thus is valid and protectable. Compl. ¶ 149, Dkt. 1 at 26. EWS owns prior rights in its ⚡ mark. *Id.* ¶ 148, Dkt. 1 at 26.

*Second*, on November 9, 2022, EWS applied to register its PAZE mark under Application Serial No. 97669754 for various financial transaction services in International Class 36. Compl. ¶ 142, Dkt. 1 at 25; *see* Cheney Decl. Ex. 2, Dkt. 17-1 at 17–21. EWS first used its PAZE mark in United States commerce on March 26, 2023. Compl. ¶ 143, Dkt. 1 at 25. EWS's PAZE mark is inherently distinctive for EWS's services under the mark, and thus is valid and protectable. Compl. ¶ 146, Dkt. 1 at 26. EWS owns prior rights in its PAZE mark. *Id.* ¶ 144, Dkt. 1 at 26.

**C.    P.A.Z.E.'s Lack of Trademark Rights in Its Alleged PAŻE and PAZE Marks**

P.A.Z.E. does not own any federal or state registrations covering its alleged PAŻE mark or PAZE mark.[3] *Id.* ¶ 151, Dkt. 1 at 26. In connection with P.A.Z.E.'s applications to register its alleged PAŻE and PAZE marks with the USPTO, P.A.Z.E. represented to the USPTO that it began using those marks to provide "financial information" and "online instruction" on its website at https://www.paze.website[4] on January 23, 2023. Cheney Decl. Ex. 12, Dkt. 17-4 at 10 (¶¶ 23–25). In fact, as discussed below, P.A.Z.E.'s sham gripe site and related activities do not constitute

---

[2] Section 15 of the Lanham Act, 15 U.S.C. § 1115(b), provides that incontestable registrations

> shall be conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce . . . . on or in connection with the goods or services specified in the affidavit filed under [15 U.S.C. § 1065].

[3] P.A.Z.E.'s alleged PAŻE mark is a stylized version of EWS's alleged PAZE mark and contains a colorable imitation of EWS's ⚡ mark. Compl. ¶ 139, Dkt. 1 at 25.

[4] This website was taken down following the Court's issuance of its preliminary injunction order on December 4, 2024. *See* Dkt. 70.

4

*bona fide* use of the alleged PAŽE and PAZE marks in commerce in connection with any "services" as contemplated by the Lanham Act. Compl. ¶ 152, Dkt. 1 at 26. This means P.A.Z.E. lacks trademark rights in its alleged PAŽE and PAZE marks, is not entitled to registration, and cannot state plausible claims against EWS for infringement.[5] *Id.*

### D.    P.A.Z.E.'s Default

On October 1, 2024, O'Loughlin and P.A.Z.E. jointly moved to dismiss EWS's Complaint. Dkt. 38. On October 3, 2024, the Court struck this motion, stating that O'Loughlin cannot represent P.A.Z.E. in federal court, as he is not a licensed attorney. Dkt. 40 at 1. The Court's Order gave P.A.Z.E. "30 days to hire counsel and file a new motion to dismiss or an answer" and gave O'Loughlin "14 days to refile his motion to dismiss on his own behalf." *Id.* at 2. O'Loughlin refiled his own motion to dismiss on October 11, 2024 (Dkt. 45), but P.A.Z.E. neither appointed counsel nor answered. The Clerk of Court therefore entered a notice of default on November 20, 2024. Dkts. 61, 62. EWS now moves for default judgment (this "Motion") on its claims against P.A.Z.E. pursuant to Federal Rule of Civil Procedure 55(b).

### E.    Johnson's Subsequent Attempt to Litigate P.A.Z.E.'s Claims

On December 14, 2024, Johnson moved for leave to assert amended counterclaims (Dkt. 77), including a counterclaim alleging that EWS's PAZE mark "is invalid due to actions taken by EWS after [Johnson's] departure," and requesting a declaration that EWS's PAZE application is "invalid, and ruling [that] EWS has no senior rights in the 'paze' mark as a result of [P.A.Z.E.'s] earlier use date, as well as attorneys' fees, costs, and any other relief that the Court deems just and proper."[6]

---

[5] As discussed *infra* at footnote 10, P.A.Z.E. also lacks standing to bring the TTAB Proceedings because it cannot plausibly allege a cognizable legal interest potentially impaired by EWS's registration of its PAZE and Ž marks.

[6] Johnson's moving papers publicly revealed portions of EWS's privileged Teams Chat in his proposed amended counterclaims *four separate times*, ignoring multiple Court orders to redact EWS's privileged information. Johnson fully complied with

Johnson's Sec. Am. Ans. & Counterclaims ("Sec. Am. Counterclaims") at 52 ¶ 244, 54, Dkt. 96 at 53, 55 (public version). This claim, essentially made on P.A.Z.E.'s behalf, contains allegations substantially identical to those nominally asserted by P.A.Z.E.'s Notice of Opposition to EWS's PAZE application in the TTAB, a document O'Loughlin purportedly signed. *See* Cheney Decl. Ex. 12, Dkt. 17-4.

Now that P.A.Z.E. has defaulted, Johnson lacks a vehicle to challenge EWS's PAZE application, so Johnson attempts to manufacture his own standing by alleging he "personally filed [the PAZE application] for EWS" and therefore has "a particular interest in correcting the fraud carried out by EWS." Sec. Am. Counterclaims at 52, Dkt. 96 at 53. These allegations fail to plausibly establish Johnson's standing to seek declaratory relief as a matter of law. Johnson signed EWS's PAZE application *on EWS's behalf, as EWS's attorney*. He has no legally cognizable interest to vindicate. Further, because Johnson is not a party to P.A.Z.E.'s opposition proceeding in the TTAB, he "cannot be considered more than a mere intermeddler" in that dispute, either. *See McDermott v. S.F. Women's Motorcycle Contingent*, 81 U.S.P.Q.2d 1212, 1216 (T.T.A.B. 2006) (dismissing opposition for lack of standing where opposer merely alleged he was "personally offended by the 'illegal behavior' and 'illegal acts' purportedly committed by participants in applicant's parade services" and objected to registration on that basis), *aff'd*, 240 F. App'x 865 (Fed. Cir. 2007). Johnson has no basis to insert himself into the briefing or decision on this Motion.

## II.   <u>ARGUMENT</u>

The Complaint's undisputed averments and the record establish P.A.Z.E.'s liability on EWS's claims against P.A.Z.E. for misappropriating trade secrets and unjust enrichment and also support EWS's entitlement to a declaration of noninfringement of P.A.Z.E.'s alleged **PAŻE** and PAZE marks under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201(a), the Lanham Act, 15 U.S.C.

---

the Court's orders on his *fifth* attempt, and only after EWS moved for sanctions. *See* Dkt. 94.

§ 1125(a), and Arizona law. P.A.Z.E.'s default and the record therefore entitle EWS to default judgment on each of EWS's claims against P.A.Z.E., as well as the following relief:

1.    A permanent injunction prohibiting P.A.Z.E. from: (a) acquiring, possessing, using, or disclosing any of EWS's trade secrets and privileged and confidential information, including the Teams Chat; and (b) registering, acquiring, renewing, maintaining, or using any domain names containing EWS's PAZE mark or confusingly similar versions of it;

2.    A declaratory judgment of noninfringement finding that (a) EWS's PAZE and **Z** marks are valid and protectable; (b) as between EWS and P.A.Z.E., EWS has prior rights in its PAZE and **Z** marks; (c) P.A.Z.E. lacks trademark rights in its alleged **PAŻE** and PAZE marks; and therefore (d) use of EWS's PAZE and **Z** marks does not infringe P.A.Z.E.'s rights;

3.    An order invalidating P.A.Z.E.'s Application Serial No. 98255290[7] to register the alleged PAZE mark under 15 U.S.C. § 1119;

4.    Actual damages in the amount of $22,950.20 on EWS's trade secret and unjust enrichment claims; exemplary damages of twice that amount ($45,900.40) because of P.A.Z.E.'s willful and malicious acts of misappropriation, pursuant to the Arizona Uniform Trade Secrets Act ("AUTSA"), A.R.S. § 44-403; and an award of post-judgment interest on any monetary damages awarded under 28 U.S.C. § 1961.

5.    An award of EWS's attorneys' fees incurred in preparing this Motion.

**A.    Legal Standard**

A default judgment under Rule 55(b) is appropriate because the Court has both subject matter jurisdiction and personal jurisdiction over P.A.Z.E., and because that relief is appropriate under the seven factors in *Eitel v. McCool*, 782 F.2d 1470 (9th

---

[7] The Complaint seeks invalidation of P.A.Z.E.'s Application Serial No. 98252022 as well, but that application was abandoned on October 2, 2024, when P.A.Z.E. failed to respond timely to an Office Action refusing registration.

Cir. 1986):

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.* at 1471–72.[8] "These *Eitel* factors are often analyzed together and require the court to consider whether the complaint states a plausible claim for relief under the Rule 8 pleading standards." *Bank of Am., N.A. v. Carver*, No. CV-24-08002-PCT-DGC, 2024 WL 4566689, at *2 (D. Ariz. Oct. 24, 2024) (citations omitted). Thus, "[t]he court must accept the allegations of the complaint as true when applying these *Eitel* factors." *Id.* Here, those factors heavily weigh in favor of default judgment.

## B. The Court Has Subject Matter Jurisdiction Over This Dispute.

EWS's Complaint asserts claims against P.A.Z.E. under the Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1836 *et seq.*; the Federal Declaratory Judgment Act, 28 U.S.C. § 2201(a); and the Lanham Act, 15 U.S.C. § 1125(a). Compl. ¶¶ 88–103, 135–55, Dkt. 1 at 18–20, 24–27. The Court has subject matter jurisdiction over these federal claims under 28 U.S.C. § 1331, as well as under 15 U.S.C. § 1121, 18 U.S.C. § 1836(c), and 28 U.S.C. §§ 1338(a) and 2201(a).

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1367(a) over EWS's state law claims for misappropriation of trade secrets under AUTSA, A.R.S. § 44-401 *et seq.*, and unjust enrichment, as those claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a); *see* Compl. ¶¶ 104–13, 132–34, Dkt. 1 at 20–21, 24. The Court has subject matter jurisdiction over the claims in suit.

---

[8] "[W]hile some districts' local rules impose additional requirements for default judgment, the District of Arizona does not." *United States v. Taylor*, No. CV-23-00506-PHX-SMB, 2024 WL 4837021, at *2 (D. Ariz. Nov. 20, 2024).

**C.      The Court Has Personal Jurisdiction Over P.A.Z.E.**

P.A.Z.E. is an active Arizona domestic limited liability company with an Arizona address. Compl. ¶¶ 16, 20, Dkt. 1 at 5; *see Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) (describing "the paradigm forum for the exercise of general jurisdiction" over a corporation as "one in which the corporation is fairly regarded as at home" (citation omitted)). P.A.Z.E. additionally held itself out in the TTAB filings as an "Arizona limited liability company having a principle [sic] place of business in Mesa, Arizona." Cheney Decl. Ex. 12, Dkt. 17-4 at 7 (public version). This Court has personal jurisdiction over P.A.Z.E.

**D.      The *Eitel* Factors Strongly Favor Entry of Default Judgment.**

**1.      The First, Sixth, and Seventh *Eitel* Factors Favor Default Judgment Because P.A.Z.E. Consciously Decided Not to Defend EWS's Claims.**

Each of the first, sixth, and seventh *Eitel* factors favors entry of default judgment. Taking the sixth *Eitel* factor first, the record establishes P.A.Z.E.'s receipt of actual notice of this litigation at least as early as September 11, 2024, when O'Loughlin—P.A.Z.E.'s statutory agent, member, and manager—was personally served with process on P.A.Z.E.'s behalf. Dkt. 34. P.A.Z.E. then attempted to enter an appearance on October 1, 2024, by joining with O'Loughlin to move to dismiss EWS's Complaint. Dkt. 38. On October 3, 2024, the Court struck this motion and ordered P.A.Z.E. to appoint counsel, as O'Loughlin is not an attorney, giving P.A.Z.E. "30 days to hire counsel and file a new motion to dismiss or an answer." Dkt. 40 at 1, 2. P.A.Z.E. did not comply.[9] There is no question of excusable neglect under these circumstances. *See Bank of Am.*, 2024 WL 4566689, at *3 (finding it "unlikely that [defendant's] failure to answer and the resulting default was the result of excusable neglect" based on the affidavits of proper service (citation omitted)).

---

[9] O'Loughlin subsequently moved to dismiss in his own name, Dkt. 45, establishing he acknowledged and understood the Court's Order.

Turning to prejudice under the first *Eitel* factor, "[t]his factor favors default judgment where the defendant fails to answer the complaint because the plaintiff 'would be denied the right to judicial resolution of the claims presented, and would be without other recourse for recovery.'" *Id.* at *2 (citation omitted). By its default, P.A.Z.E. has admitted the truth of EWS's allegations concerning the harm EWS has suffered and will continue to suffer because of P.A.Z.E.'s unlawful conduct. Thus, if the Court declines to enter default judgment against P.A.Z.E., EWS will have no remedy and no remaining means to prevent P.A.Z.E. from inflicting further harm.

Finally, under the seventh *Eitel* factor, while cases ordinarily should be tried on the merits, "[t]he existence of Rule 55(b) . . . indicates that [this] preference . . . is not absolute." *HTS, Inc. v. Boley*, 954 F. Supp. 2d 927, 941 (D. Ariz. 2013) (citation omitted). Because P.A.Z.E. has chosen not to appear, deciding EWS's claims against that Defendant would be "'impractical,' if not impossible." *See id.* (citation omitted). Thus, the seventh *Eitel* factor favors entry of default judgment as well.

### 2. The Second and Third *Eitel* Factors Favor Default Judgment Because EWS's Complaint and Supporting Evidence Establish P.A.Z.E.'s Liability.

"The second and third *Eitel* factors are generally the most important factors for the Court's consideration in ruling on a motion for default judgment." *Taylor*, 2024 WL 4837021, at *3 (citation omitted). "[T]hese two factors require that a plaintiff 'state a claim on which the [plaintiff] may recover.'" *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002) (second alteration in original) (citations omitted). As shown below, each of EWS's claims against P.A.Z.E. is well pleaded and amply supported by the record. *See Landstar Ranger, Inc. v. Parth Enters.*, 725 F. Supp. 2d 916, 922 (C.D. Cal. 2010) (on motion for default judgment, finding no possibility of factual dispute where plaintiff "supported its claims with ample evidence, and defendant has made no attempt to challenge the accuracy of the allegations in the complaint").

a.    **EWS Has Established P.A.Z.E.'s Liability for Trade Secret Misappropriation.**

P.A.Z.E. is liable for trade secret misappropriation under the DTSA, 18 U.S.C. § 1836 *et seq.*, and the AUTSA, A.R.S. § 44-401 *et seq.*, because EWS has shown that (1) it owned a trade secret, which (2) P.A.Z.E. misappropriated, (3) causing damage. *Fire Sec. Elec. & Commc'ns Inc. v. Nye*, No. CV-23-02730-PHX-DLR, 2024 WL 620813, at *3 (D. Ariz. Feb. 14, 2024) (citation omitted); *see Berkadia Real Est. Advisors LLC v. Wadlund*, No. CV-22-00049-TUC-CKJ, 2022 WL 3213113, at *12 (D. Ariz. Aug. 9, 2022) ("The elements of a trade secret misappropriation claim under the DTSA and AUTSA are virtually identical.").

To constitute a "trade secret," information must not be "readily ascertainable by proper means" and must derive "independent economic value . . . from not being generally known." 18 U.S.C. § 1839(3)(B); A.R.S. § 44-401(4). In addition, its owner must have "taken reasonable measures to keep such information secret." 18 U.S.C. § 1839(3); A.R.S. § 44-401(4).

"Misappropriation," in turn, occurs when a person acquires, discloses, or uses a trade secret, knowing or having reason to know the secret was acquired by improper means. *Fire Sec. Elec. & Commc'ns*, 2024 WL 620813, at *4 (citing 18 U.S.C. § 1839(5) and A.R.S. § 44-401(2)). "[I]mproper means" include breach or inducement of a breach of a duty to maintain secrecy. *See* 18 U.S.C. § 1839(6)(A).

EWS's operative pleading and supporting evidence establish each of these elements. Specifically, EWS has alleged the following:

- Prior to Johnson's termination, and in his role as EWS's Senior Intellectual Property Counsel, he was entrusted with, and privy to, confidential information regarding EWS's private and internal business plans and discussions regarding its Paze[SM] service, including the company's interest in procuring particular domain names incorporating EWS's PAZE mark. Compl. ¶ 11(a), Dkt. 1 at 3.
- Johnson corresponded with EWS's marketing department about acquiring

domain names containing EWS's PAZE mark and instructed EWS's domain name vendor to run an availability report for domain names containing PAZE, which report showed that numerous domain names were available for registration, including pazewallet.com and pazenetwork.com. *Id.* ¶¶ 37–38, Dkt. 1 at 8.

- Johnson provided information concerning EWS's interest in particular domain names (including pazewallet.com and pazenetwork.com) to O'Loughlin, who registered those domain names before EWS could do so. *Id.* ¶ 11(a), Dkt. 1 at 3; *see also id.* ¶¶ 57, 59, Dkt. 1 at 11; *id.* ¶ 60, Dkt. 1 at 11 ("CSC informed EWS that several of those domains—including www.pazewallet.com and www.pazenetwork.com—were no longer available because someone else had registered them along with www.paze.website and www.paze.guru.").

- O'Loughlin then formed P.A.Z.E., which launched a sham gripe website at pazewallet.com under the name "P.A.Z.E.," or "People Against Zelle Erryday [sic]." *Id.* ¶¶ 11(b), 61, Dkt. 1 at 3, 11.

- EWS instructed its domain name vendor to acquire the domain name pazewallet.com from the registrant anonymously. *Id.* ¶ 61, Dkt. 1 at 11.

- On February 23, 2023, EWS paid $20,000 for pazewallet.com and 54 other PAZE domains to "Heidi O'Loughlin" using P.A.Z.E.'s email address, contact@paze.guru, through Escrow.com, incurring additional fees totaling $3,201.50. Cheney Decl. Ex. 6, Dkt. 17-1 at 35; Shah Decl. ¶¶ 6–8, Ex. 3; *see* Compl. ¶¶ 64, 133, Dkt. 1 at 14, 24.

Notably, in P.A.Z.E.'s opposition to EWS's PAZE application, P.A.Z.E. represented that Opposer, *i.e.*, *P.A.Z.E.*, owns the "PAZE related domains" and agreed to sell certain of them to EWS. Cheney Decl. Ex. 12, Dkt. 17-4 at 10–11 ¶¶ 25, 31–33.

These uncontested allegations and EWS's supporting evidence establish that P.A.Z.E. *acquired* EWS's trade secret information concerning the domain names EWS intended to register, then *used* that information to register the same domain

names before EWS could do so. Information concerning EWS's preferred domains was not readily ascertainable by proper means, and derived economic value from not being generally known—thus qualifying as a *trade secret*—because myriad word combinations containing "PAZE" were available for domain registration, and P.A.Z.E. had no way of knowing which domains EWS wished to acquire (and for which it might be willing to pay) without EWS's trade secret information. *See* Compl. ¶ 90, Dkt. 1 at 18–19 (alleging "EWS's Trade Secrets" includes "documents relating to EWS's domain names").

Further, P.A.Z.E. had every reason to know this information was acquired by improper means because Johnson and O'Loughlin had been acquainted for many years before concocting their scheme (*see* Zefar Decl. ¶¶ 7–8, Ex. 1), in which the Complaint and record establish Johnson and O'Loughlin jointly and actively participated. Compl. ¶¶ 11, 27–31, 54–82, 87, Dkt. 1 at 3–4, 6–7, 10–18; Shah Decl. ¶¶ 2–5, Exs. 1–2. These acts of misappropriation alone caused damage to EWS of at least $22,950.20, given the low price at which EWS otherwise could have acquired the domain names it was interested in acquiring (including pazewallet.com). Cheney Decl. Ex. 6, Dkt. 17-1 at 35; Compl. ¶ 133, Dkt. 1 at 24; Shah Decl. ¶¶ 6–8, Ex. 3. P.A.Z.E. is liable for misappropriating EWS's trade secrets.

### b.    EWS Has Established P.A.Z.E.'s Liability for Unjust Enrichment.

P.A.Z.E. is liable for unjust enrichment because the uncontested averments in EWS's Complaint and the record show "(1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and impoverishment, (4) the absence of justification for the enrichment and impoverishment, and (5) the absence of a remedy provided by law." *Premier Funding Grp. v. Aviva Life & Annuity Co.*, No. CV-14-01633-PHX-DGC, 2014 WL 6885732, at *9 (D. Ariz. Dec. 8, 2014) (citation omitted).

The allegations and record evidence discussed above establish that P.A.Z.E.

was enriched by $20,000, and EWS was impoverished by at least $22,950.20, when P.A.Z.E. willfully, maliciously, and unjustifiably used trade secret and confidential information concerning EWS's preferred domain names to register those domain names first and ransom them to EWS. These facts demonstrate P.A.Z.E.'s liability for unjust enrichment. *See id.* (finding a claim for unjust enrichment of $566,850 was sufficiently pleaded where "[t]here is a clear connection between the enrichment and impoverishment, . . . an absence of justification," and, if plaintiff's "other claims fail as this case proceeds, . . . an absence of a remedy provided by law").

### c. EWS is Entitled to a Declaration of Noninfringement of P.A.Z.E.'s Alleged **PAŻE** and PAZE Marks.

P.A.Z.E. sent letters to EWS's counsel on April 21, 2024, and May 2, 2024, citing P.A.Z.E.'s ownership of applications to register its alleged **PAŻE** and PAZE marks and threatening to oppose EWS's PAZE application, seek cancellation of EWS's **Ż** registration, and send "cease-and-desist letter[s]" to EWS's customers and merchants allegedly displaying EWS's PAZE mark "in a confusingly similar way." Compl. ¶ 136, Dkt. 1 at 25; *see* Cheney Decl. Exs. 8, 9, Dkt. 17-2 at 23, 26.

P.A.Z.E.'s use of the phrase "confusingly similar" in its May 2, 2024, letter (Dkt. 17-2 at 26) refers to the "likelihood of confusion" test, an essential element of claims for infringement of an unregistered trademark under the Lanham Act, 15 U.S.C. § 1125(a), and Arizona common law. Compl. ¶ 138, Dkt. 1 at 25; *see PepsiCo*, 238 F. Supp. 2d at 1176. Thus, "[t]he necessary implication" of P.A.Z.E.'s threats to send "cease-and-desist letter[s]" to EWS's customers and merchants for displaying EWS's PAZE mark in a "confusingly similar way" to P.A.Z.E.'s alleged **PAŻE** and PAZE marks is that P.A.Z.E. claims EWS's PAZE mark and **Ż** mark infringe P.A.Z.E.'s claimed trademark rights. Compl. ¶ 140, Dkt. 1 at 25.

On May 3, 2024, and May 16, 2024, P.A.Z.E. followed through on its threats to oppose EWS's PAZE application and seek cancellation of EWS's **Ż** registration by filing the TTAB Proceedings. Compl. ¶ 138, Dkt. 1 at 25. These judicial

14

proceedings, coupled with "P.A.Z.E.'s threats in its April 21, 2024, and May 2, 2024, letters," create a "substantial controversy" between EWS and P.A.Z.E.—"parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment of noninfringement under 28 U.S.C. § 2201(a)." Compl. ¶ 141, Dkt. 1 at 25. P.A.Z.E.'s infringement claims concerning EWS's **Z** mark—the subject of U.S. Registration No. 5476070—also give this Court jurisdiction to invalidate P.A.Z.E.'s pending Application Serial No. 98255290 to register the PAZE mark under 15 U.S.C. § 1119, as this action involves a registered trademark. Compl. ¶¶ 146, 155, Dkt. 1 at 26, 27; *BBK Tobacco & Foods LLP v. Cent. Coast Agric., Inc.*, 97 F.4th 668, 670 (9th Cir. 2024) ("We hold that when an action involves a registered trademark, a district court has jurisdiction to consider challenges to the trademark applications of parties to the action.").

In addition to establishing its entitlement to seek declaratory relief, EWS has sufficiently pleaded noninfringement of P.A.Z.E.'s alleged **PAŽE** and PAZE marks. Because P.A.Z.E.'s alleged marks are not federally registered (Compl. ¶ 151, Dkt. 1 at 26), P.A.Z.E. would have to claim infringement of an unregistered mark under 15 U.S.C. § 1125(a), which establishes liability for "[a]ny person who, on or in connection with any goods or services, . . . uses in commerce any word, term, name, symbol, or device . . . which is likely to cause confusion, or to cause mistake, or to deceive" as to an "affiliation, connection, or association" between persons or as to "the origin, sponsorship, or approval" of their goods or services. 15 U.S.C. § 1125(a)(1)(A). To prevail on this claim, P.A.Z.E. would have to prove it owns protectable trademark rights in its alleged **PAŽE** and PAZE marks. *HTS*, 954 F. Supp. 2d at 942. "[T]he standard test of ownership is priority of use. . . . [T]he party claiming ownership must have been the first to actually use the mark in the sale of goods or services." *Id.* (alterations in original) (citation omitted).

P.A.Z.E. cannot make this showing because EWS's uncontested pleadings and supporting evidence establish EWS's prior rights in its PAZE and **Z** marks (Compl.

¶¶ 144, 148, Dkt. 1 at 26):

- On November 9, 2022, EWS applied to register its PAZE mark under Application Serial No. 97669754 for various financial transaction services in International Class 36, and EWS first used its PAZE mark in United States commerce on March 26, 2023. *Id.* ¶¶ 142, 143, Dkt. 1 at 25.

- EWS's PAZE mark is inherently distinctive of EWS's services under the mark, making the mark valid and protectable. *Id.* ¶ 145, Dkt. 1 at 26.

- On April 5, 2016, EWS applied to register its **Ƶ** mark under Application Serial No. 86965192 for various financial transaction services in Class 36, and EWS first used its **Ƶ** mark in United States commerce on August 28, 2016. *Id.* ¶¶ 146, 147, Dkt. 1 at 26. EWS's **Ƶ** application matured into Registration No. 5476070, which issued on May 22, 2018 and became incontestable on April 26, 2024. *Id.* ¶¶ 146, 150, Dkt. 1 at 26.

- EWS's **Ƶ** mark is inherently distinctive of EWS's services under the mark, making the mark valid and protectable. *Id.* ¶ 149, Dkt. 1 at 26.

As for P.A.Z.E.'s claimed trademark rights, P.A.Z.E. filed its applications to register its alleged **PAŻE** and PAZE marks on November 2 and November 4, 2023, respectively, representing to the USPTO that it began using those alleged marks on January 23, 2023, on its website at https://www.paze.website. Compl. ¶¶ 66, 68, Dkt. 1 at 14; Cheney Decl. Ex. 12, Dkt. 17-4 at 10 (¶¶ 23–25). However, as EWS alleged in its Complaint (and P.A.Z.E. has not contested), P.A.Z.E. has not made any *bona fide* use of its alleged PAZE and marks in connection with any services as contemplated by the Lanham Act or Arizona law. Compl. ¶ 152, Dkt. 1 at 26. This is because "[a] service mark can only be registered for activities that constitute services as contemplated by the Trademark Act." USPTO, *Trademark Manual of Examining Procedure* ("TMEP") § 1301.01 (Nov. 2024) (citing 15 U.S.C. §§ 1051–53, 1127), available at https://tmep.uspto.gov/RDMS/TMEP/current#/current/TMEP-1300d1e 30.html. That is, "a service must be a real activity," not a "mere idea or concept," and

16

"must be primarily for the benefit of someone other than the applicant." *Id.* §§ 1301.01(a), 1301.01(a)(i), 1301.01(a)(ii) (citations omitted). Activities failing to satisfy these requirements are not "services," and any indicia used to identify those activities therefore cannot be service marks.

P.A.Z.E.'s applications claim that P.A.Z.E. provides "financial information" and "online instruction" under its alleged **PAŻE** and PAZE marks (Cheney Decl. Ex. 12, Dkt. 17-4 at 10 (¶ 23)), but P.A.Z.E.'s specimens make clear that it primarily uses **PAŻE** and PAZE to identify a gripe site containing complaints about EWS and its Zelle® and Paze<sup>SM</sup> services (and updates on this dispute), for P.A.Z.E.'s own benefit. *See* Cheney Decl. Ex. 12, Dkt. 17-4 at 50–71, 79–90, 98–111, 113–55, 164–91, 196–203, 210–17. This does not qualify as "use in commerce" because a gripe site is not a "service" as contemplated by the Lanham Act. TMEP § 1301.01. Instead, "[t]he provision of mere 'information services' without any commercial or transactional component is speech—nothing more." *Radiance Found., Inc. v. N.A.A.C.P.*, 786 F.3d 316, 326 (4th Cir. 2015); *see In re Bahramian*, Ser. No. 87444322, 2019 WL 5290184, at *6 (T.T.A.B. Sept. 24, 2019) (nonprecedential) (refusing registration because applicant, "an independent non-governmental organization," used the alleged mark merely to "promot[e] the cause of democratic reform in Iran").

P.A.Z.E. therefore lacks any trademark rights in its alleged PAZE and marks (Compl. ¶ 152, Dkt. 1 at 26), which means EWS cannot be liable for infringing those nonexistent "rights."[10] EWS therefore is entitled to a declaration of noninfringement

---

[10] P.A.Z.E. also lacks standing to bring the TTAB Proceedings for many of the same reasons. To establish its standing to challenge EWS's PAZE application, P.A.Z.E. must plausibly allege a cognizable legal interest potentially impaired by registration of the PAZE mark. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129–34 (2014); *Corcamore, LLC v. SFM, LLC*, 978 F.3d 1298, 1303 (Fed. Cir. 2020). Denying registration to EWS's PAZE mark would do nothing to remedy the abstract "harms" P.A.Z.E. alleges in the TTAB Proceedings. See Cheney Decl. Ex. 12, Dkt. 17-4. Accordingly, "there is no real controversy between the parties" under 15 U.S.C. § 1063. *See Philanthropist.com, Inc. v. Gen. Conf. Corp. of Seventh-Day Adventists*, 2021 U.S.P.Q.2d 643, *6 (T.T.A.B. 2021) (where a company that

on this basis, as well as the invalidation of P.A.Z.E.'s application to register its alleged PAZE mark.

### 3.    The Fourth *Eitel* Factor Favors Default Judgment Because P.A.Z.E.'s Conduct Warrants the Damages EWS Seeks.

The fourth *Eitel* factor balances the amount of money at stake in relation to the seriousness of P.A.Z.E.'s conduct. Here, P.A.Z.E. knowingly and willfully schemed with Johnson, EWS's former Senior Intellectual Property Counsel, to use EWS's trade secrets and confidential information, and a baseless lawfare campaign, to extract money from Johnson's former employer. As redress, EWS seeks (a) permanent injunctive relief to prevent further economic harm and protect EWS's marks and business reputation, (b) a declaratory judgment of noninfringement of P.A.Z.E.'s alleged **PAŽE** and PAZE marks, (c) an order invalidating P.A.Z.E.'s pending service mark application, (d) monetary relief totaling $68,850.60, representing the $22,950.20 cost that EWS incurred to ransom the pazewallet.com domain name and exemplary damages of double that amount, as well as post-judgment interest, and (e) EWS's attorneys' fees incurred in preparing and filing this Motion. Considering the seriousness of EWS's uncontested allegations and the need to deter P.A.Z.E. and others from engaging in similarly egregious behavior in the future, the relief EWS seeks is more than reasonable. This factor favors default judgment.

---

warehoused domain names sought cancellation of a church's registrations of ADVENTIST after the church refused to pay the petitioner's asking price of $1.2 million for the domain name Adventist.com, holding "Petitioner's interests . . . do not have anything to do with trademark concerns" and "are outside the zone of interests reflected in [15 U.S.C. § 1064]"), *aff'd*, No. 2021-2208, 2022 WL 3147202 (Fed. Cir. Aug. 8, 2022) (per curiam); *Doyle v. Al Johnsons Swedish Rest. & Butik, Inc.*, 101 U.S.P.Q.2d 1780, 1783 (T.T.A.B. 2012) (where photographer sought cancellation of registrations for configuration marks comprising "goats on a roof of grass," holding photographer could not show standing because the registrations did not prevent him from "tak[ing] the photographs [of goats on roofs] he wants to take" (citation omitted)); *McDermott*, 81 U.S.P.Q.2d at 1214.

18

**4.    The Fifth *Eitel* Factor Favors Default Judgment Because the Facts are Undisputed.**

P.A.Z.E. having defaulted "by refusing to answer and defend," EWS's allegations "are presumed true and . . . there is no possible dispute of material facts." *Bank of Am.*, 2024 WL 4566689, at *2 (citation omitted); *see PepsiCo*, 238 F. Supp. 2d at 1177 ("Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages."). In any event, substantial evidence and testimony support EWS's claims and establish the material facts beyond material dispute even if P.A.Z.E. had retained counsel and contested those claims. *See Landstar Ranger*, 725 F. Supp. 2d at 922 (finding no possibility of factual dispute where plaintiff "supported its claims with ample evidence, and defendant has made no attempt to challenge the accuracy of the allegations in the complaint"). The fifth *Eitel* factor favors a default judgment.

**E.    EWS Is Entitled to Injunctive, Declarative, and Monetary Relief on Its Claims Against P.A.Z.E.**

**1.    A Permanent Injunction is Appropriate.**

EWS is entitled to permanent injunctive relief because: (1) it "suffered an irreparable injury"; (2) "remedies available at law, such as monetary damages, are inadequate to compensate for that injury"; (3) "considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted"; and (4) "the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

The Court weighed similar factors when issuing a preliminary injunction against P.A.Z.E. on December 4, 2024 (Dkt. 70), and no intervening development of the factual record undermines that decision. Thus, the Court should permanently enjoin P.A.Z.E. for the same reasons it granted EWS's motion for preliminary injunctive relief, which EWS expressly incorporates by reference. *See* Dkt. 16; *Universal Bldg. Maint. LLC v. Calcote*, No. SACV 22-1125 JVS (DFMx), 2022 WL

18397628, at *6 (C.D. Cal. Nov. 7, 2022) (granting permanent injunction in trade secret misappropriation case where party failed to appear, explaining that for "the same reasons as the preliminary injunction, [movant] has sufficiently demonstrated a permanent injunction is warranted").

**2.    This Court Should Issue a Declaratory Judgment.**

As EWS discussed in detail above, P.A.Z.E. sent letters to EWS's counsel threatening to oppose EWS's PAZE application, seek cancellation of EWS's **Ƶ** registration, and send "cease-and-desist letter[s]" to EWS's customers and merchants displaying EWS's PAZE mark "in a confusingly similar way"—a clear reference to the "likelihood of confusion" test for trademark infringement. Compl. ¶ 136, Dkt. 1 at 25; Cheney Decl. Exs. 8, 9, Dkt. 17-2 at 23, 26; *see* 15 U.S.C. § 1125(a). P.A.Z.E. followed through on its threats to oppose EWS's PAZE application and seek cancellation of EWS's **Ƶ** registration by filing the TTAB Proceedings. Compl. ¶ 138, Dkt. 1 at 25. P.A.Z.E.'s conduct creates a "substantial controversy" between EWS and P.A.Z.E. "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment of noninfringement under 28 U.S.C. § 2201(a)." *Id.* ¶ 141, Dkt. 1 at 25.

EWS also has established that P.A.Z.E. cannot prove infringement, as it cannot demonstrate the priority necessary to establish protectable rights in its alleged **PAƵE** and PAZE marks. As between EWS and P.A.Z.E., EWS enjoys prior rights in its PAZE and **Ƶ** marks. Compl. ¶¶ 144, 148, Dkt. 1 at 26. Indeed, as EWS alleged, and P.A.Z.E. has not contested, P.A.Z.E. has not made any *bona fide* use of its alleged **PAƵE** and PAZE marks in connection with any "services" as contemplated by the Lanham Act. *Id.* ¶ 152, Dkt. 1 at 26. Because P.A.Z.E. lacks trademark rights in its alleged **PAƵE** and PAZE marks (*id.* ¶ 152, Dkt. 1 at 26), EWS cannot be liable for infringement. EWS is entitled to a declaratory judgment of noninfringement.

1

2

### 3.   This Court Should Issue an Order Invalidating P.A.Z.E.'s Pending Service Mark Application.

3

4

5

6

7

8

Section 37 of the Lanham Act provides, in relevant part, that "[i]n any action involving a registered mark the court may determine the right to registration." 15 U.S.C. § 1119. The Ninth Circuit has construed this plain language to mean that "when an action involves a registered trademark, a district court has jurisdiction to consider challenges to the trademark applications of parties to the action." *BBK Tobacco*, 97 F.4th at 670 (quoting 15 U.S.C. § 1119).

9

10

11

12

13

14

15

16

Here, P.A.Z.E. threatened to bring infringement claims against EWS and its licensees and customers for using EWS's PAZE mark "in a confusingly similar way" to P.A.Z.E.'s alleged **PAŻE** mark. Compl. ¶ 136, Dkt. 1 at 25; Cheney Decl. Exs. 8, 9, Dkt. 17-2 at 23, 26. P.A.Z.E.'s alleged **PAŻE** mark contains a colorable imitation of EWS's **Ż** mark. Compl. ¶ 139, Dkt. 1 at 25. Thus, the necessary implication of P.A.Z.E.'s threats to send "cease-and-desist letter[s]" to EWS's customers and merchants is that P.A.Z.E. claims EWS's PAZE and **Ż** marks infringe P.A.Z.E.'s claimed trademark rights. *Id.* ¶ 140, Dkt. 1 at 25.

17

18

19

20

21

EWS's **Ż** mark is the subject of U.S. Registration No. 5476070. *Id.* ¶ 146, Dkt. 1 at 26. This action therefore involves a registered trademark as defined in 15 U.S.C. § 1119 and *BBK Tobacco*. Considering P.A.Z.E. lacks any trademark rights in PAZE (Compl. ¶ 152, Dkt. 1 at 26), this Court should order the invalidation of P.A.Z.E.'s pending Application Serial No. 98255290 to register the PAZE mark.[11]

22

23

24

25

26

27

[11] In *San Diego County Credit Union v. Citizens Equity First Credit Union*, 65 F.4th 1012 (9th Cir. 2023), the Ninth Circuit was asked to decide whether the plaintiff had standing to seek invalidation of the defendant's common-law (i.e., unregistered) mark at trial after obtaining, on summary judgment, a declaration of noninfringement of the same common-law mark. The Ninth Circuit held it did not because, "once [defendant] obtained an adjudication stating that the use of its mark does not infringe [plaintiff's] common-law mark, [defendant] lost any personal stake it once had in invalidating [plaintiff's] common-law mark." *Id.* at 1032.

28

This case is distinguishable in several respects. EWS seeks a default judgment containing both: (1) a declaration that use of EWS's PAZE and **Ż** marks does not

1    **4.    This Court Should Award EWS Its Actual Damages of**
2         **$22,950.20, Exemplary Damages of Twice That Amount, and**
3         **Post-Judgment Interest.**

4    "[A] district court has 'wide latitude' in determining the amount of damages to
5    award upon default judgment." *Capitol Specialty Ins. Corp. v. Chaldean LLC*, No.
6    CV-21-00342-PHX-MTL, 2022 WL 2953062, at *5 (D. Ariz. July 26, 2022) (citation
7    omitted). The Court may enter a default judgment for monetary damages without a
8    hearing where "the amount claimed is a liquidated sum or capable of mathematical
9    calculation." *HTS*, 954 F. Supp. 2d at 947 (citation omitted). Further, if a defendant
10   willfully and maliciously misappropriates trade secrets, as here, the Court may award
11   exemplary damages up to twice the compensatory award. A.R.S. § 44-403.

12   Here, EWS seeks actual damages of $22,950.20, which represents the
13   difference between (a) the amount EWS paid to P.A.Z.E. (via the email address
14   contact@paze.guru) to acquire 55 domain names containing PAZE, including
15   pazewallet.com, and (b) the price EWS otherwise would have paid to acquire the
16   domain names it was interested in acquiring. *See* Cheney Decl. Ex. 6, Dkt. 17-1 at 35;
17   Shah Decl. ¶¶ 6–8. This is a "definite sum" representing a specific payment made.
18   *See Capitol Specialty Ins.*, 2022 WL 2953062, at *6 (entering default judgment
19   against defendants for $202,371.10 comprising payments of insurance premiums).

---

20   infringe P.A.Z.E.'s *unregistered* rights in its alleged **PAŻE** and PAZE marks; and
21   (2) an order invalidating P.A.Z.E.'s *application to register* the PAZE mark. In
22   contrast to *San Diego County Credit Union*, there is no prior "adjudication" of
     noninfringement here; and, in any event, EWS does not seek an order invalidating
23   P.A.Z.E.'s alleged **PAŻE** and PAZE marks under common law, but seeks an order
24   determining P.A.Z.E.'s "right to registration" under 15 U.S.C. § 1119. Use and
     registration are not the same thing; the law is well settled that "[f]ederal law does not
25   create trademarks." *Matal v. Tam*, 582 U.S. 218, 224 (2017) (quoting *B & B
26   Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 142 (2015)); *see* 2 J. Thomas
     McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 19:3, Westlaw (5th
27   ed. database updated Nov. 2024) ("Although a federal registration gives the owner of
28   a mark very important and valuable legal rights and benefits, the registration does not
     create the trademark.").

Exemplary damages of twice that amount would equal an additional $45,900.40, yielding total monetary damages of $68,850.60.

An award of $68,850.60 is reasonable on this record. *See Jason Scott Collection, Inc. v. Trendily Furniture, LLC*, 68 F.4th 1203, 1220 (9th Cir. 2023) (identifying reasonably foreseeable harm as proper measure of damages), *cert. denied*, 144 S. Ct. 550 (2024). It also should be no surprise to P.A.Z.E., as EWS's Complaint alleged actual damages of "$20,000 to acquire certain of the Accused Domain Names," plus "costs of approximately $3,000 relating to transfer of those domain names," and sought exemplary damages. Compl. ¶ 133, Dkt. 1 at 24; *see also id.* at 29 (prayer for relief). These allegations gave P.A.Z.E. "sufficient notice . . . of the potential award," thus enabling it "to decide whether to respond to the complaint in the first instance." *See Capitol Specialty Ins.*, 2022 WL 2953062, at *6 (alteration in original) (citations omitted); *see* Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."). Ultimately, P.A.Z.E. decided not to appoint counsel and defend EWS's claims. EWS is entitled to the monetary remedies to which it would have been entitled had its claims against P.A.Z.E. been decided on the merits.

**5.    This Court Should Award EWS Its Attorneys' Fees Incurred in Preparing This Motion.**

The DTSA authorizes courts to "award reasonable attorney's fees to the prevailing party" if "the trade secret was willfully and maliciously misappropriated." 18 U.S.C. § 1836(b)(3)(D). Similarly, the "AUTSA authorizes the court to award 'reasonable attorney fees to the prevailing party for . . . willful and malicious misappropriation.'" *HTS*, 954 F. Supp. 2d at 961 (alteration in original) (quoting A.R.S. § 44-404(3)) (awarding attorneys' fees).

EWS's Complaint alleges, and P.A.Z.E. does not contest, that "Defendants willfully and maliciously misappropriated EWS's Trade Secrets" and "[a]ccordingly, EWS is entitled to recover exemplary damages from Defendants pursuant to [A.R.S.]

§ 44-403(B)." Comp. ¶ 113, Dkt. 1 at 21. This alone justifies an award of attorneys' fees. *Cf. Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008) (holding that where "[t]he district court entered default . . . with respect to a complaint that pled wilfulness [sic] [,] . . . all factual allegations in the complaint are deemed true, including the allegation of [defendant's] willful infringement of [plaintiff's] trademarks," which "sufficiently establishes [plaintiff's] entitlement to attorneys' fees under the Lanham Act").

Independent of this allegation, however, EWS has adduced substantial evidence that P.A.Z.E., together with Johnson and O'Loughlin, "concocted a scheme to extract money from EWS using EWS's privileged and confidential information," including by ransoming the domain name pazewallet.com for $20,000 (Cheney Decl. Ex. 6, Dkt. 17-1 at 35); launching a sham gripe website to disparage EWS's business and reputation (Compl. ¶ 11, Dkt. 1 at 3–4); filing applications to register **PAZE** and PAZE for nonexistent "services" (*id.*); threatening to engage in lawfare if EWS did not purchase P.A.Z.E. and its various "assets" (*id.*); and following through on these threats by filing the TTAB Proceedings. *Id.*

In sum, P.A.Z.E. has willfully and maliciously misappropriated EWS's trade secrets, entitling EWS to an award of its attorneys' fees incurred in preparing this Motion. *See A&C Trade Consultants, Inc. v. Alvarez*, No. 18-cv-05356-MMC, 2021 WL 4749436, at *1 (N.D. Cal. Oct. 12, 2021) (entering default judgment and awarding attorneys' fees under the DTSA and the California Uniform Trade Secrets Act where, *inter alia*, the complaint alleged defendant "diverted wire transfers [plaintiff] received from its customers to bank accounts he controlled").

## III.  <u>CONCLUSION</u>

For the foregoing reasons, and based on the Complaint's uncontested averments and the evidence and testimony of record, EWS requests that the Court:

(1)    Enter default judgment on each of EWS's claims against P.A.Z.E.;

(2)    Permanently enjoin P.A.Z.E. from: (a) acquiring, possessing, using, or

disclosing any of EWS's trade secrets and privileged and confidential information, including the Teams Chat; and (b) registering, acquiring, renewing, maintaining, or using any domain names containing EWS's PAZE mark or confusingly similar versions of it;

(3)     Enter a declaratory judgment of noninfringement based on the factual findings that: (a) EWS's PAZE and Ƶ marks are valid and protectable; (b) as between EWS and P.A.Z.E., EWS has prior rights in its PAZE and Ƶ marks; (c) P.A.Z.E. lacks trademark rights in its alleged **PAƵE** and PAZE marks; and therefore (d) use of EWS's PAZE and Ƶ marks does not infringe P.A.Z.E.'s rights;

(4)     Order the invalidation of P.A.Z.E.'s pending Application Serial No. 98255290;

(5)     Award EWS monetary damages consisting of: (a) actual damages of $22,950.20; (b) exemplary damages of $45,900.40 owing to P.A.Z.E.'s acts of willful and malicious misappropriation; and (c) post-judgment interest on the sum of those amounts ($68,850.60); and

(6)     Award EWS its reasonable attorneys' fees incurred in preparing this Motion, in an amount to be determined.

DATED:  January 27, 2025                    Respectfully Submitted,

KILPATRICK TOWNSEND & STOCKTON LLP

*/s/ Erick Durlach*
Erick Durlach
Dennis L. Wilson (admitted *pro hac vice*)
Sara K. Stadler (admitted *pro hac vice*)
6909 E. Greenway Parkway, Suite 100
Scottsdale, Arizona 85254
Tel: (602) 726-7319
Fax: (623) 321-1009
*edurlach@ktslaw.com*
*dwilson@ktslaw.com*
*sstadler@ktslaw.com*

25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BRYAN CAVE LEIGHTON PAISNER LLP
George C. Chen
Jacob A. Maskovich
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
Tel: (602) 364-7000
Fax: (602) 364-7070
*george.chen@bclplaw.com*
*jamaskovich@bclplaw.com*

Attorneys for Plaintiff and Counterclaim-
Defendant Early Warning Services, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on January 27, 2025, I electronically transmitted the foregoing document and any attachments to the U.S. District Court Clerk's Office using the CM/ECF System for filing with a copy served via that system. For parties not receiving service via CM/ECF, a copy will be transmitted via electronic mail as follows:

Brandon O'Loughlin *and* PAZE, LLC
1317 W. 13th Place
Tempe, AZ  85281
(623) 295-5438
contact@paze.guru

*Defendant Brandon O'Loughlin Individually and*
*as Authorized Representative for Defendant PAZE, LLC*

*/s/ Erick Durlach*
Erick Durlach