**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Early Warning Services LLC, | No. CV-24-01587-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| Warren Vurl Johnson, et al., | |
| Defendants. | |

Pending before the Court is Defendant Warren Vurl Johnson's Motion to Disqualify (Doc. 107), in which Mr. Johnson seeks to disqualify Plaintiff Early Warning Services LLC's ("EWS") counsel. EWS has filed a Response (Doc. 117), and Mr. Johnson filed a Reply (Doc. 121). After reviewing the briefing and the relevant case law, the Court will **deny** the Motion.

**I.    BACKGROUND**

The background in this trade secret misappropriation case was set forth in this Court's Order granting EWS' Motion for Preliminary Injunction. (*See* Doc. 70.) The facts relevant to the instant Motion are as follows: While employed at EWS, Mr. Johnson worked alongside attorneys at Kilpatrick Townsend & Stockton ("KTS") and Bryan Cave Leighton Paisner LLP ("BCLP"), which served as EWS' outside counsel. (Doc. 107 at 2.) Those firms continue to serve EWS in that capacity, including in this lawsuit. According to Mr. Johnson, the presence of BCLP and KTS attorneys in this case presents an insurmountable ethical conflict, precipitating the instant Motion and necessitating the

disqualification of both firms. (Doc. 107 at 1.)

## II. LEGAL STANDARD

This Court has adopted the Arizona Rules of Professional Conduct as its ethical standards. LRCiv 83.2(e); *Research Corp. Techs., Inc. v. Hewlett-Packard Co.*, 936 F. Supp. 697, 700 (D. Ariz. 1996). Accordingly, this Court applies Arizona's ethical rules to evaluate motions to disqualify counsel. *See In re County of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000) (stating that federal courts "apply state law in determining matters of disqualification" and that they "follow the reasoned view of the state supreme court when it has spoken on the issue"); *Christensen v. U.S. District Court*, 844 F.2d 694, 697 n.6 (9th Cir. 1988) (finding that when a district court has adopted a state's ethical rules, the district court must apply those rules to a motion to disqualify); *Unified Sewerage Agency v. Jelco, Inc.*, 646 F.2d 1339, 1342 n.1 (9th Cir. 1981) (same).

The Preamble to the Arizona Rules of Professional Conduct cautions that a violation of an ethical rule "does not necessarily warrant any other nondisciplinary remedy, such as disqualification of a lawyer in pending litigation," and explains that "the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons." Pmbl. ¶ 20, Ariz. R. Prof'l Conduct. Arizona law reiterates that "[o]nly in extreme circumstances should a party to a lawsuit be allowed to interfere with the attorney-client relationship of his opponent." *Alexander v. Superior Court*, 685 P.2d 1309, 1313 (Ariz. 1984); *see also Gomez v. Superior Court*, 717 P.2d 902, 905 (Ariz. 1986) (stating that Arizona courts "view with suspicion" motions to disqualify opposing counsel based on a conflict of interest or appearance of impropriety); *Villalpando v. Reagan*, 121 P.3d 172, 175 (Ariz. Ct. App. 2005) (same); *Amparano v. ASARCO, Inc.*, 93 P.3d 1086, 1092 (Ariz. Ct. App. 2004) ("[T]he rules of professional responsibility are for ethical enforcement and are not designed to be used as a means to disqualify counsel. The courts have, of course, looked to the ethical rules for guidance on disqualification issues." (citation omitted)). Disqualification motions should be subjected to "particularly strict judicial scrutiny" to guard against potential abuse. *Optyl Eyewear Fashion Int'l Corp. v. Style Cos., Ltd.*, 760

F.2d 1045, 1050 (9th Cir. 1985); *see also County of Los Angeles,* 223 F.3d at 996 ("A motion to disqualify a law firm can be a powerful litigation tactic to deny an opposing party's counsel of choice."). "However, close or doubtful cases are resolved in favor of disqualification in order to preserve the integrity of the judicial system." *Richards v. Holsum Bakery, Inc.*, 2009 WL 3740725, at *6 (D. Ariz. Nov. 5, 2009). The moving party has the burden of showing why the Court should disqualify an attorney from representing a client. *Alexander*, 685 P.2d at 1313; *Amparano*, 93 P.3d at 1093.

## III.   DISCUSSION

Mr. Johnson asserts that disqualification is proper under Arizona Rules of Professional Conduct ("Ethical Rule") 1.7, 1.9, 1.10 and 3.7. (*See* Doc. 107 at 6–7.) Mr. Johnson's arguments, however, are somewhat unclear, as he seemingly combines the requirements of several Ethical Rules to conclude that disqualification is necessary. (*See* Doc. 107; Doc. 121.) As a result, the Motion often fails to touch on the key requirements of the individual Ethical Rules to establish a violation. Because the Ethical Rules provide specific criteria to prove a violation, the Court will address each rule individually, and in doing so, the Court endeavors to untangle Mr. Johnson's applicable arguments.

### A.   Ethical Rule 1.9(a)—Duties to Former Clients

Ethical Rule 1.9(a) states that a "lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." It follows, then, that the moving party must show: (1) the existence of an attorney-client relationship; (2) the former representation was the "same or substantially related" to the current litigation; and (3) the current client's interests are "materially adverse" to the former client's interest. *Foulke v. Knuck*, 784 P.2d 723, 726–27 (Ariz. Ct. App. 1989).

Mr. Johnson argues that he never consented to BCLP's representation of EWS and therefore the firm must be disqualified. (Doc. 107 at 10–11.) According to Mr. Johnson, allowing the firm to continue prosecuting this case would create an appearance of

impropriety and actual unfairness because the firm has "insider knowledge of his tactics and thought processes." (*Id.* at 11.) Regarding KTS, Mr. Johnson argues that Ethical Rule 1.9 should prevent them from appearing on behalf of EWS because the firm and Mr. Johnson collaborated on several projects, including registration of the PAZE mark, domain name enforcement, and litigation defense. (*Id.* at 12.)

In response, EWS argues that Ethical Rule 1.9 is inapplicable because Mr. Johnson is not a former client of KTS or BCLP. (Doc. 117 at 7.) Further, EWS argues that the firms did not have an implied attorney-client relationship with Mr. Johnson because they never acted on his behalf. (*Id.* at 7–8.)

Mr. Johnson readily admits that he was neither a client of KTS nor BCLP. (*See* Doc. 121-1 ¶ 6 ("I did not retain KT&S or BCLP for personal matters and was not a 'client.'").) Additionally, Mr. Johnson, in his role as an EWS employee, could not otherwise show the existence of an attorney-client relationship between himself and the firms. He argues that he is "a third person, non-client" who is up against BCLP on "identical matters they once collaboratively managed." (Doc. 107 at 9–10; *see also* Doc. 117-1 ¶ 4 (KTS attesting that "[Mr.] Johnson has never retained [KTS] as his personal attorney"); Doc. 117-2 ¶ 6 (BCLP attesting to the same).) Ethical Rule 1.13 provides "[a] lawyer employed or retained by an organization represents the organization acting through its duly authorized constitutes." The lawyer "does not represent [a company's] officers, directors, or agents themselves." *Takeover Indus. Inc. v. Holley*, No. CV-22-00357-PHX-JJT, 2023 WL 3092010, at *3 (D. Ariz. Jan. 27, 2023) ("[T]he fact that Holley, or anyone else acting as a constituent of Takeover during the time Manolio was its lawyer, creates no duty to him or them in that status, and thus does not implicate the conflict rules borne of an attorney-client relationship."). Thus, without having been a client of either firm, Mr. Johnson cannot show a violation of Ethical Rule 1.9 occurred and disqualification is unwarranted.

Mr. Johnson's cited authority fares no better at establishing the required relationship. First, no facts on record reveal any implied attorney-client relationship. *Cf.*

*Advanced Mfg. Techs. V. Motorola, Inc.*, No. CIV-99-01219-PHX-MHM-LOA, 2002 WL 1446953, at *6 (D. Ariz. July 2, 2002) (finding that "an attorney-client relationship was impliedly created" because one attorney "silent[ly] acquiesc[ed]" to an employee's "expressed belief . . . that the attorney represented him" and the company); *see also United States v. Henke*, 222 F.3d 633, 637 (9th Cir. 2000) (finding an implied attorney-client relationship based on a joint defense agreement); *In re Ockrassa*, 799 P.2d 1350, 1352 (Ariz. 1990) (finding materially adverse interests where a public defender turned county attorney was tasked with prosecuting a former client). Both KTS and BCLP's declarations make clear that neither firm has attended a deposition of Mr. Johnson or represented him in any capacity. (Doc. 117-1 ¶¶ 4–5; Doc. 117-2 ¶¶ 5–7.)

Mr. Johnson also asserts that under Ethical Rule 1.9, KTS and BCLP owe him a duty of care as recognized in *Para Paradigm Insurance Company v. Langerman Law Offices, P.A.*, 24 P.3d 593, 599–600 (Ariz. 2001). (Doc. 121 at 2.) Whether a duty of care is owed to Mr. Johnson is relevant for an inquiry into a lawyer's civil liability for professional negligence and breach of fiduciary duty, but not whether for disqualification of counsel is warranted. *See Paradigm Ins.*, 23 P.3d at 599–600; Restatement (Third) of The Law Governing Lawyers § 51.

Mr. Johnson also attempts to justify disqualification by drawing parallels between this case and one where the Arizona Supreme Court found that an attorney who undertook representation of a guardian necessarily assumed a legal relationship with the ward. (Doc. 107 at 8; Doc. 121 at 4 (likening *Fickett v. Superior Court*¸ 558 P.2d 988, 990–91 (Ariz. Ct. App. 1976).) Mr. Johnson contends that he "was not a remote third party; he was [EWS'] legal guardian of its IP—akin to the ward in *Fickett* being the beneficiary of the guardian's attorney's work." (Doc. 121 at 4.) Mr. Johnson further explains that KTS and BCLP were "inherently protecting the confidence of Mr. Johnson's professional interests (as the employee responsible) and personal stake (as a creator of the IP)." (*Id.*) This argument is bereft of merit. First, neither KTS nor BCLP represented Mr. Johnson's interests, professional or otherwise, as he was never their client in any capacity. Second,

EWS was the legal creator of the intellectual property, not Mr. Johnson.

Therefore, the Court finds that Mr. Johnson has failed to establish that he was a former client of either KTS or BCLP. Disqualification based on Ethical Rule 1.9 is, therefore, improper.

### B. Ethical Rule 1.7(a)(2)—Conflicts of Interest: Current Clients

Ethical Rule 1.7(a) provides:

> [A] lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
> . . . .
>
> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

This Court has explained that the purpose of this rule is to "protect a *current client* from material limitation in *its* representation, caused by its lawyer's responsibilities to another client, a former client, or a third person." *Roosevelt Irr. Dist. v. Salt River Proj. Agr. Imp. and Power Dist.*, 810 F. Supp. 2d 929, 976 (D. Ariz. 2011); *see also* Ethical Rule 1.7 cmt. 8 ("[A] conflict of interest exists if there is a significant risk that a lawyer's ability to consider, recommend or carry out an appropriate course of action for the client will be materially limited as a result of the lawyer's other responsibilities or interests.").

Mr. Johnson argues that BCLP violated Ethical Rule 1.7(a)(2) because that firm's attorneys have substantial personal interests in defending their prior advice and reputation, which impairs their objectivity and loyalty to EWS. (Doc. 107 at 10.) Further, Mr. Johnson argues that he is a "third-person, non-client" with a confidential relationship with BCLP attorney, Mr. Chen. (*Id.*) Mr. Johnson's arguments against KTS are more difficult to discern. Mr. Johnson appears to maintain that KTS' stake in defending its prior legal work, including registration of the PAZE mark, patent litigation, and internal intellectual property control for EWS, will create material limitations for KTS to represent EWS. (*Id.* at 13.) EWS argues that Ethical Rule 1.7 protects the company, not Mr. Johnson, and therefore the rule does not apply. (Doc. 117 at 9–10.) Further, EWS argues that Mr. Johnson is not a "third person" that either KTS or BCLP owes a responsibility to, and thus, the rule does

- 6 -

1 not apply. (*Id.* at 10–11.)

2 Given that Mr. Johnson does not allege that he has a current attorney-client relationship with KTS or BCLP, the rule does not afford him any protections. *Gesell v. City of Cottonwood*, No. CV-24-08090-PCT-DWL, 2024 WL 5008627, at *9 (D. Ariz. Dec. 6, 2024). Any concern under Ethical Rule 1.7(a) belongs to EWS. *See id.* ("[T]he current client is 'the only party that must worry about whether her representation will be limited' by her lawyer's responsibilities to a third party[.]" (quoting *E.E.O.C. v. Luby's, Inc.*, 347 F. Supp. 2d 743, 746 (D. Ariz. 2004))).

While the Court doubts that Mr. Johnson can assert a challenge to KTS and BCLP's representation of EWS under Ethical Rule 1.7(a)(2), it will nonetheless address Mr. Johnson's arguments. In his Reply, Mr. Johnson argues that he is the "third person" referenced in the rule. (Doc. 121 at 5–6). It is not lost on the Court that Mr. Johnson and the attorneys at KTS and BCLP interacted with one another for years. (*See* Doc. 121-1.) But beyond several conclusory statements, Mr. Johnson has not sufficiently articulated how KTS or BCLP owe him a responsibility, nor how their personal interests pose a significant risk to their representation of EWS. Simply because each firm has interacted and worked with Mr. Johnson as an EWS legal employee does not automatically render his "confidences and work," which arguably belong to EWS, sufficient to establish a third-party relationship under Ethical Rule 1.7. *Cf. Metro. Life. Ins. v. Ogandzhanova*, No. CV-12-372-PHX-GMS, 2014 WL 12641596, at *4 (D. Ariz. Feb. 12, 2014) (finding that where "Ogandzhanova was the only constituent of the entity client that [the law firm] was representing, [the firm] had ethical responsibilities to Ogandzhanova under Ethical Rule 1.7 as such a 'third person'").

As this Court has discussed, the information Mr. Johnson continues to regard as "confidential" is the confidential attorney-client information that KTS and BCLP gave to EWS, not to Mr. Johnson. To the extent that the betrayal of "confidences and work" aggrieves Mr. Johnson, the causes of action asserted in this case largely obviate the need to use or disclose such confidences to obtain finality. The allegations in this case are that

Mr. Johnson stole trade secrets and used them to the detriment of EWS, giving rise to the trade secret misappropriation claims and the Lanham Act claim. (*See* Doc. 1.) The factual predicates to substantiate these claims are, in part, a showing that the stolen information was a trade secret, and that Mr. Johnson misappropriated the information. *See Gordon Grado M.D., Inc. v. Phx. Cancer & Blood Disorder Treatment Inst. PLLC*, 603 F. Supp. 3d 799, 809 (D. Ariz. 2022); 28 U.S.C. § 1832; Ariz. Rev. Stat. § 44-401. Not relevant to that showing, however, is Mr. Johnson's personal legal take on domain name enforcement, patent litigation defenses, and internal intellectual property controls.

Therefore, the Court finds that neither KTS nor BCLP should be disqualified based on Ethical Rule 1.7.

### C. Ethical Rule 1.10(a)—Imputed Conflicts

Ethical Rule 1.10(a) provides:

> While lawyers and nonlawyers are associated in a firm, none of them shall knowingly represent a client on legal or nonlegal matters when any one of them practicing alone would be prohibited from doing so by ERs 1.7 or 1.9, unless the prohibition is based on a personal interest of the prohibited lawyer or nonlawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers and nonlawyers in the firm.

Put simply, because neither KTS or BCLP's lawyers would be prohibited from representing EWS by Ethical Rule 1.7 or 1.9, there is no conflict to impute under Ethical Rule 1.10. *See Gessel*, 2024 WL 5008627, at *8. Therefore, Ethical Rule 1.10 is not a basis to disqualify EWS' counsel.

### D. Ethical Rule 3.7—Lawyer as Witness

ER 3.7 provides:

> (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
>
>> (1) the testimony relates to an uncontested issue;
>> (2) the testimony relates to the nature and value of legal services rendered in the case; or
>> (3) disqualification of the lawyer would work substantial hardship on the client.
>
> (b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing

so by Rule 1.7 or Rule 1.9.

"[A] Motion for disqualification under ER 3.7 must be supported by a showing that the attorney is a 'necessary witness.'" *Gessel*, 2024 WL 5008627, at *10 (quoting *Sec. Gen. Life Ins. v. Superior Court*, 718 P.2d 985, 988 (Ariz. 1986)). To be necessary, "the proposed testimony must be relevant and material," and "[t]hen it must also be unobtainable elsewhere." *Security General*, 718 P.2d at 988. Disqualification under Ethical Rule 3.7 "is warranted only where 'the testimony is or may be prejudicial to the testifying attorney's client.'" *Gessel*, 2024 WL 5008627, at *11 (quoting *Powers Reinforcing Fabricators, L.L.C. v. Contes*, 473 P.3d 714, 721 (Ariz. Ct. App. 2020)). "The prejudice requirement . . . works to preclude the folly of an attorney giving testimony detrimental to the interest he is advocating as well as to prevent opposing counsel from contriving some tactical need for calling the attorney thereby triggering disqualification." *Id.* (citation omitted).

Regarding BCLP, Mr. Johnson offers no more than the conclusory statement that the firm's attorneys are "advocate[s] and likely witness[es]." (*See* Doc. 107 at 10.) As to KTS, Mr. Johnson argues that the attorneys are likely to be witnesses because O'Loughlin has alleged fraud in TTAB proceedings and in the procurement of the PAZE mark, which requires testimony about KTS' prosecution conduct, its claims of use, and its conversations with EWS. (*Id.* at 12.) EWS argues that Mr. Johnson cannot compel either KTS or BCLP attorneys to testify about any advice it provided EWS through Mr. Johnson because it is privileged. (Doc. 117 at 12.) Further, EWS contends that the testimony Mr. Johnson anticipates is neither relevant nor material to the issues in this case and the information can be obtained directly from Mr. Johnson or other EWS legal department employees. (*Id.* at 13–14.)

Mr. Johnson does not develop his argument that BCLP attorneys will be necessary witnesses whatsoever. *See Security General*, 718 P.2d at 988 ("A party's mere declaration of an intention to call opposing counsel as a witness is an insufficient basis for disqualification even if that counsel could give relevant testimony."). As a consequence,

the Motion is denied to the extent that Mr. Johnson seeks disqualification of BCLP under Ethical Rule 3.7.

Mr. Johnson similarly fails to show that KTS' attorneys will be necessary witnesses. The proposed testimony—prosecution conduct, claims of use, and conversations with EWS—are irrelevant to support the claims asserted against Mr. Johnson. *See Gordon Grado*, 603 F. Supp. 3d at 809.[1] Mr. Johnson also overlooks that the non-privileged aspects of the proposed testimony—such as EWS' intellectual property indices and its prosecution of the PAZE mark—could be derived from either EWS' legal department or Mr. Johnson's own testimony. Finally, Mr. Johnson has not shown that EWS, as the client, will be prejudiced by KTS' testimony. (*See* Doc. 107; Doc. 121.) Instead, he merely complains that he lacks the ability to access privileged communications between KTS and EWS. (Doc. 107 at 13; Doc. 107-1 ¶¶ 27–29); *see also Gessel*, 2024 WL 5008627, at *11 ("Plaintiff does not directly address the issue of prejudice in his motion. Although he asserts that 'it presents an unfair advantage if [the law firm] knows of evidence that supports Plaintiff but then claims privilege as current counsel,' this potential harm does not directly relate to [the firm] testifying as a witness. Without more concrete allegations of prejudice, Plaintiff's arguments do not satisfy the high bar required for disqualification." (cleaned up)). Because Mr. Johnson fails to show that disqualification under Ethical Rule 3.7 is warranted, his Motion is denied on that ground.

## IV.   CONCLUSION

As the Court has noted, disqualification is an extreme remedy, and a request for such a remedy should be subject to strict judicial scrutiny. *Optyl Eyewear*, 760 F.2d at 1050; *Alexander*, 685 P.2d at 1313. Here, Mr. Johnson has failed to show why this extreme remedy ought to divest EWS of its current counsel, KTS and BCLP. Therefore, the Court will **deny** Mr. Johnson's Motion to Disqualify Counsel (Doc. 107).

///

---

[1] Johnson argues that because O'Loughlin has alleged fraud in TTAB proceedings, KTS' testimony about prosecution conduct, claims of use, and conversations with EWS is relevant. (Doc. 107 at 12.) But O'Loughlin has not alleged fraud in this case, and therefore that evidence is irrelevant to the claims before the Court.

- 10 -

**IT IS HEREBY ORDERED denying** Mr. Johnson's Motion to Disqualify (Doc. 107).

Dated this 21st day of April, 2025.

_____
Honorable Susan M. Brnovich
United States District Judge