WARREN VURL JOHNSON
warrenvjohnson@gmail.com
2406 Alabama Street
Unit 7C
Lawrence, KS 66046
Plaintiff/Attorney *pro se*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| EARLY WARNING SERVICES, LLC<br><br>Plaintiffs,<br>v.<br><br>MR. WARREN V. JOHNSON;<br>BRANDON O'LOUGHLIN; P.A.Z.E.,<br>LLC<br><br>Defendants. | Case No.: CV24-01587-PHX-SMB<br><br>**DEFENDANT'S MOTION FOR RECONSIDERATION OF ORDER DENYING MOTION TO DISQUALIFY COUNSEL** |

## MOTION FOR RECONSIDERATION OF ORDER DENYING MOTION TO DISQUALIFY COUNSEL

### <u>INTRODUCTION</u>

Movant Warren Johnson, former in-house counsel for Defendant EWS, respectfully requests reconsideration of this Court's order denying his motion to disqualify Plaintiff's counsel, BCLP and KT&S. Reconsideration is warranted due to the Court's failure to address key legal arguments and controlling Arizona law, resulting in clear error. Specifically, the Court overlooked:

1. BCLP/KT&S's (Counsel) and EWS (Client) inviting Johnson (nonclient) to rely on Counsel's advice during his tenure at EWS, and Johnson did rely on such advice at his discretion.

- 1 -

2. Duties to nonclients under Restatement (Third), The Law Governing Lawyers, formed via §51, §6, §121, and §135; which was adopted as law by the Supreme Court in *Paradigm Insurance Co.*;

3. ER 1.7(a)(2) conflicts arising from material limitations due to duties to Johnson as a third party/nonclient;

4. Appearance of impropriety under *In re Ockrassa*; and

5. BCLP's pre-EWS representation of PING (Johnson's former employer).

The Court's omission of these authorities and facts necessitates reconsideration to correct manifest legal error.

## BACKGROUND

As EWS's in-house counsel, Johnson was invited to collaborate closely with BCLP and KT&S for years to develop and enforce EWS's IP portfolio—the same patents and strategies central to this litigation. BCLP/KT&S advised Johnson on legal strategy, invited his reliance on their expertise, and jointly crafted EWS's IP protections. Now, these firms "switch sides," advocating positions adverse to Johnson on the very matters they previously guided. This creates an impermissible conflict under Arizona law.

## ARGUMENT

**I. *PARADIGM* UNEQUIVOCALLY ESTABLISHED THAT THE RESTATEMENT (THIRD) OF LAW GOVERNING LAWYERS § 51(2)–(3) IS ARIZONA LAW AND CREATES A COUNSEL'S DUTY OF CARE TOWARDS JOHNSON**

The Court erred by failing to consider Restatement (Third) of the Law Governing Lawyers § 51(2)–(3), which sets forth when an attorney owes a duty of care to a non-client:

a. Invited Reliance**:** the lawyer or the lawyer's client invites the non-client to rely on the lawyer's services or the lawyer knows such reliance is occurring (for

example, providing legal opinions or guidance with the intent that a specific third party will rely on them); or

b. Intended Beneficiary: the lawyer knows that the client's primary objective in the representation is to benefit a third party (even absent privity of contract) (*Capitol Indem. Corp. v. Fleming,* 58 P. 3d 965 - Ariz: Court of Appeals, 2nd Div., Dept. A 2002.)

In either case, the Restatement includes safeguards to ensure the duty to the non-client arises only when it is both necessary and compatible with the lawyer's existing duties. When they are met, however, the law recognizes the non-client as owed a duty of care by the lawyer (*Id.*).

Had the Court applied these principles, it would have found that BCLP and KT&S owed Mr. Johnson a duty of care despite his formal status as a nonclient.[1]:

a. BCLP and KT&S invited Johnson to rely on advice regarding EWS's IP strategy, knowing he would rely on their guidance; and

b. Collaborated with Johnson as the point person for EWS's legal objectives, making him a de facto beneficiary.

In *Paradigm Insurance Co. v. Langerman Law Offices*, the Arizona Supreme Court relied on Restatement § 51(3) and *expressly held* that an attorney may owe a duty of care to a non-client under certain conditions (*Id.*; and *Paradigm Ins. Co. v. Langerman Law Offices,* 24 P. 3d 593 - Ariz: Supreme Court 2001). (Exhibit 3)

Crucially, the existence of this duty to Mr. Johnson means that BCLP and KT&S's conduct is constrained by obligations of care and loyalty running in Mr. Johnson's favor because of his nonclient status and his invited reliance. It is not dispositive that Mr. Johnson was not personally the firm's client under ER 1.9, 1.7, or

---

[1] EWS argues as if Johnson's service with EWS was in a vacuum, devoid of any privilege he himself could claim; a nonconfidential purgatory wherein no conflict can ever arise between himself and the Counsel in which he confided. EWS attempts this by labeling Johnson as a nonclient; that characterization places Johnson in no such place as nonclients are protected by the duty of care granted under the Restatement.

a "prospective client" under 1.18; what matters is that, under Arizona law, he was owed a duty akin to an attorney-client duty in these specific circumstances. (*See Paradigm* at 601, listing of similar duties in other professions). By failing to account for this, the Court cleared counsel to proceed despite a fundamental conflict of interest and breach of duty. This constitutes clear legal error warranting reconsideration.

The Court also ignored controlling Arizona case law explicitly requiring the nonclient duty analysis. Arizona case – *Paradigm Insurance Co. v. Langerman Law Offices* (discussed above) make clear that attorneys can owe duties to non-clients in situations of invited reliance or third-party beneficiaries, and that such duties are closely linked to ethical conflict-of-interest rules. Had the Court considered these cases, it would have seen that Mr. Johnson's motion to disqualify was firmly grounded in Arizona precedent.

*Paradigm* (Arizona Supreme Court 2001): *Paradigm* is particularly important because it explicitly discusses the overlap between ethical conflicts under ER 1.7 and duties to non-clients. The Supreme Court noted that ordinarily, if no conflict exists between the interests of the actual client and the third party, a lawyer may effectively represent both (or represent one while owing duties to the other) (*Id.* at 598-599). This is consistent with ER 1.7, which allows joint or parallel representations of multiple parties whose interests align but would prohibit the representation if a material conflict existed. In other words, the ethical rules and the scope of the lawyer's civil duties are intertwined. A duty to a non-client (like the insurer) will coexist with the representation only so long as it does not create a conflict under ER 1.7; once it does, the conflict rules are triggered to protect all parties. (*Id.*)

Arizona courts have cited the "long line of precedent" supporting duties to non-clients in appropriate circumstances (*See Capitol Indemnity* at 967). The *Capitol Indemnity Corp. v. Fleming* case, discussing *Paradigm*, noted that *Fickett* created a valid cause of action by a ward against a guardian's lawyer, despite the general rule against duties to non-clients (*Id.* at 966). This shows that the principle is well

entrenched in Arizona jurisprudence and thus should have been considered by the courts.

## II. THE DUTY OF CARE CREATED BY THE RESTATEMENT AND *PARADIGM* SUPPORTS DISQUALIFICATION OF COUNSEL UNDER VARIOUS SECTIONS AND CIRCUMSTANCES

In the Order Dkt 126 the Court held:

"*Whether a duty of care is owed to Mr. Johnson is relevant for an inquiry into a lawyer's civil liability for professional negligence and breach of fiduciary duty, but not whether for disqualification of counsel is warranted.*" (Dkt 126, Order, pg5 at 13)

However, the duty of care recognized under the Restatement (Third) of the Law Governing Lawyers is not limited to civil liability but also inform conflicts of interest, sanctions, enjoining nonperformance, claim dismissal, and disqualification as civil judicial remedies (*Restatement (Third)*, Law Governing Lawyers, §6(1), (2), (8), and (11)) (Exhibit 2).

§51 provides that a lawyer owes a duty of care to a nonclient when the lawyer, or the client with the lawyer's acquiescence, invites the nonclient to rely on the lawyer's services and the nonclient so relies. Here, Johnson, as in-house counsel, was expressly invited to rely on the advice of EWS's outside counsel, and did so.

§ 6 similarly affirms that lawyers owe duties of care and loyalty to nonclients when the law imposes such obligations, and Comment i to Section 6 expressly states that breaches of these duties may result in disqualification or sanctions, not just civil liability.[2]

§ 121 (Illustration 10) make clear that such fiduciary and confidentiality-based duties arise when a nonclient shares confidential information under circumstances warranting protection. Johnson's extensive collaboration with EWS's outside counsel, involving privileged strategy, business risk assessments, and intellectual property

---

[2]Restatement (Third) of the Law Governing Lawyers § 6 cmt. i ("Disqualification is often the most effective sanction for a conflict of interest and will likely continue to be

planning, placed him squarely within this protected zone. The firms' subsequent adverse representation violates these fiduciary norms and professional conduct standards, requiring disqualification.[3]

§ 132 confirms that duties owed to nonclients, such as those arising in shared-representation or agent-subagent relationships, create conflicts of interest that may require disqualification, and prohibits "switching sides" against such persons, even where they were not formal clients.[4] This directly applies to Johnson, who was invited to rely on outside counsel in his capacity as EWS's in-house IP counsel and shared confidences in that role. Outside counsel's current adverse representation violates these fiduciary norms and should result in disqualification.

§ 135 bars a lawyer from representing a client where the representation conflicts with a duty of care owed to a nonclient.[5] Comment a to Section 135 confirms that the duty of care created to nonclients may require disqualification where conflicts arise.[6]

The Court's suggestion that these duties are irrelevant to disqualification is inconsistent with the Restatement's plain language. *Paradigm Ins. Co. v. Langerman Law Offices* acknowledged that duties to nonclients arise from reliance and are enforceable; it did not limit their relevance to ethical conflicts.

Here, outside counsel's fiduciary duties to Johnson—including duties of loyalty and care—barred them from later acting adversely in matters substantially related to the work Johnson entrusted to them. Disqualification is appropriate and necessary to protect both fiduciary principles and the integrity of these proceedings.

---

vigorously applied where necessary to protect the integrity of a proceeding or an important interest of the moving party.")

[3] Id. § 121 cmt. d & illus. 10 (2000) (lawyer owes conflict-based duties to nonclients when confidential information is received under circumstances creating reasonable expectations of protection).

[4] See § 132.

[5] Id. § 135(2).

[6] Id. § 135 cmt. a (a fiduciary duty to a nonclient "may require disqualification" from representation).

## III. ER 1.7(A)(2) – THE CONFLICT OF INTEREST CREATED BY DUTIES TO A THIRD PERSON (MR. JOHNSON) WAS OVERLOOKED

Arizona's ethical rule ER 1.7(a)(2) (Rule 42, Ariz. R. Sup. Ct.) provides that a concurrent conflict of interest exists whenever "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a *third person*, or by a personal interest of the lawyer." In denying disqualification, the Court summarily dismisses Johnson's argument as "several conclusory statements" (Dkt 126, pg 7 at 11-18). But the Court's analysis ended there, failing to recognize that ER 1.7(a)(2) independently prohibits a lawyer from representing Client A when the lawyer's duties to a third person (here, Mr. Johnson) would materially limit the lawyer's representation of Client A. This was precisely the argument Mr. Johnson raised in his reply: even if he is not a "former client" under ER 1.9 or a prospective client under ER 1.18, he is a third person to whom the lawyers' owe responsibilities, and those responsibilities materially limit counsels' ability to advocate against him now. The Court's order did not address this argument or the text of ER 1.7(a)(2) at all – an omission that amounts to legal error.

Applying ER 1.7(a)(2) to the facts at hand demonstrates why disqualification is required. BCLP and KT&S have ongoing responsibilities to Mr. Johnson arising from the prior collaboration and his invited reliance on their work under Restatement §51, §6, §121, and §135. These responsibilities include the duty not to misuse confidential information gained from Mr. Johnson, the duty not to attack the legal work product that Mr. Johnson helped develop, and a general duty of fairness and loyalty stemming from the trust relationship that was established. Because of these duties to Mr. Johnson (a third person under the rule), there is an unresolvable material limitation on their representation of EWS in this case. They cannot simultaneously fulfill their obligations to Mr. Johnson – for example, the obligation not to divulge or weaponize his confidences and strategy – and zealously represent EWS in pressing claims that

involve those very confidences and strategies. This is the quintessential ER 1.7(a)(2) conflict.[7]

The Court's order did not mention any of this. By treating the issue as solely whether Mr. Johnson had a formal attorney-client relationship (ER 1.9) and ignoring ER 1.7's broader protection of third-party duties, the Court applied the wrong legal standard. The correct analysis must account for the "material limitation" conflict created by the attorneys' duties to Mr. Johnson. Arizona's ethical rules, which have the force of law in governing attorney conduct, required the Court to address this point. The omission constitutes clear error. Reconsideration should be granted to properly apply ER 1.7(a)(2) to the undisputed facts: BCLP and KT&S's prior relationship with Mr. Johnson presents a non-consentable conflict of interest that should bar them from continuing to represent EWS in this matter.

## IV. THE COURT OVERLOOKED PRE-EWS REPRESENTATION—PING IS THE TRUE "FORMER CLIENT" UNDER ER 1.9(A)

BCLP's relationship with Mr. Johnson did not begin at EWS. From 2010–2014 Johnson retained George Chen/BCLP while he was in-house at Karsten Manufacturing, Inc. ("PING") (See Exhibit 1). During that four-year span Chen:

- advised Johnson on trade secret protections and invention selections;
- trademark protection and defense strategy;
- coached him through dozens of patent and trademark filings;
- served as one of Johnson's mentors, teaching him to draft patent claims.

Those engagements were billed to—and paid by—PING, not EWS. Consequently: PING, not EWS, is the "former client" to which BCLP owes continuing duties of confidentiality and loyalty. Johnson—then PING's IP counsel—

---

[7] To be sure, the reason Johnson satisfies the Restatement, and thus a duty is owed, is precisely because he is *not a client*. BCLP and KT&S invited Johnson to rely on their advice, as EWS attorneys; and EWS invited Johnson to rely on the advice of BCLP

was the corporate agent through whom BCLP received PING's confidences. Under the Ninth Circuit's "entity–client" cases (e.g., *Trone v. Smith*, 621 F.2d 994 (9th Cir. 1980)), that prior work creates an ER 1.9(a) bar when BCLP later appears adverse to that same corporate agent on substantially related IP matters. PING never waived privilege or consented to BCLP's positional switch. *EWS cannot waive PING's privilege.*

Failing to consider this pre-EWS representation was clear error. ER 1.9(a) independently requires disqualification once the Court recognizes that BCLP's former-client conflict lies with PING, not EWS.

## V. APPEARANCE OF IMPROPRIETY: THE COURT FAILED TO CONSIDER THE EROSION OF PUBLIC TRUST IF COUNSEL IS ALLOWED TO SWITCH SIDES (IN RE OCKRASSA)

Finally, While Canon 9 no longer stands alone, Arizona courts still evaluate public perception when rule-based duties are triggered. (*In re Ockrassa*, 165 Ariz. 576 (1990)). the Court's decision overlooked the important "appearance of impropriety" standard that Arizona courts have long recognized in evaluating attorney conflicts.[8] Even setting aside the technical rules and duties discussed above, allowing BCLP and KT&S to remain as counsel against Mr. Johnson undermines the public's confidence in the fairness of these proceedings. The scenario presents a classic appearance of impropriety: the same attorneys who once advised Mr. Johnson on how to build and protect EWS's IP are now arguing the opposite side of those very issues, to Mr. Johnson's detriment. Such a stark about-face creates at least an appearance that those attorneys are "changing sides" in violation of the trust previously reposed in them.

---

and KT&S while the client. And Johnson so did rely on the advice for 8 years, including in the very matters at issue here.

[8] Until 1983, when the new Model Rules were adopted, the appearance of impropriety was alone sufficient to warrant disqualification. It still remains a subantial factor to be considered. (*See In Re Ockrassa*) (appearance of switching sides still matters, but tied to other ethical considerations.)

Arizona precedent indicates that this appearance alone is a serious concern – one the Court should have, but did not, take into account.

Allowing EWS's counsel to continue would create exactly the kind of public disillusionment *Ockrassa* warns against. Any reasonable observer apprised of the facts would find it troubling that the law firms are taking adverse positions on the very IP strategy they helped formulate with Mr. Johnson. The appearance of impropriety is undeniable: it looks as if the attorneys are leveraging inside knowledge from their prior cooperative relationship to gain an edge against a former ally. Whether or not they actually misuse confidential information, the mere fact of this about-face is damaging to the integrity of the judicial process. The Court's order, however, did not mention appearance of impropriety or *Ockrassa* at all. This is a significant omission, as courts often consider the broader ethical landscape and public perception when ruling on disqualification. The failure to do so here is another clear error of law or abuse of discretion that warrants correction.

## CONCLUSION

For all these reasons, reconsideration is warranted. The Court's Order overlooked controlling Arizona authority, the fiduciary and ethical duties recognized under the Restatement (Third) of the Law Governing Lawyers, and the material conflicts created by those duties under ER 1.7(a)(2). It further failed to account for the disqualification consequences arising from duties owed to nonclients, from pre-EWS engagements with PING, and from the public's interest in preserving the integrity of the judicial process under In re Ockrassa.

BCLP and KT&S's ongoing representation of EWS against Mr. Johnson—after years of invited reliance, shared confidences, and strategic collaboration—presents a textbook conflict of interest that Arizona law forbids. Their continued participation undermines public trust and violates fundamental principles of loyalty and fairness. Reconsideration is necessary to correct clear legal errors, enforce professional standards, and protect the appearance and reality of justice.

Accordingly, Johnson respectfully requests that the Court vacate its prior order and grant his Motion to Disqualify Counsel.

**DATED**: April 30, 2025

Respectfully submitted,
s/Warren V. Johnson
**Warren V. Johnson**
Pro Se Defendant

# Certificate of Service

I, Warren V. Johnson, hereby certify that on April 29, 2025, I electronically filed the foregoing Motion Reconsideration of the Motion to Disqualify Counsel with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Respectfully submitted this __30___ day of _April__,

___s/Warren V Johnson_____

Warren Johnson

2406 Alabama Street, Unit 7C

Lawrence, KS 66046

208.317.1686
warrenvjohnson@gmail.com