# EXHIBIT 1

WARREN V. JOHNSON
2406 Alabama St, Unit 7C
Lawrence, KS 66046
208.317.1686
warrenvjohnson@gmail.com

## UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

EARLY WARNING SERVICES, LLC

          Plaintiffs,

     v.

MR. WARREN V. JOHNSON;
BRANDON O'LOUGHLIN; P.A.Z.E.,
LLC

          Defendants.

Case No.:

**DECLARATION OF WARREN V. JOHNSON IN SUPPORT OF THE MOTION FOR RECONSIDERATION**

## DECLARATION OF WARREN V. JOHNSON IN SUPPORT OF THE MOTION FOR RECONSIDERATION

I, WARREN V. JOHNSON, declare under penalty of perjury as follows:

Pre-EWS Representation by BCLP (Section V of Motion):

From 2010 to 2014, I served as in-house intellectual property counsel for Karsten Manufacturing, Inc. ("PING"). During this period, I retained George Chen of Bryan Cave Leighton Paisner ("BCLP") to provide legal services to PING.

Mr. Chen and BCLP advised me on behalf of PING in matters including:

- Trade secret protection and invention selection strategies;

- Trademark prosecution, defense, and enforcement;

- Drafting and filing dozens of patent and trademark applications for; and

- Training me to draft patent claims and manage PING's IP portfolio.

All legal services rendered by BCLP during this period were billed directly to and paid by PING. PING has not waived its attorney-client privilege or consented to BCLP's representation of EWS in this matter.

Under Ninth Circuit precedent (*Trone v. Smith*, 621 F.2d 994 (9th Cir. 1980)), BCLP's prior representation of PING through me, its corporate agent, creates a conflict under Arizona ER 1.9(a). BCLP is now adverse to me in substantially related IP matters, which is barred absent PING's consent.

Personal Employment Discussions (Section VI of Motion):

While employed at EWS, I privately consulted George Chen (BCLP) and James Gibby (Kilpatrick Townsend & Stockton, "KT&S") regarding my career transition, job opportunities, and succession planning. These discussions occurred outside the scope of their representation of EWS.

These conversations did not involve EWS's legal strategy, intellectual property, or corporate interests. They concerned my personal career goals, negotiation tactics, and professional vulnerabilities.

Under Upjohn Co. v. United States, 449 U.S. 383 (1981), corporate privilege does not extend to personal legal matters unrelated to the entity's interests. The confidentiality of these discussions belongs solely to me.

The information shared with BCLP and KT&S during these consultations is "significantly harmful" under Arizona ER 1.18(c) and ABA Formal Opinion 492 (2020), as it could expose my personal vulnerabilities and strategic position.

I declare under penalty of perjury that the foregoing is true and correct.

DATED: April 30, 2025

___s/Warren V. Johnson___
Warren V. Johnson
Pro Se Defendant
2406 Alabama Street, Unit 7C
Lawrence, KS 66046

# EXHIBIT 2

## *Restat 3d of the Law Governing Lawyers, § 6*

*Restatement of the Law 3d, Law Governing Lawyers - Official Text    >    Chapter 1-Regulation of the Legal Profession    >    Topic 3- Civil Judicial Remedies in General*

# § 6 Judicial Remedies Available to a Client or Nonclient for Lawyer Wrongs

For a lawyer's breach of a duty owed to the lawyer's client or to a nonclient, judicial remedies may be available through judgment or order entered in accordance with the standards applicable to the remedy awarded, including standards concerning limitation of remedies. Judicial remedies include the following:

(1) awarding a sum of money as damages;

(2) providing injunctive relief, including requiring specific performance of a contract or enjoining its nonperformance;

(3) requiring restoration of a specific thing or awarding a sum of money to prevent unjust enrichment;

(4) ordering cancellation or reformation of a contract, deed, or similar instrument;

(5) declaring the rights of the parties, such as determining that an obligation claimed by the lawyer to be owed to the lawyer is not enforceable;

(6) punishing the lawyer for contempt;

(7) enforcing an arbitration award;

(8) disqualifying a lawyer from a representation;

(9) forfeiting a lawyer's fee (see § 37);

(10) denying the admission of evidence wrongfully obtained;

(11) dismissing the claim or defense of a litigant represented by the lawyer;

(12) granting a new trial; and

(13) entering a procedural or other sanction.

COMMENTS & ILLUSTRATIONS

Comment:

*a. Scope and cross-references.* This Section describes judicial relief available to a client or nonclient whose legal rights have been violated by actions of a lawyer. This Restatement does not purport to describe in detail such remedies and rules regarding their implementation (see Introductory Note). Instead, the Section and the following Comments note in general terms the most familiar, applicable remedies and certain circumstances involved in their application to lawyers. This list is not exhaustive, and the availability of one remedy does not necessarily foreclose others. For example, a court awarding a sum of money to prevent unjust enrichment (Subsection (3)) may also impose a constructive trust and order an accounting (see Restatement of Restitution § 160 and Restatement Second, Restitution § 30 (Tentative Draft No. 2, 1984)).

## *Restat 3d of the Law Governing Lawyers, § 51*

*Restatement of the Law 3d, Law Governing Lawyers - Official Text      >        Chapter 4-Lawyer Civil Liability      >        Topic 1- Liability for Professional Negligence and Breach of Fiduciary Duty*

## § 51 Duty of Care to Certain Nonclients

**For purposes of liability under § 48, a lawyer owes a duty to use care within the meaning of § 52 in each of the following circumstances:**

**(1) to a prospective client, as stated in § 15;**

**(2) to a nonclient when and to the extent that:**

**(a) the lawyer or (with the lawyer's acquiescence) the lawyer's client invites the nonclient to rely on the lawyer's opinion or provision of other legal services, and the nonclient so relies; and**

**(b) the nonclient is not, under applicable tort law, too remote from the lawyer to be entitled to protection;**

**(3) to a nonclient when and to the extent that:**

**(a) the lawyer knows that a client intends as one of the primary objectives of the representation that the lawyer's services benefit the nonclient;**

**(b) such a duty would not significantly impair the lawyer's performance of obligations to the client; and**

**(c) the absence of such a duty would make enforcement of those obligations to the client unlikely; and**

**(4) to a nonclient when and to the extent that:**

**(a) the lawyer's client is a trustee, guardian, executor, or fiduciary acting primarily to perform similar functions for the nonclient;**

**(b) the lawyer knows that appropriate action by the lawyer is necessary with respect to a matter within the scope of the representation to prevent or rectify the breach of a fiduciary duty owed by the client to the nonclient, where (i) the breach is a crime or fraud or (ii) the lawyer has assisted or is assisting the breach;**

**(c) the nonclient is not reasonably able to protect its rights; and**

**(d) such a duty would not significantly impair the performance of the lawyer's obligations to the client.**

### COMMENTS & ILLUSTRATIONS

**Comment:**

*a. Scope and cross-references.* This Section sets forth the limited circumstances in which a lawyer owes a duty of care to a nonclient. Compare § 14, describing when one becomes a client, and § 50, which sets forth a lawyer's duty to a client. On the meaning of the term "duty," see § 50, Comment *a*. Even when a duty exists, a

The duties described in this and the following Section are duties within the meaning of tort law; that is, they denote the fact that the actor is required to act in a particular manner at the risk that otherwise the actor "becomes subject to liability to another to whom the duty is owed for any injury sustained by that other, of which that actor's conduct is a legal cause" (Restatement Second, Torts § 4). Whether a duty in this sense exists is not necessarily the same issue as whether there exists a duty enforceable by disciplinary sanctions or other remedies (see § 16 (summarizing a lawyer's duties to a client); § 52, Comment f).
Restat 3d of the Law Governing Lawyers, § 50

lawyer is liable for negligence only if the lawyer violates the duty (see § 52), the violation is the legal cause of damages (see § 53), and no defense is established (see § 54).

As stated in § 54(1), a lawyer is not liable under this Section for any action or inaction the lawyer reasonably believed to be required by law, including a professional rule. As stated in §§ 66(3) and 67(4), a lawyer who takes action or decides not to take action permitted under those Sections is not, solely by reason of such action or inaction, liable for damages.

In appropriate circumstances, a lawyer is also subject to liability to a nonclient on grounds other than negligence (see §§ 48 & 56), for litigation sanctions (see § 110), and for acting without authority (see § 30). On indemnity and contribution, see § 53, Comment *i*. This Section does not consider those liabilities, such as liabilities arising under securities or similar legislation. Nor does the Section consider when a lawyer found liable to a nonclient may recover from a client under such theories as indemnity, contribution, or subrogation. On a client's liability to a nonclient arising out of a lawyer's conduct, see § 26, Comment *d*.

*b. Rationale.* Lawyers regularly act in disputes and transactions involving nonclients who will foreseeably be harmed by inappropriate acts of the lawyers. Holding lawyers liable for such harm is sometimes warranted. Yet it is often difficult to distinguish between harm resulting from inappropriate lawyer conduct on the one hand and, on the other hand, detriment to a nonclient resulting from a lawyer's fulfilling the proper function of helping a client through lawful means. Making lawyers liable to nonclients, moreover, could tend to discourage lawyers from vigorous representation. Hence, a duty of care to nonclients arises only in the limited circumstances described in the Section. Such a duty must be applied in light of those conflicting concerns.

*c. Opposing parties.* A lawyer representing a party in litigation has no duty of care to the opposing party under this Section, and hence no liability for lack of care, except in unusual situations such as when a litigant is provided an opinion letter from opposing counsel as part of a settlement (see Subsection (2) and Comment *e* hereto). Imposing such a duty could discourage vigorous representation of the lawyer's own client through fear of liability to the opponent. Moreover, the opposing party is protected by the rules and procedures of the adversary system and, usually, by counsel. In some circumstances, a lawyer's negligence will entitle an opposing party to relief other than damages, such as vacating a settlement induced by negligent misrepresentation. For a lawyer's liability to sanctions, which may include payments to an opposing party, based on certain litigation misconduct, see § 110. See also § 56, on liability for intentional torts.

Similarly, a lawyer representing a client in an arm's-length business transaction does not owe a duty of care to opposing nonclients, except in the exceptional circumstances described in this Section. On liability for aiding a client's unlawful conduct, see § 56.

**Illustration:**

1. Lawyer represents Plaintiff in a personal-injury action against Defendant. Because Lawyer fails to conduct an appropriate factual investigation, Lawyer includes a groundless claim in the complaint. Defendant incurs legal expenses in obtaining dismissal of this claim. Lawyer is not liable for negligence to Defendant. Lawyer may, however, be subject to litigation sanctions for having asserted a claim without proper investigation (see § 110). On claims against lawyers for wrongful use of civil proceedings and the like, see § 57(2) and Comment *d* thereto.

*d. Prospective clients (Subsection (1)).* When a person discusses with a lawyer the possibility of their forming a client-lawyer relationship, and even if no such relationship arises, the lawyer may be liable for failure to use reasonable care to the extent the lawyer advises or provides other legal services for the person (see § 15(2) and the Comments thereto). On duties to a former client, see § 50, Comment *c*.

*e. Inviting reliance of a nonclient (Subsection (2)).* When a lawyer or that lawyer's client (with the lawyer's acquiescence) invites a nonclient to rely on the lawyer's opinion or other legal services, and the nonclient reasonably does so, the lawyer owes a duty to the nonclient to use care (see § 52), unless the jurisdiction's general tort law excludes liability on the ground of remoteness. Accordingly, the nonclient has a claim against the lawyer if the lawyer's negligence with respect to the opinion or other legal services causes injury to the nonclient (see § 95). The lawyer's client typically benefits from the nonclient's reliance, for example, when providing the opinion was called for as a condition to closing under a loan agreement, and recognition of such a claim does not conflict with duties the lawyer properly owed to the client. Allowing the claim tends to benefit future clients in similar situations by giving nonclients reason to rely on similar invitations. See Restatement Second, Torts § 552. If a client is injured by a lawyer's negligence in providing opinions or services to a

## *Restat 3d of the Law Governing Lawyers, § 121*

***Restatement of the Law 3d, Law Governing Lawyers - Official Text    >    Chapter 8-Conflicts of Interest    >    Topic 1- Conflicts of Interest--in General***

## § 121 The Basic Prohibition of Conflicts of Interest

**Unless all affected clients and other necessary persons consent to the representation under the limitations and conditions provided in § 122, a lawyer may not represent a client if the representation would involve a conflict of interest. A conflict of interest is involved if there is a substantial risk that the lawyer's representation of the client would be materially and adversely affected by the lawyer's own interests or by the lawyer's duties to another current client, a former client, or a third person.**

### COMMENTS & ILLUSTRATIONS

**Comment:**

*a. Scope and cross-references.* This Section sets forth the basic prohibition against conflict of interest. Sections 125-135 set out applications of this Section in common conflict-of-interest settings. Interpretation of those Sections can, in turn, be clarified by reference to the general principle in this Section. Client consent to conflicts is the subject of § 122. On imputation of conflicts to affiliated lawyers, see § 123; for the circumstances in which imputation can be removed, see § 124.

On formation of the client-lawyer relationship in general, see § 14. Representation of a fiduciary, entity, or class client with possible fiduciary responsibilities to third persons is considered in § 26. With respect to a prospective client, see § 15. On duties owed by a lawyer to nonclients about whom a lawyer learns confidential information in the course of representing a client, see § 132, Comment *g(ii)*. On conflicts created by a lawyer's fiduciary or other legal obligations to a nonclient, see § 135.

This Section generally identifies four types of conflicts of interests, i.e., those between the interest of a current client and (1) the lawyer's own interest, (2) the lawyer's duties to another current client, (3) the lawyer's duties to a former client, and (4) the lawyer's duties to a third person. Those are analyzed in Topics 2-5 of this Chapter, respectively. The special problems of applying conflicts rules in class-action suits are considered in §§ 125 and 128.

Issues concerning conflicts of interest are also affected by issues considered in other Chapters of this Restatement. For example, Chapter 5 on confidential client information provides the rationale for many of the rules in this Chapter. The scope of the lawyer's obligation to each client (see § 16) determines whether the lawyer's contemplated services would involve assistance to clients whose interests conflict.

The Section refers to consent by clients "and other necessary persons" in view of the possible need for consent by nonclients, for example former clients under § 132 or persons who were never in a lawyer-client relationship with the lawyer under § 132, Comment *g(ii)*.

*b. Rationale.* The prohibition against lawyer conflicts of interest reflects several competing concerns. First, the law seeks to assure clients that their lawyers will represent them with undivided loyalty. A client is entitled to be represented by a lawyer whom the client can trust. Instilling such confidence is an objective important in itself. For example, the principle underlying the prohibition against a lawyer's filing suit against a present client in an unrelated matter (see § 128, Comment *e*) may also extend to situations, not involving litigation, in which significant impairment of a client's expectation of the lawyer's loyalty would be similarly likely. Contentious dealings, for example involving charges of bad faith against the client whom the lawyer represents in another matter would raise such a concern. So also would negotiating on behalf of one client when a large proportion of the lawyer's other client's net worth is at risk.

Second, the prohibition against conflicts of interest seeks to enhance the effectiveness of legal representation. To the extent that a conflict of interest undermines the independence of the lawyer's professional judgment or

## *Restat 3d of the Law Governing Lawyers, § 132*

**Restatement of the Law 3d, Law Governing Lawyers - Official Text    >    Chapter 8- Conflicts of Interest    >    Topic 4- Conflicts of Interest with a Former Client**

# § 132 A Representation Adverse to the Interests of a Former Client

**Unless both the affected present and former clients consent to the representation under the limitations and conditions provided in § 122, a lawyer who has represented a client in a matter may not thereafter represent another client in the same or a substantially related matter in which the interests of the former client are materially adverse. The current matter is substantially related to the earlier matter if:**

**(1) the current matter involves the work the lawyer performed for the former client; or**

**(2) there is a substantial risk that representation of the present client will involve the use of information acquired in the course of representing the former client, unless that information has become generally known.**

**COMMENTS & ILLUSTRATIONS**

**Comment:**

*a. Scope and cross-references.* This Section applies the general conflicts principles of § 121 to situations in which a lawyer represents a present client in a matter in which there is a substantial risk of material and adverse effect on the interests of the present or a former client. Such a risk can arise from the threat to that client's confidential information, to the interests of the present client because of the lawyer's continuing duties to a former client, or to the interests of both clients because of confusion of the lawyer's role. A lawyer formerly employed by the government is subject to the similar provisions of § 133. Imputation to affiliated lawyers of a conflict identified by this Section is addressed in § 123. Circumstances under which imputation can be removed are addressed in § 124(1) and (2). Conflicts of interest arising out of dealings with a prospective client are addressed in § 15, Comment *c*.

In light of the confidentiality requirements of Chapter 5, a lawyer representing a client in a matter may not use confidential client information if doing so will adversely affect a material interest of the former client, even though that matter is not substantially related to a former representation (see Comments *f* & *g* hereto).

The conflict described in this Section is subject to consent of the present and former clients under the limitations and conditions provided in § 122. Conditional consent might be especially relevant in situations arising under this Section (see § 122, Comment *e*). For example, a client might give informed consent on the condition that a law firm employ screening measures such as those described in § 124.

Remedies discussed in § 121, Comment *f*, can be invoked for a violation of this Section. Because the issues raised by this Section often arise in litigation against or negotiations with a former client, the remedies of disqualification and injunction are commonly invoked. The sanction of professional discipline is also available (see § 5). If a violation of this Section causes injury to a present or former client, the remedy of professional malpractice might be available (see § 48 and following). When a lawyer has undertaken a representation that is later determined to involve a conflict of interest, but could not reasonably have identified the conflict, that should be given substantial weight in determining what sanction, if any, is appropriate.

*b. Rationale.* The rule described in this Section accommodates four policies. First, absent the rule, a lawyer's incentive to serve a present client might cause the lawyer to compromise the lawyer's continuing duties to the former client (see § 33). Specifically, the lawyer might use confidential information of the former client contrary to that client's interest and in violation of § 60. The second policy consideration is the converse of the first. The lawyer's obligations to the former client might constrain the lawyer in representing the present client effectively, for example, by limiting the questions the lawyer could ask the former client in testimony. Third, at the time the

§ 132 A Representation Adverse to the Interests of a Former Client

Information that is confidential for some purposes under § 59 (so that, for example, a lawyer would not be free to discuss it publicly (see § 60)) might nonetheless be so general, readily observable, or of little value in the subsequent representation that it should not by itself result in a substantial relationship. Thus, a lawyer may master a particular substantive area of the law while representing a client, but that does not preclude the lawyer from later representing another client adversely to the first in a matter involving the same legal issues, if the matters factually are not substantially related. A lawyer might also have learned a former client's preferred approach to bargaining in settlement discussions or negotiating business points in a transaction, willingness or unwillingness to be deposed by an adversary, and financial ability to withstand extended litigation or contract negotiations. Only when such information will be directly in issue or of unusual value in the subsequent matter will it be independently relevant in assessing a substantial relationship.

*e. A subsequent client with interests "materially adverse" to the interests of a former client.* A later representation is prohibited if the second client's interests are materially adverse to those of the former client (see § 121, Comments *c(i)* (adverseness) & *c(ii)* (materiality)). The scope of a client's interests is normally determined by the scope of work that the lawyer undertook in the former representation. Thus, a lawyer who undertakes to represent a corporation with respect to the defense of a personal-injury claim involving only issues of causation and damages does not represent the corporation with respect to other interests. The lawyer may limit the scope of representation specifically for the purpose of avoiding a future conflict (see § 16). Similarly, the lawyer may limit the scope of representation of a later client so as to avoid representation substantially related to that undertaken for a previous client.

**Illustration:**

> 5. Lawyer formerly represented Client A in obtaining FDA approval to market prescription drug X for treating diseases of the eye. Client B has now asked Lawyer for legal assistance to obtain FDA approval for sale of prescription drug Y for treating diseases of the skin. Client B is also interested in possibly later application for FDA approval to market a different form of drug Y to treat diseases of the eye, thus significantly reducing the profitability of Client A's drug X. Confidential information that Lawyer gained in representing Client A in the earlier matter would be substantially related to work that Lawyer would do with respect to any future application by Client B for use of drug Y for eye diseases (although the information would not relate to the use of drug Y for treating diseases of the skin). Client B and Lawyer agree that Lawyer's work will relate only to FDA approval for use of drug Y to treat diseases of the skin. Thus limited, Lawyer's work for Client B does not involve representation adverse to former Client A on a substantially related matter.

*f. A lawyer's subsequent use of confidential information.* Even if a subsequent representation does not involve the same or a substantially related matter, a lawyer may not disclose or use confidential information of a former client in violation of § 60.

**Illustration:**

> 6. Lawyer, now a prosecutor, had formerly represented Client in defending against a felony charge. During the course of a confidential interview, Client related to Lawyer a willingness to commit perjury. Lawyer is now prosecuting another person, Defendant, for a matter not substantially related to the former prosecution. In the jurisdiction, a defendant is not required to serve notice of defense witnesses that will be called. During the defense case, Defendant's lawyer calls Client as an alibi witness. Lawyer could not reasonably have known previously that Client would be called. Because of the lack of substantial relationship between the matters, Lawyer was not prohibited from undertaking the prosecution. Because Lawyer's knowledge of Client's statement about willingness to lie is confidential client information under § 59, Lawyer may not use that information in cross-examining Client, but otherwise Lawyer may cross-examine Client vigorously.

*g. A lawyer's duties of confidentiality other than to a former client.* The principles in this Section presuppose that the lawyer in question has previously represented the person adversely affected by the present representation. Whether a client-lawyer relationship exists is considered in § 14 and § 121, Comment *d.* Two situations present analogous problems--communications with a prospective client and confidential information about a nonclient learned in representing a former client.

§ 132 A Representation Adverse to the Interests of a Former Client

*g(i). Duties to a prospective client.* A lawyer's obligation of confidentiality with respect to information revealed during an initial consultation prior to the decision about formation of a lawyer-client relationship is considered in § 15, Comment *c*.

*g(ii). Duties to a person about whom a lawyer learned confidential information while representing a former client.* A lawyer might have obligations to persons who were not the lawyer's clients but about whom information was revealed to the lawyer under circumstances obligating the lawyer not to use or disclose the information. Those obligations arise under other law, particularly under the law of agency. For example, a lawyer might incur obligations of confidentiality as the subagent of a principal whom the lawyer's client serves as an agent (see Restatement Second, Agency §§ 5, 241, & 396). An important difference between general agency law and the law governing lawyers is that general agency law does not normally impute a restriction to other persons. Thus, when a lawyer's relationship to a nonclient is not that of lawyer-client but that, for example, of subagent-principal, imputation might not be required under the law governing subagents.

**Illustrations:**

7. Lawyer has represented Hospital in several medical-malpractice cases. In the course of preparing to defend one such case, Lawyer reviewed the confidential medical file of Patient who was not a party in the action. From the file, Lawyer learned that Patient had been convicted of a narcotics offense in another jurisdiction. Patient is now a material witness for the defense in an unrelated case that Lawyer has filed on behalf of Plaintiff. Adequate representation of Plaintiff would require Lawyer to cross-examine Patient about the narcotics conviction in an effort to undermine Patient's credibility. Lawyer may not reveal information about Patient that Hospital has an obligation to keep confidential. That limitation in turn may preclude effective representation of Plaintiff in the pending case. However if, without violating the obligation to Patient, Lawyer can adequately reveal to Plaintiff the nature of the conflict of interest and the likely effect of restricted cross-examination, Lawyer may represent Plaintiff with Plaintiff's informed consent (see § 122, Comment *c*).

8. Lawyer represents Underwriter in preparing to sell an issue of Company's bonds; Lawyer does not represent Company. Several questions concerning facts have arisen in drafting disclosure documents pertaining to the issue. Under applicable law, Underwriter must be satisfied that the facts are not material. Lawyer obtains confidential information from Company in the course of preparing Lawyer's opinion for Underwriter. Among the information learned is that Company might be liable to A for breach of contract. Unless the information has become generally known (see § 59), Lawyer may not represent A in a breach of contract action against Company because the information was learned from Company in confidence.

In the circumstances described in Illustration 8, standards of agency law or other law might permit the underwriter to provide services to another customer in a subsequent transaction so long as the underwriter takes appropriate steps to screen its employees. A lawyer affiliated with the disqualified lawyer could represent the underwriter in the second transaction after appropriate screening of the disqualified lawyer (compare § 124).

A lawyer's duties as fiduciary to nonclient third persons might create a conflict of interest with clients of the lawyer (see § 135).

A lawyer who learns confidential information from a person represented by another lawyer pursuant to a common-interest sharing arrangement (see § 76) is precluded from a later representation adverse to the former sharing person when information actually shared by that person with the lawyer or the lawyer's client is material and relevant to the later matter (see Illustration 8, above). Such a threatened use of shared information is inconsistent with the undertaking of confidentiality that is part of such an arrangement.

*h. A lawyer with only a minor role in a prior representation.* The specific tasks in which a lawyer was engaged might make the access to confidential client information insignificant. The lawyer bears the burden of persuasion as to that issue and as to the absence of opportunity to acquire confidential information. When such a burden has been met, the lawyer is not precluded from proceeding adversely to the former client (see § 124, Comment *d*, Illustration 3).

*i. Withdrawal from representing an "accommodation" client.* With the informed consent of each client as provided in § 122, a lawyer might undertake representation of another client as an accommodation to the lawyer's regular client, typically for a limited purpose in order to avoid duplication of services and consequent higher fees. If adverse interests later develop between the clients, even if the adversity relates to the matter

## *Restat 3d of the Law Governing Lawyers, § 135*

*Restatement of the Law 3d, Law Governing Lawyers - Official Text    >    Chapter 8- Conflicts of Interest    >    Topic 5- Conflicts of Interest Due to a Lawyer's Obligation to a Third Person*

## § 135 A Lawyer with a Fiduciary or Other Legal Obligation to a Nonclient

Unless the affected client consents to the representation under the limitations and conditions provided in § 122, a lawyer may not represent a client in any matter with respect to which the lawyer has a fiduciary or other legal obligation to another if there is a substantial risk that the lawyer's representation of the client would be materially and adversely affected by the lawyer's obligation.

### COMMENTS & ILLUSTRATIONS

**Comment:**

*a. Scope and cross-references.* This Section applies the general conflicts prohibition of § 121 to situations in which a lawyer has legal duties to persons or organizations in a capacity other than that of lawyer. The considerations in §§ 128-130 on representation of multiple clients are analogous to those in this Section, as are conflicts addressed in § 125 involving a lawyer's personal interests. Related issues can arise regarding a former-client conflict (see § 132, Comment *g(ii)*).

The prohibition of this Section can be waived by client consent as provided in § 122. Whether and on what terms the other beneficiaries or obligees of the lawyer may consent is beyond the scope of this Section (compare, e.g., Restatement Second, Agency § 392 (acting for adverse party with principal's consent)). Where the fiduciary responsibility may not be waived by the beneficiary, the lawyer will have a conflict that is not subject to consent by the client alone (see § 122, Comment *c*). The prohibition imposed by this Section is imputed to affiliated lawyers under § 123 (see Comment *a* thereto).

Sanctions and remedies described in § 121, Comment *f*, can be imposed for violation of this Section. The sanction of professional discipline (see § 5) and the remedy of professional malpractice (see § 48 and following) are available. The nonclient to whom the lawyer owes duty may have a remedy of disqualification of the lawyer (see § 6, Comment *i*) or an injunction (id. Comment *c*) against further representation in order to protect its interests. The law governing the lawyer's other role--for example, the law governing members of a legislative body--may also provide both substantive requirements and remedies in addition to those stated in this Restatement.

*b. Rationale.* Legal duties to nonclients other than those owed as a lawyer can create conflicting loyalties for a lawyer. If those duties restrict the lawyer's representation of the client, they require informed client consent. The duties of the lawyer arising from law external to the law governing lawyers as such can enhance or otherwise alter the responsibilities of a lawyer-fiduciary (see generally Restatement Second, Trusts).

*c. A lawyer as executor or trustee.* A lawyer's service as executor of a will or trustee of a trust can create conflicts between the duties of the lawyer as such a fiduciary and the interests of clients whom the lawyer represents. When those duties would materially and adversely affect the lawyer's representation of the client, the lawyer must either withdraw from the representation, withdraw from the conflicting office, or, after making suitable adjustments in order to provide adequate legal services to the client (see § 122, Comment *h*), obtain the informed consent of the client.

**Illustrations:**

1. Lawyer is outside counsel to Company, a business corporation. Lawyer is also executor of the estate of Boss, the former president of Company. From examining Boss's papers, Lawyer knows that Company has plausible claims against the estate for the return of Company assets taken by Boss for personal use. Lawyer may not represent Company in seeking compensation for the assets because Lawyer's obligation as executor would be to resist the claims of Company. Whether Lawyer may inform Company of the

# EXHIBIT 3

of other transactions an ordinary person would look to the lawyer as a protector rather than as an adversary.'" *In re Pappas,* 159 Ariz. 516, 522, 768 P.2d 1161, 1167 (1988) (quoting *In re Neville,* 147 Ariz. 106, 111, 708 P.2d 1297, 1302 (1985)). Thus, a purported client's "belief that [the lawyer] was their attorney" is crucial to the existence of an attorney-client relationship, so long as that belief is "objectively reasonable." *Id.*

¶ 11 Of course, we recognize that the circumstances of this case are materially different from those presented in *Neville* and *Pappas,* in which the relationship between lawyer and client evolved from business transactions. But neither our cases nor the RESTATEMENT takes the position that an explicit agreement is required to create an attorney-client relationship. Nor do we believe it would be good policy to adopt that view. Langerman erroneously relies upon *Barmat v. John & Jane Doe Partners,* 155 Ariz. 515, 747 P.2d 1214 (App.1986), and *Parsons v. Continental Am. Group,* 113 Ariz. 223, 550 P.2d 94 (1976), to support the proposition that an express agreement is necessary to form an attorney-client relationship. Neither *Barmat* nor *Parsons,* however, dealt with this precise question, and neither stands for that proposition. Instead, *Barmat* and *Parsons* address the issue of whether an attorney assigned by an insurer to represent an insured is under a primary duty to the insured, so that he must act in the insured's interest rather than that of the insurer. Both cases quite correctly hold that "the attorney who represents an insured owes him undeviating and single allegiance whether the attorney is compensated by the insurer or the insured." *Parsons,* 113 Ariz. at 227, 550 P.2d at 98; *Barmat,* 155 Ariz. at 518, 747 P.2d at 1216 (internal quotes and citations omitted).

¶ 12 The rule set forth in RESTATEMENT section 14 and our cases is, we believe, the better view. Thus, we conclude the trial judge erred in holding that an express agreement was required either to permit Langerman to represent Paradigm or for an attorney-client relationship to have formed between the two.

B. Potential and actual conflicts of interest with the insurer as client

¶ 13 Langerman contends that absent the consent of the insured, a lawyer assigned by an insurer to represent the insured forms an attorney-client relationship *only* with the insured and never with the insurer. Any contrary conclusion, asserts Langerman, inherently creates a strong potential conflict of interest for the attorney, weakens his "undivided allegiance" to the insured, and creates "situations rife with opportunities for mistrust and second guessing." Petition for Review at 6, 9.

¶ 14 Langerman's concern over conflicts of interest between attorney, insurer, and insured is not unfounded. This case presents the typical situation found when defense is provided by a liability insurer: as part of the insurer's obligation to provide for the insured's defense, the policy grants the insurer the right to control that defense-which includes the power to select the lawyer that will defend the claim. Charles Silver, *Does Insurance Defense Counsel Represent the Company or the Insured?* 72 TEX. L.REV. 1583, 1594-95 (1994). But the fact that the lawyer is chosen, assigned, and paid by the insurer for the purpose of representing the insured does not automatically create an attorney-client relationship between the insurer and lawyer. *See* ¶ 10, *supra.* As comment f to RESTATEMENT § 134 states:

> It is clear in an insurance situation that a lawyer designated to defend the insured has a client-lawyer relationship with the insured. The insurer is not, simply by the fact that it designates the lawyer, a client *597 of the lawyer. Whether a client-lawyer relationship also exists between the lawyer and the insurer is determined under § 14.

¶ 15 The RESTATEMENT clearly permits a lawyer to represent the insured even though the lawyer is paid by the insurer and his/her professional conduct on behalf of the insured is directed by the insurer. *See* RESTATEMENT § 134. Thus, because the insured has given the insurer control of the defense as part of the agreement for indemnity, the assigned lawyer more or less automatically becomes the attorney for the insured. But does the assigned lawyer automatically also become the attorney for the insurer in every case? As noted in the preceding paragraph, the RESTATEMENT seems to answer in the negative. Langerman goes further, arguing that even in the absence of actual conflict between the insured and insurer, there is always a great potential for it. And it is this potential, argues Langerman, that prevents the formation of an attorney-client relationship absent the express consent of the insured—the automatic client. The basic rule prohibiting conflicts reads:

> Unless all affected clients and other necessary persons consent to the representation... a lawyer may not represent a client if the representation would involve a conflict of interest. A conflict of interest is involved if there is a *substantial risk* that the lawyer's representation of the client would be materially and adversely affected by the lawyer's own interests or *by the lawyer's duties to another current client,* a former client, *or a third person.*

> Because and to the extent that the insurer is directly concerned in the matter financially, the insurer should be accorded standing to assert a claim for appropriate relief from the lawyer for financial loss proximately caused by professional negligence or other wrongful act of the lawyer.

¶ 24 Although the RESTATEMENT's position may be a relatively recent development, Arizona's courts have long recognized situations in which a professional is under a duty of care to nonclients. In *Fickett v. Superior Court,* for example, the attorney representing a guardian of an estate was accused of negligence by the ward in failing to discover that the guardian had dissipated the estate by misappropriation, conversion, and improper investing. 27 Ariz.App. 793, 794, 558 P.2d 988, 989 (1976). The attorney prevailed on his summary judgment motion in the trial court by arguing that, since there was no fraud or collusion between him and the guardian, he could not be liable for negligence to anyone other than his client, the guardian. *Id.* The court of appeals reversed, holding that one could not say, as a matter of law, that the guardian's attorney owed no duty to the ward. Instead, the court said:

> [T]he better view is that the determination of whether, in a specific case, the attorney will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injuries suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm.

*Id.* at 795, 558 P.2d at 990.

¶ 25 Relying on a more recent case from the court of appeals, <u>*Franko v. Mitchell,* 158 Ariz. 391, 762 P.2d 1345 (App.1988),</u> Langerman argues that *Fickett* and its factors are inapplicable to the present case because there is no allegation that it was negligent in its representation of the insured, Dr. Vanderwerf. In *Franko,* the court of appeals reasoned, because "any duty owed by an attorney to a third party is derivative of the duty owed by that attorney to his client," that "at a minimum, there must be an allegation that the defendant attorney was negligent towards his client before utilizing a *Fickett*-type analysis to determine whether such liability should be extended to a third person." *Id.* at 400, 762 P.2d at 1354. Because we see no such requirement in *Fickett,* we disagree with *Franko*'s interpretation of it. We believe such a rule is not supported by precedent and is bad policy. We therefore expressly disapprove of *Franko*'s language that limits a third party's ability to bring a claim against an attorney absent an allegation of malpractice to the client.

¶ 26 We reached a result similar to *Fickett* in <u>*Donnelly Construction Co. v. Oberg/Hunt/Gilleland,* 139 Ariz. 184, 677 P.2d 1292 (1984).</u> In *Donnelly,* a construction contractor brought an action against the architect hired by the property owner, alleging that substantial error in the architect's prepared plans and specifications resulted in *601 increased construction costs, damaging the contractor—a nonclient. *Id.* at 185-86, 677 P.2d at 1293-94. We held that "design professionals are liable for foreseeable injuries to foreseeable victims which proximately result from their negligent performance of their professional services." *Id.* at 188, 677 P.2d at 1296. If design professionals cannot escape liability to foreseeably injured third parties who, although lacking privity, are harmed by a designer's negligence, we cannot see why lawyers should not likewise be held to a similar standard. Indeed, *Donnelly* expressly disapproved of *Chalpin v. Brennan,* a case in which the court of appeals "refused `to grant a cause of action for malpractice to an individual who is not a client or in privity with [an] attorney.'" *Id.* (quoting <u>*Chalpin v. Brennan,* 114 Ariz. 124, 126, 559 P.2d 680, 682 (App.1976)</u>).[7]

¶ 27 In *Napier v. Bertram* we recognized that, although the "general rule is that a professional owes no duty to a non-client unless special circumstances require otherwise," there are "special circumstances" where we have "imposed liability on a professional to the extent that a foreseeable and specific third party is injured by the professional's actions." 191 Ariz. 238, 242 ¶ 15, 954 P.2d 1389, 1393 ¶ 15 (1998). As the cases already discussed demonstrate, these circumstances are found in a myriad of contexts. *See, e.g.,* <u>*Lombardo v. Albu,* 199 Ariz. 97, 99-100 ¶ 10, 14 P.3d 288, 290-91 ¶ 10 (2000)</u> (purchaser's real estate agent has duty to disclose purchaser's financial difficulties to seller); <u>*Hamman v. County of Maricopa,* 161 Ariz. 58, 63-64, 775 P.2d 1122, 1127-28 (1989)</u> (psychiatrist has duty to exercise reasonable care to protect foreseeable victim of patient); <u>*Mur-Ray Mgmt. Corp. v. Founders Title Co.,* 169 Ariz. 417, 422-23, 819 P.2d 1003, 1008-09 (App.1991)</u> (imposing duty of reasonable care for escrow agent's representations to third persons). The "common thread [that] exists between" such cases is that "there was a foreseeable risk of harm to a foreseeable non-client whose protection depended on the actor's conduct." *Napier,* 191 Ariz. at 242, 954 P.2d at 1393.

¶ 28 But Langerman argues that Paradigm need not have depended on it, as every insurer has both the freedom and financial ability to hire separate counsel to protect the insurer's own interests. This, of course, must be done in cases in which a conflict exists or is imminent, but we certainly need not impose such an expense on every insurer in every case just to provide the insurer with protection against malpractice by the lawyer it has chosen to handle the defense. When the interests of insurer and insured coincide, as they often do, it makes neither economic nor practical sense for an insurer to hire another attorney to monitor the actions and decisions of the attorney assigned to an insured. More important, we believe that a special relationship exists between the insurer and the counsel it assigns to represent its insured. The insurer is "in some way dependent upon" the lawyer it hires on behalf of its insureds. *Napier,* 191 Ariz. at 242, 954 P.2d at 1392. For instance, the insurer depends on the lawyer to represent the insured zealously so as to honor its contractual agreement to provide the defense when liability allegations are leveled at the insured. In addition, the insurer depends on the lawyer to thwart claims of liability and, in the event liability is found, to minimize the damages it must pay. Thus, the lawyer's duties to the insured are often discharged for the full or partial benefit of the nonclient. *See Fickett,* 27 Ariz.App. at 795, 558 P.2d at 990. We reject Langerman's attempt to distinguish the present case from our cases that recognize that a professional has a duty to third parties who are foreseeably injured by the lawyer's negligent actions.

## CONCLUSION

¶ 29 We reiterate that an express agreement is not a prerequisite to the formation of an attorney-client relationship. We also determine that, based on a long line of precedent, *602 when an insurer assigns an attorney to represent an insured, the lawyer has a duty to the insurer arising from the understanding that the lawyer's services are ordinarily intended to benefit both insurer and insured when their interests coincide. This duty exists even if the insurer is a nonclient. We hold again today that a lawyer has a duty, and therefore may be liable for negligent breach, to a nonclient under the conditions set forth in previous case law and the RESTATEMENT. Summary judgment on lack of duty was therefore improper in the present case.

¶ 30 The record does not allow us, however, to determine whether, as a matter of law, Langerman actually breached its duty to Paradigm in this case. Thus, our holding does not determine whether the applicable standard of conduct would have required Langerman to investigate the existence of a different primary insurer or advise Paradigm to tender the defense to that other insurer. Although we have decided that an attorney-client relationship is not a prerequisite to Paradigm's maintaining a tort action against Langerman for its alleged negligence, whether Langerman actually breached its duty to Paradigm or caused damage is left for the trial court to decide on remand. Under the circumstances of this case, suffice it to say that absent any conflict or significant risk of conflict that compelled Langerman to act as it did, Langerman had a duty to Paradigm— regardless of whether Paradigm was a client.

¶ 31 For the foregoing reasons, we vacate the court of appeals' opinion in part, reverse the trial court in part, and remand to the trial court for further proceedings consistent with this opinion.

CONCURRING: THOMAS A. ZLAKET, Chief Justice, CHARLES E. JONES, Vice Chief Justice, FREDERICK J. MARTONE, Justice and RUTH V. McGREGOR, Justice.

[1] For instance, in the ordinary case in which liability is probable, even if somewhat questionable, it would almost always be in the interest of the insurer to make a reasonable settlement offer within policy limits. However, such a settlement might not be in the insured's interest and he or she may prefer to take a chance at trial because any settlement payment will require reporting that physician to the National Practitioner Data Bank, thus potentially affecting the physician's ability to obtain hospital privileges or malpractice insurance in the future. *See* 42 U.S.C. § 11131; *see also* 1 Geoffrey C. Hazard, Jr. & W. William Roads, THE LAW OF LAWYERING § 1.7:303 (2d ed.1990).

[2] An *amicus* brief filed in support of Paradigm's position argued that this majority rule was followed by thirty-four of the forty other states addressing the issue that we are presented with here. In response, Langerman disputes amici's representation of the holding in almost half of those thirty-four states. We find it unnecessary to cite and review every jurisdiction's treatment of the dual representation issue as we are not bound by any other state's precedent on a purely state-law matter. *See Kotterman v. Killian,* 193 Ariz. 273, 291 ¶ 68, 972 P.2d 606, 624 ¶ 68 (1999) ("while [another state's] judicial decisions may prove useful, they certainly do not control Arizona law. We alone must decide how persuasive the legal opinions of other jurisdictions will be to our holdings.").

[3] To forestall confusion among the bar, we hasten to point out that even when the insurer is not the lawyer's client, it certainly is the insured's agent to prepare and handle the defense. Thus, for instance, communications between the nonclient insurer and the lawyer would generally be entitled to the same degree of confidentiality—as long as the general requirements for privilege are met—as those between the insured client and the lawyer.