**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Early Warning Services LLC,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Warren Vurl Johnson, et al.,<br><br>　　　　Defendants. | No. CV-24-01587-PHX-SMB<br><br>**ORDER** |

Pending before the Court is Defendant Brandon O'Loughlin's Motion to Dismiss (Doc. 45) Plaintiff Early Warning Services LLC's ("EWS") Complaint (Doc. 1). EWS has filed a Response (Doc. 47), and Mr. O'Loughlin has filed a Reply (Doc. 50). After reviewing the briefing and the relevant case law, the Court will **deny** the Motion.

**I.    BACKGROUND**

The background of this case has been set forth in the Court's Order granting EWS's requested Preliminary Injunction (Doc. 70). The Court will supplement that background with relevant information pertaining to the pending Motion to Dismiss.

On June 28, 2024, EWS filed its Complaint against Mr. O'Loughlin, Warren Vurl Johnson, and P.A.Z.E., LLC ("P.A.Z.E."). (*See* Doc. 1.) In its Complaint, EWS alleges that Defendants engaged in a scheme to extract money from EWS using stolen documents and information, domain name registrations incorporating EWS's trademarks, and a sham "gripe" website disparaging EWS. (Doc. 1 ¶ 11.) EWS further alleges that Defendants launched a baseless "lawfare" campaign against it in the Trademark Trial and Appeal

Board ("TTAB"). (*Id.*)

Against Mr. O'Loughlin, EWS asserts claims for misappropriation of trade secrets, cybersquatting, and unjust enrichment, and also requests a declaration of noninfringement. (*Id.* ¶¶ 88–113, 122–155.) Mr. O'Loughlin filed his Motion to Dismiss after the parties could not agree on amendments to the Complaint. (*See* Doc. 47 at 6 n.1.)

## II.     LEGAL STANDARD

To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Rule 8(a)(2). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). This exists if the pleader sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint that sets forth a cognizable legal theory will survive a motion to dismiss if it contains sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Plausibility does not equal "probability," but requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In ruling on a Rule 12(b)(6) motion to dismiss, the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). However, legal conclusions couched as

factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

## III. DISCUSSION

### A. Trade Secret Misappropriation

It is unlawful to misappropriate trade secrets under both the federal Defend Trade Secrets Act ("DTSA") and the Arizona Uniform Trade Secrets Act ("AUTSA"). *See* 28 U.S.C. § 1832; Ariz. Rev. Stat. § 44-401. Courts analyze both claims using similar standards. *See, e.g.*, *ReBath LLC v. HD Sols. LLC*, No. CV-19-04873-PHX-JJT, 2020 WL 7000071, at *2–3 (D. Ariz. Sept. 18, 2020). To state a claim for misappropriation, a plaintiff must allege that (1) it owns a trade secret, (2) that was misappropriated by the defendant, and (3) the misappropriation caused damages. *Gordon Grado M.D., Inc. v. Phx. Cancer & Blood Disorder Treatment Inst. PLLC* ("*Grado*"), 603 F. Supp. 3d 799, 809 (D. Ariz. 2022); *Calisi v. Unified Fin. Servs., LLC*, 302 P.3d 628, 631 (Ariz. Ct. App. 2013); 18 U.S.C. § 1839(5).

#### 1. Trade Secret

The DTSA defines "trade secret" as:

> [A]ll forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if . . . the owner thereof has taken reasonable measures to keep such information secret; and . . . the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

18 U.S.C. § 1839(3). The AUTSA defines "trade secret" as:

> [I]nformation, including a formula, pattern, compilation, program, device, method, technique or process, that both:
>
> (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

(b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Ariz. Rev. Stat. § 44-401(4). In short, the information (1) must not be readily ascertainable by proper means; (2) its owner must take reasonable measures to protect the secret; and (3) must derive independent economic value from not being known. *See* 18 U.S.C. § 1839(3); Ariz. Rev. Stat § 44-401(4).

    Here, it is prudent to first discuss the allegations as they appear in the Complaint prior to addressing Mr. O'Loughlin's challenges to their sufficiency. The Complaint alleges that EWS's trade secrets consist of "internal legal documents related to its highly confidential patent and trademark matters and strategies, including indices of concept briefs and invention disclosures relating to EWS's patent portfolio, indices of EWS's trademark files, documents relating to EWS's domain names, the Privileged Chat, and a list of every matter on which Johnson was then working." (Doc. 1 ¶¶ 37, 41–43, 45, 90.) The claim against Mr. O'Loughlin centers on his receipt of EWS's trade secrets from Mr. Johnson, which included a list of approximately 105 domain names. (Doc. 1 ¶¶ 11, 58.) The Complaint explains that those documents include EWS's private internal business strategy for the launch and development of its Paze$^{SM}$ product, part of which were plans to obtain the domain names. (*Id.*) These facts suffice to allege a trade secret.[1] *See W.L. Gore & Assocs., Inc. v. GI Dynamics, Inc.*, No. CV-10-8088-PHX-GMS, 2010 WL 5184254, at *8 (D. Ariz. Dec. 15, 2010) (finding allegations of "market studies, financial information, manufacturing methods, and . . . future plans" sufficient to plead the existence of valid trade secrets); *BioD, LLC v. Amnio Tech., LLC*, No. 2:13-CV-1670-HRH, 2014 WL 268644, at *8 (D. Ariz. Jan. 24, 2014) ("Plaintiffs' allegations are sufficient to suggest the existence of valid trade secrets [where the] allegations are more than mere 'labels and conclusions.'").

---

[1] Mr. O'Loughlin directly contends for the first time in his Reply that domain names cannot be trade secrets. (*See* Doc. 50 at 2.) The Court will not consider this argument. "It is well established in this circuit that courts will not consider new arguments raised for the first time in a reply brief." *Bach v. Forever Living Prods. U.S., Inc.*, 473 F.Supp.2d 1110, 1122 n.6 (W.D. Wash. 2007) (citing *Lentini v. Cal. Ctr. For the Arts*, 370 F.3d 837, 843 n.6 (9th Cir.2004)).

Regarding the protection of those alleged secrets, the Complaint alleges the following:

> Information about EWS's patent and trademark strategies is maintained in a secured database that is accessible only be certain individuals, from certain electronic devices. Access to the secure databases is limited to only those individuals with a legitimate need for the information to effectively carry out their specific job duties.
>
> EWS's Employee Handbook requires employees to maintain the confidentiality of proprietary information both during employment and after departure from EWS.
>
> All EWS employees also must execute an Intellectual Property and Confidentiality Agreement governing nondisclosure of trade secrets and confidential information.
>
> . . . .
>
> EWS's Intellectual Property and Confidentiality Agreement . . . prohibits employees and former employees alike from disclosing, using, or disseminating any of EWS's confidential information, intellectual property, or trade secrets, and must turn those materials over to EWS upon the termination of their employment.
>
> . . . .
>
> [U]nder EWS's User Responsibility Agreement . . . employees must not photograph any restricted or nonpublic data with any device or remove restricted data from the office on any form of media without management approval and an issue management ticket.

(*Id.* ¶¶ 47–48, 50–51.) These allegations are also sufficient to state that EWS took sufficient measures to protect its trade secrets. *See, e.g.*, *Fire Sec. Elec. & Commc'ns Inc. v. Nye*, No. CV-23-02730-PHX-DLR, 2024 WL 620813, at *4 (D. Ariz. Feb. 14, 2024) (finding a "confidentiality policy and . . . issuing a unique username and password for each employee" showed a likelihood of success to establish that plaintiff took reasonable measures to protect its trade secrets); *United States v. Nosal*, 844 F.3d 1024, 1043–44 (9th Cir. 2016) ("It is also well established that 'confidential disclosures to employees, licensees, or others will not destroy the information's status as a trade secret.'" (quoting Restatement (Third) of Unfair Competition § 39 cmt. f (1995))), *overruled on other grounds by Lagos v. United States*, 584 U.S. 577, 584 (2018).

The Complaint offers several allegations about the independent economic value of EWS's trade secrets. (*Id.* ¶¶ 11, 57–64, 92–93.) In particular, the Complaint includes

allegations that Mr. O'Loughlin has, in part, shown value through ransoming EWS's domain names to it for $20,000. (*See id.* ¶ 64.) The allegations also show how EWS's proprietary documents, including strategies regarding domain names meant to aid the launch of its PAZE platform, derive value from the resources invested in such information and the precautions taken to defend from its dissemination. *See Joshua David Mellberg LLC v. Will*, 96 F. Supp. 3d 953, 973–74 (D. Ariz. 2015) ("Independent economic value can be shown by 'circumstantial evidence of the resources invested in producing the information, the precautions taken to protect its secrecy, and the willingness of others to pay for its access.'" (citation omitted)).

Mr. O'Loughlin generally argues that EWS did not institute sufficient confidentiality measures to protect its trade secrets nor do those trade secrets derive economic value from their secrecy. (Doc. 45 at 25–27.) His argument attacks the underlying facts of EWS's claims, which are not to be analyzed by the Court at this time. *Am. Bank of the N. v. Mouilso*, No. CV-16-08207-PCT-GMS, 2018 WL 2065066, at *1 (D. Ariz. May 3, 2018) ("[F]actual disputes are not resolved in a motion to dismiss."). For the reasons detailed, the Complaint plausibly states that EWS both instituted adequate confidentiality measures and that its trade secrets derive independent economic value.

2. Misappropriation

After a plaintiff has alleged that a trade secret exists, he must assert that the defendant misappropriated that secret. *Grado*, 603 F. Supp. 3d at 809. The DTSA defines misappropriation, in part, as the "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" or "disclosure or use of a trade secret of another without express or implied consent" by a person with some level of duty restricting disclosure. 18 U.S.C. § 1839(5). The AUTSA defines misappropriation as either of the following:

> (a) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means.
>
> (b) Disclosure or use of a trade secret of another without express or implied consent by a person who either:

        (i) Used improper means to acquire knowledge of the trade secret.

        (ii) At the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was derived from or through a person who had utilized improper means to acquire it, was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use or was derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use.

        (iii) Before a material change of his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

Ariz. Rev. Stat. § 44-401(2)(a), (b)(i)–(iii).

        Regarding misappropriation, the Complaint alleges as follows:

        Prior to Johnson's termination, he was responsible for providing legal advice to EWS on intellectual property issues in connection with EWS's development and launch of its Paze$^{SM}$ service. Given Johnson's role as EWS's Senior Intellectual Property Counsel, he was entrusted with, and privy to, confidential information regarding EWS's private and internal business plans and discussions regarding Paze$^{SM}$, including the company's interest in procuring particular domain names incorporating EWS's PAZE mark. On information and belief, Johnson secretly provided this information to O'Loughlin, resulting in O'Loughlin registering those domain names before EWS could do so.

        O'Loughlin formed Defendant P.A.Z.E.

        . . . .

        P.A.Z.E. has repeatedly attached to its public filings in the TTAB Proceedings a document (the "Privileged Chat") depicting a Microsoft Teams chat between Johnson and Ms. Cheney, EWS's General Counsel, in which Johnson's identity is not shown. On information and belief, Johnson made a screen capture of the Privileged Chat in November 2022 while employed by EWS.

        . . . .

        P.A.Z.E. has repeatedly posted copies of the Privileged Chat on P.A.Z.E.'s website and social media accounts, then argued in the TTAB Proceedings that the Privileged Chat is not privileged because the document is "publicly available." In the TTAB Proceedings, P.A.Z.E. claims to have found the Privileged Chat on an undisclosed (and undocumented) Reddit thread that P.A.Z.E. claims is no longer available.

(Doc. 1 ¶¶ 11(a)–(b), 73, 75.)  The Court finds that these allegations satisfy the misappropriation element because they allege (1) Mr. O'Loughlin acquired a trade secret from Mr. Johnson, both of whom knew that they were improperly acquired by Mr. Johnson; and (2) Mr. O'Loughlin disclosed the Privileged Chat and the domain names publicly without EWS's consent.  *See Nye*, 2024 WL 620813, at *4, *cf. Cutera, Inc. v. Lutronic*

*Aesthetics, Inc.*, 444 F. Supp. 3d 1198, 1207 (E.D. Cal. 2020) (finding evidence indicating that former employees copied files around the time of their departure suggested that employees intended to use those files in their subsequent employment).[2]

Mr. O'Loughlin posits that no allegations "true or hypothetical" render it plausible that P.A.Z.E., his own business, had reason to believe any information was improperly acquired or constituted trade secrets. (Doc. 50 at 5.) Mr. O'Loughlin's argument is misguided. Prominently featured in the Complaint are allegations that Mr. Johnson and Mr. O'Loughlin, partly through the P.A.Z.E. entity, schemed to use EWS's own trade secrets to harass the company. (*See, e.g.*, Doc. 1 ¶ 11.)

Mr. O'Loughlin's other arguments attempt to establish as fact that he had legitimate access to the information from public sources, the domain names were generally known to the public, and the information in the TTAB in insufficient to show misappropriation. (Doc. 45 at 27–28; Doc. 50 at 3–4.) Further, Mr. O'Loughlin argues that EWS has produced no evidence of unauthorized use or disclosure. (Doc. 45 at 28–29.) Again, Mr. O'Loughlin attacks the underlying merits of EWS's claims and the sufficiency of the evidence at the pleading stage, which exceeds the scope of the Court's current inquiry. *See Mouilso*, 2018 WL 2065066, at *1. Therefore, the Court finds EWS adequately pleaded sufficient facts to support the second element of trade secret misappropriation.

### 3. Causation and Harm

"The very purpose of trade secret law is to protect valuable confidential information from discovery. Therefore, the public disclosure of trade secrets necessarily implies that particularized harm exists because trade secrets derive their value from their secrecy." *Ctr. For Auto Safety v. Goodyear Tire & Rubber Co.*, 454 P.3d 183, 189 (Ariz. Ct. App. 2019); *see also Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1011 (1984) ("Once the data that constitute a trade secret are disclosed to others, or others are allowed to use those data, the

---

[2] In its Order granting EWS's Motion for Preliminary Injunction, the Court found that the Privileged Chat (or the "Teams Chat") was undoubtedly privileged, but was not certain that EWS could prove its status as a trade secret. (*See* Doc. 70 at 10.). This finding, however, does not impact the Court's separate finding in this Order that EWS has properly alleged misappropriation based on the dissemination of the Privileged Chat and the domain names.

holder of the trade secret has lost his property interest in the data."); *see also* Restatement (First) of Torts § 757, cmt. c (1939) ("One who has a trade secret may be harmed merely by the disclosure of his secret to others as well as by the use of his secret in competition with him.  A mere disclosure enhances the possibilities of adverse use.").

The Complaint alleges that Mr. O'Loughlin harmed EWS by registering the wrongfully obtained domain names, charging EWS $20,000 for ownership rights to the domains, launching a lawfare campaign in the TTAB using EWS's confidential information, and repeatedly disclosing the Privileged Chat.  (*Id.* ¶¶ 37–38, 57–63, 66–76); *Paul Johnson Drywall Inc. v. Sterling Grp. LP*, No. CV-21-01408-PHX-DWL, 2021 WL 5882628, at *5 (D. Ariz. Dec. 13, 2021) (recognizing that disclosure of a trade secret may alone stand to show causation and harm).  These allegations sufficiently state a claim for causation and harm.

Mr. O'Loughlin's only discernible argument regarding damages states that EWS has failed to provide evidence of actual or potential economic harm.  (Doc. 45 at 30.)  Yet again, Mr. O'Loughlin challenges the underlying merits of the claims without regard to the allegations asserted in the Complaint.  *See Mouilso*, 2018 WL 2065066, at *1.  Therefore, Mr. O'Loughlin's arguments have no bearing on the Court's analysis.

At bottom, EWS has properly alleged causation and harm and therefore has stated a claim for trade secret misappropriation.  Mr. O'Loughlin's Motion to Dismiss the claim is therefore denied.

**B. Cybersquatting**

To plead a claim for cybersquatting under the Anticybersquatting Consumer Protection Act ("ACPA"), a mark owner must allege "(1) the [domain name owner] registered, trafficked in, or used a domain name; (2) the domain name is identical or confusingly similar to a protected mark owned by the [mark owner]; and (3) the [domain name owner] acted with bad faith intent to profit from that mark."  *DSPT Intern., Inc. v. Nahum*, 624 F.3d 1213, 1218–19 (9th Cir. 2010); 15 U.S.C. § 1125(d).

EWS pleads:

- EWS owns all right, title and interest in and to the ZELLE mark and PAZE mark in the United States, including all common law rights.
- EWS's ZELLE mark and PAZE mark are inherently distinctive and were inherently distinctive at the time O'Loughlin registered the Accused Domain Names.
- O'Loughlin registered or has trafficked in the Accused Domain Names with a bad faith intent to profit.
- O'Loughlin agreed to transfer 55 of the Accused Domain Names to EWS in return for $20,000 but refused to transfer others.

(Doc. 1 ¶¶ 64, 123, 125–128.) Mr. O'Loughlin argues that EWS fails to plead a valid ACPA claim because it does not own the "PAZE" mark, its use of the "PAZE" mark alongside other goods and services lacks distinctiveness, and EWS fails to establish bad faith intent to profit. (Doc. 45 at 15–19.) He also argues that he registered the domain names to exercise his First Amendment right to free speech, and thus allegations of cybersquatting "mischaracterizes legitimate expression as malicious intent." (*Id.* at 20.)

Regarding the ownership of the marks, EWS alleges that it owns "all right, title, and interest in and to the ZELLE mark and PAZE mark" and that the marks are "inherently distinctive." (Doc. 1 ¶¶ 123, 125–26.) Though Mr. O'Loughlin challenges the distinctiveness, this goes to the merits of the claim, which is not a factor to be analyzed on this Motion to Dismiss. Regarding the bad faith intent to profit, the Complaint sets forth facts outlining Defendants' use of EWS's domain names strategy, which allowed Mr. O'Loughlin to register those names before ransoming those domains to EWS for $20,000. (*See, e.g.*, Doc. 1 ¶¶ 11, 37–38, 57–64.)

Mr. O'Loughlin also argues that EWS's ACPA claim is not "ripe for adjudication" because of the TTAB proceedings regarding EWS's marks distinctiveness. (Doc. 45 at 17–18.) Mr. O'Loughlin misses the mark, as the ACPA protects both "federally-registered marks as well as unregistered marks." *City of Carlsbad v. Shah*, 850 F. Supp. 2d 1087, 1103 (S.D. Cal. 2012); *see also Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1162–65 (9th Cir. 2007) (explaining that pending proceedings in the TTAB do not divest the court with jurisdiction to decide claims involving the trademark). Therefore, the status on the "distinctiveness" of EWS's mark here is of no moment for stating a claim

under the Act. *See id.*

Similarly, Mr. O'Loughlin's reliance on the First Amendment is misplaced, as his right to speech does not "protect commercial speech that is 'inherently misleading' or concerns unlawful activity." *W. States Med. Ctr. v. Shalala*, 238 F.3d 1090, 1093 (9th Cir. 2001) (quoting *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 563–64 (1980)). The Complaint alleges that Mr. O'Loughlin engaged in several acts of unlawful conduct, including cybersquatting. (*See, e.g.*, Doc. 1 ¶¶ 64, 123, 125–128.)

At bottom, EWS has stated a claim for relief under the ACPA. Therefore, Mr. O'Loughlin's Motion to Dismiss the ACPA claim is denied.

**C. Unjust Enrichment**

Under Arizona law, a claim for unjust enrichment has three elements: "'(1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and the impoverishment, (4) the absence of justification for the enrichment and impoverishment, and (5) the absence of a remedy provided by law.'" *Perez v. First Am. Title Ins. Co.*, 810 F. Supp. 2d 986, 991 (D. Ariz. 2011) (quoting *Freeman v. Sorchych*, 245 P.3d 927, 936 (Ariz. Ct. App. 2011); *see also Murdock-Bryant Const., Inc. v. Pearson*, 703 P.2d 1197, 1202 (Ariz. 1985) (recognizing unjust enrichment in cases sounding outside of tort and contract).[3]

The Complaint alleges that "Defendants were enriched and EWS was impoverished [because] of Defendants' unlawful activities. As one example . . . O'Loughlin's acts of cybersquatting, enabled Defendants to demand that EWS pay $20,000 to acquire certain of the Accused Domain Names." (Doc. 1 ¶ 133.) EWS argues that these allegations suffice to plead the first four elements of unjust enrichment against Mr. O'Loughlin. (Doc. 47 at 15 (citing *Hill v. HD Supply Facilities Maint., Ltd.*, No. CV-19-04930-PHX-SPL, 2020

---

[3] Recently, this Court analyzed an unjust enrichment claim using a differently stated, though substantively identical, test in *Abira Med. Lab'ys LLC v. Blue Cross Blue Shield of Ariz*, No. CV-24-01485-PHX-SMB, 2025 WL 1000739, at *8 (D. Ariz. Apr. 3, 2025). There, the Court stated that an unjust enrichment claim required a demonstration that (1) plaintiff conferred a benefit upon the defendant; (2) defendant's benefit is at plaintiff's expense; and (3) it would be unjust to allow defendant to keep the benefit. *Id.* This test, while stated differently, achieves the same ends through the same means, and therefore the Court elects to apply the test as announced in *Perez*, 810 F. Supp. 2d at 991.

- 11 -

1 WL 4365878, at *4 (D. Ariz. July 29, 2020) (finding the first three elements satisfied when
2 defendant-employer failed to pay plaintiff-employee an incentive payout)).)

3       As alleged, EWS has pleaded the first four elements of an unjust enrichment claim. Apodictic to such a claim are allegations that the plaintiff conferred "a benefit to the defendant, not a third party." *See Physicians Surgery Cntr. Of Chandler v. Cigna HealthCare Inc.*, 609 F. Supp. 3d 930, 940 (D. Ariz. 2022). Benefit is defined broadly and "denotes any form of advantage, including an interest in money, land, or chattels." *Piper v. Gooding & Co. Inc.*, 334 F. Supp. 3d 1009, 1019 (D. Ariz. 2018) (finding a future financial interest in the sale of a potentially stolen Ferrari sufficient to show a benefit); *cf. Abira Med. Lab'ys*, 2025 WL 1000739, at *9 (finding that the plaintiff failed to allege a "legally cognizable 'benefit'" where it claimed to confer a benefit on the defendant-insurer by providing medical care to the insurer's clients).

      Here, EWS did not *directly* confer a benefit on Mr. O'Loughlin, and instead Mr. Johnson gave Mr. O'Loughlin the domain names, and then Mr. O'Loughlin registered those names before selling them to EWS. (*See* Doc. 1 ¶ 133.) However, the benefit Mr. O'Loughlin received was the advantage of having EWS's proprietary information, registering the domain names based on EWS's business strategy, and then charging EWS $20,000 to obtain a portion of the stolen domain names. (*See id.*); *Piper*, 334 F. Supp. 3d at 1019. Therefore, Mr. O'Loughlin's argument that the voluntary sale of a portion of EWS's domain names nullifies the unjust enrichment claim does not, at this time, overcome EWS's allegations. (*See* Doc. 45 at 22.)

      As for the fifth element, the lack of a binding agreement between EWS and Mr. O'Loughlin is enough to show that it lacks a remedy provided by law. *See Cheatham v. ADT Corp.*, 161 F. Supp. 3d 815, 833 (D. Ariz. 2016) ("[A] plaintiff may bring an unjust enrichment claim where [it] asserts a right that is not subject to vindication in an action to enforce the contract.") And, while Mr. O'Loughlin argues that EWS's other tort claims provide legal remedies that would defeat the fifth unjust enrichment element, EWS is not foreclosed from pleading unjust enrichment as an alternative claim. *See All. Labs, LLC v.*

*Stratus Pharms., Inc.*, No. 2:12-cv-00927 JWS, 2013 WL 273309, at *5 (D. Ariz. Jan. 24, 2013) ("[T]he availability of another remedy does not prevent Alliance from pleading a claim for relief under the tort of unjust enrichment in the alternative." (citing Fed. R. Civ. P. 8(d))).

EWS has stated a claim for unjust enrichment. Therefore, the Court will deny Mr. O'Loughlin's Motion to Dismiss EWS's unjust enrichment claim.

### D. Declaration of Noninfringement

#### 1. Actual Case or Controversy

"[A]n action for a declaratory judgment that a patent [or trademark] is invalid, or that the plaintiff is not infringing, [presents] a case or controversy if the plaintiff has a real and reasonable apprehension that he will be subject to liability if he continues to manufacture his product." *Rhoads*, 504 F.3d at 1157 (alterations in original) (citation omitted); *see also* 28 U.S.C. § 2201 (the "Declaratory Judgment Act").

According to Mr. O'Loughlin, the correct standard for a declaratory judgment action is that of a "sufficient immediacy and reality," not a "reasonable apprehension." (*See* Doc. 50 at 2 (citing *Medimmune v. Genentech, Inc.*, 549 U.S. 118, 128–30 (2007)).) As the Ninth Circuit has explained, "although *Medimmune* may have abrogated the Federal Circuit's version of the reasonable apprehension test, it did not abrogate our version. As we explained in *Rhoades*, the Federal Circuit's version of the reasonable apprehension test created a 'burden [that was] heavier than what we require[d]' because the Federal Circuit required 'an explicit threat.'" *San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, 65 F.4th 1012, 1024 (9th Cir. 2023) (cleaned up). Therefore, the Court finds that the "reasonable apprehension" standard enunciated in *Rhoades* is proper in this case. *See* 504 F.3d at 1157.

Here, the Complaint alleges that Mr. O'Loughlin created P.A.Z.E. and sent EWS two letters "threaten[ing] to seek cancellation of EWS's Registration of [its Ƶ mark] and to oppose EWS's PAZE Application by filing the TTAB proceedings." (Doc. 1 ¶¶ 11, 16, 137.) Additionally, EWS alleges that Mr. O'Loughlin, through P.A.Z.E., sent

1  "cease-and-desist letter[s] to EWS's customers and merchants displaying EWS's PAZE
2  mark in a confusingly similar way" to P.A.Z.E.'s alleged PAŻE mark. (*Id.* ¶ 137 (internal
3  quotation marks omitted).) These facts alone show concrete threats that give rise to a "real
4  and reasonable apprehension" that EWS may be sued if it continues to offer its service. *Cf.*
5  *Rhoads*, 504 F.3d at 1157 (noting that less than "concrete threats" are required to state a
6  claim for relief for purposes of Rule 12(b)(1)).

7  In trademark cases, the likelihood of confusion test is the touchstone for
8  infringement claims. *See Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426,
9  431 (9th Cir. 2017), *abrogated in part on other grounds by Harbor Breeze Corp. v.*
10 *Newport Landing Sportfishing, Inc.*, 28 F.4th 35 (9th Cir. 2022). This test asks "whether
11 a 'reasonably prudent' marketplace consumer is 'likely to be confused as to the origin of
12 the good or service bearing one of the marks.'" *Id.* (quoting *Rearden LLC v. Rearden*
13 *Commerce, Inc.*, 683 F.3d 1190, 1214 (9th Cir. 2012)).

14 Again, EWS alleges that "'[t]he necessary implication of P.A.Z.E.'s threats to send
15 'cease-and-desist letter[s]' to EWS's customers and merchants for displaying EWS's
16 PAZE mark in a "confusingly similar way" to P.A.Z.E.'s alleged PAŻE mark is that
17 P.A.Z.E. claims EWS's PAZE mark and Ż mark infringe P.A.Z.E.'s trademark rights in
18 its alleged [mark]." (Doc. 1 ¶ 140 (second alteration in original).) EWS also alleges that
19 "[o]n May 3, 2024, and May 16, 2024, P.A.Z.E. followed through on its threats to seek
20 cancellation of EWS's Ż Registration and to oppose EWS's PAZE Application by filing
21 the TTAB Proceedings. (*Id.* ¶ 137.)

22 Courts in the Ninth Circuit have generally held similar facts enough to state a claim
23 for relief under the Declaratory Judgment Act. *See, e.g.*, *Chesebrough-Pond's, Inc. v.*
24 *Faberge, Inc.*, 666 F.2d 393, 396–397 (9th Cir. 1982) (finding an actual controversy where
25 the defendant's letters to the plaintiff alleged a likelihood of confusion and the defendant
26 opposed the plaintiff's trademark application); *E. & J. Gallo Winery v. Pernod Ricard USA,*
27 *LLC*, No. 1:06-CV-00823 OWW-SMS, 2006 WL 2849830, at *9 (E.D. Cal. Oct. 5, 2006)
28 (denying a motion to dismiss asserting a lack of actual controversy where the defendant

accused the plaintiff's product of "infringing [the defendant's] trademark by creating confusion," which the court found to threaten "potential harm to [the plaintiff's] relationship with its customers and retailers"). Therefore, the Court finds that EWS has pleaded a reasonable apprehension that it will be subject to liability if it continues to offer its services. *See Rhoads*, 504 F.3d at 1157.

2. Noninfringement

To establish that EWS infringed on the marks, Defendants would need to show that: "[They] ha[ve] a protectible ownership interest in the mark; and (2) that [their] use of the mark is likely to cause consumer confusion." *Dep't of Parks & Recreation v. Bazaar Del Mundo Inc.*, 448 F3d 1118, 1124 (9th Cir. 2006); 15 U.S.C. § 1125(a). In trademark law, "the standard test of ownership is priority of use." *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996). "[R]egistration of a mark upon the principal register . . . shall be prima facie evidence of . . . the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce." 15 U.S.C. § 1057(b).

The Complaint alleges the following:

> EWS first used its PAZE mark in United States commerce on March 26, 2023
> . . . .
>
> EWS owns prior rights in its PAZE mark . . . [and] filed its Application Serial No. 97669754 to register its PAZE mark before P.A.Z.E. claimed to begin using **PAŻE** and PAZE, and almost a year before P.A.Z.E. filed its application to register its alleged marks.
>
> On April 5, 2016, EWS applied to register its **Ż** mark . . . [t]hat application matured into Registration No. 5476070, which issued on May 22, 2018.

(Doc. 1 ¶¶ 144–146.) The Complaint also alleges that EWS's **Ż** mark is inherently distinctive of EWS's services under the mark, making it "valid and protectible," and that EWS first used the mark on August 28, 2016. (*Id.* ¶¶ 146–149.) Moreover, the Complaint alleges that P.A.Z.E. "does not own any federal or state registrations covering its alleged PAZE and **PAŻE** marks," "does not own any federal or state registrations covering its alleged PAZE and **PAŻE** marks," "has not made any bona fide use of its alleged PAZE

1 and PAŻE marks," nor can it "succeed in establishing that use of EWS's PAZE
2 mark or Ż mark infringes any trademark rights in P.A.Z.E.'s alleged PAZE and PAŻE
3 marks" because "EWS owns prior rights in its PAZE and Ż marks" and "P.A.Z.E. does not
4 own any trademark rights in its alleged PAZE and PAŻE marks." (*Id.* ¶¶ 151–153.)

5      Mr. O'Loughlin argues that P.A.Z.E. owns prior rights in its PAZE and PAŻE
6 marks because his "first use of the 'paze' mark on January 23, 2023, predates [EWS's] first
7 use on March 26, 2023." (Doc. 45 at 34.) In response, EWS points out that it alleged that
8 P.A.Z.E. may "claim[] January 23, 2023, as [its] date of first use" but the application for
9 the PAŻE mark lists various nonexistent services and does not constitute "bona fide use"
10 as contemplated by the Lanham Act or Arizona law. (*See* Doc. 1 ¶¶ 66, 152.) As a result,
11 P.A.Z.E. would lack trademark rights in those marks. (*See id.* ¶ 152.) Taken as true,
12 EWS's allegations support its claim that Mr. O'Loughlin lacks priority of use, and therefore
13 EWS has stated a claim under the Declaratory Judgment Act.

14      **E. Mr. O'Loughlin's Allegations of Fraud**

15      Mr. O'Loughlin asserts that the entire action ought to be dismissed because EWS
16 fabricated evidence of Mr. O'Loughlin and Mr. Johnson's relationship by alleging the two
17 knew each other in high school based on information found on an unreliable website, <old-
18 friends.co>. (Doc. 45 at 36–38.) Mr. Johnson has also affirmatively alleged that he does
19 not know Mr. O'Loughlin. (*See* Doc. 37 at 37 ¶ 110 (Mr. Johnson's
20 Answer/Counterclaims) (sealed); Doc. 77-1 at 31 ¶ 73 (Mr. Johnson's Proposed Amended
21 Answer/Counterclaims (sealed).) In response, EWS rests on its allegations that Mr.
22 Johnson and Mr. O'Loughlin knew each other from high school and that metadata from
23 TTAB documents further support their relationship. (Doc. 47 at 21–22.) EWS also
24 concedes that if it is discovered the two did not attend high school together, it will seek
25 leave to amend its Complaint at that time. (*Id.* at 22.)

26      Whether Mr. O'Loughlin can demonstrate that the Defendants did not attend high
27 school together is not the smoking gun he thinks it is. What it paramount to EWS's claims
28 is that the Defendants collaborated in, among other things, misappropriating EWS's trade

secrets. The alleged high school relationship serves to supplement the narrative, but the existence of that fact is not dispositive to assert that Defendants operated in concert. Reading the metadata allegations in the light most favorable to EWS, the allegations have demonstrated that Mr. O'Loughlin and Mr. Johnson knew and colluded with each other to affect the claims now asserted against them.

Moreover, since the filing of Mr. O'Loughlin's Motion, EWS has provided emails that Mr. Johnson sent to Mr. O'Loughlin using his EWS email address in 2015. (*See* Doc. 104 at 7.) The emails show, among other things, that Mr. Johnson wrote several draft letters of recommendation for Mr. O'Loughlin's brother, Brent, and that Mr. O'Loughlin sent Mr. Johnson several emails regarding the use of Excel spreadsheets unrelated to this litigation. (*See id.*) Though the Court would not need to consider this post-filing evidence to find that EWS has plausibly stated a claim, the presentation of this evidence destroys both Mr. O'Loughlin and Mr. Johnson's arguments and averments that they do not know one another. Indeed, even if the Defendants did not attend high school together, the allegations regarding the TTAB and the evidence of their relationship are sufficient allegations of collusion to sustain the claim.

Therefore, the Court finds that no fraud has occurred and thus will not dismiss the case on that basis.

## IV. CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED denying** Mr. O'Loughlin's Motion to Dismiss (Doc. 45).

Dated this 12th day of May, 2025.

Honorable Susan M. Brnovich
United States District Judge