WARREN V. JOHNSON
2406 Alabama St, Unit 7 C
Lawrence, KS 66046
*Warren V Johnson, pro se*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Early Warning Services, LLC<br>Plaintiffs/Counterclaim Defendant, and<br><br>v.<br><br>Mr. Warren V. Johnson<br>Co Defendant/Counter Claimant;<br><br>Brandon O'loughlin; P.A.Z.E., Llc<br>Co Defendants. | Case No.: CV-24-01587-PHX-SMB<br><br>**DEFENDANT'S MOTION FOR JUDICIAL RECUSAL** |

## DEFENDANT'S MOTION FOR JUDICIAL RECUSAL

TO THE HONORABLE COURT:

Defendant Warren V. Johnson, proceeding pro se, respectfully moves this Court for the recusal of the Honorable Susan M. Brnovich pursuant to 28 U.S.C. § 455(a) and (b). The circumstances of this case have created an appearance of partiality that requires recusal to preserve public confidence in the judicial process.

## I. LEGAL STANDARD

Under 28 U.S.C. § 455(a), a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." This standard is objective—recusal is required when a reasonable person, knowing all the circumstances, would question the judge's impartiality. *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 860 (1988).

The test is not whether the judge is actually biased, but whether the circumstances create an appearance of partiality that undermines confidence in the judicial process. *United States v. Studley*, 783 F.2d 934, 939 (9th Cir. 1986).

## II. PATTERN OF SYSTEMATIC JUDICIAL MISCONDUCT

This Court's conduct has crossed the line from judicial error to systematic advocacy for Plaintiff EWS. The following documented pattern demonstrates that fair adjudication is no longer possible.

### A. Professional Retaliation and Intimidation Campaign

#### 1. The Live Threat During Oral Argument

During oral argument November 19, 2024, this Court made an unprecedented threat:

"Mr. Johnson, regardless of whether I find the chat as a trade secret or not, I've reviewed the chat. I think it qualifies as attorney-client privilege... [Y]ou, as an attorney, are not the holder of that privilege, and should you reveal it again, I will contact the Bar. Do you understand?" (Dkt. 75, pg. 21)

#### 2. Following Through on Retaliation

On April 22, 2025, the Court issued a sealed order (Dkt. 123) reporting Johnson to the Arizona State Bar—despite never conducting the required eight-part analysis under *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) to establish privilege.

#### 3. Additional Intimidation Language

The Court warned Johnson that "litigation is not a game" and placed him "on notice" of Rule 11 enforcement (Dkt. 123, pg. 10), demonstrating a pattern of using judicial authority to intimidate rather than adjudicate.

### B. Strategic Timing to Prejudice Defense

#### 1. The May 12 Preemptive Strike

After sitting on O'Loughlin's Motion to Dismiss for eight months, the Court suddenly issued its ruling on May 12, 2025 (Dkt. 141)—just 18 days before Johnson's sanctions hearing regarding Cheney's perjury. This timing was not coincidental.

### 2. Pre-Neutralizing Fraud Claims

The May 12 Order preemptively characterized Cheney's demonstrably false "high school" allegations as "not dispositive"—the very allegations Johnson's sanctions motion challenged as fraud on the court.

### 3. Creating Procedural Shields for EWS

By ruling that Johnson's challenges to Cheney's credibility were already addressed and "not the smoking gun" Johnson thought, the Court created procedural obstacles to legitimate fraud arguments.

## C. Manufacturing Evidence and Facts Not Pleaded

### 1. The "105 Domains Trade Secret" Fabrication

The Court stated: "The claim against Mr. O'Loughlin centers on his receipt of EWS's trade secrets from Mr. Johnson, which included a list of approximately 105 domain names." (Dkt. 141, pg. 2)

Reality Check: EWS's complaint alleged only 2 specific domains as trade secrets (Dkt. 1, ¶60) and described the 105 domains as domains O'Loughlin registered for P.A.Z.E. (¶62). EWS later stated they only planned to register 5 domains, not 105 (Dkt. 102, pg. 3).

### 2. The Phantom "Cease-and-Desist Campaign"

The Court falsely stated: "EWS alleges that Mr. O'Loughlin, through P.A.Z.E., sent 'cease-and-desist letter[s] to EWS's customers." (Dkt. 141, pg. 14)

Reality Check: EWS's complaint contains no such allegation. EWS alleged only a conditional "threat" of future action if customers used confusingly similar marks (Dkt. 1, ¶136).

### 3. Transforming "Indices OF" to "Indices CONTAIN"

The Court changed EWS's allegation of "indices OF concept briefs" to "indices CONTAIN concept briefs" (Dkt. 70, pg. 4), fundamentally altering the nature of alleged trade secrets from organizational tools to repositories of confidential information.

### D. Coordinated Citation Manipulation with EWS

#### 1. The "Didn't Know" Quote Coordination

Both EWS (in Dkt. 102) and the Court (in Dkt. 141) cited the identical quote from Johnson's pleadings about "someone he didn't know." However:

- EWS properly cited: Johnson's operative First Amended Counterclaims (Dkt 102).
- Court deliberately cited: Non-operative pleadings to hide Johnson's acknowledgment of knowing O'Loughlin that appears on the same page of the operative pleading. (Dkt 141, pg 10)

#### 2. The Systematic Feedback Loop

The Court-EWS coordination operates as a systematic feedback loop:

    a) The "Indices" Transformation: The Court changed EWS's original allegation from "indices OF concept briefs" to "indices CONTAIN concept briefs" (Dkt. 70, pg. 4). EWS then adopted the Court's transformed language in their 9th Circuit brief opposing Johnson's appeal (Case 24-7315, Dkt. 25.1, pg. 32, 35).

    b) The May 12 Order Adoption: EWS's May 14, 2025 opposition (Dkt. 145) directly quotes and relies on the Court's manufactured findings from Dkt. 141 to defend against Johnson's fraud allegations.

#### 3. The Court's Heavy Reliance on EWS's Reply Arguments

The sealed order (Dkt. 123) demonstrates the Court's systematic coordination with EWS by heavily relying on arguments first raised in EWS's reply brief rather than conducting independent legal analysis:

        a) New Authority Test: EWS's reply introduced the eight-part "Upjohn" test for the first time (Dkt. 115, pp. 3-4), which the Court then explicitly adopted without allowing Johnson to respond (Dkt. 123, pg. 3).

        b) New Characterization: EWS's reply first characterized Johnson as having "no authority to waive privilege" as a "mere employee" (Dkt. 115, pp. 8-9), which the Court adopted verbatim (Dkt. 123, pg. 6).

        c) Denial of Sur-Reply: When Johnson sought to respond to these new arguments (Dkt. 119), the Court denied the sur-reply while simultaneously adopting all of EWS's new contentions.

**4. Manufacturing Legal Analysis Through Factual Distortion**

The sealed order (Dkt. 123) contains multiple instances where the Court manufactures legal conclusions by mischaracterizing Johnson's own statements:

        a) <u>False "Legal Advice" Finding</u>: The Court states "one passage highlights Mr. Johnson's own legal advice to his client (EWS) about the need to strategize limiting exposure of trade secrets through a specialized non-disclosure agreement" (Dkt. 123, pg. 5). However, Johnson's actual statement merely says he "enlisted Mr. George Chen to help me strategize on how we could limit exposure through a specialized NDA." Johnson never claimed to give legal advice—he described seeking help from outside counsel.

        b) <u>"Mere Employee" Mischaracterization Creates Legal Impossibility</u>: The Court concludes Johnson was "a mere employee of the company's legal department" (Dkt. 123, pg. 7), creating a fundamental legal contradiction:

- The USPTO only accepts documents from authorized agents or representatives
- Johnson executed every patent and trademark filing for EWS during his tenure
- EWS accepted the benefits of Johnson's USPTO work for 9 years

- If Johnson lacked authority, then every patent and trademark he filed would be invalid due to unauthorized representation
- EWS cannot simultaneously benefit from Johnson's authority while claiming he had none

This contradiction reveals the Court's willingness to adopt legally impossible positions to favor EWS. Either Johnson had authority (negating the privilege analysis) or EWS committed systematic fraud against the USPTO by accepting benefits from unauthorized filings. The Court chose the legally incoherent middle ground that serves EWS's litigation strategy while ignoring legal reality.

c) Professional Intimidation Following False Findings: After manufacturing these factually incorrect conclusions, the Court launches into a personal attack: "Mr. Johnson shall understand that litigation is not a game. It is a mechanism by which parties resolve bona fide disputes. Gamesmanship and other forms of underhanded strategy subvert the litigation process in a manner that the Court will not tolerate" (Dkt. 123, pg. 10).

This sequence—manufacture false legal findings, then threaten professional consequences based on those false findings—demonstrates the Court's systematic bias and vindictiveness.

**E. Systematic Procedural Double Standards**

**1. Reply Brief Treatment**

- Against Defendants: "The Court will not consider this argument... courts will not consider new arguments raised for the first time in a reply brief" (Dkt. 141, FN 1)
- For EWS: Relied extensively on EWS's new reply arguments and sur-reply declaration to grant preliminary injunction (Dkt. 70)

**2. Evidence Standards**

- Against Defendants: Refused to consider Johnson's performance reviews as "compelling reasons" were found for sealing (Dkt. 54)
- For EWS: Accepted conclusory privilege assertions without analysis and "summarily granted" sealing motions (Dkt. 54)

### 3. Legal Standards Application

- Against Defendants: Recites incorrect eight-part "Upjohn" test instead of five-part employee test, and does not even apply the 8 factors. (Dkt 123)
- For EWS: Eliminated statutory requirements like "distinctiveness" under ACPA, ruling it "of no moment" (Dkt. 141, pg. 10).

## F. Willful Disregard of Judicial Admissions and Controlling Law

### 1. Ignoring O'Loughlin's Judicial Admission

The Court completely ignored O'Loughlin's judicial admission that he "has no cause of action against [EWS] for their [] mark" (Dkt. 45, pg. 36-37), despite judicial admissions dispensing "wholly with the need for proof." *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988).

### 2. Violating Rule 12(b)(6) Standards

The Court explicitly acknowledged using post-filing evidence outside the pleadings: "Moreover, since the filing of Mr. O'Loughlin's Motion, EWS has provided emails... I would not need to consider this post-filing evidence" but then used it anyway to "destroy both Mr. O'Loughlin and Mr. Johnson's arguments." (Dkt. 141, pg. 17)

### 3. Rewriting Federal Statutes

The Court declared that "distinctiveness" is "of no moment" under the ACPA (Dkt. 141, pg. 10), directly contradicting 15 U.S.C. § 1125(d)(1)(A)(ii)(I) and the Court's own prior rulings requiring distinctiveness as foundational.

## G. Privilege Determinations Without Legal Analysis

### 1. Conclusory Rulings

Despite multiple requests for clarification (Dkt. 53) and demands for findings of fact and law (Dkt. 108), the Court has consistently issued conclusory privilege determinations without applying required legal tests.

### 2. Impossible Contradictions

The Court has ruled the same Microsoft Teams Chat is simultaneously:

- "Undoubtedly privileged" attorney-client communication (Dkt. 70)
- A "trade secret" forming the basis of EWS's claims (Dkt. 141)

### 3. Denying Procedural Safeguards

The Court denied Johnson's Motion for Clarification as "inappropriate" (Dkt. 54) and ignored his Demand for Findings of Fact and Law, then used Johnson's attempts to seek clarification as evidence of "bad faith."

## III. THE DOCUMENTED PATTERN DEMONSTRATES SYSTEMATIC ADVOCACY

### A. The Court Has Become EWS's De Facto Co-Counsel

This is not judicial error—it is systematic advocacy. The Court has:

1. Invented facts that strengthen EWS's claims
2. Coordinated citations to hide favorable evidence
3. Timed rulings strategically to benefit EWS
4. Applied double standards consistently favoring EWS
5. Retaliated professionally against Johnson for legitimate advocacy
6. Ignored controlling law when it favors Defendants

### B. The "Feedback Loop" Between Court and EWS - A Coordinated System

This case reveals an unprecedented coordination system where the Court manufactures favorable interpretations for EWS, which EWS then adopts and cites back as authoritative support:

**The "Indices" Cycle:**

1. EWS Original Pleading: "indices OF concept briefs and invention disclosures" (Dkt. 1, ¶90)
2. Court's Transformation: "indices CONTAIN invention disclosures and concept briefs" (Dkt. 70, pg. 4)
3. EWS's Adoption: Uses Court's transformed language in 9th Circuit brief (Case 24-7315, Dkt. 25.1, pg. 32, 35)
4. Result: EWS now benefits from Court's strengthened interpretation in appellate proceedings

**The May 12 Order Cycle:**

1. Court's Preemptive Strike: Issues order characterizing Cheney's false statements as "not dispositive"
2. EWS's Immediate Adoption: Cites Court's May 12 findings to defend against fraud allegations (Dkt. 145)
3. Result: EWS shields itself from sanctions using Court's protective characterizations

This isn't coincidence—it's systematic coordination where the Court functions as EWS's strategic partner rather than neutral arbiter.

### C. This Goes Beyond the Appearance of Impropriety

The documented pattern shows the Court has abandoned its neutral role. When a judge:

- Manufactures evidence not pleaded by a party
- Coordinates timing to prejudice the opposition
- Manipulates citations to hide favorable evidence
- Retaliates professionally against legitimate advocacy
- Applies law selectively based on party identity

...the appearance of partiality has become actual systematic advocacy.

## IV. LEGAL GROUNDS FOR MANDATORY RECUSAL

### A. 28 U.S.C. § 455(a) - Appearance Standard Clearly Met

No reasonable observer could view this documented pattern and conclude the Court remains impartial. The Court has:

- Threatened and followed through on professional retaliation
- Manufactured dispositive facts never pleaded by EWS
- Coordinated with EWS's litigation strategy through citation manipulation
- Applied systematic double standards favoring EWS
- Ignored judicial admissions and controlling law to benefit EWS

### B. 28 U.S.C. § 455(b)(1) - Personal Interest in Outcome

The Court now has a direct personal interest because:

- The Court's own conduct is the subject of ongoing challenges
- Any finding of judicial error reflects directly on the Court's handling
- The Court cannot neutrally adjudicate challenges to its own rulings
- The Court's credibility is now intertwined with EWS's success

### C. Due Process Violations Require Intervention

The systematic pattern violates Johnson's fundamental right to a neutral tribunal. *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009) requires recusal when circumstances create a "probability of actual bias."

Here, the circumstances don't just create probability—they document actual systematic advocacy masquerading as adjudication.

## V. THE COURT'S SYSTEMATIC VIOLATIONS OF JUDICIAL ETHICS

**Canon 1: Upholding Judicial Integrity**

- Manufacturing evidence violates fundamental duty to base decisions on facts
- Professional retaliation undermines public confidence in judicial system
- Coordination with one party destroys institutional credibility

**Canon 2: Avoiding Impropriety and Appearance of Impropriety**

- The documented pattern creates clear appearance of advocacy for EWS
- Citation manipulation demonstrates coordination beyond appropriate judicial role

- Strategic timing of rulings shows predetermined outcomes

**Canon 3: Performing Duties Impartially**

- Systematic double standards violate duty of equal treatment
- Ignoring judicial admissions and controlling law shows selective application
- Manufacturing facts demonstrates abandonment of neutral adjudication

## VI. THIS COURT CANNOT ADJUDICATE CHALLENGES TO ITS OWN CONDUCT

The ultimate proof that recusal is required: Johnson's pending motions challenge the very conduct documented above. This Court cannot:

- Fairly adjudicate whether its own privilege determinations were legally sufficient
- Neutrally assess whether its own timing was strategic or coincidental
- Impartially evaluate whether its own fact-finding was appropriate
- Objectively determine whether its own procedural rulings were consistent

**The Court has become a party to the controversy it must adjudicate.**

## VII. PRESERVING INSTITUTIONAL INTEGRITY REQUIRES IMMEDIATE RECUSAL

The appearance of judicial partiality in this case undermines public confidence in the fairness of federal courts. As the Supreme Court recognized in *Liljeberg*, the goal is not just to ensure actual fairness, but to preserve the appearance of fairness that maintains public trust in the judicial system.

A reasonable observer, aware of the documented pattern of:

- Professional retaliation against a pro se litigant
- Manufacturing facts to benefit one party
- Strategic timing of rulings to prejudice the opposition
- Coordinated citation manipulation

would reasonably question whether this Court can provide the neutral, impartial adjudication required by due process.

## VII. CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Honorable Court recuse itself from further proceedings in this matter pursuant to 28 U.S.C. § 455(a) and (b), and that this case be reassigned to another judge for fair and impartial adjudication.

The facts speak for themselves. Recusal is not an admission of wrongdoing—it is a recognition that the appearance of partiality has reached a point where only reassignment can restore confidence in the proceedings.

Respectfully submitted,

/Warren V Johnson/

Warren V Johnson

**Certificate of Service**

I, Warren V. Johnson, hereby certify that on May 26, 2025, I electronically filed the foregoing DEFENDANT'S MOTION FOR JUDICIAL RECUSAL and has provided service to Plaintiff Early Warning Services, LLC and counsel with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Respectfully submitted,

  /Warren V Johnson/

Warren Johnson
2406 Alabama St, Unit 7 C
Lawrence, KS 66046
warrenvjohnson@gmail.com