IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Early Warning Services LLC, | No. CV-24-01587-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| Warren Vurl Johnson, et al., | |
| Defendants. | |

Pending before the Court is Defendant Warren Vurl Johnson's Motion for Judicial Recusal (Doc. 150). Mr. Johnson filed this Motion on May 26, 2025. On May 30, the Court held oral argument on Plaintiff Early Warning Services LLC's ("EWS") Motion for Sanctions (Doc. 131) and Mr. Johnson's Motion to Strike and Motion for Sanctions (Doc. 135). At that hearing, the Court denied Mr. Johnson's Motion for Judicial Recusal and stated that a written Order would follow. This is that Order.[1]

I.   **LEGAL STANDARD**[2]

The standard for recusal under 28 U.S.C. § 455 is "whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *Mayes v. Leipziger*, 729 F.2d 605, 607 (9th Cir. 1984) (quoting *United States v. Nelson*, 718 F.2d 315, 321 (9th Cir. 1983)); *Ronwin v. State Bar of Ariz.*, 686 F.2d 692, 700–01 (9th Cir.1981), *rev'd on other grounds sub nom. Hoover v. Ronwin*, 466 U.S.

---

[1] The delay in the issuance of this Order was a result of the Court being out of office.
[2] Generally, a motion to disqualify or recuse a federal judge fall under two statutory provisions, 28 U.S.C. §§ 144 and 455. Mr. Johnson moves only under § 455. (*See* Doc. 150.)

558 (1984). The purpose of § 455(a) "is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible." *Liljeberg v. Health Servs. Acq. Corp.*, 486 U.S. 847, 865 (1988). The inquiry under § 455(a) is whether "'a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned.'" *Blixseth v. Yellowstone Mountain Club, LLC*, 742 F.3d 1215, 1219 (9th Cir. 2014) (quoting *Pesnell v. Arsenault*, 543 F.3d 1038, 1043 (9th Cir. 2008)). "Actual bias isn't required; the appearance of impropriety can be a sufficient basis for judicial recusal." *Id.* (citing *Liljeberg*, 486 U.S. at 864-65). Importantly, "[t]he alleged prejudice must result from an extrajudicial source; a judge's prior adverse ruling is not sufficient cause for recusal." *United States v. Studley*, 783 F.2d 934, 939 (9th Cir. 1986).

Whether to grant or deny a motion for recusal is a matter within the Court's discretion. *United States v. Sibla*, 624 F.2d 864, 868 (9th Cir. 1980). A motion to recuse is a serious matter, "strik[ing] at the integrity of the judicial process." *In re Int'l Bus. Mach. Corp.*, 618 F.2d 923, 927 (2d Cir. 1980). It is vital to the integrity of the judicial system that a judge does not recuse themself on unsupported, irrational or highly tenuous speculation, *Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir. 1987), and a judge "is as much obliged" to not recuse from a case when "it is not called for," as he is obliged to recuse when recusal is required. *In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1312 (2d Cir. 1988); *McCann v. Communs. Design Corp.*, 775 F. Supp. 1506, 1522–23 (D. Conn. 1991) ("A judge must be free to make rulings on the merits without the apprehension that if he makes a decision, even a disproportionate number of decisions, in favor of one litigant, he may have created the impression of bias.").

## II.     DISCUSSION

Mr. Johnson asserts several grounds he believes to support the Court's recusal in this case. Throughout his Motion, Mr. Johnson argues that this Court's prior adverse decisions ought to serve as the basis for the Court's recusal. As noted, "a judge's prior adverse ruling is not sufficient cause for recusal." *Studley*, 783 F.2d at 939. Nevertheless, the Court will address Mr. Johnson's arguments, where appropriate, and discuss why they

fail to warrant recusal.[3]

### A. Intimidation and Retaliation

Mr. Johnson argues that the Court intimidated and retaliated against him for his conduct in this case. Specifically, the Court (1) threatened him during the November 19, 2024 oral argument; (2) retaliated against him by referring him to the State Bar of Arizona for attorney misconduct without conducting an analysis under *United States v. Ruehle*, 583 F.3d 600 (9th Cir. 2009); and (3) threatened him an additional time in an Order sealing his Motion for Disqualification. (Doc. 150 at 2.)

As an initial matter, each of Mr. Johnson's assertions amount to his subjective perception of the Court's prior adverse decisions in this case, which are improper grounds for recusal. *See Studley*, 783 F.2d at 939.

First, the Court's statement during the November 19, 2024 oral argument was to warn Mr. Johnson that, as an attorney, he has ethical responsibility to refrain from revealing confidential information for which he lacks the ability to disclose. (Doc. 75 at 21.) At that hearing, the Court told Mr. Johnson that it believed the Microsoft Teams Chat (the "Privileged Chat") contained information protected by EWS's attorney-client privilege. (*Id.*) The Court then asked Mr. Johnson whether he understood that he was not the holder of that privilege, and should he reveal it again, the Court would contact the State Bar. (*Id.*) Mr. Johnson replied, "I fully understand." (*Id.*) The Court did not make an "unprecedented threat," (*see* Doc. 150 at 2), but rather gave informed him that the Court would not tolerate underhanded strategies, including wrongful disclosure of privileged information.

Second, in *Ruehle*, the Ninth Circuit reiterated an eight-part test that determines whether information is covered by the attorney-client privilege. 583 F.3d at 607. Here, however, explicitly applying the test in *Ruehle* was not necessary because the Court engaged the parties in a discussion at oral argument regarding the privileged nature of the chat. The Privileged Chat clearly reflected discussions between EWS's general counsel, Tracy Cheney, and Mr. Johnson in his capacity as part of EWS's legal team, regarding

---

[3] EWS filed a Response (Doc. 156). The Court noted at oral argument that it had considered Mr. Johnson's Motion prior to EWS filing its Response. (*See* 167 at 2.)

legal advice pertaining to pending negotiations between EWS and another company. Mr. Johnson stated that he "could see how [the Privileged Chat] could be interpreted as having attorney-client privilege" and agreed with the Court that his disclosure of the chat was problematic. (Doc. 150 at 16–17.) At bottom, the contents of the Privileged Chat and the discussions at the November 24 oral argument made clear that the information was privileged. Additionally, the Court's State Bar referral was the result of Mr. Johnson filing his Motion to Disqualify EWS's legal counsel because Mr. Johnson recognized that he received legal advice on behalf of EWS and disclosed it on the record anyway.

Third, the Court's Order sealing Mr. Johnson's Motion to Disqualify (the "Sealing Order") is one of many instances that demonstrates where Mr. Johnson has filed protected information on the public docket. Consequently, the Court again reminded Mr. Johnson that:

> [T]he Court must take this opportunity to warn Mr. Johnson of the zero-tolerance policy that the Court will hereafter apply to his conduct in this case. Until now, the Court has given grace to Mr. Johnson each time he places confidential information on the public docket by granting the opposition's Motions to Seal. Mr. Johnson shall understand that litigation is not a game. It is a mechanism by which parties resolve bona fide disputes. Gamesmanship and other forms of underhanded strategy subvert the litigation process in a manner that the Court will not tolerate. And the Court will strictly enforce Rule 11's proscription of misrepresentation and bad faith. Mr. Johnson is on notice.

(Doc. 123 at 10 (sealed).) Mr. Johnson construed this passage as demonstrating "a pattern of using judicial authority to intimidate rather than adjudicate." (Doc. 150 at 2.) In the Sealing Order, the Court outlined and analyzed several passages in Mr. Johnson's Motion to Disqualify that warranted placing the contents under seal. (*See generally* Doc. 123.) The Court also noted other instances in which Mr. Johnson failed to comply with the Court's warning against disclosing confidential information. (*Id.* at 9 (citing Doc. 75 at 21; Doc. 100 at 1–2).) To be sure, several Orders on this Docket outline Mr. Johnson's failure to comply with prior Orders by publishing confidential information on the public docket, (*see, e.g.*, Doc. 75 at 21; Doc. 77-1; Doc. 84; Doc. 88; Doc. 92; Doc. 107), resulting in the Court issuing Orders to seal those filings, (Doc. 81; Doc. 89; Doc. 93; Doc. 100; Doc. 123). Put simply, the Court's statement was not a threat, as it is common parlance in tribunals

1  across the United States to warn litigants of the consequences of misconduct.

2  Federal courts have the obligation, and inherent power, to manage their own proceedings and to control the conduct of those who appear before them. *Cf. Erickson v. Newmar Corp.*, 87 F.3d 298, 303 (9th Cir. 1996). This obligation has compelled the Court to repeatedly seal wrongfully disclosed confidential information, warn litigants that wrongful disclosure will not be tolerated, and consider whether dogged violations of prior Orders warrant sanctions. Therefore, the Court's efforts to resolve pending motions, shepherd this case into the discovery stage, and preserve the confidentiality of certain information should not be construed as either intimidation or retaliation. At bottom, the Court seeks to maintain control over the proceedings in this case by avoiding unnecessary filings, wrongful disclosure, and underhanded litigation tactics.

**B. Strategic Timing to Prejudice Defense**

Mr. Johnson argues that the Court has prejudice him by (1) "suddenly" issuing a ruling on Defendant Brandon O'Loughlin's Motion to Dismiss; (2) finding the allegations regarding Mr. Johnson and Mr. O'Loughlin's high school relationship "not dispositive"; and (3) creating procedural obstacles for Mr. Johnson's legitimate fraud arguments by making certain findings regarding Ms. Cheney's credibility. (Doc. 150 at 3.)

Mr. Johnson's arguments relate to rulings made in this case and do not refer to any extrajudicial source. In other words, these arguments cannot form the basis for recusal. *Hinman*, 831 F.2d at 939. But again, the Court will afford Mr. Johnson's complaints some discussion. Additionally, Mr. Johnson does not provide citations for points (2) and (3) of his argument, but the Court best understands them to pertain to Order denying Mr. O'Loughlin's Motion to Dismiss (Doc. 141).

First, the Order denying Mr. O'Loughlin's Motion to Dismiss has no bearing on Mr. Johnson's Motion to Strike the Declaration of Ms. Cheney. There, the Court rejected Mr. O'Loughlin's baseless request to dismiss the entire action. (Doc. 141 at 16–17.) Mr. Johnson remains free to present arguments to the Court in accordance with the papers he has submitted to substantiate what he believes to be "[Ms.] Cheney's perjury." (Doc. 150

at 3.)

Second, Mr. Johnson misapprehends the Court's statement that the alleged high school relationship between Mr. O'Loughlin and Mr. Johnson being false does not alone equate to fraud. Mr. O'Loughlin moved the Court to dismiss the entire action because he disagreed with the factual veracity of one of EWS's allegations. Mr. Johnson is still otherwise free to present his arguments regarding what he believes to be EWS's or Ms. Cheney's fraudulent acts. Or in other words, the Court has not "pre-neutraliz[ed]" Mr. Johnson's fraud claims. (Doc. 150 at 3.)

Third, Mr. Johnson seemingly complains that the Court rejected Mr. O'Loughlin's arguments regarding Ms. Cheney's credibility. (*See* Doc. 150 at 3.) Although, it is not clear what Mr. Johnson means when he argues that the Court's ruling on Mr. O'Loughlin's Motion to Dismiss (Doc. 141) amounted to rejecting "[Mr.] Johnson's challenges to [Ms.] Cheney's credibility." (Doc. 150 at 3.) At any rate, this Court's ruling on Mr. O'Loughlin's Motion to Dismiss cannot form the basis for recusal.

### C. Manufacturing Evidence and Facts Not Pleaded

Mr. Johnson next contends that the Court manufactured evidence in favor of EWS when deciding Mr. O'Loughlin's Motion to Dismiss. (Doc. 150 at 3–4.) Specifically, Mr. Johnson argues that the Court wrongly expanded the scope of EWS Complaint by inflating the number of relevant domain names as trade secrets and misrepresenting Mr. O'Loughlin's cease-and-desist letter campaign. (*Id.*) Additionally, Mr. Johnson argues that the Court "fundamentally alter[ed] the nature of alleged trade secret" when it included the phrase "indices CONTAIN concept briefs" in its Preliminary Injunction Order while EWS's Complaint alleged "indices OF concept briefs." (*Id.* (capitalization in original).)

Regarding the domain names, Mr. Johnson asserts that EWS's Complaint only specified two domain names as being trade secrets. (*See* Doc. 150 at 3.) According to Mr. Johnson, when the Court noted that EWS's trade secrets misappropriation claim is, in part, predicated on Mr. O'Loughlin's receipt of 105 domain names, the Court manufactured evidence to seemingly bolster EWS's claim. (*Id.* (citing Doc. 141 at 4).) This argument

is simply incredible. Mr. Johnson has latched onto a single line in the background section of an Order—which set forth facts from EWS's operative pleading—to affirmatively claim that the Court has manufactured evidence or included facts not pleaded to benefit EWS. EWS's Complaint alleges that as part of a scheme, Mr. Johnson secretly provided Mr. O'Loughlin with trade secret information relating to, among other information, particular domain names, (Doc. 1 ¶ 11), and in turn, EWS believed O'Loughlin registered at least 105 domain names relating to EWS's business after Mr. Johnson's termination from EWS, (*id.* ¶ 58). This Court refuses to entertain this baseless speculation as a ground to recuse. *Hinman*, 831 F.2d at 939.

Mr. Johnson is correct that EWS's operative complaint alleges that Mr. O'Loughlin, through P.A.Z.E., threatened to send cease-and-desist letters. (*See* Doc. 1 ¶ 136.) The proceeding allegations, however, do not show that Mr. O'Loughlin actually sent those letters. (*See id.* ¶¶ 137–140.) The Court, therefore, acknowledges that it erred in stating that "EWS alleges that Mr. O'Loughlin . . . sent 'cease-and-desist letter[s] to EWS's customers.'" (Doc. 141 at 13–14.) This error, however, does not amount to the Court manufacturing evidence in favor of EWS.[4]

Mr. Johnson's argument regarding the language used to describe the Excel Workbooks (the "Indices") central to the trade secrets claim in this case is near incomprehensible. Mr. Johnson cites to page four of the Order filed at ECF No. 70, but the Court could not locate the phrase he argues fundamentally altered this case. Even so, the semantic game Mr. Johnson is attempting to play is seemingly another attempt to argue against the injunction this Court entered against him. And, ultimately, the Court's entry of the injunction against Mr. Johnson is not a ground for recusal. *Studley*, 783 F.2d at 939.

### D. Coordinated Citation Manipulation with EWS

Mr. Johnson contends that the Court and EWS are engaged in a conspiracy to

---

[4] The absence of an actual campaign of sending cease-and-desist letters coupled with the alleged threats to engage in such behavior would not alter any finding by this Court. Indeed, the Court's Order at ECF No. 141 makes that abundantly clear, explaining that the alleged facts "show a concrete threat[] that give rise to a 'real and reasonable apprehension' that EWS may be sued if it continues to offer its service." (*Id.* (citing *Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1157 (9th Cir. 2007)).)

coordinate and manipulate citations to documents on the record to hide or obscure facts. (Doc. 150 at 4.) First, he argues that the Court "deliberately cited" Mr. Johnson's non-operative pleadings to hide his "acknowledgement of knowing [Mr.] O'Loughlin that appears on the same page of the operative pleading." (*Id.*) Second, Mr. Johnson argues that the Court and EWS coordination "operates as a systematic feedback loop" because EWS used the Court's language regarding the Indices before the Ninth Circuit. (*Id.*) Third, Mr. Johnson argues that the Court relied too heavily on EWS's Reply arguments, showing a pattern of manipulation. (*Id.*) Fourth, Mr. Johnson expends about a page disagreeing with the Court's Order at ECF No. 123 (sealed).

In keeping with the theme of his Motion, Mr. Johnson's first and third arguments attack this Court's prior decisions. And though these cannot form the basis for recusal, the Court will nonetheless take the time to walk the parties through these issues. *Studley*, 783 F.2d at 939.

Regarding Mr. Johnson's knowledge of Mr. O'Loughlin, the Court cited both Mr. Johnson's first Answer/Counterclaims and the proposed amendments to that pleading. (*See* Doc. 141 at 16.) Mr. Johnson's operative pleading alleges that this lawsuit "falsely accused [him] of conspiring to steal trade secrets with someone he didn't know." (Doc. 37 at 37 ¶ 110 (sealed).)[5] That "someone" evidently referring to Mr. O'Loughlin. The page prior to this allegation states that he "was familiar with [Mr.] O'Loughlin and his activities with PAZE." (Doc. 57 at 38 ¶ 122 (sealed).) Mr. Johnson is, again, attempting to play a game of semantics. He alleges that he was familiar with Mr. O'Loughlin, ostensibly meaning that he knew of his existence, but then affirmatively states that he had no actual, personal relationship with Mr. O'Loughlin. (*See id.* at 38–39 ¶¶ 122, 131.)

Mr. Johnson posits three situations in which the Court has relied too heavily on EWS's Reply briefs. (Doc. 150 at 4–5.) First, the Court considered new authority when EWS cited the seminal case, *Upjohn Co. v. United States*, 449 U.S. 383 (1981). (Doc. 150

---

[5] Here, Mr. Johnson's citations either contain no page numbers or provide an incorrect page number. The Court has read the relevant prior Orders for the purposes of this Motion in an attempt to discern exactly what Mr. Johnson is referencing.

at 5.) It is unclear how applying a foundational case involving attorney-client privilege in an Order regarding that very topic amounts to overreliance on one party's brief or coordinated citation manipulation. Second, Mr. Johnson argues that the Court gave too much weight to EWS's characterization of Mr. Johnson as a mere employee in it Reply brief. (Doc. 150 at 5.) Mr. Johnson erroneously argued he was not a mere employee in his Response brief, the Court disagreed and found EWS's characterization supported both by the law and facts of the case. (*See* Doc. 123 at 7 (sealed) (citing *United States v. Chen*, 99 F.3d 1495, 1502 (9th Cir. 1996)).) Third, Mr. Johnson complains that the Court denied his Motion to file a Sur-Reply to respond to these "new" arguments. (Doc. 119.) As a practicing attorney, Mr. Johnson ought to know what occurs when he makes an argument in a Response brief—it opens the door for the moving party to respond to the argument in a Reply brief. In that instance, EWS's arguments were not new, and the Court did not require a sur-reply from Mr. Johnson to decide the merits of the Motion.

Mr. Johnson's argument pertaining to the "systematic feedback loop" is confusing. (*See* Doc. 150 at 4.) He seemingly asserts that the Court's choice of words when explaining the Indices caused EWS to use that language in the Ninth Circuit. (*See id.*) Then, he goes on to argue that EWS uses the Court's "manufactured" findings in the Order denying Mr. O'Loughlin's Motion to Dismiss (Doc. 141) to defend against Mr. Johnson's fraud allegations. (Doc. 150 at 4.) Mr. Johnson's final argument is a drawn-out disagreement with this Court's analysis in the Order sealing his Motion to Disqualify EWS's Counsel. (Doc. 150 at 5–6 (citing Doc. 123 (sealed)).) These arguments are both speculative and directed at the Court's prior adverse rulings, and thus cannot form the basis for recusal. *Hinman*, 831 F.2d at 939; *Studley*, 783 F.2d at 939.

### E. Systematic Procedural Double Standards; Willful Disregard of Judicial Admissions and Controlling Law; Privilege Determinations Without Legal Analysis

Mr. Johnson argues that the Court set procedural double standards when it abused the treatment of arguments in Reply briefs; summarily granted sealing without conducting

an analysis; and applies the wrong law. (Doc. 150 at 6–7.) Each of these are complaints targeted at the Court's prior Orders. Mr. Johnson also argues that the Court willfully disregarded Mr. O'Loughlin's judicial admission; violated Rule 12(b)(6)[6]; and rewrote federal law. (*Id.* at 7–8.) Additionally, Mr. Johnson asserts that the Court issued conclusory rulings regarding privilege; has contradicted itself in its own Orders; and has denied upended procedural safeguards by denying Mr. Johnson's previous Motion for Clarification (Doc. 53 (Motion); Doc. 54 (Order)) and ignoring his "Demand for Findings of Fact and Law" (Doc. 108).

As the Court has explained, Mr. Johnson's arguments are directed at the Court's prior adverse rulings and cannot form the bases for recusal. *See Studley*, 783 F.2d at 939. And while his Motion re: Request for Findings of Fact and Conclusions of Law (Doc. 108) is pending, the fact that it remains undecided does not fit Mr. Johnson's narrative of the Court determining his Motions without legal analysis.

### F. Mr. Johnson's Remaining Arguments

The latter parts of Mr. Johnson's Motion go on to posit that the Court has "becomes EWS's de facto co-counsel" by, among other things, inventing facts and coordinating citations. (Doc. 150 at 8.) Mr. Johnson also reiterates his arguments regarding the "feedback loop," the Indices, the Court's "preemptive strike" in deciding Mr. O'Loughlin's Motion to Dismiss, and the Court's retaliation against him for his misconduct in this case. (*See id.* at 8–9.) The Court has already rejected these arguments and will not expend further time explaining to Mr. Johnson why they are incorrect.

…

…

…

…

---

[6] This argument particularly highlights Mr. Johnson's consistent practice of gamesmanship in this case. Craftily omitted from the two quotes Mr. Johnson offers is the Court's express statement that it "would not need to consider . . . post-filing evidence to find that EWS has plausibly stated a claim," i.e., that the subject of the Order, Mr. O'Loughlin's Motion to Dismiss, should be denied. (*See* Doc. 141 at 17.) The Court did not factor in the post-filing evidence as grounds to deny the 12(b)(6) Motion.

III.  **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED denying** Defendant Warren Vurl Johnson's Motion for Judicial Recusal (Doc. 150).

Dated this 16th day of June, 2025.

_____
Honorable Susan M. Brnovich
United States District Judge