**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Early Warning Services LLC,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Warren Vurl Johnson, et al.,<br><br>　　　　Defendants. | No. CV-24-01587-PHX-SMB<br><br>**ORDER** |

Before the Court are Plaintiff Early Warning Services LLC's ("EWS") Motion for Sanctions (Doc. 133 (sealed)) and Defendant Warren Vurl Johnson's Motion to Strike and Motion for Sanctions (Doc. 135 (sealed)), Motion re: Request for Findings of Fact and Conclusions of Law (Doc. 108), and Motion for Reconsideration of this Court's Order denying his Motion to Disqualify EWS's counsel (Doc. 128). The Court held oral argument regarding only the Motions for Sanctions and Motion to Strike on May 30, 2025. After reviewing the briefing and the relevant case law, the Court will **grant** EWS's Motion and **deny** Mr. Johnson's Motions.

**I.      BACKGROUND**

At oral argument on EWS's Motion for Preliminary Injunction on December 4, 2024, it warned Mr. Johnson that if he continued to disclose a screen capture of a Microsoft Teams Chat containing information protected by EWS's attorney-client privilege (the "Privileged Chat"), it would contact the Arizona State Bar. (*See* Doc. 75 at 16, 21.) Faced with this proscription, Mr. Johnson proceeded to file other documents containing EWS's

privileged materials and confidential information on the public docket. (*See* Doc. 77-1; Doc. 84; Doc. 88; Doc. 92; Doc. 107.) The Court sealed those filings. (*See* Doc. 81; Doc. 89; Doc. 93; Doc. 100; Doc. 123.)

In one Motion to Seal (Doc. 94), EWS moved for the Court to sanction Mr. Johnson under its inherent authority. The Court denied that Motion, stating that it would give Mr. Johnson "the benefit of the doubt."[1] (Doc. 100 at 3.) There, however, the Court warned Mr. Johnson that it would "likely construe further 'technical errors' as intention[al] and willful violations" of the Court's Orders, and any further violations would result in the Court ordering Mr. Johnson to appear in-person for a sanctions hearing. (*See id.* at 4 (citing Doc. 81; Doc. 85; Doc. 90).)

On March 25, 2025, Mr. Johnson moved the Court to disqualify EWS's counsel, citing an ethical conflict arising out of Kilpatrick Townsend & Stockton LLP ("KTS") and Bryan Cave Leighton Paisner LLP's ("BCLP") representation of EWS while Mr. Johnson was employed as EWS's intellectual property counsel. (Doc. 107.) EWS filed a Motion to Seal the Motion to Disqualify, citing the disclosure of, among other things, EWS's attorney-client privilege. (Doc. 109.) On April 22, 2025, the Court denied the Motion to Disqualify. (Doc. 126.) That same day, the Court granted EWS's Motion to Seal, in which the Court stated the following:

> [T]he Court must take this opportunity to warn Mr. Johnson of the zero-tolerance policy that the Court will hereafter apply to his conduct in this case. Until now, the Court has given grace to Mr. Johnson each time he places confidential information on the public docket by granting the opposition's Motions to Seal. Mr. Johnson shall understand that litigation is not a game. It is a mechanism by which parties resolve bona fide disputes. Gamesmanship and other forms of underhanded strategy subvert the litigation process in a manner that the Court will not tolerate. And the Court will strictly enforce Rule 11's proscription of misrepresentation and bad faith. Mr. Johnson is on notice.

(Doc. 123 at 10.)

On April 17, 2025, EWS filed a Motion to Shorten Time Between Serving and

---

[1] The Court cited non-compliance with Rule 11's safe harbor provisions when denying EWS's previous Motion for Sanctions (Doc. 94). Upon review, the Court notes that EWS moved the Court to sanction Mr. Johnson under its inherent authority, not Rule 11. (*See* Doc. 94 at 11.) Denial of EWS's Motion on this basis was error, albeit harmless given that the Court otherwise declined to impose sanctions under its inherent authority.

Filing Its Motion for Sanctions Under Rule 11. (Doc. 122.) On April 28, 2025, Mr. Johnson filed an opposition to Plaintiff's Motion, in which he stated that the "Court has not yet ruled on the motion to seal that underlies those claims." (Doc. 127 at 1.) While the Court had ruled on the underlying Motion to Seal (Doc. 123), Mr. Johnson put the Court on notice that he did not have access to, or receive a copy of, the Order sealing EWS's Motion to Disqualify (Doc. 140). Mr. Johnson filed a Notice of Party's Change of Address (Doc. 142), and the Clerk of Court mailed Mr. Johnson a copy of the Order.

On May 2, 2025, EWS filed a Motion to Sanction Mr. Johnson under 28 U.S.C. § 1927 and this Court's inherent authority, but not Rule 11. (Doc. 133.) After granting Mr. Johnson a brief extension in light of the mailing issue, he filed his Response on May 20, 2025 (Doc. 146).

On May 6, 2025, Mr. Johnson filed a Motion to Strike the Declaration of EWS's General Counsel, Tracey Cheney (the "Cheney Declaration"). (Doc. 135.) Mr. Johnson asserts that striking the Cheney Declaration is proper because it is a "calculated, malicious instrument designed not to advance the merits of this case, but to weaponize falsehoods and retaliate against Mr. [Johnson]." (*Id.* at 1.) Sprinkled throughout the filing are requests that the Court sanction Ms. Cheney and EWS. (*See id.*)

## II.  DISCUSSION

### A. Mr. Johnson's Motion to Strike and Motion for Sanctions

In his Motions, Mr. Johnson asks the Court to: (1) strike the Cheney Declaration; (2) reconsider or modify the preliminary injunction; (3) order EWS to amend or withdraw the Complaint; and (4) grant any further relief the Court deems just. (Doc. 135 at 17.) Mr. Johnson seemingly moves under Federal Rules of Civil Procedure 12(f) and 56. (*See generally id.*)

#### 1. Legal Standard

Federal Rule of Civil Procedure 12(f) allows a court to "strike from a pleading" any matter that is "redundant, immaterial, impertinent, or scandalous." S*ee also* LRCiv 7.2(m)(1) (a motion to strike may only be filed if "authorized by statute or rule . . . or if it

- 3 -

seeks to strike any part of a filing or submission on the ground that it is prohibited (or not authorized) by a statute, rule, or court order"). "'Immaterial' matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (quoting 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1382, at 706–07 (2d ed. 1990)), *rev'd on other grounds*, 510 U.S. 517 (1994). And the decision to strike a pleading is ultimately within a trial court's discretion. *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010).

Rule 56 provides, in relevant part, "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Rule 56(h) further provides that if a declaration is submitted in bad faith, the Court may "order the submitting party to pay the other party the reasonable expenses, including attorney's fees."

2. <u>Analysis</u>

The Court will deny Mr. Johnson's Motion for several reasons. First, the Cheney Declaration is not a pleading and thus falls outside the scope of Rule 12(f). *See Eruchalu v. U.S. Bank, N.A.*, NO. 2:12-CV-01264-MMD, 2013 WL 669103, at *2 (D. Nev. Dec. 17, 2013) ("Rule 7(a) identifies 'pleadings' as the complaint, answer, and reply, but not motions and other papers."); *United Staes v. Crisp*, 190 F.R.D. 546, 550–51 (E.D. Cal. 1999) (explaining that the Federal Rules "do not provide for a motion to strike documents . . . other than pleadings). Rule 56 governs Motions for Summary Judgment, which have yet to be filed in this case. Therefore, Mr. Johnson cannot rely on either Rule to Strike the Cheney Declaration.

Second, the Motion is procedurally improper. On July 23, 2024, EWS filed the Cheney Declaration in support of its Motion for Preliminary Injunction. (*See* Doc. 16; Doc. 17.) After the parties completed the briefing on that Motion and the Court held oral argument, the Court granted EWS injunction on December 4, 2024. (Doc. 70.) In other

words, Mr. Johnson is asking the Court to strike statements in a declaration supporting a Motion that the Court granted more than five months ago. Seeking to strike Ms. Cheney's averments at this stage is an exercise in futility, as the Motion has been granted, and Mr. Johnson has appealed the Court's Order. (*See* Doc. 71 (Notice of Interlocutory Appeal).)

Third, Mr. Johnson's request that the Court modify or reconsider the preliminary injunction is problematic for several reasons. (Doc. 135 at 17.) Most critically, Mr. Johnson appealed the preliminary injunction Order, thereby "divest[ing] the district court of jurisdiction over the particular issues involved in that appeal." *City of Los Angeles, Harbor Div v. Santa Monica Baykeeper*, 254 F.3d 882, 886 (9th Cir. 2001). Further, under the Local Rules, a Motion for Reconsideration must be made within fourteen (14) days after the issuance of the order to be reconsidered. *See* LRCiv 7.2(g)(2). As of May 30, 2025—the date of oral argument on the instant Motions—Mr. Johnson's request is 163 days beyond the deadline to petition for reconsideration under Rule 7.2(g). Even if the Court considered Mr. Johnson's hybrid request to both strike the Cheney Declaration and reconsider the injunction, he reiterates the challenges mustered in his papers submitted in opposition to the injunction. (*See generally* Doc. 135.) "A motion for reconsideration should not be used to ask a court to rethink what the court had already thought through—rightly or wrongly." *United States v. Rezzonico*, 32 F. Supp. 2d 1112, 1116 (D. Ariz. 1998) (cleaned up); *see also Ogden v. CDI Corp.*, No. CV 20-01490-PHX-CDB, 2021 WL 2634503, at *3 (D. Ariz. Jan. 6, 2021) (denying a motion for reconsideration when plaintiff did "nothing more than disagree with this Court as to the relevant law").

Fourth, Mr. Johnson has not provided a legitimate legal basis for his request that the Court both strike the Cheney Declaration and order EWS to amend or withdraw its Complaint. This request as it pertains to the Complaint is properly asserted in a Rule 12 Motion. At this stage in the litigation, EWS has filed its Complaint (Doc. 1) and Mr. Johnson has filed an Answer (Doc. 36; *see also* Doc. 57 (First Amended Answer and Counterclaims) (sealed); Doc. 77 (Motion to Amend/Correct Answer and Counterclaims) (sealed)). Mr. Johnson has not filed any Motion under Rule 12, or any other rule, that could

result in the Court ordering EWS to amend its pleading.

Finally, regarding sanctions, Mr. Johnson does not expound on his request beyond appending variants of the word "sanction" to his arguments for striking the Cheney Declaration. (*See, e.g.*, Doc. 135 at 2, 4, 17.) Without more, Mr. Johnson has not shown there is any basis for sanctioning Ms. Cheney or EWS.

In his opposition to EWS's Motion for Sanctions, Mr. Johnson writes that "[a]s a pro se litigant appearing in his first lawsuit, [he] has faced considerable challenges in navigating the complex boundaries of privilege and sealing." (Doc. 146 at 2.) Mr. Johnson is a practicing attorney with over a decade of experience. As an attorney, he has a responsibility to know, understand, and adhere to the procedural rules that govern the practice of law before this Court. It is clear, however, that Mr. Johnson's Motion is an attempt to end run around the rule governing reconsideration and general pleading practice. This Motion, like many other papers Mr. Johnson has submitted to this Court, is a bad faith attempt to relitigate settled matters in this forum, thereby unnecessarily prolonging litigation and increasing costs. Accordingly, his Motion is **denied**.

**B. Mr. Johnson's Motion re: Request for Findings of Fact and Conclusions of Law and Motion for Reconsideration**

Pursuant to Federal Rule 52, Mr. Johnson asks the Court to issue a detailed written findings of fact and conclusions of law clarifying its prior rulings in this case. (*See* Doc. 108.) Rule 52(a)(3) states that "[t]he court is not required to state findings or conclusions when ruling on a motion [except when] granting or refusing an interlocutory injunction." Therefore, Rule 52 does not provide Mr. Johnson the legal basis to request such relief from this Court. Therefore, Mr. Johnson's Motion is **denied**.

Mr. Johnson also filed a motion asking the Court to reconsider its Order denying his Motion to Disqualify EWS's counsel. (Doc. 107; Doc. 128.) The grounds for reconsideration are that the Court (1) misconstrued the Restatement (Third) of the Law Governing Lawyers, *In re Ockrassa*, 165 Ariz. 799 P.2d 1350 (Ariz. 1990), and *Paradigm Insurance Company v. Langerman Law Offices, P.A.* ("*Paradigm*"), 24 P.3d 593 (Ariz.

2001); (2) misapplied Arizona Rule of Professional Conduct ("ER") 1.7(a)(2); (3) failed to consider that EWS and its outside counsel "invit[ed] Johnson (nonclient) to rely on Counsel's advice" (Doc. 128 at 1); and (4) overlooked EWS's outside counsel's representation of Mr. Johnson's former employer, PING. (*Id.* at 1–2.)

"Motions to reconsider are appropriate only in rare circumstances." *333 W. Thomas Med. Bldg. Enters. v. Soetantyo*, 976 F. Supp. 1298, 1302 (D. Ariz. 1995). These circumstances include when the district court "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J Multnomah Cnty. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). "A motion for reconsideration should not be used to ask a court to rethink what the court had already thought through—rightly or wrongly." *Rezzonico*, 32 F. Supp. 2d at 1116 (cleaned up). Lastly, courts should deny motions for reconsideration if they only reiterate previous arguments. *See Maraziti v. Thorpe*, 52 F.3d 252, 255 (9th Cir. 1995); *see also Ogden*, 2021 WL 2634503, at *3 (denying a motion for reconsideration when plaintiff did "nothing more than disagree with this Court as to the relevant law").

The Court already considered and dispensed with Mr. Johnson's arguments under the Restatement (Third) of the Law Governing Lawyers, *In re Ockrassa*, and *Paradigm* in its Order denying the Motion to Disqualify. (*See* Doc. 126 at 4–5.) The Court also addressed Mr. Johnson's contention regarding EWS's alleged invitation for him to rely on outside counsel's advice. (Doc. 126 at 1–2, 5–8.) Additionally, Mr. Johnson's relationship with Mr. Chen prior to his employment at EWS did not violate any of the ERs nor was it particularly germane to the Motion as presented to the Court. The Court will not rethink its decision regarding those issues here, *Rezzonico*, 32 F. Supp. at 1116, nor entertain rehashed or refashioned arguments that that were presented in the Motion to Disqualify, *Maraziti*, 52 F.3d at 255.

To the Court's surprise, Mr. Johnson claims that the Court erred because it "did not address . . . the text of ER 1.7(a)(2) at all." (Doc. 128 at 7.) The Court afforded roughly

two and a half pages to discussing ER 1.7(a)(2), where it found that it did not help Mr. Johnson as he was not the party that the rule was meant to protect. (*See* Doc. 126 at 6–8.)

The Court will **deny** Mr. Johnson's Motion for Reconsideration.

### C. EWS's Motion for Sanctions

EWS argues that sanctions are appropriate because Mr. Johnson filed an objectively unreasonable and frivolous motion with the improper purpose of publishing EWS's privileged information, disqualifying EWS's chosen counsel, and invading EWS's client relationships with outside law firms. (Doc. 133 at 10.) EWS further argues that Mr. Johnson knowingly took these actions despite admitting that he was not a client of KTS or BCLP and despite acknowledging the Court's findings and admonishments regarding privilege. (*Id.*)

In response, Mr. Johnson first argues that EWS has failed to properly set forth the legal standard for sanctions. (Doc. 146 at 5.) This, according to Mr. Johnson, "undermines the entire procedural foundation of EWS's motion." (*Id.*) Mr. Johnson also asserts his pro se status requires that he be given special consideration and that some heightened bad faith standard applies to him under 28 U.S.C. § 1927. (*Id.* at 7 (citing *In re Keegan Mgmt. Co., Sec. Lit.*, 78 F.3d 431, 436 (9th Cir. 1996); *In re Girardi*, 611 F.3d 1027, 1061 (9th Cir. 2010)).) Next, Mr. Johnson argues that the Court has issued inconsistent rulings, which precludes the imposition of sanctions. (*Id.* at 7–8.) And finally, Mr. Johnson argues that his flings and actions were done in good faith and due process and fairness concerns ought to preclude sanctions. (*Id.* at 8–9.)

1. <u>Legal Standard</u>

28 U.S.C. § 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

The Ninth Circuit frequently notes that it has not been a paragon of clarity regarding the appropriate liability standard under § 1927. *See In re Girardi*, 611 F.3d at 1061. One panel

- 8 -

found that "section 1927 sanctions must be supported by a finding of subjective bad faith," which is "present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *In re Keegan*, 78 F.3d at 436 (cleaned up). In *Fink v. Gomez*, the panel concluded that "recklessness suffices for § 1927 . . . [but] bad faith is required for sanctions under the court's inherent power." 239 F.3d 989, 993 (9th Cir. 2001). Building on the recklessness standard, the Ninth Circuit held that knowing about a rule and the applicable law and "recklessness in the face of such undeniable knowledge" would be "sufficient to justify the imposition of § 1927 sanctions." *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1107 (9th Cir. 2002), *abrogated on other grounds by Fort Bend County v. Davis*, 587 U.S. 541 (2019).

This Court also possess the inherent power to assess attorneys' fees for the "willful disobedience of a court order" or "when the losing party has acted in bad faith vexatiously, wantonly, or for oppressive reasons." *Alyeska Pipeline Co v. Wilderness Society*, 421 U.S. 240, 250–53 (1975) (cleaned up). Under the Court's inherent authority, a finding of bad faith "does not require that the legal and factual basis for the action prove totally frivolous; where a litigant is substantially motivated by vindictiveness, obduracy, or *mala fides*," asserting a "colorable claim" does not preclude sanctions. *See In re Itel Sec. Lit.*, 791 F.2d 672, 675 (9th Cir. 1986) (quoting *Lipsig v. Nat'l Student Mktg Corp.*, 663 F.2d 178, 182 (D.C. Cir. 1980)). Both § 1927 and the Court's inherent power permits awarding attorneys' fees for violations of the attorney-client privilege by lawyers. *See Gomez v. Vernon*, 255 F.3d 1118, 1133–34 (9th Cir. 2001).

2. Analysis

The Court will address Mr. Johnson's applicable arguments against the imposition of sanctions prior to discussing whether sanctions are appropriate in this case.

First, Mr. Johnson's argument that EWS has not clearly defined the legal standard for sanctions is without merit. EWS, in multiple instances, sets forth that it is seeking sanctions both under § 1927 and the Court's inherent power, but not Rule 11. (Doc. 133 at 6, 9, 11–13.) EWS also set forth the legal standards for sanctions under § 1927 and the

Court's inherent authority. (*Id.* at 9–11.)

Second, Mr. Johnson's citation to *In re Keegan* is inapposite and his reading of *In re Girardi* is incorrect. First, *In re Keegan* does not support the proposition that an attorney's pro se status is given any consideration when a court is imposing sanctions under § 1927 or its inherent authority. *See* 78 F.3d at 436. Even so, the Ninth Circuit has explained that "in considering a Rule 11 motion, . . . a district court can properly consider a plaintiff's *pro se* status in assessing sanctions," but "it cannot decline to impose any sanction where a violation has arguably occurred because the plaintiff is proceeding *pro se*." *Simpson v. Lear Astronics Corp.*, 77 F.3d 1170 (9th Cir. 1996) (citing *Warren v. Guelker*, 29 F.3d 1386, 1388 (9th Cir. 1994)).

Next, *In re Girardi* does not stand for the proposition that § 1927 applies a heightened subjective bad faith standard to pro se litigants. *See* 611 F.3d at 1061. There, the Ninth Circuit reiterated that its case law was unclear regarding whether § 1927 requires recklessness or subjective bad faith. *Id.* Then, the court stated that "regardless of whether recklessness alone suffices . . . sanctions are justified in this case because Respondents' filings were made in bad faith insofar as Respondents filings to the Ninth Circuit were reckless and frivolous . . . and because Respondents recklessly and intentionally, misled this Court." *Id.* (internal citations omitted). At bottom, to say that *In re Girardi* supports a heightened subjective bad faith standard for pro se litigants is a misstatement of the § 1927 standard as applied in that case.

Mr. Johnson also argues that this Court has rendered inconsistent rulings regarding the status of the Privileged Chat. (*See* Doc. 146 at 6.) Mr. Johnson's position underscores a fundamental misunderstanding of the legal standards applied when deciding certain motions. When deciding a preliminary injunction, the Court has the benefit of peeking behind the curtain, meaning it looks further than the plain language of the pleadings to weigh the potential success of the merits of a claim. *See Winters v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (setting forth the elements for preliminary injunctions). Because a key element of the *Winters* factor test is "likelihood of success on the merits,"

precedent compelled the Court to weigh that likelihood as it pertained to the part of EWS's trade secrets misappropriation claim predicated on the Privileged Chat. (*See* Doc. 70 at 10.) A motion to dismiss, on the other hand, tasks the Court with taking all well pled allegations as true, which in this case included allegations that the Privileged Chat support the elements of a trade secrets misappropriation claim. *See Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). The Court did not, as Mr. Johnson puts it, "find[] that the Teams Chat is in fact a trade secret." (Doc. 146 at 5.) Rather, it weighed EWS's Motion for Preliminary Injunction and Defendant Brandon O'Loughlin's Motion to Dismiss under the relevant standards and rendered its decisions accordingly.

Further, Mr. Johnson contends that his actions, including filing the Motion to Disqualify, were done in good faith. (Doc. 146 at 9.) In support of Mr. Johnson's alleged "consistent pattern of diligence and good-faith" he points to his act of filing the Motion re: Request for Findings of Fact and Conclusions of Law. (*Id.* at 2.) That Motion (Doc. 108) was completely baseless, and as a practicing attorney Mr. Johnson ought to know that Rule 52 could not afford him the relief sought. Mr. Johnson's reliance on inapt authority is a pattern in this litigation. Indeed, his Motion to Strike and Motion for Sanctions (Doc. 135) relies on inapposite Federal Rules to request unachievable relief. Mr. Johnson should have known that Rules 12 and 56 were not the appropriate bases upon which to ask the Court to strike the Cheney Declaration, especially months after the Court considered the Declaration to issue the preliminary injunction, which he then appealed to the Ninth Circuit. *See Santa Monica Baykeeper*, 254 F.3d at 886. If those Motions (Doc. 108; Doc. 135) did anything, they served to further highlight Mr. Johnson's attempts to knowingly and wrongfully multiply the filings in this case.[2]

---

[2] Mr. Johnson notes that there is some confusion regarding the Court's position on certain documents at issue stemming from this Court's Order sealing Mr. Johnson's Motion to Strike (Doc. 135) at ECF No. 137. The Court understands Mr. Johnson's position. In that Order, the Court indicated that it could "not see that the information would be confidential." The Court was mistakenly under the impression that the Mr. Johnson intended only to seal the Motion, and not the appended exhibits. While the Court's note regarding the confidentiality of the exhibits was error—meaning that the Court mistook the scope of Mr. Johnson's request—it does not detract from the myriad frivolous filings Mr. Johnson made prior to the Order at ECF No. 137.

- 11 -

1    Mr. Johnson also asserts that he has acted in good faith because has never "re-published or re-filed material that the Court found to be privileged or ordered sealed." (Doc. 146 at 2.) This argument is demonstrably false. The Court outlined several instances in which Mr. Johnson refiled information the Court previously sealed in its January 22, 2025 Order. (*See* Doc. 92)

Turning to whether Mr. Johnson should be sanctioned, the Court has observed and discussed several instances in which Mr. Johnson failed to comply with this Court's warnings that he cannot disclose information that is subject to EWS's attorney-client privilege. (*See, e.g.*, Doc. 75 at 21; Doc. 77-1; Doc. 84; Doc. 88; Doc. 92; Doc. 107.) The repeated warnings evidently did not frustrate his continued practice of placing confidential information on the public docket. (*See* Doc. 107.) At the time he filed the Motion to Disqualify, Mr. Johnson acknowledged and understood that he did not hold the keys to EWS's attorney-client privilege, and therefore, could not disclose such information. Nevertheless, Mr. Johnson disclosed privileged information in that Motion and even recognized such information to be "legal advice" KTS and BCLP gave to EWS. (*See* Doc. 107-1 ¶¶ 18–19.)

While Mr. Johnson claims he filed the Motion to Disqualify to ameliorate an "extraordinary ethical conflict that strikes at the heart of fairness in judicial proceedings," the Motion puts forth arguments neither supported by the ERs nor precedent. (*See* Doc. 107.) Simply reading the ERs should put any attorney on notice of their scope, applicability, and use in the practice of law. Mr. Johnson, however, did not advance a single meritorious argument under the ERs. (*See* Doc. 126.) Mr. Johnson knowingly filed a Motion to Disqualify rife with baseless arguments. The Motion demonstrates that Mr. Johnson did so in a manner that unnecessarily multiplied the filings and proceedings in this case. Therefore, the Court finds that Mr. Johnson filed the Motion to Disqualify in bad faith, which justifies sanctions under § 1927 and this Court's inherent authority. *See In re Keegan*, 78 F.3d at 436; *In re Itel Sec. Lit.*, 791 F.2d at 675.[3]

---

[3] Mr. Johnson's Motion to Strike and Motion for Sanctions (Doc. 135), having also been filed in bad faith, is an additional basis for sanctions. Though the Court denied that Motion

Section 1927 authorizes the Court to award "excess costs, expenses, and attorneys' fees reasonably incurred" due to an attorney's unreasonable and vexatious multiplications of proceedings. 28 U.S.C. § 1927. The Court's inherent authority also allows it to assess attorneys' fees where a party has willfully disobeyed a court order or where a losing party acted in bad faith. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765–66 (1980); *Alyeska Pipeline Serv. Co.*, 421 U.S. at 257. Filing a frivolous Motion to Disqualify has been recognized to be grounds for monetary sanctions in both Arizona and federal cases. *See, e.g.*, *Red Mountain Spa, L.L.C. v. AZ NP Health Servs., LLC*, No. 1 CA-CV 16-0251, 2018 WL 5269640, at *4 (Ariz. Ct. App. Oct. 23, 2018); *Optyl Eyewear Fashion Int'l Corp. v. Style Co., Ltd.*, 760 F.2d 1045, 1050–51 (9th Cir. 1985); *In re Marvel*, 251 B.R. 869, 871–72 (Bankr. N.D. Cal. 2000). As an attorney, Mr. Johnson must have understood that the Motion to Disqualify was completely baseless. And he ought to have recognized that filing the Motion would only serve to needlessly increase the costs of litigation or to harass the opposition. These clear issues did not stop Mr. Johnson from filing his frivolous Motion. Consequently, the Court finds Mr. Johnson's bad faith filing warrants monetary sanctions. *See Gomez*, 255 F.3d at 1134. Mr. Johnson will be ordered to pay EWS's attorneys' fees in relation to EWS's opposition to Johnson's Motion to Disqualify and EWS's preparation, filing, and support of its emergency Motion to Seal the Motion to Disqualify.

In sum, the record is filled with Mr. Johnson's unsuccessful, meritless maneuvers that require the opposition to expend significant resources to defend itself. In this instance, the Court finds that Mr. Johnson acted in bad faith in filing his Motion to Disqualify. The Court, therefore, will **grant** EWS's Motion for Sanctions (Doc. 133). And pursuant to 28 U.S.C. § 1927 and its inherent authority, the Court will order that Mr. Johnson pay EWS's attorneys' fees in relation to EWS's opposition to Johnson's Motion to Disqualify and

---

and EWS ultimately prevailed, it nonetheless needed to expend time and capital responding to a meritless Motion filed by a seasoned attorney. While the Court finds that sanctions related to the Motion to Disqualify are sufficient, the Court warns Mr. Johnson that his bad faith conduct in this case will be subject to further sanctions.

EWS's preparation, filing, and support of its emergency Motion to Seal the Motion to Disqualify.

### III. CONCLUSION

Accordingly,

**IT IS THEREFORE ORDERED denying** Mr. Johnson's Motion to Strike and Motion for Sanctions (Doc. 135), Motion re: Request for Findings of Fact and Conclusions of Law (Doc. 108), and Motion for Reconsideration of this Court's Order denying his Motion to Disqualify EWS's counsel (Doc. 128).

**IT IS FURTHER ORDERED granting** EWS's Motions for Sanctions (Doc. 133).

**IT IS FURTHER ORDERED** that EWS shall submit a supporting declaration attaching evidence sufficient to establish its attorneys' fees incurred in opposing Johnson's Motion to Disqualify and EWS's preparation, filing, and support of its emergency Motion to Seal the Motion to Disqualify.

Dated this 30th day of June, 2025.

_____
Honorable Susan M. Brnovich
United States District Judge