**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Early Warning Services LLC, | No. CV-24-01587-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| Warren Vurl Johnson, et al., | |
| Defendants. | |

Pending before the Court is Defendant-Counter Claimant Warren Vurl Johnson's Motion for Leave to File Second Amended Counterclaims (Doc. 77 (the Motion); Doc. 77-1 (Second Proposed Amended Answer and Counterclaims) (sealed).) Plaintiff-Counter Defendant Early Warning Services LLC ("EWS") filed a Response (Doc. 83), and Mr. Johnson filed a Reply (Doc. 87). After reviewing the briefing and the relevant case law, the Court will **deny** Mr. Johnson's Motion (Doc. 77).

Because the Court will deny Mr. Johnson leave to amend his operative Answer and Counterclaims (Doc. 57 (sealed)), the Court will consider EWS's fully briefed Motion to Dismiss, (Doc. 46 (the Motion); Doc 48 (Mr. Johnson's Response); Doc. 49 (EWS's Reply)). The Court will **grant** this Motion and dismiss Mr. Johnson's Amended Answer and Counterclaims (Doc. 57).

///

///

///

## I.     BACKGROUND

The Court has described the background of this case in its Order granting EWS's Motion for Preliminary Injunction.  (*See generally* Doc. 70.)  Here, the Court will provide a brief procedural history, which will prove helpful for analyzing the current Motions before the Court.

On June 28, 2024, EWS filed suit against Mr. Johnson as well as Defendants Brandon O'Loughlin and P.A.Z.E., LLC ("P.A.Z.E."), alleging that they engaged in a scheme to extract money from EWS using stolen documents, domain name registrations incorporating EWS's trademarks, and a sham website maintained to disparage EWS.  (*See* Doc. 1.)  EWS further alleges that Defendants set out on a "lawfare" campaign against it in the Trademark Trial and Appeal Board ("TTAB") of the United States Patent and Trademark Office ("USPTO").  (*See id.* ¶ 11.)  Specific to Mr. Johnson, EWS alleges that his involvement in this scheme gave rise to its claims for misappropriation of trade secrets, breach of fiduciary duty, unjust enrichment, and breach of contract.  (*Id.* ¶¶ 88–121, 132–134, 156–160.)  EWS also alleges that it is entitled to a declaratory judgment of noninfringement under 28 U.S.C. § 2201(a), 15 U.S.C. § 1125(a), and Arizona common law that requires the USPTO to invalidate P.A.Z.E.'s mark applications under 15 U.S.C. § 1119.  (*Id.* ¶¶ 135–155.)  On September 19, 2024, Mr. Johnson filed an Answer asserting seven counterclaims against EWS and its outside counsel.  (*See* Doc. 36 (redacted); Doc. 37 (sealed).)  On October 10, 2024, EWS filed a Motion to Dismiss Mr. Johnson's Answer (Doc. 44).  That same day, the Court lodged Mr. Johnson's Proposed First Amended Answer and Counterclaims (Doc. 57; *see also* Doc. 43).

Mr. Johnson accuses EWS of concocting a false and illegal narrative to defame him, cause him emotional harm, and to abuse judicial processes.  (*See* Doc. 57 at 40–57 ¶¶ 139–236.)  On October 24, 2024, EWS moved to dismiss Mr. Johnson's First Amended Counterclaims under Federal Rule of Civil Procedure 12(b)(6) (Doc. 46).  EWS contends that several factual and legal barriers preclude Mr. Johnson's claims.  (*See id.*) The parties fully briefed that Motion (Doc. 48 (Mr. Johnson's Response); Doc. 49 (EWS's Reply).)

On December 14, 2024, Mr. Johnson filed the instant Motion (Doc. 77 (sealed)) and attached his Proposed Second Amended Answer and Counter Claims (the "Proposed Counterclaims"), asserting nine counterclaims. (*See* Doc. 77-1 at 35–55, ¶¶ 149–282.)

## II.    LEGAL STANDARDS

### A.  Rule 15

Federal Rule of Civil Procedure 15(a) requires that leave to amend be "freely give[n] when justice so requires." Leave to amend should not be denied unless "the proposed amendment either lacks merit or would not serve any purpose because to grant it would be futile in saving the plaintiff's suit." *Universal Mortg. Co. v. Prudential Ins. Co.*, 799 F.2d 458, 459 (9th Cir. 1986). Therefore, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (cleaned up). While the Court enjoys discretion, it "must be guided by the underlying purpose of Rule 15—to facilitate decision on the merits rather than on the pleadings or technicalities." *Eldridge v. Block*, 832 F.2d 1132, 1135 (9th Cir. 1987) (citation omitted).

The Court considers five factors to evaluate a motion for leave to amend: bad faith, undue delay, prejudice to the opposing party, futility of the amendment, and whether the plaintiff previously amended the complaint. *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004) ("Futility alone can justify the denial of a motion for leave to amend."). An amendment is futile where it is "subject to dismissal." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998); *see also Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) ("[A] court does not abuse its discretion in denying a motion to amend where the movant presents no new facts but only new theories and provides no satisfactory explanation for his failure to fully develop his contentions originally.").

### B.  Rule 12(b)(6)

To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Rule 8(a)(2). Rule 8(a)(2) requires a "short and plain statement of the

claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). This exists if the pleader sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint that sets forth a cognizable legal theory will survive a motion to dismiss if it contains sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Plausibility does not equal "probability," but requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In ruling on a Rule 12(b)(6) motion to dismiss, the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998). A court ordinarily may not consider evidence outside the pleadings in ruling on a Rule 12(b)(6) motion to dismiss. *See United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). "A court may, however, consider materials— documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908.

1    **III.    DISCUSSION**

2        **A.  Mr. Johnson's Motion for Leave to Amend (Doc. 77)**

3        Mr. Johnson proposes nine counterclaims: (1) abuse of process and fraud on the

4    Court against EWS, its general counsel, Tracy Cheney, and attorneys Erick Durlach,

5    Dennis Wilson, and George Chen, (2) defamation against EWS, Ms. Cheney, and outside

6    counsel, Sara Stadler; (3) intentional infliction of emotional distress ("IIED") against EWS;

7    (4) negligent infliction of emotional distress ("NIED") against EWS; (5) fraud on the Court

8    against EWS, Ms. Cheney, Mr. Durlach, Mr. Wilson, and Mr. Chen; (6) a declaration that

9    the Microsoft Teams Chat (the "Privileged Chat") is not privileged; (7) trade secret

10   misappropriation against EWS; (8) unjust enrichment against EWS; and (9) a declaration

11   that EWS's application to register its PAZE mark is invalid.  (*See* Doc. 77-1 at 35–

12   55 ¶¶ 149–282.)

13       EWS asserts that each of the Proposed Counterclaims fail as a matter of law, were

14   brought in bad faith, prejudice EWS, and are merely a tactic to unduly delay the

15   proceedings in this case.  (Doc. 83 at 7.)  EWS therefore asks that Mr. Johnson's Motion

16   be denied.  (*Id.* at 8 (quoting *Steckman*, 143 F.3d at 1298).)  In reply, Mr. Johnson argues

17   that allowing him leave to amend is necessary to address EWS's fraud, to restore the

18   integrity of the proceedings, and to uphold public policy.  (Doc. 87 at 4.)

19       "[T]he proper test to be applied when determining the legal sufficiency of a

20   proposed amendment is identical to the one used when considering the sufficiency of a

21   pleading challenged under Rule 12(b)(6)."  *Do v. Ariz. State Univ.*, No. CV-22-00190-

22   PHX-JJT, 2023 WL 8622628, at *2 (D. Ariz. Dec. 13, 2023) (quoting *Nordyke v. King*,

23   644 F.3d 776, 788 n.12 (9th Cir. 2011), *aff'd on reh'g en banc on other grounds*, 681 F.3d

24   1041 (9th Cir. 2012)).  Surviving a Rule 12(b)(6) motion requires a complaint to allege

25   "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at

26   570.

27       Here, whether Mr. Johnson's Proposed Counterclaims would survive the Rule

28   12(b)(6) standard depends on three legal hurdles.  First, whether the *Noerr-Pennington*

doctrine or the absolute litigation privilege bars the Proposed Counterclaims. Second, whether a settlement agreement that EWS and Mr. Johnson's executed in prior litigation (the "Settlement Agreement") prevents Mr. Johnson from asserting his claims. And third, whether Mr. Johnson has established Article III standing, antitrust standing, and trademark standing to bring his declaratory relief claims. The Court addresses these hurdles in turn.

### 1. *Noerr-Pennington* Doctrine and the Absolute Litigation Privilege

EWS argues that *Noerr-Pennington* and the absolute litigation privilege bar the first through fifth Proposed Counterclaims, which are (1) abuse of process; (2) defamation; (3) IIED; (4) NIED; and (5) fraud on the Court. (Doc. 83 at 10–13.) Mr. Johnson argues that neither apply because EWS has engaged in "fraudulent actions intended to deceive the court." (Doc. 87 at 5.) From Mr. Johnson's perspective, EWS is engaged in "sham" litigation, thereby divesting it of any protections afforded by *Noerr-Pennington* or the litigation privilege. (*Id.*)

The First Amendment to the Constitution guarantees the right "to petition the Government for a redress of grievances." U.S. Const. amend. I, cl. 6. "The Supreme Court has long recognized that for the Petition Clause to be a meaningful protection of the democratic process, citizens must be immune from some forms of liability for their efforts to persuade government officials to adopt policy or perform their functions in a certain way." *Kottle v. Nw. Kidney Ctrs.*, 146 F.3d 1056, 1059 (9th Cir. 1998). This principle is embodied in the *Noerr-Pennington* doctrine, which provides that "those who petition all departments of the government for redress are generally immune from liability." *Empress LLC v. City & County of San Francisco*, 419 F.3d 1052, 1056 (9th Cir. 2005). Importantly, however, *Noerr-Pennington* immunity does not extend to those engaged in "sham" litigation. *See Professional Real Estate Investors, Inc. v. Columbia Pictures Indus.* ("*PREI*"), 508 U.S. 49, 59–61 (1993).

Arizona's absolute litigation privilege is similar to the *Noerr-Pennington* doctrine. *See Green Acres Tr. v. London*, 688 P.2d 617, 621 (Ariz. 1984). The privilege provides:

> "[J]udges, parties, lawyers, witnesses and jurors" are "absolutely privileged
> to publish defamatory matter concerning another in communications

> preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which" they participate, if the defamatory publication "relate[s] to, bear[s] on or [is] connected with the proceeding." "The defense is absolute in that the speaker's motive, purpose or reasonableness in uttering a false statement do not affect the defense."

*Goldman v. Sahl*, 462 P.3d 1017, 1025 (Ariz. Ct. App. 2020) (alterations in original) (internal citations omitted) (quoting *Green Acres Tr.*, 688 P.2d at 621). The privilege is not limited to "defamatory statements" in defamation cases, as it also applies to other torts based on such alleged statements. *Evans v. McAllister*, CIV 23-132-TUC-CKJ, 2023 WL 3345656, at *5 (D. Ariz. May 10, 2023); *cf. Prakash v. Altadis U.S.A. Inc.*, No. 5:10CV0033, 2012 WL 1109918, at *10 (N.D. Ohio Mar. 30, 2012) ("Litigation privilege, and its antitrust counterpart, the *Noerr-Pennington* doctrine, immunize [d]efendants from federal or state liability based on their trademark enforcement efforts."). But "the litigation privilege does not preclude an action for improper litigation conduct." *See Goldman*, 462 P.3d at 1033.[1]

Mr. Johnson offers five Proposed Counterclaims that implicate the *Noerr-Pennington* doctrine and the privilege:

- **Abuse of Process:** EWS and its counsel submitted unverified and unreliable information to this Court from the website <old-friends.co> without any due diligence, alleging that Mr. Johnson and Mr. O'Loughlin were high school classmates involved in trade secret theft. (Doc. 77-1 at 36, 38, 44, 46 ¶¶ 152, 160–63, 190, 198–203, 240–243);

- **Defamation:** EWS, its counsel, Sara K. Stadler, and Ms. Cheney made false and

---

[1] Several courts have found that the litigation privilege applies to TTAB proceedings. *See Scoyni v. Salvador*, Nos. 20-35123, 20-35564, 2021 WL 5002213, at *1 (9th Cir. Oct. 28, 2021) ("To the extent that Defendants made any defamatory communications . . . to the [TTAB], those communications were protected by the litigation privilege."); *Ball Corp. v. Xidex Corp.*, 967 F.2d 1440, 1445 (10th Cir. 1992) (holding "that private lawyers are entitled to absolute immunity from charges of defamation based on statements in the quasi-judicial setting of PTO proceedings"); *Prakash v. Altadis U.S.A. Inc.*, No. 5:10CV0033, 2012 WL 1109918, at *11 (N.D. Ohio Mar. 30, 2012) (holding that the absolute litigation privilege extends to statements made in cease-and-desist letters and during opposition proceedings before the TTAB); .

damages statements in filings before the TTAB of the USPTO falsely alleging that Mr. Johnson conspired with a former classmate to steal trade secrets and extort money from EWS.  (*Id.* at 40 ¶ 171);

- **IIED and NIED:** EWS filed the pleadings for this lawsuit and the response to the TTAB. Since then, EWS and Ms. Cheney have targeted Mr. Johnson's emotional well-being, aiming to coerce and intimidate him through these actions.  (*Id.* at 42–43, 44–45 ¶¶ 181–184, 190–194);

- **Fraud on the Court:** EWS knowingly presented false evidence and fabricated allegations of Mr. Johnson and Mr. O'Loughlin's high school relationship to support its Complaint and Motion for Preliminary Injunction.  (*Id.* at 46–47 ¶¶ 198, 200–202.)

Mr. Johnson's Proposed Counterclaims predicate each cause of action on EWS's allegedly tortious activity during its petitioning activities before the government, i.e., filing suit in this Court and litigating in the TTAB.  To be specific, Mr. Johnson expresses that this very lawsuit is the impetus for his IIED and NIED claims.  (Doc. 77-1 at 42–43, 44–45 ¶¶ 181–184, 190–19.)  Similarly, Mr. Johnson's abuse of process, defamation, and fraud on the Court claims revolve around information EWS either submitted to this Court or to the TTAB.  And, as alleged, Mr. Johnson's Proposed Counterclaims are inextricably tied to EWS's efforts to seek redress and favorable outcomes in both venues.  This are the precise type of petitioning activities that *Noerr-Pennington* protects.  *See PREI*, 508 U.S. at 59 (explaining that non-sham litigation seeking to procure favorable judicial outcome enjoys *Noerr-Pennington* immunity); *see also White v. Lee*, 227 F.3d 1214, 1232 (9th Cir. 2000).  And because Mr. Johnson's claims all pertain to statements made in this Court and in the TTAB, the absolute litigation privilege would protect EWS to the same degree.  *See Goldman*, 462 P.3d at 1025; *Evans*, 2023 WL 3345656, at *5.  So, bar certain exceptions discussed below, EWS is immune from liability for counterclaims one through five.

As noted, a litigant engaging in sham litigation does not enjoy *Noerr-Pennington* immunity.  *PREI*, 508 U.S. at 59–61.  And Arizona's absolute litigation privilege does not

protect "improper litigation conduct." *See Goldman*, 462 P.3d at 1033. It is therefore no surprise that part and parcel of Mr. Johnson's allegations are that EWS is presently engaging in both sham litigation and improper conduct in this Court and the TTAB. Now, if Mr. Johnson is correct, EWS would not be immune from his first five counterclaims. *See PREI*, 508 U.S. at 59–60; *Goldman*, 462 P.3d at 1033. The measure of "correctness" at this stage in the litigation is whether Mr. Johnson has sufficiently alleged that EWS engaged in either sham litigation or improper conduct. *See EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*, 711 F. Supp. 2d 1074, 1083 (C.D. Cal. 2010) ("At [the motion to dismiss] stage in the litigation, the Court need not conclude whether [the plaintiff's] conduct was a sham. It must decide only whether Plaintiff has properly pleaded that the conduct was a sham.").

In *PRE*, the United States Supreme Court announced a two-part definition for "sham litigation" in the antitrust context. 508 U.S. at 60–61. First, the lawsuit "must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Id.* at 60. Although, "[i]f an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under *Noerr*." *Id.* Second, the court must focus on whether the baseless lawsuit conceals "an attempt to interfere *directly* with the business relationships with a competitor." *Id.* at 60–61. Here, the Court is only meant to reach the second part if Mr. Johnson's allegations "disprove the challenged lawsuit's *legal* viability," that is, whether the suit is objectively baseless. *See id.*

As noted, Mr. Johnson's burden at this stage is to allege, observing Rule 8's requirements, that EWS is engaging in sham litigation or improper litigation conduct. *See EcoDisc*, 711 F. Supp. 2d at 1083. He has failed to do so. His allegations start and stop with the claim that EWS "deliberately submi[tted] . . . false evidence and defamatory statements" which fall "within the fraud exception to" *Noerr-Pennington*. (*See* Doc. 77-1 at 28 ¶ 57.) Parsing through nearby allegations suggests that Mr. Johnson intends to claim that when EWS alleged that he and Mr. O'Loughlin attended high school together, it

1   "improperly influence[d] the Court's decision," which means the company is engaged in

2   sham litigation and improper litigation conduct.  (*See id.* ¶¶ 55–57.)  These allegations,

3   even assuming their truth, do not suffice to show that EWS is engaged in either

4   deimmunizing transgression.  Indeed, Mr. Johnson must plead that EWS's lawsuit is

5   objectively a pursuit of claims so baseless that the company could not reasonably expect

6   to secure favorable relief.  *See PREI*, 508 U.S. at 60.  Objective reasonableness "is

7   measured by 'probable cause' as understood in traditional common law actions."  *Relevant

8   Group, LLC v. Nourmand*, 116 F.4th 917, 932 (9th Cir. 2024).  The probable cause

9   threshold is low, as "it requires no more than a 'reasonable belief' that there is 'some

10  chance' that a claim may be held valid upon adjudication."  *Id.* (citation modified).  Mr.

11  Johnson's Proposed Counterclaims fail to show that EWS's claims are objectively baseless.

12  At best, Mr. Johnson has shown that he seriously disagrees with EWS's contention that he

13  and Mr. O'Loughlin attended Mesa High School together.[2]  (*See* Doc. 1 at 1.)

14      Mr. Johnson's Proposed Counterclaims continuously reference this Court's Order

15  on the Motion for Preliminary Injunction (Doc. 70) as a basis for EWS's improper litigation

16  conduct.  (*See, e.g.*, Doc. 77-1 at 20–21 ¶¶ 3, 8, 25–26 ¶¶ 43, 45, 28 ¶ 55.)  Mr. Johnson

17  also alleges that EWS's operative Complaint is an exercise in litigation misconduct because

18  it "falsely accuse[s]" Mr. Johnson of disclosing confidential information without providing

19  supporting evidence.  (*Id.* at 30 ¶ 63.)  Considering EWS's briefing on its Motion for

20  Preliminary Injunction as well as its Complaint supports the exact opposite conclusion.

21  *See Ritchie*, 342 F.3d at 907 (explaining that a court may consider materials outside the

22  complaint "without converting the motion to dismiss into a motion for summary

23  judgment").  For example, EWS presented the Court with competent evidence to

24  corroborate the claims made in the Motion for Preliminary Injunction, which the Court

25  ultimately granted.  (Doc. 16; Doc. 70.)  Similarly, the claims and supporting allegations

26  ─────────────
    [2] As the Court discussed in its recent Orders denying Mr. O'Loughlin's Motion to Dismiss
27  and Mr. Johnson's Motion for Judicial Recusal, the now unlikely high school relation
    between Mr. Johnson and Mr. O'Loughlin is not the smoking gun Mr. Johnson believes it
28  to be.  Indeed, if the information is ultimately false, it was proven to be so through the
    process of litigation, a common occurrence.  Moreover, the existence or nonexistence of
    that fact alone was not dispositive for any decision made by this Court.

in EWS's Complaint, (Doc. 1), which largely mirror those in the Motion for Preliminary Injunction, show that EWS's claims may be valid upon adjudication. *Relevant Group*, 116 F.4th at 932. Mr. Johnson, apart from directing his ire at EWS's weak allegations about his and Mr. O'Loughlin's high school relationship, has not alleged any factual material to show that this case or the TTAB proceedings amount to litigation misconduct.

Having failed to show that EWS is pursuing sham litigation or is engaged in improper litigation conduct, both *Noerr-Pennington* and the absolute litigation privilege immunize EWS from Mr. Johnson's Proposed Counterclaims for abuse of process, defamation, IIED, NIED, and fraud on the Court. The Court therefore denies leave to file those claims.

### 2. The Underlying Settlement Agreement

EWS argues that the Settlement Agreement bars Proposed Counterclaims three, four, seven, and eight because he released his claims against EWS as of August 24, 2023. (Doc. 83 at 8.) Mr. Johnson argues that the Settlement Agreement only bars those claims he was aware of at the time of execution. (Doc. 87 at 5.) He therefore believes that, because he learned of the "actionable harm during the current litigation," the Settlement Agreement does not bar his Proposed Counterclaims. (*Id.*)

EWS's Complaint alleges, and Mr. Johnson admits, that the parties agreed to settle Johnson's wrongful termination action against EWS "in a Settlement Agreement bearing an effective date of August 24, 2023." (Doc. 1 ¶ 84; Doc. 77-1 at 9 ¶ 83.) Paragraph 5 of that Agreement, titled "General Release of Claims" provides, in relevant part:

> [Mr.] Johnson . . . release[s], knowingly and willingly, [EWS], [its] owners, . . . (collectively referred to as the "Released Parties") from any kind of claim [Mr.] Johnson has against the Released Parties. This general and complete release applies to all demands, disputes, complaints, causes of action, and claims, known and unknown for relief, that [Mr.] Johnson may have against the Released Parties as of the date of execution of the Agreement.

(Doc. 17-1 at 23–24.)

"If a release bars claims being brought in a complaint, the Court should dismiss the claims pursuant to Rule 12(b)(6)." *Sutton v. Shasta Indus.*, No. CV-20-02320-PHX-SMB,

2021 WL 3709853, at *5 (D. Ariz. Aug. 20, 2021) (citing *Marder v. Lopez*, 450 F.3d 445, 453 (9th Cir. 2006) (affirming dismissal of claims barred by a release)). "When contract language is unambiguous, [this Court] must interpret the language as written, without reference to extrinsic evidence." *McLane & McClane v. Prudential Ins.*, 735 F.2d 1194, 1195 (9th Cir. 1984); *see also Isaak v. Mass. Indem. Life. Ins.*, 623 P.2d 11, 14 (Ariz. 1981).

The general release provision could not be clearer—any claims Mr. Johnson had against EWS, known and unknown, arising prior to August 24, 2023, are forfeit. *See, e.g.*, *Zounds Hearing Franchising LLC v. Moser*, No. CV-16-00619-PHX-DGC, 2016 WL 6476291, at *3 (D. Ariz. Nov. 2, 2016) ("The very broad language of the Release makes clear that the parties intended to release all claims that arose before the state of signing, even unknown claims."). Mr. Johnson contends that because he was not aware of his claims at the time of the execution of the Settlement Agreement, his claims were not "discovered," i.e., did not accrue, until he knew of the claims. (Doc. 87 at 4–5.) The discovery rule is an equitable tolling device that may pause the statute of limitations where a Plaintiff has not discovered "with reasonable diligence[,] . . . the facts underlying the cause [of action]." *See Doe v. Roe*, 955 P.2d 951, 960 (Ariz. 1998). The issue here, however, is not whether the discovery rule tolls a statute of limitations, but whether the general release provision precludes his counterclaims. In this instance, the discovery rule is inapposite, and thus Mr. Johnson cannot rely on the argument that he was not aware of the "actionable harm" until this litigation to run end around his complete release of all claims both known and unknown under the terms of the Settlement Agreement.

The next question before the Court is whether Mr. Johnson's Proposed Counterclaims existed at the time of, or before, the execution of the Settlement Agreement. If the claim existed, it is barred.

### a. Trade Secrets Misappropriation and Unjust Enrichment

Mr. Johnson is not a paragon of clarity with respect to his trade secrets misappropriation and unjust enrichment claims. Seemingly related to those claims, however, are allegations that the Settlement Agreement "did not address or anticipate

EWS's claims of ownership over the Tools."  (Doc. 77-1 at 25 ¶ 37.)  The "Tools" Mr. Johnson refers to are the several Excel workbooks that EWS claims to contain the proprietary information upon which it, in part, bases its trade secret misappropriation claim. (*See* Doc. 1; Doc. 17.)  In any event, Mr. Johnson's own allegations show he would have, or should have, known about the alleged claims before the execution of the Settlement Agreement.   (*See* Doc. 77-1 at 50–52 ¶¶ 254–268.)   Indeed, from the time of his termination from EWS's legal team, the company would have been using Mr. Johnson's alleged trade secrets to develop products and derive profit from the information without his consent.  *arrivia Inc. v. Rowley*, No. CV-23-01039-PHX-DLR, 2023 WL 7386384, at *5, *7 (D. Ariz. Nov. 8, 2023) (explaining that a trade secret misappropriation claim accrues "at the time of the initial misappropriation"); *Loiselle v. Cosas Mgmt. Grp., LLC*, 228 P.3d 934, 946 (Ariz. Ct. App. 2010); (Doc. 77-1 at 51 ¶ 262 ("EWS wrongfully acquired . . . [Mr. Johnson's] Tools . . . [when it] immediately locked him out of the system during the termination call, preventing him from retrieving his intellectual property.").[3] Therefore, the release provision in the Settlement Agreement bars Mr. Johnson's trade secrets misappropriation and unjust enrichment claims, making amendment futile.

### b.  IIED and NIED

Pieces of Mr. Johnson's IIED claim are predicated on EWS's and its attorneys' conduct during his employment at the company.  For example, Mr. Johnson contends that Ms. Cheney engaged in "extreme and outrageous conduct, including withholding bonuses, [and] wrongful termination."  (Doc. 77-1 at 20 ¶ 6.)  To the extent that the IIED claim is predicated on Ms. Cheney's conduct up until the Settlement Agreement, it is barred.  *See Alexander v. City of Mesa*, No. CV-14-00754-PHX-SPL, 2015 WL 13655673, at *10 (D. Ariz. Sept. 30, 2015) (holding a claim for IIED accrues under Arizona law "when a plaintiff knows or has reason to know of the injury which is the basis of his action" (citation

---

[3]  This allegation directly contradicts Mr. Johnson's previous sword statement that "the individual Excel spreadsheet templates . . . are not trade secrets" and that "he did not take measures to keep the indexes secret."  (Doc. 24-1 ¶¶ 4; 17 (sealed).)  Thus, even if the Settlement Agreement did not bar these claims, there are serious doubts about the plausibility of Mr. Johnson's proposed allegations in light of his prior statements.

1    omitted)), *aff'd*, 697 F. App'x 512 (9th Cir. 2017).

2        Mr. Johnson also alleges that EWS and Ms. Cheney have "targeted [Mr. Johnson's]

3    emotional well-being" by filing this lawsuit and the response to the TTAB, giving rise to

4    his NIED claim.  (Doc. 77-1 at 42, 44 ¶¶ 181, 190–91.)  These actions, while occurring

5    after the Settlement Agreement was executed, are precluded by *Noerr-Pennington* and the

6    absolute litigation privilege.  Moreover, even if these claims are not barred, Mr. Johnson

7    alleges nothing more than bare factual assertions that EWS's lawsuit and Ms. Cheney's

8    vague acts caused him emotional harm.  *Iqbal*, 556 U.S. at 678 (2009) ("Threadbare recitals

9    of the elements of a cause of action, supported by mere conclusory statements, do not

10    suffice.").  Therefore, Mr. Johnson's Proposed Counterclaims of IIED and NIED are

11    precluded.

12        At bottom, the Settlement Agreement, at least, precludes Mr. Johnson's claims for

13    trade secrets misappropriation, unjust enrichment, IIED, and NIED.  Therefore, his Motion

14    for Leave to Amend to assert those claims is denied.

15                    3.  Declaratory Relief

16        EWS argues that Mr. Johnson is not entitled to declaratory relief because he lacks

17    standing (Doc. 83 at 17–19.)  In turn, Mr. Johnson argues that he has standing to bring

18    these claims.  (Doc. 87 at 6–7.)

19        Mr. Johnson seeks two forms of declaratory relief.  First, in his sixth Proposed

20    Counterclaim, he seeks a declaration that the Privileged Chat "falls within the crime-fraud

21    exception" to the attorney-client privilege because "it involves admissions and discussions

22    regarding . . . violations of the Sherman Act."  (Doc. 77-1 at 48–49 ¶¶ 246, 251.)  Second,

23    in his ninth Proposed Counterclaim, he seeks a declaration that EWS's application to

24    register its PAZE mark is invalid.  (*Id.* at 53–55, ¶¶ 243–45.)

25        Generally, persons asserting claims in federal court "must satisfy the threshold

26    requirement imposed by Article III of the Constitution by alleging an actual case or

27    controversy."  *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983).  To establish Article

28    III standing, "an injury must be 'concrete, particularized, and actual or imminent; fairly

1    traceable to the challenged action; and redressable by a favorable ruling."   *Clapper v.*

2    *Amnesty Int'l, USA*, 568 U.S. 398, 409 (2013) (quoting *Monsanto Co. v. Geerston Seed*

3    *Farms*, 561 U.S. 139, 149 (2010)).

4                                    *a.  The Sherman Act*

5            To have standing to sue under the Sherman Act, a plaintiff must satisfy the

6    requirements of Article III standing as well as the additional requirement of antitrust

7    standing.   *See Am. Ad Mgmt., Inc. v. Gen. Tele. Co. of Cal.*, 190 F.3d 1051, 1054 (9th Cir.

8    1999).   "[C]ourts have constructed the concept of antitrust standing, under which they

9    evaluate the plaintiff's harm, the alleged wrongdoing by defendants, and the relationship

10    between them, to determine whether a plaintiff is a proper party to bring an antitrust claim."

11    *Id.* (internal citation omitted).   The factors to consider include: (1) The nature of the

12    plaintiff's alleged injury; that is, whether it was the type of injury the antitrust laws were

13    intended to forestall; (2) The directness of the injury, i.e., causation; (3) The speculative

14    measure of the harm; (4) The risk of duplicative recovery; and (5) The complexity in

15    apportioning damages.   *See Amarel v. Connell*, 102 F.3d 1494, 1507 (9th Cir. 1996).

16    Although "[n]o single factor is decisive," *R.C. Dick Geothermal Corp. v. Thermogenics,*

17    *Inc.*, 890 F.2d 139, 146 (9th Cir. 1989), an injury is necessary, *City of Oakland v. Oakland*

18    *Raiders*, 20 F.4th 441, 456 (9th Cir. 2021) ("[T]he first factor—antitrust injury—is

19    mandatory.").

20            Mr. Johnson contends that EWS's conduct involves "admissions and discussions

21    regarding ongoing or planned illegal conduct, . . . [in] violation of the Sherman Act."

22    (Doc. 77-1 at 48 ¶ 246.)   His allegations then trail off into a discussion regarding EWS's

23    use of the Privileged Chat in this litigation before concluding with a request for the Court

24    to find that the Chat is "not a trade secret."  (*Id.* at 50.)   Mr. Johnson's sixth counterclaim

25    suffers from a case of identity crisis.   It is not clear exactly what law Mr. Johnson intends

26    to use as the basis for his requested relief.   And though the allegations are not well pled,

27    taking them as true but for a moment suggests that he alleges violations of the Sherman

28    Act and "other anti-competitive practices."  (*Id.* at 48 ¶ 246.)   If this is the case, he has

utterly failed to allege any fact that would sufficiently establish antitrust injury or state a claim under the Sherman Act.  *See* " *Glen Holly Enter., Inc. v. Tektronix, Inc.*, 352 F.3d 367, 374 (9th Cir. 2003) (discussing antitrust injury); *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1197 (9th Cir. 2012) (setting forth the elements for a Section 1 claim); *Aerotec Int'l, Inc v. Honeywell Int'l, Inc.*, 4 F. Supp. 3d 1123, 1137 (D. Ariz. 2014), *aff'd*, 836 F.3d 1171 (9th Cir. 2016) (setting forth the elements for a Section 2 claim).  At any rate, Mr. Johnson has failed to allege a claim under the Sherman Act, and the Court cannot discern what other legal basis Mr. Johnson may have for bringing his sixth Proposed Counterclaim. Leave to amend to assert it is therefore denied.

### b.  The Declaration of Invalidity

EWS argues that Mr. Johnson lacks standing to seek declaratory relief to render its application to register its PAZE mark invalid.  (Doc. 83 at 19.)  Specifically, EWS contends that Mr. Johnson attempts to manufacture standing by alleging he "personally filed" the application, giving him "a particular interest in correcting the fraud carried out by EWS." (Doc. 83 at 20.)

Mr. Johnson first argues that being named in this lawsuit gives him standing to challenge the application because he has suffered injuries from litigation costs, reputational harm, and emotional distress.  (Doc. 87 at 6 (citing *MedImmune Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007)).)  He goes on to argue that the fraudulent trademark application bears his signature, which may result "in him being subpoenaed, or even named" causing reputational and person harm.  (*Id.*)  Finally, Mr. Johnson contends that by invalidating EWS's application, he "receives redressability in the form of clearing his name and reputation at the USPTO and will eliminate the lawsuit claim he has been included in as a defendant." (*Id.*)

Mr. Johnson must establish injury-in-fact—he "must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339–40 (2016) (citation modified).  Mr. Johnson argues that he has suffered injuries in the form of

litigation costs and emotional damage.  (Doc. 87 at 6.)  Nowhere in his Proposed Amended Counterclaims, however, does he allege an injury relevant to his request for a declaration of invalidity.  (*See generally* Doc. 77-1.)  Likewise, Mr. Johnson's proposed pleading does not offer allegations on traceability or redressability.  And while he may argue in his Reply brief that those facts exist, (*see* Doc. 87 at 6), the Court looks to the allegations in the proposed pleading.  *Ctr. for Biological Diversity v. United States Forest Serv.*, 746 F. Supp. 3d 749, 755 (D. Ariz. 2024).  Mr. Johnson has failed to establish any of the required elements of Article III standing for his declaratory relief claim related to EWS's PAZE application.

In addition to failing to establish the general Article III standing requirements, Mr. Johnson makes no serious effort to address the analytical framework in *Lexmark International, Inc. v. Static Control Components, Inc.*, to establish statutory standing to cancel EWS's application.  572 U.S. 118, 129–34.  Mr. Johnson must plead and prove: (1) an interest falling within the zone of interests protected by the statute; and (2) proximate causation.  *Id.*  Mr. Johnson does not allege any statute upon which his claim rests and seemingly places himself outside of the zone of interest, claiming that he "has [no] relation or interest in the P.A.Z.E. business, dealings, or outcome of the TTAB proceedings."  (Doc. 77-1 at 18 ¶ 186.)

While Mr. Johnson has not cited any proper authority upon which the Court may declare EWS's application invalid, the Court understands the request to be based on Section 13 of the Lanham Act, 15 U.S.C. § 1063(a).  Section 1063(a) provides:

> Any person who believes that he would be damaged by the registration of a mark upon the principal register . . . [may] file an opposition in the Patent and Trademark Office . . . within thirty days after the publication . . . of the mark sought to be registered.

The plain language of that statute states that the proper venue is the TTAB, not district court.  To cancel the application, he must have filed an opposition in the TTAB within thirty (30) days of the publication of EWS's application.  Mr. Johnson's ninth Proposed Counterclaim is therefore incurably infirm.  Leave to assert it is denied.

At bottom, all of Mr. Johnson's Proposed Counterclaims would be subject to

dismissal under Rule 12(b)(6).  Therefore, the Court will deny his Motion in its entirety.

### B.  EWS's Motion to Dismiss

EWS moves to dismiss all claims asserted in Mr. Johnson's First Amended Answer and Counterclaims (Doc. 57; Doc. 43.)  Mr. Johnson has alleged the following claims: (1) abuse of process against EWS; (2) abuse of process against EWS, Ms. Cheney, Mr. Durlach, Mr. Wilson, and Mr. Chen; (3) defamation against Ms. Stadler; (4) defamation against Ms. Cheney; (5) IIED against EWS; and (6) NIED against EWS (collectively, the "Counterclaims").  (Doc. 57 at 40–57 ¶¶ 139–236.)  As is evident from the titles of Mr. Johnson's claims, they contain similar allegations he also proposed in the above discussed Motion.  Therefore, relevant for the Court's discussion are *Noerr-Pennington*, the absolute litigation privilege, and the Settlement Agreement.

### 1.  *Noerr-Pennington* Doctrine and the Absolute Litigation Privilege

As discussed, *Noerr-Pennington* provides that "those who petition all departments of the government for redress are generally immune from liability."  *Empress*, 419 F.3d at 1056.   Additionally, Arizona's absolute litigation privilege provides that "[j]udges, parties, lawyers, witnesses and jurors" are absolutely privileged to publish allegedly defamatory statements "in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding" if the allegedly defamatory publication "relate[s] to, bear[s] on or [is] connected with the proceeding." *Goldman*, 462 P.3d at 1025 (citation modified).  The Court now applies these doctrines to Mr. Johnson's operative Counterclaims.

### a.  *Abuse of Process*

Mr. Johnson's alleges abuse of process against EWS and counsel based on several actions related to petitioning activities in this Court and the TTAB.  In short, Mr. Johnson contends that EWS engaged in abuse of process by: (1) including him as a Defendant in this lawsuit; (2) relying on the <old-friends.co> website as a "key component" of this action; (3) making accusations "against PAZE that are not relevant to" Mr. Johnson; (4) accusing Mr. Johnson of attempting to invalidate certain trademarks; (5) failing to properly

serve P.A.Z.E. before filing the Motion for Preliminary Injunction; (6) filing a bogus Motion for Preliminary Injunction; (7) providing an "inaccurate accounting" of Mr. Johnson's termination from EWS; (8) accusing Mr. Johnson of using EWS's confidential information and trade secrets to start the TTAB proceedings; (9) "systematically abus[ing] the document sealing process"; and (10) publishing defamatory remarks to in the TTAB proceedings.  (Doc. 57 at 41–49 ¶¶ 141–192.)

Like his proposed abuse of process claim, the common vein flowing through the operative counterclaims are that EWS and counsels' statements in the course of their petitioning activities somehow harmed him.  To reiterate, petitioning activities and defamatory statements made therein are generally protected by *Noerr-Pennington* and the absolute litigation privilege absent certain inapplicable exceptions.  *PREI*, 508 U.S. at 59–60; *Goldman*, 462 P.3d at 1025, 1033.  As was the case with Mr. Johnson's Proposed Counterclaims, he does not sufficiently allege that EWS or counsel is engaging in sham litigation or improper litigation conduct.  The Court will therefore dismiss Mr. Johnson abuse of process claims.

b.  *Defamation*

Mr. Johnson alleges EWS defamed him by making "false and damaging statements" in the TTAB, which include that Mr. Johnson conspired with Mr. O'Loughlin to steal trade secrets and extort money from EWS; Mr. Johnson authored responses in the TTAB using EWS's confidential information; and that Mr. Johnson is a registered patent agent.  (*See* Doc. 57 at 50–53 ¶ 194–206.)  To the extent that Mr. Johnson's claims are based on EWS's petitioning or filing activities before the TTAB, they will be precluded by both the *Noerr-Pennington* doctrine and the absolute litigation privilege.  *PRE*, 508 U.S. at 59–60; *Goldman*, 462 P.3d at 1025.

The allegations separate from those related to the TTAB are that, "upon information and belief," EWS and Ms. Cheney have published defamatory statements to "individuals within [Mr. Johnson's] professional circle," which "ha[s] likely contributed to the damage to [Mr. Johnson's] reputation."  (Doc. 57 at 52–53 ¶¶ 208–214.)  Mr. Johnson admits that

he "does not currently possess direct evidence of all defamatory statements made by Ms. Cheney and EWS, [as] such evidence is expected to emerge through the discovery process" and that Ms. Cheney and EWS's "control over much the relevant information" prevents him from substantiating his claim prior to discovery. (*Id.* at 53 ¶¶ 213–14.) These allegations are legal conclusions couched as factual allegations that the Court does not credit as true. *See Iqbal*, 556 U.S. at 678–679; *see also Bullseye Glass Co. v. Brown*, 366 F. Supp. 3d 1190, 1198 (finding allegations that the defendant "disseminated false and misleading maps purporting to show results of the moss study in an effort to falsely paint [the plaintiff] as the epicenter of industrial pollution in Portland" to be a legal conclusion couched as a factual allegations because "[the plaintiff] offer[ed] no specific allegations of fact to plausibly support" that characterization).

Additionally, Mr. Johnson's allegations show that he is attempting to conduct a fishing expedition in hopes of finding evidence supporting his claims. *DM Rsch., Inc. v. Coll. Of Am. Pathologists*, 170 F.3d 53, 55 (1st Cir. 1999) ("Conclusory allegations in a complaint, if they stand alone, are a danger sign that the plaintiff is engaged in a fishing expedition.")  A complaint is not a vehicle to facilitate expeditions in hope that some fact supporting an allegation will be uncovered. *See Creech v. Kind Lending LLC*, CV-22-00871-PHX-SMB, 2024 WL 4591811, at *2–3 (D. Ariz. Oct. 28, 2024) (finding that the plaintiff was attempting to conduct a fishing expedition where she alleged that, without discovery, she could not "fully and accurately allege the facts of the case").[4]

The price of entry to discovery is for Mr. Johnson to have pled enough factual material such that further proceedings are warranted.  He has failed to do so here, as he merely alleges that discovery would help him overcover the facts necessary to substantiate his claims. *See Painsolvers, Inc. v. State Farm Mut. Auto. Ins.*, 732 F. Supp. 2d 1107, 1124

---

[4] Additionally, Mr. Johnson offers no more than conclusory allegations regarding the harm of the alleged defamatory remarks.  (*See* Doc. 57 at 51 ¶ 205 ("[Mr. Johnson] suffered severe damages to his professional reputation . . . . This defamation has significantly harmed [Mr. Johnson's] career prospects.").)  Axiomatic to most claims for defamation are sufficient allegations that plaintiff's reputation suffered harm. *See Rogers v. Mroz*, 502 P.3d 986, 990 (Ariz. 2022) ("[A] speaker may be liable for damages if a falsehood is published that injures the plaintiff's reputation.").

1    (D. Haw. 2010) ("Plaintiff's opposition amounts to a claim that [the defendant] is

2    withholding documents that [the plaintiff] '*imagines* might support its defamation claim'

3    and [is] a fishing expedition in search of additional documents."); *cf. Creech*, 2024 WL

4    4591811, at *3.

5         At bottom, Mr. Johnson has failed to state a claim for defamation.

6                              c.  *IIED and NIED*

7         Mr. Johnson alleges that EWS and Ms. Cheney inflicted intentional emotional

8    distress upon him when they "[d]efam[ed] him within his professional community" and

9    "[h]arass[ed] him through baseless legal action."  (Doc. 57 at 54 ¶ 220.)  Although Mr.

10   Johnson makes no specific allegations about precisely when the alleged defamatory

11   remarks were made.  (*See generally id.*)  Similarly, Mr. Johnson alleges that EWS

12   negligently caused him emotional harm when it "submit[ed] and reli[ed] upon fraudulent

13   evidence in litigation proceedings" and "initiated [this] baseless lawsuit against [him] at a

14   particularly vulnerable time."  (*Id.* ¶¶ 231–232.)

15        As alleged, Mr. Johnson's claims for IIED and NIED are based on EWS's

16   petitioning activities in this Court and before the TTAB.  Like his Proposed Counterclaims,

17   his operative counterclaims are precluded because EWS enjoys *Noerr-Pennington*

18   immunity and protection by the absolute litigation privilege for its petitioning activities.

19   *See Empress*, 419 F.3d at 1056; *See Goldman*, 462 P.3d at 1025.

20                         2.  The Settlement Agreement

21        EWS argues that Mr. Johnson's IIED and NIED claims are barred to the extent that

22   those claims arise from EWS's allegedly tortious activity as of the date of the Settlement

23   Agreement.  (Doc. 46 at 8.)  Mr. Johnson responds that the Settlement Agreement only

24   effectuated the release of his wrongful termination claims.  (Doc. 48 at 5.)

25        The Court has already discussed the meaning and effect of the release provision in

26   the Settlement Agreement.  To reiterate, that provision "applies to all demands, disputes,

27   complaints, causes of action, and claims, known and unknown for relief, that [Mr.] Johnson

28   may have against the Released Parties as of the date of execution of the Agreement.  (Doc.

17-1 at 23–24.)

The scope of the provision is not only limited to Mr. Johnson's wrongful termination claim. *See Moser*, 2016 WL 6476291, at *3 ("The very broad language of the Release makes clear that the parties intended to release all claims that arose before the state of signing, even unknown claims.").[5]  Therefore, EWS is correct in that the provision bars Mr. Johnson's IIED and NIED claims to the extent that they are based on EWS's allegedly tortious acts occurring on the date of, or before, the execution of the Settlement Agreement.

## IV.    CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** denying Mr. Johnson's Motion for Leave to File Second Amended Counterclaims (Doc. 77).

**IT IS FURTHER ORDERED** granting EWS's Motion to Dismiss (Doc. 46).  The counterclaims asserted in Mr. Johnson's First Amended Answer and Counterclaims (Doc. 57; Doc. 43) are dismissed **with prejudice**.

Dated this 18th day of July, 2025.

_____
Honorable Susan M. Brnovich
United States District Judge

---

[5]  The contractual language in the Settlement Agreement is unambiguous.  Consequently, the Court will not look to Mr. Johnson's various comments on the pre-execution draft of the Agreement to discern meaning or intent.  *See McLane & McClane*, 735 F.2d at 1195.