**KILPATRICK TOWNSEND & STOCKTON LLP**
Erick Durlach, Arizona Bar No. 024253
*edurlach@ktslaw.com*
Dennis L. Wilson, California Bar No. 155407
(admitted *pro hac vice*)
*dwilson@ktslaw.com*
Sara K. Stadler, New York Bar No. 2620276
(admitted *pro hac vice*)
*sstadler@ktslaw.com*
Kristin M. Adams, Virginia Bar No. 92069
(admitted *pro hac vice*)
*kmadams@ktslaw.com*
6909 E. Greenway Parkway, Suite 100
Scottsdale, Arizona 85254-2149
Tel: (602) 726-7319
Fax: (623) 321-1009

**BRYAN CAVE LEIGHTON PAISNER LLP**
George C. Chen, Arizona Bar No. 019704
*george.chen@bclplaw.com*
Jacob A. Maskovich, Arizona Bar No. 021920
*jamaskovich@bclplaw.com*
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
Tel: (602) 364-7000
Fax: (602) 364-7070

Attorneys for Plaintiff
Early Warning Services, LLC

## UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Early Warning Services, LLC, | Case No. CV-24-01587-PHX-SMB |
| Plaintiff, | |
| v. | **PLAINTIFF EARLY WARNING SERVICES, LLC'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT BRANDON O'LOUGHLIN AND SUPPORTING MEMORANDUM** |
| Warren Vurl Johnson, Brandon O'Loughlin and P.A.Z.E., LLC, | |
| Defendants. | |

1

# **<u>TABLE OF CONTENTS</u>**

2

3

TABLE OF AUTHORITIES .................................................................................. iii

I.    BACKGROUND .......................................................................................... 1

    A.    Defendants' Scheme to Extract Payment from EWS ...................... 1

    B.    EWS's Prior Rights in Its PAZE and Ƶ Marks ............................. 3

    C.    Lack of Trademark Rights in P.A.Z.E.'s Alleged
        PAƵE and PAZE Marks ................................................................ 4

    D.    Default by O'Loughlin and P.A.Z.E. ............................................ 4

II.    ARGUMENT ............................................................................................. 6

    A.    Legal Standard .............................................................................. 8

    B.    The Court Has Subject Matter Jurisdiction Over This
        Dispute. ......................................................................................... 9

    C.    The Court Has Personal Jurisdiction Over
        O'Loughlin. .................................................................................. 9

    D.    The *Eitel* Factors Strongly Favor Entry of Default
        Judgment. ................................................................................... 10

        1.    The First, Sixth, and Seventh *Eitel* Factors
            Favor Default Judgment Because O'Loughlin
            Consciously Decided Not to Defend EWS's
            Claims. ............................................................................ 10

        2.    The Second and Third *Eitel* Factors Favor
            Default Judgment Because EWS's Complaint
            and Supporting Evidence Establish
            O'Loughlin's Liability. ................................................... 11

            a.    EWS Has Established O'Loughlin's
                Liability for Trade Secret
                Misappropriation. ..................................... 11

            b.    EWS Has Established O'Loughlin's
                 Liability for Cybersquatting and Unjust
                Enrichment. .............................................. 14

            c.    EWS is Entitled to a Declaration of
                 Noninfringement of P.A.Z.E.'s Alleged
                 PAƵE and PAZE Marks. ......................... 15

        3.    The Fourth *Eitel* Factor Favors Default
            Judgment Because O'Loughlin's Conduct
            Warrants the Damages EWS Seeks. ............................... 19

i

4. The Fifth *Eitel* Factor Favors Default Judgment Because the Facts are Undisputed. ......................20

E. EWS Is Entitled to Injunctive, Declarative, and Monetary Relief on Its Claims Against O'Loughlin. ....................20

1. A Permanent Injunction is Appropriate. ...............................20

2. This Court Should Issue a Declaratory Judgment. ..............................................................21

3. This Court Should Order O'Loughlin to Pay Actual Damages, Exemplary Damages, and Interest if P.A.Z.E. Fails to Timely Satisfy the Judgment Against It. ........................................................22

5. This Court Should Award EWS Its Attorneys' Fees Incurred in Preparing This Motion. ...............................24

6. This Court Should Award EWS Its Taxable Costs. ............................................................................25

III. CONCLUSION ....................................................................26

CERTIFICATE OF SERVICE ....................................................28

# TABLE OF AUTHORITIES

**Cases**

*A&C Trade Consultants, Inc. v. Alvarez*,
No. 18-cv-05356-MMC, 2021 WL 4749436 (N.D. Cal. Oct. 12, 2021) ............... 25

*Bank of Am., N.A. v. Carver*,
No. CV-24-08002-PCT-DGC, 2024 WL 4566689 (D. Ariz.
Oct. 24, 2024) ........................................................................................... 8, 10, 20

*Berkadia Real Est. Advisors LLC v. Wadlund*,
No. CV-22-00049-TUC-CKJ, 2022 WL 3213113 (D. Ariz. Aug. 9, 2022) ........... 12

*Capitol Specialty Ins. Corp. v. Chaldean LLC*,
No. CV-21-00342-PHX-MTL, 2022 WL 2953062 (D. Ariz.
July 26, 2022) ..................................................................................................... 22, 23

*Corcamore, LLC v. SFM, LLC*,
978 F.3d 1298 (Fed. Cir. 2020) ................................................................... 19

*Derek Andrew, Inc. v. Poof Apparel Corp.*,
528 F.3d 696 (9th Cir. 2008) ....................................................................... 24

*Doyle v. Al Johnsons Swedish Rest. & Butik, Inc.*,
101 U.S.P.Q.2d 1780 (T.T.A.B. 2012) ........................................................ 19

*DSPT Int'l, Inc. v. Nahum*,
624 F.3d 1213 (9th Cir. 2010) ................................................................ 14, 15

*eBay Inc. v. MercExchange, LLC*,
547 U.S. 388 (2006) ..................................................................................... 21

*Eitel v. McCool*,
782 F.2d 1470 (9th Cir. 1986) ....................................................................... 8

*Fire Sec. Elec. & Commc'ns Inc. v. Nye*,
No. CV-23-02730-PHX-DLR, 2024 WL 620813 (D. Ariz. Feb. 14, 2024) ..... 11, 12

*HTS, Inc. v. Boley*,
954 F. Supp. 2d 927 (D. Ariz. 2013) ................................................... passim

*In re Bahramian*,
Ser. No. 87444322, 2019 WL 5290184 (T.T.A.B. Sept. 24, 2019) ................ 18

*Jason Scott Collection, Inc. v. Trendily Furniture, LLC*,
68 F.4th 1203 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 550 (2024) ................ 23

*Landstar Ranger, Inc. v. Parth Enters.*,
    725 F. Supp. 2d 916 (C.D. Cal. 2010) ............................................................. 11, 20

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014) ...................................................................................... 19

*McDermott v. San Fran. Women's Motorcycle Contingent*,
    81 U.S.P.Q.2d 1212 (T.T.A.B. 2006) ............................................................. 19

*PepsiCo, Inc. v. Cal. Sec. Cans*,
    238 F. Supp. 2d 1172 (C.D. Cal. 2002) ................................................ 11, 16, 20

*Philanthropist.com, Inc. v. Gen. Conf. Corp. of Seventh-Day Adventists*,
    2021 U.S.P.Q.2d 643 (T.T.A.B. 2021), *aff'd*, No. 2021-2208,
    2022 WL 3147202 (Fed. Cir. Aug. 8, 2022) (per curiam) .................................... 19

*Premier Funding Grp. v. Aviva Life & Annuity Co.*,
    No. CV-14-01633-PHX-DGC, 2014 WL 6885732 (D. Ariz. Dec. 8, 2014) .... 14, 15

*Radiance Found., Inc. v. N.A.A.C.P.*,
    786 F.3d 316 (4th Cir. 2015) ......................................................................... 18

*United States v. Taylor*, No. CV-23-00506-PHX-SMB, 2024 WL
    4837021 (D. Ariz. Nov. 20, 2024) ............................................................... 8, 11

*Universal Bldg. Maint. LLC v. Calcote*,
    No. SACV 22-1125 JVS (DFMx), 2022 WL 18397628 (C.D. Cal.
    Nov. 7, 2022) ................................................................................................ 21

**Statutes**

15 U.S.C.
    § 1063 ........................................................................................................ 19
    § 1065 .......................................................................................................... 3
    § 1115(b) ....................................................................................................... 3
    § 1119 ........................................................................................................... 6
    § 1121 ........................................................................................................... 9
    § 1125(a) ................................................................................................. passim
    § 1125(a)(1)(A) ............................................................................................ 18
    § 1125(a)(1)(A) ............................................................................................ 16
    § 1125(d) ....................................................................................................... 9

18 U.S.C.
    § 1836 *et seq.* ........................................................................................... 9, 11
    § 1836(b)(3)(D) ............................................................................................ 24
    § 1836(c) ....................................................................................................... 9
    § 1839(3) ...................................................................................................... 13
    § 1839(3)(B) ................................................................................................. 13
    § 1839(5) ...................................................................................................... 13

§ 1839(6)(A) ............................................................................................. 13

28 U.S.C.
§ 1331 ...................................................................................................... 9
§ 1338(a) ................................................................................................. 9
§ 1367(a) ............................................................................................ 9, 10
§ 1961 ...................................................................................................... 8
§ 2201(a) ................................................................................. 6, 9, 16, 21

A.R.S.
§ 44-401 *et seq.* .................................................................................. 9, 12
§ 44-401(2) ............................................................................................ 13
§ 44-401(4) ............................................................................................ 13
§ 44-403 ............................................................................................ 8, 25
§ 44-403(B) ........................................................................................... 27
§ 44-404(3) ........................................................................................... 27

**Rules**

Fed. R. Civ. P.
12(a)(4)(A) ........................................................................................ 6, 10
54(c) ...................................................................................................... 23
54(d)(1) ................................................................................................ 25
55(b) ............................................................................................ 6, 8, 10

LRCiv
54.1(d) .................................................................................................. 25
54.1(e)(1) ............................................................................................. 25

**Other Authorities**

USPTO,
*Trademark Manual of Examining Procedure* ("TMEP") (Nov. 2024),
available at https://tmep.uspto.gov/RDMS/TMEP/current#/current/
TMEP-1300d1e30.html
§ 1301.01 .............................................................................................. 18
§ 1301.01(a) .......................................................................................... 18
§ 1301.01(a)(i) ...................................................................................... 18
§ 1301.01(a)(ii) ..................................................................................... 18

## I.     BACKGROUND

### A.     Defendants' Scheme to Extract Payment from EWS

Defendant Brandon O'Loughlin ("O'Loughlin") directly or indirectly formed Defendant P.A.Z.E., LLC ("P.A.Z.E.") on January 26, 2023, and is its Member and Manager. Compl. ¶ 16, Dkt. 1 at 5. Defendant Warren Vurl Johnson ("Johnson") is the former Senior Intellectual Property Counsel for Plaintiff Early Warning Services, LLC ("EWS"), and a longtime acquaintance of O'Loughlin's. Compl. ¶ 5, Dkt. 1 at 2; Decl. of Salman Zefar ("Zefar Decl.") ¶¶ 7–8, Ex. 1, Dkt. 104-2 at 3–11. EWS terminated Johnson's at-will employment on January 19, 2023. *Id.* ¶ 9, Dkt. 1 at 3; *see* Decl. Tracy Cheney Supp. Mot. Prelim. Inj. ("Cheney Decl.") Ex. 18 (¶ 11), Dkt. 18 at 7.

EWS's uncontested allegations establish that in the months before Johnson's termination, Johnson enlisted O'Loughlin's help with a scheme to extract money from EWS using EWS's trade secrets and privileged and confidential information, which Johnson had exfiltrated from EWS—including by emailing EWS's documents to his personal email account. Compl. ¶¶ 11, 40, 55, Dkt. 1 at 3–4, 8, 10. In furtherance of this scheme, upon information and belief, Johnson informed O'Loughlin that EWS was interested in registering certain domain names in connection with EWS's launch of its PAZE service. *Id.* ¶ 11(a), Dkt. 1 at 3. Within a week of Johnson's termination, O'Loughlin registered those domain names before EWS could do so, and then formed P.A.Z.E. *Id.* ¶¶ 11(a), (b), 37, 38, 55, 57–60, Dkt. 1 at 3, 8, 10–11.

O'Loughlin used P.A.Z.E. to create a sham gripe website and social media accounts targeting EWS's business and reputation, then applied to register **PAŻE** and PAZE as service marks with the United States Patent and Trademark Office ("USPTO") in P.A.Z.E.'s name, allegedly with Johnson's assistance. *Id.* ¶¶ 11(b), (c), 61, 66–69, Dkt. 1 at 3–4, 11, 14. Having thus laid the groundwork, O'Loughlin sent letters on P.A.Z.E. letterhead to EWS's counsel threatening "lawfare" against EWS, and threatening EWS's business and reputation, if EWS did not purchase P.A.Z.E.

1    and its various "assets." *Id.* ¶¶ 11(d), 79–82, 136, Dkt. 1 at 4, 16–17, 25; Cheney Decl.

2    Exs. 8, 9, Dkt. 17-3 at 22–29.

3        O'Loughlin followed through on these threats by commencing judicial

4    proceedings on P.A.Z.E.'s behalf in the USPTO's Trademark Trial and Appeal Board

5    ("TTAB") opposing EWS's PAZE application and challenging the registration of

6    EWS's **Ƶ** mark (the "TTAB Proceedings"), in both cases based on P.A.Z.E.'s claimed

7    rights in the service marks **PAƵE** and PAZE. Compl. ¶¶ 11(e), 70, 137, 140, Dkt. 1

8    at 4, 14–15, 25; Cheney Decl. Exs. 10, 12, Dkt. 17-3 at 4–152; Dkt. 17-4.

9        O'Loughlin also repeatedly posted screen shots of a privileged Microsoft

10   Teams chat between Johnson and EWS's General Counsel, Tracy Cheney (the

11   "Teams Chat") on P.A.Z.E.'s website and social media accounts, and in P.A.Z.E.'s

12   public filings in the TTAB. Compl. ¶¶ 73–75, Dkt. 1 at 15; Cheney Decl. Exs. 10, 12,

13   16, Dkts. 19-1, 19-2, 19-3 (under seal). When EWS sought to shield its privileged

14   information from public view by filing motions to seal, O'Loughlin repeatedly caused

15   P.A.Z.E. to repost the Teams Chat in the TTAB Proceedings, even after the TTAB

16   sealed P.A.Z.E.'s filings containing the Teams Chat. Compl. ¶ 76, Dkt. 1 at 16;

17   Cheney Decl. Ex. 14, Dkt. 19-3 (under seal).

18       Prior to initiating this lawsuit, EWS suspected a connection between Johnson,

19   O'Loughlin, and P.A.Z.E. On June 12, 2024, and June 17, 2024, this connection was

20   confirmed when P.A.Z.E. filed documents in the TTAB Proceedings containing

21   metadata showing "Warren Johnson" as the author of those documents, which were

22   purportedly signed by O'Loughlin. Compl. ¶ 77 & Ex. A, Dkt. 1 at 16, 32–34. EWS

23   filed its Complaint against Johnson, O'Loughlin, and P.A.Z.E. on June 28, 2024 (Dkt.

24   1) and personally served Johnson on July 1, 2024. Dkt. 11. After locating O'Loughlin,

25   EWS personally served O'Loughlin and P.A.Z.E. on September 11, 2024. Dkts. 33,

26   34.

27       Since then, EWS has continued to diligently investigate its claims, and has

28   identified additional connections between Johnson, O'Loughlin, and P.A.Z.E.,

including emails between Johnson and O'Loughlin dating to 2015 and additional metadata showing that the same user ("warre") created *both* (a) documents filed with P.A.Z.E.'s Application Serial No. 98252022 to register the alleged **PAŻE** mark *and* (b) Johnson's opposition to EWS's motion to dismiss his counterclaims (Dkt. 48). Declaration of Paras Shah ("Shah Decl.") ¶¶ 2–5, Exs. 1–2, Dkt. 104-1 at 2, 4–7. All this evidence shows that Defendants are working together to perpetrate the scheme alleged in EWS's Complaint.

**B.    EWS's Prior Rights in Its PAZE and Ż Marks**

Defendants' scheme, in part, involves challenging EWS's PAZE and Ż marks, in which EWS enjoys priority. *First*, on April 5, 2016, EWS applied to register its Ż mark under Application Serial No. 86965192 for various financial transaction services in Class 36. Compl. ¶ 146, Dkt. 1 at 26; *see* Cheney Decl. Ex. 11, Dkt. 17-3 at 154–59. EWS first used its Ż mark in United States commerce on August 28, 2016. Compl. ¶ 147, Dkt. 1 at 26. EWS's Ż application subsequently matured into Registration No. 5476070, which issued on May 22, 2018, and that registration has become incontestable.[1] Compl. ¶¶ 146, 150, Dkt. 1 at 26. EWS's ż mark is inherently distinctive for EWS's services under the mark and, thus, is valid and protectable. Compl. ¶ 149, Dkt. 1 at 26. EWS owns prior rights in its Ż mark. *Id.* ¶ 148, Dkt. 1 at 26.

*Second*, on November 9, 2022, EWS applied to register its PAZE mark under Application Serial No. 97669754 for various financial transaction services in International Class 36. Compl. ¶ 142, Dkt. 1 at 25; *see* Cheney Decl. Ex. 2, Dkt. 17-1 at 17–21. EWS first used its PAZE mark in United States commerce on March 26,

---

[1] Section 15 of the Lanham Act, 15 U.S.C. § 1115(b), provides that incontestable registrations

> shall be conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce . . . . on or in connection with the goods or services specified in the affidavit filed under [15 U.S.C. § 1065].

2023. Compl. ¶ 143, Dkt. 1 at 25. EWS's PAZE mark is inherently distinctive for EWS's services under the mark and, thus, is valid and protectable. Compl. ¶ 146, Dkt. 1 at 26. EWS owns prior rights in its PAZE mark. *Id.* ¶ 144, Dkt. 1 at 26.

### C.    Lack of Trademark Rights in P.A.Z.E.'s Alleged **PAŻE** and PAZE Marks

Neither O'Loughlin nor P.A.Z.E. owns any federal or state registrations covering P.A.Z.E.'s alleged **PAŻE** mark or PAZE mark.[2] *Id.* ¶ 151, Dkt. 1 at 26. In connection with P.A.Z.E.'s applications to register its alleged **PAŻE** and PAZE marks with the USPTO, O'Loughlin represented to the USPTO that P.A.Z.E. began using those marks to provide "financial information" and "online instruction" on P.A.Z.E.'s website at https://www.paze.website[3] on January 23, 2023. Cheney Decl. Ex. 12, Dkt. 17-4 at 10 (¶¶ 23–25). In fact, as discussed below, the P.A.Z.E. sham gripe site and O'Loughlin's related activities do not constitute *bona fide* use of the alleged **PAŻE** and PAZE marks in commerce in connection with any "services" as contemplated by the Lanham Act. Compl. ¶ 152, Dkt. 1 at 26. This means that O'Loughlin and P.A.Z.E. lack trademark rights in P.A.Z.E.'s alleged **PAŻE** and PAZE marks, neither party is entitled to registration of those marks, and neither can state plausible claims against EWS for infringement.[4] *Id.*

### D.    Default by O'Loughlin and P.A.Z.E.

On October 1, 2024, O'Loughlin and P.A.Z.E. jointly moved to dismiss EWS's Complaint. Dkt. 38. On October 3, 2024, the Court struck this motion, stating that O'Loughlin cannot represent P.A.Z.E. in federal court, as he is not a licensed attorney.

---

[2] P.A.Z.E.'s alleged **PAŻE** mark is a stylized version of EWS's PAZE mark and contains a colorable imitation of EWS's **Ż** mark. Compl. ¶ 139, Dkt. 1 at 25.

[3] This website was taken down following the Court's issuance of its preliminary injunction order on December 4, 2024. *See* Dkt. 70.

[4] As discussed *infra* at footnote 8, both O'Loughlin and P.A.Z.E. also lack standing to bring the TTAB Proceedings because neither can plausibly allege a cognizable legal interest potentially impaired by EWS's registration of its PAZE and **Ż** marks.

Dkt. 40 at 1. The Court's Order gave P.A.Z.E. "30 days to hire counsel and file a new motion to dismiss or an answer" and gave O'Loughlin "14 days to refile his motion to dismiss on his own behalf." *Id.* at 2. O'Loughlin refiled his own motion to dismiss on October 11, 2024 (Dkt. 45), but P.A.Z.E. neither appointed counsel nor answered. The Clerk of Court therefore entered default by P.A.Z.E. on November 20, 2024. Dkts. 61, 62.

EWS moved for default judgment on its claims against P.A.Z.E. on January 28, 2025. Dkt. 104. The Court granted the motion on July 25, 2025, issuing an order:

- entering default judgment against P.A.Z.E. (Dkt. 208 at 8);
- permanently enjoining P.A.Z.E. from "acquiring, possessing, using, or disclosing any of Plaintiff's trade secrets and privileged and confidential information, including a privileged Microsoft Teams chat between Defendant Warren Vurl Johnson and Plaintiff's General Counsel, Tracy Cheney that occurred on or around November 3, 2022; and (b) registering, acquiring, renewing, maintaining, or using any domain names containing Plaintiff's trademarks or service marks, including but not limited to the PAZE mark or confusingly similar versions of it" (*id.* at 8–9);
- ordering P.A.Z.E. to pay to EWS "an award in the amount of $68,850.60, consisting of (i) Plaintiff's actual damages of $22,950.20 and (ii) exemplary damages of $45,900.40, owing to Defendant P.A.Z.E.'s acts of willful and malicious misappropriation of Plaintiff's trade secrets and privileged and confidential information" (*id.* at 9);
- ordering P.A.Z.E. to pay to EWS "interest on the foregoing award of $68,850.60 accruing between the date of this Order and P.A.Z.E.'s payment of that amount to Plaintiff" (*id.*);
- ordering EWS to "submit documentation and a declaration to substantiate its requested [attorneys'] fees for the Court's consideration" (*id.* at 10);
- declaring and adjudging that EWS does "not infringe any trademark rights

5

asserted by Defendant P.A.Z.E. in its alleged **PAŽE** and PAZE marks," based on detailed factual findings concerning EWS's and P.A.Z.E.'s respective trademark rights (*id.* at 9–10);

- determining "that no just reason exists to delay the entry of this Judgment" (*id.* at 10);

- directing the United States Patent and Trademark Office "to invalidate Defendant P.A.Z.E.'s pending Application Serial No. 98255290 pursuant to 15 U.S.C. § 1119" (*id.*); and

- retaining jurisdiction "for the purpose of making any further orders necessary or proper for the enforcement of this Order and Judgment and the punishment of any violations thereof. *Id.*

On August 6, 2025, EWS submitted the Declaration of Darin J. Gibby establishing its attorneys' fees incurred in connection with preparing and filing its Motion for Default Judgment against P.A.Z.E. Dkt. 215.

On May 12, 2025, the Court denied O'Loughlin's motion to dismiss. Dkt. 141. O'Loughlin failed to answer the Complaint "within 14 days after notice of the court's action," *see* Fed. R. Civ. P. 12(a)(4)(A), so EWS moved for entry of default by O'Loughlin on June 13, 2025. Dkt. 168. The Clerk of Court entered this default on June 16, 2025. Dkt. 171. EWS now moves for default judgment on its claims against O'Loughlin under Federal Rule of Civil Procedure 55(b).

## II.    <u>ARGUMENT</u>

The Complaint's undisputed averments and the record establish O'Loughlin's liability on EWS's claims against O'Loughlin for misappropriation of trade secrets, cybersquatting, and unjust enrichment and also support EWS's entitlement to a declaration of noninfringement of P.A.Z.E.'s alleged **PAŽE** and PAZE marks, in which O'Loughlin may claim an ownership interest, under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201(a), the Lanham Act, 15 U.S.C. § 1125(a), and Arizona law. *See* Default J., Dkt. 208 at 5 (finding "[t]he undisputed averments in

EWS's Complaint and the record establish P.A.Z.E.'s liability on EWS's claims against P.A.Z.E. for misappropriating trade secrets and unjust enrichment" and "support EWS's entitlement to a declaration of noninfringement").

O'Loughlin's default and the record therefore entitle EWS to default judgment on each of EWS's claims against O'Loughlin, as well as the following relief:

1.    A permanent injunction prohibiting O'Loughlin from: (a) acquiring, possessing, using, or disclosing any of EWS's trade secrets and privileged and confidential information, including the Teams Chat; and (b) registering, acquiring, renewing, maintaining, or using any domain names containing EWS's PAZE mark or confusingly similar versions of it;

2.    An order requiring O'Loughlin to transfer the remaining Accused Domain Names and any other domain names owned or controlled by O'Loughlin containing any of EWS's marks—including, without limitation, EWS's PAZE mark—or any confusingly similar variations of any of them, to EWS;

2.    A declaratory judgment of noninfringement finding that (a) EWS's PAZE and $\mathbf{Z}$ marks are valid and protectable; (b) as between EWS and O'Loughlin, EWS has prior rights in its PAZE and $\mathbf{Z}$ marks; (c) O'Loughlin lacks trademark rights in P.A.Z.E.'s alleged **PAŻE** and PAZE marks;[5] and therefore (d) use of EWS's PAZE and $\mathbf{Z}$ marks does not infringe O'Loughlin's rights;

3.    If P.A.Z.E. fails to satisfy the judgment against it within thirty (30) days of the Court's order on this Motion, actual damages in the amount of $22,950.20 on EWS's trade secret, cybersquatting, and unjust enrichment claims; exemplary damages of twice that amount ($45,900.40) because of O'Loughlin's willful and malicious acts of misappropriation, pursuant to the Arizona Uniform Trade Secrets Act ("AUTSA"), A.R.S. § 44-403; and an award of post-judgment interest on any

---

[5] The Complaint seeks invalidation of P.A.Z.E.'s Application Serial Nos. 98252022 and 98255290 as well, but those applications were abandoned on October 2, 2024, and January 30, 2025, respectively.

1    monetary damages awarded under 28 U.S.C. § 1961;[6]

2        4.    An award of EWS's attorneys' fees incurred in preparing and supporting

3    this Motion; and

4        5.    An award of EWS's taxable costs in the amount of $1,365.60, incurred

5    in connection with EWS's attempts to personally serve O'Loughlin.

6    *See* Default J., Dkt. 208 at 8–10 (entry of judgment against P.A.Z.E.).

7        **A.    Legal Standard**

8        A default judgment under Rule 55(b) is appropriate because the Court has both

9    subject matter jurisdiction and personal jurisdiction over O'Loughlin, and because

10   that relief is appropriate under the seven factors in *Eitel v. McCool*, 782 F.2d 1470

11   (9th Cir. 1986):

12       (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's
         substantive claim, (3) the sufficiency of the complaint, (4) the sum of
13       money at stake in the action; (5) the possibility of a dispute concerning
         material facts; (6) whether the default was due to excusable neglect, and
14       (7) the strong policy underlying the Federal Rules of Civil Procedure
         favoring decisions on the merits.
15

16   *Id.* at 1471–72.[7] "These *Eitel* factors are often analyzed together and require the court

17   to consider whether the complaint states a plausible claim for relief under the Rule 8

18   pleading standards." *Bank of Am., N.A. v. Carver*, No. CV-24-08002-PCT-DGC, 2024

19   WL 4566689, at *2 (D. Ariz. Oct. 24, 2024) (citations omitted). Thus, "[t]he court

20   must accept the allegations of the complaint as true when applying these *Eitel*

21   factors." *Id.* Here, those factors heavily weigh in favor of default judgment.

22

23

_____

24   [6] The Court ordered P.A.Z.E. to "pay to Plaintiff in an award in the amount of
     $68,850.60," consisting of the same amounts in actual and exemplary damages. Dkt.
25   208 at 9. While EWS seeks the same monetary relief against O'Loughlin in the event
     P.A.Z.E. does not satisfy the judgment against it, EWS does *not* seek a double
26   recovery of this amount.

27   [7] "[W]hile some districts' local rules impose additional requirements for default
     judgment, the District of Arizona does not." *United States v. Taylor*,
28   No. CV-23-00506-PHX-SMB, 2024 WL 4837021, at *2 (D. Ariz. Nov. 20, 2024).

**B.     The Court Has Subject Matter Jurisdiction Over This Dispute.**

EWS's Complaint asserts claims against O'Loughlin under the Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1836 *et seq.*; the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d); the Federal Declaratory Judgment Act, 28 U.S.C. § 2201(a); and the Lanham Act, 15 U.S.C. § 1125(a). Compl. ¶¶ 88–103, 122–55, Dkt. 1 at 18–20, 23–27. The Court has subject matter jurisdiction over these federal claims under 28 U.S.C. § 1331, as well as under 15 U.S.C. § 1121, 18 U.S.C. § 1836(c), and 28 U.S.C. §§ 1338(a) and 2201(a).

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1367(a) over EWS's state law claims for misappropriation of trade secrets under AUTSA, A.R.S. § 44-401 *et seq.*, and unjust enrichment, as those claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a); *see* Compl. ¶¶ 104–13, 132–34, Dkt. 1 at 20–21, 24. The Court has subject matter jurisdiction over the claims in suit. *See* Default J., Dkt. 208 at 5 ("The Court has . . . subject matter jurisdiction over the claims in this dispute . . . .").

**C.     The Court Has Personal Jurisdiction Over O'Loughlin.**

O'Loughlin is an Arizona resident with an address of 1317 West 13th Place, Tempe, Arizona 85281. Dkt. 33 (affidavit of service); Mot. to Dismiss Compl., Dkt. 45 at 39. Through this litigation, EWS has served each of its filings on all three of the Defendants, and to date, no hard copy or electronic correspondence with or to O'Loughlin at his known contact information has been returned as undeliverable. Decl. of Kristin M. Adams ¶¶ 13, 14, Dkt. 225-1 at 4. This Court has personal jurisdiction over O'Loughlin.

**D.     The *Eitel* Factors Strongly Favor Entry of Default Judgment.**

   **1.     The First, Sixth, and Seventh *Eitel* Factors Favor Default Judgment Because O'Loughlin Consciously Decided Not to Defend EWS's Claims.**

Each of the first, sixth, and seventh *Eitel* factors favors entry of default judgment. Taking the sixth *Eitel* factor first, after the Court struck O'Loughlin's and P.A.Z.E.'s joint motion to dismiss and ordered P.A.Z.E. to appoint counsel, Dkt. 40 at 1, 2, P.A.Z.E. did not comply, but O'Loughlin subsequently moved to dismiss in his own name, Dkt. 45, establishing he acknowledged and understood the Court's Order. The Court subsequently denied O'Loughlin's motion to dismiss. Dkt. 141. When O'Loughlin failed to answer the Complaint "within 14 days after notice of the court's action," *see* Fed. R. Civ. P. 12(a)(4)(A), EWS moved for entry of default by O'Loughlin. Dkt. 168. The Clerk of Court entered this default on June 16, 2025. Dkt. 171. Under these circumstances, there can be no question of excusable neglect.

Turning to prejudice under the first *Eitel* factor, "[t]his factor favors default judgment where the defendant fails to answer the complaint because the plaintiff 'would be denied the right to judicial resolution of the claims presented, and would be without other recourse for recovery.'" *Bank of Am.*, 2024 WL 4566689, at *2 (citation omitted). By his default, O'Loughlin has admitted the truth of EWS's allegations concerning the harm EWS has suffered and will continue to suffer because of O'Loughlin's unlawful conduct. Thus, if the Court declines to enter default judgment against O'Loughlin, EWS will have no remedy and no remaining means to prevent O'Loughlin from inflicting further harm.

Finally, under the seventh *Eitel* factor, while cases ordinarily should be tried on the merits, "[t]he existence of Rule 55(b) . . . indicates that [this] preference . . . is not absolute." *HTS, Inc. v. Boley*, 954 F. Supp. 2d 927, 941 (D. Ariz. 2013) (citation omitted). Because O'Loughlin has chosen not to defend EWS's claims, deciding EWS's claims against that Defendant would be "'impractical,' if not impossible." *See*

10

*id.* (citation omitted). Thus, the seventh *Eitel* factor favors entry of default judgment as well. *See* Default J., Dkt. 208 at 6 (finding each of "the first, sixth, and seventh *Eitel* factors . . . favors entry of default judgment" against P.A.Z.E.).

> ### 2. The Second and Third *Eitel* Factors Favor Default Judgment Because EWS's Complaint and Supporting Evidence Establish O'Loughlin's Liability.

"The second and third *Eitel* factors are generally the most important factors for the Court's consideration in ruling on a motion for default judgment." *Taylor*, 2024 WL 4837021, at *3 (citation omitted). "[T]hese two factors require that a plaintiff 'state a claim on which the [plaintiff] may recover.'" *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002) (second alteration in original) (citations omitted). As shown below, each of EWS's claims against O'Loughlin is well pleaded and amply supported by the record. *See* Default J., Dkt. 208 at 7 (finding "EWS has stated plausible claims for relief against P.A.Z.E." and, "[a]lthough the Complaint itself is sufficient, the several declarations submitted in support of the instant Motion as well as EWS's Motion for Preliminary Injunction also support EWS's claims and default judgment" (citations omitted)); *see also Landstar Ranger, Inc. v. Parth Enters.*, 725 F. Supp. 2d 916, 922 (C.D. Cal. 2010) (on motion for default judgment, finding no possibility of factual dispute where plaintiff "supported its claims with ample evidence, and defendant has made no attempt to challenge the accuracy of the allegations in the complaint").

> ### a. EWS Has Established O'Loughlin's Liability for Trade Secret Misappropriation.

O'Loughlin is liable for trade secret misappropriation under the DTSA, 18 U.S.C. § 1836 *et seq.*, and the AUTSA, A.R.S. § 44-401 *et seq.*, because EWS has shown that (1) it owned a trade secret, which (2) O'Loughlin misappropriated, (3) causing damage. *Fire Sec. Elec. & Commc'ns Inc. v. Nye*, No. CV-23-02730-PHX-DLR, 2024 WL 620813, at *3 (D. Ariz. Feb. 14, 2024) (citation omitted); *see*

11

*Berkadia Real Est. Advisors LLC v. Wadlund*, No. CV-22-00049-TUC-CKJ, 2022 WL 3213113, at *12 (D. Ariz. Aug. 9, 2022) ("The elements of a trade secret misappropriation claim under the DTSA and AUTSA are virtually identical.").

To constitute a "trade secret," information must not be "readily ascertainable by proper means" and must derive "independent economic value . . . from not being generally known." 18 U.S.C. § 1839(3)(B); A.R.S. § 44-401(4). In addition, its owner must have "taken reasonable measures to keep such information secret." 18 U.S.C. § 1839(3); A.R.S. § 44-401(4).

"Misappropriation," in turn, occurs when a person acquires, discloses, or uses a trade secret, knowing or having reason to know the secret was acquired by improper means. *Fire Sec. Elec. & Commc'ns*, 2024 WL 620813, at *4 (citing 18 U.S.C. § 1839(5) and A.R.S. § 44-401(2)). "[I]mproper means" include breach or inducement of a breach of a duty to maintain secrecy. *See* 18 U.S.C. § 1839(6)(A).

EWS's operative pleading and supporting evidence establish each of these elements. Specifically, EWS has alleged the following:

- Prior to Johnson's termination, and in his role as EWS's intellectual property counsel, he was entrusted with, and privy to, confidential information regarding EWS's private and internal business plans and discussions regarding its Paze[SM] service, including the company's interest in procuring particular domain names incorporating EWS's PAZE mark. Compl. ¶ 11(a), Dkt. 1 at 3.

- Johnson corresponded with EWS's marketing department about acquiring domain names containing EWS's PAZE mark and instructed EWS's domain name vendor to run an availability report for domain names containing PAZE, which report showed that numerous domain names were available for registration, including pazewallet.com and pazenetwork.com. *Id.* ¶¶ 37–38, Dkt. 1 at 8.

- On information and belief, Johnson provided information concerning EWS's interest in particular domain names (including pazewallet.com and

12

pazenetwork.com) to O'Loughlin, who registered those domain names before EWS could do so. *Id.* ¶ 11(a), Dkt. 1 at 3; *see also id.* ¶¶ 57, 59, Dkt. 1 at 11; *id.* ¶ 60, Dkt. 1 at 11 ("CSC informed EWS that several of those domains—including www.pazewallet.com and www.pazenetwork.com—were no longer available because someone else had registered them along with www.paze.website and www.paze.guru.").

- O'Loughlin then formed P.A.Z.E., which launched a sham gripe website at pazewallet.com under the name "P.A.Z.E.," or "People Against Zelle Erryday [sic]," with content directed at disparaging EWS and its business including the Zelle® and Paze℠ services. *Id.* ¶¶ 11(b), 61, Dkt. 1 at 3, 11.

- EWS instructed its domain name vendor to acquire the domain name pazewallet.com from the registrant anonymously. *Id.* ¶ 61, Dkt. 1 at 11.

- On February 23, 2023, EWS paid $20,000 for pazewallet.com and 54 other PAZE domains to "Heidi O'Loughlin" via P.A.Z.E.'s email address, contact@paze.guru, through Escrow.com, incurring additional fees totaling $3,201.50. Cheney Decl. Ex. 6, Dkt. 17-1 at 35; Shah Decl. ¶¶ 6–8, Ex. 3, Dkt. 104-1 at 2–3, 8–11; *see* Compl. ¶¶ 64, 133, Dkt. 1 at 14, 24.

These uncontested allegations and EWS's supporting evidence establish that O'Loughlin *acquired* EWS's trade secret information concerning the domain names EWS intended to register, then *used* that information to register the same domain names before EWS could do so. Information concerning EWS's preferred domains was not readily ascertainable by proper means, and derived economic value from not being generally known—thus qualifying as a *trade secret*—because myriad word combinations containing "PAZE" were available for domain registration, and O'Loughlin had no way of knowing which domains EWS wished to acquire (and for which it might be willing to pay) without EWS's trade secret information. *See* Compl. ¶ 90, Dkt. 1 at 18–19 (alleging "EWS's Trade Secrets" includes "documents relating to EWS's domain names").

13

Further, O'Loughlin had every reason to know this information was acquired by improper means because Johnson and O'Loughlin had been acquainted for many years before concocting their scheme (*see* Zefar Decl. ¶¶ 7–8, Ex. 1, Dkt. 104-2 at 3–11), in which the Complaint and record establish both Johnson and O'Loughlin actively participated. Compl. ¶¶ 11, 27–31, 54–82, 87, Dkt. 1 at 3–4, 6–7, 10–18; Shah Decl. ¶¶ 2–5, Exs. 1–2, Dkt. 104-1 at 2, 4–7. These acts of misappropriation alone caused damage to EWS of at least $22,950.20, given the low price at which EWS otherwise could have acquired the domain names it was interested in acquiring (including pazewallet.com). Cheney Decl. Ex. 6, Dkt. 17-1 at 35; Compl. ¶ 133, Dkt. 1 at 24; Shah Decl. ¶¶ 6–8, Ex. 3, Dkt. 104-1 at 2–3, 8–11. O'Loughlin is liable for misappropriating EWS's trade secrets.

### b.    EWS Has Established O'Loughlin's Liability for Cybersquatting and Unjust Enrichment.

O'Loughlin is liable for cybersquatting because the uncontested averments in EWS's Complaint and the record show that: (1) O'Loughlin registered, trafficked in, or used domain names including pazewallet.com and others; (2) those domain names are identical or confusingly similar to EWS's distinctive PAZE mark; and (3) O'Loughlin acted with a bad faith intent to profit from that mark. *See DSPT Int'l, Inc. v. Nahum*, 624 F.3d 1213, 1218–19 (9th Cir. 2010); 15 U.S.C. § 1125(d).

O'Loughlin also is liable for unjust enrichment because the uncontested averments in EWS's Complaint and the record show: "(1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and impoverishment, (4) the absence of justification for the enrichment and impoverishment, and (5) the absence of a remedy provided by law." *Premier Funding Grp. v. Aviva Life & Annuity Co.*, No. CV-14-01633-PHX-DGC, 2014 WL 6885732, at *9 (D. Ariz. Dec. 8, 2014) (citation omitted).

Specifically, the allegations and record evidence discussed in Section II(D)(2)(a), above, establish that O'Loughlin willfully, maliciously, and unjustifiably

used trade secret and confidential information concerning EWS's preferred domain names to register those domain names and others containing EWS's PAZE mark, which is inherently distinctive of EWS's services under the mark and therefore valid and protectable. Compl. ¶ 145, Dkt. 1 at 26. O'Loughlin then used certain of those domain names to post content directed specifically at disparaging EWS and its business and trafficked in those domain names by requesting a $20,000 payment in return for transferring them to EWS, all with a bad faith intent to profit from EWS's PAZE mark. As a result, O'Loughlin was enriched by $20,000 and EWS was impoverished by at least $22,950.20 (including transfer fees).

These facts demonstrate O'Loughlin's liability for cybersquatting and unjust enrichment. *See DSPT Int'l*, 624 F.3d at 1219 (holding the evidence supported jury verdict of cybersquatting where the defendant, after registering a domain name containing his former employer's trademark, used it "to get leverage for his claim for commissions"); *Premier Funding*, 2014 WL 6885732, at *9 (finding a claim for unjust enrichment of $566,850 was sufficiently pleaded where "[t]here is a clear connection between the enrichment and impoverishment, . . . an absence of justification," and, if plaintiff's "other claims fail as this case proceeds, . . . an absence of a remedy provided by law").

### c.    EWS is Entitled to a Declaration of Noninfringement of P.A.Z.E.'s Alleged **PAŻE** and PAZE Marks.

O'Loughlin sent letters on P.A.Z.E. letterhead to EWS's counsel on April 21, 2024, and May 2, 2024, citing P.A.Z.E.'s ownership of applications to register its alleged **PAŻE** and PAZE marks and threatening to oppose EWS's PAZE application, seek cancellation of EWS's **Ż** registration, and send "cease-and-desist letter[s]" to EWS's customers and merchants allegedly displaying EWS's PAZE mark "in a confusingly similar way." Compl. ¶ 136, Dkt. 1 at 25; *see* Cheney Decl. Exs. 8, 9, Dkt. 17-2 at 23, 26.

O'Loughlin's use of the phrase "confusingly similar" in the May 2, 2024, letter

(Dkt. 17-2 at 26) refers to the "likelihood of confusion" test, an essential element of claims for infringement of an unregistered trademark under the Lanham Act, 15 U.S.C. § 1125(a), and Arizona common law. Compl. ¶ 138, Dkt. 1 at 25; *see PepsiCo*, 238 F. Supp. 2d at 1176. Thus, "[t]he necessary implication" of O'Loughlin's threats to send "cease-and-desist letter[s]" to EWS's customers and merchants for displaying EWS's PAZE mark in a "confusingly similar way" to P.A.Z.E.'s alleged **PAŻE** and PAZE marks is that O'Loughlin claims EWS's PAZE mark and **Ż** mark infringe P.A.Z.E.'s claimed trademark rights. Compl. ¶ 140, Dkt. 1 at 25.

On May 3, 2024, and May 16, 2024, O'Loughlin followed through on his threats to oppose EWS's PAZE application and seek cancellation of EWS's **Ż** registration by filing the TTAB Proceedings on P.A.Z.E.'s behalf. Compl. ¶ 138, Dkt. 1 at 25. These judicial proceedings, coupled with "P.A.Z.E.'s threats in its April 21, 2024, and May 2, 2024, letters," create a "substantial controversy" between EWS, P.A.Z.E., and O'Loughlin, P.A.Z.E.'s principal—"parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment of noninfringement under 28 U.S.C. § 2201(a)." Compl. ¶ 141, Dkt. 1 at 25.

In addition to establishing its entitlement to seek declaratory relief, EWS has sufficiently pleaded noninfringement of P.A.Z.E.'s alleged **PAŻE** and PAZE marks. Because P.A.Z.E.'s alleged marks are not federally registered (Compl. ¶ 151, Dkt. 1 at 26), O'Loughlin would have to claim infringement of P.A.Z.E.'s unregistered mark under 15 U.S.C. § 1125(a), which establishes liability for "[a]ny person who, on or in connection with any goods or services, . . . uses in commerce any word, term, name, symbol, or device . . . which is likely to cause confusion, or to cause mistake, or to deceive" as to an "affiliation, connection, or association" between persons or as to "the origin, sponsorship, or approval" of their goods or services. 15 U.S.C. § 1125(a)(1)(A). To prevail on this claim, O'Loughlin would have to prove that P.A.Z.E. owns protectable trademark rights in the alleged **PAŻE** and PAZE marks. *HTS*, 954 F. Supp. 2d at 942. "[T]he standard test of ownership is priority of use. . . .

16

1  [T]he party claiming ownership must have been the first to actually use the mark in
2  the sale of goods or services." *Id.* (alterations in original) (citation omitted).

3      Neither O'Loughlin nor P.A.Z.E. can make this showing because EWS's
4  uncontested pleadings and supporting evidence establish EWS's prior rights in its
5  PAZE and ⚡ marks. Compl. ¶¶ 144, 148, Dkt. 1 at 26. Specifically:

6  - On November 9, 2022, EWS applied to register its PAZE mark under
7    Application Serial No. 97669754 for various financial transaction services in
8    International Class 36, and EWS first used its PAZE mark in United States
9    commerce on March 26, 2023. *Id.* ¶¶ 142, 143, Dkt. 1 at 25.

10 - EWS's PAZE mark is inherently distinctive of EWS's services under the mark,
11   making the mark valid and protectable. *Id.* ¶ 145, Dkt. 1 at 26.

12 - On April 5, 2016, EWS applied to register its ⚡ mark under Application Serial
13   No. 86965192 for various financial transaction services in Class 36, and EWS
14   first used its ⚡ mark in United States commerce on August 28, 2016. *Id.* ¶¶ 146,
15   147, Dkt. 1 at 26. EWS's ⚡ application matured into Registration No. 5476070,
16   which issued on May 22, 2018 and became incontestable on April 26, 2024. *Id.*
17   ¶¶ 146, 150, Dkt. 1 at 26.

18 - EWS's ⚡ mark is inherently distinctive of EWS's services under the mark,
19   making the mark valid and protectable. *Id.* ¶ 149, Dkt. 1 at 26.

20     As for P.A.Z.E.'s claimed trademark rights, O'Loughlin filed P.A.Z.E.'s
21 applications to register the alleged **PAZE** and PAZE marks on November 2 and
22 November 4, 2023, respectively, representing to the USPTO that P.A.Z.E. began
23 using those alleged marks on January 23, 2023, on its website at
24 https://www.paze.website. Compl. ¶¶ 66, 68, Dkt. 1 at 14; Cheney Decl. Ex. 12, Dkt.
25 17-4 at 10 (¶¶ 23–25). However, as EWS alleged in its Complaint (and neither
26 O'Loughlin nor P.A.Z.E. has contested), P.A.Z.E. has not made any *bona fide* use of
27 its alleged PAZE and marks in connection with any services as contemplated by the
28 Lanham Act or Arizona law. Compl. ¶ 152, Dkt. 1 at 26. This is because "[a] service

17

mark can only be registered for activities that constitute services as contemplated by the Trademark Act." USPTO, *Trademark Manual of Examining Procedure* ("TMEP") § 1301.01 (Nov. 2024) (citing 15 U.S.C. §§ 1051–53, 1127), available at https://tmep.uspto.gov/RDMS/TMEP/current#/current/TMEP-1300d1e30.html. That is, "a service must be a real activity," not a "mere idea or concept," and "must be primarily for the benefit of someone other than the applicant." *Id.* §§ 1301.01(a), 1301.01(a)(i), 1301.01(a)(ii) (citations omitted). Activities failing to satisfy these requirements are not "services," and any indicia used to identify those activities therefore cannot be service marks.

The trademark applications that O'Loughlin filed on P.A.Z.E.'s behalf claim that P.A.Z.E. provides "financial information" and "online instruction" under its alleged **PAŻE** and PAZE marks (Cheney Decl. Ex. 12, Dkt. 17-4 at 10 (¶ 23)), but P.A.Z.E.'s specimens make clear that it primarily used **PAŻE** and PAZE to identify a gripe site containing complaints about EWS and its Zelle® and Paze[SM] services (and updates on this dispute), for O'Loughlin and P.A.Z.E.'s own benefit. *See* Cheney Decl. Ex. 12, Dkt. 17-4 at 50–71, 79–90, 98–111, 113–55, 164–91, 196–203, 210–17. This does not qualify as "use in commerce" because a gripe site is not a "service" as contemplated by the Lanham Act. TMEP § 1301.01. Instead, "[t]he provision of mere 'information services' without any commercial or transactional component is speech—nothing more." *Radiance Found., Inc. v. N.A.A.C.P.*, 786 F.3d 316, 326 (4th Cir. 2015); *see In re Bahramian*, Ser. No. 87444322, 2019 WL 5290184, at *6 (T.T.A.B. Sept. 24, 2019) (nonprecedential) (refusing registration because applicant, "an independent non-governmental organization," used the alleged mark merely to "promot[e] the cause of democratic reform in Iran").

Accordingly, neither O'Loughlin nor P.A.Z.E. own any trademark rights in P.A.Z.E.'s alleged **PAŻE** and PAZE marks (Compl. ¶ 152, Dkt. 1 at 26), which means EWS cannot be liable for infringing those nonexistent "rights."[8] EWS therefore is

---

[8] P.A.Z.E. also lacks standing to bring the TTAB Proceedings for many of the same

entitled to a declaration of noninfringement on this basis.

> **3.    The Fourth *Eitel* Factor Favors Default Judgment Because O'Loughlin's Conduct Warrants the Damages EWS Seeks.**

The fourth *Eitel* factor balances the amount of money at stake in relation to the seriousness of O'Loughlin's conduct. Here, O'Loughlin knowingly and willfully schemed with Johnson, EWS's former intellectual property counsel, to use EWS's trade secrets and confidential information, and a baseless lawfare campaign, to extract money from Johnson's former employer.

As redress, EWS seeks (a) permanent injunctive relief to prevent further economic harm and protect EWS's marks and business reputation, (b) a declaratory judgment of noninfringement of P.A.Z.E.'s alleged **PAŻE** and PAZE marks, (c) if P.A.Z.E. fails to timely satisfy the judgment against it, monetary relief totaling $68,850.60, representing the $22,950.20 cost that EWS incurred to ransom the

---

reasons. To establish its standing to challenge EWS's PAZE application, P.A.Z.E. must plausibly allege a cognizable legal interest potentially impaired by registration of the PAZE mark. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129–34 (2014); *Corcamore, LLC v. SFM, LLC*, 978 F.3d 1298, 1303 (Fed. Cir. 2020). Denying registration to EWS's PAZE mark would do nothing to remedy the abstract "harms" P.A.Z.E. alleges in the TTAB Proceedings. See Cheney Decl. Ex. 12, Dkt. 17-4. Accordingly, "there is no real controversy between the parties" under 15 U.S.C. § 1063. *See Philanthropist.com, Inc. v. Gen. Conf. Corp. of Seventh-Day Adventists*, 2021 U.S.P.Q.2d 643, at *6 (T.T.A.B. 2021) (where a company that warehoused domain names sought cancellation of a church's registrations of ADVENTIST after the church refused to pay the petitioner's asking price of $1.2 million for the domain name Adventist.com, holding "Petitioner's interests . . . do not have anything to do with trademark concerns" and "are outside the zone of interests reflected in [15 U.S.C. § 1064]"), *aff'd*, No. 2021-2208, 2022 WL 3147202 (Fed. Cir. Aug. 8, 2022) (per curiam); *Doyle v. Al Johnsons Swedish Rest. & Butik, Inc.*, 101 U.S.P.Q.2d 1780, 1783 (T.T.A.B. 2012) (where photographer sought cancellation of registrations for configuration marks comprising "goats on a roof of grass," holding photographer could not show standing because the registrations did not prevent him from "tak[ing] the photographs [of goats on roofs] he wants to take" (citation omitted)); *McDermott v. San Fran. Women's Motorcycle Contingent*, 81 U.S.P.Q.2d 1212, 1214 (T.T.A.B. 2006).

pazewallet.com domain name and exemplary damages of double that amount, as well as post-judgment interest, (d) EWS's attorneys' fees incurred in preparing and supporting this Motion, and (e) EWS's taxable costs in the amount of $1,365.60. Considering the seriousness of EWS's uncontested allegations and the need to deter O'Loughlin and others from engaging in similarly egregious behavior in the future, the relief EWS seeks is more than reasonable. This factor favors default judgment. *See* Default J., Dkt. 208 at 8 (finding "the relief EWS seeks is more than reasonable" "[g]iven the seriousness of EWS's uncontested allegations and the need to deter P.A.Z.E. and others from undertaking similar unlawful acts").

### 4. The Fifth *Eitel* Factor Favors Default Judgment Because the Facts are Undisputed.

O'Loughlin having defaulted "by refusing to answer and defend," EWS's allegations "are presumed true and . . . there is no possible dispute of material facts." *Bank of Am.*, 2024 WL 4566689, at \*2 (citation omitted); *see PepsiCo*, 238 F. Supp. 2d at 1177 ("Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages."). In any event, substantial evidence and testimony support EWS's claims and establish the material facts beyond material dispute even if O'Loughlin had contested those claims after unsuccessfully moving to dismiss. *See Landstar Ranger*, 725 F. Supp. 2d at 922 (finding no possibility of factual dispute where plaintiff "supported its claims with ample evidence, and defendant has made no attempt to challenge the accuracy of the allegations in the complaint"). The fifth *Eitel* factor favors a default judgment. *See* Default J., Dkt. 208 at 7 (finding "[t]he fifth Eitel factor supports default judgment").

### E. EWS Is Entitled to Injunctive, Declarative, and Monetary Relief on Its Claims Against O'Loughlin.

### 1. A Permanent Injunction is Appropriate.

EWS is entitled to permanent injunctive relief because: (1) it "suffered an irreparable injury"; (2) "remedies available at law, such as monetary damages, are

1  inadequate to compensate for that injury"; (3) "considering the balance of hardships
2  between the plaintiff and defendant, a remedy in equity is warranted"; and (4) "the
3  public interest would not be disserved by a permanent injunction." *eBay Inc. v.*
4  *MercExchange, LLC*, 547 U.S. 388, 391 (2006).

5      The Court weighed similar factors when issuing a preliminary injunction
6  against O'Loughlin on December 4, 2024 (Dkt. 70), and no intervening development
7  of the factual record undermines that decision. Thus, the Court should permanently
8  enjoin O'Loughlin for the same reasons it granted EWS's motion for preliminary
9  injunctive relief, which EWS expressly incorporates by reference. *See* Dkt. 16;
10 *Universal Bldg. Maint. LLC v. Calcote*, No. SACV 22-1125 JVS (DFMx), 2022 WL
11 18397628, at *6 (C.D. Cal. Nov. 7, 2022) (granting permanent injunction in trade
12 secret misappropriation case where party failed to appear, explaining that for "the
13 same reasons as the preliminary injunction, [movant] has sufficiently demonstrated a
14 permanent injunction is warranted"); *see also* Default J., Dkt. 208 at 8–9 (permanently
15 enjoining P.A.Z.E.).

16              **2.      This Court Should Issue a Declaratory Judgment.**

17     As discussed in detail above, O'Loughlin sent letters on P.A.Z.E. letterhead to
18 EWS's counsel threatening to oppose EWS's PAZE application, seek cancellation of
19 EWS's ⚡ registration, and send "cease-and-desist letter[s]" to EWS's customers and
20 merchants displaying EWS's PAZE mark "in a confusingly similar way"—a clear
21 reference to the "likelihood of confusion" test for trademark infringement. Compl.
22 ¶ 136, Dkt. 1 at 25; Cheney Decl. Exs. 8, 9, Dkt. 17-2 at 23, 26; *see* 15 U.S.C.
23 § 1125(a). O'Loughlin followed through on his threats to oppose EWS's PAZE
24 application and seek cancellation of EWS's ⚡ registration by filing the TTAB
25 Proceedings in P.A.Z.E.'s name. Compl. ¶ 138, Dkt. 1 at 25. O'Loughlin's conduct
26 creates a "substantial controversy" between EWS, O'Loughlin, and P.A.Z.E. "of
27 sufficient immediacy and reality to warrant the issuance of a declaratory judgment of
28 noninfringement under 28 U.S.C. § 2201(a)." *Id.* ¶ 141, Dkt. 1 at 25.

EWS also has established that neither O'Loughlin nor P.A.Z.E. can prove infringement, as neither party can demonstrate the priority necessary to establish protectable rights in P.A.Z.E.'s alleged **PAŻE** and PAZE marks. As between EWS and O'Loughlin, EWS enjoys prior rights in its PAZE and **Ż** marks. Compl. ¶¶ 144, 148, Dkt. 1 at 26. Indeed, as EWS alleged, and O'Loughlin has not contested, P.A.Z.E. has not made any *bona fide* use of its alleged **PAŻE** and PAZE marks in connection with any "services" as contemplated by the Lanham Act. *Id.* ¶ 152, Dkt. 1 at 26. Because both O'Loughlin and P.A.Z.E. lack trademark rights in P.A.Z.E.'s alleged **PAŻE** and PAZE marks (*id.* ¶ 152, Dkt. 1 at 26), EWS cannot be liable for infringement. EWS is entitled to a declaratory judgment of noninfringement. *See* Default J., Dkt. 208 at 9–10 (declaring and adjudging that EWS does "not . . . infringe any trademark rights asserted by Defendant P.A.Z.E. in its alleged **PAŻE** and PAZE marks" and making detailed findings of fact).

### 3.    This Court Should Order O'Loughlin to Pay Actual Damages, Exemplary Damages, and Interest if P.A.Z.E. Fails to Timely Satisfy the Judgment Against It.

"[A] district court has 'wide latitude' in determining the amount of damages to award upon default judgment." *Capitol Specialty Ins. Corp. v. Chaldean LLC*, No. CV-21-00342-PHX-MTL, 2022 WL 2953062, at *5 (D. Ariz. July 26, 2022) (citation omitted). The Court may enter a default judgment for monetary damages without a hearing where "the amount claimed is a liquidated sum or capable of mathematical calculation." *HTS*, 954 F. Supp. 2d at 947 (citation omitted). Further, if a defendant willfully and maliciously misappropriates trade secrets, as here, the Court may award exemplary damages up to twice the compensatory award. A.R.S. § 44-403.

The Court's default judgment against P.A.Z.E. orders P.A.Z.E. to pay to EWS "an award in the amount of $68,850.60, consisting of (i) Plaintiff's actual damages of $22,950.20 and (ii) exemplary damages of $45,900.40," as well as "interest on the foregoing award of $68,850.60 accruing between the date of this Order and P.A.Z.E.'s

payment of that amount to Plaintiff." Dkt. 208 at 9. "O'Loughlin formed P.A.Z.E. . . . and is its Member and Manager." Compl. ¶ 16, Dkt. 1 at 5. Both O'Loughlin and P.A.Z.E. engaged in "acts of willful and malicious misappropriation of Plaintiff's trade secrets and privileged and confidential information." Default J., Dkt. 208 at 9.

EWS therefore seeks an award of damages against O'Loughlin, to be paid to EWS if P.A.Z.E. does not satisfy the judgment against it within thirty (30) days of the Court's order on this Motion. Specifically, EWS seeks its actual damages of $22,950.20, which represents the difference between (a) the amount EWS paid to O'Loughlin and P.A.Z.E. (through "Heidi O'Loughlin" via P.A.Z.E.'s email address contact@paze.guru) to acquire 55 domain names containing PAZE, including pazewallet.com, and (b) the price EWS otherwise would have paid to acquire the domain names it was interested in acquiring. *See* Cheney Decl. Ex. 6, Dkt. 17-1 at 35; Shah Decl. ¶¶ 6–8, Dkt. 104-1 at 2–3. This is a "definite sum" representing a specific payment made. *See Capitol Specialty Ins.*, 2022 WL 2953062, at *6 (entering default judgment against defendants for $202,371.10 comprising payments of insurance premiums). Exemplary damages of twice that amount would equal an additional $45,900.40, yielding total monetary damages of $68,850.60.

As the Court found in its default judgment against P.A.Z.E., an award of $68,850.60 is reasonable on this record. Dkt. 208 at 8; *see Jason Scott Collection, Inc. v. Trendily Furniture, LLC*, 68 F.4th 1203, 1220 (9th Cir. 2023) (identifying reasonably foreseeable harm as proper measure of damages), *cert. denied*, 144 S. Ct. 550 (2024). It also should be no surprise to O'Loughlin, as EWS's Complaint alleged actual damages of "$20,000 to acquire certain of the Accused Domain Names," plus "costs of approximately $3,000 relating to transfer of those domain names," and sought exemplary damages. Compl. ¶ 133, Dkt. 1 at 24; *see also id.* at 29 (prayer for relief). These allegations gave O'Loughlin "sufficient notice . . . of the potential award," thus enabling him "to decide whether to respond to the complaint in the first instance." *See Capitol Specialty Ins.*, 2022 WL 2953062, at *6 (alteration in original)

23

1  (citations omitted); *see* Fed. R. Civ. P. 54(c) ("A default judgment must not differ in
2  kind from, or exceed in amount, what is demanded in the pleadings.").

3  Ultimately, O'Loughlin decided not to answer the Complaint and defend
4  EWS's claims. EWS is entitled to the monetary remedies to which it would have been
5  entitled had its claims against O'Loughlin been decided on the merits.

6  **5.    This Court Should Award EWS Its Attorneys' Fees Incurred**
7  **in Preparing This Motion.**

8  The DTSA authorizes courts to "award reasonable attorney's fees to the
9  prevailing party" if "the trade secret was willfully and maliciously misappropriated."
10  18 U.S.C. § 1836(b)(3)(D). Similarly, the "AUTSA authorizes the court to award
11  'reasonable attorney fees to the prevailing party for . . . willful and malicious
12  misappropriation.'" *HTS*, 954 F. Supp. 2d at 961 (alteration in original) (quoting
13  A.R.S. § 44-404(3)) (awarding attorneys' fees).

14  EWS's Complaint alleges, and O'Loughlin does not contest, that "Defendants
15  willfully and maliciously misappropriated EWS's Trade Secrets" and "[a]ccordingly,
16  EWS is entitled to recover exemplary damages from Defendants pursuant to [A.R.S.]
17  § 44-403(B)." Comp. ¶ 113, Dkt. 1 at 21. This alone justifies an award of attorneys'
18  fees. *Cf. Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008)
19  (holding that where "[t]he district court entered default . . . with respect to a complaint
20  that pled wilfulness [sic] [,] . . . all factual allegations in the complaint are deemed
21  true, including the allegation of [defendant's] willful infringement of [plaintiff's]
22  trademarks," which "sufficiently establishes [plaintiff's] entitlement to attorneys' fees
23  under the Lanham Act").

24  Independent of this allegation, however, EWS has adduced substantial
25  evidence that O'Loughlin, together with Johnson and P.A.Z.E., "concocted a scheme
26  to extract money from EWS using EWS's privileged and confidential information,"
27  including by ransoming the domain name pazewallet.com for $20,000 (Cheney Decl.
28  Ex. 6, Dkt. 17-1 at 35); launching a sham gripe website to disparage EWS's business

and reputation (Compl. ¶ 11, Dkt. 1 at 3–4); filing applications to register **PAZE** and PAZE for nonexistent "services" (*id.*); threatening to engage in lawfare if EWS did not purchase P.A.Z.E. and its various "assets" (*id.*); and following through on these threats by filing the TTAB Proceedings. *Id.*

In sum, O'Loughlin has willfully and maliciously misappropriated EWS's trade secrets, entitling EWS to an award of its attorneys' fees incurred in preparing this Motion. *See* Default J., Dkt. 208 at 8 n.2 (finding that an award of EWS's attorneys' "fees and costs constitutes proper redress"); *A&C Trade Consultants, Inc. v. Alvarez*, No. 18-cv-05356-MMC, 2021 WL 4749436, at *1 (N.D. Cal. Oct. 12, 2021) (entering default judgment and awarding attorneys' fees under the DTSA and the California Uniform Trade Secrets Act where, *inter alia*, the complaint alleged defendant "diverted wire transfers [plaintiff] received from its customers to bank accounts he controlled").

### 6.    This Court Should Award EWS Its Taxable Costs.

Rule 54(d)(1) provides for an award of costs to the prevailing party "[u]nless a federal statute, these rules, or a court order provides otherwise." Fed. R. Civ. P. 54(d)(1); *see also* LRCiv 54.1(d) (providing "[t]he party entitled to costs shall be the prevailing party," generally defined as the "party in whose favor judgment is rendered"). "Consistent with Rule 54(d) and [28 U.S.C.] § 1920, Local Rule of Civil Procedure 54.1(e) provides for the recovery of costs for 'service fees.'" *HTS*, 954 F. Supp. 2d at 958 (citing LRCiv 54.1(e)(1)).

EWS retained private process servers to serve Defendants and incurred a total of $1,365.60 in service costs in connection with multiple attempts to effect personal service on O'Loughlin. *See* Decl. of Darin J. Gibby ("Gibby Decl."), ¶ 2. EWS detailed most of these efforts in its motion to serve O'Loughlin and P.A.Z.E. by alternate means. *See* Dkt. 22. After an investigation, EWS ultimately located O'Loughlin, and he was personally served with process on September 11, 2024. Dkt. 33. EWS seeks reimbursement of its fees incurred in serving O'Loughlin in the

1    amount of $1,365.60.

2    **III.    <u>CONCLUSION</u>**

3        For the foregoing reasons, and based on the Complaint's uncontested

4    averments and the evidence and testimony of record, EWS requests that the Court:

5        (1)    Enter default judgment on each of EWS's claims against O'Loughlin;

6        (2)    Permanently enjoin O'Loughlin from: (a) acquiring, possessing, using,

7               or disclosing any of EWS's trade secrets and privileged and confidential

8               information, including the Teams Chat; and (b) registering, acquiring,

9               renewing, maintaining, or using any domain names containing any of

10              EWS's marks, including its PAZE mark, or confusingly similar versions

11              of any of them;

12       (3)    Enter a declaratory judgment of noninfringement based on the factual

13              findings that: (a) EWS's PAZE and **Ƶ** marks are valid and protectable;

14              (b) as between EWS and O'Loughlin, EWS has prior rights in its PAZE

15              and **Ƶ** marks; (c) both O'Loughlin and P.A.Z.E. lack trademark rights in

16              P.A.Z.E.'s alleged **PAƵE** and PAZE marks; and therefore (d) use of

17              EWS's PAZE and **Ƶ** marks does not infringe either O'Loughlin's or

18              P.A.Z.E.'s rights;

19       (4)    Award EWS monetary damages consisting of: (a) actual damages of

20              $22,950.20; (b) exemplary damages of $45,900.40 owing to

21              O'Loughlin's acts of willful and malicious misappropriation; and

22              (c) post-judgment interest on the sum of those amounts ($68,850.60),

23              each to be paid to EWS if P.A.Z.E. does not satisfy the judgment against

24              it within thirty (30) days of the Court's order on this Motion;

25       (5)    Award EWS its reasonable attorneys' fees incurred in preparing this

26              Motion, in an amount to be determined; and

27       (6)    Award EWS its taxable costs in the amount of $1,365.60.

28    / /

1    //

2    //

3    //

4    DATED:  August 29, 2025                Respectfully Submitted,

5                                           KILPATRICK TOWNSEND & STOCKTON LLP

6                                           */s/ Erick Durlach*

7                                           Erick Durlach
                                            Dennis L. Wilson (admitted *pro hac vice*)

8                                           Sara K. Stadler (admitted *pro hac vice*)
                                            Kristin M. Adams (admitted *pro hac*

9                                           *vice*)
                                            6909 E. Greenway Parkway, Suite 100

10                                          Scottsdale, Arizona 85254

11                                          Tel: (602) 726-7319
                                            Fax: (623) 321-1009

12                                          *edurlach@ktslaw.com*
                                            *dwilson@ktslaw.com*

13                                          *sstadler@ktslaw.com*
                                            *kmadams@ktslaw.com*

14

15                                          BRYAN CAVE LEIGHTON PAISNER LLP
                                            George C. Chen

16                                          Jacob A. Maskovich
                                            Two North Central Avenue, Suite 2100

17                                          Phoenix, Arizona 85004-4406
                                            Tel: (602) 364-7000

18                                          Fax: (602) 364-7070

19                                          *george.chen@bclplaw.com*
                                            *jamaskovich@bclplaw.com*

20

21                                          Attorneys for Plaintiff
                                            Early Warning Services, LLC

22

23

24

25

26

27

28

1

## **CERTIFICATE OF SERVICE**

2

I hereby certify that on August 29, 2025, I electronically transmitted the

3

foregoing document and any attachments to the U.S. District Court Clerk's Office

4

using the CM/ECF System for filing with a copy served via that system. For parties

5

not receiving service via CM/ECF, a copy will be transmitted via electronic mail as

6

follows:

7

8

Brandon O'Loughlin *and* PAZE, LLC
1317 W. 13th Place

9

Tempe, AZ  85281
(623) 295-5438

10

contact@paze.guru

11

*Defendant Brandon O'Loughlin Individually and*

12

*as Authorized Representative for Defendant PAZE, LLC*

13

14

*/s/ Erick Durlach*
Erick Durlach

15

16

17

18

19

20

21

22

23

24

25

26

27

28

28