### UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ARIZONA

_____

| | | |
|---|---|---|
| Early Warning Services, LLC, | ) | |
| | ) | No:  2:24-cv-01587-SMB |
|      Plaintiff, | ) | |
| | ) | |
|      vs. | ) | Phoenix, Arizona |
| | ) | September 24, 2025 |
| Warren Vurl Johnson, et al., | ) | 1:30 p.m. |
| | ) | |
|      Defendants. | ) | |

_____

**BEFORE:  THE HONORABLE SUSAN M. BRNOVICH, JUDGE**

### REPORTER'S TRANSCRIPT OF PROCEEDINGS

### CONTINUED SHOW CAUSE HEARING - DAY TWO
### (Page 22 - 42)


**APPEARANCES ALL BY ZOOM:**
For the Plaintiff:
    KILPATRICK TOWNSEND & STOCKTON, LLP
    By:  **Mr. Dennis L. Wilson, Esq.**
    1801 Century Park E, Ste. 2300
    Los Angeles, CA 90067

    KILPATRICK TOWNSEND & STOCKTON, LLP
    By:  **Ms. Kristine M. Adams, Esq.**
    1100 Peachtree St., Ste. 2800
    Atlanta, GA 30309

For the Defendant:
    **Mr. Warren Vurl Johnson, pro se**
    215 E 18th St.
    Lawrence, KS 66044

Official Court Reporter:
Christine M. Coaly, RMR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 37
Phoenix, Arizona 85003-2151
(602) 322-7248

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

**P R O C E E D I N G S**

1                COURTROOM DEPUTY:  On the record in civil docket

2  24-1587, Early Warning Services, LLC versus Warren Vurl

3  Johnson, before the Court for a show cause hearing.

4                Will the parties please announce for the record.

5                MS. ADAMS:  Kristin Adams and Dennis Wilson on behalf

6  of plaintiff Early Warning Services.

7                MR. JOHNSON:  Warren Johnson, pro se.

8                THE COURT:  Okay.  And we're set for a continuation of

9  the contempt hearing we started on Monday.

10              I'm going to start with the examination protocols.

11              Mr. Johnson, did you receive those?

12              MR. JOHNSON:  Yes, I did.

13              THE COURT:  And I've reviewed it, so what, if any, are

14  your objections?

15              MR. JOHNSON:  Well, specific objections, I didn't go

16  through and like mark specific objections like in the document.

17  I didn't know that was something I was going to need to do.

18  But I -- I objected if -- if I can just be vague about it, I

19  mean, should I pull it up real quick so I can give you

20  paragraph by paragraph as I do this?

21              THE COURT:  You don't have to do it paragraph by

22  paragraph, just tell me what you object to.

23              MR. JOHNSON:  Well, I object to the complete -- well,

24  when you bring the terms in, I object to their terms, because

1   they cover everything, I mean, basically --

2           THE COURT:  Okay.  We're going to talk about the terms

3   next.

4           MR. JOHNSON:  Okay.  Okay.  Then -- then the general

5   process, the indexing of everything provided to them, that's --

6   that's seizure right there.  I mean, that's -- my privacy is

7   gone.  That's a -- that's a general warrant at that point.

8   They have everything to look at and review, and the Fourth

9   Amendment was built to stop general warrants.  So that is a

10  process that I definitely object to, putting everything in

11  indexes that they receive, simultaneous or before me.  I'm not

12  sure what the order was exactly, but I know I was reviewing it

13  first.

14          And then the lack of specificity on when it gets

15  destroyed or taken care of after it's used.  The filter for the

16  hashing and the search -- well, the search terms and the

17  protocol, depending on how many hits, you know, of -- a little

18  more technical, but how many hits come through per search term.

19  If too many come through, it's deemed, you know, too broad of a

20  term.  And I didn't see much protections like that in there.

21  There is a whole bunch of very common filters like that, if you

22  will, that are generally used in these types of protocols.

23          And, yeah, most of the other stuff is about the terms

24  in here, other than those main -- main topics.

25          THE COURT:  Okay.  Ms. Adams, as I read this, the

1    index -- it appears that the index that is given to the parties

2    is an index of extracted items, so after it's been filtered.

3    And so the index only includes items that come through on the

4    search as potentially relevant; is that correct?

5            MS. ADAMS:  That is correct.  Yes, Your Honor.

6            THE COURT:  So it excludes everything that doesn't get

7    a hit on the search terms?

8            MS. ADAMS:  That is correct.

9            THE COURT:  Okay.  So, Mr. Johnson, it is incorrect

10   that they get an index -- well, there is an index created, it's

11   not what's given to you and plaintiffs.

12           Okay.  Let's talk about the search terms.

13   Mr. Johnson, I'm hoping you did go through and mark the search

14   terms you don't like.

15           MR. JOHNSON:  Well, there is -- there is -- it's

16   almost better to just mark the ones -- well, just in general,

17   the search terms are supposed to tie to the trade secrets that

18   they have identified.  And I'm seeing search terms, their names

19   are in there, just general words are in there that are general

20   legal terms.  They will scoop up everything.  And they don't

21   tie them to their trade secrets, which is what they're supposed

22   to be directly tied to, because that's what they're looking

23   for, and their trade secrets where they're EWS documents.

24           So, I mean, the entire list, as far as I'm concerned,

25   is objected to.  We should have titles to inventions in there.

1   That's an easy one.  The search terms fall out of the trade

2   secrets they've claimed in the EWS documents freely, not

3   even -- an analysis doesn't even need to be done.  And what

4   they provided is -- it's everything.  And it's even kind of

5   oddly kind of insulting, like, there is greed and there is

6   fraud in there as single search terms, which I find to be kind

7   of odd, and their names.  So, yeah, it's kind of a -- it's an

8   objection to the list.

9          THE COURT:  Okay.  Well, that doesn't help me narrow

10  it down.

11         MR. JOHNSON:  Well, that's what I was saying earlier.

12  It needs to be tied to the trade secrets they've described and

13  claimed.  And if the term can't be tied directly to, you know,

14  finding one of those, it should not be in that list.

15         And their trade secrets are very narrow.  They had to

16  narrow them all the way to the titles of inventions and my

17  personal notes in the record.  So I don't really understand

18  their list, to tell you the truth.  I don't know how it even

19  ties to those trade secrets they've described and claimed in

20  the record.

21         THE COURT:  Okay.  Ms. Adams.

22         MS. ADAMS:  Thank you, Your Honor.

23         Yes, each of the search terms are narrowly targeted to

24  reveal information concerning the trade secrets at issue in

25  this case.  We have a unique scenario in a trade secret context

1   where defendants are the ones who have taken and misused this

2   information.  They are the ones unilaterally in possession of

3   what documents are there and what documents use that trade

4   secret information.

5          So it's not as simple as initial point as Mr. Johnson

6   indicates where we are looking for the title of a specific

7   document.  If he has used that information in other sources,

8   that would be something that we would need to see and hope

9   would be responsive in the search results.

10         Additionally, it is very possible that documents have

11  been renamed, possibly in good faith, or possibly in an effort

12  to -- you know, who -- who knows all the reasons things could

13  be misnamed or renamed.  But simply searching for the targeted

14  key words that Mr. Johnson proposes are unlikely to reveal the

15  full scope of the trade secrets that have been disclosed, as

16  well as the other proprietary information.

17         Specifically, each of the terms fall into a narrow set

18  of categories of documents and information that we are seeking

19  that tie to the trade secrets and protected information, in

20  particular, relevant people or entities and their contact

21  information who would be tied to the discussion of the trade

22  secrets; relevant trademark information, registration, serial

23  numbers; internal references at Early Warning for how they

24  would refer to those trademarks that were part of the trade

25  secrets at the time; unique phrases that frequently appear in

1    what Mr. O'Loughlin and P.A.Z.E. have filed in connection with

2    the trademarks and related trade secrets, such that it would

3    indicate a transfer of information concerning those trade

4    secrets between Mr. Johnson, and then P.A.Z.E. and

5    Mr. O'Loughlin.

6         And, lastly, there are certain key words that Early

7    Warning, or ideally any company that would use to designate its

8    confidential, privileged, or otherwise trade secret or

9    protected information.  Those words commonly, for example, on a

10   privilege document, might be privileged.  And so by virtue of

11   Mr. Johnson having access, as in-house counsel, to privileged

12   information or trade secrets, documents may appropriately be

13   stamped with those designations, such that, unfortunately for

14   everyone, including Early Warning, search terms like privileged

15   are actually narrowly tailored to reveal the kinds of documents

16   that reflect the trade secrets or proprietary information that

17   have been removed improperly.

18        THE COURT:  I had question marks by Bank of America,

19   Capital One.  And I'm wondering why you would be searching for

20   bank information.

21        MS. ADAMS:  Those, Your Honor, are banks that have

22   ownership interest or other control in Early Warning.  I'll

23   refer you to the corporate disclosure in this case.  Each of

24   those banks are named in the corporate disclosure, such that

25   they would have been discussed in the privileged information or

1    other confidential information that we believe was removed.

2            THE COURT:  Okay.  And I had a question mark by

3    privilege, but you answered that.  Let me see if I had any

4    others.

5            No, those were the ones.

6            Okay.  Mr. Johnson.

7            MR. JOHNSON:  I need to kind of take a step back here

8    and see what the goal is here.  The goal is not fishing for

9    anything I possibly have that has these words in it.  They've

10   defined their trade secrets and those are what they are looking

11   for.  They're not looking for like a communication I have that

12   is talking to someone totally different but happens to have the

13   word white label in it or work product.  They have -- their

14   trade secrets are literally the titles to inventions and my

15   notes.  I don't see how all this stuff converts to that.

16           And when they search, they do more than just a search

17   for the titles.  They do these hex hashing searches where they

18   search for literally those words within every file, and then

19   they find that, and then once they find the word, they can see

20   what file it's in.  But they're not searching for like file

21   names and stuff like that.  That's not the way they do this.

22           They hex and they hash it so that it's literally like

23   a bit, like, you know, 30 bites, like zero, one, zero, one,

24   one, and that means, you know, Warren, and then they just go

25   look for that in everything, and they find every instance of

1    that and then they pull the files based on that.  So the whole

2    renaming a file is not a way to get around these types of

3    searches.  These types of searches are much more sophisticated

4    than that.

5          And that's why I don't really understand how a list of

6    this magnitude and this diversity could be justified in

7    searching a very well-defined set of trade secrets which they

8    still haven't even listed, because it wasn't all the invention

9    titles, it was some of the invention titles were potentially

10   trade secrets.  And we haven't heard what those potential

11   invention titles are.  We haven't heard what notes of mine are

12   potential trade secrets.

13         So I just find this extremely overly broad and not

14   focused at all.  The focusing would be on the titles of the

15   inventions and the hashed versions, the tokens or whatever they

16   call them, and that is -- that is it.  I just don't understand

17   how it gets so expansive here with all these terms and stuff

18   just because they could potentially have other confidential

19   information.  And that's the definition of a general warrant

20   right there.  They are looking for anything they can beyond the

21   trade secrets they've identified.  And I didn't think that's

22   what the goal here.

23         The goal here was to find the ones they've identified

24   and take them back.  That's what they asked the appeal court to

25   let them do, and that's what the injunction was asking to do

1   was so that they could delete them, or whatever they're going

2   to do with them, identify them, make a list of them.  I'm not

3   sure what their goal is there.  But that's what I understand an

4   injunction to be, not a fishing expedition for anything they

5   can find that may or may not be confidential of theirs.  That's

6   where I'm feeling a disconnect here.

7            Am I missing something?  Did I -- is that not proper?

8            THE COURT:  Okay.  Ms. Adams, let me ask you, on

9   page 4 of your search terms -- do you have that in front of

10  you?

11           MS. ADAMS:  I do.  Yes, Your Honor.

12           THE COURT:  On that page, it's six down, starts 22-001

13  and goes to 22-013, what do those relate to?

14           MS. ADAMS:  Those are internal reference numbers that

15  correspond to various marks that would be considered trade

16  secrets.

17           MR. JOHNSON:  Various what?

18           THE COURT:  Did you have a question about that,

19  Mr. Johnson?

20           MR. JOHNSON:  Well, I know exactly what they are.

21  They're my docketing number.  That's my docketing system.  If

22  there're marks like she just said, then they have a TM in front

23  of them.  It's not just 22-01, it's TM-22.  That means it was a

24  trademark filed in the year 2022.  That was the first one.

25  That's exactly what those are.

1           And trademarks are not trade secrets, they're

2     inherently public.  They are source identifiers for consumers

3     to know where goods come from.  So I don't see how any way --

4     or in any interpretation those could be confidential or trade

5     secret.  They're trademarks.

6           THE COURT:  Well, the trademark itself might not be,

7     but documents related to things around the trademark, work

8     around the trademark may be.  Okay.

9           MR. JOHNSON:  May be a trade secret, you mean?

10          THE COURT:  Yes.  What did I say?

11          MR. JOHNSON:  I think that's what you said.

12          THE COURT:  No, I said -- I said work around the

13    trademark may be trade secret or confidential information.

14          MR. JOHNSON:  Okay.  Or was, and that's -- that's --

15    that's specific enough to be involved in this search?

16          THE COURT:  Yes.  And you'll have an opportunity to

17    object if whatever it is is not, or you disagree.

18          MR. JOHNSON:  Okay.  But this is going to turn up a

19    lot of stuff.  I'm going to have to go through and object to

20    everything that I think they shouldn't have?  I mean, this is

21    going to turn up thousands of files, thousands and thousands of

22    them.  Is that -- is that the plan?  That's the protocol?  I

23    have 12 days to do that, or something like that?

24          THE COURT:  I don't know what it will turn up.  I

25    don't know how much stuff you have.

1          MR. JOHNSON:  Well, I'm basing it on the search terms.

2    I don't know how much stuff I have either, but these search

3    terms are going to cover it all.  They got the number 20,000 in

4    there.  It's going to turn up a lot of stuff, I can tell you

5    that.  I'm not sure how much either, but it's going to be a

6    lot.  Take everything.

7          THE COURT:  Well, Mr. Johnson, that's why I asked you

8    to look at it before today's hearing.  And you can't just say I

9    object to everything without giving me --

10         MR. JOHNSON:  I didn't.  The titles to inventions and

11   my personal notes.  That is what they claimed were their trade

12   secrets and that's in the record.  And it's in their appellate

13   briefing as well, that that is what they came down to.  We

14   figured this all out a while ago and it was painful, but it was

15   correct.  I mean, it came out right.

16         THE COURT:  Okay.  Well, I have reviewed the protocol.

17   I am satisfied that the protocol does not disclose everything

18   on your devices to the plaintiffs, only those that are

19   responsive to the search, and that it provides you an

20   opportunity to object to those being disclosed before they are

21   disclosed, provides an opportunity for you to meet and confer

22   with the plaintiffs.

23         So I am adopting the proposed examination protocols as

24   an order of the Court.

25         MR. JOHNSON:  So I can't -- I guess I spent most of my

UNITED STATES DISTRICT COURT

```
1    time since last time we met was on the protective order.  I
2    guess I should have spent a little more time on this, if we
3    were going to go through it in this detail.  So I don't have a
4    chance to go through it more hardcore and look at stuff, it's
5    going to be just put in as is?
6              THE COURT:  No, you don't have an opportunity to.
7    Prior to the contempt hearing on Monday, you could have worked
8    with counsel on the search terms.  Prior to today, you could
9    have worked with counsel on the search terms and --
10             MR. JOHNSON:  I attempted to.
11             THE COURT:  -- you couldn't.
12             So with respect to the search terms, let me -- the one
13   I'm looking through, Ms. Adams, because he said there was --
14   one of the search terms is the number 20,000.
15             MS. ADAMS:  That's correct, Your Honor.
16             THE COURT:  And why is that?
17             MS. ADAMS:  That is the precise amount that we allege
18   in the complaint was conveyed between the parties.  And so we
19   made sure to not, as Mr. Johnson says, go on a fishing
20   expedition.  It is the precise amount alleged and nothing else.
21             THE COURT:  Okay.  Yes, I remember that.
22             All right.  The Court approves the proposed list of
23   search terms.
24             Mr. Johnson, this was an opportunity to provide some,
25   I guess, comfort to you, which apparently it does not.  This
```

was not required before.  As we talked about before, you were
given an opportunity to talk to the company that's going to do
the search and imaging.  You were, apparently, satisfied with
their safety protocols.

I didn't hear your answer.  Sorry.

MR. JOHNSON:  I said they were very professional.  I
have no problem with their vendor.  Their vendor is legit.  The
only problem was the loophole in their security, but other than
that, they're -- yeah.

THE COURT:  I'm going to issue a written order, but
I'm going to tell you that I do find that you are in contempt
of the court order.

I'm going to give you 48 hours to hand over your
devices, and then from then on, there will be a thousand dollar
a day fine until the order is complied with.

Do you have any questions about that?

MR. JOHNSON:  No, but I would like to reserve, you
know, all my rights of appeal and -- and things of that nature
in the meantime, during the 48 hours.  I can file, you know, a
motion for appeal, motion to stay and all that stuff.  But,
yes, I understand.

THE COURT:  Well, I can tell you right now I will not
grant you a stay, so you'd have to get it from the Ninth
Circuit in the next 48 hours.

MR. JOHNSON:  Okay.

1          THE COURT:  All right.  The motion for protective

2    order.

3          So I believe, Ms. Adams, if I understand your motion

4    and my review of the protective order that you are requesting

5    is that the difference in this one versus other ones is that

6    you're proposing that any trademark information or attorney

7    eyes only information actually not be disclosed to Mr. Johnson

8    but go to an outside counsel?

9          MS. ADAMS:  Trade secret and the highly confidential

10   information, yes, Your Honor.  In -- in cases such as this,

11   though infrequent, where parties have taken or there is the

12   risk that trade secret of proprietary information will be

13   disclosed, such as here where it has already been repeatedly

14   disclosed, courts have ordered protections similar to this

15   where, for the limited purpose of reviewing the narrow, highly

16   confidential information that's disclosed, outside counsel or

17   an outside expert is required to be retained for a pro se party

18   because of the magnitude of potential harm to plaintiff.  That

19   is something that we are asking for here.

20         And we do not ask for that lightly.  But in light of

21   all of the motions to seal, for example, covering just one or

22   two different trade secret -- or privileged documents that have

23   been disclosed, we aren't even into discovery yet in this

24   matter, and once -- a vast amount of information that is highly

25   confidential, or potentially including trade secrets is

1    disclosed, there is a very real and actual hazard of that

2    information being further misused and further disclosed despite

3    orders of this Court, the Ninth Circuit, or other courts,

4    because so far that has not been a deterrent to defendants in

5    disclosing privileged or otherwise confidential information,

6    and so we do think it is appropriate.

7         I will also say that I am doubtful that any trade

8    secret information will need to be further disclosed.  The

9    trade secrets at issue have been taken by the defendants and

10   will hopefully be returned to Early Warning.  And so it's

11   unlikely that we will even need to use that designation

12   further, but out of an abundance of caution, we've included

13   that tier of information as well.  It's also the commercially

14   sensitive information that defendants may choose to continue to

15   publically disclose based on their history of not complying

16   with court orders.

17        THE COURT:  Okay.  Because of the unique request in

18   the proposed protective order, I'm going to give Mr. Johnson

19   more time to respond.  I hadn't seen it prior to receiving it,

20   and so I'm going to give Mr. Johnson the appropriate time to

21   respond and reply, and then I'll rule on it in the normal

22   course.

23        So, Mr. Johnson, you have two weeks to respond, and

24   then they'll reply, and then I'll rule on it.  Okay?

25        Do you have any questions or comments on that?

```
 1            MR. JOHNSON:  To reply to the brief -- I mean, the

 2   motion they filed and the protective order?

 3            THE COURT:  The motion -- yeah, their motion for

 4   protective order.

 5            MR. JOHNSON:  Yes.

 6            THE COURT:  Ms. Adams, was that filed?

 7            MS. ADAMS:  It was not, Your Honor.

 8            THE COURT:  Okay.  I'm going to direct you to file it.

 9            MS. ADAMS:  We will do that.  Thank you, Your Honor.

10            THE COURT:  Okay.

11            MR. JOHNSON:  I thought it was supposed to be an

12   explanatory brief, I guess.  My mistake.

13            THE COURT:  Well, it did explain it to the Court,

14   which is why I'm not ruling on it now because it's an unusual

15   request.

16            Any other questions?

17            MS. ADAMS:  If I may, Your Honor.  The contempt

18   finding, I think we discussed that with respect to Mr. Johnson,

19   and I wanted to clarify whether that extended to the other

20   defendants who have not appeared?

21            THE COURT:  Oh, yes.  Actually, I have a note to ask

22   you about that.

23            I'm not sure that it's -- P.A.Z.E., a judgment has

24   already been entered against P.A.Z.E., so I'm not sure that it

25   would be appropriate at this time.
```

1           But with respect to -- hold on -- Mr. O'Loughlin, you

2      have had no contact with him?

3           MS. ADAMS:  We have sent e-mails to him.  In

4      connection with this part of the case, there has been no

5      contact that's been received responsively from him.

6           THE COURT:  Do you have any reason to believe -- well,

7      I guess --

8           Well, what is your basis for believing Mr. O'Loughlin

9      might have stuff electronically?

10          MS. ADAMS:  Originally there was a gripe site, we

11     shall call it, that was alleged use of the -- of P.A.Z.E.'s

12     P.A.Z.E. formative mark on that website the trade secret or

13     privileged information was disclosed, in particular, the Teams

14     chat I believe was disclosed.  And stands to reason the way

15     that the Teams chat would have been disclosed would have been

16     by virtue of Mr. Johnson sharing that with him.

17          And the fact that the marks -- the certain marks were

18     also applied for indicates -- it was not public information at

19     the time and would be part of the trade secrets as to which

20     marks were applied for.  And so, you know, it's fleshed out in

21     the complaint further.  I won't belabor the whole history of

22     the case again, but we've tracked the -- the coordination

23     between the various defendants with respect to the transfer of

24     trade secrets and use of them among them.

25          THE COURT:  Okay.  All right.  I'll --

1          MR. JOHNSON:  If I may?

2          THE COURT:  -- include a finding in my written ruling.

3          MS. ADAMS:  If I may add one other point, Your Honor?

4          THE COURT:  Yes.

5          MS. ADAMS:  With respect to the default against

6    P.A.Z.E., the scope of the preliminary injunction order is

7    different than -- and broader in some senses than the order

8    that was issued on the default judgment.  And so to the extent

9    the preliminary injunction is broader, they still may have --

10   P.A.Z.E. may still have confidential, privileged, or trade

11   secret information that we would hope to receive back as Early

12   Warning, and would need to in order to protect the information.

13   So we would ask that the finding be extended to them as well.

14         THE COURT:  Okay.  I'll take that under advisement.

15         Also --

16         MS. ADAMS:  Thank you, Your Honor.

17         THE COURT:  -- with respect to your other request, I

18   don't have it in front of me, but I -- you made some other

19   requests for sanctions, such as an adverse inference

20   instruction, things like that.  I'm denying those without

21   prejudice.  I think it's a little early.  Obviously, if he

22   doesn't comply, or if you discover things have been destroyed

23   or deleted, the decision is without prejudice to you coming

24   back and requesting additional sanctions later.  Okay?

25         MS. ADAMS:  Understood.  Thank you, Your Honor.

1          THE COURT:  Anything final, Mr. Johnson?

2          MR. JOHNSON:  No.

3          THE COURT:  Okay.  We're at recess.  Thank you.

4          (Proceedings concluded at 1:59 p.m.)

5                         *          *          *

1                    C E R T I F I C A T E

2

3          I, CHRISTINE M. COALY, do hereby certify that I am

4    duly appointed and qualified to act as Official Court Reporter

5    for the United States District Court for the District of

6    Arizona.

7          I FURTHER CERTIFY that the foregoing pages constitute

8    a full, true, and accurate transcript of all of that portion of

9    the proceedings contained herein, had in the above-entitled

10   cause on the date specified therein, and that said transcript

11   was prepared under my direction and control.

12         DATED at Phoenix, Arizona, this 25th day of

13   September, 2025.

14

15

16                    /s/ Christine M. Coaly_____

17                    Christine M. Coaly, RMR, CRR

18

19

20

21

22

23

24

25