**KILPATRICK TOWNSEND & STOCKTON LLP**
Erick Durlach, Arizona Bar No. 024253
*edurlach@ktslaw.com*
Dennis L. Wilson, California Bar No. 155407
(admitted *pro hac vice*)
*dwilson@ktslaw.com*
Sara K. Stadler, New York Bar No. 2620276
(admitted *pro hac vice*)
*sstadler@ktslaw.com*
Kristin M. Adams, Virginia Bar No. 92069
(admitted *pro hac vice*)
*kmadams@ktslaw.com*
6909 E. Greenway Parkway, Suite 100
Scottsdale, Arizona 85254-2149
Tel: (602) 726-7319
Fax: (623) 321-1009

**BRYAN CAVE LEIGHTON PAISNER LLP**
George C. Chen, Arizona Bar No. 019704
*george.chen@bclplaw.com*
Jacob A. Maskovich, Arizona Bar No. 021920
*jamaskovich@bclplaw.com*
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
Tel: (602) 364-7000
Fax: (602) 364-7070

Attorneys for Plaintiff
Early Warning Services, LLC

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Early Warning Services, LLC,<br><br>  Plaintiff,<br><br>v.<br><br>Warren Vurl Johnson, Brandon O'Loughlin and P.A.Z.E., LLC,<br><br>  Defendants. | Case No. CV-24-01587-PHX-SMB<br><br>**PLAINTIFF EARLY WARNING SERVICES, LLC'S REPLY IN SUPPORT OF ITS MOTION FOR A PROTECTIVE ORDER** |

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................. i

TABLE OF AUTHORITIES ...................................................................................... ii

I.    INTRODUCTION AND BACKGROUND................................................... 1

II.   ARGUMENT .................................................................................................. 3

      a.   The Limitation of Disclosure of Attorneys' Eyes Only and Trade Secret Material to Outside Counsel and Experts is Necessary and Narrowly Tailored to Address Defendants' Demonstrated Pattern of Disclosing EWS's Protected Information. ........................................ 3

          i.   Defendants' History of Misuse Disqualifies Them from Direct Access to EWS's Most Sensitive Information. ................................................................. 5

          ii.   Defendants' Experts and Undisclosed Counsel Must be Disclosed and Sign a Non-Disclosure Agreement to Ensure Independence. ........................... 6

      b.   The Patent Prosecution Bar Is Warranted. ......................................... 8

      c.   The Protective Order Must Protect Designated Documents During and After the Litigation. .................................... 9

      d.   The Privilege Log Provisions are Standard and Appropriate. ..................................................................................... 10

III.  CONCLUSION ............................................................................................ 11

CERTIFICATE OF SERVICE ................................................................................ 13

# TABLE OF AUTHORITIES

**Cases**

*Beam Sys., Inc. v. Checkpoint Sys., Inc.*,
  No. CV95-4068-RMT (AJWX), 1997 WL 364081 (C.D. Cal. Feb. 6,
  1997) ............................................................................................................... 5, 7, 8

*Brown Bag Software v. Symantec Corp.*,
  960 F.2d 1465 (9th Cir. 1992) ............................................................................. 5, 6

*Colibri Heart Valve LLC v. Medtronic CoreValve LLC*,
  No. 8:20-cv-00847-DOC (JDEx), 2021 WL 6882375 (C.D. Cal. Dec. 6,
  2021) ...................................................................................................................... 10

*Darton Archery LLC v. Precision Shooting Equip. Inc.*,
  No. CV-21-00321-TUC-JGZ, 2022 WL 22953617 (D. Ariz. May 10,
  2022) ........................................................................................................................ 9

*Early Warning Servs. v. Johnson*,
  No. 25-6052 (9th Cir. Sept. 26, 2025) .................................................................... 7

*Grider v. Keystone Health Plan Cent., Inc.*,
  580 F.3d 119 (3d Cir. 2009) ................................................................................ 11

*In re Grand Jury Proceedings*,
  87 F.3d 377 (9th Cir. 1996) ................................................................................. 11

*In re Snap Inc. Sec. Litig.*,
  No. CV 17-03679-SVW (AGRx), 2018 WL 7501294 (C.D. Cal. Nov.
  29, 2018) ............................................................................................................... 11

*Mardiros v. City of Hope*,
  No. 2:19-cv-02196-(MAAx), 2019 WL 13164174 (C.D. Cal. Oct. 2,
  2019) ........................................................................................................................ 4

*Medina v. Microsoft Corp.*,
  No. 14-cv-00143-RS (JSC), 2014 WL 3884506 (N.D. Cal. Aug. 7, 2014) ............. 6

*Phillips ex rel. Ests. of Byrd v. Gen. Motors Corp.*,
  307 F.3d 1206 (9th Cir. 2002) ............................................................................... 5

*RB Distrib. Inc. v. Skyward Auto. Prods. LLC*,
  Case No. CV-23-01068-PHX-KML, 2025 WL 254544 (D. Ariz. Jan. 21,
  2025) ........................................................................................................................ 8

*RPA Int'l Pty Ltd. v. Compact Int'l, Inc.*,
  No. 06-cv-1147 WQH(AJB), 2007 WL 4105725 (S.D. Cal. Nov. 16,
  2007) ........................................................................................................................ 6

*Seattle Times Co. v. Rhinehart*,
    467 U.S. 20 (1984) .................................................................................................... 5

*Symantec Corp. v. Acronis Corp.*,
    No. 11-5310 EMC (JSC), 2012 WL 3582974 (N.D. Cal. Aug. 20, 2012) ............... 8

*ThermoLife Int'l, LLC v. NeoGenis Labs, Inc.*,
    No. 2:18-cv-2980-HRH, 2019 WL 13564495 (D. Ariz. Feb. 21, 2019) ................ 10

**Other Authorities**

Uniform Trade Secrets Act § 5, cmt ................................................................................. 6

## I. INTRODUCTION AND BACKGROUND

The Court should enter Plaintiff Early Warning Services, LLC's ("EWS") proposed protective order to adequately protect EWS from Defendants' repeated misuse of EWS's protected information and apparent disregard for the Court's orders, EWS's rights, Defendant Warren Vurl Johnson's ("Johnson") ethical obligations, and the rule of law. For nearly a year, EWS has unsuccessfully sought Defendants' compliance with the Court's preliminary injunction order, which required and facilitated the return of EWS's proprietary information that Johnson improperly exfiltrated and has no legal right to retain. *See* Dkt. 70. Rather than comply with this order, which the Ninth Circuit affirmed in its entirety, Johnson instead has abused the legal process by filing multiple frivolous motions designed to skirt compliance, publish EWS's protected information, and force EWS to incur the substantial costs of responding to these filings.

For this and related pre-discovery misconduct, Johnson is not only in contempt of court and subject to a per diem fine (Dkt. 243), but has been referred to the Arizona State Bar (Dkt. 123) and sanctioned for a "bad faith," "meritless" motion to disqualify EWS's counsel. Dkt. 183 at 13. So far, these sanctions have proved insufficient to secure Johnson's compliance with the Court's preliminary injunction order. If almost a year of litigation comprising hundreds of docket entries, substantial sanctions, and multiple court orders cannot compel Defendants' compliance with an order that, *inter alia*, requires and facilitates the return of EWS's documents, there is no reason to conclude that a standard protective order will provide EWS with any meaningful protection if Defendants receive access to additional highly confidential or trade secret information that may be produced in discovery.

Because Defendants have shown they will misuse and disclose EWS's information despite this Court's orders, and because of the potential irreparable harm to EWS of disclosure of EWS's privileged, confidential, or trade secret information, good cause exists to enter each protection enumerated in the proposed protective

order, including (a) limited disclosure of Trade Secret and Attorneys' Eyes Only designated information to disclosed, legitimate counsel or experts, (b) a patent prosecution bar, (c) adequate procedural protections for designated material during and after this litigation, and (d) a privilege log of privileged communications prior to the date the Complaint (Dkt. 1) as filed.

Johnson provides neither clear alternative proposals to protect EWS's information nor valid authority for his objections. Instead, he misrepresents the record, raises arguments this Court already has rejected, and argues the underlying merits of claims and defenses or protections appropriate for specific documents. Each argument is irrelevant to the terms of a protective order and should be disregarded on that basis alone. However, certain misrepresentations in Johnson's opposition are so egregious that they cannot be allowed to stand.

*First*, Johnson falsely states that "two federal judges had" already "written opinions finding that the same Microsoft Teams 'privileged' chat did not involve legal advice and was not privileged." Dkt. 253 at 2. No federal judge has ever so opined, including the administrative law judges on the Trademark Trial and Appeal Board ("TTAB"). To the contrary, the TTAB[1] stated it would not rule on whether the Teams Chat contained privileged material without reviewing it, but ordered the Teams Chat sealed in each of the proceedings before it (the "TTAB Proceedings") due to the "'sacred' nature of the attorney-client privilege," pending *this Court's* determination of whether the Teams Chat contained privileged, trade secret, or other protected information.[2] Declaration of Paras Shah ("Shah Decl.") ¶ 5, Ex. 1 (Opposition No.

---

[1] Johnson incorrectly states that the two TTAB decisions were issued by Administrative Law Judges Lynch and Dunn. Dkt. 253 at 2. This is false; both decisions were issued by interlocutory attorneys. *See* Shah Decl. ¶¶ 2–3, Ex. 1 (Opposition No. 91291526, 18 TTABVUE (T.T.A.B. Oct. 1, 2024)), Ex. 2 (Cancellation No. 92085110, 14 TTABVUE (T.T.A.B. Oct. 1, 2024)).

[2] Specifically, the Board observed: "in view of the 'sacred' nature of the attorney-client privilege, in consideration of the Board's disposition of Applicant's remaining motions, and because the district court's determination in the civil action as to whether

91291526, 18 TTABVUE) at 11, Ex. 2 (Cancellation No. 92085110, 14 TTABVUE) at 10. *Second*, Johnson (not EWS) violated the privilege by "disclos[ing] [the Teams Chat] more than two years ago, in the wrongful termination action." Dkt. 253 at 6; Shah Decl. ¶ 4. Just as EWS has done in this case, EWS successfully moved to seal the repeated improper disclosures of the Teams Chat in that proceeding. Shah Decl. ¶ 5, Exs. 3, 4 (sealing orders).

Given Johnson's failure to provide valid objections, competent contrary authority, or alternative protective measures to protect EWS's propriety information—and given his ongoing contempt of court and refusal to comply with the preliminary injunction order—the Court should enter EWS's protective order as proposed. *See* Dkt. 241-1.

II. **ARGUMENT**

 a. ***The Limitation of Disclosure of Attorneys' Eyes Only and Trade Secret Material to Outside Counsel and Experts is Necessary and Narrowly Tailored to Address Defendants' Demonstrated Pattern of Disclosing EWS's Protected Information.***

Defendants have consistently demonstrated that they cannot be trusted to comply with *any* court order, let alone a standard protective order. Successive court orders, monetary sanctions, contempt, and bar referrals have collectively failed to secure Defendants' timely compliance with orders such as a straightforward preliminary injunction order affirmed by the Ninth Circuit or simple sealing orders. *See* Dkt. 70;

---

the communication at issue in the civil action constitutes a 'trade secret,' is privileged or is otherwise protectable from public disclosure would have a bearing on a determination of whether documents including the Chat filed with the Board should be shielded from public viewing, the Board will continue to shield [the Chat] . . . pending the suspension of this proceeding." Shah Decl. ¶¶ 2–3, Ex. 1 at 11–12; *see also id.*, Ex. 2 at 10. Johnson knows this is the TTAB's final position, admitting "the Board later noted—after this civil action was underway—that it would defer procedural control of sealing to this Court . . . ." Dkt. 253 at 5. Further, if Johnson believed the prior TTAB history was relevant (it is not), he could and should have raised it before now in one of his myriad challenges to the preliminary injunction.

3

*e.g.*, Dkts. 79, 81, 85, 89, 90, 94, 100, 109. That litany of sanctions notably stem from Defendants' misuse and improper disclosure of a narrow set of documents Defendants unlawfully took from EWS during Johnson's tenure as in-house counsel. If able to directly access more of EWS's most highly sensitive business information during discovery, Defendants have shown they are likely to misuse that information as well in any manner they see fit, regardless of a protective order requiring otherwise.

In the case of Attorneys' Eyes Only materials, EWS therefore proposes the following terms to govern the review of such information by counsel or experts:

> Outside counsel (herein defined as any attorney (i) at the parties' outside law firms of record in this action or (ii) retained in connection with this action and disclosed in writing to counsel of record, provided they have signed a non-disclosure agreement in the form attached as Attachment A);
>
> [and]
>
> Outside experts or consultants for purposes of this action, provided they have signed a non-disclosure agreement in the form attached as Attachment A and have been: (i) retained by outside counsel, (ii) approved by all parties to the action, or (iii) approved by the Court.

Dkt. 241-1 at 5–6 ¶¶ 6–7. The proposed order further restricts access to Trade Secret materials to "[u]p to three (3) outside experts or consultants of a party retained for purposes of this action (1) to whom disclosure is reasonably necessary" in addition to the above Attorneys' Eyes Only protocol. *Id.* at 6 ¶ 7(b).

The combination of (a) preventing Defendants' direct access to highly sensitive Attorneys' Eyes Only and Trade Secret information, and (b) requiring disclosure of experts or counsel who have not formally appeared to ensure their legitimacy are the least restrictive terms to prevent Defendants' continued misuse of EWS's protected information while allowing Defendants to defend themselves and are well within the Court's discretion. *Mardiros v. City of Hope*, No. 2:19-cv-02196-(MAAx), 2019 WL 13164174, at *2 (C.D. Cal. Oct. 2, 2019) ("'The unique character of the discovery

process requires that the trial court have substantial latitude to fashion protective orders.' 'Thus, a court may be as inventive as the necessities of a particular case require in order to achieve the benign purposes of the rule.'" (first quoting *Seattle Times Co. v. Rinehart*, 467 U.S. 20, 36 (1984); and then quoting *Phillips ex rel. Ests. of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1212 (9th Cir. 2002)).

### i. *Defendants' History of Misuse Disqualifies Them from Direct Access to EWS's Most Sensitive Information.*

Given Defendants' unparalleled dedication to retaining, misusing, and disclosing EWS's protected information *prior to discovery* in the face of varied and substantial sanctions, the least restrictive means to protect EWS's highly sensitive information from almost certain misuse is to prevent Defendants themselves from directly assessing the small subset of Highly Confidential or Trade Secret documents potentially produced in discovery. EWS therefore has proposed withholding only two narrow subclasses of the most sensitive information from direct review by the parties. *See* Dkt. 241-1 at 5–6 ¶¶ 6–7 (detailing "Trade Secret" and "Attorneys' Eyes Only" designations). EWS anticipates using these two designations sparingly—and in the case of the Trade Secret designation, likely not at all. Further, all parties will have full access to the vast majority of documents, including those without confidentiality designations or those designated Confidential under the proposed protective order. *See id.* at 4–5.

Defendants' refusal to comply with Court orders and their repeated mistreatment and disclosure of EWS's protected information pre-discovery warrant such a safeguard. *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992) (requiring the court to undertake "a factual inquiry" and "examine . . . all the risks and safeguards" before issuing a protective order). EWS's ability to vindicate its rights should not depend on the disclosure of its most sensitive business information directly to Defendants with a history of misusing similar information. *See Beam Sys., Inc. v. Checkpoint Sys., Inc.*, No. CV95-4068-RMT (AJWX), 1997 WL 364081, at *2 (C.D.

Cal. Feb. 6, 1997) ("If protective orders were not issued to safeguard the confidentiality of trade secrets and other confidential commercial information when warranted by the circumstances, litigants would be forced to choose between fully presenting their claims or defenses (and thereby destroying their trade secrets through disclosure to competitors or the public), or foregoing their claims or defenses (in order to keep their trade secrets and other sensitive information confidential)."); *see also* Uniform Trade Secrets Act § 5, cmt ("If reasonable assurances of maintenance of secrecy could not be given, meritorious trade secret litigation would be chilled.").

While not all potentially discoverable information merits this particular protection, the information at issue here unequivocally does. Courts have entered similar protections in far less egregious situations due to the substantial harm to a party of potentially losing its trade secret protection through an opposing party's disclosure. *E.g.*, *RPA Int'l Pty Ltd. v. Compact Int'l, Inc.*, No. 06-cv-1147 WQH(AJB), 2007 WL 4105725, at *2–3 (S.D. Cal. Nov. 16, 2007) (holding "[t]he great potential harm of disclosing Plaintiffs' trade secrets directly to [*pro se*] Defendant Soo . . . outweighs Defendant Soo's claimed need for the information" and requiring *pro se* defendant's expert to "review the information under the terms of the Protective Order"); *see, e.g.*, *Bag Software*, 960 F.2d at 1470 (limiting disclosure of confidential and trade secret information to outside counsel); *Medina v. Microsoft Corp.*, No. 14-cv-00143-RS (JSC), 2014 WL 3884506, at *3 (N.D. Cal. Aug. 7, 2014) (granting motion for a protective order prohibiting hat a *pro se* plaintiff from viewing "highly confidential" material). Defendants' putative *pro se* status does not entitle them to directly view EWS's highly confidential or trade secret information, nor should they be permitted to do so here.

    ii.  ***Defendants' Experts and Undisclosed Counsel Must be Disclosed and Sign a Non-Disclosure Agreement to Ensure Independence.***

Disclosure and ability to confirm the legitimacy of Defendants' alleged experts

or legal aids is necessary to ensure they are independent from Defendants' schemes and are properly accountable to the Court for complying with the protective order.

Most critically, Defendants have orchestrated an extensive plan to misuse EWS's trade secrets. It is unclear prior to discovery who else may be involved in Defendants' plan, including purported experts or legal consultants—particularly as Johnson himself is an attorney (albeit one suspended from practicing) engaged in unlawful and unethical behavior in furtherance of this scheme. A protective order not requiring the verified independence of consulting legal counsel or other experts allows a loophole through which any other yet-identified members of Defendants' unlawful enterprise—or simply those who would otherwise misuse EWS's information—can access protected information under the guise of purporting to provide some expert or legal assistance. The Court should not permit Defendants' averment of legitimate experts and likely misuse thereof. *See Beam Sys.*, No. CV95-4068-RMT (AJWX), 1997 WL 364081, at *6 (allowing access to protected information only through independent expert because "[b]y their conduct, plaintiffs and their counsel have demonstrated that they cannot be trusted with defendants' confidential materials").

Indeed, Johnson has implicitly admitted his engagement of at least one attorney in connection with this litigation who has not entered an appearance and whose identity is unknown. *Early Warning Servs. v. Johnson*, No. 25-6052, D.E. 4.1 at 1 (9th Cir. Sept. 26, 2025) (arguing forensic imaging will "index his entire digital life— including **privileged communications about this very case**" (emphasis added)); *id.* at 14 (fearing the "destruction of attorney-client privilege and privacy," including "[Johnson's] litigation strategy, [and] communications with counsel"). Johnson apparently is either receiving assistance on his briefs or using artificial intelligence to draft them. *See, e.g.*, Dkt. 240 at 2 (leaving blanks in filed document for Johnson's own personal cell phone number as "(785) [your phone]" (alteration in original)). Disclosure to either an unnamed counsel or an artificial intelligence platform of EWS's protected information would not only be further misuse and disclosure of

7

EWS's protected materials, but appears to be an ongoing active threat to EWS's information the protective order must address.

This provision is not "a veto over Defendant's access to expert assistance" (Dkt. 253 at 11), but a necessary safeguard to prevent Defendants from sharing EWS's protected information with other bad actors or non-independent individuals, as Johnson apparently already is doing. *See Symantec Corp. v. Acronis Corp.*, No. 11-5310 EMC (JSC), 2012 WL 3582974, at *3 (N.D. Cal. Aug. 20, 2012) (holding party "should not have to provide [an expert] access to its highly confidential information" when there is a "tangible risk" that the expert "will not be able to separate the highly confidential information he gleans from reviewing Defendant's" proprietary information, despite plaintiff's argument that the order "allows [defendant] veto power with respect to [plaintiff's] experts"); *Beam Sys.*, 1997 WL 364081, at *6 (requiring independent expert). Any lesser safeguards will be inadequate to protect EWS's interests and will render the protective order inefficacious.

### b. The Patent Prosecution Bar Is Warranted.

Johnson's only objection to Paragraph 11 of the proposed protective order ("Prosecution Bar")—that it is so overbroad it will somehow "cripple" EWS's business by preventing EWS or its outside counsel from prosecuting EWS's own patents—is meritless. Dkt. 253 at 8. With no valid objection to the Prosecution Bar *as applied to Defendants*, the Court should adopt this term. To quell Johnson's concern for EWS's own prosecution efforts, the Prosecution Bar imposes a clear and reasonable limitation on only those "who receive[] access to the Protected Material" under the protective order. Dkt. 241-1 ¶ 11. EWS and its outside counsel do not "receive" the information pursuant to the order and thus are not prevented from prosecuting EWS's patents merely by Johnson's exfiltration of the patent-related trade secrets underlying this litigation. To the contrary, this targeted provision directly addresses the "opportunity for inadvertent [or intentional] disclosures," which is particularly substantial here. *See RB Distrib. Inc. v. Skyward Auto. Prods.*

*LLC*, Case No. CV-23-01068-PHX-KML, 2025 WL 254544, at *4 (D. Ariz. Jan. 21, 2025) (entering protective order with patent prosecution bar, because moving party demonstrated a "substantial" risk of inadvertent compromise of its highly confidential technical information). For these reasons, the Court should adopt EWS's proposed protective order, including the Prosecution Bar.

### c.  The Protective Order Must Protect Designated Documents During and After the Litigation.

Paragraph 13 concerns the procedure for a *receiving* party to designate its own protected information pursuant to the protective order. Dkt. 241-1 at 9 ¶ 13. While it may be uncommon for a *producing* party to produce the *receiving* party's protected information, it likely will—and should—occur here, as Johnson has demonstrated possession of such materials. Johnson has likewise raised consistent, unfounded understandings of the protectable nature of EWS's proprietary information such that EWS needs a mechanism to designate *its own materials* that Defendants may have improperly attained and later produce without the appropriate confidentiality designations. *E.g.*, Dkt. 253 at 7 (maintaining "privilege could not attach to" the Teams Chat, contrary to this Court's determination, *see* Dkt. 70 at 10); *id.* at 14 (Johnson arguing his "act of emailing his index templates to himself" containing EWS's trade secrets is "lawful internal use"). Again, Johnson has provided no alternative to this reasonable protection made necessary by Defendants' prior misconduct. Paragraph 14 provides dispute resolution procedures for designated documents to ensure the efficient resolution thereof, of which any party can avail itself. Dkt. 241-1 at 9–10 ¶ 14.

Paragraph 21 then confirms the survival of confidentiality designations and applicable restraints on the use of designated materials after the termination of this action. Dkt. 241-1 at 10–11 ¶ 21. Johnson provides no authority or counter-position, but simply objects. Dkt. 253 at 10. Protective orders routinely require that the confidential obligations imposed under such an order continue even after termination of the litigation, absent court order or the parties' written agreement. *Darton Archery*

*LLC v. Precision Shooting Equip. Inc.*, No. CV-21-00321-TUC-JGZ, 2022 WL 22953617, at *2 (D. Ariz. May 10, 2022) (entering stipulated protective order providing that "[e]ven after final disposition of this litigation, the confidentiality obligations imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing or a court order otherwise directs"); *ThermoLife Int'l, LLC v. NeoGenis Labs, Inc.*, No. 2:18-cv-2980-HRH, 2019 WL 13564495, at *2 (D. Ariz. Feb. 21, 2019) (same).[3] The same is appropriate here.

### d.     The Privilege Log Provisions are Standard and Appropriate.

Johnson disputes Paragraph 18's provision that "privileged or attorney work-product materials created after the filing date of the original Complaint in this matter will not be logged on any privilege log." Dkt. 253 at 9; Dkt. 241-1 at 10 ¶ 18. However, "[c]ourts in this circuit routinely deny a motion to compel a privilege log of attorney-client communications or work product dated after commencement of litigation." *Colibri Heart Valve LLC v. Medtronic CoreValve LLC*, No. 8:20-cv-00847-DOC (JDEx), 2021 WL 6882375, at *3 (C.D. Cal. Dec. 6, 2021) (citation omitted) (gathering cases). "[C]ounsel's communications with the client and work product developed once the litigation commences are presumptively privileged and need not be included on any privilege log." *Id.* (alteration in original). This is in part because "a rule requiring creation of an ongoing log of all post-complaint privileged communications would

---

[3] Several of the model proposed protective orders employed by other Judges in this district use similar language. *See* Judge Lanham's Standing Protective Order at 12 ("After termination of this action, the provisions of this order shall continue to be binding, except with respect to those documents and information that became a matter of public record."); Judge Snow's Stipulated Protective Order at 4 ("Even after final disposition of this litigation, the confidentiality obligations imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing or a court order otherwise directs."); Judge Tuchi's Protective Order at 11 ("After termination of this action, the provisions of this order shall continue to be binding, except with respect to those documents and information that became a matter of public record."); Judge Desai's Standard Protective Order at 13 (same); Judge Lanza's Protective Oder at 11 (same); Judge Liburdi's Sample Protective Order at 11 (same).

1 have a chilling effect on the attorney-client relationship," and moreover, is unduly burdensome without specifically enumerated need for that information. *In re Snap Inc. Sec. Litig.*, No. CV 17-03679-SVW (AGRx), 2018 WL 7501294, at *1 (C.D. Cal. Nov. 29, 2018) (quoting *Grider v. Keystone Health Plan Cent., Inc.*, 580 F.3d 119, 139 n.22 (3d Cir. 2009)).

Johnson has identified no legitimate reason for needing to review EWS's privileged communications post-dating the Complaint. While he lists "four categories of [alleged] misconduct" by EWS, none are relevant to the claims and defenses in this litigation. *See* Dkt. 253 at 9–10. Johnson's vague allegations untethered to the pending claims and defenses do not entitle him to a fishing expedition after which he would then likely file further "myriad frivolous filings." Dkt. 183 at 11 n.2. To the extent Johnson implies the crime-fraud exception may void privilege based on his allegations, he is incorrect. He has failed to make "a prima facie showing that the communications were in furtherance of an intended or present illegality . . . and that there is some relationship between the communications and the illegality." *In re Grand Jury Proceedings*, 87 F.3d 377, 380 (9th Cir. 1996) (alteration in original) (citations omitted).

### III. CONCLUSION

For the reasons stated herein and in the corresponding Motion (Dkt. 241), EWS respectfully requests this Court to enter EWS's proposed protective order.

//
//
//
//
//
//
//
//

| | | |
|---|---|---|
| 1 | DATED: October 14, 2025 | Respectfully Submitted, |

KILPATRICK TOWNSEND & STOCKTON LLP

*/s/ Kristin M. Adams*
Erick Durlach
Dennis L. Wilson (admitted *pro hac vice*)
Sara K. Stadler (admitted *pro hac vice*)
Kristin M. Adams (admitted pro hac vice)
6909 E. Greenway Parkway, Suite 100
Scottsdale, Arizona 85254
Tel: (602) 726-7319
Fax: (623) 321-1009
*edurlach@ktslaw.com*
*dwilson@ktslaw.com*
*sstadler@ktslaw.com*
*kmadams@ktslaw.com*

BRYAN CAVE LEIGHTON PAISNER LLP
George C. Chen
Jacob A. Maskovich
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
Tel: (602) 364-7000
Fax: (602) 364-7070
*george.chen@bclplaw.com*
*jamaskovich@bclplaw.com*

Attorneys for Plaintiff
Early Warning Services, LLC

**CERTIFICATE OF SERVICE**

The undersigned certifies that on October 14, 2025, a true and correct copy of the foregoing document was sent via electronic mail to the following parties:

Warren V. Johnson
215 E 18th St
Lawrence, KS 66044
warrenvjohnson@gmail.com
*Defendant Warren V. Johnson, pro se*

Brandon O'Loughlin *and* P.A.Z.E., LLC
1317 W. 13th Place
Tempe, AZ  85281
(623) 295-5438
contact@paze.guru
*Defendant Brandon O'Loughlin Individually and*
*as Authorized Representative for Defendant P.A.Z.E., LLC*

　　　　　　　　　　　　　　　　　　　*/s/ Kristin M. Adams*
　　　　　　　　　　　　　　　　　　　Kristin M. Adams