WARREN V. JOHNSON
215 E 18th St
Lawrence, KS 66044
warrenvjohnson@gmail.com

# UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF ARIZONA

| | |
|---|---|
| EARLY WARNING SERVICES, LLC<br><br>Plaintiffs,<br>v.<br><br>MR. WARREN V. JOHNSON;<br>BRANDON O'LOUGHLIN; P.A.Z.E., LLC<br><br>Defendants. | Case No.: CV-24-01587-PHX-SMB<br><br>**DEFENDANT WARREN V. JOHNSON'S REPLY IN SUPPORT OF MOTION FOR RULING THAT PRIVILEGE IS WAIVED OR VITIATED UNDER THE CRIME-FRAUD EXCEPTION** |

**DEFENDANT WARREN V. JOHNSON'S REPLY IN SUPPORT OF MOTION FOR RULING THAT PRIVILEGE IS WAIVED OR VITIATED UNDER THE CRIME-FRAUD EXCEPTION**

**INTRODUCTION: THE PROCEDURAL NULLIFICATION OF A SUBSTANTIVE RIGHT**

The Court's recent orders have erected a **procedural barrier so severe that it extinguishes any meaningful ability to assert the crime-fraud exception.** EWS's Opposition (Dkt. 281) avoids this foundational due-process problem and that the Court has now made perilous for Defendant even to reference.

The core issue is no longer whether Defendant has met the prima facie showing for crime-fraud. It is whether the Court will **permit any such showing to be made at all.** The answer, under the current regime, is no.

Dkt. 283 makes this inescapable. It states:

> "From the date of this Order, the Court will require Johnson to pay any attorneys' fees incurred by [EWS] in motioning to seal **any subsequent filing by Johnson containing the Teams Chat, or any information this Court has already established as being privileged**." (Dkt 283 at pg. 2: 3-5)

This threat of **automatic, mandatory fee-shifting**—triggered not by a judicial finding but by EWS's unilateral assertion—renders the defense **theoretically available but practically impossible**. The Court has repeatedly refused to articulate what it has "established as being privileged," while at the same time expanding that category to include communications and information that are plainly non-privileged. Because these determinations shift from order to order with no consistent standard, **no reasonable litigant could predict what future language will be deemed sanctionable**, and no attorney (or pro se litigant) could safely brief the case.

This structural uncertainty is compounded by the Court's history: it has **granted every single** sealing request EWS has made, making it virtually certain that any future claim by EWS that Defendant has referenced "established" privileged material will be rubber-stamped. Together, these conditions create a form of **financial prior restraint**, where the risk of sanctions prevents Defendant from presenting arguments, evidence, or the very facts necessary to assert crime-fraud.

This is not merely legal error; it is a **due-process violation** that forecloses an entire category of defense that federal courts are obligated to consider.

## I. EWS'S OPPOSITION IGNORES THE IMPOSSIBLE DILEMMA CREATED BY THE COURT

EWS's Opposition argues in complete isolation from reality. It never engages the merits of Johnson's crime-fraud motion (Dkt. 272), nor does it acknowledge that the Court has **sealed the very core of that motion**—the description of the conduct alleged to constitute crime or fraud. EWS then exploits this Court-imposed blackout by asserting that Johnson has not met his burden, while fully aware that the Court's

sealing orders make it **impossible to present that showing publicly** and serve to keep the Teams Chat concealed at all costs. This is the ultimate procedural catch-22:

1. Johnson must describe the contents of the communication to prove it furthered a crime or fraud.
2. The Court seals any filing that describes those contents.
3. EWS then argues the sealed, and now unseen, descriptions are insufficient.
4. The Court now threatens to financially sanction Johnson for repeating Step 1.

EWS's Opposition is not a legal brief; it is an exploitation of a judicial suppression regime.

## II. THE COURT'S DUTY UNDER *ZOLIN* IS UNAVOIDABLE AND HAS NOT BEEN FULFILLED

The crime-fraud exception is not a discretionary doctrine. *United States v. Zolin*, 491 U.S. 554, 572 (1989), requires the Court to assess whether a prima facie showing has been made and to rule on the exception's application. This Court cannot discharge this duty by:

- Sealing the motion that makes the prima facie showing (Dkt. 277).
- Sealing the opposition explaining why the sealing was improper (Dkt. 282).
- Threatening sanctions against any future attempt to make the showing (Dkt. 283).

The Court has conducted an in camera review of the Teams Chat. The Court stated: 'I've reviewed the chat. I think it qualifies as attorney-client privilege.' (Dkt. 75 at 21:6-11). Having reviewed the Chat, the Court can determine whether the crime-fraud exception applies without requiring Johnson to make further public showings that trigger sealing and sanctions. It is uniquely positioned to rule on whether the contents of that Chat, as described in the *sealed* record, establish a prima facie case of crime or fraud. To refuse to do so, while simultaneously preventing Johnson from perfecting the public record, is an abdication of the Court's judicial responsibility.

## III. THE SANCTIONS THREAT TRANSFORMS A JUDICIAL PROCESS INTO A FINANCIAL VETO

The Court's order at Docket 283 is a watershed moment, converting a privilege dispute into a due process violation. By mandating that Johnson "pay any attorneys' fees incurred by Defendants in motioning to seal any subsequent filing by Johnson containing the Teams Chat, *or any information this Court has already established as being privileged,*" (*Id.*) the Court has:

- **Delegated Its Judicial Power:** EWS now holds a financial veto over Johnson's future filings. Any alleged mention of the Chat or any other information this court has previously established as privileged, regardless of context or merit, triggers an automatic financial penalty payable to EWS.
- **Criminalized the Defense:** The act of mounting a defense—challenging privilege via the crime-fraud exception—has been reclassified as a sanctionable offense.
- **Made the Right to Appeal Meaningless:** How can Johnson appeal the Court's refusal to apply the crime-fraud exception if he cannot file a notice of appeal or an opening brief that describes the very evidence he claims was wrongfully withheld?

This use of the court's inherent powers is not "restrained" or "cautious" as required by *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991), but is instead a blunt instrument to suppress disfavored arguments.

## IV. THE ASYMETRICAL RECORD IS FUNDAMENTALLY UNFAIR

The current state of the docket is constitutionally intolerable. The public record contains:

- EWS's accusations against Johnson.
- EWS's characterizations of Johnson's sealed filings.

- The Court's findings—adopting EWS's characterizations wholesale—criticizing arguments the Court has itself prevented Johnson from making publicly.

The sealed record contains:

- Johnson's defense.
- Johnson's evidence challenging EWS's declarations.
- Johnson's arguments regarding potential unlawful conduct by EWS.
- **And critically, the Court's sealed order (Dkt. 123) that imposes findings against Johnson based on a privilege theory that is internally irreconcilable.** (Dkt 123, Sealed Order)

In that sealed order, the Court concludes that Johnson was a **"mere employee of the legal department"** who **lacked authority to waive EWS's privilege** (Id. at pp. 6–7). This characterization strips Johnson even of his counsel title and role. Yet in the same order, the Court simultaneously finds that Johnson **created privileged communications with outside counsel**, despite no direct instruction from a Supervisor or get such advice, through an informal hallway discussion and then **violated that privilege**, warranting referral to the State Bar (Id. at pp. 8–10).

Both conclusions cannot be true. Under Ninth Circuit law, a "mere employee" cannot:

1. **Create** corporate attorney-client privilege;
2. **Waive** corporate attorney-client privilege; or
3. Be subject to discipline for allegedly "violating" a privilege he had no legal authority to create or control.

Yet the Court relies on precisely this contradiction to issue public findings against Johnson—while keeping the reasoning, evidence, and contradictions **sealed** and therefore immune from scrutiny or rebuttal.

This makes the record asymmetry even more pernicious: the Court's adverse findings against Johnson are public, but the order showing *how those findings were*

*reached, and the logical impossibility of the privilege theory underlying them,* remains sealed.

A judicial process in which one party's accusations and interpretations are public, while the opposing party's defenses, evidence, and even the Court's own contradictory reasoning are suppressed, is the antithesis of a fair and impartial proceeding.

## V. EWS'S OPPOSITION IGNORES THE MERITS OF THE CRIME-FRAUD EXCEPTION, PROVING ITS INTELLECTUAL BANKRUPTCY

EWS's thirteen-page Opposition (Dkt. 281) is a study in evasion. It dedicates zero pages to contesting the substantive prima facie case for the crime-fraud exception laid out in the sealed motion (Dkt. 272). Instead, EWS engages in a procedural shell game, focusing on:

- A clerical citation error, now corrected.
- Re-litigating long-settled, peripheral issues like the Employee Handbook.
- Arguing the motion is "untimely," a transparent attempt to avoid a ruling on the merits.

**Notably absent from their Opposition is any argument that the conduct described in the Teams Chat is** *legal***.**

EWS does not and cannot argue that the potential violations detailed in the sealed motion are anything but a prima facie case of criminal conduct. Their silence on the merits is a tacit admission of the strength of the crime-fraud showing.

## VI. EWS'S CONCEALMENT OF THE TTAB RULINGS REVEALS A GUILTY CONSCIENCE

EWS's hysterical focus on a minor citation error is a calculated distraction from their own profound misconduct: the strategic concealment for over a year of two adverse TTAB rulings.

**A. The Concealment Itself Is the Scandal.**

The TTAB issued its rulings on **October 1, 2024**. Just three days later, on **October 4, 2024**, EWS filed a Case Management Statement (Dkt. 41) in *this Court* that mentioned the TTAB proceeding was stayed but **willfully omitted any mention of the adverse privilege determinations.** EWS allowed this Court to operate for over a year under the assumption that no other tribunal had considered the privilege status of the Teams Chat.

This was not an oversight. A confident privilege holder, certain of its position, would have promptly disclosed the TTAB rulings and distinguished them. EWS concealed them because the rulings were—and remain—a direct threat to their privilege claim. The TTAB judges, reviewing the evidence before them, found EWS had "**fell short of its burden of proving that the exhibits … are covered by the attorney-client privilege.**"

### B. The Concealment Violates Ethical Duties

This conduct violates the duty of candor to the tribunal. EWS had an ethical obligation to disclose legal authority known to be directly adverse to their privilege position. Their failure to do so demonstrates a consciousness of guilt—they knew the TTAB rulings severely undermined their argument in this Court.

### C. The "Distraction Campaign" Proves the Point

Since Johnson independently discovered and disclosed the TTAB rulings, EWS has engaged in a scorched-earth campaign of misdirection:

1. **False Declarations:** Immediately filing a perjurious declaration trying to bolster their privilege claim by claiming an attached document is clearly and undeniably an order to seal the Teams Chat when on its face the document is no such thing.
2. **Aggressive Sealing:** Moving to seal any and all criticism, including a table of false declarations citing entirely public documents.
3. **Procedural Nitpicking:** Focusing on a minor citation error to avoid addressing the existential threat the TTAB rulings pose to their case.

This pattern and EWS's attempt to manufacture a sealing order proves that EWS cannot win on the merits. Their entire strategy is to suppress the evidence and distract the Court from the central, undeniable fact: **they concealed adverse judicial authority because they know their privilege argument is weak and the conduct described in the Chat is indefensible.**

## VII. THE COURT MUST LOOK BEYOND EWS'S PROCEDURAL SMOKESCREEN

EWS invites the Court to dismiss the motion over a citation error while ignoring their year-long, unethical concealment. The Court should reject this false equivalence.

The clerical error was inadvertent and immediately corrected. EWS's concealment was a deliberate, strategic decision that corrupted these proceedings for over a year. The appropriate response is not to punish the party who uncovered the deception, but to sanction the deception itself and, at a minimum, rule on the merits of the motion EWS tried so hard to bury.

## VIII. CONCEDING ALL PROCEDURAL ARGUMENTS, THE CRIME-FRAUD EXCEPTION STANDS UNOPPOSED

For the singular purpose of isolating the determinative legal issue, and only for the sake of this reply, Johnson could concede every procedural and tangential argument EWS raises in its Opposition.

- **Conceded:** The motion could be characterized as seeking reconsideration.
- **Conceded:** The TTAB rulings are not binding on this Court.
- **Conceded:** Arguments about the Employee Handbook and "sword-and-shield" have been previously rejected. (Court has refused to address these points)
- **Conceded:** A privileged communication can, in theory, also contain trade secrets. (Despite the Cheney declaration claiming the Teams chat "reflected" privileged communications as opposed to containing privileged communications (Dkt 17 at ¶10)

- 8 -

**These concessions change nothing.** Stripped of these procedural distractions, EWS's Opposition is revealed to be utterly hollow. It contains **zero** argument on the only question that matters: **Whether the conduct described in the Teams Chat establishes a prima facie case of crime or fraud that vitiates the attorney-client privilege.**

EWS does not—because it cannot—argue that the potential violations detailed in the sealed motion are legal. They do not contest that the communications may have been in furtherance of that conduct. Their entire strategy is to talk about everything *except* the contents of the Teams Chat and the merits of the crime-fraud exception.

This Court's duty under *Zolin* is not discretionary. It is mandatory. The exception is not a counterclaim; it is a challenge to the very existence of the privilege. If the crime-fraud exception applies, the Teams Chat was **never privileged**, EWS has not provided evidence, or even alleged, that Johnson's notes and the titles of inventions have been misappropriated, and EWS's entire case for injunction and sanctions based on its disclosure evaporates.

**The Court now faces a binary choice:**

1. **Accept EWS's invitation** to avoid its judicial duty through procedural technicalities, thereby allowing a potential privilege to conceal evidence of potential criminal conduct.
2. **Fulfill its duty under *Zolin*** and rule on the crime-fraud exception based on the *uncontested* prima facie case in the sealed record.

By conceding EWS's every peripheral argument, Johnson demonstrates that the crime-fraud exception is the only issue in play. EWS's failure to address it is a tacit admission that they cannot win on the merits.

**The Court should not allow EWS to hide the ball when the game is over. The crime-fraud exception must be ruled upon.**

CONCLUSION

The Court stands at a constitutional and ethical precipice. EWS has created a procedural morass to avoid a ruling on the crime-fraud exception, a strategy that depends on this Court ignoring its own duty under *Zolin*.

Johnson respectfully requests that the Court see through EWS's smokescreen and choose one of two constitutionally permissible paths:

1. Adjudicate the Motion: Rule on the crime-fraud exception based on the sealed record and the Court's in camera review, fulfilling its duty under *Zolin*; or

2. Remove the Barrier: Stay the automatic sanctions provision of Dkt. 283 and permit a meaningful, reviewable challenge to the privilege determination.

The Court should not reward EWS's year of concealment and procedural gamesmanship by allowing them to avoid a merits-based ruling. The crime-fraud exception cannot be nullified through a campaign of distraction and suppression.

Respectfully Submitted,

DATED: December 2, 2025

   s/Warren V. Johnson
Warren V. Johnson
215 E 18th St
Lawrence, KS 66044

## CERTIFICATE OF SERVICE

I hereby certify that on December 2, 2025, I caused the foregoing DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR RULING THAT PRIVILEGE IS WAIVED OR VITIATED UNDER THE CRIME-FRAUD EXCEPTION to be served via the Court's CM/ECF system upon all counsel of record.

/s/ Warren V. Johnson
Warren Vurl Johnson