1

2

3

WARREN VURL JOHNSON
warrenvjohnson@gmail.com
215 E 18th St
Lawrence, KS 66044

4

5

6

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

7

8

9

10

11

12

13

| EARLY WARNING SERVICES, LLC | Case No.: CV24-01587-PHX-SMB |
|---|---|
| Plaintiffs, v. | |
| MR. WARREN V. JOHNSON; BRANDON O'LOUGHLIN; P.A.Z.E., LLC | **DEFENDANT WARREN JOHNSON'S EMERGENCY MOTION TO VACATE PRELIMINARY INJUNCTION UNDER FED. R. CIV. P. 60(b)(6)** |
| Defendants. | |

14

15

16

**DEFENDANT WARREN JOHNSON'S EMERGENCY MOTION TO VACATE**

**PRELIMINARY INJUNCTION UNDER FED. R. CIV. P. 60(b)(6)**

17

## I. INTRODUCTION

18

19

20

21

22

23

Defendant Warren Johnson moves under Fed. R. Civ. P. 60(b)(6) to vacate the December 4, 2024 preliminary injunction. The Court's primary justification for the injunction—the prediction that it would not "cripple [Johnson's] ability to practice his trade" (Dkt 70 at 24)—has been decisively disproven by post-issuance events. Far from a narrow restriction, the Injunction has functioned as a *de facto* lifetime ban from the Intellectual Property and Innovation sectors.

24

25

26

The extraordinary circumstances warranting relief include: (*See Johnson Declaration, Ex. A for List*)

27

28

- **Manifest Injustice & Career Destruction (Ground #4):** The Court's prediction of "no crippling effect" was tragically incorrect. In January 2025, a

near-certain hire at Komatsu for a Global Innovation role vanished instantly following a background check of this record. In August 2025, Johnson was terminated from his role at the University of Kansas, with the termination letter explicitly citing the Court's findings in the Injunction as the sole cause. **Johnson Decl. ¶28-35.**

- **Fraud on the Court (Ground #9):** EWS concealed two October 1, 2024 TTAB rulings finding it "fell short of its burden of proving" privilege over the Microsoft Teams Chat while simultaneously representing to this Court that the Chat was "undoubtedly privileged." **Johnson Decl. ¶1.**

- **Internal Contradictions (Grounds #1, #3, #6, #10):** The Order finds the Chat is "not a trade secret" causing "too speculative" harm, yet enjoins its use. It relies on an unadjudicated contract for irreparable harm. It uses domain values for damages while EWS now admits domains aren't trade secrets.

- **False Evidence (Grounds #5):** The Cheney Declaration—cited 25 times—contains fabricated statements including the "high school classmate revenge" narrative (school records prove false).

- **The Court Mischaracterizes Indices** (**Ground #20**) as "containing invention disclosures and concept briefs" when they're 92.86% public data. Johnson Decl. ¶7-8, 14-20; Exh. C.

- **Moving Target (Grounds #2, #7, #8, #9, #12, #13):** After 18 months, EWS refuses to identify trade secrets. Claims became *less* specific (from "indices of concept briefs" to "strategies concerning strategies"). EWS now disclaims documents are secrets, claiming only "underlying strategies." Johnson Decl. ¶27

- **DTSA Violation (Ground #14):** By claiming "strategies" instead of documents, EWS violates 18 U.S.C. § 1836(b)(3)(A)(i), which prohibits injunctions based "merely on information the person knows."

- **Industry Standard/Johnson's Work (Grounds #10, #15, #16, #17):**
Empirical analysis of 12,088 domain registrations proves the alleged "secret strategy" is ubiquitous (55.4% practice it). Johnson's performance reviews prove he created the alleged "strategies" as EWS's only IP professional for nine years. Johnson Decl. ¶3-6, 18-68.

## II. LEGAL STANDARD

Rule 60(b)(6) permits relief for "any other reason that justifies relief" when: (1) extraordinary circumstances exist; (2) the judgment works extreme hardship; and (3) grounds don't fit clauses (1)-(5). *United States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049 (9th Cir. 1993).

Extraordinary circumstances exist when previously unknown information shows a court's order rested on incorrect premises. *Plummer v. Chemical Bank*, 668 F.2d 654, 659 (2d Cir. 1982). Fraud on the court—particularly concealment of directly adverse authority—constitutes extraordinary circumstances. *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944).

Attorneys have an absolute duty: "A lawyer shall not knowingly...fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel." Arizona ER 3.3(a)(2).

## III. ARGUMENT

### A. Ground #1: Total Absence of Evidence—The Exfiltration Fraud

After nearly **two years of litigation**, an injunction requiring forensic imaging, and a contempt finding—**EWS has produced zero evidence Johnson took or possesses anything.**

**EWS's Claims:** Cheney declared Johnson "sent a volume of EWS's documents from his work email account to his personal email account" with "emails, attachments and other documents" confirmed by "investigation by EWS's Security and IT departments." (Dkt 17, Cheney Decl. ¶19.)

- 3 -

**EWS's Evidence:** Nothing.

- No forensic reports

- No server logs

- No email evidence

- No list of exfiltrated documents

- No files Johnson allegedly possesses

- No screenshots, metadata, or file listings

The entire case rests on Cheney's bare assertion.

**The Injunction's Foundation:** The Order requires Johnson to submit all devices for imaging to search for materials EWS has never proven exist. The contempt finding punishes Johnson for refusing to image devices based on unproven allegations. (Dkt 70)

**Legal Problem:** *Winter* requires actual evidence of harm, not speculation. 555 U.S. at 22. An injunction cannot rest on bare assertions contradicted by documentary evidence (Johnson Declaration ¶13 Exhibits G) showing public data and industry standard practices).

This is fraud: obtaining extraordinary relief through claims of "exfiltration" while refusing to produce a single piece of evidence it occurred.

**B. The Injunction Must Be Vacated Because Its Factual Foundation—That It Would Not Prevent Johnson from Working—Has Collapsed**

A preliminary injunction is an equitable remedy that must not impose an "undue hardship" on the defendant. This Court specifically noted that the injunction was tailored so as not to "cripple Johnson's ability to practice his trade." (Dkt. 70). However, "extraordinary circumstances" have emerged that prove the Injunction is doing exactly that.

The Injunction has become a "Scarlet Letter" that renders Johnson unemployable in his field of expertise. The "manifest injustice" is no longer theoretical; it is documented:

1. **The Komatsu Rejection:** After months of interviews for a Global Innovation position—where Johnson was told he was the top candidate—the process stopped abruptly in January 2025 immediately following a background check and review of the Injunction.

2. **The KU Termination:** Most definitively, Johnson's subsequent employer, the University of Kansas, terminated him in August 2025. The termination letter (Exh. ) explicitly states the Injunction and the Court's findings therein were the basis for his dismissal.

When an injunction's real-world application prevents a citizen from practicing their profession, it violates the fundamental principle that equity should not be used to "deprive a person of their livelihood." Because the Court's "no-crippling" prediction has been refuted by two separate employers, the Injunction is manifest injustice and must be vacated.

### Ground #2: Falsified Evidentiary Foundation—The Cheney Declaration

The Order cites Cheney's declaration 25 times. **Exhibits D, E, and F** expose systematic falsity.

**The "High School Classmate" Perjury:** Cheney claimed Johnson and O'Loughlin "graduated" together from Mesa High School in 1999, forming a "revenge conspiracy." *Id.* Cheney Decl. ¶32.

**Proof of Falsity:** Mesa Public Schools confirms Johnson never attended. Johnson has Idaho GED and Highland High yearbook. Cheney's sole source: user-editable website "old-friends.co." *Johnson Decl*. ¶16 and 17); Ex. at 3.

**Other Systematic Falsehoods** (Exh. F documents each):

- "Unprofessional employee": Contradicted by 9 years of "Exceeds Expectations" reviews from Cheney herself
- "Voluntary resignation": Email proves coerced termination
- Indices "contained invention disclosures": Templates prove 92.86% public data
- Chat was "Restricted": Handbook says Teams has "no expectation of privacy"

- Fabricated contractual language: Added word "use" that doesn't exist in agreement

Johnson Decl. ¶16, 17, 15-20, 45-84; Exh. F (complete analysis).

**C. Ground #4: Fraud on the Court—Concealed TTAB Rulings**

On October 1, 2024, two TTAB panels ruled EWS "fell short of its burden of proving that the Chat document is covered by the attorney-client privilege." Both applied the Ninth Circuit eight-factor test and found EWS's showing deficient. Johnson Decl. ¶1.

**EWS's Concealment:** Three days later (October 4, 2024), EWS filed its Case Management Report mentioning the TTAB proceedings but deliberately withheld the adverse privilege rulings. At the December 4, 2024 hearing, counsel argued the Chat was privileged without disclosing the TTAB rulings from two months earlier.

**The Court's Reliance:** Based on EWS's representations, this Court found the Chat "undoubtedly privileged." Order at 10. This directly contradicts two federal tribunals' findings using the same evidence, same test, opposite result.

**Ethical Violation:** Arizona ER 3.3(a)(2) required disclosure. The TTAB rulings were: (a) known to EWS; (b) in controlling jurisdiction; (c) directly adverse; and (d) not disclosed by opposing counsel. No reasonable attorney could fail to recognize two federal rulings on the identical privilege issue would be "directly adverse" and "potentially dispositive." *Jorgenson v. County of Volusia*, 846 F.2d 1350, 1354 (11th Cir. 1988).

**Johnson's Discovery:** Johnson was not a party to the TTAB proceedings (P.A.Z.E. was). He had no notice of the October 1, 2024 orders until discovering them October 4, 2025. Johnson Decl. ¶1.

This fraud warrants vacatur under Rule 60(b)(6) and the Court's inherent authority. *Hazel-Atlas*, 322 U.S. at 246.

**D. Grounds #1 & #6: The Teams Chat Cannot Lawfully Be Included**

The Order contains irreconcilable findings:

**Not a Trade Secret:** "The Teams Chat is undoubtedly privileged, however, it is unlikely that EWS will prove its status as a trade secret." Order at 10. Trade secret law is the only adjudicated cause of action—the Court refused to make contract findings. Dkt 70 at 4 n.4.

**Harm Too Speculative:** "The alleged harm flowing from disclosure of the Teams Chat is too speculative to support finding irreparable harm...The Teams Chat does not contain trade secrets." Order at 14 n.6. *Winter v. NRDC*, 555 U.S. 7, 22 (2008) requires non-speculative harm.

**Yet Still Enjoined:** Despite these findings, the injunction prohibits "accessing, using, or disclosing" the Chat. Order at 11-12.

A court cannot: (a) find material is not a trade secret; (b) find harm is speculative; (c) decline to adjudicate contract rights; then (d) still enjoin its use.

**Continuing Violation:** On November 24, 2024—one year after the Court found the Chat doesn't contain trade secrets—EWS still listed "Microsoft Teams Chat" among its trade secrets, violating FRCP 26(e).

## E. Ground #5: Unadjudicated Contract as the Sole Basis for Secrecy and Harm

The Court's Order rests on a fundamental legal contradiction that constitutes a manifest injustice. To find a "likelihood of success" on the trade secret claims, the Court concluded that EWS took "reasonable measures" to maintain secrecy by relying almost exclusively on the existence of a Confidentiality Agreement and related company policies. Similarly, the Court's finding of "irreparable injury" was predicated on the terms of this same agreement. However, the Court explicitly stated in the very same Order that it "does not make any finding related to EWS's success on its breach-of-contract claim".

It is a clear legal error to grant an "extraordinary" remedy where two essential pillars of the injunction—Secrecy and Harm—are built upon a contract the Court refused to adjudicate. If the contract's validity, assent, or scope remains unproven, it

cannot legally serve as the "reasonable measure" required by the DTSA to transform standard business information into a protectable trade secret. Furthermore, as demonstrated in the Motion to Strike, EWS's own internal policies, such as the User Responsibility Agreement (URA), specifically apply "Restricted" data protections to a narrow set of information that does not include the routine documents at issue here. By eliding these distinctions and relying on an unverified agreement, the Court has issued a career-ending injunction based on a "contract-in-name-only." Relief under Rule 60(b)(6) is required to correct this structural deficiency

### F. Ground #10: Domain Names Are Not Trade Secrets

The Court relied on "$20,000 domain purchases" for damages. Order at 12. But the Court never found: (a) domain names are trade secrets; (b) domain information is a trade secret; or (c) "knowledge of domain names" is a trade secret.

EWS now admits: "EWS does not contend any domain names, in and of themselves, were or are trade secrets, but instead...knowledge of domain names" in their discovery responses.

Using non-trade-secret property values to establish trade secret damages is legal error.

**Industry Standard Practice:** Johnson analyzed 2,938 trademarks and 12,088 domain registrations across three independent sample groups. Results: 55.4% combine trademark with descriptive terms. Specifically:

- **Tech combinations** ([mark]+tech/app/pay): Group 1=35.8%, Group 2=34.7%, Group 3=34.8%
- **Goods/services combinations**: Group 1=20%, Group 2=20.7%, Group 3=19.3% (Johnson Decl. ¶14-15; Exh. J.)

This consistency across varying sample sizes (5,500, 4,500, 2,500 domains) and time periods proves registering pazewallet.com and pazenetwork.com is ubiquitous industry practice—not secret strategy. Once EWS filed for "PAZE"

describing "electronic wallet" and "payment network," these domains became not only publicly predictable but likely.

The FDIC instructs financial institutions to acquire defensive domains. CSC (EWS's registrar) recommends registering "core brands in new gTLDs relevant to their industry vertical." Johnson Decl. ¶15; Exh. G. Federal regulators publicly recommend what EWS claims as secret.

**G. Grounds #5, #18, #19: False Cheney Declaration**

The Order cites the Cheney Declaration 25 times. Johnson Decl. ¶7.

**"High School Classmate" Fabrication:** Cheney claimed Johnson and O'Loughlin were "high school classmates" engaged in a "revenge plot." School records prove Johnson never attended the alleged school. The claim was based on user-editable websites. Johnson Decl. ¶16-17 This fabrication prejudiced the Court by suggesting personal animus rather than legitimate competition.

**Court's Mischaracterization of Indices:** The Court, acting on its own initiative, erroneously asserted that the indices "contained invention disclosures and concept briefs." This finding is entirely unsupported by the record. As demonstrated by the actual templates provided by Johnson, these indices contain no invention disclosures, no concept briefs, and no technical documents; they function strictly as tracking tools. Johnson Decl. ¶15.

Statistical breakdown of 140 total fields:

- Public information (filing dates, registration numbers): 102 (72.86%)
- Administrative/metrics: 28 (20%)
- **Combined public or administrative: 130 (92.86%)**
- Internal tracking: 7 (5%)
- Johnson's notes: 3 (2.14%)

Johnson Decl. ¶15.

**Court's Findings vs. Evidence:** The Court found indices "include business concept briefs and invention disclosures" (Dkt 70 at 8:17) and contain "wealth of

proprietary data" (Dkt 70 at 9). This contradicts the only documentary evidence showing 92.86% public data.

EWS provided zero documentary evidence. Cheney and Shah made conclusory claims without templates or analysis.

**Sanctions Trap:** When Johnson moved to strike the false declaration, the Court sanctioned him for "bad faith." Equity cannot permit an injunction based on protected lies while penalizing truth-telling.

**H. Ground #2: Refusal to Identify After 18 Months**

Interrogatory No. 1(a) (November 24, 2024): Identify all trade secrets. EWS's response: "EWS will not disclose further details concerning the specifics of the trade secrets at this time." Johnson Decl. ¶22-30.

This violates *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 522 (9th Cir. 1993), requiring plaintiffs to "specifically identify the allegedly misappropriated trade secrets before discovery begins."

After 18 months, refusal to identify makes compliance impossible.

**I. Grounds #7, #8, #9: Post-Injunction Expansion and Temporal Regression**

**New Categories Never in Complaint:**

| Complaint (June 2024) | Discovery (November 2025) |
|---|---|
| Specific documents: indices, Chat, contracts | "Proprietary business practices," "business plans concerning strategies," "business strategies reduced to writing," |

Johnson Decl. ¶12.

*MAI Systems* prohibits expanding claims during discovery. 991 F.2d at 522.

**Circular Descriptions:** "EWS's proprietary patent and trademark strategies...and business plans concerning those proprietary patent and trademark

strategies." This is "strategies for strategies"—pure circular reasoning providing zero notice, violating due process.

**Temporal Regression:** Descriptions became LESS specific over 18 months:

- Complaint: "Indices of concept briefs and invention disclosures"
- Discovery: "Business strategies reduced to writing" + refusal to identify

Proper litigation moves toward specificity. EWS moved toward abstraction, proving absence of particularized secrets.

**J. Grounds #12 & #14: Documents vs. Strategies—The DTSA Violation**

**Discovery Response:** "EWS does not claim trade secret protection in the form of...the documents, but rather the underlying...strategies." Johnson Decl. ¶31-33.

**The Injunction:** Protects "Excel spreadsheet indices," requires forensic imaging to recover documents, prohibits possessing documents.

**Legal Problem:** If documents aren't secrets, the injunction on documents is moot. One cannot forensically image "strategies in Johnson's head."

**DTSA Violation:** 18 U.S.C. § 1836(b)(3)(A)(i) prohibits injunctions based "merely on the information the person knows." By pivoting from documents to abstract "strategies," EWS created exactly what federal law forbids: a bar on practicing a profession based on general knowledge.
This violates *Winston Research Corp. v. Minnesota Mining & Mfg. Co.*, 350 F.2d 134, 141 (9th Cir. 1965) (employees retain general professional skills).

**K. Ground #13: Matter List Declared "Irrelevant"**

The Complaint emphasized Johnson stole a "list of every matter on which Johnson was then working." Complaint ¶ 43.

When Johnson sought to examine this allegedly critical document, EWS objected, calling it "irrelevant to the claims and defenses." Johnson Decl. ¶31-33. EWS obtained an injunction based on a document it now declares "irrelevant."

**"Strategies" Are Johnson's Professional Expertise**

**Exhibit B—Comprehensive Analysis:** Johnson analyzed every EWS filing in this litigation for "strategy/strategies" references: there was a **Total references:** 118, spanning **33 documents.**

Johnson Decl. ¶18-19;  (complete computer-generated analysis with line-by-line citations).

**18 References Pre-Injunction:** Before the Court granted the preliminary injunction, EWS had already used "strategy/strategies" 18 times across multiple filings without ever identifying which specific strategy or explaining how any differs from standard practice. *Id.*

**The Pattern:** Every reference follows the same formula:
- "EWS's proprietary patent and trademark strategies"
- "Information related to its proprietary patent and trademark strategies"
- "Wealth of proprietary data vital to EWS's patent and trademark strategies"
- "Business plans concerning those proprietary patent and trademark strategies"

**Never:** "The specific strategy is X, which differs from standard practice by Y."

**Johnson's Profession:** He is an IP attorney. Providing "patent and trademark strategies" is the job description. EWS admits Johnson "played an important role in developing and executing, EWS's patent and brand strategies." Cheney Decl. Dkt 17 ¶46.

**Only IP Professional:** For nine years, Johnson was EWS's only IP professional, finding "15 manila folders on a desk" and building the department from scratch. Johnson Decl. ¶45-48. Any "strategies" were created by Johnson as job duties.

**Standard IP Strategies:** Patent vs. trade secret decisions, filing strategy, portfolio management, trademark selection, brand architecture, domain acquisition. These are taught in every IP program. Johnson Decl. ¶41-44

**Legal Requirement:** To claim "strategies" as trade secrets when Johnson's job was creating strategies, EWS must prove: (1) which specific strategy; (2) how it

1 differs from standard practice; (3) that it's not Johnson's portable skill. *MAI Systems*,

2 991 F.2d at 519.

3     **After 65 references across 33 documents:** EWS has never identified a

4 specific strategy or explained how it differs from what every IP attorney does.

5     **L. Grounds #11 & #15: Automatic Designation and Invention Disclosure**

6 **Process**

7     EWS claims items are "automatically designated as trade secrets pursuant to

8 EWS company policy upon their respective creation...by virtue of their content."

9 Johnson Decl. ¶11.

10     **Legal Impossibility:** 18 U.S.C. § 1839(3) defines trade secrets as information

11 that: (A) derives independent economic value from secrecy, AND (B) is subject to

12 reasonable efforts to maintain secrecy. No policy can override federal statute.

13     **EWS's Own Practices Prove the Policy Wrong:**

14     **Stage 1—Invention Disclosure (NOT secret):**

15     • Standard data science techniques applied to hypothetical models

16     • No value from secrecy (competitors can't use it without EWS's data)

17     • No reasonable measures (circulated for review, discussed in meetings,

18       tracked in indices)

19     • Johnson saw Stage 1 proposals

20     **Stage 2—Built Model (IS secret):**

21     • Trained on proprietary data with specific weights/parameters

22     • Independent economic value (competitors CAN use the built model)

23     • Reasonable measures ("Restricted Data," highest security, physical

24       lockdown)

25     • Johnson never accessed Stage 2 (forbidden access) (Johnson Decl. ¶11-

26       17.)

27     EWS's "automatic designation" would make Stage 1 a secret "upon creation,"

28 but it lacks both statutory requirements. Trade secrets aren't "born" when created—

they require value from secrecy plus efforts to maintain it. EWS's practices show they know this (only locking down Stage 2).

### M. Ground #16: The "Pastiche" Error

The injunction combined the "act" of taking the Chat with the "content" of Indices to find violation. EWS now admits: (a) the Chat isn't a secret (Court agreed); and (b) the Indices aren't the secrets (only abstract "strategies"). One cannot find "misappropriation" of Item A (Chat) to enjoin Item B (Strategies).

## IV. REMAINING GROUNDS & CONCLUSION

**Ground #15 (Temporal Staleness):** Three years have passed since 2022/2023 "strategies." EWS launched "Paze" and patented viable disclosures. Per *Insulet* (2024), secrets lose status when published or abandoned.

**Exhibit A** provides complete analysis of all nineteen grounds, demonstrating the injunction rests on foundations that have collapsed through: (1) concealed adverse authority; (2) internal contradictions; (3) demonstrably false evidence; (4) systematic post-injunction claim expansion; (5) refusal to identify secrets; (6) empirical proof alleged secrets are industry standard; (7) documentary proof Johnson created the alleged "strategies"; and (8) manifest injustice through career destruction. The combination of fraud, structural defects, false evidence, and moving targets satisfies Rule 60(b)(6): extraordinary circumstances exist, the injunction works extreme hardship, and grounds don't fit clauses (1)-(5). *Alpine Land*, 984 F.2d at 1049.

## CONCLUSION

The "interests of justice" demand that this Court exercise its equitable power under Rule 60(b)(6) to vacate the Preliminary Injunction. As detailed in **Exhibit 13**, the twenty distinct grounds for relief demonstrate that the factual and legal pillars of this "extraordinary" remedy have collapsed.\

Plaintiff obtained this injunction on the representation that Defendant "exfiltrated" a "volume of documents"—a claim Plaintiff swore was confirmed by an

1  "IT investigation"—yet two years later, Plaintiff has produced **zero** forensic evidence

2  of any such "taking". Furthermore, Plaintiff's recent discovery admissions that it does

3  not claim trade secret status for the **documents** themselves, but only for abstract

4  **strategies**—referenced **118 times** without definition—renders the current order both

5  moot and a violation of the DTSA's prohibition against enjoining a professional based

6  "merely on the information the person knows".

7         Finally, the Court's finding of "likely misappropriation" has resulted in

8  Defendant's actual termination from his current employment, proving that the Order

9  has caused the exact manifest injustice and career destruction the law is designed to

10 prevent. Because the Injunction is now a "vacuous" and "severely overbroad"

11 instrument founded on a total absence of evidence, it must be vacated.

12 **WHEREFORE**, Defendant respectfully requests that this Court vacate the

13 Preliminary Injunction in its entirety.

14

15         DATED:  January 12, 2026

16

17 Respectfully submitted,                                    _

18 **/s/ Warren V. Johnson**

19 Warren V. Johnson, Pro Se
   215 E 18th St

20 Lawrence, KS 66044

21 (208) 931-7168
   warrenvjohnson@gmail.com

22

23

24

25

26

27

28

1

2

**Certificate of Service**

3

4

I, Warren V. Johnson, hereby certify that on January 12, 2026, I electronically filed

5

the foregoing DEFENDANT WARREN JOHNSON'S EMERGENCY MOTION

6

TO VACATE PRELIMINARY INJUNCTION UNDER FED. R. CIV. P. 60(b)(3)

7

AND (b)(6) with the Clerk of the Court using the CM/ECF system, which will send

8

notification of such filing to all counsel of record.

9

10

Respectfully submitted,

11

 /s/Warren V Johnson/

12

Warren Johnson

13

215 E 18th St

14

Lawrence, KS 66044

warrenvjohnson@gmail.com

15

16

17

18

19

20

21

22

23

24

25

26

27

28