WARREN VURL JOHNSON
warrenvjohnson@gmail.com
215 E 18th St
Lawrence, KS 66044

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| EARLY WARNING SERVICES, LLC<br><br>Plaintiffs,<br>v.<br><br>MR. WARREN V. JOHNSON;<br>BRANDON O'LOUGHLIN; P.A.Z.E.,<br>LLC<br><br>Defendants. | Case No.: CV24-01587-PHX-SMB<br><br>**DECLARATION OF WARREN V. JOHNSON IN SUPPORT OF DEFENDANT'S RESPONSE TO DISCOVERY DISPUTE** |

## DECLARATION OF WARREN V. JOHNSON IN SUPPORT OF DEFENDANT'S RESPONSE TO DISCOVERY DISPUTE

I, **Warren V. Johnson**, declare as follows:

## I. PROFESSIONAL QUALIFICATIONS AND ROLE AT EWS

1. I am the Defendant in this action. I am a licensed attorney in the state of Arizona and a registered member of the **United States Patent Bar** (Reg. No. 69,963).

2. I hold a **B.S. in Physics** from Idaho State University (2008) and a **J.D.** from Arizona State University (2012).

3. From **2014 through January 2023**, I served as **Intellectual Property Counsel** at Early Warning Services, LLC ("EWS")[3]. I was hired as the first IP-specific counsel for the company and was responsible for building the Intellectual Property Department from the ground up.

4. In this role, I designed, implemented, and managed the **Innovation Incentive Program**, which governed the formal identification, review, and designation of all trade secrets and patents at EWS.

## II. AUTHORIZATION OF DISCLOSURE: ATTORNEY SELF-DEFENSE EXCEPTION

3. The exhibits attached hereto—including redacted training decks and internal policies—are disclosed pursuant to the Attorney Self-Defense Exception under **Arizona ER 1.6(d)(4)**.

4. Under Arizona law, a lawyer may reveal information relating to the representation of a client to the extent the lawyer reasonably believes necessary to establish a defense in a controversy between the lawyer and the client.

5. By initiating this litigation, EWS has "fired the first shot," triggering my ethical authorization to reveal otherwise confidential information necessary for my defense.

6. These disclosures are strictly limited to information necessary to refute EWS's false claims regarding trade secret designation and my professional authority. To suppress these disclosures would render me "defenseless against false charges in a way unlike that confronting any other occupational group".

## III. REBUTTAL OF PARAS SHAH'S "LACK OF AUTHORITY" CLAIMS

5. In a declaration executed on April 7, 2025, EWS's current IP Counsel, Paras Shah, asserts that "Neither Johnson then, nor I now, had or have any authority to determine that EWS's attorney-client privileged information is 'not held in confidence'"

6. yThis "lack of authority" claim is a litigation tactic intended to diminish my professional role, but it is **directly contradicted** by EWS's own official business records:

- **Ownership of Policy:** The 2021 Innovation Incentive Program explicitly states the policy is **"owned and implemented by the Intellectual Property Counsel"**
- **Decision-Making Power:** As IP Counsel, I was specifically responsible for **"screen[ing]"** submissions to determine if trade secret protection should be claimed.
- **Management of Rights:** My training decks (approved by EWS and delivered for seven years) defined a Trade Secret as a right created by **"how you treat something"**—a process I personally managed.

7. Furthermore, EWS relies on Mr. Shah to verify and sign the company's technical discovery responses. EWS cannot logically argue that the IP Counsel is a "mere employee" without authority to determine what is held in confidence while simultaneously utilizing that same role to verify the truth of the company's complex IP litigation positions.

## IV. THE FORMAL TRADE SECRET DESIGNATION PROCESS

8. Contrary to EWS's assertions in this litigation, trade secrets were **never** designated "automatically." I implemented a rigorous, multi-step protocol for IP protection.

9. The **Intellectual Property Protection Panel ("IPPP")** was the governing body for these decisions. This panel consisted of EWS's most senior executives, including the **CEO, CTO, CFO, and President of Product**.

10. A "Trade Secret" at EWS was a specific legal category created **only** by the way EWS treated the invention after a formal harvest.

11. The formal process required:

- **Invention Disclosure:** An inventor submitted a "Concept Brief" or "Invention Disclosure Form".
- **Review:** The executive panel reviewed the disclosure to determine if it provided a competitive advantage.

- o **Designation Decision:** A formal decision was made to pursue either a patent or keep the item as a **Trade Secret**.
- o **The "Stealth Award":** If designated a trade secret, the company paid the inventor a formal **$800 "Stealth Award"**.

## V. THE ELIGIBILITY PARADOX

12. EWS characterizes my role in this litigation as a "mere employee" to diminish my authority and professional standing. However, EWS's own Innovation Incentive Program—which I designed and managed—provided for a $800 "Stealth Award" for any invention designated as a trade secret.

13. Had the "Indexes" been trade secrets, a "mere employee" would have been eligible for and received such an award upon designation. No such award was ever paid to me, nor was the designation process ever initiated for the Indexes, because they were my **pre-existing professional tools** developed at PING Golf between 2010 and 2014.

14. EWS cannot simultaneously argue I was a low-level employee for liability purposes while implicitly claiming I was an exempt high-level executive to explain away the total lack of trade secret documentation and award payments required by company policy .

## VI. COMPARISON OF EWS DISCOVERY RESPONSES VS. INTERNAL REALITY

15. The following table demonstrates the irreconcilable gap between EWS's litigation positions (as stated in their RFI Responses) and the actual business records I created and used to train their executive and legal teams.

**Table 1: Comparison of EWS Litigation Claims vs. Contemporaneous Business Records**

| EWS Discovery Assertion (RFI Response) | Actual EWS Policy & Practice (Per Exhibits) | Contradictory Evidence |
|---|---|---|
| Trade secrets are | Trade secrets must be **"harvested and** | Ex. A, p. 9; |

| EWS Discovery Assertion (RFI Response) | Actual EWS Policy & Practice (Per Exhibits) | Contradictory Evidence |
|---|---|---|
| designated **"automatically by virtue of their content."** | **approved"** via formal disclosure. | Ex. C, p. 7 |
| **"No specific individuals"** are responsible for designating a trade secret. | The **IPPP (CEO, CFO, CTO)** and **IP Counsel** make formal designation decisions. | Ex. B, p. 1; Ex. C, p. 3 |
| EWS implies trade secret status is a general state of confidentiality. | EWS defined a trade secret as an **"Intellectual Property Right"** created by specific treatment. | Ex. A, p. 7; Ex. D, p. 8 |
| Trade secret status is determined by "level of confidentiality." | Trade secret status is determined by a **Patent Review Committee** and triggers a **$800 payment**. | Ex. C, p. 6; Ex. A, p. 26 |
| EWS claims "the Indexes" are trade secrets by default. | **The "Stealth Award" ($800)** is the financial trigger for every designated trade secret. | Ex. C, p. 6; Ex. A, p. 26 |
| Trade secrets are "automatic" by content. | Rights are created by "how you treat" the info and require "Invention Disclosure Approval." | Ex. D, p. 7, 9 |
| No specific email or notice is required. | Rights require an "Email disclosing trade secret decision from I.P." | Ex. D, p. 9 7 |
| General security = trade secret status. | Requires a formal "Meet with inventors about trade secret procedures." | Ex. D, p. 13 8 |
| Status is not a financial "event." | $800 Stealth Award is specifically for "Trade Secret Categorization." | Ex. D, p. 14 9 |

## VII. SYSTEMATIC TRAINING OF SENIOR LEADERSHIP

16. I personally conducted high-level training sessions to ensure the **CEO, CFO**, and the **entire Legal Team** understood that trade secrets required formal designation.

17. On **December 10, 2015**, I trained the C-suite on the "Power of the Patent" and the economics of our new disclosure system.

18. As recently as **March 29, 2022**—less than a year before my termination—I provided mandatory training to the **EWS Legal Team**.

19. In that March 2022 training, I explicitly stated that for EWS to have trade secret rights, the invention disclosure must be **"harvested and approved"** and the IP Department **must** meet with the inventor about trade secret procedures.

## VIII. THE "INDEXES" WERE NEVER DESIGNATED TRADE SECRETS

20. The "Indexes" (the Excel-based management systems at issue) were tools I developed at **PING Golf** between 2010 and 2014, prior to my employment at EWS.

21. I brought these tools to EWS to facilitate my work. At no point during my nine-year tenure did the **Indexes** ever:

    o Undergo an Invention Disclosure submission.

    o Receive a review by the **IPPP**.

    o Trigger an **$800 Stealth Award** payment to me or anyone else.

    o Or combined with a single workflow, EWS system, or process.

22. If EWS truly considered these tools to be trade secrets, there would be a financial paper trail of a **$800 Stealth Award** and a record of the mandatory "Trade Secret Procedures" meeting required by company policy. No such records exist because no such designation ever occurred.

## IX. CONCLUSION

23. The "Indexes" (the Excel-based management systems at issue) were tools I developed at **PING Golf (2010-2014)**, brought to EWS as existing tools, and used for nine years without ever undergoing an Invention Disclosure, an IPPP review, or a **$800 Stealth Award** payment.

24. EWS's discovery responses are factually false. They maintained a formal, award-driven system for trade secret designation that they now seek to ignore

because it proves the "Indexes" were never legally protected under their own internal rules.

   I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


DATED:  January 13, 2026, in Lawrence, KS

Respectfully submitted,                                    _

**/s/ Warren V. Johnson**
Warren V. Johnson, Pro Se
215 E 18th St
Lawrence, KS 66044
(208) 931-7168
warrenvjohnson@gmail.com

**Certificate of Service**

I, Warren V. Johnson, hereby certify that on January 13, 2026, I electronically filed the foregoing **DECLARATION OF WARREN V. JOHNSON IN SUPPORT OF DEFENDANT'S RESPONSE TO DISCOVERY DISPUTE** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

EXECUTED: January 13, 2026 in Lawrence, KS

Respectfully submitted,

  /s/Warren V Johnson/

Warren Johnson
215 E 18th St
Lawrence, KS 66044
warrenvjohnson@gmail.com