WARREN VURL JOHNSON
warrenvjohnson@gmail.com
215 E 18th St
Lawrence, KS 66044

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| EARLY WARNING SERVICES, LLC | Case No.: CV24-01587-PHX-SMB |
| Plaintiffs, | |
| v. | **DEFENDANT JOHNSON'S DECLARATION IN SUPPORT OF RENEWED MOTION FOR EMERGENCY RECUSAL** |
| MR. WARREN V. JOHNSON; BRANDON O'LOUGHLIN; P.A.Z.E., LLC | |
| Defendants. | |

## DECLARATION OF WARREN V. JOHNSON IN SUPPORT OF

## EMERGENCY RENEWED MOTION FOR JUDICIAL RECUSAL

I, Warren V. Johnson, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct based on my personal knowledge:

**INTRODUCTION**

1. I am a Defendant in this action.

2. I submit this Declaration to authenticate the forensic evidence, documentary proof, and statistical analysis that compels mandatory recusal under 28 U.S.C. § 455(a).

**FORENSIC EVIDENCE - PDF METADATA ANALYSIS**

3. I personally examined the PDF metadata of all Orders using a Python script <pdf_metadat_extractor.py>. (See Exhibit E & N) Including the Injunction Order (Dkt 70) and the Disqualification Order (Dkt 126).

- 1 -

4.  The metadata properties of Dkt. 70 show: "Producer: Adobe Acrobat Standard 2020 20 Paper Capture Plug-in" and "Creation Date: 2024-12-04T11:59:57-07:00". (Exhibit C &E)

5.  "Paper Capture Plug-in" is Adobe's technology for scanning physical documents into digital format. This is fundamentally different from every other Order in this case, but one, which were created digitally in Microsoft Word and converted to PDF.

6.  The December 4, 2024 the Court threatened me with a bar report, admonished me for questioning the privileged categorization of the Teams Chat and for disclosing the Teams Chat 16 months earlier in my wrongful termination Complaint against EWS. The suit wrongful termination suit alleged retaliation for whistleblowing. The Hearing ended at 11:42 AM according to the transcript (Dkt. 75 at pg. 21).

7.  The PDF metadata shows Dkt. 70 was scanned at 11:59:57 AM—exactly 28 minutes after the hearing ended.

8.  At the hearing's conclusion, the Court stated: "I have an order already drafted, but I'm going to go back and take things under consideration." (Dkt. 75 at 20-21).

9.  The digital signature on Dkt. 70 is electronically applied—not an ink signature on the physical document that was scanned. (See Exhibit D) This proves the sequence: (1) physical document scanned, (2) digital signature added afterward.

10. If the Court had drafted this order herself after the hearing, she would have: (a) created it in Word, (b) digitally signed it, (c) converted to PDF. The metadata would show Word as the creator application, not Paper Capture. (See Exhibit E)

11. I personally compared the metadata of every order in this case. A compilation of this metadata analysis is attached as **Exhibit E**.

12. Only two orders show Paper Capture metadata:

- Dkt. 70 (Preliminary Injunction) - scanned 28 minutes after hearing
- Dkt. 126 (Attorney Disqualification Order) - scanned at 03:09 PM on April 21, 2025, less than 2 weeks after a FedEx delivery that arrived on April 9, 2025.

13. For the Court to have drafted Dkt. 70 herself in 28 minutes, she would need to: return to chambers, review hearing notes, draft 17 pages of detailed legal analysis with specific findings of fact, review for errors, print, sign, and scan.

14. This timeline is physically impossible. The only explanation consistent with the evidence is that the order existed in physical form before the hearing ended and was different than the Order the Court had brought to the hearing.

**THE FEDEX SHADOW DOCKET - DOCUMENTARY PROOF**

15. In the Court's Preliminary Order (Dkt. 8 at pg. 3:18-19), the Court stated: "As a general matter, all communications with the Court regarding any case must be made on the record."

16. EWS provided Kilpatrick Townsend with billing records to the court under penalty of perjury in response to sanctions against me and a co-defendant. A copy of excepts of the billing records is attached as **Exhibit G**.

17. The billing records document four specific FedEx shipments to "**Judge's Chambers**" with the following tracking numbers:

- Tracking 284811099698: Shipped Jan. 27, 2025, delivered Jan. 28, 2025 at 10:25 AM, signed for by D. Myron
- Tracking 285804251502: Shipped Feb. 25, 2025, delivered Feb. 26, 2025 at 11:31 AM, signed for by T. Hobins
- Tracking 287358274134: Shipped Apr. 8, 2025, delivered Apr. 9, 2025 at 10:04 AM, signed for by R. Dallas
- Tracking 287095907187: Shipped Apr. 1, 2025, delivered Apr. 2, 2025 at 10:04 AM, signed for by Y. Gano

18. I personally verified each of these tracking numbers through FedEx's online tracking system.

19. I personally obtained proof-of-delivery receipts from FedEx for each tracking number. These receipts are attached as **Exhibit L**.

20. The FedEx receipts confirm packages were delivered to Phoenix, AZ (the location of this Court) from Dallas, TX

21. Examining the billing records it becomes clear that Kilpatrick employee E. Smith works in the Dallas, TX Office—the paralegal whose metadata, both "Elba Smith" and "etsmith", consistently appears on EWS's proposed orders.

22. I personally searched the docket for any entry corresponding to these four shipments. There are ZERO docket entries for any of these deliveries.

23. In some cases I did find corresponding electronic filings on the same dates as the FedEx Shipments, proving a "public" filing on the docket, and a "shadow" filing via FedEx.

24. The billing records describe the contents of these shipments as: (Exhibit G)
    - "proposed order"
    - "motion to seal"
    - "emails from court"
    - "motion to disqualify response"
    - "communications with court re motion to seal and proposed order"
    - "review two emails from court re our motions"
    - "review service emails to judge's chambers"

25. These are substantive, merits-related communications that federal law and the Court's own rules require to be docketed.

26. The billing records (Exhibit G) contain multiple redacted entries that are geometrically identical in size, shape, row structure, and indentation to the visible FedEx tracking entries.

27. Based on my analysis of the document formatting, I estimate at least 3 additional FedEx shipments were redacted from the billing records, suggesting 7 or more total undocketed deliveries to chambers.

28. The April 8, 2025 FedEx shipment (Tracking 287358274134) was delivered on April 9, 2025 at 10:04 AM.

29. This date corresponds to three non emergency filings by EWS:

- o **Dkt 117 "Opposition to the Motion to Disqualify Counsel** (Denied by Court Via identical strawman argument made by EWS),

- o **Dkt 118 "Opposition to Request for Findings of Fact and Law Regarding the Teams Chat Privilege"**, the finding being part of an **interlocutory injunction order** making Rule 52(a)(2) relevant "the court **must** similarly state the findings and conclusions that support its action" (denied in one paragraph on page 6 buried between denying the Motion to Strick Cheney Declaration and the Court's Order Sanctioning Defendant) (Dkt 183):

"Pursuant to Federal Rule 52, Mr. Johnson asks the Court to issue a detailed written findings of fact and conclusions of law clarifying its prior rulings in this case. (*See* Doc. 108.) Rule 52(a)(3) states that "**[t]he court is not required to state findings or conclusions when ruling on a motion [except when] granting or refusing an interlocutory injunction**." Therefore, Rule 52 does not provide Mr. Johnson the legal basis to request such relief from this Court. Therefore, Mr. Johnson's Motion is **denied**."

- o **Dkt 119 Motion to Seal Defendant's SurReply** (Motion to Seal Granted,  Motion for Sur-Reply containing dispositive evidence of Defendant's authority while working at EWS Denied)

30. The January 27, 2025 FedEx shipment (Tracking 284811099698) was delivered January 28, 2025 at 10:25 AM—the same day the Court granted EWS leave to file their default motion (Dkt. 103) and the same day the Clerk entered default (Dkt. 104).

31. The billing entry for the January 27 shipment references "proposed order" related to the default motion.

**DEFAULT JUDGMENT DOCKET FALSIFICATION**

32. A glaring peculiarity exists in the metadata of the Motion for Default Judgement that indicates the dual submission system at work. Compare **Exhibit O** and **Exhibit P**.

33. I forensically analyzed the metadata of all filings related to the Motion for Default Judgment.

34. A true and correct summary of that metadata analysis is attached as **Exhibit Q**.

35. On January 27, 2025, EWS shipped FedEx package #284811099698 to the Court's chambers, delivered January 28, 2025 at 10:25 AM.

36. The proposed order in that package (later lodged as Dkt. 102-3) shows metadata "Author: etsmith" and "Creator: PScript5.dll"—a Windows print driver used to create PDFs for physical delivery, not electronic filing.

37. The document is currently on the docket as Dkt. 102 shows: "Created: 2025-02-04" and "Producer: Adobe Acrobat Pro Paper Capture Plug-in."

38. This proves Dkt. 102 is a scanned paper document created February 4—one week after it was allegedly lodged.

39. The scanned image shows a 1/27/2025 court stamp, but the metadata contains no "iText® Core" signature—the software the Clerk uses to electronically stamp all filed documents.

40. This proves the paper was stamped before being scanned on February 4, and the original electronic filing was replaced. Defendant cannot find anything in the record explaining this peculiarity.

41. The document filed as Dkt. 104 shows: "Created: 2025-01-28" and "Creator: PDFium"—a software library for programmatic PDF manipulation. (**Ex. O**)

42. All author metadata in Dkt. 104 is listed as "Scrubbed."

- 6 -

43. Dkt. 104 and all its attachments (104-1, 104-2, 104-3) show identical metadata: "Creator: PDFium" with scrubbed authorship—proving systematic programmatic processing.

44. Legitimately filed documents (Dkts. 102-1, 102-2) show "Producer: iText® Core 7.2.3"—the Clerk's stamping software. **(Ex. P)**

45. On January 28, the Court ordered (Dkt. 103): "The Clerk shall enter Dkt. 102 as the Motion for Default Judgment at Dkt. 104."

46. Complying with this order required filing a document (Dkt. 104) different from the lodged document (Dkt. 102), then later replacing Dkt. 102 with a fabricated scan, **TWICE**.

47. I possess a version of Dkt. 102 showing metadata: Created 1/31/2025, that is 58 pages, has a Paper Capture signature, all attachments combined. The type of file that would result from scanning in a stack of all the filings in one file.

48. That is until the current Dkt. 102 was created on 2/4/2025, with separated files, Paper Capture signature.

49. I downloaded the 1/31 version between January 31 and February 4, 2025.

50. **This proves the docket was replaced at least twice**. A screenshot of the 1/31 version's metadata is attached as **Exhibit R.**

**CONTENT ANALYSIS - ORDERS CONTAIN MATERIAL NOT IN PUBLIC FILINGS**

30. I personally compared EWS's publicly-filed proposed preliminary injunction order (Dkt. 16-1) with the final granted order (Dkt. 70).

31. The final order contains substantial, prejudicial language that does NOT appear in the public proposal, including:

   - The public proposal mentioned "high school classmate" once in passing; the final order references it three times as a central pillar of an alleged "scheme"

o   The public proposal used neutral "good cause shown" language; the final order contains the inflammatory finding that I used "unscrupulous means to abscond" with information

o   The public proposal described a 10-day rolling compliance window; the final order imposed a hard Friday, December 13, 2024 deadline

o   The public proposal alleged misappropriation during a defined period; the final order expanded this to an "unspecified period"

o   The public proposal alleged "indices OF concept briefs"; the final order changed this to "indices CONTAIN concept briefs"

32. A detailed comparison table I personally created documenting these escalations is attached as **Exhibit K**.

33. The only explanation for these material changes is that EWS delivered a more inflammatory proposed order to chambers via undocketed FedEx deliveries, and the Court adopted that version.

## STATISTICAL ANALYSIS - 32-1 RULING PATTERN

42. I personally reviewed every substantive motion filed in this case and categorized each ruling as either benefiting EWS or benefiting Defendants.

43. The results: 32 rulings benefiting EWS and 1 ruling benefiting Defendants (60-day extension to answer).

44. Using basic probability analysis: if this Court were neutral, the probability of ruling for EWS on any given motion should be approximately 50%.

45. The probability of ruling for EWS 32 out of 33 times by random chance is $(0.5)^{33}$ = 1 in 8,589,934,592 (approximately 1 in 8.6 billion).

46. Even adjusting for the possibility that EWS's motions might have inherent merit such that they should win 70% of neutral rulings, the probability becomes 1 in 130,000,000.

47. A 97% success rate for one party over 33 substantive rulings exceeds any reasonable explanation based on case merits alone and requires a level of bias.

**THE COURT'S CONTRADICTORY FACTUAL FINDINGS**

48. In the Sealing Order (Dkt. 123), the Court found I was a "mere employee" with no authority over privilege, more specifically no authority to *not create privilege.*

49. In the Disqualification Order (Dkt. 126), the Court found I was an "agent" or "constituent client" acting in place of EWS and therefore no duty could be owed to me as a non-client because I was acting as the client, the duty passing through me to EWS.

50. These positions are irreconcilable as a matter of law.

51. The Court adopted whichever characterization benefited EWS in each particular motion.

**THE CONSTITUTIONAL CATCH-22**

52. For months, the Court ruled that the forensic imaging was "private action" by EWS's vendor (Dkts. 179, 218, 220).

53. This ruling was essential to defeating my Fourth Amendment challenges: declaring both my *fourth amendment rights and my first amendment rights "not relevant."* (Dkt 179 at pg 3)

54. At the September 22, 2025 contempt hearing, the Court requested that EWS draft search protocols and terms during the hearing.

55. The Court adopted a 400-term search protocol at the hearing. A copy of this protocol is attached as **Exhibit J**.

56. The court also adopted a protocol that was not binding and did not require destruction of data, allowed copying, and provided no protections. Making it binding would have been futile, it is attached as **Exhibit I**.

57. The Court did not request, and EWS has not offered to put either on the record making any review impossible.

58. The Court ruled me in contempt less than 5 minutes after adopting these terms. (Dkt 262, Ex 4)

59. A search cannot be "private action" for Fourth Amendment purposes but "governmental action" for contempt enforcement purposes.

60. The Court held me in contempt for violating search terms that: (a) did not exist when the alleged violation began, (b) were created minutes before the contempt ruling, (c) were never placed on the public record, and (d) are admittedly non-binding according to EWS's counsel.

**THE COURT'S DEMONSTRATION OF NOT UNDERSTANDING ITS ORDERS**

60. At the September 22, 2025 contempt hearing (Dkt. 262, Ex. 3), the Court stated: "During your argument you seem to be saying that the search should be confined to looking for EWS documents, right?"

61. I responded: "Yeah, as they argued to the appellate court, yes."

62. The Court then stated: "Which I think is what everybody understands my order to be except you. Do the plaintiffs understand that when your vendor gets ahold of his equipment, they are only allowed to search for EWS documents, correct?"

63. EWS's counsel (Ms. Adams) responded: "I would add the clarifying point, Your Honor, that in the order we understand it to be forensic imaging, and so the data will all be collected."

64. The Court responded: "Yes."

65. This exchange proves the Court did not understand the scope of the order she signed nine months earlier while simultaneously showing the Court was aware of the Ninth Circuit mandate that the Court chose not to follow in real time.

66. Only after EWS corrected the Court's misunderstanding did the Court express concern: "I hoped there were search terms already proposed" and "You don't get a list of everything on there, correct?" (Dkt. 262, Ex. 3 at 15-18).

67. However expression of concern was as far as the Court went in correcting the unconstitutionality of the Order.

**THE "OUT OF OFFICE" PRETEXT**

67. The Court's denial of my first recusal motion **(Exhibit A)** was made orally with a promise of a written order to come. (Dkt 262, Ex. 1).

68. Over 2 weeks later I filed an appeal as the deadline was approaching.

69. Less than 3 hours later an Order appeared.

70. The Court claimed the 17-day delay "was a result of the Court being out of office." (**Ex. A**, FN1)

71. I personally reviewed the Court's docket during this alleged "out of office" period.

72. During this period, the Court signed and issued 16 other orders and held multiple hearings.

73. The PACER metadata shows Dkt. 172 was filed finished about 3 hours after I filed my Notice of Appeal (Dkt. 161).

74. A compilation showing the Court's activity during the alleged "out of office" period is attached as **Exhibit H**.

**CITATION FRAUD AND RECORD FALSIFICATION**

72. The Court's recusal denial states that at the Injunction hearing I "agreed" the Teams Chat disclosure was "problematic," and "at bottom the November 24 oral argument made clear that the information was not privileged" thus no privilege analysis was required, citing "Doc. 150 at 16-17."

73. This is both a legal and factual error, more than one time over.

74. **Legal Error:** The privilege analysis must be done, whether there is a concession or not, in the name of the public interest (there was no conncession).

75. **Factual Error:** The oral hearing was on December 4, not November 24. A seemingly innocuous mistake… at first.

76. **Factual Error:** The cited document, Doc. 150, is my recusal motion and not the transcript for the hearing and it contains no pages 16 or 17.

77. **Factual Error:** The actual source (Dkt. 75) contains my explicit denials that the chat had legal advice and my belief it was not privileged on page 16-17, so the Court was familiar with the proper location.

78. Combined these errors are not innocuous, they not only misrepresent the law and facts, but are strategically "mistaken" to make any review impossible while giving the Court a slight chance at plausible deniability, however small.

79. The Order asserts I "erroneously argued" I was not a mere employee, citing the Court's own sealed order (Doc. 123) rather than my Opposition (Dkt. 107). **Exhibit A at pg 9.**

80. My Opposition (Dkt. 107) never makes this argument and includes Power of Attorney documents, executed by me in the name of EWS, one for each firm now litigating against me: Kilpatrick Townsend and Bryan Cave.

81. These are not typographical errors. These are strategic falsifications designed to misrepresent the record and conceal the trail to avoid review.

**THE COORDINATED STRAWMAN ARGUMENT**

78. My attorney disqualification motion argued I was a "third person, non-client" owed a duty under ER 1.7(a)(2) and Arizona Supreme Court precedent in *Paradigm Funding Corp. v. Proximus Mobility, Inc.*, 24 P.3d 593 (Ariz. 2001) which adopts the 3rd restatement for duties to non-client broadly.

78. The Court makes this broad application explicit in the conclusion of the opinion, establishing that the reasoning applies beyond the facts of the case: This duty exists even if the insurer is a nonclient:

"We hold again today that a lawyer has a duty, and therefore may be liable for negligent breach, to a nonclient under the conditions set forth in previous case law and the RESTATEMENT." (*Id.* at ¶29)

79. EWS's opposition (Dkt. 113) completely ignored *Paradigm* and reframed the argument solely around formal "client" status under ER 1.9.

80. The Court's Order (Dkt. 126) performed the identical sidestep—acknowledging the "third-person, non-client" language but analyzing only ER 1.9 and dismissing it in one paragraph.

81. The controlling *Paradigm* precedent binding on Arizona federal courts was never addressed in either EWS's brief or the Court's order even through a Reconsideration Motion Filing. (See Dkt 128 and Dkt 183)

**PROSPECTIVE FEE-SHIFTING ORDER**

82. On November 20, 2025, the Court ordered (Dkt. 283) that I shall pay "any attorneys' fees incurred by Defendants in motioning to seal any subsequent filing by Johnson."

83. This prospective sanction eliminates due process protections, cannot satisfy but-for causation, delegates judicial findings to opposing counsel, and assumes all future filings are sanctionable before review.

**METADATA USED TO ESTABLISH, WELL EVERYTHING**

84. Throughout this litigation, the Court has treated metadata as dispositive proof of authorship, intent, and conspiracy when applied against Defendants.

85. In Dkt. 70, the Court ruled that "Author: Warren Johnson" in TTAB metadata proved I was the "ghost-writer" of P.A.Z.E. documents, calling this a "smoking gun."

86. In Dkt. 141, the Court used metadata to "demonstrate" that O'Loughlin and I "knew and colluded."

87. In Dkt. 141, the Court ruled that "metadata is sufficient to sustain the claim even if other facts are wrong."

88. In Dkt. 179, the Court ordered forensic imaging of all my devices based solely on metadata-driven conclusions.

89. The Court never required expert testimony, forensic validation, or consideration of alternative explanations for metadata evidence against Defendants. (See Dkt 24)

90. The Court never examined metadata of EWS's filings, including the Shah Declaration (Dkt. 102-1) which shows "Author: Elba Smith" despite Shah claiming personal authorship.

91. A detailed comparative analysis of the Court's metadata double standard is attached as **Exhibit M**.

**CONCLUSION**

92. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

93. The forensic evidence, documentary proof, statistical analysis, and the Court's own admissions create a record that no reasonable person could view as consistent with neutral adjudication.

Executed this 24th day of January, 2026, at Lawrence, Kansas.

__s/Warren V Johnson/__

Warren V. Johnson
215 E 18th St
Lawrence, KS 66044

## Certificate of Service

I, Warren V. Johnson, hereby certify that on January 24, 2026, I electronically filed the foregoing **DECLARATION OF WARREN V. JOHNSON IN SUPPORT OF RENEWED MOTION FOR JUDICIAL RECUSAL** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Respectfully submitted,

  /s/Warren V Johnson/

Warren Johnson
215 E 18th St
Lawrence, KS 66044
warrenvjohnson@gmail.com