# TABLE OF EXHIBITS FOR DEFENDANT JOHNSON'S RENEWED MOTION FOR MANDATORY RECUSAL

| | |
|---|---|
| Exhibit A | Dkt 172 Order Denying Recusal |
| Exhibit B | Metadata from Dkt 172 (Recusal Order) and Dkt 169 (Appeal of Recusal) Showing Retaliatory Timing |
| Exhibit C | Metadata from Dkt 70 (Injunction Order) and Dkt 126 (Denial of Disqualification) Showing the Court Scanned in Physical Submissions by EWS |
| Exhibit D | Electronic Signature Block Dkt 70 and Dkt 126 Showing Scanned in Unsigned Copies Provided by EWS |
| Exhibit E | Metadata of Produced for All Court Orders |
| Exhibit F | Two Separate TTAB Rulings Where EWS Failed to Establish Privilege Over the Teams Chat |
| Exhibit G | Kilpatrick Billing Records Showing Ex Parte Communications Off the Record In Violation of Courts Preliminary Order (Dkt 9) |
| Exhibit H | Court Activity in Other Proceedings Over the Entirety of Time The Court Claimed "Out of Office" to Avoid Ruling on Recusal (May 30 - June 16, 2025) |
| Exhibit I | Off the Record Examination Protocol Adopted by Court for Injunction During Contempt Hearing in Bait and Switch |
| Exhibit J | Off the Record List of over 300 Search Terms Adopted by Court for Injunction During Contempt Hearing in Bait and Switch |
| Exhibit K | Comparison: EWS Publicly Proposed Order and the Court Order w/ Strategic Factual Misrepresentations |
| Exhibit L | FedEx Receipts Verifying the Court's Receipt of EWS's Ex Parte Communications in Violation of Court's Preliminary Order |
| Exhibit M | Comparative Analysis of the Court's law of the case regarding Metadata |
| Exhibit N | Python Code for <PDF_METADATA_EXTRACTOR. PY> Custom Script |
| Exhibit O | Metadata of Lodged Dkt 102, 102-1,102-2, and 102-3 w/ Docket Manipulation |
| Exhibit P | Metadata of Lodged Dkt 229, 229-1, and 229-2 w/ No Docket Manipulation |
| Exhibit Q | Forensic Analysis of the Court's Creation of a Fraudulent Docket |
| Exhibit R | Metadata of Lodged Dkt 102 Showing Creation of January 1, 2025 and a First Attempt at Manipulating the Docket |

# <u>EXHBIT A</u>

# ORDER DENYING RECUSAL
## - "OUT OF OFFICE"
## - "PRIVILEGE CONCEDED"
## - "MERE EMPLOYEE ARGUED"

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Early Warning Services LLC, | No. CV-24-01587-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| Warren Vurl Johnson, et al., | |
| Defendants. | |

Pending before the Court is Defendant Warren Vurl Johnson's Motion for Judicial Recusal (Doc. 150). Mr. Johnson filed this Motion on May 26, 2025. On May 30, the Court held oral argument on Plaintiff Early Warning Services LLC's ("EWS") Motion for Sanctions (Doc. 131) and Mr. Johnson's Motion to Strike and Motion for Sanctions (Doc. 135). At that hearing, the Court denied Mr. Johnson's Motion for Judicial Recusal and stated that a written Order would follow. This is that Order.[1]

## I. LEGAL STANDARD[2]

The standard for recusal under 28 U.S.C. § 455 is "whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *Mayes v. Leipziger*, 729 F.2d 605, 607 (9th Cir. 1984) (quoting *United States v. Nelson*, 718 F.2d 315, 321 (9th Cir. 1983)); *Ronwin v. State Bar of Ariz.*, 686 F.2d 692, 700–01 (9th Cir.1981), *rev'd on other grounds sub nom. Hoover v. Ronwin*, 466 U.S.

---

[1] The delay in the issuance of this Order was a result of the Court being out of office.
[2] Generally, a motion to disqualify or recuse a federal judge fall under two statutory provisions, 28 U.S.C. §§ 144 and 455. Mr. Johnson moves only under § 455. (*See* Doc. 150.)

558 (1984). The purpose of § 455(a) "is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible." *Liljeberg v. Health Servs. Acq. Corp.*, 486 U.S. 847, 865 (1988). The inquiry under § 455(a) is whether "'a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned.'" *Blixseth v. Yellowstone Mountain Club, LLC*, 742 F.3d 1215, 1219 (9th Cir. 2014) (quoting *Pesnell v. Arsenault*, 543 F.3d 1038, 1043 (9th Cir. 2008)). "Actual bias isn't required; the appearance of impropriety can be a sufficient basis for judicial recusal." *Id.* (citing *Liljeberg*, 486 U.S. at 864-65). Importantly, "[t]he alleged prejudice must result from an extrajudicial source; a judge's prior adverse ruling is not sufficient cause for recusal." *United States v. Studley*, 783 F.2d 934, 939 (9th Cir. 1986).

Whether to grant or deny a motion for recusal is a matter within the Court's discretion. *United States v. Sibla*, 624 F.2d 864, 868 (9th Cir. 1980). A motion to recuse is a serious matter, "strik[ing] at the integrity of the judicial process." *In re Int'l Bus. Mach. Corp.*, 618 F.2d 923, 927 (2d Cir. 1980). It is vital to the integrity of the judicial system that a judge does not recuse themself on unsupported, irrational or highly tenuous speculation, *Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir. 1987), and a judge "is as much obliged" to not recuse from a case when "it is not called for," as he is obliged to recuse when recusal is required. *In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1312 (2d Cir. 1988); *McCann v. Communs. Design Corp.*, 775 F. Supp. 1506, 1522–23 (D. Conn. 1991) ("A judge must be free to make rulings on the merits without the apprehension that if he makes a decision, even a disproportionate number of decisions, in favor of one litigant, he may have created the impression of bias.").

## II. DISCUSSION

Mr. Johnson asserts several grounds he believes to support the Court's recusal in this case. Throughout his Motion, Mr. Johnson argues that this Court's prior adverse decisions ought to serve as the basis for the Court's recusal. As noted, "a judge's prior adverse ruling is not sufficient cause for recusal." *Studley*, 783 F.2d at 939. Nevertheless, the Court will address Mr. Johnson's arguments, where appropriate, and discuss why they

fail to warrant recusal.[3]

### A. Intimidation and Retaliation

Mr. Johnson argues that the Court intimidated and retaliated against him for his conduct in this case. Specifically, the Court (1) threatened him during the November 19, 2024 oral argument; (2) retaliated against him by referring him to the State Bar of Arizona for attorney misconduct without conducting an analysis under *United States v. Ruehle*, 583 F.3d 600 (9th Cir. 2009); and (3) threatened him an additional time in an Order sealing his Motion for Disqualification. (Doc. 150 at 2.)

As an initial matter, each of Mr. Johnson's assertions amount to his subjective perception of the Court's prior adverse decisions in this case, which are improper grounds for recusal. *See Studley*, 783 F.2d at 939.

First, the Court's statement during the November 19, 2024 oral argument was to warn Mr. Johnson that, as an attorney, he has ethical responsibility to refrain from revealing confidential information for which he lacks the ability to disclose. (Doc. 75 at 21.) At that hearing, the Court told Mr. Johnson that it believed the Microsoft Teams Chat (the "Privileged Chat") contained information protected by EWS's attorney-client privilege. (*Id.*) The Court then asked Mr. Johnson whether he understood that he was not the holder of that privilege, and should he reveal it again, the Court would contact the State Bar. (*Id.*) Mr. Johnson replied, "I fully understand." (*Id.*) The Court did not make an "unprecedented threat," (*see* Doc. 150 at 2), but rather gave informed him that the Court would not tolerate underhanded strategies, including wrongful disclosure of privileged information.

Second, in *Ruehle*, the Ninth Circuit reiterated an eight-part test that determines whether information is covered by the attorney-client privilege. 583 F.3d at 607. Here, however, explicitly applying the test in *Ruehle* was not necessary because the Court engaged the parties in a discussion at oral argument regarding the privileged nature of the chat. The Privileged Chat clearly reflected discussions between EWS's general counsel, Tracy Cheney, and Mr. Johnson in his capacity as part of EWS's legal team, regarding

---

[3] EWS filed a Response (Doc. 156). The Court noted at oral argument that it had considered Mr. Johnson's Motion prior to EWS filing its Response. (*See* 167 at 2.)

**Even if true, it is not, court is required to make the independent finding of privilege and whether waiver had happened. The Court admits here no such analysis happened.**

legal advice pertaining to pending negotiations between EWS and another company. Mr. Johnson stated that he "could see how [the Privileged Chat] could be interpreted as having attorney-client privilege" and agreed with the Court that his disclosure of the chat was problematic. (Doc. 150 at 16–17.) At bottom, the contents of the Privileged Chat and the discussions at the November 24 oral argument made clear that the information was privileged. Additionally, the Court's State Bar referral was the result of Mr. Johnson filing his Motion to Disqualify EWS's legal counsel because Mr. Johnson recognized that he received legal advice on behalf of EWS and disclosed it on the record anyway.

Third, the Court's Order sealing Mr. Johnson's Motion to Disqualify (the "Sealing Order") is one of many instances that demonstrates where Mr. Johnson has filed protected information on the public docket. Consequently, the Court again reminded Mr. Johnson that:

> [T]he Court must take this opportunity to warn Mr. Johnson of the zero-tolerance policy that the Court will hereafter apply to his conduct in this case. Until now, the Court has given grace to Mr. Johnson each time he places confidential information on the public docket by granting the opposition's Motions to Seal. Mr. Johnson shall understand that litigation is not a game. It is a mechanism by which parties resolve bona fide disputes. Gamesmanship and other forms of underhanded strategy subvert the litigation process in a manner that the Court will not tolerate. And the Court will strictly enforce Rule 11's proscription of misrepresentation and bad faith. Mr. Johnson is on notice.

(Doc. 123 at 10 (sealed).) Mr. Johnson construed this passage as demonstrating "a pattern of using judicial authority to intimidate rather than adjudicate." (Doc. 150 at 2.) In the Sealing Order, the Court outlined and analyzed several passages in Mr. Johnson's Motion to Disqualify that warranted placing the contents under seal. (*See generally* Doc. 123.) The Court also noted other instances in which Mr. Johnson failed to comply with the Court's warning against disclosing confidential information. (*Id.* at 9 (citing Doc. 75 at 21; Doc. 100 at 1–2).) To be sure, several Orders on this Docket outline Mr. Johnson's failure to comply with prior Orders by publishing confidential information on the public docket, (*see, e.g.*, Doc. 75 at 21; Doc. 77-1; Doc. 84; Doc. 88; Doc. 92; Doc. 107), resulting in the Court issuing Orders to seal those filings, (Doc. 81; Doc. 89; Doc. 93; Doc. 100; Doc. 123). Put simply, the Court's statement was not a threat, as it is common parlance in tribunals

**Not one of these sealing orders amend or analyze the Motion to Seal they are based on. This is the very premise of Defendant's recusal motion, Dkt 156 at pg 7 - 8.**

across the United States to warn litigants of the consequences of misconduct.

Federal courts have the obligation, and inherent power, to manage their own proceedings and to control the conduct of those who appear before them. *Cf. Erickson v. Newmar Corp.*, 87 F.3d 298, 303 (9th Cir. 1996). This obligation has compelled the Court to repeatedly seal wrongfully disclosed confidential information, warn litigants that wrongful disclosure will not be tolerated, and consider whether dogged violations of prior Orders warrant sanctions. Therefore, the Court's efforts to resolve pending motions, shepherd this case into the discovery stage, and preserve the confidentiality of certain information should not be construed as either intimidation or retaliation. At bottom, the Court seeks to maintain control over the proceedings in this case by avoiding unnecessary filings, wrongful disclosure, and underhanded litigation tactics.

### B. Strategic Timing to Prejudice Defense

Mr. Johnson argues that the Court has prejudice him by (1) "suddenly" issuing a ruling on Defendant Brandon O'Loughlin's Motion to Dismiss; (2) finding the allegations regarding Mr. Johnson and Mr. O'Loughlin's high school relationship "not dispositive"; and (3) creating procedural obstacles for Mr. Johnson's legitimate fraud arguments by making certain findings regarding Ms. Cheney's credibility. (Doc. 150 at 3.)

Mr. Johnson's arguments relate to rulings made in this case and do not refer to any extrajudicial source. In other words, these arguments cannot form the basis for recusal. *Hinman*, 831 F.2d at 939. But again, the Court will afford Mr. Johnson's complaints some discussion. Additionally, Mr. Johnson does not provide citations for points (2) and (3) of his argument, but the Court best understands them to pertain to Order denying Mr. O'Loughlin's Motion to Dismiss (Doc. 141).

First, the Order denying Mr. O'Loughlin's Motion to Dismiss has no bearing on Mr. Johnson's Motion to Strike the Declaration of Ms. Cheney. There, the Court rejected Mr. O'Loughlin's baseless request to dismiss the entire action. (Doc. 141 at 16–17.) Mr. Johnson remains free to present arguments to the Court in accordance with the papers he has submitted to substantiate what he believes to be "[Ms.] Cheney's perjury." (Doc. 150

at 3.)

Second, Mr. Johnson misapprehends the Court's statement that the alleged high school relationship between Mr. O'Loughlin and Mr. Johnson being false does not alone equate to fraud. Mr. O'Loughlin moved the Court to dismiss the entire action because he disagreed with the factual veracity of one of EWS's allegations. Mr. Johnson is still otherwise free to present his arguments regarding what he believes to be EWS's or Ms. Cheney's fraudulent acts. Or in other words, the Court has not "pre-neutraliz[ed]" Mr. Johnson's fraud claims. (Doc. 150 at 3.)

Third, Mr. Johnson seemingly complains that the Court rejected Mr. O'Loughlin's arguments regarding Ms. Cheney's credibility. (*See* Doc. 150 at 3.) Although, it is not clear what Mr. Johnson means when he argues that the Court's ruling on Mr. O'Loughlin's Motion to Dismiss (Doc. 141) amounted to rejecting "[Mr.] Johnson's challenges to [Ms.] Cheney's credibility." (Doc. 150 at 3.) At any rate, this Court's ruling on Mr. O'Loughlin's Motion to Dismiss cannot form the basis for recusal.

### C. Manufacturing Evidence and Facts Not Pleaded

Mr. Johnson next contends that the Court manufactured evidence in favor of EWS when deciding Mr. O'Loughlin's Motion to Dismiss. (Doc. 150 at 3–4.) Specifically, Mr. Johnson argues that the Court wrongly expanded the scope of EWS Complaint by inflating the number of relevant domain names as trade secrets and misrepresenting Mr. O'Loughlin's cease-and-desist letter campaign. (*Id.*) Additionally, Mr. Johnson argues that the Court "fundamentally alter[ed] the nature of alleged trade secret" when it included the phrase "indices CONTAIN concept briefs" in its Preliminary Injunction Order while EWS's Complaint alleged "indices OF concept briefs." (*Id.* (capitalization in original).)

Regarding the domain names, Mr. Johnson asserts that EWS's Complaint only specified two domain names as being trade secrets. (*See* Doc. 150 at 3.) According to Mr. Johnson, when the Court noted that EWS's trade secrets misappropriation claim is, in part, predicated on Mr. O'Loughlin's receipt of 105 domain names, the Court manufactured evidence to seemingly bolster EWS's claim. (*Id.* (citing Doc. 141 at 4).) This argument

is simply incredible. Mr. Johnson has latched onto a single line in the background section of an Order—which set forth facts from EWS's operative pleading—to affirmatively claim that the Court has manufactured evidence or included facts not pleaded to benefit EWS. EWS's Complaint alleges that as part of a scheme, Mr. Johnson secretly provided Mr. O'Loughlin with trade secret information relating to, among other information, particular domain names, (Doc. 1 ¶ 11), and in turn, EWS believed O'Loughlin registered at least 105 domain names relating to EWS's business after Mr. Johnson's termination from EWS, (*id.* ¶ 58). This Court refuses to entertain this baseless speculation as a ground to recuse. *Hinman*, 831 F.2d at 939.

Mr. Johnson is correct that EWS's operative complaint alleges that Mr. O'Loughlin, through P.A.Z.E., threatened to send cease-and-desist letters. (*See* Doc. 1 ¶ 136.) The proceeding allegations, however, do not show that Mr. O'Loughlin actually sent those letters. (*See id.* ¶¶ 137–140.) The Court, therefore, acknowledges that it erred in stating that "EWS alleges that Mr. O'Loughlin . . . sent 'cease-and-desist letter[s] to EWS's customers.'" (Doc. 141 at 13–14.) This error, however, does not amount to the Court manufacturing evidence in favor of EWS.[4]

Mr. Johnson's argument regarding the language used to describe the Excel Workbooks (the "Indices") central to the trade secrets claim in this case is near incomprehensible. Mr. Johnson cites to page four of the Order filed at ECF No. 70, but the Court could not locate the phrase he argues fundamentally altered this case. Even so, the semantic game Mr. Johnson is attempting to play is seemingly another attempt to argue against the injunction this Court entered against him. And, ultimately, the Court's entry of the injunction against Mr. Johnson is not a ground for recusal. *Studley*, 783 F.2d at 939.

### D. Coordinated Citation Manipulation with EWS

Mr. Johnson contends that the Court and EWS are engaged in a conspiracy to

---

[4] The absence of an actual campaign of sending cease-and-desist letters coupled with the alleged threats to engage in such behavior would not alter any finding by this Court. Indeed, the Court's Order at ECF No. 141 makes that abundantly clear, explaining that the alleged facts "show a concrete threat[] that give rise to a 'real and reasonable apprehension' that EWS may be sued if it continues to offer its service." (*Id.* (citing *Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1157 (9th Cir. 2007)).)

coordinate and manipulate citations to documents on the record to hide or obscure facts. (Doc. 150 at 4.) First, he argues that the Court "deliberately cited" Mr. Johnson's non-operative pleadings to hide his "acknowledgement of knowing [Mr.] O'Loughlin that appears on the same page of the operative pleading." (*Id.*) Second, Mr. Johnson argues that the Court and EWS coordination "operates as a systematic feedback loop" because EWS used the Court's language regarding the Indices before the Ninth Circuit. (*Id.*) Third, Mr. Johnson argues that the Court relied too heavily on EWS's Reply arguments, showing a pattern of manipulation. (*Id.*) Fourth, Mr. Johnson expends about a page disagreeing with the Court's Order at ECF No. 123 (sealed).

In keeping with the theme of his Motion, Mr. Johnson's first and third arguments attack this Court's prior decisions. And though these cannot form the basis for recusal, the Court will nonetheless take the time to walk the parties through these issues. *Studley*, 783 F.2d at 939.

Regarding Mr. Johnson's knowledge of Mr. O'Loughlin, the Court cited both Mr. Johnson's first Answer/Counterclaims and the proposed amendments to that pleading. (*See* Doc. 141 at 16.) Mr. Johnson's operative pleading alleges that this lawsuit "falsely accused [him] of conspiring to steal trade secrets with someone he didn't know." (Doc. 37 at 37 ¶ 110 (sealed).)[5] That "someone" evidently referring to Mr. O'Loughlin. The page prior to this allegation states that he "was familiar with [Mr.] O'Loughlin and his activities with PAZE." (Doc. 57 at 38 ¶ 122 (sealed).) Mr. Johnson is, again, attempting to play a game of semantics. He alleges that he was familiar with Mr. O'Loughlin, ostensibly meaning that he knew of his existence, but then affirmatively states that he had no actual, personal relationship with Mr. O'Loughlin. (*See id.* at 38–39 ¶¶ 122, 131.)

Mr. Johnson posits three situations in which the Court has relied too heavily on EWS's Reply briefs. (Doc. 150 at 4–5.) First, the Court considered new authority when EWS cited the seminal case, *Upjohn Co. v. United States*, 449 U.S. 383 (1981). (Doc. 150

---

[5] Here, Mr. Johnson's citations either contain no page numbers or provide an incorrect page number. The Court has read the relevant prior Orders for the purposes of this Motion in an attempt to discern exactly what Mr. Johnson is referencing.

at 5.)  It is unclear how applying a foundational case involving attorney-client privilege in an Order regarding that very topic amounts to overreliance on one party's brief or coordinated citation manipulation.  Second, Mr. Johnson argues that the Court gave too much weight to EWS's characterization of Mr. Johnson as a mere employee in it Reply brief.  (Doc. 150 at 5.)  Mr. Johnson erroneously argued he was not a mere employee in his Response brief, the Court disagreed and found EWS's characterization supported both by the law and facts of the case.  (*See* Doc. 123 at 7 (sealed) (citing *United States v. Chen*, 99 F.3d 1495, 1502 (9th Cir. 1996)).)  Third, Mr. Johnson complains that the Court denied his Motion to file a Sur-Reply to respond to these "new" arguments.  (Doc. 119.)  As a practicing attorney, Mr. Johnson ought to know what occurs when he makes an argument in a Response brief—it opens the door for the moving party to respond to the argument in a Reply brief.  In that instance, EWS's arguments were not new, and the Court did not require a sur-reply from Mr. Johnson to decide the merits of the Motion.

Mr. Johnson's argument pertaining to the "systematic feedback loop" is confusing.  (*See* Doc. 150 at 4.)  He seemingly asserts that the Court's choice of words when explaining the Indices caused EWS to use that language in the Ninth Circuit.  (*See id.*)  Then, he goes on to argue that EWS uses the Court's "manufactured" findings in the Order denying Mr. O'Loughlin's Motion to Dismiss (Doc. 141) to defend against Mr. Johnson's fraud allegations.  (Doc. 150 at 4.)  Mr. Johnson's final argument is a drawn-out disagreement with this Court's analysis in the Order sealing his Motion to Disqualify EWS's Counsel.  (Doc. 150 at 5–6 (citing Doc. 123 (sealed)).)  These arguments are both speculative and directed at the Court's prior adverse rulings, and thus cannot form the basis for recusal.  *Hinman*, 831 F.2d at 939; *Studley*, 783 F.2d at 939.

### E. Systematic Procedural Double Standards; Willful Disregard of Judicial Admissions and Controlling Law; Privilege Determinations Without Legal Analysis

Mr. Johnson argues that the Court set procedural double standards when it abused the treatment of arguments in Reply briefs; summarily granted sealing without conducting

- 9 -

an analysis; and applies the wrong law. (Doc. 150 at 6–7.) Each of these are complaints targeted at the Court's prior Orders. Mr. Johnson also argues that the Court willfully disregarded Mr. O'Loughlin's judicial admission; violated Rule 12(b)(6)[6]; and rewrote federal law. (*Id.* at 7–8.) Additionally, Mr. Johnson asserts that the Court issued conclusory rulings regarding privilege; has contradicted itself in its own Orders; and has denied upended procedural safeguards by denying Mr. Johnson's previous Motion for Clarification (Doc. 53 (Motion); Doc. 54 (Order)) and ignoring his "Demand for Findings of Fact and Law" (Doc. 108).

As the Court has explained, Mr. Johnson's arguments are directed at the Court's prior adverse rulings and cannot form the bases for recusal. *See Studley*, 783 F.2d at 939. And while his Motion re: Request for Findings of Fact and Conclusions of Law (Doc. 108) is pending, the fact that it remains undecided does not fit Mr. Johnson's narrative of the Court determining his Motions without legal analysis.

### F. Mr. Johnson's Remaining Arguments

The latter parts of Mr. Johnson's Motion go on to posit that the Court has "becomes EWS's de facto co-counsel" by, among other things, inventing facts and coordinating citations. (Doc. 150 at 8.) Mr. Johnson also reiterates his arguments regarding the "feedback loop," the Indices, the Court's "preemptive strike" in deciding Mr. O'Loughlin's Motion to Dismiss, and the Court's retaliation against him for his misconduct in this case. (*See id.* at 8–9.) The Court has already rejected these arguments and will not expend further time explaining to Mr. Johnson why they are incorrect.

…

…

…

…

---

[6] This argument particularly highlights Mr. Johnson's consistent practice of gamesmanship in this case. Craftily omitted from the two quotes Mr. Johnson offers is the Court's express statement that it "would not need to consider . . . post-filing evidence to find that EWS has plausibly stated a claim," i.e., that the subject of the Order, Mr. O'Loughlin's Motion to Dismiss, should be denied. (*See* Doc. 141 at 17.) The Court did not factor in the post-filing evidence as grounds to deny the 12(b)(6) Motion.

**III.    CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED denying** Defendant Warren Vurl Johnson's Motion for Judicial Recusal (Doc. 150).

Dated this 16th day of June, 2025.

Honorable Susan M. Brnovich
United States District Judge

# <u>EXHIBIT  B</u>

# METADATA FROM COURT'S ORDER DKT 172 DENYING RECUSAL AND DKT 169 JOHNSON'S NOTICE OF APPEAL

Notice of Appeal Metadata : **June 16, 2025** at 12:27pm (-5 hours **7:27pm UTC)**



Dkt 172 Order Denying Recusal Metadata: **Created June 16, 2016** at 12:42pm (-7 hours **9:42pm UTC)**



# EXHIBIT C

# DKT 70,126 METADATA -INJUNCTION ORDER -DISQUALIFICATION ORDER





# EXHIBIT D

# COURT'S ELECTRONIC SIGNATURE AS SHOWN ON SCANNED IN ORDERS

Drive and similar accounts—that may include EWS's Confidential Information or Trade Secrets for forensic imaging of those devices and accounts (including all metadata) by EWS's forensics vendor.

**IT IS FURTHER ORDERED** instructing Defendants to remove any and all currently posted copies of the Teams Chat, or other confidential information or trade secrets, they have placed online or elsewhere.

**IT IS FURTHER ORDERED** that Defendants comply with this Order no later than **Friday, December 13, 2024.**

Dated this 4th day of December, 2024.

_____
Honorable Susan M. Brnovich
United States District Judge

**IT IS HEREBY ORDERED denying** Mr. Johnson's Motion to Disqualify (Doc. 107).

Dated this 21st day of April, 2025.

Honorable Susan M. Brnovich
United States District Judge

# EXHIBIT A

# METADATA OF COURT'S ORDERS

| filename | file_size_bytes | num_pages | creator | producer | creation_date |
|---|---|---|---|---|---|
| CM_ECF - azd.pdf | 205313 | 42 | Mozilla Firefox 146.0.1 | cairo 1.18.0 (https://cairographics.org) | 2026-01-03 11:01:43+06:00 |
| Dkt 20 Order for Extension to Answer.pdf | 85495 | 2 | Microsoft® Word for Microsoft 365 | Microsoft® Word for Microsoft 365; modified using iText® Core 7.2.3 (production version) ©2000-2022 iText Group NV, Administrative Office of the United States Courts | 2024-07-24 14:04:06-07:00 |
| Dkt 51 Order to Redact Opp to Inj.pdf | 85846 | 1 | Microsoft® Word for Microsoft 365 | Microsoft® Word for Microsoft 365; modified using iText® Core 7.2.3 (production version) ©2000-2022 iText Group NV, Administrative Office of the United States Courts | 2024-11-06 08:50:46-07:00 |
| Dkt 54 Order on Motion for Clarificaiton for Redacting Opposition.pdf | 86688 | 2 | Microsoft® Word for Microsoft 365 | Microsoft® Word for Microsoft 365; modified using iText® Core 7.2.3 (production version) ©2000-2022 iText Group NV, Administrative Office of the United States Courts | 2024-11-12 13:37:35-07:00 |
| Dkt 56 Order for Redacted Version.pdf | 82594 | 1 | Microsoft® Word for Microsoft 365 | Microsoft® Word for Microsoft 365; modified using iText® Core 7.2.3 (production version) ©2000-2022 iText Group NV, Administrative Office of the United States Courts | 2024-11-13 11:06:30-07:00 |
| Dkt 70 Injunction ORDER.pdf | 256896 | 17 | Microsoft® Word for Microsoft 365 | Adobe Acrobat Pro (64-bit) 24 Paper Capture Plug-in | 2024-12-04 11:59:57-07:00 |
| Dkt 76 Order denying in part a stay of the injunction.pdf | 83678 | 2 | Microsoft® Word for Microsoft 365 | Microsoft® Word for Microsoft 365; modified using iText® Core 7.2.3 (production version) ©2000-2022 iText Group NV, Administrative Office of the United States Courts | 2024-12-11 15:31:29-07:00 |
| Dkt 81 Order to Redact.pdf | 85687 | 2 | Microsoft® Word for Microsoft 365 | Microsoft® Word for Microsoft 365; modified using iText® Core 7.2.3 (production version) ©2000-2022 iText Group NV, Administrative Office of the United States Courts | 2024-12-18 12:53:26-07:00 |
| Dkt 89 Order to Seal.pdf | 84017 | 2 | Microsoft® Word for Microsoft 365 | Microsoft® Word for Microsoft 365; modified using iText® Core 7.2.3 (production version) ©2000-2022 iText Group NV, Administrative Office of the United States Courts | 2025-01-02 08:00:38-07:00 |
| Dkt 93 Order to Redact.pdf | 88138 | 2 | Microsoft® Word for Microsoft 365 | Microsoft® Word for Microsoft 365; modified using iText® Core 7.2.3 (production version) ©2000-2022 iText Group NV, Administrative Office of the United States Courts | 2025-01-06 09:15:54-07:00 |
| Dkt 100 Order to Seal and Deny Sanctions.pdf | 102915 | 4 | Microsoft® Word for Microsoft 365 | Microsoft® Word for Microsoft 365; modified using iText® Core 7.2.3 (production version) ©2000-2022 iText Group NV, Administrative Office of the United States Courts | 2025-01-22 13:32:27-07:00 |
| Dkt 123 Order to Seal and Bar Complaint 4.22.25.pdf | 314530 | 10 | WIA-Brother HL-L2465DW [2c98117bb | Adobe Acrobat (64-bit) 25 Paper Capture Plug-in | 2025-05-22 20:14:17-05:00 |

| Dkt 126 Order o Attorney Disqualification.pdf | 248058 | 11 | Microsoft® Word for Microsoft 365 | Adobe Acrobat Pro (64-bit) 25 Paper Capture Plug-in | 2025-04-21 15:09:03-07:00 |
|---|---|---|---|---|---|
| Dkt 137 Denial Motion to Seal Filed by Johnson.pdf | 13498 | 1 | | htmldoc 1.8.24 Open Source Copyright 1997-2004 Easy Software Products, All Rights Reserved. | 2025-12-11 14:49:17-06:00 |
| Dkt 141 Order Denying Motion to Dismiss.pdf | 290950 | 17 | Microsoft® Word for Microsoft 365 | Microsoft® Word for Microsoft 365; modified using iText® Core 7.2.3 (production version) ©2000-2022 iText Group NV, Administrative Office of the United States Courts | 2025-05-12 13:34:56-07:00 |
| Dkt 161 Minute Entry Order Denying Recusal.pdf | 12797 | 1 | | htmldoc 1.8.24 Open Source Copyright 1997-2004 Easy Software Products, All Rights Reserved. | 2026-01-03 10:08:36-06:00 |
| Dkt 163 Order on Motion to Seal and For Sanctions.pdf | 87921 | 2 | Microsoft® Word for Microsoft 365 | Microsoft® Word for Microsoft 365; modified using iText® Core 7.2.3 (production version) ©2000-2022 iText Group NV, Administrative Office of the United States Courts | 2025-05-30 15:15:23-07:00 |
| Dkt 166 Order Granting Motion for Clarification for EWS.pdf | 81989 | 1 | Microsoft® Word for Microsoft 365 | Microsoft® Word for Microsoft 365; modified using iText® Core 7.2.3 (production version) ©2000-2022 iText Group NV, Administrative Office of the United States Courts | 2025-06-02 13:37:08-07:00 |
| Dkt 172 Order Denying Recusal.pdf | 225986 | 11 | Microsoft® Word for Microsoft 365 | Microsoft® Word for Microsoft 365; modified using iText® Core 7.2.3 (production version) ©2000-2022 iText Group NV, Administrative Office of the United States Courts | 2025-06-16 12:42:35-07:00 |
| Dkt 175 Order Denying Stay.pdf | 148498 | 3 | Microsoft® Word for Microsoft 365 | Microsoft® Word for Microsoft 365; modified using iText® Core 7.2.3 (production version) ©2000-2022 iText Group NV, Administrative Office of the United States Courts | 2025-06-23 13:36:30-07:00 |
| Dkt 178 Order for Rule 16 Conference.pdf | 100054 | 5 | Microsoft® Word for Microsoft 365 | Microsoft® Word for Microsoft 365; modified using iText® Core 7.2.3 (production version) ©2000-2022 iText Group NV, Administrative Office of the United States Courts | 2025-06-26 13:38:32-07:00 |
| Dkt 179 Denying Motion to Stay.pdf | 118927 | 6 | Microsoft® Word for Microsoft 365 | Microsoft® Word for Microsoft 365; modified using iText® Core 7.2.3 (production version) ©2000-2022 iText Group NV, Administrative Office of the United States Courts | 2025-06-26 15:22:48-07:00 |
| Dkt 182 Order Striking Motion for Leave to New Lawsuit.pdf | 85652 | 2 | Microsoft® Word for Microsoft 365 | Microsoft® Word for Microsoft 365; modified using iText® Core 7.2.3 (production version) ©2000-2022 iText Group NV, Administrative Office of the United States Courts | 2025-06-30 09:54:09-07:00 |
| Dkt 183 Order Motion to Strike, for Reconsideration, and For Facts and Law, Granting Sanctions.pdf | 256270 | 14 | Microsoft® Word for Microsoft 365 | Microsoft® Word for Microsoft 365; modified using iText® Core 7.2.3 (production version) ©2000-2022 iText Group NV, Administrative Office of the United States Courts | 2025-06-30 10:33:42-07:00 |
| Dkt 195 Order Denying Motion to Dismiss Counter Claims.pdf | 14041 | 1 | | htmldoc 1.8.24 Open Source Copyright 1997-2004 Easy Software Products, All Rights Reserved. | 2026-01-03 09:39:08-06:00 |

| Dkt 197 Case Management Order.pdf | 106930 | 5 | Microsoft® Word for Microsoft 365 | Microsoft® Word for Microsoft 365; modified using iText® Core 7.2.3 (production version) ©2000-2022 iText Group NV, Administrative Office of the United States Courts | 2025-07-17 09:02:18-07:00 |
|---|---|---|---|---|---|
| Dkt 200 Order denying Amended Counter Claims.pdf | 321345 | 22 | Microsoft® Word for Microsoft 365 | Microsoft® Word for Microsoft 365; modified using iText® Core 7.2.3 (production version) ©2000-2022 iText Group NV, Administrative Office of the United States Courts | 2025-07-18 14:21:07-07:00 |
| Dkt 205 Order on Motion for Clarity.pdf | 83095 | 2 | Microsoft® Word for Microsoft 365 | Microsoft® Word for Microsoft 365; modified using iText® Core 7.2.3 (production version) ©2000-2022 iText Group NV, Administrative Office of the United States Courts | 2025-07-23 10:39:50-07:00 |
| Dkt 208 Default against Paze.pdf | 237415 | 10 | Microsoft® Word for Microsoft 365 | Microsoft® Word for Microsoft 365; modified using iText® Core 7.2.3 (production version) ©2000-2022 iText Group NV, Administrative Office of the United States Courts | 2025-07-25 11:18:52-07:00 |
| Dkt 218 Order Motion to Vacate or Amend Injunction.pdf | 93334 | 3 | Microsoft® Word for Microsoft 365 | Microsoft® Word for Microsoft 365; modified using iText® Core 7.2.3 (production version) ©2000-2022 iText Group NV, Administrative Office of the United States Courts | 2025-08-08 15:42:09-07:00 |
| Dkt 218 Order.pdf | 93333 | 3 | Microsoft® Word for Microsoft 365 | Microsoft® Word for Microsoft 365; modified using iText® Core 7.2.3 (production version) ©2000-2022 iText Group NV, Administrative Office of the United States Courts | 2025-08-08 15:42:09-07:00 |
| Dkt 220 Order Denying Clarity.pdf | 93207 | 2 | Microsoft® Word for Microsoft 365 | Microsoft® Word for Microsoft 365; modified using iText® Core 7.2.3 (production version) ©2000-2022 iText Group NV, Administrative Office of the United States Courts | 2025-08-12 10:10:16-07:00 |
| Dkt 230 Order on Excess pages for Motion for default O'Loughlin.pdf | 81758 | 1 | Microsoft® Word for Microsoft 365 | Microsoft® Word for Microsoft 365; modified using iText® Core 7.2.3 (production version) ©2000-2022 iText Group NV, Administrative Office of the United States Courts | 2025-09-03 14:20:53-07:00 |
| Dkt 232 Order to show Cause.pdf | 85449 | 2 | Microsoft® Word for Microsoft 365 | Microsoft® Word for Microsoft 365; modified using iText® Core 7.2.3 (production version) ©2000-2022 iText Group NV, Administrative Office of the United States Courts | 2025-09-08 10:08:49-07:00 |
| Dkt 242 Minute Entry for Contempt Hearing Sept 24, 2025.pdf | 12294 | 1 | | htmldoc 1.8.24 Open Source Copyright 1997-2004 Easy Software Products, All Rights Reserved. | 2025-12-11 14:13:14-06:00 |
| Dkt 243 Order Denying Motion to Dismiss.pdf | 156836 | 5 | Microsoft® Word for Microsoft 365 | Microsoft® Word for Microsoft 365; modified using iText® Core 7.2.3 (production version) ©2000-2022 iText Group NV, Administrative Office of the United States Courts | 2025-09-24 16:58:27-07:00 |
| Dkt 277 Order Granting Motion to Seal.pdf | 95364 | 3 | Microsoft® Word for Microsoft 365 | Microsoft® Word for Microsoft 365; modified using iText® Core 7.2.3 (production version) ©2000-2022 iText Group NV, Administrative Office of the United States Courts | 2025-11-13 12:20:03-07:00 |

| | | | | | |
|---|---|---|---|---|---|
| Dkt 282 Order Sealing 278 Opposition to Seal.pdf | 85451 | 2 | Microsoft® Word for Microsoft 365 | Microsoft® Word for Microsoft 365; modified using iText® Core 7.2.3 (production version) ©2000-2022 iText Group NV, Administrative Office of the United States Courts | 2025-11-19 14:25:48-07:00 |
| Dkt 283 Order to Seal Dkt 264 and 264-3.pdf | 94841 | 3 | Microsoft® Word for Microsoft 365 | Microsoft® Word for Microsoft 365; modified using iText® Core 7.2.3 (production version) ©2000-2022 iText Group NV, Administrative Office of the United States Courts | 2025-11-20 15:52:29-07:00 |
| Dkt 304 Denial of Reconsideration of Counter Claims.pdf | 106708 | 6 | Microsoft® Word for Microsoft 365 | Microsoft® Word for Microsoft 365; modified using iText® Core 7.2.3 (production version) ©2000-2022 iText Group NV, Administrative Office of the United States Courts | 2026-01-08 14:27:33-07:00 |

# EXHIBIT F

# TTAB RULINGS HOLDING EWS FAILED TO ARGUE THE TEAMS CHAT WERE PRIVILGED

**UNITED STATES PATENT AND TRADEMARK OFFICE**
**Trademark Trial and Appeal Board**
**P.O. Box 1451**
**Alexandria, VA 22313-1451**
General Contact Number: 571-272-8500
General Email: TTABInfo@uspto.gov

RSC

October 1, 2024

Cancellation No. 92085110

*P.A.Z.E., LLC*

*v.*

*Early Warning Services, LLC*

**Rebecca Stempien Coyle, Interlocutory Attorney:**

This proceeding now comes before the Board for consideration of the following motions filed by Respondent Early Warning Services ("Respondent"): (1) May 31, 2024, motion to seal, (2) July 1, 2024, second motion to seal, and (3) July 1, 2024, motion to suspend pending termination of a civil action. Respondent's first motion to seal is contested, and no response was filed to either the second motion to seal or motion to suspend.[1]

As an initial matter, the Board notes Petitioner P.A.Z.E., LLC ("Petitioner") filed two responses to Respondent's first motion to seal.[2] Petitioner's responses appear to

---

[1] The Board has considered all of the parties' arguments, presumes the parties' familiarity with the factual bases for their filings, and does not recount the facts or arguments here, except as necessary to explain this decision. *See Guess? IP Holder LP v. Knowluxe LLC*, 116 USPQ2d 2018, 2019 (TTAB 2015).

[2] 10 TTABVUE, 11 TTABVUE. Record citations are to TTABVUE, the Board's publicly available docket system. *See, e.g., New Era Cap Co., Inc. v. Pro Era, LLC*, 2020 USPQ2d 10596, *2 n.1 (TTAB 2020).

Cancellation No. 92085110

be identical, accordingly, the second-filed submission (11 TTABVUE) supersedes the original submission (10 TTABVUE), which will be given no further consideration. Duplicate submissions unnecessarily complicate this proceeding and Petitioner is admonished to take greater care with its filings with the Board.

**The Board Proceeding**

On May 3, 2024, Petitioner filed a petition to cancel Respondent's Registration No. 5476070 for the stylized mark Z, as shown below (the "stylized Z mark"):



for "Financial transaction services, namely, providing secure payment and money transfer options and permitting account holders to make payment requests" in International Class 36.[3]

Petitioner filed amended pleadings prior to Respondent's answer, and the Board accepted Petitioner's second amended petition for cancellation of May 24, 2024 as its operative pleading.[4] Under the operative pleading Petitioner alleges, inter alia, it owns pending application Serial No. 98252002 for the stylized mark PAZE which "will be put at risk by Respondent",[5] and identifies the following grounds for cancellation: failure to function on a variety of bases, abandonment due to failure to police, and

---

[3] 1 TTABVUE. Registration No. 5476070 issued May 22, 2018, based on alleged use in commerce. The registration includes the following description of the mark: "The mark consists of capitalized letter 'Z' stylized to have a vertical line extending upward from the top horizontal line and another vertical line extending downward from the bottom horizontal line." Color is not claimed as a feature of the mark. Section 8 & 15 Declaration filed April 26, 2024.

[4] 8 TTABVUE, *see also* Second Amended Petition for Cancellation (5 TTABVUE).

[5] 5 TTABVUE 4, at ¶¶ 6-12.

2

Cancellation No. 92085110

fraud.[6] Petitioner also submits several exhibits in support of its petition, including a document identified as "Exhibit B".[7]

After accepting Petitioner's second amended pleading the Board reset dates, allowing Respondent until July 5, 2024, to serve an answer or otherwise respond to the second amended petition for cancellation.[8] As noted above, on July 1, 2024, Respondent filed its motion to suspend proceedings pending a civil action. The Board considers proceedings to have been suspended for consideration of Respondent's motion as of July 1, 2024. Accordingly, the time for Respondent to respond to the second amended petition for cancellation has also been suspended. The Board will reset time for Respondent to respond to the pleading as appropriate.

**The "Privileged Documents" At Issue in Respondent's Motions to Seal**

Respondent's first motion to seal requests that the documents appearing as "Exhibit E" to the original petition for cancellation, and as "Exhibit B" to both the first amended and second amended petition for cancellation, be placed under seal. These exhibits are identical and each consist of two pages, the first of which appears to be a screenshot of posts on a social media site with one post including an image of a chat, and the second page is a larger image of that chat (for purposes of this order the Board will refer to the chat shown in both pages as "the Chat").[9]

Respondent contends that the Chat is a "privileged document" depicting a screen capture of a chat on Respondent's internal messaging system between its general

---

[6] *Id.* at 5-27.
[7] *Id.* at 146-147.
[8] 8 TTABVUE 3.
[9] 1 TTABVUE 147-148, 4 TTABVUE 144-145, 5 TTABVUE 146-147.

Cancellation No. 92085110

counsel and a former employee and should be sealed. Respondent asserts the document is protected by attorney-client privilege, the privilege has not been waived, and Respondent has not authorized the disclosure of the privileged document to or by Petitioner.[10] In response to Respondent's first motion Petitioner argues that Respondent has not established the Chat is privileged. Petitioner further contends the Chat was publicly available and therefore any privilege is waived.[11]

Respondent's second motion to seal concerns "Exhibit D" and "Exhibit E" to Petitioner's two June 17, 2024, responses to Respondent's first motion to seal. Exhibit D consists of a printout of a webpage that includes images from what appears to be the same social media account as the contested exhibits to Petitioner's pleadings, which also include an image of the Chat, as well as a larger image of the Chat. Exhibit E consists of a printout from another social media account and also includes an image of the Chat.[12] In its second motion to seal Respondent modifies its request for relief, asking that Exhibits D and E be sealed "pending termination of the civil action".[13] As noted above, Petitioner did not respond to this motion.

**The Civil Action[14]**

In the civil action the parties are in the reverse position with Respondent as plaintiff asserting a variety of claims against three defendants: Plaintiff, Brandon

---

[10] 6 TTABVUE 2, *see also id.* at 7-8 (Decl. of Paras R. Shah, Senior Intellectual Property Counsel for Respondent ("Shah Decl.")).
[11] *See* 10 TTABVUE 9-12, 16-17.
[12] *Id.* at 34-40.
[13] 12 TTABVUE 3.
[14] The civil action is styled *Early Warning Services, LLC v. Warren Vurl Johnson, Brandon O'Loughlin, and P.A.Z.E. LLC,* Case No. 2:24-cv-01587-SMB, in the United States District Court for the District of Arizona (the "civil action").

Cancellation No. 92085110

O'Loughlin (plaintiff's CEO), and Warren Vurl Johnson (identified as former intellectual property counsel for Respondent).[15] The claims in the civil action include misappropriation of trade secrets, cybersquatting, and unjust enrichment, and a request for declaratory judgment of non-infringement.[16]

In support of its claims Respondent alleges, inter alia, that defendant Johnson improperly took numerous highly confidential and sensitive documents from Respondent, including a screen capture of a "Privileged Chat" between himself and Respondent's general counsel (wherein Johnson's identity is not shown); Petitioner "has repeatedly attached [the "Privileged Chat"] to its public filings" before the Board; and this "Privileged Chat" is among Respondent's trade secrets which were misappropriated by the defendants in the civil action.[17] Respondent further alleges it owns prior trademark rights to the mark PAZE as well as the stylized Z mark, and that Petitioner has no trademark rights in its asserted PAZE marks.[18]

Among the relief sought Respondent asks the district court to enjoin the defendants, including Petitioner, from using the mark PAZE or the stylized Z mark or any confusingly similar variations; order the defendants to remove from public view all documents containing Respondent's trade secrets; invalidate Petitioner's application Serial Nos. 98252022 and 98255290; and find that Respondent owns prior

---

[15] 13 TTABVUE 9-11.
[16] *Id.* at 25-34.
[17] *Id.* at 17-18, 22, 25-27.
[18] *Id.* at 32-34.

5

Cancellation No. 92085110

rights in the stylized Z mark and the mark is inherently distinctive, valid, and protectable.[19]

In its motion to suspend Respondent contends many of the same issues in the civil action are presented in the briefing on Respondent's motions to seal, as well as Petitioner's alleged entitlement to a statutory cause of action and its asserted claims in the Board proceeding. Respondent therefore maintains that suspension of Board proceedings, and continued shielding of the privileged documents at issue in the motions to seal, are warranted pending the final determination of the civil action. Again, Petitioner has not responded to the motion to suspend.

**Disposition of the Pending Motions**

The Board first considers the motion to suspend for the pending civil action. While the Board may grant the motion as conceded, in view of the nature of the claims in the civil action and Respondent's motions to seal, the Board provides the following analysis further explaining why suspension is warranted. *See* Trademark Rule 2.127(a), 37 C.F.R. § 2.127(a). "Whenever it shall come to the attention of the Trademark Trial and Appeal Board that a civil action … may have a bearing on a pending case, proceedings before the Board may be suspended until termination of the civil action[.]" Trademark Rule 2.117(a), 37 C.F.R. § 2.117(a); *see also* TRADEMARK TRIAL AND APPEAL BOARD MANUAL OF PROCEDURE ("TBMP") § 510.02(a) (2024). "[T]he civil action does not have to be dispositive of the Board proceeding to warrant suspension, it need only have a bearing on the issues before the Board." *New Orleans*

---

[19] *Id.* at 35-36.

Cancellation No. 92085110

*Louisiana Saints LLC v. Who Dat?, Inc.*, 99 USPQ2d 1550, 1552 (TTAB 2011). The Board does not require an issue to be joined in one or both proceedings so long as the Board can ascertain, prior to the filing of an answer(s), whether the final determination of the civil action may have a bearing on the Board proceeding. *See Other Tel. Co. v. Conn. Nat'l Tel. Co.*, 181 USPQ 125, 126-27 (TTAB 1974); *see also* TBMP § 510.02(a).

Here, at a minimum, the district court's determinations regarding Respondent's trademark rights would have a bearing on this proceeding. Moreover, if the district court enjoins Petitioner from using Repondent's asserted marks, such a decision may directly affect Petitioner's entitlement to a statutory cause of action in this proceeding. Accordingly, Respondent's motion to suspend pending the civil action is **granted**.

The Board next addresses the motions to seal. Through its first motion to seal Respondent requests that the exhibits to Petitioner's pleadings which include the Chat be placed under seal.[20] Although Respondent relies on the Standard Protective Order as the basis of its motion, Respondent does not invoke the confidentiality designations of the Standard Protective Order but rather relies on its assertion of attorney-client privilege.[21] Accordingly, the Board does not apply the standard for challenging designations set forth in the Standard Protective Order.[22] Rather, the

---

[20] 6 TTABVUE 2.
[21] *Id.*
[22] *See* Standard Protective Order ¶ 14.

7

Cancellation No. 92085110

Board construes Respondent's motion as seeking relief for "additional protections not provided" by the Standard Protective Order.[23]

The attorney-client privilege protects communications made in confidence between clients and their lawyers for the purpose of obtaining legal advice. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The attorney-client privilege "should be jealously protected." *Amerace Corp. v. USM Corp.*, 183 USPQ 506, 507 (TTAB 1974) (finding that communications between an attorney and a client regarding trademark infringement is protected by attorney-client privilege); *see also United States v. Bauer*, 132 F.3d 504, 510 (9th Cir. 1997) ("the attorney-client privilege is, perhaps, the most sacred of all legally recognized privileges, and its preservation is essential to the just and orderly operation of our legal system.").

When determining if the attorney-client privilege applies "the central inquiry is whether the communication is one that was made by a client to an attorney for the purpose of obtaining legal advice." *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 53 USPQ2d 1747, 1751 (Fed. Cir. 2000). Federal courts typically apply an eight-part test to determine whether information is covered by the attorney-client privilege:

> (1) where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*In re Grand Jury Investigation*, 974 F.2d 1068, 1071 n.2 (9th Cir. 1992) (quoting *United States v. Margolis*, 557 F.2d 209, 211 (9th Cir. 1977)). When the client is a

---

[23] *Id.* at ¶ 17.

8

Cancellation No. 92085110

company, attorney-client privilege may apply to communication between counsel and high-level corporate officers, as well as between counsel and any corporate employee acting at the direction of corporate superiors in order to secure legal advice for the corporation. *Upjohn*, 449 U.S. at 394, 101 S.Ct. 677; *see also The Goodyear Tire & Rubber Co. v. Uniroyal, Inc.*, 183 USPQ 372 (TTAB 1974).

However, "[t]he burden of determining which communications are privileged and which communications fall outside the scope of the privilege rests squarely on the party asserting the privilege." *In re Queen's Univ. at Kingston*, 820 F.3d 1287, 118 USPQ2d 1221, 1231 (Fed. Cir. 2016). To carry the burden, the party asserting the privilege must "describe in detail" the documents or information sought to be protected. *McCoo v. Denny's, Inc.*, 192 F.R.D. 675, 680 (D. Kan. 2000); *see also FTC v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 180 F.Supp.3d 1, 16 (D.D.C. 2016).

Here, the Board finds Respondent has fallen short of its burden of proving that the exhibits to the pleadings at issue are covered by the attorney-client privilege. Respondent has only stated that its general counsel was one of the persons to the Chat and that Respondent has not waived privilege.[24] Respondent provides no information regarding the former employee's position at the time of the Chat or whether the employee was acting at the direction of superiors. Respondent further fails to show that the Chat is actually a communication regarding specific legal advice

---

[24] 6 TTABVUE 7-8, ¶¶ 2-3 (Shah Decl.).

Cancellation No. 92085110

from its general counsel in counsel's capacity as such. Accordingly, Respondent's first motion to seal is **denied without prejudice**.[25]

However, in view of the "sacred" nature of the attorney-client privilege, and in consideration of the Board's disposition of Respondent's remaining motions, the Board will continue to shield Exhibit E to the original petition for cancellation, Exhibit B to the first amended petition for cancellation, and Exhibit B to the second amended petition for cancellation, pending the suspension of this proceeding.[26]

Turning to the second motion to seal, it appears that the Chat at issue in this motion to seal is the same as the Privileged Chat at issue in the civil action.[27] The district court's determination in the civil action as to whether this communication constitutes a "trade secret", is privileged, or is otherwise protectable from public disclosure would have a bearing on a determination of whether documents including the communication filed with the Board should be shielded from public viewing. Accordingly, Respondent's second motion to seal is **granted**, and Exhibits D and E to both of Petitioner's June 17, 2024, submissions will remain sealed pending termination of the civil action.[28]

---

[25] The Board hastens to add that Respondent's motion would have been denied without prejudice if it was considered as challenge to designations under the Standard Protective Order. Such a challenge requires a good faith effort to negotiate prior to making a motion, and Respondent failed to show any such effort to negotiate with Petitioner. Standard Protective Order ¶ 14, *see also U.S. Polo Ass'n v. David McLane Ents., Inc.*, 2019 USPQ2d 108442, at * 2 (TTAB 2019); TBMP § 412.01(b).

[26] Additionally, the prejudice to Respondent if the documents are made public outweighs the prejudice to Petitioner if the documents remain under seal while the Board proceeding is suspended for the civil action.

[27] The Board reiterates the Chat shown in the exhibits to the pleadings is the same as the Chat shown in Exhibits D and E to Petitioner's response brief.

[28] The second motion to seal is also conceded. *See* Trademark Rule 2.127(a), 37 C.F.R. § 2.127(a).

Cancellation No. 92085110

In view of the foregoing, the following documents are placed under seal pending the suspension of this proceeding:

- "Exhibit E" to the original petition for cancellation;
- "Exhibit B" to the first amended petition for cancellation;
- "Exhibit B" to the second amended petition for cancellation;
- "Exhibit D" and "Exhibit E" to Petitioner's first submission of June 17, 2024; and
- "Exhibit D" and "Exhibit E" to Petitioner's second submission of June 17, 2024.

For the avoidance of doubt, the Board is not making any determinations at this time as to whether or not the documents at issue in the motions to seal are properly protected under attorney-client privilege.[29] Upon resumption of these proceedings the Board will entertain further submissions from the parties regarding whether the documents should remain under seal from public view.

However, with the exception of information properly filed under seal, Board proceeding files are to be publicly available. *See* Trademark Rule 2.27(d)-(e), 37 C.F.R. § 2.27(d)-(e); *see also* TBMP § 412.04. Accordingly, when filed documents are shielded from public view, a public copy must be submitted redacting the portions submitted under seal. Trademark Rule 2.126(c), 37 C.F.R. § 2.126(c); *see also* TBMP § 412.04. In view thereof, and because the exhibits to be sealed were submitted by Petitioner, Petitioner must file public copies of the following wherein the exhibits identified above are redacted:

- original petition for cancellation (1 TTABVUE),
- first amended petition for cancellation (4 TTABVUE),
- second amended petition for cancellation (5 TTABVUE), and

---

[29] Nor does the Board make any determinations on whether the documents can otherwise be designated under the Board's Standard Protective Order.

11

Cancellation No. 92085110

- its June 17, 2024, responses to Respondent's first motion to seal (11 TTABVUE).[30]

Petitioner is allowed **TWENTY DAYS** from the date of this order **to submit the public copies of these docket entries**, failing which the Board may give the sealed exhibits no further consideration.

This cancellation proceeding is otherwise **SUSPENDED** pending the final disposition of the civil action between the parties. Within THIRTY DAYS after the final determination of the civil action, the parties must so notify the Board in writing, including a copy of the court's final order.[31] Upon resumption of the proceedings the Board will reset dates as appropriate, including time for Respondent to answer or otherwise respond to the operative petition for cancellation.

During the suspension period, the parties must notify the Board of any address changes for the parties or their attorneys. In addition, the parties must promptly inform the Board of any other related cases, even if they become aware of such cases during the suspension period.

---

[30] Because 10 TTABVUE and 11 TTABVUE are identical, and so as to not unnecessarily clutter the record, Petitioner need not submit a public version of 10 TTABVUE.

[31] A proceeding is considered to have been finally determined when an order or ruling that ends litigation has been rendered, and no appeal has been filed, or all appeals filed have been decided and the time for any further review has expired." *See* TBMP § 510.02(b).

THIS ORDER IS NOT A
PRECEDENT OF THE TTAB

**UNITED STATES PATENT AND TRADEMARK OFFICE**
**Trademark Trial and Appeal Board**
**P.O. Box 1451**
**Alexandria, VA  22313-1451**
General Contact Number: 571-272-8500
General Email: TTABInfo@uspto.gov

ajl

October 1, 2024

Opposition No. 91291526

*P.A.Z.E.LLC*

*v.*

*Early Warning Services, LLC*

**Ashlyn Lembree, Interlocutory Attorney:**

This proceeding now comes before the Board for consideration of several motions concerning essentially the same chat message asserted by Applicant to be protected by attorney-client privilege (the "Chat") included in six of Opposer's seven submissions to the Board to date; and, Applicant's July 1, 2024 uncontested motion to suspend pending termination of a civil action.[1] Applicant's May 31, 2024 motion to seal the Chat shown in the original notice of opposition is contested.[2] Applicant's June 7, 2024 second motion to seal the Chat shown in the amended notice of opposition is

---

[1] 17 TTABVUE. Record citations are to TTABVUE, the Board's publicly available docket system. *See, e.g., New Era Cap Co., Inc. v. Pro Era, LLC*, 2020 USPQ2d 10596, *2 n.1 (TTAB 2020).

[2] 4 TTABVUE (Applicant's first motion to seal). 10, 12, 13, and 14 TTABVUE (Opposer's subsequently-withdrawn initial brief ("Withdrawn Brief"), Opposer's substitute brief, Opposer's supplement to its substitute brief ("Supplemental Brief"), and Opposer's construed fourth response, respectively). As discussed herein, Opposer's Supplemenetal Brief and fourth response to the motion are denied consideration. The Board previously shielded the notice of opposition and Withdrawn Brief from public view pending disposition of Applicant's first motion to seal. 6, 12 TTABVUE.

Opposition No. 91291526

contested.[3] Applicant's June 14, 2024 third motion to seal the Chat shown in Opposer's Supplemental Brief is uncontested.[4] Opposer's motion, filed June 17, 2024, that "the Board [issue] an order that [Exhibit 3 to the notice of opposition] be ruled Information Not to Be Designated as Protected" (Opposer's "Designation Motion") is, as discussed herein, construed as Opposer's fourth response to Applicant's first motion to seal and denied consideration.[5] In conjunction with its motion to suspend, Applicant moves for a fourth time to seal the Chat, albeit in that instance the Chat as shown in Opposer's response to Applicant's second motion to seal and as shown in Opposer's Designation Motion.[6] Applicant's fourth motion to seal is uncontested.

The Board has considered all of the parties' arguments, presumes the parties' familiarity with the factual bases for their filings, and does not recount the facts or arguments here, except as necessary to explain this decision. *See Guess? IP Holder LP v. Knowluxe LLC*, 116 USPQ2d 2018, 2019 (TTAB 2015).

As an initial matter, the Board notes Opposer filed four responses to Applicant's first motion to seal.[7] Duplicate submissions unnecessarily complicate this proceeding and Opposer is admonished to take greater care with its filings with the Board. The presentation of one's arguments and authority should be presented thoroughly in the

---

[3] 8 TTABVUE (Applicant's second motion to seal). 16 TTABVUE (Opposer's response brief). The Board previously shielded the amended notice of opposition from public view pending disposition of Applicant's second motion to seal. 12 TTABVUE.

[4] 14 TTABVUE.

[5] 15 TTABVUE. Opposer's "reservat[ion of] its right to answer or otherwise move with respect to [Applicant's three motions to seal]," *id.* at 2, is **denied**. *See* Trademark Rule 2.127(a), 37 C.F.R. § 2.127(a).

[6] 17 TTABVUE 3-4.

[7] *See* n.2, supra.

Opposition No. 91291526

motion or the opposition brief thereto. *Johnston Pump / Gen. Valve Inc. v. Chromalloy Am. Corp.*, 13 USPQ2d 1719, 1720 n.3 (TTAB 1989); TRADEMARK TRIAL AND APPEAL BOARD MANUAL OF PROCEDURE (TBMP) § 502.02(b) (2024). Moreover, submissions with the Board are assigned a single filing date for purposes of calculating the deadline for filing a response or reply brief under Trademark Rule 2.127(a). *OMS Investments, Inc. v. Habit Horticulture LLC*, 2022 USPQ2d 1074, at *1-2 (TTAB 2022). By order dated June 12, 2024, the Board exercised its discretion to substitute Opposer's second response for its first response, thereby setting the single filing date for Opposer's response to Applicant's first motion to seal for purposes of calculating the deadline for Applicant to file its reply brief. In view thereof, Opposer's third response to Applicant's first motion to seal (Opposer's Supplemental Brief), filed subsequent to the Board's order setting the briefing schedule for the motion based on the single date of filing of Opposer's accepted response to the motion, is **denied consideration**. Moreover, inasmuch as Opposer responds to Applicant's first motion to seal in its Designation Motion and its arguments therein address the same issue raised by Applicant's first motion to seal, Opposer's Designation Motion is construed as its fourth response to Applicant's first motion to seal and is **denied consideration** as improperly filed subsequent to Opposer's single, accepted response to Applicant's first motion to seal.

**The Board Proceeding**

On May 16, 2024, Opposer filed a notice of opposition opposing registration of involved application Serial No. 97669754 for the standard character mark PAZE for

Opposition No. 91291526

"Financial transaction services, namely, providing secure commercial transaction options and secure electronic funds transfer; processing of secure electronic wallet transactions" in International Class 36.[8]

Opposer filed an amended notice of opposition prior to Applicant's answer, and the Board accepted Opposer's amended notice of opposition as its operative pleading.[9] Under the operative pleading, Opposer alleges, inter alia, that it owns pending applications Serial Nos. 98255290 and 98252002 for, respectively, the standard character and stylized mark PAZE and that "Opposer believes that if the [involved a]pplication is allowed to register it will cause delays and complications with the registration of Opposer's Marks, causing harm and costs to Opposer,"[10] and identifies the following grounds for cancellation: merely descriptive, lack of bona fide intent to use, fraud, nonuse, and that the identification of services was impermissibly expanded during examination.[11] Opposer also submits several exhibits in support of both its notice of opposition and amended notice of opposition, including a document identified as "Exhibit 3" to its original notice of opposition[12] and "Exhibit[s] 3 [and] 5" to its amended notice of opposition.[13]

---

[8] 1 TTABVUE. Application Serial No. 97669754 was filed November 9, 2022 under Trademark Act Section 1(b), 15 U.S.C. § 1052(b) and amended to a filing basis under Trademark Act Section 1(a), 15 U.S.C. § 1052(a) by way of an amendment to allege use filed December 11, 2023 and accepted February 5, 2024.

[9] 12 TTABVUE, *see also* Amended Notice of Opposition (7 TTABVUE).

[10] 7 TTABVUE 5-6, at ¶¶ 22, 27. "Opposer's Marks" is undefined.

[11] *Id*. at 7-25 (counts first through fifth).

[12] 1 TTABVUE 214-15 (Exhibit 3).

[13] 7 TTABVUE 335-36 (Exhibit 3) and 365 (Exhibit 5).

4

Opposition No. 91291526

By order dated June 6, 2024, the Board suspended proceedings pending disposition of Applicant's first motion to seal. By the Board's June 12, 2024 order, proceedings remained suspended pending disposition of both Applicant's first and second motions to seal. Accordingly, the time for Applicant to respond to the amended notice of opposition has also been suspended. The Board will reset time for Applicant to respond to the pleading as appropriate.

**The "Privileged Documents" At Issue in Applicant's Motions to Seal**

Applicant's four motions to seal[14] collectively request that the documents appearing as "Exhibit 3" to the original notice of opposition, "Exhibit[s] 3 [and] 5" of the amended notice of opposition, "Exhibit[s] B [and] C" of Opposer's Supplemental Brief,[15] "Exhibit B" to Opposer's response to Applicant's second motion to seal,[16] and "Exhibit[s] C [and] D" to the Designation Motion[17] be placed under seal. As raised in its June 12, 2024 order, the Board additionally addresses "Exhibit B" and "Exhibit C" to the Withdrawn Brief. These exhibits are substantially identical and consist of one or two pages; where both pages have been submitted, the first page appears to be a screenshot of posts on a social media site with one post including an image of a chat, and the second (or only) page is a larger image of that chat (for purposes of this order the Board will refer to the chat shown in both pages as the "Chat").

---

[14] As previously noted, Applicant's fourth motion to seal was combined with Applicant's motion to suspend for the civil action. 17 TTABVUE 3-4. Applicant's fourth motion to seal moves that Exhibits C and D to Opposer's Designation Motion and Exhibit B to Opposer's response to Applicant's second motion to seal be sealed.

[15] 13 TTABVUE 9-14 (Exhibits B and C).

[16] 16 TTABVUE 18-22 (Exhibit B).

[17] 15 TTABVUE 15-21 (Exhibits C and D).

5

Opposition No. 91291526

Applicant contends that the Chat is a "privileged document" depicting a screen capture of a chat on Applicant's internal messaging system between its general counsel and a former employee and should be sealed. Applicant asserts the document is protected by attorney-client privilege, the privilege has not been waived, and Applicant has not authorized the disclosure of the privileged document to or by Opposer.[18] In its accepted response to Applicant's first motion to seal and in its response to Applicant's second motion to seal, Opposer argues that Applicant has not established the Chat is privileged. Opposer further contends the Chat was publicly available and therefore any privilege is waived or not applicable.[19] As noted above, Opposer did not respond to Applicant's third and fourth motions to seal.

**The Civil Action[20]**

In the civil action the parties are in the reverse position with Applicant as plaintiff asserting a variety of claims against three defendants: Plaintiff [Opposer in the Board proceeding], Brandon O'Loughlin (plaintiff's CEO), and Warren Vurl Johnson (identified as former intellectual property counsel for Applicant).[21] The claims in the

---

[18] *See, e.g.*, 4 TTABVUE 2; *see also id.* at 7-8, ¶¶ 2, 3 (Decl. of Paras R. Shah, Senior Intellectual Property Counsel for Applicant ("Shah Decl.")).

[19] *See* 11 TTABVUE 7-9, 11-16. Opposer's response brief also includes a section entitled "Motions to Redesignate Information per The Standard Protective Order," 11 TTABVUE 9-11, but Opposer makes no motion in this portion of its brief. *See also* 16 TTABVUE 2, 8 (publicly available); *id.* at 8-13 (crime-fraud exception).

[20] The civil action is styled *Early Warning Services, LLC v. Warren Vurl Johnson, Brandon O'Loughlin, and P.A.Z.E. LLC,* Case No. 2:24-cv-01587-SMB, in the United States District Court for the District of Arizona (the "civil action").

[21] 17 TTABVUE 8-11 (Complaint in the civil action).

6

Opposition No. 91291526

civil action include misappropriation of trade secrets, cybersquatting, and unjust enrichment, and a request for declaratory judgment of non-infringement.[22]

In support of its claims in the civil action Applicant alleges, inter alia, that defendant Johnson improperly took numerous highly confidential and sensitive documents from Applicant, including a screen capture of a "Privileged Chat" between himself and Applicant's general counsel (wherein Johnson's identity is not shown); Opposer "has repeatedly attached [the "Privileged Chat"] to its public filings" before the Board; and this "Privileged Chat" is among Applicant's trade secrets which were misappropriated by the defendants in the civil action.[23] Applicant further alleges it owns prior trademark rights to the mark PAZE as well as the stylized Z mark, and that Opposer has no trademark rights in its asserted PAZE marks.[24]

Among the relief sought, Applicant asks the district court to enjoin the defendants, including Opposer, from using the mark PAZE or the stylized Z mark or any confusingly similar variations; order the defendants to remove from public view all documents containing Applicant's trade secrets; invalidate Opposer's application Serial Nos. 98252022 and 98255290; and find that Applicant owns prior rights in, inter alia, the PAZE and stylized Z marks and the marks are inherently distinctive, valid, and protectable.[25]

In its motion to suspend, Applicant contends many of the same issues in the civil action are presented in the briefing on Applicant's motions to seal, as well as

---

[22] *Id.* at 25-34.
[23] *Id.* at 17-18, 22, 25-27.
[24] *Id.* at 32-34.
[25] *Id.* at 35-36.

7

Opposition No. 91291526

Opposer's alleged entitlement to a statutory cause of action and its asserted claims in the Board proceeding. Applicant therefore maintains that suspension of Board proceedings, and continued shielding of the privileged documents at issue in the motions to seal, are warranted pending the final determination of the civil action. Again, Opposer has not responded to the motion to suspend.

### Disposition of the Pending Motions

The Board first considers the motion to suspend for the pending civil action. While the Board may grant the motion as conceded, in view of the nature of the claims in the civil action and Applicant's motions to seal, the Board provides the following analysis further explaining why suspension is warranted. *See* Trademark Rule 2.127(a). "Whenever it shall come to the attention of the Trademark Trial and Appeal Board that a civil action … may have a bearing on a pending case, proceedings before the Board may be suspended until termination of the civil action[.]" Trademark Rule 2.117(a), 37 C.F.R. § 2.117(a); *see also* TBMP § 510.02(a). "[T]he civil action does not have to be dispositive of the Board proceeding to warrant suspension, it need only have a bearing on the issues before the Board." *New Orleans Louisiana Saints LLC v. Who Dat?, Inc.*, 99 USPQ2d 1550, 1552 (TTAB 2011). The Board does not require an issue to be joined in one or both proceedings so long as the Board can ascertain, prior to the filing of an answer(s), whether the final determination of the civil action may have a bearing on the Board proceeding. *See Other Tel. Co. v. Conn. Nat'l Tel. Co.*, 181 USPQ 125, 126-27 (TTAB 1974); *see also* TBMP § 510.02(a).

8

Opposition No. 91291526

Here, at a minimum, the district court's determinations regarding Applicant's trademark rights would have a bearing on this proceeding. Moreover, if the district court enjoins Opposer from using Applicant's asserted marks, such a decision may directly affect Opposer's entitlement to a statutory cause of action in this proceeding. Accordingly, Applicant's motion to suspend pending the civil action is **granted**.

The Board next addresses the motions to seal. Through its first motion to seal Applicant requests that the exhibits to Opposer's pleadings which include the Chat be placed under seal.[26] Although Applicant relies on the Standard Protective Order as the basis of its motion, Applicant does not invoke the confidentiality designations of the Standard Protective Order but rather relies on its assertion of attorney-client privilege.[27] Accordingly, the Board does not apply the standard for challenging designations set forth in the Standard Protective Order.[28] Rather, the Board construes Applicant's motion as seeking relief for "additional protections not provided" by the Standard Protective Order.[29]

The attorney-client privilege protects communications made in confidence between clients and their lawyers for the purpose of obtaining legal advice. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The attorney-client privilege "should be jealously protected." *Amerace Corp. v. USM Corp.*, 183 USPQ 506, 507 (TTAB 1974) (finding that communications between an attorney and a client regarding trademark infringement is protected by attorney-client privilege); *see also United*

---

[26] 4 TTABVUE 2.
[27] *Id.*
[28] *See* Standard Protective Order ¶ 14.
[29] *Id.* at ¶ 17.

9

Opposition No. 91291526

*States v. Bauer*, 132 F.3d 504, 510 (9th Cir. 1997) ("the attorney-client privilege is, perhaps, the most sacred of all legally recognized privileges, and its preservation is essential to the just and orderly operation of our legal system.").

When determining if the attorney-client privilege applies "the central inquiry is whether the communication is one that was made by a client to an attorney for the purpose of obtaining legal advice." *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 53 USPQ2d 1747, 1751 (Fed. Cir. 2000). Federal courts typically apply an eight-part test to determine whether information is covered by the attorney-client privilege:

> (1) where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*In re Grand Jury Investigation*, 974 F.2d 1068, 1071 n.2 (9th Cir. 1992) (quoting *United States v. Margolis*, 557 F.2d 209, 211 (9th Cir. 1977)). When the client is a company, attorney-client privilege may apply to communication between counsel and high-level corporate officers, as well as between counsel and any corporate employee acting at the direction of corporate superiors in order to secure legal advice for the corporation. *Upjohn*, 449 U.S. at 394, 101 S.Ct. 677; *see also The Goodyear Tire & Rubber Co. v. Uniroyal, Inc.*, 183 USPQ 372 (TTAB 1974).

However, "[t]he burden of determining which communications are privileged and which communications fall outside the scope of the privilege rests squarely on the party asserting the privilege." *In re Queen's Univ. at Kingston*, 820 F.3d 1287, 118 USPQ2d 1221, 1231 (Fed. Cir. 2016). To carry the burden, the party asserting the

10

Opposition No. 91291526

privilege must "describe in detail" the documents or information sought to be protected. *McCoo v. Denny's, Inc.*, 192 F.R.D. 675, 680 (D. Kan. 2000); *see also FTC v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 180 F.Supp.3d 1, 16 (D.D.C. 2016).

Here, the Board finds Applicant has fallen short of its burden of proving that the Chat document is covered by the attorney-client privilege. Applicant has only stated that its general counsel was one of the persons to the Chat and that Applicant has not waived privilege.[30] Applicant provides in its motions to seal no information regarding the former employee's position at the time of the Chat or whether the employee was acting at the direction of superiors. Applicant further fails to show that the Chat is actually a communication regarding specific legal advice from its general counsel in counsel's capacity as such. Accordingly, Applicant's first and second motions to seal, except as stated herein, are **denied without prejudice**.[31]

However, in view of the "sacred" nature of the attorney-client privilege, in consideration of the Board's disposition of Applicant's remaining motions,[32] and because the district court's determination in the civil action as to whether the communication at issue in the civil action constitutes a "trade secret", is privileged,

---

[30] 4 TTABVUE 7-8, ¶¶ 2-3 (Shah Decl.).

[31] The Board hastens to add that Applicant's motion would have been denied without prejudice if it was considered as challenge to designations under the Standard Protective Order. Such a challenge requires a good faith effort to negotiate prior to making a motion, and Applicant failed to show any such effort to negotiate with Opposer. Standard Protective Order ¶ 14, *see also U.S. Polo Ass'n v. David McLane Ents., Inc.*, 2019 USPQ2d 108442, at * 2 (TTAB 2019); TBMP § 412.01(b).

[32] As noted previously, Applicant's motion to suspend for the civil action is granted. Moreover, Applicant's third and fourth motions to seal are **granted** as conceded to the extent that the submissions are sealed from public view but that the Board will entertain further submissions from the parties regarding whether the documents should remain under seal from public view upon resumption of proceedings. *See* Trademark Rule 2.127(a).

Opposition No. 91291526

or is otherwise protectable from public disclosure would have a bearing on a determination of whether documents including the Chat filed with the Board should be shielded from public viewing, the Board will continue to shield "Exhibit 3" to the original notice of opposition, "Exhibit[s] 3 [and] 5" of the amended notice of opposition, "Exhibit[s] B [and] C" to the Withdrawn Brief, "Exhibit[s] B [and] C" of Opposer's Supplemental Brief, "Exhibit B" to Opposer's response to Applicant's second motion to seal, and "Exhibit[s] C [and] D" to the Designation Motion pending the suspension of this proceeding.[33]

In view of the foregoing, the following documents (found at 1, 7, 10, 13, 15, and 16 TTABVUE) are placed under seal pending the suspension of this proceeding:

- "Exhibit 3" to the original notice of opposition;
- "Exhibit 3" and "Exhibit 5" to the amended notice of opposition;
- "Exhibit B" and "Exhibit C" to Opposer's Withdrawn Brief;
- "Exhibit B" and "Exhibit C" to Opposer's Supplemental Brief;
- "Exhibit B" to Opposer's response to Applicant's second motion to seal; and,
- "Exhibit B" to Opposer's Designation Motion.

For the avoidance of doubt, the Board is not making any determinations at this time as to whether or not the documents at issue in the motions to seal are properly protected under attorney-client privilege.[34] Upon resumption of these proceedings the Board will entertain further submissions from the parties regarding whether the documents should remain under seal from public view.

---

[33] Additionally, the prejudice to Applicant if the documents are made public outweighs the prejudice to Opposer if the documents remain under seal while the Board proceeding is suspended for the civil action.

[34] Nor does the Board make any determinations on whether the documents can otherwise be designated under the Board's Standard Protective Order.

12

Opposition No. 91291526

However, with the exception of information properly filed under seal, Board proceeding files are to be publicly available. *See* Trademark Rule 2.27(d)-(e), 37 C.F.R. § 2.27(d)-(e); *see also* TBMP § 412.04. Accordingly, when filed documents are shielded from public view, a public copy must be submitted redacting the portions submitted under seal. Trademark Rule 2.126(c), 37 C.F.R. § 2.126(c); *see also* TBMP § 412.04. In view thereof, and because the exhibits to be sealed were submitted by Opposer, Opposer must file public copies of the following wherein the exhibits identified above are redacted:

- original notice of opposition (1 TTABVUE);
- amended notice of opposition (7 TTABVUE);
- Withdrawn Brief (10 TTABVUE);
- Supplemental Brief (13 TTABVUE);
- Opposer's response to Applicant's second motion to seal (15 TTABVUE); and,
- Designation Motion (16 TTABVUE).

Opposer is allowed **TWENTY DAYS** from the date of this order **to submit the public copies of these docket entries**, failing which the Board may give the sealed exhibits no further consideration.

This cancellation proceeding is otherwise **SUSPENDED** pending the final disposition of the civil action between the parties. Within **THIRTY DAYS** after the final determination of the civil action, the parties must so notify the Board in writing, including a copy of the court's final order.[35] Upon resumption of the proceedings the

---

[35] A proceeding is considered to have been finally determined when an order or ruling that ends litigation has been rendered, and no appeal has been filed, or all appeals filed have been decided and the time for any further review has expired. *See* TBMP § 510.02(b).

13

Opposition No. 91291526

Board will reset dates as appropriate, including time for Applicant to answer or otherwise respond to the operative notice of opposition.

During the suspension period, the parties must notify the Board of any address changes for the parties or their attorneys. In addition, the parties must promptly inform the Board of any other related cases, even if they become aware of such cases during the suspension period.

14

# EXHIBIT G

# KILPATRICK BILLING RECORDS SHOWING EX PARTE COMMUNICATIONS AND FEDEX SHIPMENTS TO COURT

| Date | Tracking Number | Billing Entry | Docket Entry |
|---|---|---|---|
| 01/27/25 | 284811099698 | "review two emails from court re our motions" | NONE |
| 02/25/25 | 285804251502 | "communications with court re same" | NONE |
| 04/01/25 | 287095907187 | "communications with court re motion to seal and proposed order" | NONE |
| 04/08/25 | 287358274134 | [Motion to Disqualify response] | NONE |

# Kilpatrick

*Please Remit Payments Only To:*
*P.O. Box 884542*
*Los Angeles, California  90088-4542*
*(866) 244-4934*
*Payments Only: accountsreceivable@ktslaw.com*
*Billing Inquiries: financialservices-billingrequests@ktslaw.com*
*Fed I.D.* █████████

May 6, 2025

ATTN: DAVID OPPENHEIM
EARLY WARNING SERVICES, LLC
16552 N. 90TH STREET, SUITE 100
SCOTTSDALE, AZ 85260

| | |
|---|---|
| Client: | 090850 |
| Matter: | 1448087 |
| Invoice #: | 13142597 |
| Int. Matter: | 202300038 |

RE:    US:POT CIVIL ACTION AGAINST P.A.Z.E. LLC ET AL. (IP-24-096) (PAZE)
Client Reference:        IP-24-096
                                        PAZE

**For Professional Services Through April 30, 2025:**

| Date | Initials | Description | Hours | Amount |
|---|---|---|---|---|
| 04/01/2025 | SKS | Finalize EWS's emergency motion to seal, proposed order, and notice for expedited consideration, draft email to P. Shah regarding same, and correspond with E. Smith regarding filing of same. | 0.60 | 481.95 |
| 04/01/2025 | ED | Review client's comments re motion to seal W. Johnson's motion to disqualify and S. Stadler's reply to same; review revised motion to seal, proposed order and notice for expedited consideration; communications with E. Smith re same; review S. Stadler's additional revisions to motion to seal; review communications with court re motion to seal and proposed order; review two emails from court re today's filings; review status report to client | 1.30 | 850.85 |
| 04/01/2025 | DJG | Review of comments on draft motion.  Final review of motion to seal. | 0.30 | 299.63 |

*Amounts are calculated per entry, rounding discrepancies may occur in summaries or totals as a result of prearranged discounts.*

*Please return this page with payment*
*Due and Payable upon receipt.  1% interest per month charged on balances after 30 days.*

When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction.

---

**Bank:** ███████████████
**ABA Routing No.:** ████████████████
**ABA Routing No. for ACH and Other EFTs:** ████████████

**Credit: Kilpatrick Townsend & Stockton LLP**
**Account No.:** ███████████████
**Swift Code:** ████████████████

090850.1448087.13142597

| Date | Initials | Description | Hours | Amount |
|------|----------|-------------|-------|--------|
| ████████ | ███ | ████████████████████████ | ███ | ████ |
| 04/02/2025 | CWB | Review of Plaintiff and Counterclaim-Defendant Early Warning Services, LLC's Opposition to Defendant and Counterclaim-Plaintiff Warren Vurl Johnson's Motion to Disqualify to verify the subsequent history of legal sources and confirm the accuracy of citations as requested by Sara Stadler. | 2.50 | 669.38 |
| 04/02/2025 | DJG | Review and discuss court's decision on motion to seal. | 0.20 | 199.75 |
| 04/02/2025 | ED | Review email from court and attached order re sealing motion to disqualify and status report to client re same | 0.20 | 130.90 |
| 04/02/2025 | KA | Analyze the Court's order setting expedited briefing schedule for EWS's motion to seal portions of W. Johnson's motion for disqualification. | 0.10 | 71.83 |
| ████████ | ███ | ████████████████████████ | ███ | ████ |
| ████████ | ███ | ████████████████████████ | ███ | ████ |
| 04/03/2025 | SKS | Draft Kilpatrick declaration in opposition to W. Johnson's motion to disqualify (.4); revise draft opposition to disqualification motion per results of cite check (.2); ████████████████ | 6.20 | 4,980.15 |
| ████████ | ███ | ████████████████████████ | ███ | ████ |

| Summary | Timekeeper Name | Hours | Rate/Hour | Amount |
|---|---|---|---|---|
| KA | Kristin Adams | ███ | 718.25 | ███ |
| CWB | Cynthia W. Baldwin | ███ | 267.75 | ███ |
| THD | T. H. Davis | ███ | 1,100.75 | ███ |
| ED | Erick Durlach | ███ | 250.00 | ███ |
| ED | Erick Durlach | ███ | 654.50 | ███ |
| DJG | D. J. Gibby | ███ | 998.75 | ███ |
| ███ | ███ | ███ | ███ | ███ |
| SKS | Sara K. Stadler | ███ | 803.25 | ███ |
| DLW | Dennis Wilson | ███ | 1,100.75 | ███ |
| **Totals** | | ███ | | ███ |

*Other Charges:*

| | | |
|---|---|---|
| ███ | ███ | ███ |
| ███ | ███ | ███ |
| 04/04/2025 | Federal Express from Kilpatrick Townsend LLP(Elba Smith) to AZ US District Court (Hon Susan M Brnovich) in PHOENIX AZ on 04/01/25Tracking #287095907187 | 21.13 |
| ███ | ███ | ███ |
| 04/11/2025 | Federal Express from Kilpatrick Townsend LLP(Elba Smith) to AZ US District Court (Hon Susan M Brnovich) in PHOENIX AZ on 04/08/25Tracking #287358274134 | 26.70 |
| ███ | ███ | ███ |
| ███ | ███ | ███ |
| ███ | ███ | ███ |
| ███ | ███ | ███ |

**Total Other Charges** ███

**TOTAL AMOUNT DUE THIS INVOICE** ███

| Date | Initials | Description | Hours | Amount |
|------|----------|-------------|-------|--------|
| 01/23/2025 | SKS | Telephone conference with P. Shah regarding damages calculation (.2); revise draft motion for default judgment against P.A.Z.E. and supporting declaration of Mr. Shah to reflect revised calculation (.4). | 0.60 | 481.95 |
| 01/23/2025 | ED | Review communications with client re draft motion for default judgment; communications with E. Smith re motion to exceed and motion for default judgment | 0.40 | 261.80 |
| 01/23/2025 | THD | Conferences and exchange of e-mail correspondence with Sara Stadler regarding strategy for default judgment and calculation of claimed actual damages in light of recent Ninth Circuit authority. | 0.50 | 550.38 |
| ██████ | ███ | ████████████████████████████████ ████████████ | ████ | ████ |
| 01/24/2025 | SKS | Telephone conference with P. Shah regarding declaration in support of motion for default judgment against P.A.Z.E. | 0.10 | 80.33 |
| ██████ | ███ | ████████████████████████████████ ███████████████████████████ ████████████████ | ████ | ████ |
| ██████ | ██ | ████████████████████████████████ ████████████████████████████ ███████████████████ ████████████████ | ████ | ████ |
| 01/27/2025 | ED | Review proposed order granting motion for default judgment and communications with team re same; review final versions of motion for default judgment and motion to exceed page limit and related documents and exhibits; communications with E. Smith re same; review communications with client re same; review two emails from court re our motions; review service emails to judge's chambers and defendants re two motions | 1.20 | 785.40 |
| 01/27/2025 | KA | ████████████████████████████ ███████████ revise and supplement proposed order on motion for default judgment (.5); research case law in support of same concerning evidence of willfulness finding and finality of judgment (.7). | 1.50 | 1,077.38 |
| 01/27/2025 | SKS | Revise and finalize motion for default judgment and supporting evidence, draft proposed orders, and correspond with D. Wilson, T. Davis, and K. Adams regarding comments on same (2.5); correspond with E. Smith regarding filing of same (.2); ██████████ ██████████████████████████ ██████████████████████████████ █████████████████ | 2.90 | 2,329.43 |
| ██████ | ███ | ████████████████████████████████ █████████ | ████ | ████ |

090850.1448087.13101860                                                                  Page 11

*Other Charges:*

| | | |
|---|---|---|
| ███████ | ████████████████████████ | ████ |
| | ████████████████████████████ | |
| | ████████████████████████████ | |
| | ████████████████████ | |
| ███████ | ████████████████████████ | ████ |
| | █████████████████████████████ | |
| | ████████████████████ | |
| ███████ | ████████████████████████ | ████ |
| | █████████████████████████████ | |
| | █████████████████████████ | |
| | ██████████ | |
| ███████ | ████████████████████████ | ████ |
| | █████████████████████████████ | |
| | █████████████████████████ | |
| | ████████████████████ | |
| ███████ | ███████████████████████ | ████ |
| | █████████████████████████████ | |
| | █████████████████████████████ | |
| | ███████████████████ | |
| ███████ | █████████████████████████████ | ████ |
| | █████████████████████████████ | |
| | ███████████ | |
| ███████ | █████████ | ████ |
| ███████ | █████████████████████████ | ████ |
| | ███████████████████ | |
| | ██████████ | |
| ███████ | ██████████ | ████ |
| ███████ | █████████ | ████ |
| ███████ | ████████████████████████ | ████ |
| | █████████████████████████████ | |
| | ███████████ | |
| ███████ | ████████████████████████ | ████ |
| | █████████████████████████████ | |
| | ███████████ | |
| ███████ | █████████ | ████ |
| ███████ | █████████ | ████ |
| ███████ | ████████████████████████ | ████ |
| | ████████████████████ | |
| | ██████████ | |
| 01/31/2025 | Federal Express from Kilpatrick Townsend LLP(Elba Smith) to AZ US District Court (Hon Susan M Brnovich) in PHOENIX AZ on 01/27/25Tracking #284811099698 | 21.27 |

**Total Other Charges**                                                    ████████

| Date | Initials | Description | Hours | Amount |
|------|----------|-------------|-------|--------|
| 02/24/2025 | SKS | Telephone conference with P. Shah regarding applicability of Frow decision and draft reply in support of EWS's motion for default judgment (.3); telephone conference with T. Davis regarding Mr. Shah's comments on draft reply (.4); review and revise reply for filing (1.5). | 2.20 | 1,767.15 |
| ▮▮▮▮▮▮ | ▮▮ | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | ▮▮ | ▮▮▮ |
| ▮▮▮▮▮▮ | ▮▮ | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | ▮▮ | ▮▮▮ |
| ▮▮▮▮▮▮ | ▮▮ | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | ▮▮ | ▮▮▮ |
| 02/25/2025 | ED | Communications with E. Smith re filing reply to motion for default; ==communications with court re same==; review service email to defendants re reply to motion for default and defendant's reply; review status email to client re motion for default | 0.50 | 327.25 |
| ▮▮▮▮▮▮ | ▮▮ | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | ▮▮ | ▮▮▮ |
| 02/25/2025 | CWB | Review of Plaintiff and Counterclaim Defendant Early Warning Services, LLC's Reply in Support of Its Motion for Default Judgment Against Defendant P.A.Z.E., LLC to verify the subsequent history of legal sources and confirm the accuracy of citations as requested by Sara Stadler. | 1.70 | 455.18 |
| ▮▮▮▮▮▮ | ▮▮ | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | ▮▮ | ▮▮▮ |

090850.1448087.13115543                                                      Page 10

*Other Charges:*

| | | |
|---|---|---|
| ███████ | ████████████████ | ████ |
| ███████ | ████████████████ | ████ |
| ███████ | ████████████████ | ████ |
| ███████ | ████████████████ | ████ |
| ███████ | ████████████████ | ████ |
| ███████ | ████████████████ | ████ |
| 02/28/2025 | Federal Express from Kilpatrick Townsend LLP(Elba Smith) to AZ US District Court (Hon Susan M Brnovich) in PHOENIX AZ on 02/25/25Tracking #285804251502 | 21.31 |

**Total Other Charges**                                                      ████████

**TOTAL AMOUNT DUE THIS INVOICE**                                            ████████████

# EXHIBIT H

# THE COURT DOCKET ACTIVITY FROM JUNE 2, 2025 TO JUNE 16, 2025

## ᴇXHBIIT H – Court's Activity During Alleged Out of Office

| Date | Case Number | Action Taken by Judge Brnovich |
|---|---|---|
| June 2, 2025 | *Landeros v. Sonora Construction* | Issued an order regarding Rule 4(m) service notice. |
| June 2, 2025 | *Johnson v. EWS* | **Issued Order 166 granting Plaintiff EWS's Motion for Clarification and Sealing Documents.** |
| June 3, 2025 | *Scara v. Comm'r of Soc. Sec.* | Issued an order awarding attorney fees under the EAJA. |
| June 5, 2025 | *Clinton v. BMW of N. Am.* | Issued a Case Management Order and a Referral for Settlement. |
| June 6, 2025 | *Reyes v. Liberty Mutual* | Issued an Order setting a Rule 16 Case Management Conference. |
| June 6, 2025 | *Waichulaitis v. Sloat* | Granted an unopposed motion to extend responsive pleading deadlines. |
| June 6, 2025 | *State Farm v. Reid* | Issued a comprehensive Case Management Order. |
| June 9, 2025 | *Goodbar v. Romo* | Granted a stipulation for extension of time. |
| June 9, 2025 | *LivWell Health v. SoCal Eye* | Granted a second stipulation to extend time to respond. |
| June 10, 2025 | *Verma v. Gates* | Granted an application to proceed *in forma pauperis*. |
| June 11, 2025 | *Verma v. Gates* | Issued a Remand Order and an Amended IFP Order. |
| June 12, 2025 | *Green v. Unknown Party* | Issued a payment order for an inmate filing fee. |

| Date | Case Number | Action Taken by Judge Brnovich |
|------|-------------|-------------------------------|
| **June 13, 2025** | *Kolesnikov v. Noem* | Issued a substantive 3-page order dismissing a Habeas Petition. |

# EXHIBIT I

# ADOPTED NON-BINDING SEARCH PROTOCOL FOR PLAINTIFF

**KILPATRICK TOWNSEND & STOCKTON LLP**
Erick Durlach, Arizona Bar No. 024253
*edurlach@ktslaw.com*
Dennis L. Wilson, California Bar No. 155407
(admitted *pro hac vice*)
*dwilson@ktslaw.com*
Sara K. Stadler, New York Bar No. 2620276
(admitted *pro hac vice*)
*sstadler@ktslaw.com*
Kristin M. Adams, Virginia Bar No. 92069
(admitted *pro hac vice*)
*kmadams@ktslaw.com*
6909 E. Greenway Parkway, Suite 100
Scottsdale, Arizona 85254-2149
Tel: (602) 726-7319
Fax: (623) 321-1009

**BRYAN CAVE LEIGHTON PAISNER LLP**
George C. Chen, Arizona Bar No. 019704
*george.chen@bclplaw.com*
Jacob A. Maskovich, Arizona Bar No. 021920
*jamaskovich@bclplaw.com*
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
Tel: (602) 364-7000
Fax: (602) 364-7070

Attorneys for Plaintiff
Early Warning Services, LLC

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Early Warning Services, LLC, | Case No. CV-24-01587-PHX-SMB |
| Plaintiff, | |
| v. | **PLAINTIFF EARLY WARNING SERVICES, LLC'S PROPOSED EXAMINATION PROTOCOLS** |
| Warren Vurl Johnson, Brandon O'Loughlin and P.A.Z.E., LLC, | |
| Defendants. | |

**Protocol Overview**

The procedures described herein are undertaken by the Examiner to ensure a transparent and orderly review of Mr. Warren Johnson's Device(s). While the Examiner is not required to perform any specific procedures beyond standard legal and forensic obligations, these steps are implemented to provide clarity, preserve data integrity, and facilitate a fair review process for all parties.

**1.    Definitions**

**A.    "ESI" or "Electronically Stored Information"** means and refers to data or records created, manipulated, communicated, stored or utilized in digital form. ESI can reside on various devices and systems including but not limited to external storage media, computers, mobile devices, tablets, cloud storage, file or network servers, disks, tape or other real or virtualized devices or media.  ESI includes, but is not limited to, emails, text messages, documents, spreadsheets, electronic slide presentations, databases, multimedia files, and data from collaboration or communication platforms. ESI also encompasses any other reasonably accessible electronically stored information relevant to the claims or defenses of any party subject to discovery pursuant to Federal Rule of Civil Procedure 26.

**B.    "COMMUNICATION(S)"** is defined as the transfer of information, including, but not limited to, discussions, conversations, interviews, negotiations, correspondence, facsimiles, electronic mail (email), text messages, instant message, online chats, online direct messages, or other forms of written or verbal interchange, however transmitted, conveyed, reproduced, or recorded. It also includes, without limitation, all electronically stored information (ESI) such as shared files, documents, images, video, voicemail, metadata, or any combination thereof, stored, created, or used on any computers, computer systems, computer hard drives, network servers, shared and/or web servers, cellular phone (i.e., memory card and SIM card), or any other electronic data retention mechanisms where such information can be stored, maintained, or otherwise kept.

1

**C.**    **Data Custodian:** "Data Custodian" refers to an individual or entity that holds or has control over ESI, **such** as an employee, department, or third-party vendor responsible for maintaining and managing the storage of data.

**D.**    **Data Source:** "Data Source" refers to any location or system where ESI is stored or generated. This includes, but is not limited to, email servers, file servers, cloud storage, mobile devices, laptops, desktop computers, and backup tapes.

**E.**    **"DOCUMENT(S)"** is to be interpreted in the broadest possible sense, including, but not limited to, any written, typed, printed, recorded, digitally stored, or otherwise reproduced material, regardless of how it was created or maintained. This includes all drafts, versions, and non-identical copies of any such material. The term "document(s)" also includes any draft, preliminary version, or altered/non-identical copy, each of which shall be treated as a separate document. "Document(s)" shall not be limited by the method or medium of storage, and includes documents stored on paper, microfiche, magnetic tape, disks, CD-ROMs, DVDs, hard drives, servers, cloud platforms, mobile devices, or any other physical or electronic storage system. Without limitation, "document(s)" includes:

i.    Applications, notices, submissions, signed documents, agreements

ii.    Communications and correspondence, including letters, faxes, emails, text messages, instant messages, online chats, direct messages, and other forms of electronic transmissions, whether sent via email, messaging platforms (e.g., Slack, Microsoft Teams), or other digital communication tools, including metadata and embedded content associated with those communications

iii.    Memoranda, summaries, records, or reports of telephone conversations, in-person conversations, interviews, meetings, conferences, investigations, or negotiations

iv.    Opinions, evaluations, or reports prepared by consultants or other third parties

v.    Diaries, calendars, notebooks, graphs, charts, plans, drawings,

2

sketches, and maps

**vi.** Photographs, films, brochures, pamphlets, advertisements, circulars, and press releases

**vii.** Any marginal notes, comments, annotations, or embedded information appearing in or associated with documents

**viii.** Computer-generated files, digital documents, spreadsheets, databases, and other electronically stored information

**ix.** Audio and video recordings, including voicemail or other digital formats

**F.** **"FORENSIC IMAGE"** means bit-for-bit copy of a digital storage device's content. This method preserves not only active files but also deleted data and information contained in unallocated space. The result is a specialized image file that mirrors the original device in its entirety. By working from this duplicate, examiners can perform detailed analysis while ensuring the original evidence remains unchanged and its integrity fully protected.

**G.** **"METADATA"** means both (1) information embedded in or associated with data that describes the characteristics, origins, usage, ownership, structure, or history of an electronic file generated through human interaction and (2) information generated automatically by a computer or other information technology system when a file is created, modified, transmitted, deleted or otherwise manipulated by a user of such system. Without limitation, "metadata" includes:

**i.** **File Metadata:** Information related to the file's creation, modification, and access (e.g., timestamps).

**ii.** **Email Metadata:** Information such as the sender, recipient(s), subject, date, and other header information, as well as email routing information.

**iii.** **System Metadata:** Data related to the file system, including permissions, file locations, and ownership details.

**H.** **"Native Format"** means the original electronic format in which ESI is

3

created, maintained, viewed and/or modified in the course of ordinary business. Native Format preserves all associated metadata, formulas, track changes, comments, and embedded objects, maintaining the file's full functionality and integrity.

**I.    "Static Image" or "Production Image"** means or refers to a representation of ESI rendered into a fixed image format that preserves the visual appearance of the original native file designed for viewing and printing on standard computer systems. Examples include, but are not limited to, files in Tagged Image File Format (TIFF) or Portable Document Format (PDF).

**2.    Data Preservation**

**A.    Duty to Preserve.** All parties acknowledge their legal obligation to preserve potentially relevant electronically stored information (ESI). Preservation includes all forms of data, regardless of format or location, that may be relevant to the claims or defenses in this matter.

**i.    Scope of Preservation.** The duty to preserve applies to

a.    Computers, laptops, tablets, and mobile phones; and

b.    Google Workspace (including Gmail, Drive, Docs, Chat, Photos, etc.), Microsoft 365, iCloud, Dropbox, and other cloud-based platforms linked to relevant accounts; and

c.    Email, text messages, messaging applications (e.g., Signal, WhatsApp, Slack, Teams), voicemail files, and chat logs; and

**ii.    File Versions and Metadata:** Including file revision history, comments, timestamps, and embedded properties; and

**iii.    Structured Data:** Databases and business platforms containing relevant records or transactions.

**B.    Preservation Format.** Wherever possible, preservation should occur via forensically sound collection to maintain the integrity of metadata, timestamps, and system artifacts. Preservation should occur via forensically sound collection to maintain the integrity of metadata, timestamps, and system artifacts. Forensic imaging

4

is the preferred method for preserving data stored on endpoint devices. For cloud-based sources and structured platforms, preservation should retain native formats with associated metadata, version history, and relevant audit trails.

**3.      Chain of Custody and Audit Logging**

**A.      Evidence Intake and Documentation.** Devices and media shall be delivered to the Examiner at a mutually agreed-upon location. Upon receipt, the Examiner shall document relevant identifying information, including but not limited to:

**i.      Computers, Laptops, and Tablets:** Manufacturer, model, serial number, the date and time of receipt, and may also include service tag, physical condition, or connected peripherals.

**ii.      Mobile Devices:** Manufacturer, model, serial number or IMEI, wireless carrier (if applicable), the date and time of receipt, and may also include physical condition, SIM and microSD card status.

**iii.      External Media:** Device type (e.g., USB, external hard drive), storage capacity, labels or identifying marks, and the date and time of receipt.

**B.      Chain of Custody Log.** A formal chain of custody log shall be completed at the time of initial transfer and maintained throughout the engagement. The log shall document:

**i.**      The custodian or party transferring the device or media;

**ii.**      The Examiner or recipient taking possession;

**iii.**      The date and time of transfer;

**iv.**      A description of the item(s) transferred; and

**v.**      Signatures or initials of all transferring and receiving individuals.

**C.      Evidence Handling Protocol.** Devices shall be handled in a forensically sound manner from the time of receipt through the completion of collection and analysis. No changes, deletions, or modifications shall be made to the original device(s). Specifically:

5

i.      No file or system settings shall be altered;

ii.     All interaction shall occur via forensic tools and hardware write-blockers; and

iii.    System clock deviation (drift) shall be recorded by the Examiner without modifying the device's internal time settings.

**D.    Audit Logging.** For all forensic activities conducted by the Examiner, a digital audit trail shall be maintained. This includes:

i.      Forensic acquisition logs from imaging tools;

ii.     Hash verification records;

iii.    Documentation of any observed errors, warnings, or anomalies during imaging or processing; and

iv.     Logs of any data exports, transfers, or access within analysis environments.

**4.    Imaging and Collection Procedures**

**A.    Device Collection and Transfer.** Devices and data sources subject to forensic preservation—including by way of example, computers, laptops, mobile phones, tablets, external storage media, and could services—shall be delivered and/or made accessible to the Examiner at a mutually agreed-upon location, date, and time. The Examiner shall ensure physical receipt of the item(s) and document identifying details as outlined in Section 3. The device owner may elect to remain present for the imaging and data collection process, in which case the Examiner shall not take formal possession of the devices.

**B.    Forensic Imaging and Collection Protocol.** The Examiner shall create forensically sound images of all applicable storage media using industry-standard tools and best practices to ensure the preservation of data integrity and metadata, and will collect cloud-based information using similar methodologies.

i.      **Computers:** e.g., internal and attached storage devices using tools such as EnCase Imager, FTK Imager, X-Ways Forensics, or Linux dd with write-

6

blocking hardware.

   **ii.** **Mobile Devices:** e.g., internal storage, SIM cards, microSD cards, and app data using mobile forensic tools (e.g., Cellebrite UFED, Magnet AXIOM, Oxygen Forensic Detective).

  **C.** **Scope of Imaging.** Imaging will capture all sectors or storage locations, including active data, deleted data, unallocated space, system logs, message databases, container files, partition tables, and boot records.

  **D.** **Hash Verification.** Each image file will be authenticated after acquisition using cryptographic hashes (minimum MD5 and SHA-256).

  **E.** **Multiple Image Copies.** At least two identical copies will be generated for each device:

   **i.** **Evidence Image:** remains sealed and preserved on encrypted, write-protected media.

   **ii.** **Working Image:** used for analysis, stored on encrypted media in the Examiner's controlled environment.

  **F.** **Subsequent Copies and Exports.** Any subsequent copies, exports, or subsets of data will be hashed and verified for integrity.

**5.** **Processing and Indexing**

  **A.** Forensically preserved data shall be processed in a manner that maintains the integrity of file content, metadata, and structure. Processing is performed to prepare data for searchability, filtering, and review. Prior to this step, data that has been imaged is not generally searchable. Search terms, queries, filters, or parameters can usually only be comprehensively applied after processing is complete.

  **B.** **Processing Objectives.** The purpose of processing is to:

   **i.** Extract and normalize metadata fields;

   **ii.** Unpack container files (e.g., ZIP, PST, RAR, TAR, NSF);

   **iii.** De-duplicate files across custodians (using hash values and/or email threading identifiers);

7

**iv.** Convert time zones to Coordinated Universal Time (UTC) or another designated standard, as agreed upon by the parties; and

**v.** Prepare load-ready output for downstream review platforms or a reasonable format for review.

**C.** **Metadata Preservation.** All processing shall preserve original metadata that is not removed, deleted, altered, or otherwise made inaccessible prior to imaging and collection, including but not limited to:

**i.** Email header information (To, From, Cc, Bcc, Subject, Sent/Received Date);

**ii.** File system metadata (Created/Modified/Accessed dates, file path, hash values, and author);

**iii.** Parent/child relationships (e.g., emails and attachments, zipped file contents); and

**iv.** Source and custodian identifiers.

**D.** **Indexing.** After processing, data shall be indexed using tools appropriate for full-text search, metadata queries, and advanced filtering. Indexing shall support the application of keyword searches, filters, search term reports (STRs), and analytics, as applicable.

**E.** **Documentation and Logging.** Each processing job shall include documentation capturing:

**i.** The tool(s) used and configuration settings;

**ii.** File counts before and after deduplication;

**iii.** Exceptions or errors encountered during processing; and

**iv.** A summary of file types processed.

**6.** **Search and Filtering Protocol.**

**A.** **Overview.** The purpose of this section is to establish procedures for applying search terms, filters, and analytics to processed ESI. These methods shall be used to identify potentially relevant data for review and production, and to reduce the

8

volume of non-responsive material.

**B.** **Search Criteria.** The Parties are obligated to disclose their search criteria. The Parties shall agree on—or the Court shall order—the conditions of any additional searches that may become necessary.

**C.** **Documentation.** All search term protocols, STRs, filtering logs, and tool configurations shall be documented and made available to the parties upon request.

**7.** **Review and Production Workflow**

**A.** **Review Preparation.** Following processing and filtering, data shall be prepared for delivery to the parties or their counsel, as appropriate. Review-ready data sets shall maintain:

**i.** Family integrity (i.e., emails and attachments remain grouped);

**ii.** Preserved metadata fields;

**iii.** De-duplicated document sets (as applicable); and

**iv.** Search term or filter tagging, if previously applied.

**B.** **Document Organization.** Materials prepared for review shall be organized and delivered in a manner that supports the subsequent:

**i.** Identification of custodian and source;

**ii.** Application of privilege, confidentiality, and responsiveness markings; and

**iii.** Tracking of production volumes and Bates number ranges.

**C.** **Indexed Export and Privilege Designation Procedure.** Where a forensic examiner is conducting the extraction and delivery of potentially relevant materials:

**i.** Hits resulting from agreed-upon search terms, parametes, or filters shall be exported to a review set in a format reasonably usable by counsel or the parties.

**ii.** An index of extracted items shall be generated and transmitted to counsel or pro se party for the producing party for privilege review. The index shall include, where available:

9

       a.     File name

       b.     Original file path

       c.     Timestamps (Created, Modified, Accessed)

       d.     File size

       e.     Hash value

    **iii.**    Within ten (10) calendar days of receiving the index, the producing party shall designate any items proposed to be withheld on privilege grounds and provide sufficient detail to support each privilege claim in a corresponding privilege log.

    **iv.**    Non-withheld items, and a corresponding index thereof, shall be produced in the agreed technical format.

    **v.**    Any dispute over withheld documents or information will be raised with the producing party within seven (7) business days.

    **vi.**    The parties must meet and confer via videoconference within five (5) business days of notification of the dispute.

    **vii.**    Additional documents or information originally withheld from production by the Examiner to the non-producing party based on the producing party's objection of the producing party's privilege will be produced upon agreement of the parties or by order of the Court.

    **viii.**    Plaintiff's Counsel may request refined or additional searches of the indexed Working Image(s), pursuant to agreement or court order.

DATED: September 23, 2025  Respectfully Submitted,

                KILPATRICK TOWNSEND & STOCKTON LLP

                */s/ Kristin M. Adams*
                Erick Durlach
                Dennis L. Wilson (admitted *pro hac vice*)
                Sara K. Stadler (admitted *pro hac vice*)
                Kristin M. Adams (admitted pro hac vice)

10

6909 E. Greenway Parkway, Suite 100
Scottsdale, Arizona 85254
Tel: (602) 726-7319
Fax: (623) 321-1009
*edurlach@ktslaw.com*
*dwilson@ktslaw.com*
*sstadler@ktslaw.com*
*kmadams@ktslaw.com*

BRYAN CAVE LEIGHTON PAISNER LLP
George C. Chen
Jacob A. Maskovich
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
Tel: (602) 364-7000
Fax: (602) 364-7070
*george.chen@bclplaw.com*
*jamaskovich@bclplaw.com*

Attorneys for Plaintiff
Early Warning Services, LLC

## CERTIFICATE OF SERVICE

The undersigned certifies that on September 23 2025, a true and correct copy of the foregoing document was sent via electronic mail to the following parties:

Warren V. Johnson
215 E 18th St
Lawrence, KS 66044
warrenvjohnson@gmail.com
*Defendant Warren V. Johnson, pro se*

Brandon O'Loughlin *and* P.A.Z.E., LLC
1317 W. 13th Place
Tempe, AZ  85281
(623) 295-5438
contact@paze.guru
*Defendant Brandon O'Loughlin Individually and*
*as Authorized Representative for Defendant P.A.Z.E., LLC*

> */s/ Kristin M. Adams*
> Kristin M. Adams

12

# EXHIBIT J

# ADOPTED SEARCH TERMS
# 300 TERMS

**KILPATRICK TOWNSEND & STOCKTON LLP**
Erick Durlach, Arizona Bar No. 024253
*edurlach@ktslaw.com*
Dennis L. Wilson, California Bar No. 155407
(admitted *pro hac vice*)
*dwilson@ktslaw.com*
Sara K. Stadler, New York Bar No. 2620276
(admitted *pro hac vice*)
*sstadler@ktslaw.com*
Kristin M. Adams, Virginia Bar No. 92069
(admitted *pro hac vice*)
*kmadams@ktslaw.com*
6909 E. Greenway Parkway, Suite 100
Scottsdale, Arizona 85254-2149
Tel: (602) 726-7319
Fax: (623) 321-1009

**BRYAN CAVE LEIGHTON PAISNER LLP**
George C. Chen, Arizona Bar No. 019704
*george.chen@bclplaw.com*
Jacob A. Maskovich, Arizona Bar No. 021920
*jamaskovich@bclplaw.com*
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
Tel: (602) 364-7000
Fax: (602) 364-7070

Attorneys for Plaintiff
Early Warning Services, LLC

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Early Warning Services, LLC, | Case No. CV-24-01587-PHX-SMB |
| Plaintiff, | |
| v. | **PLAINTIFF EARLY WARNING SERVICES, LLC'S PROPOSED LIST OF SEARCH TERMS AND PARAMETERS** |
| Warren Vurl Johnson, Brandon O'Loughlin and P.A.Z.E., LLC, | |
| Defendants. | |

Plaintiff Early Warning Services, LLC ("EWS") respectfully submits the following proposed search terms and parameters for the production of potentially relevant documents and information as imaged and collected pursuant to the Preliminary Injunction Order (Dkt. 70), subject to the concurrently submitted proposed examination protocols:

(1) All image files be produced to EWS; and

(2) All documents and information responsive to the following search terms be produced to EWS:

- $20,000
- *bryancave.com
- *earlywarning.com
- *joinpaze"
- *kilpatrickstockton.com
- *kilpatricktownsend.com
- *ktslaw.com
- "(480) 426-2115"
- "(623) 295-5438"
- "@paze.guru"
- "20_000"
- "2115"
- "480 426 2115"
- "480.426.2115"
- "4804262115"
- "5 476 070"
- "5438"
- "623 295 5438"
- "623.295.5438"
- "6232955438"

- "91 291 526"
- "92 085 110"
- "97 669 754"
- "98 252 022"
- "98 255 290"
- "aesthetic* w/3 function*"
- "aesthetically functional"
- "apache junction"
- "appeal board"
- "attorney work product"
- "bank of america"
- "bona fide intent"
- "bona fide use"
- "bryan cave"
- "capital one"
- "digital wallet"
- "early warning"
- "employee handbook"
- "errday"
- "erryday"
- "ews confidential"
- "fail* to function"
- "integrated service provider"
- "intellectual property counsel"
- "intent to use"
- "intent-to-use"
- "internal use"
- "ip matter index"

2

- "ip no"
- "joinpaze"
- "marketing memo"
- "mc memo"
- "member bank"
- "merely descriptive"
- "namecheap"
- "naming memo"
- "national association"
- "network participation"
- "open and notorious"
- "p t o"
- "patent trademark office"
- "secretary of state"
- "south carolina"
- "statutory cause of action"
- "tm"
- "trademark index"
- "trademark trial"
- "twenty thousand"
- "warrenjohnson"
- "wells fargo"
- "white label"
- "work product"
- "z cash"
- "z logo"
- "messaging processor"
- "p.a.z.e."

3

- 022 w/2 ("reg" or "ser" or "no")
- 070 w/2 ("reg" or "ser" or "no")
- 110 w/2 ("reg" or "ser" or "no")
- 20000
- 20k
- 22-001
- 22-002
- 22-003
- 22-004
- 22-005
- 22-006
- 22-007
- 22-008
- 22-009
- 22-010
- 22-011
- 22-012
- 22-013
- 290 w/2 ("reg" or "ser" or "no")
- 526 w/2 ("reg" or "ser" or "no")
- 5476070
- 754 w/2 ("reg" or "ser" or "no")
- 91 291526
- 92085110
- 97669754
- 98252022
- 98255290
- aau

4

- alta
- amendment w/3 alleg*
- antitrust
- api
- appeal w/2 board
- applicat*
- application
- arc
- aspen
- authentify
- availability report*
- banjo
- bank
- baseline
- bb&t
- black w/2 comb
- blackcomb
- bna
- boa
- boloughlin@republicservices.com
- bopt
- bounder
- brandon
- brandon.oloughlin@gmail.com
- brian w/3 o'donnell
- brian w/3 odonnell
- bryan
- bryan w/2 cave

- bryan w/3 adams
- cancel*
- chat
- checkout
- cheney
- chris w/3 daly
- clarivate
- clayton
- coaster
- collu*
- competit*
- compumark
- concept w/2 brief
- confidential
- conspiracy
- csc
- dabra
- darin w/3 gibby
- david
- dennis w/3 wilson
- domain
- domain w/4 index
- elba w/3 smith
- elizabeth w/3 warren
- erick w/3 durlach
- ews
- fasten
- fat cat

6

- favicon
- fido
- fraud
- fund* w/2 transfer
- george w/3 chen
- greed
- gripe
- heidi
- hopcart
- incorporat*
- index
- indices
- invent* /4 index
- invention
- invention indices
- ip-22-378
- ip-22-424
- ip-22-425
- ip-23-005
- ip-23-014
- ipr
- itu
- jason
- jason w/3 vogel
- joinpaze.com
- jpmorgan
- kilpatrick
- kilpatrick w/2 townsend w/2 stockton

7

- kristin w/3 adams
- kts
- lippincott
- literacy
- locket
- mag
- melissa
- melissa w/3 lowry
- mesa
- meta w/2 data
- metadata
- mnda
- monopoly
- msdk
- ncr
- negotia*
- nsd
- o'loughlin
- oloughlin
- oppenheim
- ornamental
- p.t.o.
- p2p
- paras
- passline
- patent
- payfone
- paypal

- paze
- paze.com
- paze.guru
- paze.mobi
- paze.website
- pazecart.com
- pazenetwork.com
- pazenetwork.net
- pazewallet.com
- pima
- pnc
- privilege*
- process* w/2 license
- pto
- pulse
- saegis
- sara w/3 stadler
- screen w/2 shot
- screenshot
- search w/2 report"
- shah
- sherman
- signature
- sos
- sou
- specimen
- steal
- suntrust

- t.t.a.b.
- teams
- tech* w/2 integrat*
- ted w/3 davis –
- template*
- terminat*
- theodore w/3 davis
- threat
- thrupay
- thrupay.com
- torrey w/3 spink
- townsend
- tracy
- trade secret
- trademark
- transfer
- truist
- ttab
- u2f
- uaf
- uspto
- visa
- vont
- wallet
- warre*
- will* w/3 johnson
- wire
- wrap

- z w/cash
- z w/logo
- zelle
- zellepay.com
- zettle
- zillionaire

DATED: September 23, 2025

Respectfully Submitted,

KILPATRICK TOWNSEND & STOCKTON LLP

*/s/ Kristin M. Adams*
Erick Durlach
Dennis L. Wilson (admitted *pro hac vice*)
Sara K. Stadler (admitted *pro hac vice*)
Kristin M. Adams (admitted pro hac vice)
6909 E. Greenway Parkway, Suite 100
Scottsdale, Arizona 85254
Tel: (602) 726-7319
Fax: (623) 321-1009
*edurlach@ktslaw.com*
*dwilson@ktslaw.com*
*sstadler@ktslaw.com*
*kmadams@ktslaw.com*

BRYAN CAVE LEIGHTON PAISNER LLP
George C. Chen
Jacob A. Maskovich
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
Tel: (602) 364-7000
Fax: (602) 364-7070
*george.chen@bclplaw.com*
*jamaskovich@bclplaw.com*

Attorneys for Plaintiff
Early Warning Services, LLC

11

## CERTIFICATE OF SERVICE

The undersigned certifies that on September 23 2025, a true and correct copy of the foregoing document was sent via electronic mail to the following parties:

Warren V. Johnson
215 E 18th St
Lawrence, KS 66044
warrenvjohnson@gmail.com
*Defendant Warren V. Johnson, pro se*

Brandon O'Loughlin *and* P.A.Z.E., LLC
1317 W. 13th Place
Tempe, AZ  85281
(623) 295-5438
contact@paze.guru
*Defendant Brandon O'Loughlin Individually and*
*as Authorized Representative for Defendant P.A.Z.E., LLC*

/s/ Kristin M. Adams

Kristin M. Adams

12

# EXHIBIT K

# COMPARISON BETWEEN EWS's PUBLIC PROPOSED ORDER AND DKT 70 ORDER

| Element | EWS Public Proposal (Doc. 16-1) | Final Scanned Order (Doc. 70) | Nature of Change |
|---|---|---|---|
| **Factual Findings** | None; standard "for good cause shown" language. | 4+ pages of detailed narrative describing a "scheme" and "revenge". | **Escalation:** The court adopted EWS's allegations as judicial findings of fact. |
| **Temporal Scope** | Not specified. | Refers to an **"unspecified period"** regarding the start of activities. | **Expansion:** Broadens the window for alleged misconduct beyond the known period. |
| **Index Characterization** | Described as "detailed indices". | Claims Indices **"included"** concept briefs themselves. | **Mischaracterization:** Blurs the distinction between a list of titles and the content of inventions. |
| **The "Teams Chat"** | Defined generally as an "internal legal document". | Explicitly ordered to be **scrubbed from the internet** and all public posts. | **Addition:** A specific "takedown" mandate added to the final decree. |
| **Motive Finding** | Absent. | Explicitly finds that **"Johnson is crusading against EWS"**. | **Escalation:** The court makes a definitive finding on your personal intent and state of mind. |
| **Legal Dismissals** | Absent. | Dismisses your ownership defense as being **"of no moment here"**. | **Aggressiveness:** Uses dismissive language to sidestep the argument that you created the templates. |

| Element | EWS Public Proposal (Doc. 16-1) | Final Scanned Order (Doc. 70) | Nature of Change |
|---|---|---|---|
| **Classmate Narrative** | Mentions "high school classmate" once. | Repeated 3 times and relied on as proof of a concerted "scheme". | **Reliance:** Elevates a personal connection into a foundational element of the "scheme". |
| **Evidence Standards** | Standard "good cause". | Finds you used **"unscrupulous means to abscond"** with information. | **Aggressiveness:** Uses highly editorialized adjectives to justify the ruling. |
| **Deadline** | 10 days from the date of the Order. | Set a specific, hard deadline of **Friday, December 13, 2024**. | **Change:** Shifted from a rolling 10-day window to a fixed calendar date. |

# EXHIBIT L

# FEDEX DELIVERY RECEIPTS SHOWING OFF RECORD DELVERY TO JUDGES CHAMBERS

**FedEx**

December 04, 2025

Dear Customer,

The following is the proof-of-delivery for tracking number: 287095907187

---

**Delivery Information:**

| | | | |
|---|---|---|---|
| Status: | Delivered | Delivered To: | |
| Signed for by: | Y.Gano | Delivery Location: | |
| Service type: | FedEx Priority Overnight | | |
| Special Handling: | Deliver Weekday | | PHOENIX, AZ, |
| | | Delivery date: | Apr 2, 2025 11:47 |

**Shipping Information:**

| | | | |
|---|---|---|---|
| Tracking number: | 287095907187 | Ship Date: | Apr 1, 2025 |
| | | Weight: | |

| Recipient: | Shipper: |
|---|---|
| PHOENIX, AZ, US, | DALLAS, TX, US, |

Reference                    090850.1448087-11710

FedEx Express proof-of-delivery details appear below; however, no signature is currently available for this shipment.  Please check again later for a signature.

Thank you for choosing FedEx

FedEx

December 04, 2025

Dear Customer,

The following is the proof-of-delivery for tracking number: 287358274134

---

**Delivery Information:**

| | | | |
|---|---|---|---|
| Status: | Delivered | Delivered To: | |
| Signed for by: | R.Dallas | Delivery Location: | |
| Service type: | FedEx Priority Overnight | | |
| Special Handling: | Deliver Weekday | | PHOENIX, AZ, |
| | | Delivery date: | Apr 9, 2025 10:04 |

---

**Shipping Information:**

| | | | |
|---|---|---|---|
| Tracking number: | 287358274134 | Ship Date: | Apr 8, 2025 |
| | | Weight: | |

| Recipient: | Shipper: |
|---|---|
| PHOENIX, AZ, US, | DALLAS, TX, US, |

| Reference | 090850.1448087-11710 |
|---|---|

FedEx Express proof-of-delivery details appear below; however, no signature is currently available for this shipment.  Please check again later for a signature.

Thank you for choosing FedEx

**FedEx**

Dear Customer,

The following is the proof-of-delivery for tracking number: 285804251502

---

**Delivery Information:**

| | | | |
|---|---|---|---|
| Status: | Delivered | Delivered To: | |
| Signed for by: | T.Hobins | Delivery Location: | |
| Service type: | FedEx Priority Overnight | | |
| Special Handling: | Deliver Weekday | | PHOENIX, AZ, |
| | | Delivery date: | Feb 26, 2025 11:31 |

---

**Shipping Information:**

| | | | |
|---|---|---|---|
| Tracking number: | 285804251502 | Ship Date: | Feb 25, 2025 |
| | | Weight: | |

| Recipient: | Shipper: |
|---|---|
| PHOENIX, AZ, US, | DALLAS, TX, US, |

Reference                          090850.1448087-11710

FedEx Express proof-of-delivery details appear below; however, no signature is currently available for this

shipment.  Please check again later for a signature.

Thank you for choosing FedEx

**FedEx**

December 04, 2025

Dear Customer,

The following is the proof-of-delivery for tracking number: 284811099698

---

**Delivery Information:**

| | | | |
|---|---|---|---|
| Status: | Delivered | Delivered To: | |
| Signed for by: | D.Myron | Delivery Location: | |
| Service type: | FedEx Priority Overnight | | |
| Special Handling: | Deliver Weekday | | PHOENIX, AZ, |
| | | Delivery date: | Jan 28, 2025 10:25 |

**Shipping Information:**

| | | | |
|---|---|---|---|
| Tracking number: | 284811099698 | Ship Date: | Jan 27, 2025 |
| | | Weight: | |

| Recipient: | Shipper: |
|---|---|
| PHOENIX, AZ, US, | DALLAS, TX, US, |

Reference                    090850.1448087-11710

FedEx Express proof-of-delivery details appear below; however, no signature is currently available for this shipment.  Please check again later for a signature.

Thank you for choosing FedEx

# EXHIBIT M

# COMPARATIVE ANALYSIS: THE COURT'S METADATA DOUBLE STANDARD

**COMPARATIVE ANALYSIS: Dispositive Scientific Proof Against Defendants vs. Irrelevant When Proving Ex Parte Coordination**

PART I: THE COURT'S METADATA STANDARD WHEN APPLIED AGAINST DEFENDANTS

| Docket / Filing | Metadata Evidence Cited by Court | Judicial Conclusion Reached | Legal Standard Violated | Proof of Bias |
|---|---|---|---|---|
| **Dkt. 70 (Prelim Injunction)** | TTAB filing metadata field showing: "Author: Warren Johnson" | "Johnson is the actual owner and ghost-writer of P.A.Z.E. documents". Court called this metadata evidence a "smoking gun". | **PREJUDGMENT OF FACTS:** No expert testimony required; No forensic validation; Rejected "template license" defense without a hearing. Preliminary injunction based on metadata alone. | Court treated a single metadata field as a "smoking gun" without adversarial testing. Applied a metadata standard that would disqualify expert witnesses in a Daubert hearing (no foundation, no methodology, no peer review). |
| **Dkt. 141 (Denial of Motion to Dismiss)** | Metadata from TTAB documents showing "Warren Johnson" as author on multiple files. | Metadata "demonstrated that Mr. O'Loughlin and Mr. Johnson knew and colluded". Court used metadata to **PROVE** a conspiracy at the pleading stage. | **PROCEDURAL OVERREACH:** Rule 12(b)(6) requires the court to test **PLAUSIBILITY**, not **PROVE** facts. Court improperly resolved factual disputes and made credibility findings. | At the 12(b)(6) stage, the Court is prohibited from resolving factual disputes. Court converted metadata into judicial findings at a stage where all facts must be construed in favor of the non-movant. |

| Docket / Filing | Metadata Evidence Cited by Court | Judicial Conclusion Reached | Legal Standard Violated | Proof of Bias |
|---|---|---|---|---|
| **Dkt. 141 (same order)** | Metadata vs. sworn testimony and factual denials. | "Metadata is sufficient to sustain the claim even if other facts are wrong". Court prioritized digital fragments over sworn human testimony. | **EVIDENCE BOOTSTRAPPING:** Federal Rules of Evidence require authentication (Rule 901) and the best evidence rule (Rule 1002). Court created a new rule: Metadata > all other evidence. | Court established an explicit hierarchy: 1. Metadata (dispositive), 2. Digital fragments, 3. Sworn testimony, 4. Human denials. This inverted pyramid violates basic evidence law and demonstrates a predetermined outcome. |
| **Dkt. 102-1 (Shah Declaration)** | **NO METADATA ANALYSIS CONDUCTED**. Court did NOT examine metadata of Shah Decl which shows: "Author: Elba Smith"; "Company: Kilpatrick". | Court accepted the Shah Declaration at face value despite Shah claiming "personal knowledge". No inquiry into whether Shah actually drafted the declaration or whether Kilpatrick drafted it for his signature. | **ASYMMETRIC SCRUTINY:** The same metadata standard applied to Defendants would reveal: "Author: Elba Smith" appears on documents Shah claims to have personally drafted. | Court applied zero forensic rigor to EWS filings while weaponizing metadata against Defendants. If metadata proves authorship when it harms Defendants, why doesn't it prove authorship when it would help Defendants? **Answer: The methodology is not neutral—it is a weapon.** |

| Docket / Filing | Metadata Evidence Cited by Court | Judicial Conclusion Reached | Legal Standard Violated | Proof of Bias |
|---|---|---|---|---|
| **Dkt. 179 (Denying Stay of PI)** | Court's own metadata-based conclusions used as predicate for massive digital invasion. | "Forensic imaging of all devices and accounts (including all metadata) required to ensure compliance with the injunction". | **PUNITIVE DISCOVERY:** Court ordered a digital strip-search based solely on its prior conclusion that metadata proved wrongdoing. This functions as a sanction without a due process sanction hearing. | Court bootstrapped its own metadata-based "findings" into justification for an unprecedented forensic invasion. The "forensic colonoscopy" was punishment dressed as discovery, imposed without any finding of contempt or sanctions violation. |

## PART II: DEFENDANT'S METADATA EVIDENCE PROVING EX PARTE COORDINATION

*Using the EXACT SAME EVIDENTIARY STANDARD the Court applied against Defendants:*

| Document | Metadata Evidence | Conclusion Under Court's Own Standard | Court's Likely Response | Why That Response Proves Bias |
|---|---|---|---|---|
| **Dkt. 70 (Prelim Injunction)** | **Producer:** Adobe Acrobat Standard 2020 20 Paper Capture Plug-in. **CreateDate:** 2024-12-04T11:59:57-07:00 (Exactly | **UNDER COURT'S OWN STANDARD:** Document was scanned from a physical paper source. Paper Capture is Adobe's technology for scanning physical documents. Physical | Court will likely argue metadata "doesn't prove anything" or "could be an innocent explanation". | If the Court rejects this metadata evidence, then the entire basis for Dkts. 70, 141, and 179 collapses. Court cannot have it both ways: EITHER metadata proves things (then this proves ex |

| Document | Metadata Evidence | Conclusion Under Court's Own Standard | Court's Likely Response | Why That Response Proves Bias |
|---|---|---|---|---|
| | 28 minutes after hearing ended). | impossibility: Court cannot draft a 17-page order in 28 minutes. | | parte coordination) OR it doesn't (then vacate all prior orders). |
| **FedEx Deliveries to Chambers** | Four tracking numbers with proof-of-delivery signed by chambers staff (D. Myron, T. Hobins, R. Dallas, Y. Gano). | **UNDER COURT'S OWN STANDARD:** These are UNDOCKETED ex parte communications violating the Court's own order and Canon 3(A)(4). Billing descriptions prove substantive communications regarding "proposed order" and "motion to seal". | Court cannot claim "no proof of ex parte contact" when billing records produced under oath and FedEx confirmations exist. | Court treated far weaker inferences as dispositive proof against Johnson. If the Court rejects this direct proof while accepting weak metadata inferences against Defendants, it proves selective application of standards based on outcome. |

## PART III: THE LOGICAL TRAP—NO ESCAPE WITHOUT ADMITTING BIAS

The Court faces an impossible trilemma. Each option proves the bias requiring recusal:

- **OPTION 1: ACCEPT METADATA EVIDENCE PRESENTED IN THIS MOTION**
    - If metadata proves authorship and intent, then: "Paper Capture" metadata proves orders were scanned from physical documents; FedEx tracking metadata proves ex parte deliveries to chambers; Timing metadata proves the physical impossibility of the Court drafting the orders; Billing metadata proves unreported communications.
    - **RESULT:** Mandatory recusal based on proven ex-parte coordination.
- **OPTION 2: REJECT METADATA AS UNRELIABLE OR INCONCLUSIVE**

- o If metadata cannot prove conduct, then: the Dkt. 70 finding that Johnson "ghost-wrote" P.A.Z.E. documents must be vacated; the Dkt. 141 finding that metadata "demonstrated" collusion must be vacated; and the Dkt. 179 order for forensic imaging must be vacated.

- o **RESULT:** Every substantive order in this case collapses, proving the Court's entire methodology was biased from inception.

- **OPTION 3: APPLY DIFFERENT STANDARDS BASED ON WHICH PARTY BENEFITS**

  - o If metadata proves facts when it harms Defendants but proves nothing when it proves ex parte coordination, this selective application **IS** the bias requiring recusal under 28 U.S.C. § 455(a).

  - o **RESULT:** The double standard itself proves the appearance of partiality.

## CONCLUSION: THE COURT BUILT THIS TRAP FOR ITSELF

The Court weaponized metadata analysis as a tool to "prove" conspiracy and intent when those findings harmed Defendants, elevating it above sworn testimony and human denials. The Court used metadata-based conclusions to justify the most invasive discovery order possible—wholesale forensic imaging of every digital device and account.

Now that same standard, applied to the Court's own orders, proves ex parte coordination through scanned documents, physical timing impossibilities, undocketed deliveries, and unreported communications. The Court cannot reject its own evidentiary methodology without admitting that the methodology was never legitimate—it was always just a weapon deployed selectively to harm one party and benefit the other.

**Recusal is mandatory.**

# EXHIBIT N

# PYTHON CODE FOR PDF_METADATA_EXTRACTOR. PY SCRIPT

```python
#!/usr/bin/env python3
"""
PDF Metadata Extractor
Extracts all metadata (standard and additional/custom fields) from PDF files.
"""

import os
import sys
from pathlib import Path
from datetime import datetime
import json
import argparse
from pypdf import PdfReader
import pandas as pd
import re


def sanitize_for_excel(value):
    """
    Sanitize string values for Excel compatibility.
    Removes illegal characters that openpyxl cannot handle.
    """
    if value is None:
        return ''

    if not isinstance(value, str):
        value = str(value)

    # Remove illegal XML characters that Excel can't handle
    # Control characters except tab, newline, carriage return
    illegal_chars = re.compile(r'[\x00-\x08\x0B-\x0C\x0E-\x1F\x7F-\x9F]')
    value = illegal_chars.sub('', value)

    return value


def extract_pdf_metadata(pdf_path):
    """
    Extract all metadata from a PDF file.

    Args:
        pdf_path: Path to PDF file

    Returns:
        Dictionary containing all metadata
    """
    try:
        reader = PdfReader(pdf_path)
        metadata = reader.metadata

        # Initialize result dictionary
        result = {
            'filename': os.path.basename(pdf_path),
```

```python
    'filepath': str(pdf_path),
    'file_size_bytes': os.path.getsize(pdf_path),
    'num_pages': len(reader.pages),
}

# Extract standard metadata fields
standard_fields = {
    'title': metadata.title if metadata and metadata.title else '',
    'author': metadata.author if metadata and metadata.author else '',
    'subject': metadata.subject if metadata and metadata.subject else '',
    'creator': metadata.creator if metadata and metadata.creator else '',
    'producer': metadata.producer if metadata and metadata.producer else '',
    'creation_date': str(metadata.creation_date) if metadata and metadata.creation_date else '',
    'modification_date': str(metadata.modification_date) if metadata and metadata.modification_date else '',
}
result.update(standard_fields)

# Extract ALL metadata fields (including custom/additional ones)
if metadata:
    # Get all keys from the metadata object
    for key in metadata:
        # Clean the key name (remove leading '/')
        clean_key = key.lstrip('/')

        # Skip if already captured in standard fields
        if clean_key.lower() in ['title', 'author', 'subject', 'creator',
                        'producer', 'creationdate', 'moddate',
                        'creation_date', 'modification_date', 'modificationdate']:
            continue

        # Add the additional metadata field
        value = metadata[key]
        # Convert to string if it's a complex object
        if value is not None:
            result[f'custom_{clean_key}'] = str(value)

# Add encrypted status
result['is_encrypted'] = reader.is_encrypted

# Extract PDF Document ID (from trailer - binary)
result['document_id'] = ''
try:
    if hasattr(reader, 'trailer') and reader.trailer and '/ID' in reader.trailer:
        doc_id = reader.trailer['/ID']
        if isinstance(doc_id, list) and len(doc_id) >= 1:
            id_value = doc_id[0]
            # Convert to hex string
            if isinstance(id_value, bytes):
                result['document_id'] = id_value.hex().upper()
            elif isinstance(id_value, str):
                # Convert string to bytes first, handling encoding properly
                try:
                    # Try direct conversion
                    byte_data = id_value.encode('latin-1')
```

```python
                result['document_id'] = byte_data.hex().upper()
            except Exception:
                # If that fails, convert whatever we can
                byte_data = bytes(ord(c) & 0xFF for c in id_value)
                result['document_id'] = byte_data.hex().upper()
    except Exception:
        result['document_id'] = ''

    # Extract XMP metadata (includes readable DocumentID and InstanceID)
    result['xmp_document_id'] = ''
    result['xmp_instance_id'] = ''
    result['xmp_creator_tool'] = ''
    result['xmp_create_date'] = ''
    result['xmp_modify_date'] = ''

    # Try parsing XMP as raw XML from multiple possible locations
    try:
        import xml.etree.ElementTree as ET

        xmp_data = None

        # Try to get XMP from catalog
        if hasattr(reader, 'trailer') and reader.trailer:
            if '/Root' in reader.trailer:
                catalog = reader.trailer['/Root']
                if '/Metadata' in catalog:
                    xmp_stream = catalog['/Metadata']
                    if hasattr(xmp_stream, 'get_data'):
                        xmp_data = xmp_stream.get_data()

        # If not in catalog, try first page
        if not xmp_data and len(reader.pages) > 0:
            if '/Metadata' in reader.pages[0]:
                xmp_stream = reader.pages[0]['/Metadata']
                if hasattr(xmp_stream, 'get_data'):
                    xmp_data = xmp_stream.get_data()

        # Parse if we found XMP data
        if xmp_data:
            # Parse XML
            root = ET.fromstring(xmp_data)

            # Extract by searching for tags with namespaces in the tag name
            for elem in root.iter():
                tag = elem.tag
                text = elem.text.strip() if elem.text else ''

                if not text:
                    continue

                # Match DocumentID
                if 'DocumentID' in tag and not result['xmp_document_id']:
                    result['xmp_document_id'] = text
```

```python
                # Match InstanceID
                elif 'InstanceID' in tag and not result['xmp_instance_id']:
                    result['xmp_instance_id'] = text

                # Match CreatorTool
                elif 'CreatorTool' in tag and not result['xmp_creator_tool']:
                    result['xmp_creator_tool'] = text

                # Match CreateDate
                elif 'CreateDate' in tag and not result['xmp_create_date']:
                    result['xmp_create_date'] = text

                # Match ModifyDate
                elif 'ModifyDate' in tag and 'Metadata' not in tag and not result['xmp_modify_date']:
                    result['xmp_modify_date'] = text

        except Exception as e:
            pass

        return result

    except Exception as e:
        return {
            'filename': os.path.basename(pdf_path),
            'filepath': str(pdf_path),
            'error': str(e)
        }


def process_directory(directory, recursive=False, output_format='excel'):
    """
    Process all PDF files in a directory and extract metadata.

    Args:
        directory: Directory containing PDF files
        recursive: Whether to search subdirectories
        output_format: Output format ('excel', 'json', 'csv')

    Returns:
        List of metadata dictionaries
    """
    pdf_files = []

    if recursive:
        # Recursively find all PDFs
        pdf_files = list(Path(directory).rglob('*.pdf'))
    else:
        # Only find PDFs in the specified directory
        pdf_files = list(Path(directory).glob('*.pdf'))

    if not pdf_files:
        print(f"No PDF files found in {directory}")
        return []
```

```python
    print(f"Found {len(pdf_files)} PDF files")

    # Extract metadata from all PDFs
    all_metadata = []
    for i, pdf_path in enumerate(pdf_files, 1):
        print(f"Processing {i}/{len(pdf_files)}: {pdf_path.name}")
        metadata = extract_pdf_metadata(pdf_path)
        all_metadata.append(metadata)

    return all_metadata


def save_results(metadata_list, output_path, output_format='excel'):
    """
    Save extracted metadata to file.

    Args:
        metadata_list: List of metadata dictionaries
        output_path: Path for output file
        output_format: Format ('excel', 'json', 'csv')
    """
    if not metadata_list:
        print("No metadata to save")
        return

    # Convert to DataFrame
    df = pd.DataFrame(metadata_list)

    # Sanitize all string columns for Excel compatibility
    for col in df.columns:
        if df[col].dtype == 'object':  # String columns
            df[col] = df[col].apply(sanitize_for_excel)

    # Sort columns: put filename and standard fields first
    standard_cols = ['filename', 'filepath', 'file_size_bytes', 'num_pages',
                'title', 'author', 'subject', 'creator', 'producer',
                'creation_date', 'modification_date', 'is_encrypted',
                'document_id', 'xmp_document_id', 'xmp_instance_id',
                'xmp_creator_tool', 'xmp_create_date', 'xmp_modify_date']

    # Get all columns that exist in the dataframe
    existing_standard = [col for col in standard_cols if col in df.columns]
    # Get custom columns
    custom_cols = [col for col in df.columns if col not in standard_cols]

    # Reorder columns
    df = df[existing_standard + sorted(custom_cols)]

    # Save based on format
    if output_format == 'excel':
        output_path = Path(output_path).with_suffix('.xlsx')
        df.to_excel(output_path, index=False, engine='openpyxl')
        print(f"\nMetadata saved to: {output_path}")
```

```python
    elif output_format == 'csv':
        output_path = Path(output_path).with_suffix('.csv')
        df.to_csv(output_path, index=False)
        print(f"\nMetadata saved to: {output_path}")

    elif output_format == 'json':
        output_path = Path(output_path).with_suffix('.json')
        with open(output_path, 'w') as f:
            json.dump(metadata_list, f, indent=2)
        print(f"\nMetadata saved to: {output_path}")

    # Print summary
    print(f"\nExtracted metadata from {len(metadata_list)} PDF files")

    # Show custom fields found
    custom_fields = [col for col in df.columns if col.startswith('custom_')]
    if custom_fields:
        print(f"\nAdditional/Custom metadata fields found:")
        for field in sorted(custom_fields):
            non_empty = df[field].notna().sum()
            print(f"  - {field}: present in {non_empty} files")


def main():
    parser = argparse.ArgumentParser(
        description='Extract metadata from PDF files',
        formatter_class=argparse.RawDescriptionHelpFormatter,
        epilog="""
Examples:
  # Extract from all PDFs in current directory
  python pdf_metadata_extractor.py

  # Extract from specific directory
  python pdf_metadata_extractor.py -d /path/to/pdfs

  # Extract recursively from subdirectories
  python pdf_metadata_extractor.py -d /path/to/pdfs -r

  # Specify output file and format
  python pdf_metadata_extractor.py -o metadata_report -f excel

  # Extract from single PDF
  python pdf_metadata_extractor.py -p document.pdf
        """
    )

    parser.add_argument('-d', '--directory',
                default='.',
                help='Directory containing PDF files (default: current directory)')

    parser.add_argument('-r', '--recursive',
                action='store_true',
                help='Recursively search subdirectories')
```

```python
    parser.add_argument('-p', '--pdf',
                help='Extract metadata from a single PDF file')

    parser.add_argument('-o', '--output',
                default=None,
                help='Output filename (without extension)')

    parser.add_argument('-f', '--format',
                choices=['excel', 'json', 'csv'],
                default='excel',
                help='Output format (default: excel)')

    args = parser.parse_args()

    # Process single PDF or directory
    if args.pdf:
        # Single PDF mode
        metadata = extract_pdf_metadata(args.pdf)
        metadata_list = [metadata]

        # Print to console
        print("\nMetadata for:", args.pdf)
        print("-" * 60)
        for key, value in metadata.items():
            if value:  # Only show non-empty fields
                print(f"{key}: {value}")

        # Save to file if output specified
        if args.output:
            save_results(metadata_list, args.output, args.format)
    else:
        # Directory mode
        metadata_list = process_directory(args.directory, args.recursive, args.format)

        # Generate output filename if not specified
        if args.output is None:
            timestamp = datetime.now().strftime('%Y%m%d_%H%M%S')
            args.output = f'pdf_metadata_{timestamp}'

        save_results(metadata_list, args.output, args.format)


if __name__ == '__main__':
    main()
```

# EXHIBIT O

# METADATA OF DKT 102, 102-1, 102-2, AND 102-3 SHOWING DOCKET MANIPULATION

| TITLE | AUTHOR | DATE STAMPED | CREATION DATE | CREATOR | PRODUCER |
|---|---|---|---|---|---|
| Dkt 101 2025-01-27 EWS Mot to Exceed Pg Limit - Mot for Default Judgment with Proposed Order.pdf | Scrubbed | 1/27/2025 | Scrubbed | Aspose Ltd. | Aspose.PDF for .NET 21.3.0 |
| Dkt 102 Lodged Proposed Doc - EWS Mot for Default Judgment Against PAZE with Attachments.pdf | N/A Scanned | 1/27/2025 | 2025-02-04 16:15:32-06:00 | Aspose Ltd. | Adobe Acrobat Pro (64-bit) 24 Paper Capture Plug-in |
| Dkt 102-1 Shah Dec EWS Mot for Default Judgement A.pdf | Boss, Donna | 1/27/2025 | 2025-01-27 12:02:25-05:00 | Adobe Acrobat Pro (32-bit) 23.6.20380 | Adobe Acrobat Pro (32-bit) 23.6.20380; modified using iText® Core 7.2.3 (production version) ©2000-2022 iText Group NV, Administrative Office of the United States Courts |
| Dkt 102-2 Zefar Dec EWS Mot for Default Judgement A.pdf | Boss, Donna | 1/27/2025 | 2025-01-27 12:05:40-05:00 | Adobe Acrobat Pro (32-bit) 23.6.20380 | Adobe Acrobat Pro (32-bit) 23.6.20380; modified using iText® Core 7.2.3 (production version) ©2000-2022 iText Group NV, Administrative Office of the United States Courts |
| Dkt 102-3 Proposed Order for Default Judgement.pdf | etsmith | 1/27/2025 | 2025-01-27 14:23:36-06:00 | PScript5.dll Version 5.2.2 | Acrobat Distiller 24.0 (Windows); modified using iText® Core 7.2.3 (production version) ©2000-2022 iText Group NV, Administrative Office of the United States Courts |
| Dkt 104 EWS Mot for Default Judgemetn Against PAZE with Attachments.pdf | Scrubbed | 1/28/2025 | 2025-01-28 14:46:45-07:00 | PDFium | PDFium; modified using iText® Core 7.2.3 (production version) ©2000-2022 iText Group NV, Administrative Office of the United States Courts |
| Dkt 104-1 Shah Dec EWS Mot for Default Judgemetn A.pdf | Scrubbed | 1/28/2025 | 2025-01-28 14:46:17-07:00 | PDFium | PDFium; modified using iText® Core 7.2.3 (production version) ©2000-2022 iText Group NV, Administrative Office of the United States Courts |
| Dkt 104-2 Zefar EWS Mot for Default Judgemetn A.pdf | Scrubbed | 1/28/2025 | 2025-01-28 14:46:28-07:00 | PDFium | PDFium; modified using iText® Core 7.2.3 (production version) ©2000-2022 iText Group NV, Administrative Office of the United States Courts |
| Dkt 104-3 Proposed Order for Default.pdf | Scrubbed | 1/28/2025 | 2025-01-28 14:46:42-07:00 | PDFium | PDFium; modified using iText® Core 7.2.3 (production version) ©2000-2022 iText Group NV, Administrative Office of the United States Courts |

# <u>EXHIBIT P</u>

# METADATA OF LODGED DKT 229, 229-1, AND 229-2 SHOWING *NO* DOCKET MANIPULATION

| TITLE | Author | DATE STAMPED | CREATION DATE | Creator | PRODUCER |
|---|---|---|---|---|---|
| Dkt 229 Motion for Default of O'Loughlin.pdf | Boss, Donna | 8/29/2025 | 2025-08-29 14:21:15-05:00 | Acrobat PDFMaker 25 for Word | Adobe PDF Library 25.1.250; modified using iText® Core 7.2.3 (production version) ©2000-2022 iText Group NV, Administrative Office of the United States Courts |
| Dkt 229-1 Declaration Gibby .pdf | etsmith | 8/29/2025 | 2025-08-29 12:17:08-05:00 | PScript5.dll Version 5.2.2 | Acrobat Distiller 25.0 (Windows); modified using iText® Core 7.2.3 (production version) ©2000-2022 iText Group NV, Administrative Office of the United States Courts |
| Dkt 229-2 Proposed Order for Default.pdf | etsmith | 8/29/2025 | 2025-08-29 14:46:23-05:00 | PScript5.dll Version 5.2.2 | Acrobat Distiller 25.0 (Windows); modified using iText® Core 7.2.3 (production version) ©2000-2022 iText Group NV, Administrative Office of the United States Courts |
| 231 Motion for Default of O'Loughlin.pdf | N/A | 9/4/2025 | 2025-09-04 12:09:20-07:00 | N/A | iText® Core 7.2.3 (production version) ©2000-2022 iText Group NV, Administrative Office of the United States Courts; modified using iText® Core 7.2.3 (production version) ©2000-2022 iText Group NV, Administrative Office of the United States Courts |
| Dkt 231-1 Declaration Gibby.pdf | N/A | 9/4/2025 | 2025-09-04 12:10:42-07:00 | N/A | iText® Core 7.2.3 (production version) ©2000-2022 iText Group NV, Administrative Office of the United States Courts; modified using iText® Core 7.2.3 (production version) ©2000-2022 iText Group NV, Administrative Office of the United States Courts |
| Dkt 231-2 Proposed Order for Default.pdf | N/A | 9/4/2025 | 2025-09-04 12:10:56-07:00 | N/A | iText® Core 7.2.3 (production version) ©2000-2022 iText Group NV, Administrative Office of the United States Courts; modified using iText® Core 7.2.3 (production version) ©2000-2022 iText Group NV, Administrative Office of the United States Courts |

# EXHIBIT Q

# Forensic Analysis of the Creation of a Fraudulent Docket

**FORENSIC ANALYSIS OF DOCKET MANIPULATION
IN DEFAULT JUDGMENT PROCEEDINGS (DKT. 102 & DKT. 104)**

**I. METADATA COMPARISON TABLE**

| Docket Number | Title | Author | Creation Date | Date Stamped | Creator | Producer |
|---|---|---|---|---|---|---|
| **Dkt. 102** (Final Lodged) | Lodged Proposed Doc - EWS Mot for Default Judgment with Attachments.pdf | N/A | **2025-02-04** 16:15:32-06:00 | Scanned 1/27/2025 | Aspose Ltd. | Adobe Acrobat Pro (64-bit) 24 Paper Capture Plug-in |
| **Dkt. 104** (Filed) | EWS Mot for Default Judgment Against PAZE with Attachments.pdf | Scrubbed | **2025-01-28** 14:46:45-07:00 | 1/28/2025 | PDFium | PDFium; modified using iText® Core 7.2.3 |
| **Dkt. 102-1** (Lodged) | Shah Dec EWS Mot for Default Judgment A.pdf | Boss, Donna | **2025-01-27** 12:02:25-05:00 | 1/27/2025 | Adobe Acrobat Pro (32-bit) 23.6.20380 | Modified using iText® Core 7.2.3 |
| **Dkt. 104-1** (Filed) | Shah Dec EWS Mot for Default Judgment A.pdf | Scrubbed | **2025-01-28** 14:46:17-07:00 | 1/28/2025 | PDFium | PDFium; modified using iText® Core 7.2.3 |
| **Dkt. 102-2** (Lodged) | Zefar Dec EWS Mot for Default Judgment A.pdf | Boss, Donna | **2025-01-27** 12:05:40-05:00 | 1/27/2025 | Adobe Acrobat Pro (32-bit) 23.6.20380 | Modified using iText® Core 7.2.3 |
| **Dkt. 104-2** (Filed) | Zefar Dec EWS Mot for Default Judgment A.pdf | Scrubbed | **2025-01-28** 14:46:28-07:00 | 1/28/2025 | PDFium | PDFium; modified using iText® Core 7.2.3 |

| Docket Number | Title | Author | Creation Date | Date Stamped | Creator | Producer |
|---|---|---|---|---|---|---|
| **Dkt. 102-3** (Lodged) | Proposed Order for Default Judgment.pdf | etsmith | **2025-01-27** 14:23:36-06:00 | 1/27/2025 | PScript5.dll Version 5.2.2 | Acrobat Distiller 24.0; modified using iText® Core 7.2.3 |
| **Dkt. 104-3** (Filed) | Proposed Order for Default.pdf | Scrubbed | **2025-01-28** 14:46:42-07:00 | 1/28/2025 | PDFium | PDFium; modified using iText® Core 7.2.3 |

## II. CHRONOLOGY OF DOCKET MANIPULATION

**January 27, 2025**

- **Original Electronic Lodging**: EWS electronically lodges the Motion for Default Judgment (original Dkt. 102), with declarations and a proposed order. The **Date Stamped** field reflects the original filing date.

- **Paper Version Prepared for FedEx**: A paper version is printed (Creator: PScript5.dll, a Windows print driver) and sent via FedEx (#284811099698) to the Court's chambers. No docket entry is made for this ex parte submission.

**January 28, 2025**

- **10:25 AM**: FedEx package is delivered to chambers.

- **After Delivery**: The Court issues Dkt. 103, ordering the Clerk to "enter Dkt. 102 as the Motion for Default Judgment at Dkt. 104."

- **2:46 PM**: A programmatically generated, metadata-scrubbed version of the motion is filed as Dkt. 104 (Creator: PDFium; Author: Scrubbed). The **Creation Date** is January 28, 2025. **This violates the Court's order**, as Dkt. 104 is a different document than the lodged Dkt. 102.

**January 31, 2025 – First Cover-Up Attempt**

- The original electronic Dkt. 102 is removed from the docket.

- A **58-page hybrid scanned document** is uploaded as a replacement "Dkt. 102." This version bears Paper Capture metadata. (See Johnson Decl. ¶47, Ex. R)

**February 4, 2025 – Final Cover-Up**

- The January 31 version is removed.

- A new scanned version is uploaded as the final "Dkt. 102," with separated attachments and a Paper Capture signature. This version bears a **Creation Date of February 4, 2025**, but the scanned content shows a January 27 court stamp—proving the paper document existed and was stamped before being scanned into the system on February 4.

### III. The Geography and "Printing" of Docket Manipulation

1. The Dallas Nexus (Elba Smith) The forensic signature etsmith (Dkt. 102-3) belongs to Elba Smith, a legal professional at Kilpatrick Townsend & Stockton LLP's Dallas, Texas office.

- The Conflict: While the litigation is venued in Arizona (UTC -07:00), the "Lodged" record currently on the docket was born in the Central Time Zone (UTC -06:00).

- The Evidence: The -06:00 offset on the February 4th scan proves that the document was not scanned by a Clerk in Phoenix, but was instead processed at the Dallas workstation of Elba Smith and subsequently uploaded to the Arizona docket.

2. The FedEx "Print" Signature (PScript5.dll) Dkt. 102-3 contains the PScript5.dll creator tag, timestamped at 2:23 PM CST on January 27.

- The Forensic Meaning: This indicates the document was "Printed" on the etsmith workstation. This is the exact technical process used to generate a high-fidelity physical copy for a FedEx envelope.

- The Coordination: The timestamp (2:23 PM) aligns perfectly with the late-afternoon FedEx pickup times in Dallas for next-day delivery to Arizona. It proves the "Proposed Order" was a physical document sent to chambers before it ever became an "official" docket entry.

3. Physical Impossibility of Clerical Origin If the Clerk of the Court in Arizona had scanned the FedEx package received on January 28th, the machine's internal clock would have stamped it with the local -07:00 offset. The presence of the -06:00 offset in the "Official" Dkt. 102 confirms that the digital file was provided by Kilpatrick's Dallas office and swapped into the record, bypassing the Court's own scanning and ingest procedures.

4. The "Aspose" Bridge Because the file originated in Dallas on February 4th but needed to appear as though it were "Lodged" in Arizona on January 27th, the Aspose Ltd. library was utilized.

- The Act: Aspose was used to programmatically "flatten" a Mountain Standard Time court stamp onto a Central Standard Time document.

- The Forensic Failure: While they successfully changed the *visual* appearance of the document, they failed to scrub the XMP Metadata Stream, which remains anchored to the Dallas-based -06:00 timezone and the etsmith workstation identity.

The "Geography of Manipulation" proves that the defense firm's Dallas office is not merely filing documents; they are ghost-managing the administrative record of the District of Arizona. By providing pre-stamped, metadata-conflicted scans directly to the docket (or to a

Clerk willing to swap them), they have successfully erased the electronic trail of the original January 27th filing and replaced it with a "Dallas-Groomed" version.

The PScript5.dll signature on the Proposed Order is the final link: it proves the "Monstrosity" began as a physical print-job in Dallas, was shipped via FedEx, and was later retroactively forced into the electronic record to cover the tracks of an ex parte communication.

## IV. KEY FORENSIC ANOMALIES

1. **Three Distinct Versions of Dkt. 102**: The lodged document was replaced twice—first with a 58-page scanned hybrid (1/31), then with the final separated scan (2/4).

2. **Systematic Scrubbing of Filed Version**: Every component of Dkt. 104 series shows "Scrubbed" authorship and was created with **PDFium**—a software library used for programmatic PDF manipulation—rather than through standard filing methods.

3. **Violation of Court Order (Dkt. 103)**: The Court ordered Dkt. 102 to be entered as Dkt. 104, but Dkt. 104 is a fundamentally different document (PDFium-generated, scrubbed) from any version of Dkt. 102 (scanned paper).

4. **Missing Clerk's Electronic Stamp on Dkt. 102**: The lodged Dkt. 102 lacks the "iText® Core" signature in its Producer field—the software used by the Clerk to electronically stamp all filed documents. This proves the paper version was stamped *before* scanning, not through normal electronic filing channels.

## V. CONCLUSION

The forensic metadata establishes a deliberate, multi-stage manipulation of the court record:

1. **Ex Parte Submission**: A paper motion was delivered to chambers via FedEx without docketing.

2. **Document Substitution**: A different, scrubbed electronic version (Dkt. 104) was filed in place of the lodged original.

3. **Record Tampering**: The originally lodged document (Dkt. 102) was deleted and replaced, first with a consolidated scan (1/31) and then with a final scanned version (2/4), to conceal the substitution and backdate the record.

This pattern reflects a coordinated effort to bypass adversarial process, conceal ex parte communications, and falsify the official docket. Such misconduct fundamentally undermines the integrity of the judicial record and demonstrates an appearance of impropriety that mandates recusal under 28 U.S.C. § 455(a).

**Forensic Analysis of Docket Manipulation in Default Judgment Proceedings (Dkts. 102, 104)**

# EXHIBIT R

# DKT 102 METADATA SHOWING THE FIRST OF TWO ATTEMPTS TO MANIPULATE THE DOCKET (SCANNED IN JANUARY 31, 2025)

Case 2:24-cv-01587-SMB    Document 102    Filed 01/27/25

