WARREN VURL JOHNSON
warrenvjohnson@gmail.com
215 E 18th St
Lawrence, KS 66044

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| EARLY WARNING SERVICES, LLC | Case No.: CV24-01587-PHX-SMB |
| Plaintiffs, | **DECLARATION OF WARREN VURL JOHNSON IN SUPPORT OF MOTION TO STRIKE SANCTIONS** |
| v. | |
| MR. WARREN V. JOHNSON; BRANDON O'LOUGHLIN; P.A.Z.E., LLC | |
| Defendants. | |

## DECLARATION OF WARREN VURL JOHNSON IN SUPPORT OF MOTION TO STRIKE SANCTIONS

I, Warren Vurl Johnson, declare as follows:

**Background**

1. I was Senior Intellectual Property Counsel at Early Warning Services LLC from 2014 to January 2023.

2. I managed EWS's innovation incentive program, which provided bonuses to employees and non-employees for inventions submitted to the company.

3. It seems every one

**The April 2019 CLE**

3. On April 4, 2019, I co-presented a CLE titled "Brand Protection Strategies" with George Chen, an attorney at Bryan Cave Leighton Paisner LLP.

4. George Chen is currently representing EWS in this litigation and filed declarations claiming the information I disclosed was confidential.

- 1 -

5. The presentation covered trademark strategies, brand protection, and domain name registration—subjects EWS now claims are "confidential trade secrets."

6. The presentation is publicly available on the Association of Corporate Counsel website. A copy is attached as Exhibit A.

**The August 2022 CLE**

8. On August 30, 2022, I co-presented "General Issues in IP" with Cory Smith, another Bryan Cave attorney.

9. **EWS's entire legal team attended**, including **Tracy Cheney (General Counsel)**, and George Chen was another attendee, along with dozens of other in-house counsels.

10. The presentation covered comprehensive IP strategies including trade secrets, patents, and trademarks—information EWS now claims is confidential.

11. The presentation is publicly available on the ACC website and currently carries a copyright notice with Bryan Cave. A copy is attached as Exhibit B.

12. This occurred just a few months before my January 2023 termination.

**These Presentations ARE EWS's IP Strategy**

13. The August 2022 "General Issues in IP" presentation is the most comprehensive, detailed, and up-to-date documentation of EWS's IP strategies that existed during my tenure.

14. This presentation was created near the end of my employment and represents the culmination of years of developing EWS's IP policies and procedures.

15. The presentation covers in detail: (a) the method of selecting and protecting trade secrets; (b) the patent review process; (c) trademark strategies; (d) the innovation incentive program; and (e) all other IP policies and procedures.

16. To my knowledge, no more detailed or comprehensive documentation of EWS's IP strategies existed at EWS while I worked there.

17. **Everything EWS alleges I improperly disclosed is contained in these public CLE presentations.**

18. The question is not whether EWS had "other" confidential strategies. The question is whether what I disclosed matches what is in these presentations. The answer is yes.

19. George Chan, Darin Gibby, and Tracy Chaney all knew these and many other similar presentations existed, attended or co-presented them, and knew they contained comprehensive details of EWS's IP strategies.

20. They cannot in good faith or credibly claim information is "confidential" when it appears in presentations they personally attended, co-presented, or authorized.

**Additional Bryan Cave Presentations**

13. I presented at Bryan Cave's annual golf tournament CLE multiple times. My CLE records show teaching credit for at least one of these events. Exhibit C.

14. These were regular, recurring presentations authorized by EWS as part of my job duties.

**Authorization and Personal Knowledge**

15. Tracy Cheney, EWS's General Counsel and my supervisor, attended these presentations and authorized them as part of my job duties.

16. Tracy Cheney approved me missing work to present at these CLE events.

17. Darin Gibby traveled to New York in 2018 to attend my design patent strategy presentation at a World Congress event. He took me and my brother to a baseball game during that trip

15. Tracy Cheney provides praises for this exposure at the New York World Congress Financial Patent Summitt in my sealed performance reviews: "He also participated as a speaker in the Patents for Financial Services Summit in NYC in July, which is good promotion for the company."

16. George Chen knew my job included regular public presentations because he had invited me to present and had co-presented with me on more than one occasion.

**Every Attorney Had Direct Knowledge—Except One**

21. Bryan Cave attorneys (George Chan, Cory Smith, and others) had direct personal knowledge my work was public—they co-presented with me for years.

22. Kilpatrick attorney Darren Gibby had direct personal knowledge—he attended my presentations and socialized with me.

23. EWS in-house counsel had direct knowledge—they attended presentations, received training, and worked with me daily for nine years.

24. **The single exception is Paras Shah.** He never attended my presentations, never participated in my CLEs, and had no direct involvement with my IP work.

25. Paras Shah has filed more declarations than anyone else in this case, yet he claims they are based on "business records."

26. **Paras Shah has never produced a single business record supporting his declarations.**

27. According to the actual business records on file, Paras Shah's declarations contradict those records and cannot be based on them.

28. Paras Shah lacks both personal knowledge and documentary support for his claims.

29. Every attorney who actually worked with me knows my programs were public. The only person making contrary claims is the one person who never witnessed my work firsthand.

**The Innovation Program Was Inherently Public**

20. The innovation program policy explicitly stated on its face that "non-employees" must be listed on any invention disclosure to which they contributed.

21. A policy requiring disclosure of non-employee contributors cannot be a "trade secret." It is inherently public-facing—the goal was publicity, not secrecy.

22. Innovation programs succeed through publicity. The benefits of a well-known program include: attracting top talent, incentivizing participation, recognizing innovators publicly, and promoting the company's commitment to innovation. Secrecy defeats these purposes.

23. Nobody at EWS was ever told to keep the innovation program confidential. The opposite was true: I was encouraged to promote it internally and externally.

24. Almost all major companies publicize their innovation programs. Examples include Sony's "Sony Seed Acceleration Program," Hitachi's public innovation portal, Google's "Area 120," and dozens of others that are prominently featured on corporate websites.

25. Keeping an innovation program "confidential" is counterproductive and contradicts industry standard practice. You cannot encourage submissions while maintaining secrecy.

26. My innovation program and policy was built to resemble those of Sony, Hitachi, Skunk Worx, Google X, etc.

**Plaintiff's Illegal Seizure of My Privileged Work Product**

27. On December 16, 2025, EWS served a subpoena on the University of Kansas demanding all documents I created, edited, or accessed during my employment there from 2023-2025.

28. The subpoena specifically sought "Documents Concerning the Civil Action, Including Documents memorializing or referencing representations Johnson made to You Concerning the facts, claims, and issues relevant to the Civil Action." (Subpoena Request 8, attached as Exhibit C)

29. This was a direct attempt to obtain my litigation strategy, legal research, witness communications, and mental impressions—the core of attorney work product.

30. On January 23, 2026, Kilpatrick attorney Kristin Adams sent me a letter admitting they obtained and reviewed these materials. (Exhibit D)

31. The letter states they found "correspondence between you and others concerning this action as well as your notes concerning this action."

32. The letter admits they read at least some of the materials before "ceasing review"—specifically excluding only my September 9, 2025 termination letter.

33. **Both Bryan Cave and Kilpatrick now possess my privileged litigation materials** from over a year of preparing my defense.

34. They are currently seeking "an additional production from the University consisting of responsive imaged contents of the hard drive of your University-issued computer."

35. This ongoing seizure violates the work product doctrine and my Sixth Amendment right to prepare a defense without opposing counsel reviewing my strategy.

**The Judge's Mischaracterization**

39. In Doc. 123, the Court claimed I admitted to "improperly disclos[ing] confidential attorney-client privileged communications to external third-parties over a period of six years."

40. This mischaracterizes my argument and the truth. I argued the information was NOT confidential because EWS authorized public disclosure as part of my job duties.

41. The CLE evidence supports and proves my argument during the briefing on this topic. I was correct: EWS's attorneys co-presented the information publicly as well.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

- 6 -

Executed this 24th day of January, 2026, at Lawrence, Kansas.


__s/Warren V Johnson/__

Warren V. Johnson
215 E 18th St
Lawrence, KS 66044

**Certificate of Service**

I, Warren V. Johnson, hereby certify that on January 26, 2026, I electronically filed the foregoing **DECLARATION OF WARREN V. JOHNSON IN SUPPORT OF RENEWED MOTION FOR JUDICIAL RECUSAL** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Respectfully submitted,

/s/Warren V Johnson/

Warren Johnson
215 E 18th St
Lawrence, KS 66044
warrenvjohnson@gmail.com