# EXHIBIT A

# ACC PRESENTATION PUBLICLY AVAILABLE DESCRIBING IN DETAIL EWS'S "STRATEGIES"





# Brand Protection Strategies



April 4, 2019

## George Chen
(602) 364-7367
George.Chen@BCLPlaw.com

## Warren Johnson
(480) 426-2115
Warren.Johnson@EarlyWarning.com




# Brand Protection Strategies



April 4, 2019

George Chen

(602) 364-7367

George.Chen@BCLPlaw.com

Warren Johnson

(480) 426-2115

Warren.Johnson@EarlyWarning.com

---

# Agenda

- Introductions
- What Is a Brand?
- Preparing to Protect the Brand
- Strategies to Protect the Brand
- Implementing Protections for the Brand
- Q&A





2

*1*

# Agenda

- Introductions
- **What Is a Brand?**
- Preparing to Protect the Brand
- Strategies to Protect the Brand
- Implementing Protections for the Brand
- Q&A





3

# What Is a Brand?

To *protect* anything you must understand it.
- So let's understand a "brand"… Sounds simple enough
  - But is it…?
- The definition will provide the framework for what we are protecting in the first place.
- Of course the ultimate goal is protect a particular brand
  - Not all brands, just *your/my/our* brand





4

*2*

## What Is a Brand?

- A "Brand" in general – <u>the good and the bad</u>
  - Is a subjective impression that lives in the mind of consumers
  - Is *portrayed, communicated, and established* by the goods and services originating from a source ("Providers") , **but...**
  - Is **actually created**, often unknowingly, in the mind of consumers who:
    - see the portrayals,
    - hear the communications, and
    - receive goods and services from the Providers. (arguably most important)

- THE BRAND IS IN THE EYE OF THE BEHOLDER



**Zelle**
THIS IS HOW MONEY MOVES.
EARLY WARNING®

5

## "My" Brand

- To a **Brand Owner** the **Brand Identity** is:
  - a promise to a Consumer
    - the insurance policy for when that promise is broken.
  - something protected over time through differentiation and consistent use by the Brand Owner.
  - the first chance at getting a consumer to identify and chose the Brand's service/product over others.
  - The physical and mental availability of the Consumer while shopping –

<u>Branding is the experience made to win a piece of the Consumer's limited mental availability – Zero Sum Game if you will</u>





**Zelle**
THIS IS HOW MONEY MOVES.
EARLY WARNING®

6

*3*



 

## "Their" Brand

- To a **Consumer**, the **Brand** is:
  - an identifier and source of loyalty.
  - the indicator of a strong bond the supersedes the customer merchant relationship.
  - the differentiator of one Source of goods and services from others.
  - the first impression of the quality or desirability of a product or service.
  - fairly static and requires great interaction and contemplation to build and/or change
  - a shortcut to predicting how an offered good or service will perform.

  WHERE A SATISFIED CUSTOMER MAY LEAVE, A LOYAL CUSTOMER WILL STAY AND REMAIN INTO THE FUTURE

4



# Brand ⇎ Trademark

- While a trademark is not a brand, it can represent one
- A trademark creates efficacy for Providers to identify a Brand
- A trademark tells a consumer the source of a good or service
- If  you learn nothing else, <u>learn this</u>:

or more specific to our purpose

<u>TRADEMARKS EXIST TO PROVIDE CONSUMERS A "SHORT CUT" FOR LINKING A BRAND TO A PROVIDER OF GOODS AND SERVICES</u>



# Agenda

- Introductions
- What Is a Brand?
- Preparing to Protect the Brand
- Strategies to Protect the Brand
- Implementing Protections for the Brand
- Q&A





11

# Why Protect the Brand at All?

**Production in the 21st century – a growing smile**

Value added

2017

1970

R&D Design | Manufacturing | Branding After-sales services

Stage of production

WORLD INTELLECTUAL PROPERTY REPORT 2017
https://www.wipo.int/edocs/pubdocs/en/wipo_pub_944_2017.pdf

12



# Country of Brands

# Preparing to Protect

- The life a Brand begins before any product or service is provided.
  - AND SO SHOULD THE PROTECTION
- To Protect a Brand is to Protect the Consumer...
- Brand protection *must* include: (normally from in-house
  - TRAINING EMPLOYEES
  - RESEARCHING THE MARKET AND COMMERCE CHANNELS
  - PRIORITIZING MARKS TO BEST PROTECT THE BRAND




## Preparing to Protect – "Best Practice"

<u>Note:</u> In reality in-house counsel may not be at the front line when it comes to releasing new Brand planning

- **Nevertheless a Brand will need protection**

Best Practice: (the easy way, the fairy tale way, the Disney® way [literally?])

- Trademarks – have a supply of allowed 1(b) trademark applications to chose a Brand identifier.
- Agreed upon and strategic name, logo, tagline, look and feel (Brand Identity).
- Trade Dress vs Design Patent protection decided.





15

## Preparing to Protect – "Best Practice"

- Best Practice: *(Let's keep this fantasy going)*
  - Clearance on the name is completed and the name is clear
  - Domain Names have been registered
  - Social Media handles secured
  - Whether licensing will take place has been addressed
  - Marketing portal w/ pre-designed material available for public
  - Will brand be a conglomerate or become a standard





16

*8*

## Prioritizing to Protect – REAL Practice

### NEVERMIND ALL THAT NOW..

### IT'S OKAY TO LAUGH AT THE "BEST PRACTICES" SLIDES... IT CAN BE FUN TO DREAM...





17

## Prioritize to Protect – REAL Practice

### WE INTERUPT YOUR FANTASY TO BRING YOU THIS FROM REALITY

WHISPERS -> "Best Practice" may as well be a law school course

Oh wait, it is!!!

TRUTH- There are constraints on our abilities such as time and space.

- Best Practice is the practice of *PRIORITIZING*.
  - Choice of mark is top priority
  - Counsel is needed to understand:
    - How the trademark will be used proper trademark use
    - Always get multiple name options from marketing (6 is good number)
    - Run searches, clearance, and register as quickly as good judgement allows





18

*9*

# Prioritize to Protect – REAL Practice

- BACK TO REALITY

Best Practice is the practice of *prioritizing.*

- Next priority is channels…. All of them: <u>INTERNAL AND EXTERNAL</u>
  - Channels/mediums of commerce for Branded good/service
    - Internet, geographic regions, store shelves, third parties, subscriptions, etc.
  - Channel of communication w/ consumers
  - Channels of inter-company communication
    - Marketing
    - Product teams
    - Communications





19

# Prioritize to Protect – REAL Practice

TRUTH - Best Practice is the practice of *prioritizing.*

- Overall Brand Protection Strategy
  - After the bare necessities of communication and identification take a step back and get organized
  - Decide on
    - House Marks being used or Sub-Marks
    - Jurisdictions to file in outside home country
    - Tagline protection
    - Domains, domains, domains, domains  - MUST HAVE A STRATEGY
    - Copyright Registrations

**BRING IT ALL TOGETHER**





20

*10*

## Training to Protect – At Least 2

• There should be two mandatory trainings for any major Brand

New Employee Training
• Introduce the Brand(s), their value, and the protections used.
• Give basic Branding Guidelines and summarize why.
  • Company Values, Trademark Law, Marketing Strategy
• The Brand is sacred.
• Last but not least: the golden rule of branding.
  • TREAT OTHER'S BRANDS AS YOU WOULD WANT YOURS TREATED





21

## Training to Protect - At Least 2

• There should be two mandatory trainings for any major Brand

Heavy Training as these are the vessels through which consumers will receive the Brand Identity
  • Strict guidelines on trademark usage
  • Trademark clearance and the process of registration
  • Trademarks are to protect consumers and the brand they maintain
  • Licensing of Marks, Quality control, Approved Public facing materials
  • Exceptions are a dangerous path. Stick to the Guidelines
  • CULTURE OF CONFIDENTIALITY





22

*11*

## Research to Protect

Knowledge is your best friend for *Prioritizing*, so research

- EXTERNAL RESEARCH
  - The product/service tied to the Brand
  - Sales geography
  - Top Level Domains
  - Competing Brands
    - Copying is the most flattering... whatever. Take ideas where you can get them.
  - Technology, patents, innovation maps, current patent litigation.



23



## Research to Protect

Knowledge is your best friend for *Prioritizing*, so research

- <u>INTERNAL RESEARCH</u> is just as important if not more so.
  - Understand the overall scheme from all departments to the best of your abilities.
  - Become a liaison between technology, sales, marketing, communications, executives, and accounting.
  - Have representation in as many meetings as possible.

**THIS IS WHERE YOUR TRAINING PAYS OFF. COWORKERS CAN'T CALL UPON YOU IF THEY DON'T KNOW WHEN OR HOW.**



24



*12*

## Preparing to Protect

- Brand vs. Trademark

- Trademark
  - Anything that (1) identifies a source of products or services and (2) distinguishes the source from another source

  - Does not identify a product or service
  - Does not protect a business itself
  - Does not protect against all uses of the trademark





25

## Preparing to Protect

- Examples of trademarks
  - Words
  - Tag lines
  - Logos / designs
  - Colors
  - Sounds
  - Smells





26

*13*

# Agenda

- Introductions
- What Is a Brand?
- Preparing to Protect the Brand
- **Strategies to Protect the Brand**
- Implementing Protections for the Brand
- Q&A





27

# Strategies to Protect

<u>BEFORE WE GET STARTED:
NEVER FORGET, AND DO NOT LET OTHERS
THAT YOU COUNSEL FORGET:</u>

TO PROTECT YOUR BRAND IS
TO PROTECT YOUR CONSUMERS…
ALWAYS





28

*14*

## Strategies to Protect

- Referencing the *Prioritizing* section:

  - Corporate/**Primary Brand** Identity = House Mark/*Primary* Mark
    - Not necessary, different than a corporate/legal name
    - Most important in some cases
    - May be somewhere inbetween

  - Product/**Secondary Brand** Identity = Sub Brand/*Secondary* Mark
    - May be more important than the Parent





29

## Strategies to Protect - BRANDS

- Referencing the *Primary* versus *Secondary* Brands:
  - **Maximum Protection**
    - Every channel addressed
    - Every Protection Mechanism Used
    - Every Jurisdiction Goods and Services are Offered.

  - **Secondary Protection**
    - Most popular Channels
    - Strongest Mechanisms – lockups with Primary Brand Identifiers
    - Incorporated, Manufacturing, some sales areas





30

## Strategies to Protect - MARKS

- Primary Mark
  - Branding Guidelines
    - Created Clear and Enforced internally and externally
    - <u>LET THE LEGAL REQUIREMENTS OF UNFAIR COMPETITION LAW BE THE BASELINE</u>
    - MARKETING AND PRODUCT GROUPS CAN START WITH THAT AS A MINIMUM
  - Any License granted to use a Primary Mark is a lending of your Primary Brand and *consumer protection* must be accounted for… ALWAYS.
    - *must* include adherence to the Branding Guidelines
    - *must* include quality controls and oversight – review of any public facing collateral
    - *must* have consideration/value in return – don't allow use for free
- Secondary Mark



31



## Agenda

- Introductions
- What Is a Brand?
- Preparing to Protect the Brand
- Strategies to Protect the Brand
- **Implementing Protections for the Brand**
- Q&A



32



*16*



# Implementing Protections

- Trademark
  - Anything that (1) identifies a source of products or services and (2) distinguishes the source from another source

## The Trademark Spectrum

**Generic**
Generic terms can't function as trademarks

**Descriptive**  **Suggestive**  **Fanciful / Arbitrary**

**Weak** ← → **Strong**

 BRYAN CAVE LEIGHTON PAISNER BCLP

 Żelle — THIS IS HOW MONEY MOVES, EARLY WARNING

33

---

# Implementing Protections

- Trademark
  - Anything that (1) identifies a source of products or services and (2) distinguishes the source from another source

- Avoid
  - Confusion with a 3rd party trademark
  - Dilution of a 3rd party trademark
  - Suggestion of a false affiliation with a 3rd party

- Trademark searches

BRYAN CAVE LEIGHTON PAISNER BCLP

Żelle — THIS IS HOW MONEY MOVES, EARLY WARNING

34

*17*

## Implementing Protections

- Federal trademark registrations
  - 15 U.S.C. § 1051 et. seq.
- State trademark registrations
  - A.R.S. § 44-1441 et. seq.
- Foreign trademark registrations
- Trademark classifications
- Trademark families





35

## Implementing Protections

- Design patents
  - Protects ornamental appearance of a product
  - 35 U.S.C. § 171 et. seq.
- Copyrights
  - Protects an original work of authorship
  - 15 U.S.C. § 101 et. seq.
- Trade dress
  - Protects the "look and feel"
  - *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763 (1992).





36

*18*



**Implementing Protections**

TRADEMARKS

TRADE DRESS

PATENTS

COPYRIGHTS

 37

---

**Implementing Protections**

- Domain name registrations
  - New top level domains
    - BannerHealth.info
    - ASM.biz
    - ASU.university
  - Typosquatting
    - BestWestrn.hotels
    - Carvanna.cars
  - Country codes
  - XYZsucks.com

 38

*19*

## Implementing Protections

- Social media

   



39

## Implementing Protections

- Policing
  - Watch notices
  - Online search engine key words
- Licensing
  - Brand guidelines
  - Naked licensing
- Enforcing
  - Trademark oppositions
  - UDRP (Uniform Domain-Name Dispute-Resolution Policy)
  - U.S. Customs registrations
  - Litigation



40



*20*

## Implementing Protections

- Minimum advertised prices (MAP)
- Authorized dealer programs





41

## Agenda

- Introductions
- What Is a Brand?
- Preparing to Protect the Brand
- Strategies to Protect the Brand
- Implementing Protections for the Brand
- Q&A





42

*21*

# Questions?

### George Chen

602.364.7367
George.Chen@BCLPlaw.com
www.LinkedIn.com/in/ChenGeorge

**Bryan Cave Leighton Paisner LLP**
Two North Central Avenue, Suite 2100
Phoenix, Arizona  85004

### Warren Johnson

(480) 426-2115
Warren.Johnson@EarlyWarning.com
www.linkedin.com/in/warrenvjohnson

**Early Warning Services, LLC**
16552 N. 90th Street, Suite 100
Scottsdale, AZ 85260





43

*22*

# EXHIBIT B

# ACC PRESENTATION PUBLICLY AVAILABLE : MOST DETAILED ACCOUNTING OF EWS "STRATEGY" IN EXISTENCE

https://www.acc.com/sites/default/files/2023-01/CLE%20Materials%20Genersl%20Issues%20in%20IP.pdf



# General Issues in IP: Trade Secrets, Patents, Trademarks & Copyrights



## August 30, 2022

| Cory Smith | Warren Johnson |
| --- | --- |
| **BCLP** | **Early Warning Services** |
| (602) 364-7442 | (480) 426-2115 |
| Cory.Smith@BCLPlaw.com | Warren.Johnson@EarlyWarning.com |

© 2022  Bryan Cave Leighton Paisner LLP.  All Rights Reserved.





# When IP?

- TWO MAIN AREAS OF *EVERY* BUSINESS WHERE IP CAN BE MOST EFFECTIVE:
  - THE BRAND – "Branding is an ongoing process of looking at your company's past and present...and then creating a cohesive personality for the company and its products going forward."
    **\*ONE OF MANY DEFINITIONS OF THE "BRAND"**

  - INNOVATIONS AND TECH – NEW METHODS, IDEAS OR PRODUCTS; INTERNAL OR CONSUMER FACING; SLIGHT IMPROVEMENTS TO CURRENT PRODUCTS/SERVICES, R&D, ETC.

- INTELLECTUAL PROPERY PAYS OFF IN THE LONG RUN, IT PROTECTS THE ADVANTAGES CREATED BY ALL THE WORK AND EFFORT PUT INTO THE ABOVE.... LET ME SHOW YOU.

© 2022 Bryan Cave Leighton Paisner LLP. All Rights Reserved.



© 2022 Bryan Cave Leighton Paisner LLP. All Rights Reserved.





## Definitions

1. <u>TRADE SECRET</u> – any information used in business that gives a competitive advantage over those who do not know the information, and that the owner has taken reasonable steps to keep secret.

2. <u>PATENT</u> – the right to exclude others from making, using, selling, and importing your claimed invention.

3. <u>COPYRIGHT</u> – the right of an author of a work to control the copying, modifying, distributing, publicly displaying, and publicly performing of the work.

4. <u>TRADEMARK</u> – a name or symbol (or domain name) used to identify the source for goods or services.

BRYAN CAVE LEIGHTON PAISNER BLP

© 2022 Bryan Cave Leighton Paisner LLP. All Rights Reserved.    8



## Intellectual Property

TRADEMARKS

PATENTS

COPYRIGHTS

**Confidential Proprietary Top Secret**

TRADE SECRETS

BRYAN CAVE LEIGHTON PAISNER BLP

© 2022 Bryan Cave Leighton Paisner LLP. All Rights Reserved.    9

## Scope

A "<u>TRADE SECRET</u>" is:

1) <u>**any information**</u> (including a formula, pattern, compilation, program, device, method, technique, or process),

2) <u>**used**</u> in one's business,

3) that provides a **<u>competitive advantage</u>** over those who do not know the secret(s), <u>and</u>

4) the owner has taken **<u>reasonable measures</u>** to keep secret.



© 2022 Bryan Cave Leighton Paisner LLP. All Rights Reserved.

10

## Trade Secrets

- Can last forever if kept secret
- Examples
  - Customer lists
  - Supplier lists
  - Product formulas
  - Process of formulating test questions
  - A set of pre-packaged software modules and graphics from specific vendors
  - Computer troubleshooting manuals
  - Manufacturing processes
  - Software sub-routines
  - Pricing methods



© 2022 Bryan Cave Leighton Paisner LLP. All Rights Reserved.

11

# How to Commit Trade Secret Misappropriation

Types of Trade Secret Misappropriation:

1. Acquired through "improper means"
2. Unauthorized use or disclosure
3. Use or disclosure with <u>knowledge</u> that secret was:
   - Acquired by improper means,
   - Disclosed in violation of a duty to keep secret, OR
   - Acquired by accident or mistake.

"Improper means" include theft, bribery, misrepresentation, electronic espionage, *etc.*, but does NOT include independent invention, reverse engineering, or observing public use, display, or publication.

BRYAN CAVE LEIGHTON PAISNER BCLP

© 2022 Bryan Cave Leighton Paisner LLP. All Rights Reserved.     12

# How to Commit Trade Secret Misappropriation



BRYAN CAVE LEIGHTON PAISNER BCLP

© 2022 Bryan Cave Leighton Paisner LLP. All Rights Reserved.     13

## Tips to Avoid Misappropriation

- Don't take, use, or accept any of a former employers' trade secrets, unless permitted to do so by the former employer
- Don't take, use, or accept any other company's trade secrets, unless permitted to do so by that company
- Don't hire too many new employees from a single competitor
- Put restrictions in employment and consulting agreements
- "Clean room" approach for creating new technology

BRYAN
CAVE
LEIGHTON
PAISNER

14

© 2022 Bryan Cave Leighton Paisner LLP. All Rights Reserved.

## Consequences of Misappropriation

- Who
  - Employee
  - Employer
- What
  - Injunction
  - Civil fines and/or damages paid to the trade secret owner
  - Criminal fines paid to the government
  - Imprisonment

BRYAN
CAVE
LEIGHTON
PAISNER

15

© 2022 Bryan Cave Leighton Paisner LLP. All Rights Reserved.

# How to Protect Trade Secrets

- Identify and Mark Trade Secrets
  - Identify particular types of information that give a competitive advantage
  - Mark documents with confidential legend on each page in header/footer
  - Catalog trade secrets

© 2022 Bryan Cave Leighton Paisner LLP. All Rights Reserved.

BRYAN CAVE LEIGHTON PAISNER

16

# How to Protect Trade Secrets

- Physical Security
  - Access to grounds and buildings
  - Restrict who can visit
  - Require badges for employees
  - Require badges for visitors
  - Visitor Log
  - Escort visitors through premises

© 2022 Bryan Cave Leighton Paisner LLP. All Rights Reserved.

BRYAN CAVE LEIGHTON PAISNER

17

# How to Protect Trade Secrets

- Limited Access Procedures
  - Locked files
  - Password-protected files
  - Trade secrets available to employees only on a need-to-know basis
  - Secure waste receptacles for disposal of confidential information
  - For certain key trade secrets
    - Keep printed original documents in bound form
    - Have custodian of documents
    - Can be signed out only to those with access rights
    - Restrict copying or taking off site



© 2022  Bryan Cave Leighton Paisner LLP.  All Rights Reserved.

18

# How to Protect Trade Secrets

- Agreements
  - Confidentiality and Non-Disclosure Agreements
    - Include both disclosure and use restrictions
  - Customer and Supplier Agreements
  - Employee and Contractor Agreements
    - Prior Employer Confidential Information
    - Non-Compete Restrictions (current & prior employer)
    - Non-Solicitation / Non-Hiring / Non-Interference Restrictions (customer, vendor, employee)
    - Entrance and Exit Interviews
      - Confirm confidentiality obligations
      - Ensure return of confidential materials



© 2022  Bryan Cave Leighton Paisner LLP.  All Rights Reserved.

19

# Lost Trade Secrets

- Examples of trade secrets lost through inadequate protections:
  - Former employee used manufacturer's customer lists, but the manufacturer did not have NDAs with its marketing reps.
  - Former employee used manufacturer's processes, customer lists, and supplier lists, which were provided only on a need-to-know basis, but were not marked confidential.
  - Former employee used manufacturer's designs, but despite NDA, designs were not marked confidential, were discarded in trash rather than shredded, and were kept in unsecured areas with lax visitor policies.
  - Parts supplier went to great lengths to preserve secrecy among its employees, but customers who toured its facility were not required to sign confidentiality agreements.

BRYAN CAVE LEIGHTON PAISNER BLP

© 2022 Bryan Cave Leighton Paisner LLP. All Rights Reserved.    20



© 2022 Bryan Cave Leighton Paisner LLP. All Rights Reserved.

# Do Your Part to Protect Trade Secrets

- THE CULTURE OF CONFIDENTIALITY
  - ALWAYS BE AWARE OF WHAT YOU ARE TALKING ABOUT AND TO WHOM
  - IF THERE IS *ANY DOUBT* CONTACT YOUR IP EXPERT
  - "NEED TO KNOW" CULTURE, DOESN'T MATTER WHO THEY ARE OR WHAT THEY CLAIM THEY ARE DOING, THEY DON'T NEED TO KNOW

- TRUST AN NDA....? I DON'T THINK SO....
  - SOME TRADE SECRETS ARE SO VALUABLE AND SO REVERSE ENGINEER-ABLE THAT THERE IS NOTHING TO SAY BUT "NO" EXAMPLES: AT EARLY WARNING IT IS OUR MODELS, SEGMENTATION TECHNIQUES, THE DATA ATTRIBUTES USED, AND OUR FUZZY LOGIC, ETC.



© 2022 Bryan Cave Leighton Paisner LLP. All Rights Reserved.

22

---

# EXAMPLES – losses from T. S. Theft ~ $200-600 Billion Yearly (1-3% of GDP)

- The Masters of the Secret

- Coca Cola
- Google Search Algorithm
- Baseball rubbing mud
- KFC
- NY Times Best Seller
- Listerine
  - Even after it became public the royalties were not negated because they were contractual
- Twinkies
- WD-40

- Berglas Effect Card Trick
- Plasma Screens (stolen from Samsung)
- DuPont
  - The layout of their manufacturing facilities
  - The chemistry, the mixing, etc.
- Big Mac Special Sauce
- Symbols on Led Zeppelin's Album

© 2022 Bryan Cave Leighton Paisner LLP. All Rights Reserved.

## Audience Participation...

- EVERYONE IN HERE THINK ABOUT YOUR MARKETPLACE, YOUR TECHNOLOGIES, YOUR CHANNELS OF COMMERCE, YOUR INNOVATIONS AND TECHNOLOGIES...

- WHICH ARE THE TRADE SECRETS THAT EVERYONE SHOULD KNOW ARE OFF LIMITS?

- ANYBODY WANT TO SHARE THEIRS...



"Any intellectual property yet, honey?"

BRYAN
CAVE
LEIGHTON
PAISNER BLP

© 2022  Bryan Cave Leighton Paisner LLP.  All Rights Reserved.          24

## Audience Participation...

- EVERYONE IN HERE THINK ABOUT YOUR MARKETPLACE, YOUR TECHNOLOGIES, YOUR CHANNELS OF COMMERCE, YOUR INNOVATIONS AND TECHNOLOGIES...

- WHICH ARE THE TRADE SECRETS THAT EVERYONE SHOULD KNOW ARE OFF LIMITS?

- ANYBODY WANT TO SHARE THEIRS...

**JUST A TEST!!!! PLEASE DO NOT TELL ANYBODY ANY OF THEM EVER...**



"Any intellectual property yet, honey?"

BRYAN
CAVE
LEIGHTON
PAISNER BLP

© 2022  Bryan Cave Leighton Paisner LLP.  All Rights Reserved.          25



© 2022 Bryan Cave Leighton Paisner LLP. All Rights Reserved.

# Patent Rights

- Definition
  - The right to <u>exclude</u> others from:
    - Making
    - Using
    - Selling
    - Importing
- A "negative monopoly"



© 2022 Bryan Cave Leighton Paisner LLP. All Rights Reserved.

# Patents

## UTILITY PATENT

1. Must be:
   a. Novel
   b. **Useful**
   c. Nonobvious
2. **20 years from filing date** with periodic fees
3. Requires a **written description** on how to carry out invention, and may include **drawings**
4. Absolute novelty vs. 1 year grace period

## DESIGN PATENT

1. Must be:
   a. Novel
   b. **Ornamental**
   c. Nonobvious
2. **15 years from issue date** without periodic fees
3. Limited to **drawings**

4. Same



© 2022 Bryan Cave Leighton Paisner LLP. All Rights Reserved.

28

---



So True It is Almost Not Funny....

© 2022 Bryan Cave Leighton Paisner LLP. All Rights Reserved.

29

## What Inventions Are Patentable?

**YES**

1. Process
2. Product
3. Chemical composition
4. Software functions
5. Product configuration and packaging

**NO**

1. Mathematical formula
2. Law of nature
3. Things occurring naturally in nature
4. Mental process
5. Ideas created by artificial intelligence (AI)

© 2022 Bryan Cave Leighton Paisner LLP. All Rights Reserved.
30
BRYAN CAVE LEIGHTON PAISNER

## Patent Ownership

- Inventor originally owns it
- Written assignment or license
- Shop right doctrine
- Hired to invent doctrine
- Joint ownership
  - o No accounting
  - o Separate licensing & commercialization

© 2022 Bryan Cave Leighton Paisner LLP. All Rights Reserved.
31

BRYAN CAVE LEIGHTON PAISNER

# Patent Practical Tips

- Offensive
    - Identify key technologies
    - Apply for patent before disclosure, sale, marketing, product launch, public demos
    - Policing
- Defensive
    - Employment agreements should prohibit use of former employer's patents
    - Do not search for, analyze, or keep competitors' patents



© 2022 Bryan Cave Leighton Paisner LLP.  All Rights Reserved.    32



© 2022 Bryan Cave Leighton Paisner LLP.  All Rights Reserved.





# The Under Used Design Patent

- Did you know a design patent can only cost ~$1800 to file *and* register?
- Did you know a design patent can cover a portion of a article of manufacture, not the entire article (e.g., the front of the iPhone, the face of a golf club, the grip rubber on a razor, etc.)?
- Did you know design patents can cover icons for a computer system, or app icons?
- Did you know design patents can cover user interfaces (or portions of user interfaces)?

Basically every company has way to use design patents, and they are enforceable, can be shields and swords, create a ton of value, and they can be issued in less than a year.

BRYAN CAVE LEIGHTON PAISNER BLP

© 2022 Bryan Cave Leighton Paisner LLP. All Rights Reserved.

36

# Just Ask Apple... Or Samsung

Real-Life Design Patent Infringement Case: Apple vs. Samsung



Photo credit: The Verge

Apple v. Samsung Verdict Affirms Importance of Design Patents but Leaves the Law of Damages Murky

June 4, 2018

The second *Apple v. Samsung* damages trial ended in a remarkable result: $533 Million verdict for infringement of Apple's design patents, but only $5.3 Million for infringement of Apple's utility patents. The big (and obvious) takeaway: design patents are no longer the weak sister of the IP world. Long considered obscure and of marginal importance, the verdict shows that they can be a powerful and invaluable business tool.

BRYAN CAVE LEIGHTON PAISNER BLP

© 2022 Bryan Cave Leighton Paisner LLP. All Rights Reserved.

37







## Intellectual Property

TRADEMARKS

PATENTS

COPYRIGHTS

TRADE SECRETS

®

TM    SM

© 2022 Bryan Cave Leighton Paisner LLP. All Rights Reserved.

40

BRYAN CAVE LEIGHTON PAISNER BLP

---

## Trademarks

- Definition
  - A name, symbol, color, sound, or smell used to identify the source for products or services
- Examples
  - Word: McDonald's
  - Slogan: "Like a Good Neighbor, State Farm is There"
  - Symbol/Design: ✔
  - Color: UPS brown
  - Sound: NBC's 3 tone chime
  - Smell: Manhattan Oil's grape-scented motor oil
- Can last forever, as long as still used

© 2022 Bryan Cave Leighton Paisner LLP. All Rights Reserved.

41

BRYAN CAVE LEIGHTON PAISNER BLP

# Trademark Ownership

- Ownership – Whoever uses it first, owns it
- Acquiring Rights
  - Common Law: By use in a geographic area before others
  - Federal Registration: Intent-to-use (ITU), Use-based
  - State Registration: Use-based
- Can lose through non-use, generic use, or court order
- Trademark vs. Service Mark vs. Trade Name
- Domain Name

© 2022 Bryan Cave Leighton Paisner LLP. All Rights Reserved.

42

BRYAN CAVE LEIGHTON PAISNER

# Trademark Categories



| | | |
|---|---|---|
| GENERIC | Car Seller | Gasoline |
| DESCRIPTIVE | Sell Us A Car® | Gas N' Go® |
| SUGGESTIVE | Carvana® | Mobil® |
| ARBITRARY, FANCIFUL | Hertz® | Exxon® |

© 2022 Bryan Cave Leighton Paisner LLP. All Rights Reserved.

43

BRYAN CAVE LEIGHTON PAISNER







© 2022 Bryan Cave Leighton Paisner LLP.  All Rights Reserved.



© 2022 Bryan Cave Leighton Paisner LLP.  All Rights Reserved.

## Trademark VS Corporate Entity

**ADJECTIVE**    **VS**    **PROPER NOUN**

**TRADEMARK (adjective): a distinctive, source identifying mark** *associated* **with goods and/or services.**

**Corporate Entity – Legally identified as a name of a corporate entity**

**Trademark – Legally identified as a descriptor of goods and services**

Example: **Harley Davidson, LLC** *versus*
                              **Harley Davidson® Motorcycle**
Or: Early Warning Services, LLC *versus* Early Warning®



BRYAN
CAVE
LEIGHTON
PAISNER

© 2022 Bryan Cave Leighton Paisner LLP. All Rights Reserved.    48

## Audience Participation...

- Think about your company's name... then think about your company's brand
- The brand should represent the totality of your company: the culture, the products, the customer service, the employees activities, associations, etc.
- Now think about you company's trademarks: product names, the name of the company, a service's name
- Note how the Brand is triggered by the trademarks and not necessarily the company name
- This is why trademark consistency and clarity is so important, to build the bond with the customer



BRYAN
CAVE
LEIGHTON
PAISNER

© 2022 Bryan Cave Leighton Paisner LLP. All Rights Reserved.    49





# Fair Use is an Option....

## Again, Infringement Yes, Illegal No... Competitive Marketing

  

With Comparative marketing the trademark is being used properly, to reference the source of the product being compared.
This is okay when <u>done in moderation</u>...notice there is not "Coke-a-Cola" on the can. One must be careful even when fairly using *the most trusted brand in the world.*

BRYAN
CAVE
LEIGHTON
PAISNER BLP

© 2022 Bryan Cave Leighton Paisner LLP. All Rights Reserved.

52

---

# Trademark Practical Tips

- Offensive
  - Identify all brands / trademarks
  - Apply for a trademark registration to prevent others from using a confusingly similar trademark
  - Build strong recognition for the trademark
  - Register domain names & social medial accounts
  - Police the marketplace, including on the Internet
- Defensive
  - Avoid confusion with other brands/trademarks
  - Avoid dilution with other brands/trademarks
  - Do not suggest a false connection with another company

BRYAN
CAVE
LEIGHTON
PAISNER BLP

© 2022 Bryan Cave Leighton Paisner LLP. All Rights Reserved.

53



# Intellectual Property

TRADEMARKS

PATENTS

**COPYRIGHTS**

TRADE SECRETS

© 2022 Cory G. Smith
All rights reserved.

© 2022 Bryan Cave Leighton Paisner LLP. All Rights Reserved.

54



---

# Copyright Rights

- The right to do and authorize others to do:
  - ➤ Copying
  - ➤ Preparing derivative works
  - ➤ Distributing
  - ➤ Publicly performing
  - ➤ Publicly displaying

© 2022 Bryan Cave Leighton Paisner LLP. All Rights Reserved.

55

# Copyright

- Requirements
  - Original work of authorship
  - Fixed in any tangible medium of expression
- Term
  - Works not made for hire:
    - Life of the last surviving author + 70 years
  - Works for hire, anonymous works, and pseudonymous works:
    - Year of first publication + 95 years
    - If not published, year of creation + 120 years
- Registration
  - Not required for rights to exist, but required to enforce
  - No time limit to register, but disadvantages for filing "late"



© 2022 Bryan Cave Leighton Paisner LLP. All Rights Reserved.    56

# What is Copyrightable?

- Ideas vs. Expression
  - Copyright protects the format, layout, or expression of ideas, information, and concepts, but not the concepts themselves or the item in which the expression is saved/stored.
- Useful items
  - Copyright protects only design aspects of the item that are <u>separable from</u> and <u>capable of existing independently of</u> the utilitarian aspects of the useful article



© 2022 Bryan Cave Leighton Paisner LLP. All Rights Reserved.    57

# What Is Copyrightable?

- Examples:
  - o Advertisements
  - o Manuals
  - o Videos
  - o Music
  - o Sculptures
  - o Software (source code, user interfaces, icons)
  - o Product Configurations and Packaging

© 2022 Bryan Cave Leighton Paisner LLP. All Rights Reserved. 58

# What Is Not Copyrightable?

- Short phrases
- Ideas
  - Merger doctrine
- Scènes à faire
- Works created by non-humans
  - Pictures painted by an elephant
  - Computer-generated music

© 2022 Bryan Cave Leighton Paisner LLP. All Rights Reserved. 59

# Copyright Ownership

- Creator Owns It
- Work Made for Hire
    - o Any work prepared by an employee within the scope of his or her employment; or
    - o A signed agreement that it shall be a "work made for hire" AND only certain types of work:
        - ➤ Part of a collective work, a motion picture, other audiovisual work, translation, supplementary work, compilation, instructional text, test, answer material for a test, or atlas
        - ➤ Does NOT include software, among many other things
- Assignments & Exclusive Licenses – In Writing
- Joint Ownership
    - o Accounting requirement
    - o Separate licensing & commercialization



© 2022 Bryan Cave Leighton Paisner LLP. All Rights Reserved. 60

# Limitations on Copyright

- Doctrine of "Fair Use"
    - **Examples**: *Criticism, Comment, News Reporting, Teaching, Scholarship and Research.*
    - **Four Factors:**

    (1) Purpose & character of the use
        (*e.g.*, commercial, educational, non-profit, etc.)
    (2) Nature of the copyrighted work
    (3) Amount & substantiality of portion of work used
    (4) Effect of use upon potential market

- De Minimis Use
    - Occurs when the copying is so trivial that there is no legal consequence for it



© 2022 Bryan Cave Leighton Paisner LLP. All Rights Reserved. 61

## Acceptable Fair Use?

- *Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539 (1985)
  - Magazine used an excerpt of 300 words from President Ford's unpublished 200,000 word manuscript.
  - The 300 words were "the heart" of the work.


BRYAN CAVE LEIGHTON PAISNER

© 2022 Bryan Cave Leighton Paisner LLP. All Rights Reserved.    62

## Acceptable Fair Use?

- *Religious Tech. Center v. Lerma*, 908 F. Supp. 1362 (E.D. Va. 1995)
  - A disgruntled former member of the Church of Scientology posted entire subsections on the internet of Church-owned copyrighted word about Church rituals.
  - Secret nature of copied work
  - Substantial amounts copied


BRYAN CAVE LEIGHTON PAISNER

© 2022 Bryan Cave Leighton Paisner LLP. All Rights Reserved.    63

# Acceptable De Minimis Use?

- *Ringgold v. BET, Inc.*, 126 F.3d 70 (2d Cir. 1997)
  - BET and HBO broadcasted a movie that contained 9 segments showing a copyrighted poster
  - The 9 segments totaled 26.75 seconds
  - The poster appeared in the background
  - Most of the scenes contained only a portion of the poster
  - The poster was clearly visible but out of focus most of the time



© 2022 Bryan Cave Leighton Paisner LLP. All Rights Reserved.   64

# Acceptable De Minimis Use?

- *Cream Records, Inc. v. Joseph Schiltz Brewing Co.*, 864 F.2d 668 (9th Cir. 1989)
  - Use of ten musical notes from the "Theme of Shaft"
  - Use was in an advertisement to sell a product



© 2022 Bryan Cave Leighton Paisner LLP. All Rights Reserved.   65

## Copyright Practical Tips

- Offensive
  - Review all significant works of authorship
  - Consider applying for a copyright registration before or soon after publication
- Defensive
  - Employment agreements should prohibit use of former employer's copyrights
  - Do not copy or be "inspired by" other works
  - Document independent creation
  - Innocence is the best defense



© 2022 Bryan Cave Leighton Paisner LLP. All Rights Reserved.

66

## Questions?

**Cory Smith**

Bryan Cave Leighton Paisner LLP

602.364.7442
Cory.Smith@BCLPlaw.com
www.LinkedIn.com/in/cory-smith-2710566

**Warren Johnson**

Early Warning Services, LLC

480.426.2115
Warren.Johnson@EarlyWarning.com
www.linkedin.com/in/warrenvjohnson



© 2022 Bryan Cave Leighton Paisner LLP. All Rights Reserved.

67

# EXHIBIT D

# SUBPOENA FROM EWS to KU TARGETING PRIVILEGED WORK PRODUCT FROM DEFENDANT

## DEFINITIONS

1.    "EWS" means Early Warning Services, LLC and its respective officers, directors, employees, and agents.

2.    "University," "You," or "Your" means the University of Kansas and its campuses, controlled affiliates, and research supporting entities, Including the University of Kansas Medical Center.

3.    "Johnson" means the Person named Warren Vurl Johnson who was formerly employed by the University, Including as a Senior Licensing Associate for the University of Kansas Center for Technology Commercialization.

4.    "Johnson's Gmail Account" means the email address warrenvjohnson@gmail.com.

5.    "Johnson's EWS Email Account" means the email address Warren.Johnson@earlywarning.com.

6.    "EWS's Documents" means (a) Documents created or used by any of EWS's employees in connection with conducting EWS's business or (b) Documents containing the terms "EWS," "Early Warning," "Tracy," "Cheney," "Paras," "Shah," "concept brief index," "domain name index," "invention disclosure index," "IP matter index," "trademark index," "ZELLE," or "PAZE," that were created, edited, saved, uploaded, downloaded, sent, received, or otherwise used, accessed, or viewed by Johnson.

7.    "EWS's Intellectual Property" means trademarks, copyrights, patents, and trade secrets in which EWS claims ownership, as well as registrations of and applications to register those trademarks, copyrights, and patents with governmental bodies. "EWS's Intellectual Property" Includes the PAZE mark, the $\mathsf{Z}$ mark, U.S. Service Mark Application Serial No. 97669754, and U.S. Service Mark Registration No. 5476070.

1

8.    "O'Loughlin" means the Person named Brandon O'Loughlin, who is a Defendant in the Civil Action, Including as identified by contact@paze.guru as an email address, (623) 295-5438 as a phone number, or references to "P.A.Z.E."

9.    "P.A.Z.E., LLC" means the Defendant in the Civil Action identified as P.A.Z.E., LLC.

10.    "Civil Action" means Case No. CV-24-01587-PHX-SMB (D. Ariz.).

11.    "Communication" means every manner or means of disclosure, transfer, or exchange of information, whether orally or by Document, and whether face-to-face, by telephone, facsimile transmission, mail, personal delivery, electronic mail computer transmission, or otherwise.

12.    "Concerning" means relating to, referring to, about, discussing, describing, evidencing, depicting, mentioning, or constituting.

13.    "Document" is synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Federal Rule of Civil Procedure 34(a)(1)(A) and Includes emails, text messages, and messaging platform records. A draft or nonidentical copy of a Document is a separate Document within the meaning of this definition.

14.    "Includes" and "Including" mean "including but not limited to" and "including without limitation."

15.    "Person" means any natural person, individual, partnership, joint venture, corporation, proprietorship, firm, association, group, club, institute, governmental body, or any other organization, entity, or association.

16.    The terms "any" and "all" shall be mutually interchangeable and shall not be construed to limit any request.

17.    "And" shall mean "or" and "or" shall mean "and" to make requests using either of these words inclusive rather than exclusive.

18.    The past tense shall be construed to include the present tense, and vice versa, to make requests using these tenses to be inclusive rather than exclusive.

2

privilege or protection in a log that accords with the Federal Rules with respect to each withheld Document.

8. Unless otherwise specified in a Request or Definition, each Request seeks Documents from the date on which the University hired Johnson to the present.

**REQUESTS FOR PRODUCTION**

1. EWS's Documents.

2. Documents Concerning EWS that were created, edited, saved, uploaded, downloaded, sent, received, or otherwise used, accessed, or viewed by Johnson.

3. Documents Concerning any of EWS's officers, directors, employees, or agents, Including Tracy Cheney and Paras Shah, that were created, edited, saved, uploaded, downloaded, sent, received, or otherwise used, accessed, or viewed by Johnson, or that memorialize or reference information attained from or in connection with Johnson.

4. Documents Concerning Communications to, from, or copying any Person using Johnson's EWS Email Account, Including the original written Communication and forwarded email Communications.

5. Documents Concerning EWS's Intellectual Property that were created, edited, saved, uploaded, downloaded, sent, received, or otherwise used, accessed, or viewed by Johnson, or that memorialize or reference information attained from or in connection with Johnson.

6. Documents Concerning O'Loughlin, Including forwarded email Communications or email Communications to, from, or copying O'Loughlin.

7. Documents Concerning P.A.Z.E., LLC, Including forwarded email Communications.

8. Documents Concerning the Civil Action, Including Documents memorializing or referencing representations Johnson made to You Concerning the facts, claims, and issues relevant to the Civil Action.

4

9.   Documents sufficient to show the duration of Your employment of Johnson, Including the period of suspension, if any.

10.   Documents sufficient to show the date(s) on which You decreased or ceased payment to Johnson for his employment services to You.

11.   Your September 9, 2025 letter to Johnson signed by Chari J. Young.

12.   Documents sufficient to show Your policies or procedures Concerning Your retention, deletion, or preservation of Documents.

5

## DEFINITIONS AND INSTRUCTIONS

1.    Early Warning Services, LLC incorporates by reference, as if set forth fully herein, the Definitions provided in Exhibit A.

2.    Unless otherwise specified in a Request or Definition, each Topic seeks Information from the date on which the University hired Johnson to the present.

3.    For avoidance of doubt, each Topic should be construed to require that the designee be prepared to also testify regarding the content, existence, and location of documents relating to the topic and the identities of persons who have and may have knowledge of such events.

## TOPICS FOR DEPOSITION

1.    Documents responsive to the Requests included in Exhibit A and the subjects addressed therein.

2.    Documents produced in response to the Requests included in Exhibit A and the subjects addressed therein, Including authentication thereof.

3.    Your responses and objections, if any, to the Subpoena and its Exhibits A and B.

4.    Your policies or procedures Concerning Your retention, deletion, or preservation of Documents.

5.    Your employment of Johnson, Including the duration and any suspension or termination and dates on which You ceased payment to Johnson for his employment services to You.

6.    The Persons primarily responsible for supervising Johnson while employed by You.

7.    Johnson's use of Your devices, technology, systems, databases, media, repositories, Communication accounts or channels (Including email), or cloud-based storage where Johnson could create, edit, save, upload, download, send, receive, or otherwise use, access, or view Documents.

1

8. EWS's Documents, Including the existence, location, or deletion thereof and Johnson's representations Concerning EWS's Documents.

9. Steps You have taken to identify the existence, location, or deletion of EWS's Documents.

10. Your knowledge, awareness, or Documents Concerning O'Loughlin.

11. Your knowledge, awareness, or Documents Concerning P.A.Z.E., LLC.

12. Your knowledge, awareness, or Documents Concerning the Civil Action.

13. Your knowledge, awareness, or Documents Concerning Johnson's use of Johnson's EWS Email Account on Your devices, technology, systems, databases, media, repositories, Communication accounts or channels (Including email), or cloud-based storage.

14. Your knowledge, awareness, or Documents Concerning Johnson's use of Johnson's Gmail Account on Your devices, technology, systems, databases, media, repositories, Communication accounts or channels (Including email), or cloud-based storage.

15. Your knowledge, awareness, or Documents Concerning Johnson's use of, representations Concerning, Communications Concerning, or other references to EWS's Intellectual Property.

16. Johnson's use of any email or other accounts You provided to Johnson for Communication purposes.

17. Information related to, referencing, or resulting from Johnson's employment by You or EWS Concerning EWS or its officers, directors, employees, or agents, Including Tracy Cheney and Paras Shah.

18. Your September 9, 2025, letter to Johnson signed by Chari J. Young.

2

# EXHIBIT D

# LETTER FROM KILPATRICK >7DAYS AFTER RECEIVING PRIVILGED INFORMATION, CLAIMING SEQUESTER BUT PROVING TAINT



**Kilpatrick Townsend & Stockton LLP**
ktslaw.com

1100 Peachtree Street NE
Suite 2800
Atlanta, GA USA 30309

Kristin M. Adams
direct dial 404 815 6138
direct fax 404 541 3233
kmadams@ktslaw.com

January 23, 2026

VIA ELECTRONIC MAIL
[*warrenvjohnson@gmail.com*]

Mr. Warren Vurl Johnson
215 E. 18th Street
Lawrence, Kansas  66044

        Re:    Notice Concerning Production from University of Kansas
                *Early Warning Servs. v. Johnson et al.*, No. CV-24-01587-PHX-SMB (D. Ariz.)

Dear Mr. Johnson:

We write concerning documents produced by the University of Kansas (the "University") on January 16, 2026, pursuant to Early Warning Services, LLC's ("EWS") December 16, 2025, subpoena (the "January 16 University Production"). The January 16 University Production consists of documents the University deemed responsive that were saved to the University's Office 365 accounts (Outlook, Teams, etc.) during your employment by the University. Certain of the documents in the January 16 University Production appear to include correspondence between you and others concerning this action as well as your notes concerning this action. Out of an abundance of caution, we therefore ceased review of the January 16 University Production and have sequestered and restricted access to the January 16 University Production. Excluding your September 9, 2025, termination letter, we have not read the correspondence or notes in the January 16 University Production and will not do so pending a determination by the Court as to whether those documents are discoverable.

As to that issue, EWS's positions are that:

1.  You have repeatedly represented to the Court that you are not represented by counsel in this action and, instead, are acting *pro se*, so the attorney-client privilege does not apply to or preclude discovery of any documents reflecting communications between you and others concerning this action;[1] and

---

[1] We assume Defendant Brandon O'Loughlin was not a party to any of these communications, as you represented to the Court on January 6, 2026, that your interactions with Mr. O'Loughlin were "just . . . verbal" and that "there is no paper trail." Tr. of Jan. 6, 2026, Telephonic Discovery Dispute Hr'g at 7:25–8:5.

Mr. Warren Vurl Johnson
January 23, 2026
Page 2

2.  In any event, you waived any applicable privilege or immunity (including the attorney-client privilege and work-product doctrine) by placing the documents in the January 16 University Production on the University's Office 365 accounts.

Please inform us of your position on the above points by **Tuesday, January 27, 2026**. If you dispute either of EWS's positions or contend that you maintain any privilege or immunity in documents in the University's possession, EWS intends to submit the entirety of the January 16 University Production to the Court *in camera* and seek a ruling from the Court as to whether any privilege or immunity applies to any of those documents.

We expect to receive an additional production from the University consisting of responsive imaged contents of the hard drive of your University-issued computer. If those contents appear to contain any documents that could be subject to a claim of privilege or immunity from discovery, and in further abundance of caution, EWS will seek the Court's additional guidance at that time.

We look forward to hearing from you.

Sincerely,

Kristin M. Adams