1  WARREN VURL JOHNSON
2  warrenvjohnson@gmail.com
   215 E 18th St
3  Lawrence, KS 66044

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| EARLY WARNING SERVICES, LLC | Case No.: CV24-01587-PHX-SMB |
|---|---|
| Plaintiffs, | **DEFENDANT JOHNSON'S CONSOLIDATED RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO UNSEAL AND CROSS-MOTION TO STRIKE TAINTED MATERIALS AND FOR OTHER APPROPRIATE RELIEF** |
| v. | |
| MR. WARREN V. JOHNSON; BRANDON O'LOUGHLIN; P.A.Z.E., LLC | |
| Defendants. | |

**DEFENDANT'S CONSOLIDATED RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO UNSEAL AND CROSS-MOTION TO STRIKE TAINTED MATERIALS AND FOR OTHER APPROPRIATE RELIEF**

**I. INTRODUCTION: THE FRUITS OF AN ETHICALLY VOID "DATA ROBBERY" AND A WINDOW INTO THE OPPONENT'S SOUL**

This Court now stands at a critical juncture, where the integrity of these proceedings hangs in the balance. Plaintiff Early Warning Services, LLC ("EWS") moves to unseal a termination letter—a letter it obtained not through legitimate discovery, but as the spoils of a forensic "data robbery." EWS drafted and served a subpoena on the University of Kansas ("KU") strategically designed not to find trade secrets, but to rifle through Defendant Warren Johnson's litigation files, case assessments, and strategic mental impressions.

This is not hyperbole; it is a fact established by EWS's own actions. By seizing and reviewing Mr. Johnson's "litigation plan" and "strategic roadmap" from his KU

- 1 -

systems, EWS's counsel has committed a foundational breach of the ethical protocols governing this Circuit. They have gained a "window" into the opponent's mind—a view that, under Ninth Circuit law, creates an incurable "taint" that fundamental fairness cannot abide. *See Gomez v. Vernon*, 255 F.3d 1118, 1122 (9th Cir. 2001).

Defendant has since published the unredacted letter to the public record to moot the narrow question of the seal and to prove it contains no relevant trade secret information. However, the core motion must be denied and the tainted materials must be struck because EWS used the power of the Court to bypass KU's stringent privacy protocols to seize a "strategic roadmap" that cannot be "unlearned" and should never have been seen.

## II. THE TARGETED MATERIALS CONSTITUTE NEAR-ABSOLUTE OPINION WORK PRODUCT

The subpoena served by EWS did not target trade secrets; it specifically targeted "Documents Concerning the Civil Action" and "litigation materials," including post-litigation notes and correspondence created during the active pendency of this suit. Within the Ninth Circuit, the work product doctrine is designed to preserve a "zone of privacy" in which a party can develop legal theories and strategy free from an adversary's "prying minds." *Kannan v. Apple Inc.*, No. 19-cv-01869-EMC, 2020 WL 6118496, at *5 (N.D. Cal. Oct. 16, 2020).

**A. Status as Attorney Work Product:** Although Defendant is appearing pro se, his status as a licensed attorney is an established fact in this litigation—**repeatedly acknowledged by EWS and found by this Court.**[1] This Court has *sanctioned*

---

[1] "Johnson is a practicing attorney with over a decade of experience." Dkt. 44 at 6. EWS reiterated this in its opposition to Johnson's motion to stay, stating that Johnson "should understand his obligations to his clients and his employer as an attorney." Dkt. 78 at 5. EWS again highlighted Johnson's "status as a licensed attorney." Dkt. 83 at 10. **"Mr. Johnson is a practicing attorney with over a decade of experience.**

Johnson based on his attorney status.[2] **This Court also reported Johnson to the State Bar of Arizona** based on his conduct as an attorney.[3]

Thus, the record is crystal clear: **Johnson is an attorney, this Court has treated him as such, and EWS has consistently relied on his attorney status throughout this litigation.** Under Federal Rule of Civil Procedure 26(b)(3), a party may assert work product protection regardless of whether they are represented by counsel, provided the materials were prepared in anticipation of litigation. Fed. R. Civ. P. 26(b)(3)(A) (protecting materials "prepared in anticipation of litigation or for trial by or for another party or its representative").

**B. Opinion vs. Fact:** The materials obtained *can only* constitute core "opinion work product." In the Ninth Circuit, such mental impressions, conclusions, opinions, and strategic assessments receive "nearly absolute protection." *In re Grand Jury Subpoena (Mark Torf/Torf Env't Mgmt.)*, 357 F.3d 900, 907 (9th Cir. 2004) (opinion work product "receives special protection... and disclosure is granted only in very unusual circumstances."); Fed. R. Civ. P. 26(b)(3)(B).

### III. EWS COUNSEL BREACHED THE RICO PROTOCOL AND INCURRED INCURABLE TAINT

A. The *Rico* protocol mandates that an attorney receiving materials that "obviously appear" privileged or protected must (1) immediately cease review and (2) promptly notify the opponent. *Rico v. Mitsubishi Motors Corp.*, 42 Cal. 4th 807,

---

[2] "As an attorney, he has a responsibility to know, understand, and adhere to the procedural rules that govern the practice of law before this Court." Dkt. 183 at 6 (emphasis added). The Court found Johnson "acted in bad faith" and imposed sanctions under 28 U.S.C. § 1927—a statute that applies to "any attorney or other person admitted to conduct cases"—precisely because of his conduct as a licensed attorney. *Id.* at 12-13.

[3] Court found that Johnson, "as an attorney," had "failed to comply with his duty of confidentiality as prescribed by Arizona Rule of Professional Conduct 1.6(a)" and ordered the Clerk to forward a copy of the Order to Bar Counsel. Dkt. 123 at 9-10. The Court explicitly warned Johnson that "as an attorney, you are not the holder of that privilege, and should you reveal it again, I will contact the Bar." Tr. of Oral Arg., Dkt. 75 at 21:6-13.

1  814-15 (Cal. 2007). EWS's January 23, 2026, letter proves a fatal and knowing
2  breach of this duty. (See Exhibit A and B)
3       EWS received the University of Kansas production on January 16, 2026. They
4  waited **seven full days**—until January 23—to notify Mr. Johnson. The letter itself
5  admits counsel reviewed the materials, stating that "[c]ertain of the documents . . .
6  appear to include correspondence . . . concerning this action as well as your notes
7  concerning this action." Ex. A at 2. This is not caution; it is tactical sequestration of
8  tainted information. In *Clark v. Superior Court (VeriSign, Inc.)*, the court
9  disqualified counsel who "excessively reviewed" privileged documents and then
10 "affirmatively employed" them. No. D058568, slip op. at 2 (Cal. Ct. App. June 2,
11 2011). The same result is compelled here.
12      Critically, there is no protective order in this case. The Court has not imposed
13 any restrictions on the use of discovery materials, meaning EWS's counsel faces no
14 court-enforced ethical guardrails. They remain in full possession of every document,
15 every note, and every strategic impression Defendant prepared over the course of a
16 year. The 7-day delay was not an oversight; it was a deliberate window to review
17 Defendant's litigation files before being forced to acknowledge what they had done.
18 And having reviewed them, they now face no consequence for continuing to possess
19 and mine that data—indeed, they promptly sought an extension of discovery
20 deadlines after receiving the production, a transparent acknowledgment that they
21 were still exploiting the seized materials for tactical advantage. The absence of a
22 protective order is not an excuse for their conduct; it is the very reason the Court
23 must intervene now.
24      B. **But the letter reveals even deeper bad faith: EWS's counsel argues that**
25 **Mr. Johnson's pro se status negates any privilege—directly contradicting the**
26 **record and this Court's own findings.** EWS asserts that "you have repeatedly
27 represented to the Court that you are . . . acting pro se, so the attorney-client
28 privilege does not apply." Ex. A at 2. This argument is not merely incorrect; it is a

knowing misrepresentation.

The record is crystal clear:

- **This Court has repeatedly found and relied upon Mr. Johnson's attorney status.** In its June 30, 2025, sanctions Order, the Court expressly stated: "**Mr. Johnson is a practicing attorney with over a decade of experience. As an attorney, he has a responsibility to know, understand, and adhere to the procedural rules that govern the practice of law before this Court.** " Dkt. 183 at 6 (emphasis added).
- **This Court reported Mr. Johnson to the State Bar of Arizona based on his conduct as an attorney**.
- **EWS itself has repeatedly relied on Mr. Johnson's attorney status.** In its Motion to Dismiss, EWS emphasized that "**Johnson is a practicing attorney with over a decade of experience.** " Dkt. 44 at 6. In opposing his motion to stay, EWS argued Johnson "**should understand his obligations . . . as an attorney.** " Dkt. 78 at 5. And in opposing leave to amend, EWS again highlighted Johnson's "**status as a licensed attorney.** " Dkt. 83 at 10.

Now, when it is convenient to argue that Mr. Johnson has no protections, EWS cynically reverses course. This is the very definition of bad faith: taking inconsistent positions to gain a litigation advantage, or as EWS attempts to do here, flout the ethical obligations governing the profession.

**The 7-day delay was not an oversight; it was a deliberate window to review Defendant's litigation files before being forced to acknowledge what they had done.** The January 23 letter is not a shield; it is a confession. It admits review, admits possession, and then attempts to litigate away protections this Court has already affirmed. EWS's motion to unseal and weaponize the tainted termination letter is the exact "affirmative use" that warranted disqualification in *Clark*. The January 23 letter, with its false claim of sequestration and hypocritical attack on Mr. Johnson's attorney status, is the definitive proof of bad faith.

### IV. THERE HAS BEEN NO WAIVER UNDER THE *ASIA GLOBAL* AND *SANMINA* STANDARDS

EWS will likely argue that Mr. Johnson waived any protection by using the University's Office 365 system. This argument fails completely under the governing Ninth Circuit framework **and the practicalities of University culture**.

**A. The *Asia Global* Factors Establish an Objective Expectation of Privacy:** Ninth Circuit courts apply the four-factor test from *In re Asia Global Crossing, Ltd.* to determine if an employee has a "reasonable expectation of privacy" in their digital files. 322 B.R. 247, 257 (Bankr. S.D.N.Y. 2005) (factors adopted widely, including in the Ninth Circuit). Your case decisively meets these factors:

1. **Explicit Non-Monitoring Policy:** KU's own policies state that the University "does not ordinarily read, monitor or screen individual user's routine use" of electronic resources. Unlike a corporate environment where monitoring is expected, an institution's formal pledge of non-monitoring preserves the "expectation of privacy" as a matter of law.

2. **Data Classification Protections:** Under KU policy, "individual works of intellectual property" and litigation materials are classified as Level II Sensitive Information, requiring strict handling and protection from unauthorized viewing. This creates privacy tiers that reinforce the data is not public.

3. **Minimum Necessary Disclosure:** KU procedures mandate that any disclosure must be limited to the "minimum information necessary" to achieve the purpose. EWS's overbroad subpoena for "all litigation materials" directly violated this institutional mandate.

4. **Mandatory Legal Oversight:** KU requires the Office of General Counsel to review all subpoenas prior to any release. EWS's aggressive tactics sought to bypass these guardrails.

**This is not the standard corporate data grab culture.** Universities do no monitor, take ownership, or disclose personal data on University systems. Johnson's

1 expectation of privacy was not only reasonable but reinforced and promoted by the
2 University.

3      **B. The Adversary Disclosure Rule in *Sanmina*:** Crucially, work product
4 protection is much harder to waive than attorney-client privilege. Under *United
5 States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020), work product
6 protection is only waived if the disclosure "substantially increases the likelihood that
7 an adversary will obtain it." Storing a litigation plan on a secure, confidential
8 university system—where the University was a neutral third party, not the litigation
9 adversary—is not a waiver. *Id.; see also In re Cnty. of Erie*, 473 F.3d 413, 419 (2d
10 Cir. 2007) (Sotomayor, J.) (disclosure to a third party with a common interest does
11 not waive protection). KU was not EWS; EWS had to use the coercive power of a
12 subpoena to break into that zone of privacy. That is not a waiver; it is a trespass.

**V. THE *GOMEZ V. VERNON* STANDARD MANDATES PROTECTION: THE BELL CANNOT BE UNRUNG**

15      The seminal authority on this issue is *Gomez v. Vernon*, 255 F.3d 1118 (9th Cir.
16 2001). In *Gomez*, the court found that when an attorney obtains a "window" into the
17 opponent's mind—specifically a summary of the "strength of claims" or "litigation
18 strategy"—the fundamental fairness of the proceeding is destroyed because such
19 information cannot be "unlearned." *Id.* at 1122.

20      EWS has now seen Defendant's internal "strategic roadmap" and whistleblower
21 evidence filed against them. This creates a perpetual advantage in taking depositions,
22 preparing motions, and formulating settlement strategy. This is the exact
23 "unacceptable risk of unfair advantage" the work product doctrine was designed to
24 prevent. *Id.* **Because this taint is structural** and is continually growing, the only
25 remedy is to strike the tainted materials and, at a minimum, prohibit EWS from using
26 any information gleaned from this improper seizure.

27      Furthermore, the use of a forensic subpoena to seize a year's worth of litigation
28 strategy transforms a discovery dispute into a potential due process violation. In

*United States v. Danielson*, 325 F.3d 1054, 1070 (9th Cir. 2003), the Ninth Circuit held that when there is an intentional intrusion into the protected zone of defense strategy, a rebuttable presumption of prejudice arises. EWS cannot rebut that presumption here **as EWS openly targeted the zone of defense strategy.**

## VI. EWS'S "TRANSPARENCY" IS SELECTIVE, STRATEGIC, AND SEEKS TO "BURN DOWN THE HOUSE"

EWS's motion is a transparent attempt to change the subject, AGAIN. Facing an emergency motion to vacate (Dkt. 308) based on allegations of fraud on the court, EWS wants to litigate the minutiae of an ill-gotten termination letter to distract from the core issue: the injunction was obtained through questionable means. EWS has filed **22 motions to seal** in this case, building a "privilege" regime on the incantation of words like "reflects" and "undoubtedly privileged." Now, claiming a newfound principle of transparency, it moves to unseal a single document harmful to Johnson.

Its stated reason? The letter "does not support Johnson's narrative." Dkt. 345 at 6. This single sentence is not only blatantly false, it admits the motion's true purpose: not public access, but litigation advantage. This sequence—**a search that found no trade secrets, followed by an attempt to weaponize irrelevant personnel matters to prejudice a pending motion**—strongly suggests an improper motive. In the Ninth Circuit, disqualification or striking of evidence is proper to eliminate the unfair advantage gained through such tactics. *Clark*, 2007 WL 953114, at *4.

## VII. CONCLUSION AND REQUEST FOR RELIEF

EWS's motion is the final step in an attempt to exploit an improper and ethically compromised "data robbery." Because the materials are protected work product and were acquired in violation of clear ethical protocols and KU's privacy policies, the motion must be denied. The taint from this intrusion cannot be cured by simply keeping a document sealed; the bell cannot be unrung.

WHEREFORE, Defendant respectfully requests that the Court:

1. **DENY** Plaintiff's Motion to Lodge Under Provisional Seal (Dkt. 345) as moot, given Defendant's public filing of the unredacted letter, but **DENY** it on the merits due to the improper acquisition of the underlying materials;
2. **GRANT** Defendant's Cross-Motion to Strike all references to the improperly obtained materials in EWS's Opposition (Dkt. 345) and any related filings;
3. **ORDER** that Plaintiff and its counsel are disqualified from using, or relying upon, any information obtained from the KU subpoena production in any further proceeding in this case;
4. **ORDER** an expedited briefing schedule on the propriety of the University of Kansas subpoena and for consideration of further sanctions, up to and including disqualification of counsel, for the ethical breaches documented herein.

**Dated:** February 15, 2026

**Respectfully submitted,**
/s/ Warren V. Johnson
Warren V. Johnson
215 E 18th St
Lawrence, KS 66044
warrenvjohnson@gmail.com

## Certificate of Service

I, Warren V. Johnson, hereby certify that on February 9, 2026, I electronically filed the foregoing **DEFENDANT JOHNSON'S CONSOLIDATED RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO UNSEAL AND CROSS-MOTION TO STRIKE TAINTED MATERIALS AND FOR OTHER APPROPRIATE RELIEF** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Respectfully submitted,

/s/Warren V Johnson/

Warren Johnson
215 E 18th St
Lawrence, KS 66044
warrenvjohnson@gmail.com