**KILPATRICK TOWNSEND & STOCKTON LLP**
Erick Durlach, Arizona Bar No. 024253
*edurlach@ktslaw.com*
Dennis L. Wilson, California Bar No. 155407
(admitted *pro hac vice*)
*dwilson@ktslaw.com*
Sara K. Stadler, New York Bar No. 2620276
(admitted *pro hac vice*)
*sstadler@ktslaw.com*
Kristin M. Adams, Virginia Bar No. 92069
(admitted *pro hac vice*)
*kmadams@ktslaw.com*
6909 E. Greenway Parkway, Suite 100
Scottsdale, Arizona 85254-2149
Tel: (602) 726-7319
Fax: (623) 321-1009

Attorneys for Plaintiff
Early Warning Services, LLC

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Early Warning Services, LLC,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>Warren Vurl Johnson, Brandon O'Loughlin and P.A.Z.E., LLC,<br><br>　　　　Defendants. | Case No. CV-24-01587-PHX-SMB<br><br>**PLAINTIFF EARLY WARNING SERVICES' RESPONSE IN OPPOSITION TO DEFENDANT JOHNSON'S (1) SECOND MOTION TO DISQUALIFY [341] AND (2) CROSS-MOTION TO STRIKE "TAINTED MATERIALS" [358]** |

1

# **TABLE OF CONTENTS**

2

TABLE OF AUTHORITIES ...................................................................................ii

I. INTRODUCTION ....................................................................................1

II. FACTUAL BACKGROUND ...................................................................3

III. ARGUMENT ..........................................................................................4

    A. The Requests in the Subpoena Properly Seek
        Documents Highly Relevant to EWS's Claims. ...............................4

    B. EWS's Counsel Acted Ethically. ......................................................6

IV. CONCLUSION .....................................................................................10

CERTIFICATE OF SERVICE ..........................................................................11

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

i

1

**<u>TABLE OF AUTHORITIES</u>**

2

3

**Cases**

4

*Clark v. Super. Ct. of San Diego Cnty.*,
  196 Cal. App. 4th 37 (2011)...................................................................8

5

6

*Est. of Manship v. United States*,
  237 F.R.D. 141 (M.D. La. 2006)...........................................................2

7

*Gomez v. Vernon*,
  255 F.3d 1118 (9th Cir. 2001)...............................................................7

8

9

*Holmgren v. State Farm Mut. Auto. Ins. Co.*,
  976 F.2d 573 (9th Cir. 1992)..................................................................5

10

11

*Patterson v. Chi. Ass'n for Retarded Children*,
  No. 96 C 4713, 1997 WL 323575 (N.D. Ill. June 6, 1997)...................2

12

13

*Pham v. Talkdesk, Inc.*,
  No. 2:22-cv-05325-MCS-JPR, 2023 WL 3149270 (C.D. Cal. Mar. 14,
  2023).....................................................................................................2

14

15

*Ravenswood Inv. Co., L.P. v. Avalon Corr. Servs., Inc.*,
  No. CIV-09-70-R, 2010 WL 11443364 (W.D. Okla. May 18, 2010).....................2

16

*Rico v. Mitsubishi Motors Corp.*,
  171 P.3d 1092 (Cal. 2007)......................................................................8

17

18

*State Comp. Ins. Fund v. WPS, Inc.*,
  82 Cal. Rptr. 2d 799 (Cal. Ct. App. 1999) ........................................8, 9

19

20

*United States v. Christensen*,
  828 F.3d 763 (9th Cir. 2015)..................................................................9

21

*United States v. Danielson*,
  325 F.3d 1054 (9th Cir. 2003), *as amended* (May 19, 2003).................1

22

23

*United States v. Horn*,
  29 F.3d 754 (1st Cir. 1994) ....................................................................9

24

25

*United States v. Sanmina Corp.*,
  968 F.3d 1107 (9th Cir. 2020).................................................................5

26

**Other Authorities**

27

KU | Policy Administration,
  *Acceptable Use of Electronic Information Resources*, available at

28

ii

https://services.ku.edu/TDClient/818/Portal/KB/ArticleDet?ID=21335 (last visited Feb. 16, 2026) ............................................................................... 10

**Rules**

A.R.S. Sup. Ct. R. Prof. C.
4.4(b)......................................................................................................... 7
4.4(b) cmt. 2.............................................................................................. 7

## I.    **INTRODUCTION**

Defendant Warren Vurl Johnson's ("Johnson") latest motions to disqualify Plaintiff Early Warning Systems, LLC's ("EWS") outside counsel and "strike" all references to what Johnson calls the "tainted materials" rest on a series of false accusations—namely, that EWS subpoenaed Johnson's former employer, the University of Kansas (the "University"), solely "to capture only litigation work product"; that EWS's counsel reviewed the contents of that "work product" in the documents produced by the University (the "Documents"); and that EWS's counsel now has "knowledge of Johnson's strategy, his assessment of facts, and his communications about the case" and has a "window into [his] soul." Mot. to Disqualify, Dkt. 341, at 3, 9; Mot. to Strike, Dkt. 358 at 1. None of which is true.[1]

In fact, EWS's counsel fully complied with its ethical obligations by (a) serving Johnson with the subpoena contemporaneously with its service on the University, (b) ceasing review of the Documents at the first sign they might contain privileged information or attorney work product, (c) sequestering the Documents, and (d) notifying Johnson about the Documents and what they might contain, so the parties can seek the Court's guidance. Unable to dispute this, Johnson resorts to speculation that, because EWS's counsel received the University's production "seven days" before providing him with notice of it, EWS's counsel "spen[t] a week 'cataloging'" and "data-mining" Johnson's "stolen litigation blueprint," seeking a stay of these proceedings only to "exploit their ill-gotten gains." *See, e.g.*, Mot. to

---

[1] Johnson cites *United States v. Danielson*, 325 F.3d 1054 (9th Cir. 2003), *as amended* (May 19, 2003), for the proposition that knowledge of an opponent's strategy works a shift in the burden of proof (Mot. to Disqualify, Dkt. 341 at 7; Mot. to Strike, Dkt. 358 at 7–8), but the criminal prosecution underlying that opinion distinguishes it from the civil litigation here. *See* 325 F.3d at 1072 (acknowledging "burden-shifting analysis that protects a criminal defendant against a violation of the Fifth Amendment by putting the burden of proof on the government that it did not use the privileged information").

Disqualify, Dkt. 341 at 2, 7, 9. Again, these accusations are false.

The University produced the Documents pursuant to a subpoena[2] (the "Subpoena") that *Johnson never moved to quash*. Johnson does not dispute that he received timely notice of the Subpoena. *See* Stadler Decl. ¶ 2, Ex. 1. If Johnson believed the Subpoena might implicate attorney work product, he should have timely moved to quash or otherwise objected. Tellingly, he did not.[3] *Id.* ¶ 4.

Instead, Johnson moves for an order striking any reference to the information obtained from the Subpoena and seeks disqualification of EWS's chosen counsel (again) in yet another "tactical abuse." *See Pham v. Talkdesk, Inc.*, No. 2:22-cv-05325-MCS-JPR, 2023 WL 3149270, at *1 (C.D. Cal. Mar. 14, 2023) (citation omitted) (observing that in evaluating motions to disqualify counsel, courts "must balance such varied interests as a party's right to chosen counsel, the interest in representing a client, the burden placed on a client to find new counsel, and the

---

[2] Johnson asserts that EWS sought to frustrate the University's "review [of] all subpoenas prior to any release" of documents by "bypass[ing]" the University's Office of the General Counsel. Mot. to Strike, Dkt. 358 at 6. This is false. EWS's counsel served the Subpoena on the Director of Litigation in the General Counsel's Office of the University. Decl. of Sara K. Stadler ("Stadler Decl.") ¶ 3.

[3] Courts routinely hold that such a failure effects a waiver of any privilege or work product protection otherwise applicable to the documents responsive to a subpoena issued to a third party, as here. *See, e.g.*, *Ravenswood Inv. Co. v. Avalon Corr. Servs., Inc.*, No. CIV-09-70-R, 2010 WL 11443364, at *2 (W.D. Okla. May 18, 2010) ("Because Defendant did not state its claim of privilege within fourteen days of service of the subpoena on Cole & Reed, the Court concludes Defendant has waived any such claim."); *Est. of Manship v. United States*, 237 F.R.D. 141, 144 (M.D. La. 2006) ("[P]laintiffs failed to timely object within fourteen (14) days of service of the subpoena directed to Chaffe and thereby waived any objections on grounds of privilege. Thus, regardless of whether plaintiffs *claimed* that privileges applicable to the Chaffe documents had not been waived, the United States was permitted to review those documents when the plaintiffs failed to timely object to the subpoena."); *Patterson v. Chi. Ass'n for Retarded Children*, No. 96 C 4713, 1997 WL 323575, at *3 (N.D. Ill. June 6, 1997) ("By failing to object at this stage [when defendant's motion for subpoena was granted], Patterson essentially waived her claim to privilege, and the information gleaned via the subpoena may be used by [defendant].").

possibility that tactical abuse underlies the disqualification motion" (citation omitted)). Neither Johnson's motions has any merit. Both should be denied.

## II.    FACTUAL BACKGROUND

On December 16, 2025, EWS notified Defendants of its intent to subpoena the University of Kansas, Johnson's former employer, seeking documents and testimony concerning the subjects listed in the exhibits to the Subpoena. Stadler Decl. ¶ 2, Ex. 1. Those subjects included information highly relevant to EWS's claims, such as "EWS's Documents," "Documents Concerning EWS's Intellectual Property," and "Documents Concerning O'Loughlin . . . . [and] P.A.Z.E., LLC." *Id.* Ex. 1 at 11–12. EWS then served the Subpoena on the University, as well as on Defendants. *Id.* ¶ 3, Ex. 2. Neither the University nor Johnson moved to quash or otherwise objected to the Subpoena by January 16, 2026, the date specified in the Subpoena by which responsive documents were to be served. *Id.* ¶ 4.

On January 16, 2026, the University made a partial production of responsive documents (the "Documents") via an email to one of EWS's undersigned counsel, Sara Stadler of Kilpatrick Townsend & Stockton LLP ("Kilpatrick"), containing a restricted link. *Id.* ¶ 5. The University did not designate any of the Documents as confidential in its January 16, 2026, production. *Id.* Upon receiving the University's email, Ms. Stadler clicked on the link, accessed and downloaded the Documents, and saved them to Kilpatrick's systems. *Id.* ¶ 6. The downloaded files consist of one document in .pdf format and eight Excel spreadsheets. *Id.*

Ms. Stadler first opened one of the Excel spreadsheets, which appeared to be an index containing hundreds of rows of data concerning EWS's inventions between 2014 and 2022. *Id.* ¶ 7. She then opened the .pdf document and, while reviewing it, discovered what appear to be Johnson's notes and correspondence with others about this case. *Id.* Out of an abundance of caution, Ms. Stadler immediately stopped reviewing the document and closed it without reading the contents of Johnson's notes or correspondence. *Id.* She then enlisted the assistance of Kilpatrick's Information

3

Technology ("IT") department, which restricted access to the Documents on Kilpatrick's systems. *Id.* ¶ 9. To Ms. Stadler's knowledge, she is the only person at Kilpatrick to access any of the Documents. *Id.* ¶ 11.

On January 23, 2026, EWS's counsel notified Johnson of the University's document production and asked for his position on whether any privileges attach to any of the Documents. *Id.* ¶ 10, Ex. 3. Johnson's response appears to claim the Documents contain "opinion work product." *Id.* ¶ 10, Ex. 4.[4] EWS disputes this claim and proposes to submit the documents at issue to the Court for an *in camera* review.[5]

## III.  ARGUMENT

### A.    The Requests in the Subpoena Properly Seek Documents Highly Relevant to EWS's Claims.

Johnson attempts to set the table for disqualification by arguing that the Subpoena is "a 100% guarantee to capture *only* litigation work product." Mot. to Disqualify, Dkt. 341 at 3 (emphasis added). Johnson grounds this claim in EWS's Document Request 8, which reads:

> 8.    Documents Concerning the Civil Action, Including Documents memorializing or referencing representations Johnson made to You Concerning the facts, claims, and issues relevant to the Civil Action.

Stadler Decl. Ex. 1 at 11. While the phrase "Documents Concerning the Civil Action" is broad enough to capture Johnson's notes and correspondence about this case, the

---

[4] For example, Johnson does not claim he placed responsive documents on the University's servers as the University's attorney *or* client, nor does he claim such a relationship exists between him and the nonparties with whom he corresponded in writing about this case. *See* Tr. of Jan. 6, 2026, Telephonic Discovery Dispute Hr'g at 7:25–8:5 ("[W]e [Johnson and Defendant Brandon O'Loughlin ("O'Loughlin")] didn't have digital communications. We didn't have like a—like e-mail conversations and stuff like that. It just was verbal. . . . [T]here is no paper trail, I guess you would say.").

[5] At the Court's request, EWS will submit briefing on the privilege issues raised by the Documents' contents.

4

word "You" in Document Request 8 refers to "the University of Kansas and its campuses, controlled affiliates, and research supporting entities, Including the University of Kansas Medical Center." *Id.* Ex. 1 at 8. Documents concerning Johnson's representations *to the University* are not "the dictionary definition of opinion work product," as Johnson contends. Mot. to Disqualify, Dkt. 341 at 3. To the contrary, those representations are fully discoverable. *See United States v. Sanmina Corp.*, 968 F.3d 1107, 1120 (9th Cir. 2020) ("[D]isclosing [work-product] material in a way inconsistent with keeping it from an adversary waives work product protection." (citations omitted)).[6]

Johnson's argument also ignores the Subpoena's other document requests, each of which seeks documents highly relevant to EWS's claims. Examples of those requests include:

1.    EWS's Documents.

2.    Documents Concerning EWS that were created, edited, saved, uploaded, downloaded, sent, received, or otherwise used, accessed, or viewed by Johnson.

. . . .

5.    Documents Concerning EWS's Intellectual Property that were created, edited, saved, uploaded, downloaded, sent, received, or otherwise used, accessed, or viewed by Johnson, or that memorialize or reference information attained from or in connection with Johnson.

6.    Documents Concerning O'Loughlin, Including forwarded email Communications or email Communications to, from, or copying O'Loughlin.

---

[6] Beyond mischaracterizing *Sanmina*, Johnson cites *Holmgren v. State Farm Mutual Automobile Insurance Co.*, 976 F.2d 573 (9th Cir. 1992), for the proposition that protection for work product is "Nearly Absolute" (Mot. to Disqualify, Dkt. 341 at 8), but that decision both affirmed the discoverability of the claimed work product at issue and sanctioned the appellee for arguing otherwise. *See Holmgren*, 976 F.2d at 577–78, 581.

1

2

       7.    Documents Concerning P.A.Z.E., LLC, Including forwarded email Communications.

3

4

5

6

7

8

9

10

Stadler Decl. Ex. 1 at 11–12. Documents on these subjects are relevant to show, *inter alia*, that Johnson exfiltrated EWS's documents and misappropriated EWS's protected information by sharing it with O'Loughlin for use by him and Defendant P.A.Z.E., LLC. *See generally* Compl., Dkt. 1. Johnson insists that the University's "**search** . . . **found no trade secrets**." Mot. to Strike, Dkt. 358 at 8 (emphasis in original). In fact, the Documents already produced by the University include an Excel spreadsheet containing hundreds of rows of data concerning EWS's inventions between 2014 and 2022. Stadler Decl. ¶ 7.

11

12

13

14

15

16

17

18

19

20

    Johnson also argues that the time period specified in the Subpoena was designed as a "kill switch" to "harvest" his "litigation work product." Mot. to Disqualify, Dkt. 341 at 2, 3. This, too, is false. The Subpoena seeks "Documents from the date on which the University hired Johnson to the present" because, by definition, Johnson could not have placed any documents on the University's systems before the University hired him. *See* Stadler Decl. Ex. 1 at 11. It would make no sense to ask the University to search for responsive documents created before Johnson arrived. Johnson's insistence to the contrary reveals the frivolous lengths to which he will go to seek disqualification of EWS's chosen counsel and to prevent EWS from relying on Documents produced pursuant to an unopposed lawful Subpoena.

21

    **B.    EWS's Counsel Acted Ethically.**

22

23

24

25

26

27

28

    Johnson argues that "when you receive materials that 'obviously appear' privileged, you must (1) cease reviewing, (2) notify the opponent, and (3) resolve the issue." Mot. to Disqualify, Dkt. 341 at 6 (citations omitted); Mot. to Strike, Dkt. 358 at 3–4 (citation omitted). EWS's counsel did precisely that. When Ms. Stadler discovered what could be Johnson's notes about this case and correspondence with others about this case, she immediately stopped reviewing the .pdf document, closed it without reading the contents of Johnson's notes or correspondence, and sought

6

assistance in restricting access to the Documents on Kilpatrick's systems. Stadler Decl. ¶¶ 8, 9. EWS's counsel then sent Johnson a letter notifying him of the University's document production, asking for his position on whether any privileges attach to any of the Documents, and offering to submit the Documents to the Court for an *in camera* review before using them. *Id.* ¶ 10, Ex. 3.

These procedures fully satisfied EWS's counsel's ethical obligations. While EWS is unaware of any ethical rules governing attorney review of documents (a) produced by a third party under a lawful subpoena and (b) not designated by the third party as confidential, as here, Arizona Rule of Professional Conduct 4.4(b) nonetheless provides some guidance.[7] That rule, which covers the distinguishable scenario in which a lawyer inadvertently receives documents that should never have been produced, provides that:

> A lawyer who receives a document . . . and knows or reasonably should know that the document . . . was inadvertently sent shall promptly notify the sender and preserve the status quo for a reasonable period of time in order to permit the sender to take protective measures.

A.R.S. Sup. Ct. R. Prof. C. 4.4(b). Comment 2 to Rule 4.4(b) further provides that the lawyer should "stop reading the document, . . . make no use of the document, and . . . promptly notify the sender in order to permit that person to take protective measures." A.R.S. Sup. Ct. R. Prof. C. Rule 4.4(b) cmt. 2 to 2003 amendment.

Here, EWS's counsel stopped reading the Documents and "promptly notif[ied]" Johnson by advising Johnson of what the Documents may contain. Stadler Decl. ¶¶ 8, 10, Ex. 3. Counsel also "preserve[d] the status quo" by sequestering the

---

[7] Purporting to quote language not appearing in the opinion, Johnson's motion claims that *Gomez v. Vernon*, 255 F.3d 1118 (9th Cir. 2001)—which Johnson also calls "*United States v. Gomez*"—is relevant here because EWS "intentionally sought out" the Documents. Mot. to Disqualify, Dkt. 341 at 7. *Gomez*, however, arose from the repeated surreptitious photocopying of correspondence between inmates and their attorneys, a far cry from the University's production of materials responsive to a subpoena properly served on Johnson and of which Johnson had advance knowledge.

Documents until the Court can provide guidance on whether Johnson's privilege claims have merit. *Id.* ¶ 9. These actions would have fully satisfied EWS's counsel's ethical obligations even if the Documents were not discoverable and were inadvertently produced by Johnson himself, as opposed to being produced by Johnson's former employer without any claim to confidentiality and pursuant to an unopposed lawful Subpoena.

Johnson nonetheless argues that EWS's counsel acted unethically because she "reviewed the documents sufficiently to categorize their privileged nature." Mot. to Disqualify, Dkt. 341 at 4. Yet, EWS's counsel could not have done otherwise. Even the opinions applying California law on which Johnson relies hold that a lawyer inadvertently receiving privileged materials may review those materials "to ascertain if the materials are privileged."[8] *See Rico v. Mitsubishi Motors Corp.*, 171 P.3d 1092, 1099 (Cal. 2007) ("[T]he lawyer receiving such materials [made available through inadvertence] should refrain from examining the materials any more than is essential to ascertain if the materials are privileged."); *State Comp. Ins. Fund v. WPS, Inc.*, 82 Cal. Rptr. 2d 799, 807 (Cal. Ct. App. 1999) (holding that a lawyer inadvertently receiving materials "should refrain from examining the materials any more than is essential to ascertain if the materials are privileged"); Mot. to Disqualify, Dkt. 341 at 6. The pages in the beginning of the .pdf file did not alert Ms. Stadler in any way that the file also could contain Johnson's notes and correspondence concerning this case. Stadler Decl. ¶ 8. Ms. Stadler's review of the Documents therefore was "essential to

---

[8] Johnson also relies on *Clark v. Superior Court of San Diego County*, 196 Cal. App. 4th 37 (2011), but that case is inapposite. *See* Mot. to Strike, Dkt. 358 at 4. In *Clark*, counsel reviewed a privileged email to assess whether it contained "business or legal advice, which necessarily involved an assessment of its contents," and "affirmatively used some of the substantive information contained in the privileged documents to question witnesses or to support Clark's claims." *Id.* at 53–54. Here, EWS's counsel immediately ceased reviewing and sequestered the Documents without reading the contents of Johnson's notes or correspondence. Stadler Decl. ¶¶ 8, 9, 11.

8

ascertain if the materials are privileged." *State Comp. Ins. Fund*, 82 Cal. Rptr. 2d at 807.[9]

The ethical conduct of EWS's counsel eliminates any basis for disqualification based on the arguments in Johnson's Motion or any other ground,[10] and Johnson is not entitled to an order striking any references to or reliance upon the information obtained from the Subpoena. Accordingly, both of Johnson's motions should be denied in their entireties. EWS looks forward to seeking the Court's guidance on the privilege issues raised by the Documents once the University completes its production.[11]

---

[9] Significantly, *State Compensation Insurance Fund* also holds that:

> [W]henever a lawyer seeks to hold another lawyer accountable for misuse of inadvertently received confidential materials, the burden must rest on the complaining lawyer to persuasively demonstrate inadvertence. Otherwise, a lawyer might attempt to gain an advantage over his or her opponent by intentionally sending confidential material and then bringing a motion to disqualify the receiving lawyer.

82 Cal. Rptr. 2d at 808. Here, Johnson does not claim surprise that the University produced materials drafted by someone else or materials of which he was otherwise unaware. Instead, the entire premise of his Motion is that he either authored the Documents himself or that the Documents comprise communications to which he was a party. If *State Compensation Insurance Fund* has any relevance to this litigation, it stands for the proposition that a litigant cannot knowingly acquiesce in the production of allegedly protected documents, then object to its adversary's receipt of those documents after the fact.

[10] Beyond the myriad factual infirmities of his Motion, Johnson cites *United States v. Christensen*, 828 F.3d 763 (9th Cir. 2015), and *United States v. Horn*, 29 F.3d 754 (1st Cir. 1994), as support for his proposed remedy (Mot. to Disqualify, Dkt. 341 at 7), but neither opinion addresses the issue of disqualification, much less orders it. Further, *Horn* was decided by the First Circuit Court of Appeals, not the Ninth, as Johnson claims.

[11] Johnson claims the University's policies concerning its employees' use of its electronic resources "preserve[] [his] 'expectation of privacy' as a matter of law." Mot. to Strike, Dkt. 358 at 6. To the contrary, those policies confirm, *inter alia*, that the University "cannot guarantee the confidentiality, privacy, or security of data, email, or other information transmitted or stored on its electronic information," and

IV.    **CONCLUSION**

For the foregoing reasons, EWS respectfully requests that the Court deny Johnson's motion to disqualify (Dkt. 341) and motion to strike (Dkt. 358) in their entireties, including all the relief they seek.

DATED:  February 17, 2026

Respectfully Submitted,

KILPATRICK TOWNSEND & STOCKTON LLP

*/s/ Erick Durlach*
Erick Durlach
Dennis L. Wilson (admitted *pro hac vice*)
Sara K. Stadler (admitted *pro hac vice*)
Kristin M. Adams (admitted *pro hac vice*)
6909 E. Greenway Parkway, Suite 100
Scottsdale, Arizona 85254
Tel: (602) 726-7319
Fax: (623) 321-1009
*edurlach@ktslaw.com*
*dwilson@ktslaw.com*
*sstadler@ktslaw.com*
*kmadams@ktslaw.com*

Attorneys for Plaintiff
Early Warning Services, LLC

---

that its system administrators may monitor users' activities and "inspect and record [their] files." KU | Policy Administration, *Acceptable Use of Electronic Information Resources*, available at https://services.ku.edu/TDClient/818/Portal/KB/ArticleDet?ID=21335 (last visited Feb. 16, 2026).

## **CERTIFICATE OF SERVICE**

I certify that on February 17, 2026, I electronically transmitted the foregoing document and any attachments to the U.S. District Court Clerk's Office using the CM/ECF System for filing with a copy served via that system. For parties not receiving service via CM/ECF, a copy will be transmitted via electronic mail as follows:

Brandon O'Loughlin
contact@paze.guru

*Defendant Brandon O'Loughlin Individually and*
*as Authorized Representative for Defendant PAZE, LLC*

*/s/ Erick Durlach*
Erick Durlach

11