WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Early Warning Services LLC, | No. CV-24-01587-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| Warren Vurl Johnson, et al., | |
| Defendants. | |

Before this Court is Defendant Warren Vurl Johnson's Emergency Renewed Motion for Judicial Recusal and Request for Expedited Review, (Doc. 332 ("Second Recusal Motion")), and Declaration in Support, (Doc. 333 ("Recusal Declaration")), Plaintiff Early Warning Services, LLC's ("Early Warning") Opposition to Johnson's Motion, (Doc. 351), and Johnson's Reply, (Doc. 359).  For the reasons set forth below, the Recusal Motion will be **DENIED**.

## I.    PERTINENT PROCEDURAL BACKGROUND

This action was initiated by Early Warning in June 2024, and a cursory review of the docket reflects contentious litigation with over 360 docket entries as of the date of this order.  The issues litigated include a preliminary injunction, a previous motion for recusal, several appeals to the Ninth Circuit, and other proceedings.  With this backdrop, Johnson filed the Second Recusal Motion seeking the recusal of Judge Susan Brnovich based on alleged "ex parte coordination, provable lies, and systematic favoritism."  (Doc. 332 at 2.)  In addition to setting forth multiple arguments for recusal, he asserts that Judge Brnovich

must answer 21 separate questions to his satisfaction, and also requests a broad array of relief. (*Id.* at 14–17.)

Shortly after Johnson filed the Second Recusal Motion, Judge Brnovich entered an order noting that although Johnson only cited 28 U.S.C. § 455, his allegations of bias and impartiality implicate 28 U.S.C. § 144. (Doc. 344.) Accordingly, Judge Brnovich reassigned the motion to Judge Tuchi. (*Id.*) Judge Tuchi then recused himself from hearing the Second Recusal Motion, causing it to be reassigned to this Court. (Doc. 352.)

## II. LEGAL STANDARD

As a threshold matter, Johnson argues that he filed the Second Recusal Motion under only 28 U.S.C. § 455(a) and not 28 U.S.C. § 144, and that Judge Brnovich improperly "unilaterally converted it to [28 U.S.C.] § 144." (Doc. 359 at 2; *see also id.* at 5.) For § 144 to apply, a party must make and timely file a "sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of an adverse party," and the affidavit must "state the facts and the reasons for the belief that bias or prejudice exists." 28 U.S.C. § 144. Here, Johnson signed and filed his Recusal Declaration in support of the Second Recusal Motion, and alleged that Judge Brnovich is biased and partial—indeed, he made that allegation at least ten times in the Second Recusal Motion. (Doc. 332 at 1, 2, 4, 6, 8, 9, 10, 11, 12, 14, 18.)

Thus, regardless of Johnson's intent, his Second Recusal Motion meets the requirements of § 144. *See* 28 U.S.C. § 144; *see also* 28 U.S.C. § 1746 (permitting unsworn declarations in lieu of affidavits). And because § 144 applies, Judge Brnovich was required to reassign the Second Recusal Motion. 28 U.S.C. § 144; *see also Hill v. Ariz. Dep't of Corr.*, 2022 WL 451657, at *2 (D. Ariz. 2022) ("If the judge finds [an] affidavit timely and legally sufficient, the judge must proceed no further, and another judge must be assigned to hear the motion." (citations omitted)). Because the Second Recusal Motion and Recusal Declaration satisfy § 144, and because Johnson does not cogently argue why the Court cannot consider the Second Recusal Motion under both §§ 455 and 144, the Court will apply both statutes in resolving the Second Recusal Motion.

- 2 -

"The standard for recusal under 28 U.S.C. §§ 144, 455 is 'whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned.'" *United States v. Studley*, 783 F.2d 934, 939 (9th Cir. 1986) (quoting *Mayes v. Leipziger*, 729 F.2d 605, 607 (9th Cir. 1984)). The alleged prejudice must arise from an extrajudicial source, and thus "a judge's prior adverse ruling is not sufficient cause for recusal." *Studley*, 738 F.2d at 939. "Actual bias isn't required; the appearance of impropriety can be a sufficient basis for judicial recusal." *Blixseth v. Yellowstone Mountain Club, LLC*, 742 F.3d 1215, 1219 (9th Cir. 2014) (citing *Liljeberg v. Health Servs. Acq. Corp.*, 486 U.S. 847, 864-65 (1988); *Yagman v. Republic Ins.*, 987 F.2d 622, 626 (9th Cir.1993)).

Importantly, the "reasonable person" under both statutes "is not someone who is hypersensitive or unduly suspicious, but rather a well-informed, thoughtful observer." *United States v. Holland*, 519 F.3d 909, 913–14 (9th Cir. 2008) (quotation marks omitted); *see also United States v. McTiernan*, 695 F.3d 882, 891 (9th Cir. 2012) (same standard applies under both §§ 144 and 455). Likewise, "factual allegations do not have to be taken as true, and a judge should not recuse . . . on unsupported, irrational, or highly tenuous speculation." *In re Hayden*, 2025 WL 1420905, at *8 (B.A.P. 9th Cir. 2025) (alteration in original) (quotation marks omitted).

## III.    DISCUSSION

Although the Second Recusal Motion is poorly organized and there is some overlap between the arguments, a charitable reading suggests that Johnson's arguments fit within eight categories relating to: (a) the preliminary injunction order (Doc. 70 ("PI Order")); (b) a "Shadow Docket" comprised of alleged ex parte communications between Early Warning and Judge Brnovich; (c) the September 22, 2025 sanctions hearing (Doc. 239) and subsequent contempt order (Doc. 243); (d) a document allegedly altered when entered on the docket (Docs. 102, 104; (e) the denial of Johnson's May 2025 recusal motion (Doc 150 ("First Recusal Motion")); (f) allegedly inconsistent rulings by Judge Brnovich concerning the application of the attorney-client privilege; (g) Judge Brnovich's order

imposing sanctions on Johnson for future disclosures of Early Warning's attorney-client information; and (h) the percentage of rulings for and against Johnson. (*See generally* Doc. 332.) Each argument will be addressed in turn.

### A.    The PI Order

Johnson argues that Judge Brnovich improperly received and adopted a form of order submitted by Early Warning ex parte based on the following allegations:

- Judge Brnovich held a preliminary injunction hearing on December 4, 2024 during which she informed the parties that she had "an order already drafted, but [was] going to go back and take things under consideration";

- the hearing concluded at 11:31 AM and Judge Brnovich entered the PI Order granting relief to Early Warning 28 minutes later, at 11:59 AM;

- the PI Order had been scanned as a PDF and Judge Brnovich's digital signature was then added to the document before it was entered, and that this method for creating the PI Order was different from how other orders in this case were created (they had been digitally converted from a Microsoft Word file to PDF format); and

- the PI Order differs in substance from the proposed order submitted by Early Warning at Doc. 16-1, and includes "inflammatory insertions absent from the public record."

(Doc. 332 at 1–4.)  From these factual allegations, which the Court will accept as true for purposes of its analysis, Johnson infers that Early Warning secretly FedExed Judge Brnovich the PI Order, and she then entered it.  (*Id.* at 4.)

Johnson's argument lacks merit and his factual allegations—viewed individually and collectively—do not evidence partiality or bias by Judge Brnovich.  First, there is nothing improper about Judge Brnovich preparing a draft order before the preliminary injunction hearing; rather, as Early Warning notes, this is "evidence of the thoroughness of [Judge Brnovich's] preparation and [her] mastery of the legal and factual issues presented—not evidence of judicial bias."  (Doc. 351 at 6.)  Likewise, there is nothing improper about Judge Brnovich entering the PI Order 28 minutes after the hearing, or about entering an order that has been scanned as a PDF with a digital signature affixed afterward.

Furthermore, there is nothing improper about Judge Brnovich's decision to prepare a draft order that differed from the proposed order submitted by Early Warning. If anything, that is further evidence that Judge Brnovich thoroughly analyzed the record, researched the law, and ruled accordingly. And to the extent Johnson argues that the content of the PI Order requires recusal under 28 U.S.C. §§ 144 and 455, such an argument is foreclosed. *See Studley*, 783 F.2d at 939 (explaining that "a judge's prior adverse ruling is not sufficient cause for recusal"); *see also F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1145 (9th Cir. 2001) (explaining that "Judges are known to make procedural and even substantive errors on occasion" but that such errors "would be the basis for appeal, not recusal").

Viewing Johnson's factual allegations together does not change the result. The reasonable inference to be drawn from—and the most likely explanation for—the facts as alleged is that Judge Brnovich prepared a draft order before the hearing (consistent with what she told the parties at the hearing), printed the draft to take to the hearing, reviewed the draft after taking the matter under consideration (consistent with what she told the parties), decided not to make any changes, and provided the draft to her staff with instructions to enter the order with her signature, causing her staff to scan the draft order, affix her signature digitally, and enter the order on the docket. A "reasonable person"—rather than "someone who is hypersensitive or unduly suspicious," *Holland*, 519 F.3d at 913 (cleaned up)—could not conclude that Judge Brnovich's impartiality might reasonably be questioned based on Johnson's allegations. *See Studley*, 783 F.2d at 939. Indeed, Johnson's conclusion that Judge Brnovich utilized a secretly filed proposed order is the type of "irrational, or highly tenuous speculation" that cannot form the basis for recusal. *In re Hayden*, 2025 WL 1420905, at *8. Johnson's argument for recusal based on the PI Order therefore fails.

**B.    "Shadow Docket"**

Similar to his argument about the PI Order, Johnson next argues that Judge Brnovich must be disqualified because there is a "**Shadow Docket**" and a "**Two-Track System**" in

which Early Warning made "**public vanilla filings for [Johnson]**" while secretly providing "**private aggressive drafts**" to Judge Brnovich's chambers via FedEx. (Doc. 332 at 4–5.) Johnson infers the existence of this "Shadow Docket" based on his allegations of: (a) FedEx receipts showing that Early Warning delivered documents to Judge Brnovich's chambers, (b) billing entries reflecting phone calls from Early Warning's counsel to the district court, and (c) arguments in Early Warning's briefing that were adopted by the Judge Brnovich in her orders. (*Id.* at 2, 4–5.)

In its response, Early Warning demonstrated that there was nothing improper about the documents delivered to, and communications with, the district court:

> Other than occasional procedural questions directed to personnel in the Clerk's office by phone, EWS's only communications with the Court have consisted solely of (a) courtesy copies of filed documents sent via FedEx to the Court's chambers pursuant to LRCiv 5.4 and (b) electronic copies of filed proposed orders, in Microsoft Word format, sent via email to the Court's chambers . . . . Each of these documents was both filed with the Court and served on Defendants. . . . [Early Warning] has never sent a document to chambers via FedEx, email, or otherwise that was not contemporaneously served on Defendants via email, mail, or both.

(Doc. 351 at 5 (citing Declaration of Elba T. Smith, (Doc. 351-1)).)

On these facts, no reasonable person could find the existence of a "Shadow Docket" or improper ex parte communication between Early Warning and Judge Brnovich. And there is nothing improper about Judge Brnovich accepting Early Warning's arguments and ruling in its favor. Finally, to the extent Johnson challenges the substance of Judge Brnovich's rulings, the proper avenue for such a challenge is via appeal—not a motion under §§ 144 and 455. *See Studley*, 783 F.2d at 939; *F.J. Hanshaw Enters.*, 244 F.3d at 1145. Simply put, based on these facts no reasonable person could conclude, that Judge Brnovich's impartiality might reasonably be questioned. *See Studley*, 783 F.2d at 939.

### C.    Sanctions Hearing and Contempt Order

After Judge Brnovich entered the PI Order against Johnson in December 2024, (Doc. 70), and issued an order requiring Johnson to comply with the PI Order in June 2025, (Doc. 179), Early Warning moved for sanctions against Johnson for violating those orders,

(Doc. 225). Judge Brnovich held a sanctions hearing on September 22, 2025 during which she granted Early Warning's motion in part, (Doc. 239), and issued a written order explaining her contempt ruling two days later, (Doc. 243).

In the Second Recusal Motion, Johnson argues that the PI Order was overbroad, and quibbles at length with statements made by Judge Brnovich at the contempt hearing and set forth in her written order. (Doc. 332 at 6–8, 13.) He goes so far as to suggest that Judge Brnovich's statements at the hearing reflect "a pattern of judicial overreach and deceit." (*Id.* at 8.) Johnson's assertion, however, is baseless and his arguments merely reflect his disagreement with Judge Brnovich's interpretation of the PI Order. Disagreements with rulings, the interpretation of those rulings, or compliance with those rulings, cannot form the basis for a recusal motion under 28 U.S.C. §§ 144 and 455. *See Studley*, 783 F.2d at 939; *F.J. Hanshaw Enters.*, 244 F.3d at 1145.

### D.    Falsified Document

Johnson's fourth argument for recusal is based on his assertion that a document lodged as Doc. 102 was altered before being filed as Doc. 104. (Doc. 332 at 8–9.) But the only "alteration" Johnson identifies is that Doc. 102 was printed and scanned as a PDF file, while Doc. 104 was electronically created as a PDF file. (*Id.*) In other words, Johnson does not suggest that there is any substantive difference between the two documents, only that the metadata suggests that they were created using different technologies and at different times. (*Id.*; *see also* Doc. 333 at 6–7.) Nonetheless, he claims that "the docket has been falsified." (Doc. 322 at 9.)

Even assuming Johnson's allegations are true, no reasonable person could reasonably question Judge Brnovich's impartiality under these circumstances. *Studley*, 783 F.2d at 939; *see also Holland*, 519 F.3d at 913 (noting that a reasonable person "is not someone who is hypersensitive or unduly suspicious, but rather is a well-informed, thoughtful observer" (cleaned up)). Johnson's allegations suggest only that the court clerk's office processed documents submitted by Early Warning in a different manner without in any way altering the substance of those documents. This does not raise a flag,

let alone a red one.  Johnson's fourth basis for recusal is meritless.

E.    **First Recusal Motion**

Johnson filed his First Recusal Motion on May 26, 2025.  (Doc. 150.)  On May 30, 2025, Judge Brnovich held a hearing on two other motions and, during that hearing, informed Johnson she was denying the First Recusal Motion and would provide a written ruling to follow.  (Doc. 161.)  On June 16, 2025, Judge Brnovich entered the written order denying the First Recusal Motion.  (Doc. 172.)

Johnson's fifth basis for recusal in his Second Recusal Motion relates to the denial of his First Recusal Motion.  (Doc. 332 at 9–11.)  He first takes issue with the timing of the written order, claiming that Judge Brnovich's explanation for the seventeen days that elapsed between the May 30 hearing and June 16 entry of the order—that she was out of office—was false because she entered orders in other cases during that period.  (*Id.* at 9, 14.)  He also complains about the timing of the written order vis-à-vis his June 16 notice of appeal.  (*Id.* at 9.)

Johnson's argument concerning the timing of the written order is unavailing.  There was no requirement that Judge Brnovich issue her written order at any specific time, and there is nothing irregular or improper about the timing of that order.  Furthermore, it appears that Johnson would have complained about the timing of the order no matter when it had been entered.  Indeed, in the Second Recusal Motion Johnson complains that Judge Brnovich issued one order—the PI Order—too quickly but now expresses consternation with a 17-day delay between when Judge Brnovich orally denied the First Recusal Motion and when she issued her formal written order.  No reasonable person would conclude that Judge Brnovich's impartiality might reasonably be questioned based on the timing of her written order.

Johnson also disputes the contents of the written order, arguing that the statements and citations contained are "false" and "fraudulent."  (*Id.* at 10–11.)  But again, a motion under 28 U.S.C. §§ 144 and 455 cannot be based on a prior adverse ruling.  *See Studley*, 783 F.2d at 939; *F.J. Hanshaw Enters.*, 244 F.3d at 1145.

### F.     Rulings Regarding the Attorney-Client Privilege

Johnson next argues that recusal is warranted based on Judge Brnovich's orders concerning the attorney-client privilege (Docs. 123, 126), because those orders were inconsistent and erroneous.  (Doc. 332 at 11–13.)  Johnson's argument is improper as a basis for recusal.  *See Studley*, 783 F.2d at 939; *F.J. Hanshaw Enters.*, 244 F.3d at 1145.[1] Furthermore, to the extent Johnson argues that Judge Brnovich's orders are evidence of a "Shadow Docket," (*see* Doc. 332 at 12 (alleging that one of the orders was "submitted off-docket for the Court's signature")), the Court rejects his argument for the reasons set forth in Section III(B) above.

### G.     Sanctions Order for Future Misconduct

In his seventh discernible argument for recusal, Johnson challenges Judge Brnovich's order requiring him to pay costs incurred by Early Warning in moving to seal any subsequent filing by Johnson containing Early Warning's privileged information, (Doc. 283), which Johnson argues violates his right to due process and reflects antagonism towards him.  (Doc. 332 at 13.)  Johnson's argument fails because, again, prior adverse rulings do not support recusal.  *See Studley*, 783 F.2d at 939; *F.J. Hanshaw Enters.*, 244 F.3d at 1145.

### H.     Percentage of Rulings Against Johnson

Johnson's eighth, and final, argument for recusal is that Judge Brnovich has ruled against him 32 times, and has ruled in his favor only once, exhibiting an "adverse ruling pattern with 1 in 130 million probability of random occurrence" and reflecting "**the reality of partiality.**"  (Doc. 332 at 2, 18; *see also id.* at 14.)  Johnson's argument fails because he incorrectly suggests that judicial decisions should reflect a random distribution of "wins and losses" between the parties.  Rather, decisions must be made based on an impartial application of the law to the facts.  Thus, even assuming the accuracy of his assertion that

---

[1]     In his Reply, Johnson requests the Court to review in camera the documents subject to the attorney-client privilege orders.  (Doc. 359 at 11.)  Because Judge Brnovich's prior rulings cannot form an appropriate basis for a recusal motion, the Court declines Johnson's request.

he has lost 32 of 33 decisions rendered by Judge Brnovich, there is nothing improper about such a win-loss rate absent evidence of an extrajudicial source of bias or partiality. No such evidence exists. Put another way, there is no evidence that Judge Brnovich did anything other than impartially apply the law to the facts of the case in rendering her prior decisions. And to the extent Johnson disagrees with those decisions, he may appeal. *See Studley*, 783 F.2d at 939; *F.J. Hanshaw Enters.*, 244 F.3d at 1145.

## IV.   CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** denying Defendant Warren Vurl Johnson's Second Recusal Motion (Doc. 332).

Dated this 17th day of March, 2026.

Honorable Sharad H. Desai
United States District Judge