WARREN VURL JOHNSON
warrenvjohnson@gmail.com
215 E 18th St
Lawrence, KS 66044

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| EARLY WARNING SERVICES, LLC<br><br>Plaintiffs,<br>v.<br><br>MR. WARREN V. JOHNSON;<br>BRANDON O'LOUGHLIN; P.A.Z.E.,<br>LLC<br><br>Defendants. | Case No.: CV24-01587-PHX-SMB<br><br>**DEFENDANT WARREN JOHNSON'S RESPONSE TO THE ORDER TO SHOW CAUSE (DOC. 372)** |

## DEFENDANT WARREN JOHNSON'S RESPONSE TO THE ORDER TO SHOW CAUSE (DOC. 372)

## I. INTRODUCTION: CONTEMPT AS AN INSTRUMENT OF CONCEALMENT

Plaintiff Early Warning Services (EWS) is asking this Court to weaponize its civil contempt powers to punish a former Senior IP Counsel for whistleblowing… again. Johnson's original termination was for protected activities under the pretext of violating company policy by emailing copies of his own property to himself (IP indexes) (Dkt 135 at Ex 5) months earlier, along with a "volume" of open-source research materials. (*Id.* at 6-8) Defendant has since obtained federal copyright registrations for the indexes EWS claims as trade secrets (**Exhibit 11**), establishing Defendant's ownership of the very works underlying the injunction. EWS cannot enforce an injunction compelling the return of Defendant's own copyrighted works.

- 1 -

The Court has ordered Defendant to show cause why he should not be incarcerated or sanctioned for his handling of specific documents, including the "Teams Chat." The answer is absolute and rooted in federal law: the materials EWS seeks to suppress under the guise of an injunction demonstrate EWS's active role in practices that are identical to the central focus of the Department of Justice's antitrust prosecution, and form part of separate whistleblower reports to the DOJ and SEC. Under the Crime-Fraud Exception, EWS cannot utilize an equitable injunction to compel the silence of a whistleblower or conceal evidence that maps onto an active DOJ lawsuit.

Proceeding with the scheduled April 22, 2026 hearing violates basic jurisdictional boundaries and due process guarantees. For the appellate record, Defendant submits this Response to chronologically detail the structural impossibility of a valid contempt proceeding when the foundational orders are jurisdictionally removed, legally unenforceable, no longer supported by the facts, and being used to shield antitrust violations from federal scrutiny. Also, thing s have changed.

**The DTSA Employment Exception Bars This Injunction.** Since the September 2025 hearing, EWS has fundamentally shifted its trade secret claims. EWS no longer claims the documents themselves as trade secrets — it now claims the "strategies and ideas underlying" those documents and policies. (**Exhibits 6 and 7.**) But Defendant is the person who created those strategies and ideas. Every policy, every training program, every innovation workflow that EWS now claims was built by Defendant during his nine years as Senior IP Counsel.[1] EWS has moved to seal the

---

[1] This is conclusively shown via the CLE presentations Defendant has provided (EWS moved to seal), the Defendant's 7 years of performance reviews he received directly from Cheney (EWS has sealed), the half a dozen training presentations Defendant has presented (EWS has moved to seal), and the Innovation Incentive program showing Defendant's personally devised trade secret and innovation submission program (EWS has sealed). While these are all sealed, they have not vanished. They still show the contemporaneous truth of how things were handled at EWS, and that truth contradicts EWS's claims at every corner.

very evidence proving this. (See **Exhibit 9**.) The Defend Trade Secrets Act expressly prohibits injunctions that "prevent a person from entering into an employment relationship, and that conditions placed on such employment shall be based on evidence of threatened misappropriation and not merely on the information the person knows." 18 U.S.C. § 1836(b)(3)(A)(i)(I). Defendant was terminated from his position at the University of Kansas due to this litigation. (Dkt. 308.) He is now seeking employment as a copyright and IP expert — the only field his career qualifies him for. EWS's reformulated trade secret claims now encompass the entirety of Defendant's professional knowledge and experience, which is precisely the outcome Congress prohibited. This Court cannot hold Defendant in contempt for failing to comply with an injunction that, as currently framed by Plaintiff's own discovery responses, violates federal statutory law.

## II. LEGAL JUSTIFICATION: THE CRIME-FRAUD EXCEPTION AND JUDICIAL ADMISSION

**A. The True Target of the Injunction: The "Teams Chat"** The objective of Plaintiff's multi-million-dollar litigation apparatus is evident from its initial pleadings*; and it isn't a few excel spreadsheets populated with publicly available information or "documents related to domains" EWS paid $20,000 for prior to this litigation*. In EWS's first two filings alone, the "Teams Chat" is referenced approximately 70 times. The immediate, aggressive motion to seal the Teams Chat reveals the true purpose of the December 2024 Injunction: it is a gag order designed to conceal specific documentary evidence from federal regulatory and public scrutiny.

**B. The Judicial Admission and the Contents of the "Teams Chat"** During the preliminary injunction hearing, the Court stated on the record that it had personally read the contents of the Teams Chat and determined the communications were protected by attorney-client privilege. (Dkt 75) This judicial admission is structurally fatal.

At that time neither Johnson or the Court was aware of the DOJ's activities: a complaint filed against Visa in September of 2024, just 3 months earlier. Because the Court read the Teams Chat, the Court is factually aware of its contents. As detailed in Defendant's Notice of Supplemental Authority (attached hereto as **Exhibit 5**), the Teams Chat contains the operational blueprints for EWS's "Paze" digital wallet, specifically including the integration of the Cybersource REST API (*Exhibit 5, Sub-Exhibit D*) and the architectural strategy for pre-provisioning over 150 million tokenized credentials (*Exhibit 5, Sub-Exhibits H and I*).

**C. Application of the Crime-Fraud Exception via Cheney and Shah Declarations.** The Cheney Declaration (Dkt 17) and the Shah Declaration (Dkt 28-1) both expressly discuss the contents of the chat being contractual and with a "valued partner," and that Johnson's legal advice was used in the creation of Paze. *Id.* The specific contractual architecture discussed in the Teams Chat directly maps onto the exact practices currently being prosecuted by the United States Department of Justice (DOJ) in its landmark antitrust lawsuit, *United States v. Visa Inc.*, No. 1:24-cv-07214 (S.D.N.Y.) (*Exhibit 5, Sub-Exhibit A*).

There is no privilege or trade secret protection for evidence of a crime. Under the Crime-Fraud Exception, a party cannot invoke confidentiality agreements or equitable injunctive relief to mask communications made in furtherance of an ongoing crime or civil fraud. *See United States v. Zolin*, 491 U.S. 554, 562-63 (1989). If the Court read the Teams Chat, the Court knows it contains the instrumentalities of the exact scheme the DOJ is currently dismantling.

## III. THE EVIDENTIARY VOID: EWS'S SUBVERSION OF PRIVILEGE STANDARDS

Through almost 400 docket entries, EWS has consistently failed to meet the rigorous, document-by-document burden of proof required to establish attorney-client privilege or trade secret protection on *any of their claimed information/documents.*

- 4 -

(See Exhibit 10) EWS does not perform the required element-by-element analysis. Instead, EWS has repeatedly asserted to the Court that the targeted documents "reflect" legal advice, "reflect" attorney mindset, or "reflect" EWS's proprietary data. To accomplish this they have mischaracterized precedent showing an appellate court may conclude that a document "reflects" privileged communications only *after* a comprehensive analysis proves the elements of privilege are met. By utilizing "reflects" as the premise rather than the conclusion, EWS has successfully convinced this Court to shield documents without ever producing the required supporting evidence.

EWS repeatedly invokes the same cluster of cases — *Leong*, *Cramton*, *Banc of California*, *Kidder Peabody* — to argue that because a filing summarizes or references allegedly privileged material, the filing itself must be sealed. This inverts what every one of those courts actually held. In *Leong*, Judge Kobayashi conducted a painstaking, document-by-document privilege analysis under the eight-part federal common law test and the two-step *Zolin* crime-fraud framework *before* concluding that specific passages of government briefs warranted redaction because they summarized communications that had *independently* been adjudicated as privileged. 2023 WL 8878946, at *5–41. The sealing was the *consequence* of a completed privilege determination — not a substitute for one. In *Cramton*, Judge Lanza held that privilege extends to the *substance* of a protected communication, but did so in the course of finding that the privilege holder had *waived* that protection through voluntary disclosure of an entire hard drive — a holding that cuts against EWS, not for it. 2021 WL 871539, at *2–3. And *Banc of California* held that disclosing summaries of privileged materials *destroyed* the privilege over the underlying documents — the precise opposite of the proposition EWS extracts from it. 2018 WL 6520418, at *1. What EWS is doing is simple: it strips the remedial conclusions from these opinions — the part where courts protect references to communications *already adjudicated as privileged* — and presents those conclusions as though they are self-

executing rules that require sealing whenever EWS *claims* a document touches something privileged. That is not the law. EWS cannot bootstrap privilege by pointing to its own characterization of a document; it must first independently establish that the underlying communication satisfies every element of the privilege. EWS skips that foundational step entirely, every time, and asks this Court to seal first and never ask questions at all.

And ~90% of the time the court has rubber stamped these deficient Motions to Seal; even reported Defendant to the bar for a "privileged" conversation that has since been decisively proven to be a public CLE presentation. In that particular case the information *was legal advice* (as all CLEs are) but was *not confidential* and therefore not privileged. However the Court reported Defendant to the bar for performing a public service to the legal community because EWS claim there was privilege.

## IV. UNCLEAN HANDS AND THE ENFORCEMENT OF A FRAUDULENT RECORD

The record demonstrates that EWS procured the underlying injunction through an orchestrated fraud upon the Court, submitting the Declaration of Tracy Cheney (Doc. 17), which is objectively contradicted by EWS's own contemporaneous records. (See Dkt. 135)

1. **The Fabricated "Conspiracy":** EWS's core narrative—that Defendant enlisted his "high school classmate" as a malicious front-man—is a complete fabrication. The record contains a formal letter from the General Counsel of Mesa Public Schools confirming that Defendant never attended Mesa High School (**Exhibit 1**). EWS and this court still contend this is a "contested fact."

2. **The "Unprofessional Employee" Pretext:** Ms. Cheney swore Defendant was an "unprofessional employee" whose escalating misconduct justified termination. EWS's own contemporaneous records prove this is perjury, specifically a November 22, 2022 email authored by Ms. Cheney awarding

- 6 -

Defendant a $50,000 spot bonus for "outstanding results" just weeks prior to his termination (**Exhibit 2**).

3. **The TTAB Concealment and Fraud on the Court** Plaintiff's procurement of the December 2024 Preliminary Injunction relied on an active, material omission that constitutes fraud on the court. To secure the injunction and sealing orders, Plaintiff repeatedly asserted to this Court that the "Teams Chat" was protected by attorney-client privilege.

Plaintiff actively concealed from this Court that two months prior, on October 1, 2024, the Trademark Trial and Appeal Board (TTAB) had evaluated these exact arguments and determined they were *not sufficient* invoke privilege. (**Exhibit 10**). Plaintiff was fully aware of this ruling during the December 4, 2024 preliminary injunction hearing, yet maintained its privilege assertions to this Court in a blatant breach of its duty of candor. (Dkt 75)

4. **Furthermore, Plaintiff Concealed The Objective Reality Of The Workplace Environment**: Plaintiff's own corporate policy explicitly states that communications on the Teams platform are not confidential and are treated as normal business communications, and the chat itself contained no privilege or confidentiality markings. By suppressing the TTAB's October ruling and the governing corporate policy, Plaintiff weaponized this Court's equitable powers to fraudulently overturn a federal administrative tribunal's evidentiary finding. The Court has been in possession of this TTAB evidence since Defendant filed his Motion for Reconsideration (Doc. 254) in October 2025, yet the Court has refused to adjudicate Plaintiff's fraud.

During the May 30, 2025 hearing, Defendant stated on the record his objective in filing to strike Cheney's fraudulent Declaration was to establish factual accuracy: *"All I want is a correct record."* In response, the Court issued an Order (Dkt. 183) containing no substantive adjudication of the contemporaneous documents proving perjury, and instead sanctioned Defendant for exposing the fraud.

## V. RETALIATORY ENFORCEMENT AND WHISTLEBLOWER SUPPRESSION

The timeline of the contempt proceedings objectively demonstrates retaliatory animus. On December 25, 2025, Defendant filed an Emergency Motion for a Court Reporter (Doc. 296), noting the need to protect "federal investigation communications" and "integrity of federal reporting channels." Defendant never stated he provided EWS's "confidential" information to regulators; he merely stated he submitted information.

Revealing a profound guilty conscience, EWS immediately conflated the DOJ communications with their own sealed materials. EWS weaponized the docket to unmask Defendant's federal whistleblower disclosures, filing an Emergency Motion demanding disclosure of the DOJ evidence (Doc. 299) on January 6, 2026, followed three days later by a Renewed Motion for Contempt Sanctions (Doc. 305).

The Court adopted this retaliatory framework by commanding Defendant to surrender "all digital electronic devices and media" for forensic imaging by EWS's vendor, without appointing a Special Master or establishing a taint team. (Dkt 70, enforced through Dkt 243) By enforcing a wholesale device turnover with no structural safeguards, the Court is granting Plaintiff—a corporate target of a federal antitrust investigation—unmediated access to a federal whistleblower's privileged DOJ communications.

## VI. THE SEPTEMBER 2025 ORDER: DEFIANCE OF THE MANDATE AND THE NON-BINDING "SHADOW" PROTOCOL

The Court's current Show Cause Order (Doc. 372) seeks to enforce the September 2025 Contempt Order (Doc. 243). However, the September 2025 Order is legally unenforceable because it actively defies the mandate of the Ninth Circuit Court of Appeals, relies on a procedurally invalid bait-and-switch, and attempts to enforce a non-binding forensic fishing expedition.

**A. Active Defiance of the Ninth Circuit Mandate** The Ninth Circuit's mandate established that any forensic examination must be narrowly tailored to target specific EWS documents. During the September 22, 2025 hearing, Plaintiff's counsel explicitly stated on the record that EWS was not conducting a targeted search, but intended to search for "everything." (Dkt 262, Ex. 3) Rather than enforcing the appellate mandate, the Court explicitly assented to Plaintiff's overreach, stating, "Yes." *Id.*

**B. The Unenforceable, "Non-Binding" Protocol** The Court is threatening Defendant with incarceration for failing to submit to a forensic protocol that explicitly disclaims any binding protective power. The Protocol states: *"While the Examiner is not required to perform any specific procedures beyond standard legal and forensic obligations, these steps are implemented to provide clarity..."* (Exhibit 11, not on record) By its own terms, the Protocol does not strictly bind the Examiner, contains no mandate requiring the permanent destruction of Defendant's non-responsive personal data, and offers zero enforceable privacy protections. *Id.*

**C. The 350-Term Whistleblower Fishing Expedition** During the September hearings, Plaintiff justified the use of 350 search terms by admitting on the record that they "do not know" what Defendant allegedly took and that was the reason for the "broad queries." (Dkt 262, Ex. 3) The list constitutes an unconstitutional dragnet designed to capture Defendant's personal communications and federal whistleblower files, utilizing universally common terms such as: "fraud", "conspiracy", "steal", "greed", "confidential", "bank", "chat", "metadata", and "mesa".

**D. The Procedural Bait-and-Switch** At the conclusion of the September 22 hearing, the Court explicitly promised Defendant on the record that he would be given the opportunity to argue his objections to the proposed protective order during the September 24 hearing. *Id.* During the September 24 hearing, the Court

executed a procedural bait-and-switch, abandoning the promised protective order discussion and ambushing Defendant by pivoting entirely to a complex forensic protocol delivered late the night before. This constitutes a severe deprivation of the notice and hearing requirements of the Fifth Amendment. (*Id.* at Ex. 4)

## VII. RULE 65(d) OVERBREADTH AND THE EXPRESS DISCLAIMER OF DOCUMENTS

To hold Defendant in civil contempt, the underlying injunction must be legally valid. Under Federal Rule of Civil Procedure 65(d), an injunction must "state its terms specifically" and "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." The December 2024 Injunction fails this standard on its face, rendering it void for vagueness.

**A. Facially Void for Vagueness** The literal language of the injunction commands Defendant to surrender "all digital electronic devices and media... that *may include* EWS's Confidential Information." (Dkt 75) This language is unconstitutionally vague and severely overbroad. Because digital data can be stored on virtually any modern device—from a smartwatch to a home appliance—a mandate targeting any device that *"may"* contain information places Defendant under an indefinite, limitless threat of search and seizure. It provides Plaintiff with infinite pretext to demand forensic imaging of Defendant's personal property for the rest of his life, fundamentally violating the specificity requirement of Rule 65(d).

**B. The Express Discovery Disclaimer** This lack of specificity is further compounded by Plaintiff's own admissions. Plaintiff has explicitly disclaimed the physical documents it initially accused Defendant of misappropriating. In Plaintiff's Responses to Defendant's First Set of Written Discovery (**Exhibits 6 and 7**), Plaintiff expressly states that it does not claim the documents themselves as its trade secrets. An injunction targeting devices that "may contain" specific documents cannot be enforced via contempt when the Plaintiff actively disclaims those exact documents as trade secrets.

## VIII. WEAPONIZATION OF THE SEALING DOCKET TO SUPPRESS EVIDENCE OF PERJURY

The current contempt proceeding is Plaintiff's final mechanism to permanently bury a collapsed, fraudulent narrative under the threat of incarceration. Plaintiff has systematically weaponized the Court's sealing docket to suppress the evidence of its own perjury, a practice the Court has actively facilitated through structural blanket orders. (See Dkt 10)

**A. Abdication of the "Compelling Reasons" Standard and Document 283.** Under binding Ninth Circuit precedent, a court must articulate specific, factual "compelling reasons" to seal public records. *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). The Court has abdicated this duty, issuing an Order to Seal (Doc. 283) that granted Plaintiff a blanket license to file sealing motions without facing strict judicial scrutiny (**Exhibit 8**).

**B. The "Nested Sealing" Cover-Up** The docket objectively reflects that documents are sealed because they expose Plaintiff's false statements (**Exhibit 9**). When Defendant files uncontroverted evidence—such as Plaintiff's own public CLE presentations or internal policies Defendant authored—Plaintiff moves to seal them. When Defendant files formal Oppositions pointing out the absurdity of sealing public documents, Plaintiff moves to seal *the Oppositions themselves*. The Court has routinely rubber-stamped these "nested" sealing requests, acting as a vault to hide Plaintiff's bad faith.

**C. Defective Notice and the "Kitchen Sink" Show Cause Order** The Fifth Amendment requires that a defendant receive clear, specific, and unambiguous notice of alleged contempt violations. The Court's Order to Show Cause (Doc. 372) structurally fails this standard. Rather than identifying a specific statutory violation, the Order operates as a scattered, "kitchen sink" grievance list, citing Defendant's lawful, docketed oppositions to unconstitutional sealing requests as a basis for holding him in civil contempt.

**IX. CONCLUSION AND PRAYER FOR RELIEF** Proceeding with the scheduled April 22, 2026 Show Cause Hearing constitutes a severe deprivation of due process and a per se abuse of discretion for the following reasons:

1. **Lack of Jurisdiction:** The Court is divested of jurisdiction to enforce the September 2025 Order (Doc. 243) due to the actively pending appeal before the Ninth Circuit.

2. **The Crime-Fraud Bar:** The Court cannot hold Defendant in contempt for lawful disclosures regarding the "Teams Chat" that expose ongoing Sherman Act violations.

3. **Unclean Hands:** The Court cannot enforce an equitable injunction built on a fabricated narrative objectively proven to be perjurious (**Exhibits 1 and 2**).

4. **Denial of Due Process:** The Court cannot advance punitive contempt proceedings while simultaneously freezing the adjudication of dispositive challenges to the underlying injunction (Docs. 254 and 308).

**WHEREFORE**, Defendant Warren Johnson respectfully requests that this Court Vacate the March 19, 2026 Order to Show Cause (Doc. 372), Cancel the April 22, 2026 hearing, and Adjudicate the long-pending dispositive motions (Docs. 254 and 308) on the merits.

Respectfully submitted,

Warren V Johnson

**Warren V. Johnson**
215 E 18th St Lawrence, KS 66044
warrenvjohnson@gmail.com

**EXHIBIT APPENDIX**

- **Exhibit 1:** Letter from Mesa Public Schools General Counsel (April 29, 2025).

- **Exhibit 2:** Email from Tracy Cheney (November 22, 2022) awarding Defendant a $50,000 spot bonus for "outstanding results".

- **Exhibit 3:** Public CLE Presentation: *Brand Protection Strategies* (April 4, 2019).

- **Exhibit 4:** Textual Analysis of Plaintiff's pervasive substitution of the word "strategy".

- **Exhibit 5:** Defendant's Notice of Supplemental Authority and Evidence in Support of Crime-Fraud Exception.
  - *Sub-Exhibit A:* Excerpts from DOJ Complaint, *United States v. Visa Inc.*
  - *Sub-Exhibit D:* Paze REST API Integration Guide (Cybersource).
  - *Sub-Exhibits H & I:* Transcripts and Reports detailing pre-provisioning of 150 Million Credentials.

- **Exhibit 6:** Plaintiff's Objections and Responses to Defendant's First Set of Written Discovery (RFIs), expressly disclaiming documents as trade secrets.

- **Exhibit 7:** Plaintiff's Objections and Responses to Defendant's First Set of Written Discovery (RFAs), contradicting internal IP policies.

- **Exhibit 8:** Order to Seal (Doc. 283), demonstrating the Court's unlawful blanket authorization.

- **Exhibit 9:** Comprehensive Sealing Data Analysis detailing the Court's failure to apply the required "compelling reasons" standard.

- **Exhibit 10:** TTAB Rulings (Opposition 91291526 and Cancellation 92085110 proceedings) from October 1, 2024, both expressly holding EWS did not meet the requirements to find the Teams Chat privileged.

- **Exhibit 11:** Defendant's valid copyright registrations covering the source code underlying the Indexes EWS uses without authorization to this day.

**Certificate of Service**

I, Warren V. Johnson, hereby certify that on April 11, 2026, I electronically filed the foregoing DEFENDANT WARREN JOHNSON'S RESPONSE TO THE ORDER TO SHOW CAUSE (DOC. 372) with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Respectfully submitted,

  /s/Warren V Johnson/

Warren Johnson
215 E 18th St
Lawrence, KS 66044
warrenvjohnson@gmail.com