WARREN VURL JOHNSON
warrenvjohnson@gmail.com
215 E 18th St
Lawrence, KS 66044


**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**


EARLY WARNING SERVICES, LLC
   Plaintiff,
v.                        Case No.: CV24-01587-PHX-SMB
MR. WARREN V. JOHNSON;
BRANDON O'LOUGHLIN; P.A.Z.E.,
LLC
   Defendants.


**DEFENDANT WARREN JOHNSON'S OPPOSITION TO**
**PLAINTIFF'S EMERGENCY MOTION TO SEAL [DKT. 379]**


     EWS has filed its twenty-third Motion to Seal in this case. (Dkt. 379.) This time, EWS seeks to seal Defendant's Response to the Order to Show Cause (Dkt. 377) and the Notice of Supplemental Authority attached as an exhibit (Dkt. 377-2). EWS's sole legal argument is the same *Leong/Cramton/Banc of California* string cite it has deployed in every prior motion to seal. As Defendant has repeatedly demonstrated, that authority does not stand for the proposition EWS extracts from it.

     But this motion reveals something more fundamental than a recycled legal argument. EWS's entire theory is that Defendant used his "knowledge of EWS's privileged information to draw otherwise nonexistent, or attenuated connections among public data." (Dkt. 379 at 4.) Read that again. EWS concedes that every source Defendant cited is public. The DOJ complaint is on the DOJ's website and in many articles; strongly correlating with EWS's own FAQs. The Cybersource API integration guide is published documentation.

EWS's position is that publicly available information becomes privileged when a former employee looks at it. That is not a recognized theory of privilege in any jurisdiction. If it were, every former in-house counsel in America would be permanently gagged from reading publicly available information about their former employer and drawing conclusions from it. EWS cites no authority for this proposition because none exists.

EWS does not need a former employee to connect these dots. Anyone with an internet connection can do it, starting from EWS's own public contract. The Paze Service Agreement — published on paze.com — tells every customer that Paze "use[s] a service provider to exchange your Payment Credentials for a unique alternate card number ('Tokenized Payment Credentials')." A Google search for that exact phrase — "paze tokenized payment" — drawn directly from EWS's own public contractual language, returns the Paze Service Agreement itself, the Cybersource Developer Center, and Google's AI Overview summarizing the entire tokenization system in plain English. First page results every time. (Figure 1; see also Exhibit A (showing the same results from the queries "paze API" and "paze token").)

Figure 1 illustrates the interconnected web of public information surrounding Paze's tokenization infrastructure. Each node is publicly accessible: (1) EWS's own Paze Service Agreement, which introduces the term "Tokenized Payment Credentials"; (2) the first-page Google search results for that exact phrase; (3) the Paze REST API documentation, which is hosted on Cybersource's public developer portal; (4) Cybersource's own branding, which identifies it as "A Visa Solution"; and (5) Paze's public marketing stating it can be used "at any participating online merchant." Starting at any node leads to every other node. No insider knowledge is required. No reference to the Teams Chat is required. The connections are on the public internet.

Figure 1. All paths begin and end with public information, and connections are clear and undeniable

The Paze REST API's own documented contents — including routing code "029" for "Cybersource, A Visa Solution" and the publicly advertised figure of 150 million pre-provisioned tokenized credentials — map directly onto the practices the Department of Justice is prosecuting in United States v. Visa Inc., No. 1:24-cv-07214 (S.D.N.Y.). The DOJ complaint alleges Visa's "relentless strategy of locking up entities that control routing decisions" (Compl. ¶ 98) and specifically identifies Visa's fear of "fintech firms... that compete... with Visa's lucrative card-not-present debit business." Paze is a card-not-present solution with pre-provisioned Visa-linked tokens routed through a Visa-owned processor. These connections are not drawn from privileged information. They are drawn from documents every one of which is published on a public website by EWS, Visa, Cybersource, or the United States government.

Starting from any point in the interconnected web shown in Figure 1 will lead any user conclude that Paze has very strong connections to the Visa Antitrust allegations. Making this discovery even more logical is the fact that "Paze tokenized credential" and "Paze API" Google searches also present the same Cybersource documentation, along with Paze's own public website explaining how tokenization works. *Any user* starting at any point is inevitably lead to the same conclusion, no insider knowledge or assistance is required.

Three of the most likely Google queries, derived from EWS's Service Agreement, all show "Paze" tokenized by a "visa solution." First page results every time. This is the "privileged" information EWS claims only Defendant could identify. The results lead you directly to this: the clear connection between Visa and Paze when it comes to tokenization of debit cards.

The 150 million credential figure comes from public press releases and financial filings. EWS's own Service Agreement on paze.com publicly describes the tokenized payment credential exchange.

EWS's theory that public information becomes privileged because a former employee analyzed it has no basis in any authority EWS cites, any authority that exists, or common sense.

EWS also relies on this Court's prior characterization of the Teams Chat as "undoubtedly privileged." (Dkt. 70 at 10.) But that determination was made before the TTAB evaluated the same privilege arguments and twice found them insufficient, before the DOJ filed its antitrust complaint revealing the industry practices at issue, and before EWS shifted its trade secret claims from the documents themselves to the "strategies and ideas underlying" them. Defendant's Notice of Supplemental Authority presents these post-hearing developments and applies the crime-fraud exception framework under *United States v. Zolin*, 491 U.S. 554 (1989), using exclusively public evidence. That is not a disclosure of privileged information. That is legal argument.

Finally, EWS argues that the Court's July 2025 denial of Defendant's antitrust counterclaim (Dkt. 200) forecloses the crime-fraud exception. It does not. That order addressed whether Defendant stated a Sherman Act claim sufficient to survive as a counterclaim. Whether the crime-fraud exception vitiates attorney-client privilege is a separate legal question governed by a different standard under *Zolin*. Failing to plead an antitrust cause of action does not immunize privileged communications from the crime-fraud exception, and EWS cites no authority holding otherwise.

The Motion to Seal should be denied.


Respectfully submitted,


/s/ Warren V. Johnson

Warren V. Johnson, Pro Se
215 E 18th St
Lawrence, KS 66044
warrenvjohnson@gmail.com

## CERTIFICATE OF SERVICE

I, Warren V. Johnson, hereby certify that on __April 16, 2026___, I electronically filed the foregoing DEFENDANT WARREN JOHNSON'S OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION TO SEAL [DKT. 379] with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Warren V. Johnson

Warren V. Johnson
215 E 18th St
Lawrence, KS 66044
warrenvjohnson@gmail.com