WARREN VURL JOHNSON
warrenvjohnson@gmail.com
215 E 18th St
Lawrence, KS 66044

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| EARLY WARNING SERVICES, LLC | Case No.: CV24-01587-PHX-SMB |
|---|---|
| Plaintiffs,<br>v.<br><br>MR. WARREN V. JOHNSON;<br>BRANDON O'LOUGHLIN; P.A.Z.E.,<br>LLC<br><br>Defendants. | **DEFENDANT WARREN JOHNSON'S EMERGENCY MOTION**<br>**TO SET ASIDE DEFAULT PURSUANT TO**<br>**FEDERAL RULE OF CIVIL PROCEDURE 55(c)** |

### DECLARATION OF WARREN V. JOHNSON IN SUPPORT OF EMERGENCY MOTION TO SET ASIDE DEFAULT

I, Warren V. Johnson, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

**Background and Personal Circumstances**

1. I am the Defendant and Counter-Claimant in this action. I am an attorney admitted to the Arizona State Bar. I make this declaration on personal knowledge.

2. I reside at 215 E 18th St, Lawrence, Kansas 66044, approximately 1,200 miles from the Phoenix courthouse.

3. I am unemployed. The preliminary injunction entered December 4, 2024 (Dkt. 70) has prevented me from practicing my profession. I have no regular income.

4. Since September 27, 2025, I have been subject to a contempt fine of $1,000 per day (Dkt.243).By April 22, 2026, those fines exceeded $207,000. Together

with my unemployment, this has eliminated my capacity to afford travel, lodging for an in-person hearing, or to live comfortably.

5. Because of the Court's filing freeze, I emailed the deputy clerk before the April 22, 2026 hearing to explain my inability to appear in person and requested remote video or telephone participation. A true and correct copy of that email chain is Exhibit A. The Court summarily denied the request in minute entry Dkt 378 and promised that my Response to the Show Cause Hearing would be discussed at the hearing. The hearing lasted 4 minutes.

6. My failure to appear was not willful. I have actively litigated this case for two years, making hundreds of filings. I do not intend to abandon this litigation.

**Pending Dispositive Motions**

7. I have four substantive, potentially case-dispositive motions pending before this Court, all fully briefed: a Motion for Summary Judgment (filed ~9 months ago), a Rule 60(b) Motion, a Crime-Fraud Exception Motion (Dkt. 272), and a Motion to Disqualify Plaintiff's Counsel.

**The Mesa High School Fabrication**

8. Throughout this lawsuit, Plaintiff has alleged that I conspired with a "high school classmate," Brandon O'Loughlin, from Mesa High School. I did not attend Mesa High School. Attached as Exhibit B is a true and correct letter from the General Counsel of Mesa Public Schools confirming that I never attended any school in the Mesa district.

**The Indexes Are My Personal Work Product and Were Never EWS Trade Secrets**

9. Prior to my employment at EWS I created the Index templates to help me perform my work efficiently and effectively. As EWS's Senior Intellectual Property Counsel, I personally maintained the my Indexes and the SharePoint database systems for IP. The Complaint refers to my Indexes as trade secret documents I stole from EWS (Concept Brief Index, Invention Disclosure Index,

Patent Index, Trademark Index, Domain Name Index, and a master matter list tracking every matter I handled). My 2014 performance review, signed by General Counsel Tracy Cheney, confirms that I established my Indexing docket in the initial months of my employment. The 2019 focal review, also signed by Cheney, describes me as a "one man show" for intellectual property at EWS. (Dkt 24-2, Exhibit 12 and 7 [SEALED])

10. I hold United States Copyright Registrations TXu 2-519-256 and TXu 2-520-557 in the source code underlying the Indexes. The Complaint alleges only that I emailed these materials to my personal account. I did not disclose them or information contained therein to Brandon O'Loughlin, P.A.Z.E. LLC, or any third party.

11. During my tenure, I designed and oversaw EWS's internal trade secret intake procedure under the Innovation Incentive Policy. That procedure required formal harvesting, approval, notification to a committee, and a mandatory $800 "Stealth Award" to the inventor. It also required a "Trade Secret Procedures" meeting with myself and the inventor's entire department to establish protective measures. The Indexes—including the "list of every matter on which Johnson was working"—were never submitted to that process, never approved, never resulted in any Stealth Award, and never triggered a meeting. They were never treated as trade secrets under EWS's own rules.

**Regarding the Shah Declaration**

12. Shah's declaration (Dkt. 27-1) is wrong on every material point. (1) Populating the indexes was never anyone's job duty. They were my personal tools, created in 2014, and I hold copyright registrations for them. (2) Shah says "much of it is confidential." In fact, 92.86% of the data was public USPTO docketing information. (3) Even if some titles "reflect trade secrets," Shah never identifies which ones — failing *InteliClear*, 978 F.3d 1327. (4) The SharePoint password Shah calls a security measure was my own design, giving "read only" access to

anyone in the company to prevent edits, not restrict viewing. It was transparency, not secrecy.

13. Shah also claims invention titles "can disclose aspects of the underlying inventions." Dkt. 27-1 ¶ 5. Inventors created those titles themselves, wrote them on the disclosure form, and the same titles appeared in presentations and reports shown broadly internally. No restricted access. No confidentiality protocol. No reasonable measures of any kind.

**The Brand Strategy Was Publicly Taught**

14. On October 11, 2019, I co-presented a public Continuing Legal Education program titled "Brand Protection" with George C. Chen of Bryan Cave Leighton Paisner LLP. Mr. Chen is counsel of record for EWS in this case. The CLE slides—which I co-authored—teach that brand owners should maintain a supply of allowed intent-to-use trademark applications, register related domain names, and develop a domain strategy including typosquatting and new top-level domains. This presentation discloses the exact "brand protection strategies" EWS now calls trade secrets. There was no "secret" brand protection strategy at EWS during my tenure. I took part in drafting the branding guidelines and performed all brand protection for Zelle®.

**The Teams Chat Has Been Public Since July 2023**

15. The Microsoft Teams conversation that Plaintiff calls a trade secret was attached as an exhibit to my wrongful termination complaint filed in Arizona Superior Court in July 2023. I served that complaint on EWS at that time. Co-defendant O'Loughlin later informed EWS of the exact Wayback Machine URL where the chat was archived. EWS did not move to seal the state court record until July 2024. The Chat has therefore been publicly accessible with EWS's knowledge since at least July 2023. Being notified again in June 2024, and again not taking action to have it removed from the Wayback Machine.

**Industry Standard Domain Practices**

16. I conducted an empirical study of 12,088 domain name registrations associated with 2,938 Class 036 financial services trademark applications. That study shows that 55.4% of industry participants register brand-plus-descriptive-term domain names—the very practice EWS calls a secret. The FDIC similarly instructs financial institutions to acquire defensive domains, and EWS's own domain registrar, CSC, recommends the practice. ([SEALED] Dkt 309)

**EWS's Discovery Admissions**

17. In sworn interrogatory responses, EWS stated: "For the avoidance of doubt, EWS does not claim trade secret protection in the form of any of the aforementioned documents, but rather the underlying brand protection and business strategies reduced to writing within those documents." The "aforementioned documents" include the Indexes, the trademark and domain documents, the contracts, and the Teams Chat. EWS has thus disclaimed trade secret protection in the documents themselves.

18. When asked to identify the persons responsible for designating trade secrets at EWS between September 8, 2014 and January 19, 2023, EWS left the answer blank. The answer is myself. When asked to identify any written designation of the asserted trade secrets, EWS pointed only to a 2017 clause referencing "the patent database"—which I later superseded and which does not cover the non-patent indexes, the Teams Chat, or the strategies.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on ___April 30_____, 2026, at Lawrence, Kansas.


/s/ Warren V. Johnson

**Warren V. Johnson**

*Defendant/Counter-Claimant, Pro Se*

## Certificate of Service

I, Warren V. Johnson, hereby certify that on April 30, 2026, I electronically filed the foregoing DECLARATION OF WARREN V. JOHNSON IN SUPPORT OF EMERGENCY MOTION TO SET ASIDE DEFAULT with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.


Respectfully submitted,


　/s/Warren V Johnson/


Warren Johnson
215 E 18th St
Lawrence, KS 66044
warrenvjohnson@gmail.com