# EXHIBIT A

# JUDICIAL NOTICE APPEALS COURT FILING

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

**Form 27. Motion for** | Motion for Leave to File Supplemental Authority |

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form27instructions.pdf*

**9th Cir. Case Number(s)** | 25-6052 |

**Case Name** | Early Warning Services, LLC v. Warren Vurl Johnson |

**Lower Court or Agency Case Number** | 2:24-cv-01587-SMB |

What is your name? | Warren V Johnson |

1. **What** do you want the court to do?

Grant leave to file the attached supplemental submission and take judicial notice under Federal Rule of Evidence 201 of public Internet Archive records, sworn admissions on the district court docket, and related court orders, all as identified in the attached motion.

2. **Why** should the court do this? Be specific. Include all relevant facts and law that would persuade the court to grant your request. *(Attach additional pages as necessary. Your motion may not be longer than 20 pages.)*

The attached motion explains the grounds in full. In summary: the judicially noticeable material—public Internet Archive records and sworn admissions on the district court docket—is dispositive of the reasonable-measures issue in Section I of the Opening Brief and reinforces the Taggart and mandate-rule issues in Sections I.C, II.A, and II.E. Appellant did not discover the relevant Wayback captures until three days after filing the Opening Brief and brings this motion at the earliest practicable date.

Your mailing address:

215 18th St

City | Lawrence | State | KS | Zip Code | 66044 |

Prisoner Inmate or A Number (if applicable) |         |

**Signature** | s/Warren V Johnson | **Date** | May 6, 2026 |

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 27** | *New 12/01/2018*

No. 25-6052

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

EARLY WARNING SERVICES, LLC,
*Plaintiff-Counter Defendant-Appellee,*

v.

WARREN VURL JOHNSON,
*Defendant-Counter Plaintiff-Appellant.*

On Appeal from the United States District Court for the District of Arizona,
Phoenix Division

No. 2:24-cv-01587-SMB

Hon. Susan M. Brnovich

---

**APPELLANT'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL
AUTHORITY AND REQUEST FOR JUDICIAL NOTICE OF
PUBLIC INTERNET ARCHIVE RECORDS**

---

Warren Vurl Johnson
215 E 18th St
Lawrence, KS 66044
(208) 371-1686
warrenvjohnson@gmail.com
*Appellant, Pro Se*

1

## INTRODUCTION

EWS has spent the last twenty-two months treating a single Microsoft Teams chat as two contradictory things at once: a publicly archived document it placed on the federal docket and re-cited at least three times to obtain injunctive relief, default judgments, and exemplary damages—and a confidential trade secret entitled to seal orders, contempt sanctions, bar-referral, and prospective fee-shifting against Appellant. Both postures cannot be true. Under binding Ninth Circuit law, only one survives.

Appellant moves under Federal Rule of Evidence 201 for judicial notice of public Internet Archive records and related sworn admissions on the district court docket. The material is dispositive of the reasonable-measures issue in Section I of the Opening Brief and reinforces the *Taggart* and mandate-rule issues in Sections I.C, II.A, and II.E. Appellant did not discover the relevant Wayback captures until April 27, 2026, three days after filing the Opening Brief.

The submission rests on five record points, all judicially noticeable: (i) the Microsoft Teams chat at the heart of EWS's claim has been continuously archived on the Wayback Machine since April 7, 2024 (the "072456" and "073816" Captures); (ii) EWS placed the 072456 Capture URL on the federal record as Exhibit C to Exhibit 14 of the Cheney Declaration (Dkt. 17-5), and re-cited that exhibit in Dkts. 102 and 229; (iii) Cheney Declaration paragraph 43—EWS's sworn

2

enumeration of takedown channels—names X, LinkedIn, and the ISP for paze.website, and excludes the Internet Archive; (iv) the injunction order found "it is unlikely that EWS will prove [the Teams Chat's] status as a trade secret" (Dkt. 70 at 10–11) and that the alleged harm was "too speculative to support finding irreparable harm in the context of trade secrets" (*id.* at 14 n.6); and (v) on the same record, EWS has filed at least fourteen motions to seal directed at "reflections" and "summaries" of the chat, the district court has entered at least seven sealing orders, the court threatened bar referral at Appellant's first appearance, and on November 20, 2025 the court entered a prospective fee-shifting order requiring Appellant to pay EWS's fees for any future motion to seal (Dkt. 283 at 2).

As of May 4, 2026, EWS conceded in writing that it had still not contacted the Internet Archive, and announced for the first time that it "will request the Internet Archive to remove the archived Website from public view." State-court Opp. at 6.[1] That admission resolves the reasonable-measures inquiry. Holders of trade-secret and privilege protections do not get twenty-one months and a litigation prompt before sending a takedown email.

## I. RELIEF REQUESTED

1. Grant leave to file this supplemental submission;

---

[1] Real Party in Interest Early Warning Services, LLC's Opposition to Petitioner's Emergency Motion for Expedited Ruling at 6, *Johnson v. Ponce*, No. 1 CA-SA 26-0109 (Ariz. Ct. App. filed May 4, 2026).

2. Take judicial notice under Federal Rule of Evidence 201(b)(2) and (c)(2) of: (a) the 072456 and 073816 Captures of paze.website/RECENT-NEWS/ on the Wayback Machine; (b) EWS's placement of the 072456 Capture URL on the federal record (Cheney Decl. Ex. 14, Ex. C; Dkts. 102, 229); (c) Cheney Declaration paragraph 43; (d) the injunction order's findings as to the Teams chat (Dkt. 70 at 10–11, 14 n.6, 16–17); and (e) the sealing orders, bar-referral admonition, and November 20, 2025 prospective fee-shifting order (Dkt. 283); and

3. Consider the noticed material in connection with Sections I and II of the Opening Brief.

## II. THE MATERIAL IS PROPERLY THE SUBJECT OF JUDICIAL NOTICE

Rule 201(b) authorizes judicial notice of facts "not subject to reasonable dispute" from sources "whose accuracy cannot reasonably be questioned," and the Court "must" take notice when a party requests it. Fed. R. Evid. 201(c)(2); *see* Fed. R. Evid. 201(d). The Ninth Circuit takes judicial notice of public website contents, *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010), and federal courts routinely notice Wayback Machine captures. *See, e.g.*, *Marten Transp., Ltd. v. PlattForm Advert., Inc.*, 184 F. Supp. 3d 1006, 1011 (D. Kan. 2016); *Pohl v. MH Sub I, LLC*, 332 F.R.D. 713, 716 (N.D. Fla. 2019). EWS authenticated the 072456 Capture URL by filing it as Exhibit C to Exhibit 14 of the Cheney Declaration;

4

having placed both the URL and the printout on the federal record under oath, EWS cannot now contend the URL's contents are subject to reasonable dispute.

## III. THE NOTICED MATERIAL IS DISPOSITIVE (OPENING BR. §§ I.B, I.C, II.A, II.E)

The judicially noticeable material defeats the injunction's predicate as to each ground the district court invoked: confidentiality (the basis for including the Teams chat) and trade-secret reasonable measures (the basis for the broader claim).

### A. The Traditional Rule: Confidentiality Maintained, or Privilege Lost.

The attorney-client privilege is not a strategic asset that the holder may deploy when convenient and abandon when inconvenient. The rule originates with Justice Holmes:

[T]he privacy for the sake of which the privilege was created was gone by the appellant's own consent, and the privilege does not remain in such circumstances for the mere sake of giving the client an additional weapon to use or not at his choice. *Green v. Crapo*, 181 Mass. 55, 62 N.E. 956, 959 (1902) (Holmes, J.).

The D.C. Circuit adopted Holmes's formulation in *Permian Corp. v. United States*, 665 F.2d 1214 (D.C. Cir. 1981), holding that "the attorney-client privilege should be available only at the traditional price: a litigant who wishes to assert confidentiality must maintain genuine confidentiality." *Id.* at 1222. The Ninth Circuit adopted the *Permian* framework in *United States v. de la Jara*, 973 F.2d 746, 749–50 (9th Cir. 1992). *Permian* itself states the rule that resolves this case:

The client cannot be permitted to pick and choose among his opponents, waiving the privilege for some and resurrecting the claim of confidentiality to

5

obstruct others, or to invoke the privilege as to communications whose confidentiality he has already compromised for his own benefit. *Id.* 665 F.2d at 1221.

EWS placed the public archival URL of the Teams chat on the federal docket as evidentiary support for its claims against P.A.Z.E., and procured a preliminary injunction, a default judgment carrying $45,900.40 in exemplary damages, and permanent injunctive relief on a record that included the Wayback URL on its face. Having compromised the chat's confidentiality "for [its] own benefit," EWS may not now "resurrect[] the claim of confidentiality to obstruct" Appellant. The question is not whether EWS impliedly waived under *Hearn*—Appellant does not invoke *Hearn* and the Court need not reach it. The question is whether contemporaneous confidentiality can be established on a record where the document has been publicly archived for over two years with EWS's knowledge and inaction. It cannot. *In re Pacific Pictures Corp.*, 679 F.3d 1121, 1126–27 (9th Cir. 2012). The injunction order on which the chat's inclusion rests contains no analysis of confidentiality and no finding that the chat was treated as confidential at any time relevant to this litigation. (Dkt. 70 at 10–11, 14 n.6.)

### B. EWS's May 4, 2026 Filing Concedes the Operative Element of Waiver.

On May 4, 2026, in a parallel state proceeding, EWS made a written admission that resolves the reasonable-measures inquiry on its face:

EWS has a duty to safeguard its privileged information and, accordingly, will request the Internet Archive to remove the archived Website from public view

6

barring a contrary order from this Court. EWS's Opp'n to Emergency Mot. at 6, *Johnson v. Ponce*, No. 1 CA-SA 26-0109

The two halves of that sentence are mutually destructive. **The first half** is correct: that is precisely the duty Rule 502(b)(3) and *de la Jara* impose. **The second half** is the admission of failure. EWS does not contend it was unable to contact the Archive; it simply failed to do so. EWS has, in its own words, conceded the operative element of waiver.

The admission confirms three things: contacting the Archive was the correct, necessary, and available step; EWS had not taken that step at any time prior to May 4, 2026—twenty-one months after EWS itself filed the Wayback URL on the federal docket on July 23, 2024; and the future-tense framing, made only after Appellant raised the issue, demonstrates that the takedown mechanism was always available and was never used. Waiting twenty-one months to send a standard takedown notice is not "reasonable diligence," not "prompt," and not "reasonably designed to protect and preserve the privilege." *De la Jara*, 973 F.2d at 749.

### C. Three Independent Failure Periods Establish Forfeiture, and Every Reported Decision Confirms the Result.

EWS's only conceivable response—that the December 4, 2024 preliminary injunction discharged its duty by ordering P.A.Z.E. to remove the content—assumes EWS's duty did not begin until December 4, 2024. It did. Three distinct periods of

inaction, each running with EWS's actual notice and each independently fatal, predate or extend beyond the injunction:

**Period One:** June 17, 2024 to December 4, 2024—five and a half months between EWS's actual notice of the TTAB filing identifying the Wayback URL and the preliminary injunction.

**Period Two:** December 4, 2024 to July 25, 2025—while the injunction was in effect, EWS conducted no compliance verification, never checked the Wayback URL, and never contacted the Internet Archive.

**Period Three:** July 25, 2025 to May 4, 2026—after default judgment, nine months passed before Appellant's motion forced EWS to promise, for the first time, to contact the Internet Archive.

EWS's framing of the admission compounds the problem. EWS states it "just learned, thanks to [Appellant's] Motion, [that] P.A.Z.E. failed to comply" with the injunction. EWS's Opp'n to Emergency Mot. at 3, *Johnson v. Ponce*, No. 1 CA-SA 26-0109. That "just learned" framing is itself an admission of failure to monitor: EWS performed no compliance verification on its own injunction—against a known, defaulting defendant—for sixteen months.

The Ninth Circuit's standard is unforgiving. In *de la Jara*, a criminal defendant under arrest, with a public defender, took no steps for six months to recover an attorney letter seized by armed federal agents. The Ninth Circuit held the

8

privilege waived. 973 F.2d at 749–50. EWS's position is materially worse: a sophisticated financial institution represented by three national IP firms, presented with a public republication on a website whose URL EWS itself filed under oath, with a single-email remediation channel, delayed twenty-one months. Every reported Rule 502(b)(3) decision finds waiver on shorter delays:

| Delay | Case | Result |
| --- | --- | --- |
| 6 weeks | *United States v. Ary*, 518 F.3d 775, 785 (10th Cir. 2008) | Waiver |
| 2 months | *Clarke v. J.P. Morgan Chase & Co.*, 2009 WL 970940, at *5 (S.D.N.Y. Apr. 10, 2009) | Waiver — "sufficiently long period" |
| 4 months | *Relion, Inc. v. Hydra Fuel Cell Corp.*, 2017 WL 6419312, at *4 (D. Or. Dec. 15, 2017) | Waiver |
| 10 months | *Alrose Steinway, LLC v. Jaspan Schlesinger, LLP*, 2021 N.Y. Slip Op. 30620(U) (N.Y. Sup. Ct. Mar. 5, 2021) | Waiver — "unreasonable" |
| 32 months | *Williams v. District of Columbia*, 806 F. Supp. 2d 44 (D.D.C. 2011) | Waiver |
| 9 years | *In re Estate Fin., Inc.*, 2017 Bankr. LEXIS 1925, at *10–11 (Bankr. C.D. Cal. July 5, 2017) | Waiver under de la Jara |
| **21 months** | **EWS (this matter)** | **?** |

There is no finding in a decision where the privilege was preserved on a delay even approaching twenty-one months.

9

### D. Trade-Secret Reasonable Measures and the Sword-and-Shield Posture Both Fail on the Same Record.

The injunction order found "it is unlikely that EWS will prove [the Teams Chat's] status as a trade secret." (Dkt. 70 at 10–11.) To the extent EWS continues to claim trade-secret protection—as it has from the preliminary injunction motion (Dkt. 16 at 2, 7, 9) through the contempt motion (Dkt. 225 at 1, 11–12)—the Wayback evidence independently defeats the claim. AUTSA and DTSA require active conduct to keep the asserted information secret. A.R.S. § 44-401(4)(b); 18 U.S.C. § 1839(3)(A). Public disclosure "necessarily extinguishe[s]" trade-secret status. *Attia v. Google LLC*, 983 F.3d 420, 425 (9th Cir. 2020). Arizona courts treat the "reasonable efforts" factor as the "most important" element. *Enterprise Leasing Co. of Phoenix v. Ehmke*, 197 Ariz. 144, 150 ¶ 19 (App. 1999). Cheney Declaration paragraph 43 swears to three takedown channels and excludes the Internet Archive—the most accessible removal channel of the four, requiring no litigation, court order, or third-party negotiation. On a sworn record from which the holder has affirmatively excluded the most accessible removal channel for the document at issue, the statutory standard cannot be satisfied as a matter of law.

The same record establishes the structural problem under Ninth Circuit waiver law. EWS has filed at least fourteen motions to seal directed at "reflections" and "summaries" of the publicly available chat (*see, e.g.*, Dkts. 79, 85, 90, 94, 114, 159, 180, 265, 273, 279, 312, 318, 353, 364); the district court has entered at least seven

10

sealing orders (Dkt. 283 at 2); at Appellant's first appearance the court threatened bar referral; and on November 20, 2025 the court entered a prospective fee-shifting order requiring Appellant to fund EWS's sealing motions going forward, with no bad-faith threshold (*id.*). During the same period, EWS placed the public archival URL on the federal docket, excluded the Internet Archive from its sworn takedown enumeration, re-cited the Wayback printout in Dkts. 102 and 229, and allowed the captures to remain publicly accessible. **The Ninth Circuit holds that conduct "inconsistent with the maintenance of secrecy" waives the privileg**e. *United States v. Sanmina Corp.*, 968 F.3d 1107, 1121 (9th Cir. 2020). That is the literal *Permian* violation: EWS "invoke[s] the privilege as to communications whose confidentiality [it] has already compromised for [its] own benefit." 665 F.2d at 1221. It is the literal Holmes violation: EWS treats the privilege as "an additional weapon to use or not at his choice." *Green v. Crapo*, 62 N.E. at 959. A litigant cannot "use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes." *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003); *see also United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) (privilege may not be used "as both a sword and a shield").

## IV. THE NOTICED MATERIAL ALSO BEARS ON TAGGART AND THE MANDATE-RULE ISSUES (OPENING BR. §§ I.C, II.A, II.E)

The Teams chat is the document the district court identified as the basis for its "misappropriation" finding. (ER 35–36.) That document has been continuously

11

archived at a URL EWS placed on the docket, while EWS's sworn takedown enumeration excludes the hosting platform. The injunction order itself disclaims trade-secret status (Dkt. 70 at 10–11, 14 n.6) and contains no confidentiality finding. There is no protectable interest left to enforce by contempt; *Taggart v. Lorenzen*'s "fair ground of doubt" test cannot be satisfied, 587 U.S. 106, 112 (2019), and the September 22, 2025 contempt order cannot stand. The same record reinforces the mandate-rule argument: this Court authorized a "narrowly tailored" forensic search for "EWS's documents" (ER 159), and a document EWS itself treats as a matter of public archival availability cannot serve as the predicate for a forensic search of Appellant's personal devices and accounts.

## V. NO ENLARGEMENT OF THE APPEAL

This submission does not enlarge the scope of the appeal. The reasonable-measures and contempt issues are squarely presented in the Opening Brief. The Wayback captures, the underlying TTAB filing, the Cheney takedown enumeration, the injunction order's findings, and the sealing record are offered as judicially noticeable facts bearing on those issues. Appellant did not discover the Wayback captures or the structural significance of the Cheney enumeration until April 27, 2026, three days after filing the Opening Brief, and brings the matter at the earliest practicable date.

## CONCLUSION

EWS itself authenticated and filed the Wayback Machine URL on the federal docket on July 23, 2024. EWS has never submitted a takedown request, exclusion request, robots.txt directive, DMCA notice, or any other communication to the Internet Archive. As of May 4, 2026, EWS still has not—and admits as much. These facts are the record. They are EWS's record. EWS made it, lodged it, and reaffirmed it under oath. They establish forfeiture under *Permian*, *de la Jara*, Rule 502(b)(3), AUTSA, and DTSA, and they cannot be undone by any order this Court might enter.

Appellant respectfully requests that the Court grant leave to file this supplemental submission, take judicial notice of the matters identified in Section I, and consider the noticed material in connection with Sections I and II of the Opening Brief.

<div style="text-align:right">

Respectfully submitted,

/s/ Warren V. Johnson
Warren V. Johnson
215 E 18th St
Lawrence, KS 66044
(208) 371-1686
warrenvjohnson@gmail.com
Appellant, Pro Se

</div>

# CERTIFICATE OF COMPLIANCE

I am the self-represented Appellant. This motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A). The motion contains approximately 2,963 words, excluding the parts of the document exempted by Rule 32(f). The type size and typeface comply with Federal Rule of Appellate Procedure 32(a)(5) and (6) (14-point Times New Roman).

/s/ Warren V. Johnson

Date: __May 6, 2026__

## CERTIFICATE OF SERVICE

I, Warren V. Johnson, hereby certify that on May ___, 2026, I electronically filed the foregoing Motion for Leave to File Supplemental Authority and Request for Judicial Notice, together with the supporting Declaration of Warren V. Johnson and Exhibit A attached thereto, with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Warren V. Johnson

Warren V. Johnson

No. 25-6052

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

EARLY WARNING SERVICES, LLC,
*Plaintiff-Counter Defendant-Appellee,*

v.

WARREN VURL JOHNSON,
*Defendant-Counter Plaintiff-Appellant.*

On Appeal from the United States District Court for the District of Arizona,
Phoenix Division

No. 2:24-cv-01587-SMB

Hon. Susan M. Brnovich

---

## DECLARATION OF WARREN V. JOHNSON IN SUPPORT OF MOTION FOR LEAVE TO FILE SUPPLEMENTAL AUTHORITY AND REQUEST FOR JUDICIAL NOTICE

---

Warren Vurl Johnson
215 E 18th St
Lawrence, KS 66044
(208) 371-1686
warrenvjohnson@gmail.com
*Appellant, Pro Se*

1

I, Warren V. Johnson, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

## I. IDENTIFICATION AND BASIS OF KNOWLEDGE

1. I am the Appellant in the above-captioned matter and am appearing pro se. I am over the age of eighteen, am competent to testify, and have personal knowledge of the facts stated in this declaration except where stated to be on information and belief, and as to those, I believe them to be true.

2. I am a registered patent practitioner before the United States Patent and Trademark Office (Reg. No. 71,403). I served as Senior Intellectual Property Counsel at Early Warning Services, LLC ("EWS") from 2014 until January 2023. During my tenure at EWS, I built EWS's in-house takedown practice, which I had moved in-house from outside counsel as a cost-saving measure. In that role, I personally drafted and submitted DMCA takedown notices, domain takedown requests, and Internet Archive removal requests on EWS's behalf in connection with intellectual property enforcement matters. I am therefore familiar with the Internet Archive's published takedown procedure both as a matter of professional practice generally and as a matter of EWS's own institutional practice. The Internet Archive maintains a single, published intake channel: an emailed request to info@archive.org identifying the URL to be removed. The Internet Archive does not require litigation,

2

court order, or negotiation with a third-party platform operator. Of the four takedown channels referenced in paragraph 43 of the Cheney Declaration (Dkt. 17-5), the Internet Archive is the most accessible.

## II. KEY DATES RELEVANT TO THE MOTION

3.      The following dates are material to the accompanying motion and are within my personal knowledge based on my review of the district court's CM/ECF docket, my own filings, and the Internet Archive's public records:

- April 7, 2024 — Initial Wayback Machine capture of paze.website/RECENT-NEWS/ (the "Wayback URL");

- June 17, 2024 — P.A.Z.E. TTAB filing identifying the Wayback URL;

- July 23, 2024 — Cheney Declaration (Dkt. 17-5) executed; Wayback URL appears on the face of Exhibit 14, Exhibit C; Cheney ¶ 43 enumerates the takedown channels EWS pursued;

- December 4, 2024 — Preliminary injunction issued (Dkt. 70);

- January 27, 2025 — EWS re-cites Cheney Declaration Exhibit 14 in Dkt. 102;

- July 25, 2025 — Default judgment entered against P.A.Z.E. (Dkt. 208);

- August 29, 2025 — EWS re-cites Cheney Declaration Exhibit 14 in Dkt. 229;

- September 22, 2025 — Contempt order entered, with $1,000-per-day sanctions accruing;

- November 20, 2025 — Prospective fee-shifting order (Dkt. 283);

3

- April 22, 2026 — In-person contempt hearing in Phoenix; default and default judgment entered against me;

- April 24, 2026 — Opening Brief filed in this Court;

- April 27, 2026 — I discovered the Wayback URL and the structural significance of the Cheney enumeration;

- May 4, 2026 — EWS filed in the parallel state Special Action proceeding the written admission set out in Section V below.

## III. THE WAYBACK CAPTURE AND EWS'S ACTUAL KNOWLEDGE

4.      The document at the center of EWS's trade-secret claim, this litigation as a whole, the September 22, 2025 contempt order, and the accruing $1,000-per-day sanctions is a Microsoft Teams chat between EWS General Counsel Tracy Cheney and Senior Intellectual Property Counsel Warren V. Johnson, dated on or about November 3, 2022 (the "Teams Chat").

5.      On or about April 7, 2024, the Internet Archive's Wayback Machine captured the page https://www.paze.website/RECENT-NEWS/, which displayed the Teams Chat in screenshot form. The capture is publicly accessible at https://web.archive.org/web/20240407072456/https://www.paze.website/RECENT-NEWS/ (the "Wayback URL"). Wayback URLs are stable: the Internet Archive assigns each capture a fixed timestamp-based path, and the capture remains

4

retrievable at that path indefinitely unless removed in response to a request submitted under the Internet Archive's published procedures.

6.      Based on my own review of the Wayback Machine, there are more than fifty captures of paze.website overall, and four captures of the RECENT-NEWS subpage specifically. All four captures of the RECENT-NEWS subpage predate the December 4, 2024 preliminary injunction in the underlying action.

7.      By no later than July 23, 2024, EWS had: (i) actual knowledge of the Wayback URL; (ii) a printout of the Wayback capture in EWS's own evidentiary record (Cheney Decl. Ex. 14, Ex. C); and (iii) actual notice of P.A.Z.E.'s express argument that the Teams Chat was no longer confidential because it was publicly archived on the Wayback Machine. EWS thereafter re-attached and re-cited the same Cheney Declaration and the same Exhibit 14 in further filings, including Dkt. 102 (filed January 27, 2025) and Dkt. 229 (filed August 29, 2025).

## IV.   CHENEY DECLARATION PARAGRAPH 43 EXCLUDES THE INTERNET ARCHIVE

8.      Paragraph 43 of the Cheney Declaration is the paragraph in which EWS describes the takedown actions it has pursued in connection with the Teams Chat. Cheney swears, under penalty of perjury, that "EWS has been forced to submit numerous 'takedowns' to X (f/k/a Twitter) and LinkedIn as well as the internet service provider (ISP) for P.A.Z.E.'s website, seeking to disable access to the

Privileged Chat." Cheney Decl. ¶ 43. The quoted language is reproduced verbatim from the document filed at Dkt. 17-5.

9.    Cheney's enumeration names three platforms: (1) X, formerly Twitter; (2) LinkedIn; and (3) the ISP hosting paze.website. The Internet Archive is not among them. The same paragraph names paze.website by URL as the location "depicting the Privileged Chat," and Exhibit 14 to the same declaration contains the Wayback URL on its face. EWS therefore knew the Wayback capture existed when Cheney swore to her enumeration of takedowns, knew where the capture was located, and did not pursue it.

11.    I am informed and believe, based on a search of the Internet Archive's publicly available records and on the continuing accessibility of the capture, that prior to May 4, 2026, EWS had not at any time submitted a takedown request to the Internet Archive seeking removal of the Wayback URL or of any related capture of paze.website.

## V. EWS'S MAY 4, 2026 WRITTEN ADMISSION

12.    On May 4, 2026, in the parallel Special Action proceeding *Johnson v. Hon. Adele Ponce*, No. 1 CA-SA 26-0109 (Ariz. Ct. App. Div. One), EWS filed an Opposition to my Emergency Motion for Expedited Ruling. On page 6 of that Opposition, EWS stated, in its own words: "EWS has a duty to safeguard its

6

privileged information and, accordingly, will request the Internet Archive to remove the archived Website from public view barring a contrary order from this Court."

13.    That sentence is reproduced verbatim from EWS's May 4, 2026 Opposition. The future-tense framing—"will request"—was made twenty-one months after EWS filed the Wayback URL on the federal docket on July 23, 2024, and only after I raised the issue in my Emergency Motion. To my knowledge, prior to that filing EWS had never represented to any court, in any proceeding, that it had contacted or intended to contact the Internet Archive concerning the Wayback URL.

## VI. VERIFICATION OF THE WAYBACK CAPTURE

14.    On April 27, 2026, I navigated directly to the Wayback Machine's calendar for paze.website, opened a capture of that domain, and clicked through to the RECENT-NEWS subpage. The Wayback Machine took me to the closest capture of that subpage. I printed the page accessed at the Wayback URL. Only afterward did I confirm that the same Wayback URL appeared as Exhibit C within Exhibit 14 to the Cheney Declaration—i.e., on the face of EWS's own evidentiary record.

15.    On May 4, 2026, I re-navigated to the Wayback URL using a standard web browser to confirm the capture remained live. The capture loaded without authentication. Its contents were identical in all material respects to the Wayback printout filed by EWS as Exhibit C to Exhibit 14 of the Cheney Declaration in 2024. A true and correct copy of the April 27, 2026 printout, alongside Exhibit C

7

to Exhibit 14 of the Cheney Declaration, is attached as Exhibit A as a side-by-side comparison. The two printouts depict the same page, with the same redactions, and bear the same The two captures bear the same Wayback URL (https://web.archive.org/web/20240407072456/https://www.paze.website/RECENT-NEWS/), the same April 7, 2024 archival timestamp embedded in that URL, and contain identical content in all material respects, with the same redactions reflected in EWS's filed version.

## VII. DISCOVERY OF THIS MATERIAL

16.     My Opening Brief in this appeal was filed on April 24, 2026. The Opening Brief contains no reference to the Wayback Machine, paze.website, or EWS's takedown enumeration.

17.     Two days before the Opening Brief was due, the district court conducted an in-person hearing in Phoenix in connection with EWS's renewed motion for contempt. Earlier in this appeal I had moved this Court to stay the in-person contempt proceedings on financial and logistical hardship grounds. That motion was denied. At the April 22, 2026 hearing, the district court entered default and a default judgment against me on EWS's claims.

18.     After the Opening Brief was filed, I began reviewing the district-court record in connection with my motion to set aside the default and the default judgment, filed on April 30, 2026. In the course of that review, I focused on the

8

Cheney Declaration (Dkt. 17-5) and noted paragraph 43's identification of paze.website by URL as the location "depicting the Privileged Chat."

19. Drawing on my familiarity with the Internet Archive, I navigated to the Wayback Machine's calendar for paze.website, opened a capture of that domain, and clicked through to the RECENT-NEWS subpage. The Wayback Machine returned the closest capture, which I retrieved on April 27, 2026. Only afterward did I confirm that the same Wayback URL appeared as Exhibit C within Exhibit 14 to the Cheney Declaration. Any person reading paragraph 43 of the Cheney Declaration and visiting the Wayback Machine could perform the same navigation in under a minute.

20. I had not previously discovered this material because, until April 27, 2026, my attention in this case had been directed to defending the contempt and sanctions proceedings, the in-person attendance issue and the related stay motion in this Court, and the preparation of the Opening Brief. I bring the matter to this Court's attention at the earliest practicable date after its discovery.

## IX. OBSERVATIONS

21. The same Wayback printout has been re-attached and re-cited across at least three filings (Dkts. 17-5, 102, and 229). The same enumerated takedown list has been carried forward without addition. The capture itself has remained publicly retrievable for more than two years—and longer counting the prior wrongful-termination state-court docket. No takedown effort was directed at the Internet

9

Archive prior to May 4, 2026, although the Internet Archive's removal channel is the most straightforward of the channels EWS's declarant identified.

22.     Whether the result of inattention, oversight, strategic choice, or a litigation focus that has overtaken the protection of the very material EWS asserts as its trade secret, the documentary record is the same: the document on which the misappropriation finding rests has been continuously available to the public, with EWS's actual knowledge, since at least July 2024—and on the public-archive record, since April 7, 2024. The legal consequences of that record are addressed in the accompanying motion.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Executed on: ___May 7_____, 2026

At: __Lawrence__, _KS_____


/s/ Warren V. Johnson

Warren V. Johnson
215 E 18th St
Lawrence, KS 66044
(208) 371-1686
warrenvjohnson@gmail.com
Appellant, Pro Se

# EXHIBIT A

# SIDE-BY-SIDE WAYBACK MACHINE CAPTURES:

## A-1 APRIL 27, 2026
## A-2 JUNE 2, 2024

# EXHIBIT A-1

# CREATED APRIL 27, 2026

The Wayback Machine - https://web.archive.org/web/20240407072456/https://www.paze.website/RECENT-NEWS/



## JOIN PAZE™

**March 29, 2024**

# ZELLE ILLEGALLY HAD @JOINPAZE TWITTER/X ACCOUNT SUSPENDED UNDER FALSE ACCUSATIONS OF IMPERSONATION/TRADEAMRK INFRINGEMENT

In a desperate attempt to silence PAZE, Zelle has fradulantly reported to Twitter that PAZE - People Against Zelle Errday was trying to impersonate them or infringe their trademark. See letter below from Twitter:

We DON'T CARE ABOUT cookies (but we may gather certain personal information) to provide you with a better online experience, NOT REALLY. By visiting our website you accept our terms TO DO NOTHING WITH YOUR INFORMATION.

Got it

# Page Redacted — Content Subject to District Court Sealing Orders

# Page Redacted — Content Subject to District Court Sealing Orders

# EXHIBIT A-2

# CREATED JUNE 2, 2024

**NOTE:** Exhibit A-2 is reproduced from Cheney Declaration Exhibit 14, Exhibit C (Dkt. 17-5 at 23-26), filed July 23, 2024. The June 2, 2024 timestamp on Exhibit A-2 reflects the date the underlying Wayback printout was generated, before its incorporation into EWS's federal filing.

# EXHIBIT C

Case: 25-6052, 05/07/2026, DktEntry: 30.1, Page 18 of 20

Case 2:24-cv-01553-SMB Document 385 Filed 03/10/26 Page 35 of 64

The Wayback Machine - https://web.archive.org/web/20240407072456/https://www.paze.website/RECENT-NEWS/



## JOIN PAZE™

**March 29, 2024**

# ZELLE ILLEGALLY HAD @JOINPAZE TWITTER/X ACCOUNT SUSPENDED UNDER FALSE ACCUSATIONS OF IMPERSONATION/TRADEAMRK INFRINGEMENT

In a desperate attempt to silence PAZE, Zelle has fradulantly reported to Twitter that PAZE - People Against Zelle Errday was trying to impersonate them or infringe their trademark. See letter below from Twitter:

We DON'T CARE ABOUT cookies (but we may gather certain personal information) to provide you with a better online experience, NOT REALLY. By visiting our website you accept our terms TO DO NOTHING WITH YOUR INFORMATION.

Got it

# Page Redacted
# Original Lodged Under Seal

# Page Redacted
# Original Lodged Under Seal

# EXHIBIT B

# TTAB DECISIONS FINDING EWS FAILED TO SHOW PRIVILEGE

**UNITED STATES PATENT AND TRADEMARK OFFICE**
**Trademark Trial and Appeal Board**
**P.O. Box 1451**
**Alexandria, VA 22313-1451**
General Contact Number: 571-272-8500
General Email: TTABInfo@uspto.gov

RSC

October 1, 2024

Cancellation No. 92085110

*P.A.Z.E., LLC*

<div align="center">*v.*</div>

*Early Warning Services, LLC*

**Rebecca Stempien Coyle, Interlocutory Attorney:**

This proceeding now comes before the Board for consideration of the following motions filed by Respondent Early Warning Services ("Respondent"): (1) May 31, 2024, motion to seal, (2) July 1, 2024, second motion to seal, and (3) July 1, 2024, motion to suspend pending termination of a civil action. Respondent's first motion to seal is contested, and no response was filed to either the second motion to seal or motion to suspend.[1]

As an initial matter, the Board notes Petitioner P.A.Z.E., LLC ("Petitioner") filed two responses to Respondent's first motion to seal.[2] Petitioner's responses appear to

---

[1] The Board has considered all of the parties' arguments, presumes the parties' familiarity with the factual bases for their filings, and does not recount the facts or arguments here, except as necessary to explain this decision. *See Guess? IP Holder LP v. Knowluxe LLC*, 116 USPQ2d 2018, 2019 (TTAB 2015).

[2] 10 TTABVUE, 11 TTABVUE. Record citations are to TTABVUE, the Board's publicly available docket system. *See, e.g., New Era Cap Co., Inc. v. Pro Era, LLC*, 2020 USPQ2d 10596, *2 n.1 (TTAB 2020).

Cancellation No. 92085110

be identical, accordingly, the second-filed submission (11 TTABVUE) supersedes the original submission (10 TTABVUE), which will be given no further consideration. Duplicate submissions unnecessarily complicate this proceeding and Petitioner is admonished to take greater care with its filings with the Board.

**The Board Proceeding**

On May 3, 2024, Petitioner filed a petition to cancel Respondent's Registration No. 5476070 for the stylized mark Z, as shown below (the "stylized Z mark"):



for "Financial transaction services, namely, providing secure payment and money transfer options and permitting account holders to make payment requests" in International Class 36.[3]

Petitioner filed amended pleadings prior to Respondent's answer, and the Board accepted Petitioner's second amended petition for cancellation of May 24, 2024 as its operative pleading.[4] Under the operative pleading Petitioner alleges, inter alia, it owns pending application Serial No. 98252002 for the stylized mark PAZE which "will be put at risk by Respondent",[5] and identifies the following grounds for cancellation: failure to function on a variety of bases, abandonment due to failure to police, and

---

[3] 1 TTABVUE. Registration No. 5476070 issued May 22, 2018, based on alleged use in commerce. The registration includes the following description of the mark: "The mark consists of capitalized letter 'Z' stylized to have a vertical line extending upward from the top horizontal line and another vertical line extending downward from the bottom horizontal line." Color is not claimed as a feature of the mark. Section 8 & 15 Declaration filed April 26, 2024.

[4] 8 TTABVUE, *see also* Second Amended Petition for Cancellation (5 TTABVUE).

[5] 5 TTABVUE 4, at ¶¶ 6-12.

Cancellation No. 92085110

fraud.[6] Petitioner also submits several exhibits in support of its petition, including a document identified as "Exhibit B".[7]

After accepting Petitioner's second amended pleading the Board reset dates, allowing Respondent until July 5, 2024, to serve an answer or otherwise respond to the second amended petition for cancellation.[8] As noted above, on July 1, 2024, Respondent filed its motion to suspend proceedings pending a civil action. The Board considers proceedings to have been suspended for consideration of Respondent's motion as of July 1, 2024. Accordingly, the time for Respondent to respond to the second amended petition for cancellation has also been suspended. The Board will reset time for Respondent to respond to the pleading as appropriate.

**The "Privileged Documents" At Issue in Respondent's Motions to Seal**

Respondent's first motion to seal requests that the documents appearing as "Exhibit E" to the original petition for cancellation, and as "Exhibit B" to both the first amended and second amended petition for cancellation, be placed under seal. These exhibits are identical and each consist of two pages, the first of which appears to be a screenshot of posts on a social media site with one post including an image of a chat, and the second page is a larger image of that chat (for purposes of this order the Board will refer to the chat shown in both pages as "the Chat").[9]

Respondent contends that the Chat is a "privileged document" depicting a screen capture of a chat on Respondent's internal messaging system between its general

---

[6] *Id.* at 5-27.
[7] *Id.* at 146-147.
[8] 8 TTABVUE 3.
[9] 1 TTABVUE 147-148, 4 TTABVUE 144-145, 5 TTABVUE 146-147.

Cancellation No. 92085110

counsel and a former employee and should be sealed. Respondent asserts the document is protected by attorney-client privilege, the privilege has not been waived, and Respondent has not authorized the disclosure of the privileged document to or by Petitioner.[10] In response to Respondent's first motion Petitioner argues that Respondent has not established the Chat is privileged. Petitioner further contends the Chat was publicly available and therefore any privilege is waived.[11]

Respondent's second motion to seal concerns "Exhibit D" and "Exhibit E" to Petitioner's two June 17, 2024, responses to Respondent's first motion to seal. Exhibit D consists of a printout of a webpage that includes images from what appears to be the same social media account as the contested exhibits to Petitioner's pleadings, which also include an image of the Chat, as well as a larger image of the Chat. Exhibit E consists of a printout from another social media account and also includes an image of the Chat.[12] In its second motion to seal Respondent modifies its request for relief, asking that Exhibits D and E be sealed "pending termination of the civil action".[13] As noted above, Petitioner did not respond to this motion.

**The Civil Action**[14]

In the civil action the parties are in the reverse position with Respondent as plaintiff asserting a variety of claims against three defendants: Plaintiff, Brandon

---

[10] 6 TTABVUE 2, *see also id.* at 7-8 (Decl. of Paras R. Shah, Senior Intellectual Property Counsel for Respondent ("Shah Decl.")).

[11] *See* 10 TTABVUE 9-12, 16-17.

[12] *Id.* at 34-40.

[13] 12 TTABVUE 3.

[14] The civil action is styled *Early Warning Services, LLC v. Warren Vurl Johnson, Brandon O'Loughlin, and P.A.Z.E. LLC,* Case No. 2:24-cv-01587-SMB, in the United States District Court for the District of Arizona (the "civil action").

4

Cancellation No. 92085110

O'Loughlin (plaintiff's CEO), and Warren Vurl Johnson (identified as former intellectual property counsel for Respondent).[15] The claims in the civil action include misappropriation of trade secrets, cybersquatting, and unjust enrichment, and a request for declaratory judgment of non-infringement.[16]

In support of its claims Respondent alleges, inter alia, that defendant Johnson improperly took numerous highly confidential and sensitive documents from Respondent, including a screen capture of a "Privileged Chat" between himself and Respondent's general counsel (wherein Johnson's identity is not shown); Petitioner "has repeatedly attached [the "Privileged Chat"] to its public filings" before the Board; and this "Privileged Chat" is among Respondent's trade secrets which were misappropriated by the defendants in the civil action.[17] Respondent further alleges it owns prior trademark rights to the mark PAZE as well as the stylized Z mark, and that Petitioner has no trademark rights in its asserted PAZE marks.[18]

Among the relief sought Respondent asks the district court to enjoin the defendants, including Petitioner, from using the mark PAZE or the stylized Z mark or any confusingly similar variations; order the defendants to remove from public view all documents containing Respondent's trade secrets; invalidate Petitioner's application Serial Nos. 98252022 and 98255290; and find that Respondent owns prior

---

[15] 13 TTABVUE 9-11.
[16] *Id.* at 25-34.
[17] *Id.* at 17-18, 22, 25-27.
[18] *Id.* at 32-34.

5

Cancellation No. 92085110

rights in the stylized Z mark and the mark is inherently distinctive, valid, and protectable.[19]

In its motion to suspend Respondent contends many of the same issues in the civil action are presented in the briefing on Respondent's motions to seal, as well as Petitioner's alleged entitlement to a statutory cause of action and its asserted claims in the Board proceeding. Respondent therefore maintains that suspension of Board proceedings, and continued shielding of the privileged documents at issue in the motions to seal, are warranted pending the final determination of the civil action. Again, Petitioner has not responded to the motion to suspend.

**Disposition of the Pending Motions**

The Board first considers the motion to suspend for the pending civil action. While the Board may grant the motion as conceded, in view of the nature of the claims in the civil action and Respondent's motions to seal, the Board provides the following analysis further explaining why suspension is warranted. *See* Trademark Rule 2.127(a), 37 C.F.R. § 2.127(a). "Whenever it shall come to the attention of the Trademark Trial and Appeal Board that a civil action … may have a bearing on a pending case, proceedings before the Board may be suspended until termination of the civil action[.]" Trademark Rule 2.117(a), 37 C.F.R. § 2.117(a); *see also* TRADEMARK TRIAL AND APPEAL BOARD MANUAL OF PROCEDURE ("TBMP") § 510.02(a) (2024). "[T]he civil action does not have to be dispositive of the Board proceeding to warrant suspension, it need only have a bearing on the issues before the Board." *New Orleans*

---

[19] *Id.* at 35-36.

Cancellation No. 92085110

*Louisiana Saints LLC v. Who Dat?, Inc.*, 99 USPQ2d 1550, 1552 (TTAB 2011). The Board does not require an issue to be joined in one or both proceedings so long as the Board can ascertain, prior to the filing of an answer(s), whether the final determination of the civil action may have a bearing on the Board proceeding. *See Other Tel. Co. v. Conn. Nat'l Tel. Co.*, 181 USPQ 125, 126-27 (TTAB 1974); *see also* TBMP § 510.02(a).

Here, at a minimum, the district court's determinations regarding Respondent's trademark rights would have a bearing on this proceeding. Moreover, if the district court enjoins Petitioner from using Repondent's asserted marks, such a decision may directly affect Petitioner's entitlement to a statutory cause of action in this proceeding. Accordingly, Respondent's motion to suspend pending the civil action is **granted**.

The Board next addresses the motions to seal. Through its first motion to seal Respondent requests that the exhibits to Petitioner's pleadings which include the Chat be placed under seal.[20] Although Respondent relies on the Standard Protective Order as the basis of its motion, Respondent does not invoke the confidentiality designations of the Standard Protective Order but rather relies on its assertion of attorney-client privilege.[21] Accordingly, the Board does not apply the standard for challenging designations set forth in the Standard Protective Order.[22] Rather, the

---

[20] 6 TTABVUE 2.
[21] *Id.*
[22] *See* Standard Protective Order ¶ 14.

Cancellation No. 92085110

Board construes Respondent's motion as seeking relief for "additional protections not provided" by the Standard Protective Order.[23]

The attorney-client privilege protects communications made in confidence between clients and their lawyers for the purpose of obtaining legal advice. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The attorney-client privilege "should be jealously protected." *Amerace Corp. v. USM Corp.*, 183 USPQ 506, 507 (TTAB 1974) (finding that communications between an attorney and a client regarding trademark infringement is protected by attorney-client privilege); *see also United States v. Bauer*, 132 F.3d 504, 510 (9th Cir. 1997) ("the attorney-client privilege is, perhaps, the most sacred of all legally recognized privileges, and its preservation is essential to the just and orderly operation of our legal system.").

When determining if the attorney-client privilege applies "the central inquiry is whether the communication is one that was made by a client to an attorney for the purpose of obtaining legal advice." *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 53 USPQ2d 1747, 1751 (Fed. Cir. 2000). Federal courts typically apply an eight-part test to determine whether information is covered by the attorney-client privilege:

> (1) where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*In re Grand Jury Investigation*, 974 F.2d 1068, 1071 n.2 (9th Cir. 1992) (quoting *United States v. Margolis*, 557 F.2d 209, 211 (9th Cir. 1977)). When the client is a

---

[23] *Id.* at ¶ 17.

8

Cancellation No. 92085110

company, attorney-client privilege may apply to communication between counsel and high-level corporate officers, as well as between counsel and any corporate employee acting at the direction of corporate superiors in order to secure legal advice for the corporation. *Upjohn*, 449 U.S. at 394, 101 S.Ct. 677; *see also The Goodyear Tire & Rubber Co. v. Uniroyal, Inc.*, 183 USPQ 372 (TTAB 1974).

However, "[t]he burden of determining which communications are privileged and which communications fall outside the scope of the privilege rests squarely on the party asserting the privilege." *In re Queen's Univ. at Kingston*, 820 F.3d 1287, 118 USPQ2d 1221, 1231 (Fed. Cir. 2016). To carry the burden, the party asserting the privilege must "describe in detail" the documents or information sought to be protected. *McCoo v. Denny's, Inc.*, 192 F.R.D. 675, 680 (D. Kan. 2000); *see also FTC v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 180 F.Supp.3d 1, 16 (D.D.C. 2016).

Here, the Board finds Respondent has fallen short of its burden of proving that the exhibits to the pleadings at issue are covered by the attorney-client privilege. Respondent has only stated that its general counsel was one of the persons to the Chat and that Respondent has not waived privilege.[24] Respondent provides no information regarding the former employee's position at the time of the Chat or whether the employee was acting at the direction of superiors. Respondent further fails to show that the Chat is actually a communication regarding specific legal advice

---

[24] 6 TTABVUE 7-8, ¶¶ 2-3 (Shah Decl.).

9

Cancellation No. 92085110

from its general counsel in counsel's capacity as such. Accordingly, Respondent's first motion to seal is **denied without prejudice**.[25]

However, in view of the "sacred" nature of the attorney-client privilege, and in consideration of the Board's disposition of Respondent's remaining motions, the Board will continue to shield Exhibit E to the original petition for cancellation, Exhibit B to the first amended petition for cancellation, and Exhibit B to the second amended petition for cancellation, pending the suspension of this proceeding.[26]

Turning to the second motion to seal, it appears that the Chat at issue in this motion to seal is the same as the Privileged Chat at issue in the civil action.[27] The district court's determination in the civil action as to whether this communication constitutes a "trade secret", is privileged, or is otherwise protectable from public disclosure would have a bearing on a determination of whether documents including the communication filed with the Board should be shielded from public viewing. Accordingly, Respondent's second motion to seal is **granted**, and Exhibits D and E to both of Petitioner's June 17, 2024, submissions will remain sealed pending termination of the civil action.[28]

---

[25] The Board hastens to add that Respondent's motion would have been denied without prejudice if it was considered as challenge to designations under the Standard Protective Order. Such a challenge requires a good faith effort to negotiate prior to making a motion, and Respondent failed to show any such effort to negotiate with Petitioner. Standard Protective Order ¶ 14, *see also U.S. Polo Ass'n v. David McLane Ents., Inc.*, 2019 USPQ2d 108442, at * 2 (TTAB 2019); TBMP § 412.01(b).

[26] Additionally, the prejudice to Respondent if the documents are made public outweighs the prejudice to Petitioner if the documents remain under seal while the Board proceeding is suspended for the civil action.

[27] The Board reiterates the Chat shown in the exhibits to the pleadings is the same as the Chat shown in Exhibits D and E to Petitioner's response brief.

[28] The second motion to seal is also conceded. *See* Trademark Rule 2.127(a), 37 C.F.R. § 2.127(a).

Cancellation No. 92085110

In view of the foregoing, the following documents are placed under seal pending the suspension of this proceeding:

- "Exhibit E" to the original petition for cancellation;
- "Exhibit B" to the first amended petition for cancellation;
- "Exhibit B" to the second amended petition for cancellation;
- "Exhibit D" and "Exhibit E" to Petitioner's first submission of June 17, 2024; and
- "Exhibit D" and "Exhibit E" to Petitioner's second submission of June 17, 2024.

For the avoidance of doubt, the Board is not making any determinations at this time as to whether or not the documents at issue in the motions to seal are properly protected under attorney-client privilege.[29] Upon resumption of these proceedings the Board will entertain further submissions from the parties regarding whether the documents should remain under seal from public view.

However, with the exception of information properly filed under seal, Board proceeding files are to be publicly available. *See* Trademark Rule 2.27(d)-(e), 37 C.F.R. § 2.27(d)-(e); *see also* TBMP § 412.04. Accordingly, when filed documents are shielded from public view, a public copy must be submitted redacting the portions submitted under seal. Trademark Rule 2.126(c), 37 C.F.R. § 2.126(c); *see also* TBMP § 412.04. In view thereof, and because the exhibits to be sealed were submitted by Petitioner, Petitioner must file public copies of the following wherein the exhibits identified above are redacted:

- original petition for cancellation (1 TTABVUE),
- first amended petition for cancellation (4 TTABVUE),
- second amended petition for cancellation (5 TTABVUE), and

---

[29] Nor does the Board make any determinations on whether the documents can otherwise be designated under the Board's Standard Protective Order.

11

Cancellation No. 92085110

- its June 17, 2024, responses to Respondent's first motion to seal (11 TTABVUE).[30]

Petitioner is allowed **TWENTY DAYS** from the date of this order **to submit the public copies of these docket entries**, failing which the Board may give the sealed exhibits no further consideration.

This cancellation proceeding is otherwise **SUSPENDED** pending the final disposition of the civil action between the parties. Within THIRTY DAYS after the final determination of the civil action, the parties must so notify the Board in writing, including a copy of the court's final order.[31] Upon resumption of the proceedings the Board will reset dates as appropriate, including time for Respondent to answer or otherwise respond to the operative petition for cancellation.

During the suspension period, the parties must notify the Board of any address changes for the parties or their attorneys. In addition, the parties must promptly inform the Board of any other related cases, even if they become aware of such cases during the suspension period.

---

[30] Because 10 TTABVUE and 11 TTABVUE are identical, and so as to not unnecessarily clutter the record, Petitioner need not submit a public version of 10 TTABVUE.

[31] A proceeding is considered to have been finally determined when an order or ruling that ends litigation has been rendered, and no appeal has been filed, or all appeals filed have been decided and the time for any further review has expired." *See* TBMP § 510.02(b).

12

<div style="border:1px solid black">THIS ORDER IS NOT A
PRECEDENT OF THE TTAB</div>

**UNITED STATES PATENT AND TRADEMARK OFFICE**
**Trademark Trial and Appeal Board**
**P.O. Box 1451**
**Alexandria, VA 22313-1451**
General Contact Number: 571-272-8500
General Email: TTABInfo@uspto.gov

ajl

October 1, 2024

Opposition No. 91291526

*P.A.Z.E.LLC*

*v.*

*Early Warning Services, LLC*

**Ashlyn Lembree, Interlocutory Attorney:**

This proceeding now comes before the Board for consideration of several motions concerning essentially the same chat message asserted by Applicant to be protected by attorney-client privilege (the "Chat") included in six of Opposer's seven submissions to the Board to date; and, Applicant's July 1, 2024 uncontested motion to suspend pending termination of a civil action.[1] Applicant's May 31, 2024 motion to seal the Chat shown in the original notice of opposition is contested.[2] Applicant's June 7, 2024 second motion to seal the Chat shown in the amended notice of opposition is

---

[1] 17 TTABVUE. Record citations are to TTABVUE, the Board's publicly available docket system. *See, e.g., New Era Cap Co., Inc. v. Pro Era, LLC*, 2020 USPQ2d 10596, *2 n.1 (TTAB 2020).

[2] 4 TTABVUE (Applicant's first motion to seal). 10, 12, 13, and 14 TTABVUE (Opposer's subsequently-withdrawn initial brief ("Withdrawn Brief"), Opposer's substitute brief, Opposer's supplement to its substitute brief ("Supplemental Brief"), and Opposer's construed fourth response, respectively). As discussed herein, Opposer's Supplemenetal Brief and fourth response to the motion are denied consideration. The Board previously shielded the notice of opposition and Withdrawn Brief from public view pending disposition of Applicant's first motion to seal. 6, 12 TTABVUE.

Opposition No. 91291526

contested.[3] Applicant's June 14, 2024 third motion to seal the Chat shown in Opposer's Supplemental Brief is uncontested.[4] Opposer's motion, filed June 17, 2024, that "the Board [issue] an order that [Exhibit 3 to the notice of opposition] be ruled Information Not to Be Designated as Protected" (Opposer's "Designation Motion") is, as discussed herein, construed as Opposer's fourth response to Applicant's first motion to seal and denied consideration.[5] In conjunction with its motion to suspend, Applicant moves for a fourth time to seal the Chat, albeit in that instance the Chat as shown in Opposer's response to Applicant's second motion to seal and as shown in Opposer's Designation Motion.[6] Applicant's fourth motion to seal is uncontested.

The Board has considered all of the parties' arguments, presumes the parties' familiarity with the factual bases for their filings, and does not recount the facts or arguments here, except as necessary to explain this decision. *See Guess? IP Holder LP v. Knowluxe LLC*, 116 USPQ2d 2018, 2019 (TTAB 2015).

As an initial matter, the Board notes Opposer filed four responses to Applicant's first motion to seal.[7] Duplicate submissions unnecessarily complicate this proceeding and Opposer is admonished to take greater care with its filings with the Board. The presentation of one's arguments and authority should be presented thoroughly in the

---

[3] 8 TTABVUE (Applicant's second motion to seal). 16 TTABVUE (Opposer's response brief). The Board previously shielded the amended notice of opposition from public view pending disposition of Applicant's second motion to seal. 12 TTABVUE.

[4] 14 TTABVUE.

[5] 15 TTABVUE. Opposer's "reservat[ion of] its right to answer or otherwise move with respect to [Applicant's three motions to seal]," *id.* at 2, is **denied**. *See* Trademark Rule 2.127(a), 37 C.F.R. § 2.127(a).

[6] 17 TTABVUE 3-4.

[7] *See* n.2, supra.

Opposition No. 91291526

motion or the opposition brief thereto. *Johnston Pump/Gen. Valve Inc. v. Chromalloy Am. Corp.*, 13 USPQ2d 1719, 1720 n.3 (TTAB 1989); TRADEMARK TRIAL AND APPEAL BOARD MANUAL OF PROCEDURE (TBMP) § 502.02(b) (2024). Moreover, submissions with the Board are assigned a single filing date for purposes of calculating the deadline for filing a response or reply brief under Trademark Rule 2.127(a). *OMS Investments, Inc. v. Habit Horticulture LLC*, 2022 USPQ2d 1074, at *1-2 (TTAB 2022). By order dated June 12, 2024, the Board exercised its discretion to substitute Opposer's second response for its first response, thereby setting the single filing date for Opposer's response to Applicant's first motion to seal for purposes of calculating the deadline for Applicant to file its reply brief. In view thereof, Opposer's third response to Applicant's first motion to seal (Opposer's Supplemental Brief), filed subsequent to the Board's order setting the briefing schedule for the motion based on the single date of filing of Opposer's accepted response to the motion, is **denied consideration**. Moreover, inasmuch as Opposer responds to Applicant's first motion to seal in its Designation Motion and its arguments therein address the same issue raised by Applicant's first motion to seal, Opposer's Designation Motion is construed as its fourth response to Applicant's first motion to seal and is **denied consideration** as improperly filed subsequent to Opposer's single, accepted response to Applicant's first motion to seal.

**The Board Proceeding**

On May 16, 2024, Opposer filed a notice of opposition opposing registration of involved application Serial No. 97669754 for the standard character mark PAZE for

3

Opposition No. 91291526

"Financial transaction services, namely, providing secure commercial transaction options and secure electronic funds transfer; processing of secure electronic wallet transactions" in International Class 36.[8]

Opposer filed an amended notice of opposition prior to Applicant's answer, and the Board accepted Opposer's amended notice of opposition as its operative pleading.[9] Under the operative pleading, Opposer alleges, inter alia, that it owns pending applications Serial Nos. 98255290 and 98252002 for, respectively, the standard character and stylized mark PAZE and that "Opposer believes that if the [involved a]pplication is allowed to register it will cause delays and complications with the registration of Opposer's Marks, causing harm and costs to Opposer,"[10] and identifies the following grounds for cancellation: merely descriptive, lack of bona fide intent to use, fraud, nonuse, and that the identification of services was impermissibly expanded during examination.[11] Opposer also submits several exhibits in support of both its notice of opposition and amended notice of opposition, including a document identified as "Exhibit 3" to its original notice of opposition[12] and "Exhibit[s] 3 [and] 5" to its amended notice of opposition.[13]

---

[8] 1 TTABVUE. Application Serial No. 97669754 was filed November 9, 2022 under Trademark Act Section 1(b), 15 U.S.C. § 1052(b) and amended to a filing basis under Trademark Act Section 1(a), 15 U.S.C. § 1052(a) by way of an amendment to allege use filed December 11, 2023 and accepted February 5, 2024.

[9] 12 TTABVUE, *see also* Amended Notice of Opposition (7 TTABVUE).

[10] 7 TTABVUE 5-6, at ¶¶ 22, 27. "Opposer's Marks" is undefined.

[11] *Id*. at 7-25 (counts first through fifth).

[12] 1 TTABVUE 214-15 (Exhibit 3).

[13] 7 TTABVUE 335-36 (Exhibit 3) and 365 (Exhibit 5).

4

Opposition No. 91291526

By order dated June 6, 2024, the Board suspended proceedings pending disposition of Applicant's first motion to seal. By the Board's June 12, 2024 order, proceedings remained suspended pending disposition of both Applicant's first and second motions to seal. Accordingly, the time for Applicant to respond to the amended notice of opposition has also been suspended. The Board will reset time for Applicant to respond to the pleading as appropriate.

**The "Privileged Documents" At Issue in Applicant's Motions to Seal**

Applicant's four motions to seal[14] collectively request that the documents appearing as "Exhibit 3" to the original notice of opposition, "Exhibit[s] 3 [and] 5" of the amended notice of opposition, "Exhibit[s] B [and] C" of Opposer's Supplemental Brief,[15] "Exhibit B" to Opposer's response to Applicant's second motion to seal,[16] and "Exhibit[s] C [and] D" to the Designation Motion[17] be placed under seal. As raised in its June 12, 2024 order, the Board additionally addresses "Exhibit B" and "Exhibit C" to the Withdrawn Brief. These exhibits are substantially identical and consist of one or two pages; where both pages have been submitted, the first page appears to be a screenshot of posts on a social media site with one post including an image of a chat, and the second (or only) page is a larger image of that chat (for purposes of this order the Board will refer to the chat shown in both pages as the "Chat").

---

[14] As previously noted, Applicant's fourth motion to seal was combined with Applicant's motion to suspend for the civil action. 17 TTABVUE 3-4. Applicant's fourth motion to seal moves that Exhibits C and D to Opposer's Designation Motion and Exhibit B to Opposer's response to Applicant's second motion to seal be sealed.
[15] 13 TTABVUE 9-14 (Exhibits B and C).
[16] 16 TTABVUE 18-22 (Exhibit B).
[17] 15 TTABVUE 15-21 (Exhibits C and D).

5

Opposition No. 91291526

Applicant contends that the Chat is a "privileged document" depicting a screen capture of a chat on Applicant's internal messaging system between its general counsel and a former employee and should be sealed. Applicant asserts the document is protected by attorney-client privilege, the privilege has not been waived, and Applicant has not authorized the disclosure of the privileged document to or by Opposer.[18] In its accepted response to Applicant's first motion to seal and in its response to Applicant's second motion to seal, Opposer argues that Applicant has not established the Chat is privileged. Opposer further contends the Chat was publicly available and therefore any privilege is waived or not applicable.[19] As noted above, Opposer did not respond to Applicant's third and fourth motions to seal.

**The Civil Action[20]**

In the civil action the parties are in the reverse position with Applicant as plaintiff asserting a variety of claims against three defendants: Plaintiff [Opposer in the Board proceeding], Brandon O'Loughlin (plaintiff's CEO), and Warren Vurl Johnson (identified as former intellectual property counsel for Applicant).[21] The claims in the

---

[18] *See, e.g.*, 4 TTABVUE 2; *see also id*. at 7-8, ¶¶ 2, 3 (Decl. of Paras R. Shah, Senior Intellectual Property Counsel for Applicant ("Shah Decl.")).

[19] *See* 11 TTABVUE 7-9, 11-16. Opposer's response brief also includes a section entitled "Motions to Redesignate Information per The Standard Protective Order," 11 TTABVUE 9-11, but Opposer makes no motion in this portion of its brief. *See also* 16 TTABVUE 2, 8 (publicly available); *id*. at 8-13 (crime-fraud exception).

[20] The civil action is styled *Early Warning Services, LLC v. Warren Vurl Johnson, Brandon O'Loughlin, and P.A.Z.E. LLC,* Case No. 2:24-cv-01587-SMB, in the United States District Court for the District of Arizona (the "civil action").

[21] 17 TTABVUE 8-11 (Complaint in the civil action).

6

Opposition No. 91291526

civil action include misappropriation of trade secrets, cybersquatting, and unjust enrichment, and a request for declaratory judgment of non-infringement.[22]

In support of its claims in the civil action Applicant alleges, inter alia, that defendant Johnson improperly took numerous highly confidential and sensitive documents from Applicant, including a screen capture of a "Privileged Chat" between himself and Applicant's general counsel (wherein Johnson's identity is not shown); Opposer "has repeatedly attached [the "Privileged Chat"] to its public filings" before the Board; and this "Privileged Chat" is among Applicant's trade secrets which were misappropriated by the defendants in the civil action.[23] Applicant further alleges it owns prior trademark rights to the mark PAZE as well as the stylized Z mark, and that Opposer has no trademark rights in its asserted PAZE marks.[24]

Among the relief sought, Applicant asks the district court to enjoin the defendants, including Opposer, from using the mark PAZE or the stylized Z mark or any confusingly similar variations; order the defendants to remove from public view all documents containing Applicant's trade secrets; invalidate Opposer's application Serial Nos. 98252022 and 98255290; and find that Applicant owns prior rights in, inter alia, the PAZE and stylized Z marks and the marks are inherently distinctive, valid, and protectable.[25]

In its motion to suspend, Applicant contends many of the same issues in the civil action are presented in the briefing on Applicant's motions to seal, as well as

---

[22] *Id.* at 25-34.
[23] *Id.* at 17-18, 22, 25-27.
[24] *Id.* at 32-34.
[25] *Id.* at 35-36.

7

Opposition No. 91291526

Opposer's alleged entitlement to a statutory cause of action and its asserted claims in the Board proceeding. Applicant therefore maintains that suspension of Board proceedings, and continued shielding of the privileged documents at issue in the motions to seal, are warranted pending the final determination of the civil action. Again, Opposer has not responded to the motion to suspend.

### Disposition of the Pending Motions

The Board first considers the motion to suspend for the pending civil action. While the Board may grant the motion as conceded, in view of the nature of the claims in the civil action and Applicant's motions to seal, the Board provides the following analysis further explaining why suspension is warranted. *See* Trademark Rule 2.127(a). "Whenever it shall come to the attention of the Trademark Trial and Appeal Board that a civil action … may have a bearing on a pending case, proceedings before the Board may be suspended until termination of the civil action[.]" Trademark Rule 2.117(a), 37 C.F.R. § 2.117(a); *see also* TBMP § 510.02(a). "[T]he civil action does not have to be dispositive of the Board proceeding to warrant suspension, it need only have a bearing on the issues before the Board." *New Orleans Louisiana Saints LLC v. Who Dat?, Inc.*, 99 USPQ2d 1550, 1552 (TTAB 2011). The Board does not require an issue to be joined in one or both proceedings so long as the Board can ascertain, prior to the filing of an answer(s), whether the final determination of the civil action may have a bearing on the Board proceeding. *See Other Tel. Co. v. Conn. Nat'l Tel. Co.*, 181 USPQ 125, 126-27 (TTAB 1974); *see also* TBMP § 510.02(a).

8

Opposition No. 91291526

Here, at a minimum, the district court's determinations regarding Applicant's trademark rights would have a bearing on this proceeding. Moreover, if the district court enjoins Opposer from using Applicant's asserted marks, such a decision may directly affect Opposer's entitlement to a statutory cause of action in this proceeding. Accordingly, Applicant's motion to suspend pending the civil action is **granted**.

The Board next addresses the motions to seal. Through its first motion to seal Applicant requests that the exhibits to Opposer's pleadings which include the Chat be placed under seal.[26] Although Applicant relies on the Standard Protective Order as the basis of its motion, Applicant does not invoke the confidentiality designations of the Standard Protective Order but rather relies on its assertion of attorney-client privilege.[27] Accordingly, the Board does not apply the standard for challenging designations set forth in the Standard Protective Order.[28] Rather, the Board construes Applicant's motion as seeking relief for "additional protections not provided" by the Standard Protective Order.[29]

The attorney-client privilege protects communications made in confidence between clients and their lawyers for the purpose of obtaining legal advice. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The attorney-client privilege "should be jealously protected." *Amerace Corp. v. USM Corp.*, 183 USPQ 506, 507 (TTAB 1974) (finding that communications between an attorney and a client regarding trademark infringement is protected by attorney-client privilege); *see also United*

---

[26] 4 TTABVUE 2.
[27] *Id.*
[28] *See* Standard Protective Order ¶ 14.
[29] *Id.* at ¶ 17.

9

Opposition No. 91291526

*States v. Bauer*, 132 F.3d 504, 510 (9th Cir. 1997) ("the attorney-client privilege is, perhaps, the most sacred of all legally recognized privileges, and its preservation is essential to the just and orderly operation of our legal system.").

When determining if the attorney-client privilege applies "the central inquiry is whether the communication is one that was made by a client to an attorney for the purpose of obtaining legal advice." *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 53 USPQ2d 1747, 1751 (Fed. Cir. 2000). Federal courts typically apply an eight-part test to determine whether information is covered by the attorney-client privilege:

> (1) where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*In re Grand Jury Investigation*, 974 F.2d 1068, 1071 n.2 (9th Cir. 1992) (quoting *United States v. Margolis*, 557 F.2d 209, 211 (9th Cir. 1977)). When the client is a company, attorney-client privilege may apply to communication between counsel and high-level corporate officers, as well as between counsel and any corporate employee acting at the direction of corporate superiors in order to secure legal advice for the corporation. *Upjohn*, 449 U.S. at 394, 101 S.Ct. 677; *see also The Goodyear Tire & Rubber Co. v. Uniroyal, Inc.*, 183 USPQ 372 (TTAB 1974).

However, "[t]he burden of determining which communications are privileged and which communications fall outside the scope of the privilege rests squarely on the party asserting the privilege." *In re Queen's Univ. at Kingston*, 820 F.3d 1287, 118 USPQ2d 1221, 1231 (Fed. Cir. 2016). To carry the burden, the party asserting the

10

Opposition No. 91291526

privilege must "describe in detail" the documents or information sought to be protected. *McCoo v. Denny's, Inc.*, 192 F.R.D. 675, 680 (D. Kan. 2000); *see also FTC v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 180 F.Supp.3d 1, 16 (D.D.C. 2016).

Here, the Board finds Applicant has fallen short of its burden of proving that the Chat document is covered by the attorney-client privilege. Applicant has only stated that its general counsel was one of the persons to the Chat and that Applicant has not waived privilege.[30] Applicant provides in its motions to seal no information regarding the former employee's position at the time of the Chat or whether the employee was acting at the direction of superiors. Applicant further fails to show that the Chat is actually a communication regarding specific legal advice from its general counsel in counsel's capacity as such. Accordingly, Applicant's first and second motions to seal, except as stated herein, are **denied without prejudice**.[31]

However, in view of the "sacred" nature of the attorney-client privilege, in consideration of the Board's disposition of Applicant's remaining motions,[32] and because the district court's determination in the civil action as to whether the communication at issue in the civil action constitutes a "trade secret", is privileged,

---

[30] 4 TTABVUE 7-8, ¶¶ 2-3 (Shah Decl.).

[31] The Board hastens to add that Applicant's motion would have been denied without prejudice if it was considered as challenge to designations under the Standard Protective Order. Such a challenge requires a good faith effort to negotiate prior to making a motion, and Applicant failed to show any such effort to negotiate with Opposer. Standard Protective Order ¶ 14, *see also U.S. Polo Ass'n v. David McLane Ents., Inc.*, 2019 USPQ2d 108442, at * 2 (TTAB 2019); TBMP § 412.01(b).

[32] As noted previously, Applicant's motion to suspend for the civil action is granted. Moreover, Applicant's third and fourth motions to seal are **granted** as conceded to the extent that the submissions are sealed from public view but that the Board will entertain further submissions from the parties regarding whether the documents should remain under seal from public view upon resumption of proceedings. *See* Trademark Rule 2.127(a).

Opposition No. 91291526

or is otherwise protectable from public disclosure would have a bearing on a determination of whether documents including the Chat filed with the Board should be shielded from public viewing, the Board will continue to shield "Exhibit 3" to the original notice of opposition, "Exhibit[s] 3 [and] 5" of the amended notice of opposition, "Exhibit[s] B [and] C" to the Withdrawn Brief, "Exhibit[s] B [and] C" of Opposer's Supplemental Brief, "Exhibit B" to Opposer's response to Applicant's second motion to seal, and "Exhibit[s] C [and] D" to the Designation Motion pending the suspension of this proceeding.[33]

In view of the foregoing, the following documents (found at 1, 7, 10, 13, 15, and 16 TTABVUE) are placed under seal pending the suspension of this proceeding:

- "Exhibit 3" to the original notice of opposition;
- "Exhibit 3" and "Exhibit 5" to the amended notice of opposition;
- "Exhibit B" and "Exhibit C" to Opposer's Withdrawn Brief;
- "Exhibit B" and "Exhibit C" to Opposer's Supplemental Brief;
- "Exhibit B" to Opposer's response to Applicant's second motion to seal; and,
- "Exhibit B" to Opposer's Designation Motion.

For the avoidance of doubt, the Board is not making any determinations at this time as to whether or not the documents at issue in the motions to seal are properly protected under attorney-client privilege.[34] Upon resumption of these proceedings the Board will entertain further submissions from the parties regarding whether the documents should remain under seal from public view.

---

[33] Additionally, the prejudice to Applicant if the documents are made public outweighs the prejudice to Opposer if the documents remain under seal while the Board proceeding is suspended for the civil action.

[34] Nor does the Board make any determinations on whether the documents can otherwise be designated under the Board's Standard Protective Order.

12

Opposition No. 91291526

However, with the exception of information properly filed under seal, Board proceeding files are to be publicly available. *See* Trademark Rule 2.27(d)-(e), 37 C.F.R. § 2.27(d)-(e); *see also* TBMP § 412.04. Accordingly, when filed documents are shielded from public view, a public copy must be submitted redacting the portions submitted under seal. Trademark Rule 2.126(c), 37 C.F.R. § 2.126(c); *see also* TBMP § 412.04. In view thereof, and because the exhibits to be sealed were submitted by Opposer, Opposer must file public copies of the following wherein the exhibits identified above are redacted:

- original notice of opposition (1 TTABVUE);
- amended notice of opposition (7 TTABVUE);
- Withdrawn Brief (10 TTABVUE);
- Supplemental Brief (13 TTABVUE);
- Opposer's response to Applicant's second motion to seal (15 TTABVUE); and,
- Designation Motion (16 TTABVUE).

Opposer is allowed **TWENTY DAYS** from the date of this order **to submit the public copies of these docket entries**, failing which the Board may give the sealed exhibits no further consideration.

This cancellation proceeding is otherwise **SUSPENDED** pending the final disposition of the civil action between the parties. Within **THIRTY DAYS** after the final determination of the civil action, the parties must so notify the Board in writing, including a copy of the court's final order.[35] Upon resumption of the proceedings the

---

[35] A proceeding is considered to have been finally determined when an order or ruling that ends litigation has been rendered, and no appeal has been filed, or all appeals filed have been decided and the time for any further review has expired. *See* TBMP § 510.02(b).

13

Opposition No. 91291526

Board will reset dates as appropriate, including time for Applicant to answer or otherwise respond to the operative notice of opposition.

During the suspension period, the parties must notify the Board of any address changes for the parties or their attorneys. In addition, the parties must promptly inform the Board of any other related cases, even if they become aware of such cases during the suspension period.