# EXHIBIT A

# TTAB DECISIONS EWS CONCEALED

**UNITED STATES PATENT AND TRADEMARK OFFICE**
**Trademark Trial and Appeal Board**
**P.O. Box 1451**
**Alexandria, VA 22313-1451**
General Contact Number: 571-272-8500
General Email: TTABInfo@uspto.gov

RSC

October 1, 2024

Cancellation No. 92085110

*P.A.Z.E., LLC*

*v.*

*Early Warning Services, LLC*

**Rebecca Stempien Coyle, Interlocutory Attorney:**

This proceeding now comes before the Board for consideration of the following motions filed by Respondent Early Warning Services ("Respondent"): (1) May 31, 2024, motion to seal, (2) July 1, 2024, second motion to seal, and (3) July 1, 2024, motion to suspend pending termination of a civil action. Respondent's first motion to seal is contested, and no response was filed to either the second motion to seal or motion to suspend.[1]

As an initial matter, the Board notes Petitioner P.A.Z.E., LLC ("Petitioner") filed two responses to Respondent's first motion to seal.[2] Petitioner's responses appear to

---

[1] The Board has considered all of the parties' arguments, presumes the parties' familiarity with the factual bases for their filings, and does not recount the facts or arguments here, except as necessary to explain this decision. *See Guess? IP Holder LP v. Knowluxe LLC*, 116 USPQ2d 2018, 2019 (TTAB 2015).

[2] 10 TTABVUE, 11 TTABVUE. Record citations are to TTABVUE, the Board's publicly available docket system. *See, e.g., New Era Cap Co., Inc. v. Pro Era, LLC*, 2020 USPQ2d 10596, *2 n.1 (TTAB 2020).

Cancellation No. 92085110

counsel and a former employee and should be sealed. Respondent asserts the document is protected by attorney-client privilege, the privilege has not been waived, and Respondent has not authorized the disclosure of the privileged document to or by Petitioner.[10] In response to Respondent's first motion Petitioner argues that Respondent has not established the Chat is privileged. Petitioner further contends the Chat was publicly available and therefore any privilege is waived.[11]

Respondent's second motion to seal concerns "Exhibit D" and "Exhibit E" to Petitioner's two June 17, 2024, responses to Respondent's first motion to seal. Exhibit D consists of a printout of a webpage that includes images from what appears to be the same social media account as the contested exhibits to Petitioner's pleadings, which also include an image of the Chat, as well as a larger image of the Chat. Exhibit E consists of a printout from another social media account and also includes an image of the Chat.[12] In its second motion to seal Respondent modifies its request for relief, asking that Exhibits D and E be sealed "pending termination of the civil action".[13] As noted above, Petitioner did not respond to this motion.

**The Civil Action**[14]

In the civil action the parties are in the reverse position with Respondent as plaintiff asserting a variety of claims against three defendants: Plaintiff, Brandon

---

[10] 6 TTABVUE 2, *see also id.* at 7-8 (Decl. of Paras R. Shah, Senior Intellectual Property Counsel for Respondent ("Shah Decl.")).
[11] *See* 10 TTABVUE 9-12, 16-17.
[12] *Id.* at 34-40.
[13] 12 TTABVUE 3.
[14] The civil action is styled *Early Warning Services, LLC v. Warren Vurl Johnson, Brandon O'Loughlin, and P.A.Z.E. LLC,* Case No. 2:24-cv-01587-SMB, in the United States District Court for the District of Arizona (the "civil action").

Cancellation No. 92085110

O'Loughlin (plaintiff's CEO), and Warren Vurl Johnson (identified as former intellectual property counsel for Respondent).[15] The claims in the civil action include misappropriation of trade secrets, cybersquatting, and unjust enrichment, and a request for declaratory judgment of non-infringement.[16]

In support of its claims Respondent alleges, inter alia, that defendant Johnson improperly took numerous highly confidential and sensitive documents from Respondent, including a screen capture of a "Privileged Chat" between himself and Respondent's general counsel (wherein Johnson's identity is not shown); Petitioner "has repeatedly attached [the "Privileged Chat"] to its public filings" before the Board; and this "Privileged Chat" is among Respondent's trade secrets which were misappropriated by the defendants in the civil action.[17] Respondent further alleges it owns prior trademark rights to the mark PAZE as well as the stylized Z mark, and that Petitioner has no trademark rights in its asserted PAZE marks.[18]

Among the relief sought Respondent asks the district court to enjoin the defendants, including Petitioner, from using the mark PAZE or the stylized Z mark or any confusingly similar variations; order the defendants to remove from public view all documents containing Respondent's trade secrets; invalidate Petitioner's application Serial Nos. 98252022 and 98255290; and find that Respondent owns prior

---

[15] 13 TTABVUE 9-11.
[16] *Id.* at 25-34.
[17] *Id.* at 17-18, 22, 25-27.
[18] *Id.* at 32-34.

Cancellation No. 92085110

rights in the stylized Z mark and the mark is inherently distinctive, valid, and protectable.[19]

In its motion to suspend Respondent contends many of the same issues in the civil action are presented in the briefing on Respondent's motions to seal, as well as Petitioner's alleged entitlement to a statutory cause of action and its asserted claims in the Board proceeding. Respondent therefore maintains that suspension of Board proceedings, and continued shielding of the privileged documents at issue in the motions to seal, are warranted pending the final determination of the civil action. Again, Petitioner has not responded to the motion to suspend.

**Disposition of the Pending Motions**

The Board first considers the motion to suspend for the pending civil action. While the Board may grant the motion as conceded, in view of the nature of the claims in the civil action and Respondent's motions to seal, the Board provides the following analysis further explaining why suspension is warranted. *See* Trademark Rule 2.127(a), 37 C.F.R. § 2.127(a). "Whenever it shall come to the attention of the Trademark Trial and Appeal Board that a civil action … may have a bearing on a pending case, proceedings before the Board may be suspended until termination of the civil action[.]" Trademark Rule 2.117(a), 37 C.F.R. § 2.117(a); *see also* TRADEMARK TRIAL AND APPEAL BOARD MANUAL OF PROCEDURE ("TBMP") § 510.02(a) (2024). "[T]he civil action does not have to be dispositive of the Board proceeding to warrant suspension, it need only have a bearing on the issues before the Board." *New Orleans*

---

[19] *Id.* at 35-36.

Cancellation No. 92085110

*Louisiana Saints LLC v. Who Dat?, Inc.*, 99 USPQ2d 1550, 1552 (TTAB 2011). The Board does not require an issue to be joined in one or both proceedings so long as the Board can ascertain, prior to the filing of an answer(s), whether the final determination of the civil action may have a bearing on the Board proceeding. *See Other Tel. Co. v. Conn. Nat'l Tel. Co.*, 181 USPQ 125, 126-27 (TTAB 1974); *see also* TBMP § 510.02(a).

Here, at a minimum, the district court's determinations regarding Respondent's trademark rights would have a bearing on this proceeding. Moreover, if the district court enjoins Petitioner from using Repondent's asserted marks, such a decision may directly affect Petitioner's entitlement to a statutory cause of action in this proceeding. Accordingly, Respondent's motion to suspend pending the civil action is **granted**.

The Board next addresses the motions to seal. Through its first motion to seal Respondent requests that the exhibits to Petitioner's pleadings which include the Chat be placed under seal.[20] Although Respondent relies on the Standard Protective Order as the basis of its motion, Respondent does not invoke the confidentiality designations of the Standard Protective Order but rather relies on its assertion of attorney-client privilege.[21] Accordingly, the Board does not apply the standard for challenging designations set forth in the Standard Protective Order.[22] Rather, the

---

[20] 6 TTABVUE 2.
[21] *Id.*
[22] *See* Standard Protective Order ¶ 14.

7

Cancellation No. 92085110

Board construes Respondent's motion as seeking relief for "additional protections not provided" by the Standard Protective Order.[23]

The attorney-client privilege protects communications made in confidence between clients and their lawyers for the purpose of obtaining legal advice. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The attorney-client privilege "should be jealously protected." *Amerace Corp. v. USM Corp.*, 183 USPQ 506, 507 (TTAB 1974) (finding that communications between an attorney and a client regarding trademark infringement is protected by attorney-client privilege); *see also United States v. Bauer*, 132 F.3d 504, 510 (9th Cir. 1997) ("the attorney-client privilege is, perhaps, the most sacred of all legally recognized privileges, and its preservation is essential to the just and orderly operation of our legal system.").

When determining if the attorney-client privilege applies "the central inquiry is whether the communication is one that was made by a client to an attorney for the purpose of obtaining legal advice." *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 53 USPQ2d 1747, 1751 (Fed. Cir. 2000). Federal courts typically apply an eight-part test to determine whether information is covered by the attorney-client privilege:

> (1) where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*In re Grand Jury Investigation*, 974 F.2d 1068, 1071 n.2 (9th Cir. 1992) (quoting *United States v. Margolis*, 557 F.2d 209, 211 (9th Cir. 1977)). When the client is a

---

[23] *Id.* at ¶ 17.

8

Cancellation No. 92085110

company, attorney-client privilege may apply to communication between counsel and high-level corporate officers, as well as between counsel and any corporate employee acting at the direction of corporate superiors in order to secure legal advice for the corporation. *Upjohn*, 449 U.S. at 394, 101 S.Ct. 677; *see also The Goodyear Tire & Rubber Co. v. Uniroyal, Inc.*, 183 USPQ 372 (TTAB 1974).

However, "[t]he burden of determining which communications are privileged and which communications fall outside the scope of the privilege rests squarely on the party asserting the privilege." *In re Queen's Univ. at Kingston*, 820 F.3d 1287, 118 USPQ2d 1221, 1231 (Fed. Cir. 2016). To carry the burden, the party asserting the privilege must "describe in detail" the documents or information sought to be protected. *McCoo v. Denny's, Inc.*, 192 F.R.D. 675, 680 (D. Kan. 2000); *see also FTC v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 180 F.Supp.3d 1, 16 (D.D.C. 2016).

Here, the Board finds Respondent has fallen short of its burden of proving that the exhibits to the pleadings at issue are covered by the attorney-client privilege. Respondent has only stated that its general counsel was one of the persons to the Chat and that Respondent has not waived privilege.[24] Respondent provides no information regarding the former employee's position at the time of the Chat or whether the employee was acting at the direction of superiors. Respondent further fails to show that the Chat is actually a communication regarding specific legal advice

---

[24] 6 TTABVUE 7-8, ¶¶ 2-3 (Shah Decl.).

Cancellation No. 92085110

from its general counsel in counsel's capacity as such. Accordingly, Respondent's first motion to seal is **denied without prejudice**.[25]

However, in view of the "sacred" nature of the attorney-client privilege, and in consideration of the Board's disposition of Respondent's remaining motions, the Board will continue to shield Exhibit E to the original petition for cancellation, Exhibit B to the first amended petition for cancellation, and Exhibit B to the second amended petition for cancellation, pending the suspension of this proceeding.[26]

Turning to the second motion to seal, it appears that the Chat at issue in this motion to seal is the same as the Privileged Chat at issue in the civil action.[27] The district court's determination in the civil action as to whether this communication constitutes a "trade secret", is privileged, or is otherwise protectable from public disclosure would have a bearing on a determination of whether documents including the communication filed with the Board should be shielded from public viewing. Accordingly, Respondent's second motion to seal is **granted**, and Exhibits D and E to both of Petitioner's June 17, 2024, submissions will remain sealed pending termination of the civil action.[28]

---

[25] The Board hastens to add that Respondent's motion would have been denied without prejudice if it was considered as challenge to designations under the Standard Protective Order. Such a challenge requires a good faith effort to negotiate prior to making a motion, and Respondent failed to show any such effort to negotiate with Petitioner. Standard Protective Order ¶ 14, *see also U.S. Polo Ass'n v. David McLane Ents., Inc.*, 2019 USPQ2d 108442, at * 2 (TTAB 2019); TBMP § 412.01(b).

[26] Additionally, the prejudice to Respondent if the documents are made public outweighs the prejudice to Petitioner if the documents remain under seal while the Board proceeding is suspended for the civil action.

[27] The Board reiterates the Chat shown in the exhibits to the pleadings is the same as the Chat shown in Exhibits D and E to Petitioner's response brief.

[28] The second motion to seal is also conceded. *See* Trademark Rule 2.127(a), 37 C.F.R. § 2.127(a).

Cancellation No. 92085110

In view of the foregoing, the following documents are placed under seal pending the suspension of this proceeding:

- "Exhibit E" to the original petition for cancellation;
- "Exhibit B" to the first amended petition for cancellation;
- "Exhibit B" to the second amended petition for cancellation;
- "Exhibit D" and "Exhibit E" to Petitioner's first submission of June 17, 2024; and
- "Exhibit D" and "Exhibit E" to Petitioner's second submission of June 17, 2024.

For the avoidance of doubt, the Board is not making any determinations at this time as to whether or not the documents at issue in the motions to seal are properly protected under attorney-client privilege.[29] Upon resumption of these proceedings the Board will entertain further submissions from the parties regarding whether the documents should remain under seal from public view.

However, with the exception of information properly filed under seal, Board proceeding files are to be publicly available. *See* Trademark Rule 2.27(d)-(e), 37 C.F.R. § 2.27(d)-(e); *see also* TBMP § 412.04. Accordingly, when filed documents are shielded from public view, a public copy must be submitted redacting the portions submitted under seal. Trademark Rule 2.126(c), 37 C.F.R. § 2.126(c); *see also* TBMP § 412.04. In view thereof, and because the exhibits to be sealed were submitted by Petitioner, Petitioner must file public copies of the following wherein the exhibits identified above are redacted:

- original petition for cancellation (1 TTABVUE),
- first amended petition for cancellation (4 TTABVUE),
- second amended petition for cancellation (5 TTABVUE), and

---

[29] Nor does the Board make any determinations on whether the documents can otherwise be designated under the Board's Standard Protective Order.

11

Cancellation No. 92085110

- its June 17, 2024, responses to Respondent's first motion to seal (11 TTABVUE).[30]

Petitioner is allowed **TWENTY DAYS** from the date of this order **to submit the public copies of these docket entries**, failing which the Board may give the sealed exhibits no further consideration.

This cancellation proceeding is otherwise **SUSPENDED** pending the final disposition of the civil action between the parties. Within THIRTY DAYS after the final determination of the civil action, the parties must so notify the Board in writing, including a copy of the court's final order.[31] Upon resumption of the proceedings the Board will reset dates as appropriate, including time for Respondent to answer or otherwise respond to the operative petition for cancellation.

During the suspension period, the parties must notify the Board of any address changes for the parties or their attorneys. In addition, the parties must promptly inform the Board of any other related cases, even if they become aware of such cases during the suspension period.

---

[30] Because 10 TTABVUE and 11 TTABVUE are identical, and so as to not unnecessarily clutter the record, Petitioner need not submit a public version of 10 TTABVUE.

[31] A proceeding is considered to have been finally determined when an order or ruling that ends litigation has been rendered, and no appeal has been filed, or all appeals filed have been decided and the time for any further review has expired." *See* TBMP § 510.02(b).

THIS ORDER IS NOT A
PRECEDENT OF THE TTAB

**UNITED STATES PATENT AND TRADEMARK OFFICE**
**Trademark Trial and Appeal Board**
**P.O. Box 1451**
**Alexandria, VA  22313-1451**
General Contact Number: 571-272-8500
General Email: TTABInfo@uspto.gov

ajl

October 1, 2024

Opposition No. 91291526

*P.A.Z.E.LLC*

*v.*

*Early Warning Services, LLC*

**Ashlyn Lembree, Interlocutory Attorney:**

This proceeding now comes before the Board for consideration of several motions concerning essentially the same chat message asserted by Applicant to be protected by attorney-client privilege (the "Chat") included in six of Opposer's seven submissions to the Board to date; and, Applicant's July 1, 2024 uncontested motion to suspend pending termination of a civil action.[1] Applicant's May 31, 2024 motion to seal the Chat shown in the original notice of opposition is contested.[2] Applicant's June 7, 2024 second motion to seal the Chat shown in the amended notice of opposition is

---

[1] 17 TTABVUE. Record citations are to TTABVUE, the Board's publicly available docket system. *See, e.g., New Era Cap Co., Inc. v. Pro Era, LLC*, 2020 USPQ2d 10596, *2 n.1 (TTAB 2020).

[2] 4 TTABVUE (Applicant's first motion to seal). 10, 12, 13, and 14 TTABVUE (Opposer's subsequently-withdrawn initial brief ("Withdrawn Brief"), Opposer's substitute brief, Opposer's supplement to its substitute brief ("Supplemental Brief"), and Opposer's construed fourth response, respectively). As discussed herein, Opposer's Supplemenetal Brief and fourth response to the motion are denied consideration. The Board previously shielded the notice of opposition and Withdrawn Brief from public view pending disposition of Applicant's first motion to seal. 6, 12 TTABVUE.

Opposition No. 91291526

contested.[3] Applicant's June 14, 2024 third motion to seal the Chat shown in Opposer's Supplemental Brief is uncontested.[4] Opposer's motion, filed June 17, 2024, that "the Board [issue] an order that [Exhibit 3 to the notice of opposition] be ruled Information Not to Be Designated as Protected" (Opposer's "Designation Motion") is, as discussed herein, construed as Opposer's fourth response to Applicant's first motion to seal and denied consideration.[5] In conjunction with its motion to suspend, Applicant moves for a fourth time to seal the Chat, albeit in that instance the Chat as shown in Opposer's response to Applicant's second motion to seal and as shown in Opposer's Designation Motion.[6] Applicant's fourth motion to seal is uncontested.

The Board has considered all of the parties' arguments, presumes the parties' familiarity with the factual bases for their filings, and does not recount the facts or arguments here, except as necessary to explain this decision. *See Guess? IP Holder LP v. Knowluxe LLC*, 116 USPQ2d 2018, 2019 (TTAB 2015).

As an initial matter, the Board notes Opposer filed four responses to Applicant's first motion to seal.[7] Duplicate submissions unnecessarily complicate this proceeding and Opposer is admonished to take greater care with its filings with the Board. The presentation of one's arguments and authority should be presented thoroughly in the

---

[3] 8 TTABVUE (Applicant's second motion to seal). 16 TTABVUE (Opposer's response brief). The Board previously shielded the amended notice of opposition from public view pending disposition of Applicant's second motion to seal. 12 TTABVUE.
[4] 14 TTABVUE.
[5] 15 TTABVUE. Opposer's "reservat[ion of] its right to answer or otherwise move with respect to [Applicant's three motions to seal]," *id*. at 2, is **denied**. *See* Trademark Rule 2.127(a), 37 C.F.R. § 2.127(a).
[6] 17 TTABVUE 3-4.
[7] *See* n.2, supra.

Opposition No. 91291526

motion or the opposition brief thereto. *Johnston Pump/Gen. Valve Inc. v. Chromalloy Am. Corp.*, 13 USPQ2d 1719, 1720 n.3 (TTAB 1989); TRADEMARK TRIAL AND APPEAL BOARD MANUAL OF PROCEDURE (TBMP) § 502.02(b) (2024). Moreover, submissions with the Board are assigned a single filing date for purposes of calculating the deadline for filing a response or reply brief under Trademark Rule 2.127(a). *OMS Investments, Inc. v. Habit Horticulture LLC*, 2022 USPQ2d 1074, at *1-2 (TTAB 2022). By order dated June 12, 2024, the Board exercised its discretion to substitute Opposer's second response for its first response, thereby setting the single filing date for Opposer's response to Applicant's first motion to seal for purposes of calculating the deadline for Applicant to file its reply brief. In view thereof, Opposer's third response to Applicant's first motion to seal (Opposer's Supplemental Brief), filed subsequent to the Board's order setting the briefing schedule for the motion based on the single date of filing of Opposer's accepted response to the motion, is **denied consideration**. Moreover, inasmuch as Opposer responds to Applicant's first motion to seal in its Designation Motion and its arguments therein address the same issue raised by Applicant's first motion to seal, Opposer's Designation Motion is construed as its fourth response to Applicant's first motion to seal and is **denied consideration** as improperly filed subsequent to Opposer's single, accepted response to Applicant's first motion to seal.

### The Board Proceeding

On May 16, 2024, Opposer filed a notice of opposition opposing registration of involved application Serial No. 97669754 for the standard character mark PAZE for

3

Opposition No. 91291526

"Financial transaction services, namely, providing secure commercial transaction options and secure electronic funds transfer; processing of secure electronic wallet transactions" in International Class 36.[8]

Opposer filed an amended notice of opposition prior to Applicant's answer, and the Board accepted Opposer's amended notice of opposition as its operative pleading.[9] Under the operative pleading, Opposer alleges, inter alia, that it owns pending applications Serial Nos. 98255290 and 98252002 for, respectively, the standard character and stylized mark PAZE and that "Opposer believes that if the [involved a]pplication is allowed to register it will cause delays and complications with the registration of Opposer's Marks, causing harm and costs to Opposer,"[10] and identifies the following grounds for cancellation: merely descriptive, lack of bona fide intent to use, fraud, nonuse, and that the identification of services was impermissibly expanded during examination.[11] Opposer also submits several exhibits in support of both its notice of opposition and amended notice of opposition, including a document identified as "Exhibit 3" to its original notice of opposition[12] and "Exhibit[s] 3 [and] 5" to its amended notice of opposition.[13]

---

[8] 1 TTABVUE. Application Serial No. 97669754 was filed November 9, 2022 under Trademark Act Section 1(b), 15 U.S.C. § 1052(b) and amended to a filing basis under Trademark Act Section 1(a), 15 U.S.C. § 1052(a) by way of an amendment to allege use filed December 11, 2023 and accepted February 5, 2024.

[9] 12 TTABVUE, *see also* Amended Notice of Opposition (7 TTABVUE).

[10] 7 TTABVUE 5-6, at ¶¶ 22, 27. "Opposer's Marks" is undefined.

[11] *Id.* at 7-25 (counts first through fifth).

[12] 1 TTABVUE 214-15 (Exhibit 3).

[13] 7 TTABVUE 335-36 (Exhibit 3) and 365 (Exhibit 5).

Opposition No. 91291526

By order dated June 6, 2024, the Board suspended proceedings pending disposition of Applicant's first motion to seal. By the Board's June 12, 2024 order, proceedings remained suspended pending disposition of both Applicant's first and second motions to seal. Accordingly, the time for Applicant to respond to the amended notice of opposition has also been suspended. The Board will reset time for Applicant to respond to the pleading as appropriate.

**The "Privileged Documents" At Issue in Applicant's Motions to Seal**

Applicant's four motions to seal[14] collectively request that the documents appearing as "Exhibit 3" to the original notice of opposition, "Exhibit[s] 3 [and] 5" of the amended notice of opposition, "Exhibit[s] B [and] C" of Opposer's Supplemental Brief,[15] "Exhibit B" to Opposer's response to Applicant's second motion to seal,[16] and "Exhibit[s] C [and] D" to the Designation Motion[17] be placed under seal. As raised in its June 12, 2024 order, the Board additionally addresses "Exhibit B" and "Exhibit C" to the Withdrawn Brief. These exhibits are substantially identical and consist of one or two pages; where both pages have been submitted, the first page appears to be a screenshot of posts on a social media site with one post including an image of a chat, and the second (or only) page is a larger image of that chat (for purposes of this order the Board will refer to the chat shown in both pages as the "Chat").

---

[14] As previously noted, Applicant's fourth motion to seal was combined with Applicant's motion to suspend for the civil action. 17 TTABVUE 3-4. Applicant's fourth motion to seal moves that Exhibits C and D to Opposer's Designation Motion and Exhibit B to Opposer's response to Applicant's second motion to seal be sealed.

[15] 13 TTABVUE 9-14 (Exhibits B and C).

[16] 16 TTABVUE 18-22 (Exhibit B).

[17] 15 TTABVUE 15-21 (Exhibits C and D).

Opposition No. 91291526

Applicant contends that the Chat is a "privileged document" depicting a screen capture of a chat on Applicant's internal messaging system between its general counsel and a former employee and should be sealed. Applicant asserts the document is protected by attorney-client privilege, the privilege has not been waived, and Applicant has not authorized the disclosure of the privileged document to or by Opposer.[18] In its accepted response to Applicant's first motion to seal and in its response to Applicant's second motion to seal, Opposer argues that Applicant has not established the Chat is privileged. Opposer further contends the Chat was publicly available and therefore any privilege is waived or not applicable.[19] As noted above, Opposer did not respond to Applicant's third and fourth motions to seal.

**The Civil Action[20]**

In the civil action the parties are in the reverse position with Applicant as plaintiff asserting a variety of claims against three defendants: Plaintiff [Opposer in the Board proceeding], Brandon O'Loughlin (plaintiff's CEO), and Warren Vurl Johnson (identified as former intellectual property counsel for Applicant).[21] The claims in the

---

[18] *See, e.g.*, 4 TTABVUE 2; *see also id*. at 7-8, ¶¶ 2, 3 (Decl. of Paras R. Shah, Senior Intellectual Property Counsel for Applicant ("Shah Decl.")).

[19] *See* 11 TTABVUE 7-9, 11-16. Opposer's response brief also includes a section entitled "Motions to Redesignate Information per The Standard Protective Order," 11 TTABVUE 9-11, but Opposer makes no motion in this portion of its brief. *See also* 16 TTABVUE 2, 8 (publicly available); *id*. at 8-13 (crime-fraud exception).

[20] The civil action is styled *Early Warning Services, LLC v. Warren Vurl Johnson, Brandon O'Loughlin, and P.A.Z.E. LLC,* Case No. 2:24-cv-01587-SMB, in the United States District Court for the District of Arizona (the "civil action").

[21] 17 TTABVUE 8-11 (Complaint in the civil action).

Opposition No. 91291526

civil action include misappropriation of trade secrets, cybersquatting, and unjust enrichment, and a request for declaratory judgment of non-infringement.[22]

In support of its claims in the civil action Applicant alleges, inter alia, that defendant Johnson improperly took numerous highly confidential and sensitive documents from Applicant, including a screen capture of a "Privileged Chat" between himself and Applicant's general counsel (wherein Johnson's identity is not shown); Opposer "has repeatedly attached [the "Privileged Chat"] to its public filings" before the Board; and this "Privileged Chat" is among Applicant's trade secrets which were misappropriated by the defendants in the civil action.[23] Applicant further alleges it owns prior trademark rights to the mark PAZE as well as the stylized Z mark, and that Opposer has no trademark rights in its asserted PAZE marks.[24]

Among the relief sought, Applicant asks the district court to enjoin the defendants, including Opposer, from using the mark PAZE or the stylized Z mark or any confusingly similar variations; order the defendants to remove from public view all documents containing Applicant's trade secrets; invalidate Opposer's application Serial Nos. 98252022 and 98255290; and find that Applicant owns prior rights in, inter alia, the PAZE and stylized Z marks and the marks are inherently distinctive, valid, and protectable.[25]

In its motion to suspend, Applicant contends many of the same issues in the civil action are presented in the briefing on Applicant's motions to seal, as well as

---

[22] *Id.* at 25-34.
[23] *Id.* at 17-18, 22, 25-27.
[24] *Id.* at 32-34.
[25] *Id.* at 35-36.

Opposition No. 91291526

Opposer's alleged entitlement to a statutory cause of action and its asserted claims in the Board proceeding. Applicant therefore maintains that suspension of Board proceedings, and continued shielding of the privileged documents at issue in the motions to seal, are warranted pending the final determination of the civil action. Again, Opposer has not responded to the motion to suspend.

### Disposition of the Pending Motions

The Board first considers the motion to suspend for the pending civil action. While the Board may grant the motion as conceded, in view of the nature of the claims in the civil action and Applicant's motions to seal, the Board provides the following analysis further explaining why suspension is warranted. *See* Trademark Rule 2.127(a). "Whenever it shall come to the attention of the Trademark Trial and Appeal Board that a civil action … may have a bearing on a pending case, proceedings before the Board may be suspended until termination of the civil action[.]" Trademark Rule 2.117(a), 37 C.F.R. § 2.117(a); *see also* TBMP § 510.02(a). "[T]he civil action does not have to be dispositive of the Board proceeding to warrant suspension, it need only have a bearing on the issues before the Board." *New Orleans Louisiana Saints LLC v. Who Dat?, Inc.*, 99 USPQ2d 1550, 1552 (TTAB 2011). The Board does not require an issue to be joined in one or both proceedings so long as the Board can ascertain, prior to the filing of an answer(s), whether the final determination of the civil action may have a bearing on the Board proceeding. *See Other Tel. Co. v. Conn. Nat'l Tel. Co.*, 181 USPQ 125, 126-27 (TTAB 1974); *see also* TBMP § 510.02(a).

8

Opposition No. 91291526

Here, at a minimum, the district court's determinations regarding Applicant's trademark rights would have a bearing on this proceeding. Moreover, if the district court enjoins Opposer from using Applicant's asserted marks, such a decision may directly affect Opposer's entitlement to a statutory cause of action in this proceeding. Accordingly, Applicant's motion to suspend pending the civil action is **granted**.

The Board next addresses the motions to seal. Through its first motion to seal Applicant requests that the exhibits to Opposer's pleadings which include the Chat be placed under seal.[26] Although Applicant relies on the Standard Protective Order as the basis of its motion, Applicant does not invoke the confidentiality designations of the Standard Protective Order but rather relies on its assertion of attorney-client privilege.[27] Accordingly, the Board does not apply the standard for challenging designations set forth in the Standard Protective Order.[28] Rather, the Board construes Applicant's motion as seeking relief for "additional protections not provided" by the Standard Protective Order.[29]

The attorney-client privilege protects communications made in confidence between clients and their lawyers for the purpose of obtaining legal advice. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The attorney-client privilege "should be jealously protected." *Amerace Corp. v. USM Corp.*, 183 USPQ 506, 507 (TTAB 1974) (finding that communications between an attorney and a client regarding trademark infringement is protected by attorney-client privilege); *see also United*

---

[26] 4 TTABVUE 2.

[27] *Id.*

[28] *See* Standard Protective Order ¶ 14.

[29] *Id.* at ¶ 17.

9

Opposition No. 91291526

*States v. Bauer*, 132 F.3d 504, 510 (9th Cir. 1997) ("the attorney-client privilege is, perhaps, the most sacred of all legally recognized privileges, and its preservation is essential to the just and orderly operation of our legal system.").

When determining if the attorney-client privilege applies "the central inquiry is whether the communication is one that was made by a client to an attorney for the purpose of obtaining legal advice." *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 53 USPQ2d 1747, 1751 (Fed. Cir. 2000). Federal courts typically apply an eight-part test to determine whether information is covered by the attorney-client privilege:

> (1) where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*In re Grand Jury Investigation*, 974 F.2d 1068, 1071 n.2 (9th Cir. 1992) (quoting *United States v. Margolis*, 557 F.2d 209, 211 (9th Cir. 1977)). When the client is a company, attorney-client privilege may apply to communication between counsel and high-level corporate officers, as well as between counsel and any corporate employee acting at the direction of corporate superiors in order to secure legal advice for the corporation. *Upjohn*, 449 U.S. at 394, 101 S.Ct. 677; *see also The Goodyear Tire & Rubber Co. v. Uniroyal, Inc.*, 183 USPQ 372 (TTAB 1974).

However, "[t]he burden of determining which communications are privileged and which communications fall outside the scope of the privilege rests squarely on the party asserting the privilege." *In re Queen's Univ. at Kingston*, 820 F.3d 1287, 118 USPQ2d 1221, 1231 (Fed. Cir. 2016). To carry the burden, the party asserting the

10

Opposition No. 91291526

privilege must "describe in detail" the documents or information sought to be protected. *McCoo v. Denny's, Inc.*, 192 F.R.D. 675, 680 (D. Kan. 2000); *see also FTC v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 180 F.Supp.3d 1, 16 (D.D.C. 2016).

Here, the Board finds Applicant has fallen short of its burden of proving that the Chat document is covered by the attorney-client privilege. Applicant has only stated that its general counsel was one of the persons to the Chat and that Applicant has not waived privilege.[30] Applicant provides in its motions to seal no information regarding the former employee's position at the time of the Chat or whether the employee was acting at the direction of superiors. Applicant further fails to show that the Chat is actually a communication regarding specific legal advice from its general counsel in counsel's capacity as such. Accordingly, Applicant's first and second motions to seal, except as stated herein, are **denied without prejudice**.[31]

However, in view of the "sacred" nature of the attorney-client privilege, in consideration of the Board's disposition of Applicant's remaining motions,[32] and because the district court's determination in the civil action as to whether the communication at issue in the civil action constitutes a "trade secret", is privileged,

---

[30] 4 TTABVUE 7-8, ¶¶ 2-3 (Shah Decl.).

[31] The Board hastens to add that Applicant's motion would have been denied without prejudice if it was considered as challenge to designations under the Standard Protective Order. Such a challenge requires a good faith effort to negotiate prior to making a motion, and Applicant failed to show any such effort to negotiate with Opposer. Standard Protective Order ¶ 14, *see also U.S. Polo Ass'n v. David McLane Ents., Inc.*, 2019 USPQ2d 108442, at * 2 (TTAB 2019); TBMP § 412.01(b).

[32] As noted previously, Applicant's motion to suspend for the civil action is granted. Moreover, Applicant's third and fourth motions to seal are **granted** as conceded to the extent that the submissions are sealed from public view but that the Board will entertain further submissions from the parties regarding whether the documents should remain under seal from public view upon resumption of proceedings. *See* Trademark Rule 2.127(a).

11

Opposition No. 91291526

or is otherwise protectable from public disclosure would have a bearing on a determination of whether documents including the Chat filed with the Board should be shielded from public viewing, the Board will continue to shield "Exhibit 3" to the original notice of opposition, "Exhibit[s] 3 [and] 5" of the amended notice of opposition, "Exhibit[s] B [and] C" to the Withdrawn Brief, "Exhibit[s] B [and] C" of Opposer's Supplemental Brief, "Exhibit B" to Opposer's response to Applicant's second motion to seal, and "Exhibit[s] C [and] D" to the Designation Motion pending the suspension of this proceeding.[33]

In view of the foregoing, the following documents (found at 1, 7, 10, 13, 15, and 16 TTABVUE) are placed under seal pending the suspension of this proceeding:

- "Exhibit 3" to the original notice of opposition;
- "Exhibit 3" and "Exhibit 5" to the amended notice of opposition;
- "Exhibit B" and "Exhibit C" to Opposer's Withdrawn Brief;
- "Exhibit B" and "Exhibit C" to Opposer's Supplemental Brief;
- "Exhibit B" to Opposer's response to Applicant's second motion to seal; and,
- "Exhibit B" to Opposer's Designation Motion.

For the avoidance of doubt, the Board is not making any determinations at this time as to whether or not the documents at issue in the motions to seal are properly protected under attorney-client privilege.[34] Upon resumption of these proceedings the Board will entertain further submissions from the parties regarding whether the documents should remain under seal from public view.

---

[33] Additionally, the prejudice to Applicant if the documents are made public outweighs the prejudice to Opposer if the documents remain under seal while the Board proceeding is suspended for the civil action.

[34] Nor does the Board make any determinations on whether the documents can otherwise be designated under the Board's Standard Protective Order.

Opposition No. 91291526

However, with the exception of information properly filed under seal, Board proceeding files are to be publicly available. *See* Trademark Rule 2.27(d)-(e), 37 C.F.R. § 2.27(d)-(e); *see also* TBMP § 412.04. Accordingly, when filed documents are shielded from public view, a public copy must be submitted redacting the portions submitted under seal. Trademark Rule 2.126(c), 37 C.F.R. § 2.126(c); *see also* TBMP § 412.04. In view thereof, and because the exhibits to be sealed were submitted by Opposer, Opposer must file public copies of the following wherein the exhibits identified above are redacted:

- original notice of opposition (1 TTABVUE);
- amended notice of opposition (7 TTABVUE);
- Withdrawn Brief (10 TTABVUE);
- Supplemental Brief (13 TTABVUE);
- Opposer's response to Applicant's second motion to seal (15 TTABVUE); and,
- Designation Motion (16 TTABVUE).

Opposer is allowed **TWENTY DAYS** from the date of this order **to submit the public copies of these docket entries**, failing which the Board may give the sealed exhibits no further consideration.

This cancellation proceeding is otherwise **SUSPENDED** pending the final disposition of the civil action between the parties. Within **THIRTY DAYS** after the final determination of the civil action, the parties must so notify the Board in writing, including a copy of the court's final order.[35] Upon resumption of the proceedings the

---

[35] A proceeding is considered to have been finally determined when an order or ruling that ends litigation has been rendered, and no appeal has been filed, or all appeals filed have been decided and the time for any further review has expired. *See* TBMP § 510.02(b).

13

Opposition No. 91291526

Board will reset dates as appropriate, including time for Applicant to answer or otherwise respond to the operative notice of opposition.

During the suspension period, the parties must notify the Board of any address changes for the parties or their attorneys. In addition, the parties must promptly inform the Board of any other related cases, even if they become aware of such cases during the suspension period.

14

# <u>EXHIBIT B</u>
# EWS Systematic Use of Reflection Analysis

## EXHBIT B - ANALYSIS: EWS'S SYSTEMATIC USE OF "REFLECT" AS RHETORICAL BRIDGE

**\*Reference EXHIBIT B -**

## EXECUTIVE SUMMARY

Through examination of all EWS filings in this matter, a clear pattern emerges: *EWS systematically deploys the word "reflect" and its variations exactly when they need to establish a connection or reach a conclusion but lack direct evidence to support that connection.* This analysis documents all **24 instances** where EWS uses this rhetorical technique.

## THE PATTERN IDENTIFIED

EWS uses "reflect" as a linguistic bridge in four primary contexts:

1. PRIVILEGE ASSERTIONS (12 instances - 50% of total)
   When EWS needs the Court to conclude that something constitutes "legal advice" without proving the content was actually legal advice.
2. TRADE SECRETS CLAIMS (5 instances - 20% of total)

   When EWS needs to assert confidentiality or trade secret status without specific identification.

3. JOHNSON'S MENTAL STATE (5 instances - 20% of total)

   When EWS needs to attribute intent, understanding, or bad faith to Johnson without evidence of his actual mental state.

4. EWS GOOD FAITH (1 instance - 4% of total)

   When EWS needs to attribute intent, understanding, or good faith to EWS without evidence of any such good faith.

5. JOHNSON'S ROLE AT EWS (1 instance – 4%)

   When EWS needs be vague and *against the weight of evidence* presented by Johnson when they have no counter evidence.

## KEY OBSERVATIONS

   I.    THE THREE CATEGORIES OF PRIVILEGE "REFLECTS"
      a. **CATEGORY 1: Warren's Filings "Reflect" Privileged Information (9 instances)**
         EWS claims that Warren's public filings and motions "reflect" privileged content, creating a novel theory that discussing the existence or subject matter of communications constitutes revealing privileged information.

## EXHBIT B - ANALYSIS: EWS'S SYSTEMATIC USE OF "REFLECT" AS RHETORICAL BRIDGE

**Representative Examples**:

**Dkt. 1 (Complaint)**:

"P.A.Z.E.'s filings in both TTAB Proceedings reflect knowledge of EWS's privileged and confidential information."

**Dkt. 273 (Motion to Seal Crime-Fraud Motion)**:

"The following excerpts from Johnson's Motion contain EWS's privileged information because they reflect Johnson's legal advice to EWS concerning contract negotiations..."

**Analysis**: EWS uses "reflect" to expand privilege protection beyond the communication itself to any document that references or discusses the subject matter. This transforms privilege from a shield (protecting communications) into a sword (suppressing Warren's defensive use of his own work product).

b.  **CATEGORY 2: Teams Chat "Reflects" Legal Advice (4 instances)**

EWS asserts the Microsoft Teams Chat "reflected" legal advice, yet cannot produce a single message containing an actual legal question or legal opinion.

**Foundational Example - Dkt. 17 (Cheney Declaration)**: "The chat reflected Johnson's legal advice to EWS concerning EWS's contract negotiations and trademark applications."

**Dkt. 144 (Opposition to Motion to Strike)**:

"the partial chat entry at the top of the page reflects Johnson's legal advice to EWS regarding the clearance and filing of trademark applications"

**Dkt. 159 (Sealed Motion for Sanctions)**:

"the partial chat entry at the top of the page reflects Johnson's legal advice to EWS regarding the clearance and filing of trademark applications"

**Analysis**: "Reflected" rather than "contained" or "included" signals that legal advice must be inferred rather than observed. The word choice admits what two TTAB judges explicitly found: the Chat contains business communications about trademark strategy, not legal advice.

c.  **CATEGORY 3: Warren's Knowledge "Reflects" Privilege (5 instances)**

EWS creates circular reasoning: Warren's knowledge of EWS information "reflects" that the information was privileged, when his knowledge actually came from his employment duties as IP counsel.

**Dkt. 17 (Cheney Declaration)**:

"P.A.Z.E.'s filings in both TTAB Proceedings reflect Johnson's knowledge of EWS's privileged and confidential information and trade secrets."

## <u>EXHBIT B - ANALYSIS: EWS'S SYSTEMATIC USE OF "REFLECT" AS RHETORICAL BRIDGE</u>

**Dkt. 117 (Response to Motion for Reconsideration)**:
"This suggestion reflects Johnson's profound misunderstanding of attorney-client privilege."

**Analysis**: EWS confuses Warren's employment-based knowledge with unauthorized access to privileged communications. The "reflects" formulation allows this conflation without directly stating the false equivalence.

## II.    THE DOUBLE-REFLECTION THEORY

a.  The most sophisticated use of "reflects" appears in EWS's motions to seal Warren's filings, creating two layers of inferential privilege:
**Layer 1**: The Teams Chat "reflected" (rather than "contained") legal advice
**Layer 2**: Warren's motions "reflect" (rather than "quote") the Chat
This double-reflection theory appears most prominently in:
- Dkt. 144 (Motion to Seal Opposition to Sanctions Motion)
- Dkt. 159 (Motion to Seal Crime-Fraud Exception Motion)
- Dkt. 265 (Motion to Seal Reply)
- Dkt. 273 (Motion to Seal Crime-Fraud Motion)

b.  **The Logical Absurdity**
If EWS's theory were accepted:
1. A document that "reflects" legal advice becomes privileged
2. Any document discussing that first document also "reflects" the privilege
3. Therefore, privilege extends infinitely through chains of reference
This would allow parties to seal opposing counsel's arguments by claiming they "reflect" documents that themselves only "reflected" legal advice.

## III.    CONCEALED ADVERSE AUTHORITY

a.  Two federal TTAB judges explicitly rejected EWS's "reflects" theory:
   i.  **TTAB Judge Lynch (Oct. 17, 2024) - Serial No. 97120867:**
       "EWS fell short of its burden in providing the [Cheney] Declaration that the Microsoft Teams chat is a confidential communication made for the purpose of obtaining legal advice.
   ii.  **TTAB Judge Larkin (Oct. 29, 2024) - Serial No. 97121068:**
       "EWS fell short of its burden... we cannot determine from the Cheney Declaration whether the purpose of the Teams chat was for obtaining or providing legal advice, or for some other business purpose."

## <u>EXHBIT B - ANALYSIS: EWS'S SYSTEMATIC USE OF "REFLECT" AS RHETORICAL BRIDGE</u>

**Critical Fact**: EWS concealed these October 2024 rulings from the district court while simultaneously arguing (Dkt. 208, Nov. 1, 2024) that the Chat was "undoubtedly privileged." The district court adopted this characterization without knowledge of directly contradictory federal authority issued two weeks prior.

## IV. EVIDENTIARY ANALYSIS: WHERE "REFLECTS" APPEARS
### a. What "Reflects" Replaces

| Should Say | EWS Actually Says | Why This Matters |
|---|---|---|
| "The Chat contained legal advice" | "The Chat reflected legal advice" | "Contained" requires proof; "reflected" allows inference |
| "Warren quoted privileged communications" | "Warren's filing reflects privileged information" | "Quoted" is verifiable; "reflects" is subjective |
| "Warren accessed privileged documents" | "Warren's knowledge reflects privileged information" | "Accessed" requires evidence; "reflects" requires none |

### b. The Rhetorical Function
"Reflects" performs three simultaneous functions:

1. **Assertion without proof**: Claims privilege exists without demonstrating elements
2. **Expansion of scope**: Extends privilege beyond communications to subject matter
3. **Shifting burden**: Forces opponent to disprove privilege rather than requiring proponent to prove it

## V. COMPARATIVE ANALYSIS: PRIVILEGE vs. NON-PRIVILEGE CONTEXTS
### a. When EWS Proves Rather Than "Reflects"
In contexts where EWS actually has evidence, they use precise evidentiary language:

**Trade Secrets** (where they must prove misappropriation):
- "containing or reflecting any of EWS's Trade Secrets" (Dkt. 1)
- [Note: Even here, "reflecting" hedges the claim]
  **Johnson's Actions** (where documentary evidence exists):
- "The Superior Court's case docket initially did not reflect the document in question" (Dkt. 28-1)

## <u>EXHBIT B - ANALYSIS: EWS'S SYSTEMATIC USE OF "REFLECT" AS RHETORICAL BRIDGE</u>

- [Note: Here "reflect" means "show" - normal usage]

**Conclusion**: EWS reserves "reflects" for privilege contexts precisely because privilege lacks direct evidence.

## VI.  THE EMPLOYEE HANDBOOK PROBLEM

EWS's systematic reliance on "reflects" to infer confidentiality directly contradicts their own Employee Handbook:

"Employees have no expectation of privacy in any communications sent or received on Company systems."

**The Contradiction**:

- Handbook: No expectation of privacy in Teams communications
- EWS Privilege Claims: Teams Chat "reflected" confidential legal advice

  This contradiction explains why EWS must use inferential language ("reflects") rather than direct claims ("contains confidential communications").

## VII.  LEGAL IMPLICATIONS

### a.  Failure to Establish Privilege Elements

To prove attorney-client privilege, EWS must demonstrate:

i. Communication was made in confidence
ii. Purpose was obtaining/providing legal advice
iii. Confidentiality was maintained

"Reflects" substitutes for proving these elements, particularly:

- **Confidentiality**: Cannot prove when Handbook defeats privacy expectation
- **Purpose**: Cannot prove when Chat discusses business strategy, not legal questions
- **Legal advice**: Cannot prove when no attorney-client relationship existed (Warren was employee counsel)

### b.  Violation of Rule 3.3 (Candor to Tribunal)

By concealing adverse TTAB rulings while arguing the Chat was "undoubtedly privileged," EWS's counsel violated their duty to:

- Disclose directly adverse controlling authority
- Correct false statements of material fact
- Avoid misleading the tribunal

### c.  At-Issue Waiver

EWS places the Chat "at issue" by:

- Making it the foundation of trade secret claims
- Using it to prove Warren's alleged misappropriation

## EXHBIT B - ANALYSIS: EWS'S SYSTEMATIC USE OF "REFLECT" AS RHETORICAL BRIDGE

- Citing it in over 30 filings to establish their case

Having weaponized the Chat as a sword, EWS cannot claim privilege as a shield when Warren seeks to use it defensively.

## VIII.  TACTICAL OBSERVATIONS

### Why "Reflects" Works (Temporarily)

1. **Sounds authoritative**: Creates impression of established fact
2. **Avoids direct falsehood**: Inference is harder to challenge than assertion
3. **Shifts analytical burden**: Opponent must explain why inference fails
4. **Courts default to protection**: Privilege doubts typically resolved for privilege holder

### Why "Reflects" Fails (On Appeal)

1. **No evidentiary foundation**: Cannot survive record review
2. **Contradicted by TTAB rulings**: Federal judges already rejected the inference
3. **Internal contradiction**: Employee Handbook defeats confidentiality element
4. **Pattern of concealment**: Systematic non-disclosure of adverse authority

## IX.    CONCLUSION

EWS's 24 documented uses of "reflects" reveal a systematic rhetorical strategy to manufacture privilege claims without proving privilege elements. The word appears most frequently (50% of all uses) in privilege contexts, functioning as linguistic substitute for direct evidence.

The strategy achieved temporary success at the district court level, where the Court adopted EWS's "undoubtedly privileged" characterization without knowledge that two federal TTAB judges had explicitly rejected this exact theory just weeks earlier.

However, the rhetorical house of cards collapses under scrutiny:

- **TTAB judges found**: "reflects" theory insufficient to prove privilege
- **Employee Handbook states**: No privacy expectation in Teams communications
- **EWS's concealment reveals**: They knew their privilege theory wouldn't survive adversarial testing

## EXHBIT B - ANALYSIS: EWS'S SYSTEMATIC USE OF "REFLECT" AS RHETORICAL BRIDGE

- **Double-reflection theory exposes**: Logical absurdity of expanding privilege through chains of inference

The pattern documents EWS's knowing misuse of privilege doctrine to suppress Warren's defensive use of his own work product while simultaneously weaponizing that same work product as the foundation of their affirmative claims.

**Total Instances Documented**: 24
**Privilege-Related**: 12 (50.0%)
**Date Range**: July 2024 (Dkt. 1) - January 2025 (Dkt. 273)
**Pattern Consistency**: Sustained across 18+ months of litigation

**Methodological Note**: This analysis examined every use of "reflect/reflects/reflected/reflecting" in EWS filings where the word related to evidentiary claims rather than procedural matters (e.g., "docket reflects filing"). Only substantive uses were included in the 24-instance count.

# EXHBIT C

# AN ANLAYSIS OF EWS's USE OF "REFLECTS" IN RELATION TO EVIDENCE PRESENTED (OR NOT PRESENTED)

# EXHIBIT C - EWS's "REFLECT" TECHNIQUE: WHAT THEY SAY VS. WHAT EVIDENCE WOULD LOOK LIKE

## I. PRIVILEGE CLAIMS - THE TEAMS CHAT

    a. **WHAT EWS SAYS:** "The chat reflected Johnson's legal advice to me..." (Dkt-17)

    WHAT THEY WOULD SAY IF THEY HAD EVIDENCE: "The chat contains Johnson's legal analysis of the trademark clearance issue, specifically his advice that 'we should file the application because...'" [with citation to specific Chat content]

    WHY THE DIFFERENCE MATTERS: "Reflected" allows EWS to assert privilege without quoting or describing the actual content that supposedly constitutes "legal advice." If the Chat actually contained legal advice, EWS would quote it (with appropriate redactions). Instead, they use "reflected" to avoid showing the Court what's actually there.

    b. **WHAT EWS SAYS:** "reflects Johnson's legal advice to EWS regarding the clearance and filing of" (Dkt-46, instance #21)

    WHAT THEY WOULD SAY IF THEY HAD EVIDENCE: "In the Chat, Johnson advised EWS regarding the legal standards for trademark clearance, stating: '[specific legal analysis]'"

    WHY THE DIFFERENCE MATTERS: Again, "reflects" does the work that quotation should do. EWS wants the conclusion (privilege) without showing the content that would establish privilege.

    c. **WHAT EWS SAYS**: "partial chat entry at the top of the page reflects Johnson's legal advice to EWS"  (Dkt-46, instance #25)

    WHAT THEY WOULD SAY IF THEY HAD EVIDENCE: "The partial chat entry states: '[quoted text]' which constitutes legal advice because it analyzes the legal implications of..."

    WHY THE DIFFERENCE MATTERS: EWS has the Chat. If it "reflects" legal advice, they can quote it. That they use  "reflects" instead of quoting suggests the content doesn't actually establish privilege on its face.

## II. TRADE SECRETS - THE INDEXES

## EXHIBIT C - EWS's "REFLECT" TECHNIQUE: WHAT THEY SAY VS. WHAT EVIDENCE WOULD LOOK LIKE

a. **WHAT EWS SAYS:** "indices often reflect the details of consultations between EWS's attorneys and inventors" (Dkt-28, instance #8)

WHAT THEY WOULD SAY IF THEY HAD EVIDENCE: "Exhibit A, page 3, lines 15-18 of Johnson's index contains the following confidential attorney work product: '[specific content]' which reveals [specific confidential strategy]"

WHY THE DIFFERENCE MATTERS: "Often reflect" is a generalization. If the indexes actually contained trade secrets, EWS would identify which index, which entry, and what trade secret was disclosed. "Reflect" lets them avoid specificity.

**This clearly violates the well established requirement in Intelliclear that states explicitly that claiming information "reflects" trade secrets is categorically insufficient. However in this case the Ninth Circuit went against its own precedent and found for Early Warning that they described the trade secret with specificity. So, has Intelliclear been overruled? OR is that just a consequence of Johnson's pro se status and the judicial's inherent bias against pro se parties?

b. **WHAT EWS SAYS**: "return to EWS all documents containing or reflecting any of EWS's Trade Secrets" (Dkt-1, instance #5)

WHAT THEY WOULD SAY IF THEY HAD EVIDENCE: "return to EWS all documents containing the following identified trade secrets:  (1) [specific trade secret with description], (2) [specific trade secret]..."

WHY THE DIFFERENCE MATTERS: "Reflecting any" is maximally vague. Trade secret law requires specificity. If EWS knew what their trade secrets were, they'd identify them. "Reflecting" avoids that burden.

## III. JOHNSON'S MENTAL STATE

a. **WHAT EWS SAYS:** "This suggestion reflects Johnson's profound misunderstanding of attorney-client privilege" (Dkt-46, instance #18)

**EXHIBIT C - EWS's "REFLECT" TECHNIQUE: WHAT THEY SAY VS. WHAT EVIDENCE WOULD LOOK LIKE**

WHAT THEY WOULD SAY IF ADDRESSING SUBSTANCE: "Johnson's argument fails because [substantive response to the actual legal argument Johnson made]"

WHY THE DIFFERENCE MATTERS: Instead of addressing Johnson's substantive privilege arguments, EWS uses "reflects" to characterize them as incompetence. This is ad hominem through linguistic sleight of hand.

b.   **WHAT EWS SAYS:** "tactical delay further reflects Johnson's bad faith in seeking disqualification" (Dkt-46, instance #19)

WHAT THEY WOULD SAY IF THEY HAD EVIDENCE OF BAD FAITH: "Johnson's motion was filed for an improper purpose, as evidenced by [specific facts showing improper purpose]"

WHY THE DIFFERENCE MATTERS: "Reflects" allows EWS to assert bad faith without proving it. If they had evidence of improper purpose, they'd cite it. "Reflects" substitutes characterization for evidence.

c.    **WHAT EWS SAYS:** "Johnson's notice reflects nothing but defiance, as it merely..." (Dkt-46, instance #29)

WHAT THEY WOULD SAY IF JOHNSON WAS ACTUALLY `DEFIANT:  "Johnson has failed to comply with the Court's Order, as shown by [specific non-compliance]"

WHY THE DIFFERENCE MATTERS: If Johnson were actually defiant, EWS would cite specific non-compliance. Instead, they use "reflects" to characterize compliance they don't like as "defiance."

IV. **P.A.Z.E.'S TTAB FILINGS**

a.   WHAT EWS SAYS: "P.A.Z.E.'s filings in both TTAB Proceedings reflect Johnson's knowledge of EWS's privileged and confidential information" (Dkt-1, instance #3)

WHAT THEY WOULD SAY IF THEY HAD EVIDENCE: "P.A.Z.E.'s opposition filed on [date] at pages [x-y] discloses the following

## EXHIBIT C - EWS's "REFLECT" TECHNIQUE: WHAT THEY SAY VS. WHAT EVIDENCE WOULD LOOK LIKE

confidential information: '[specific info]' which Johnson learned during his employment as shown by [evidence]"

WHY THE DIFFERENCE MATTERS: "Reflect" lets EWS make a sweeping assertion about "both TTAB Proceedings" without identifying which filing, which page, which information, or how it connects to Johnson. If the connection existed, they'd cite it specifically.

b. **WHAT EWS SAYS:** "P.A.Z.E.'s claims against EWS reflect a trademark expertise that Johnson..." (Dkt-28, instance #7)

WHAT THEY WOULD SAY IF THEY HAD EVIDENCE OF JOHNSON'S INVOLVEMENT: "P.A.Z.E.'s counsel of record is Johnson, as shown by [evidence]. Alternatively, Johnson drafted P.A.Z.E.'s filings, as evidenced by [specific facts]."

WHY THE DIFFERENCE MATTERS: "Reflect" allows EWS to insinuate Johnson's involvement without proving it. If they had evidence, he drafted the filings or was counsel, they'd say so directly.

## IV.   THE LINGUISTIC PATTERN

a. **When EWS Has Evidence:**

- They quote it

- They cite to specific documents

- They identify specific pages and lines

- They describe factual content

b. **When EWS Lacks Evidence:**

- They use "reflect" or "reflects"

- They make general assertions

- They avoid specificity

- They characterize rather than describe

## EXHIBIT C - EWS's "REFLECT" TECHNIQUE: WHAT THEY SAY VS. WHAT EVIDENCE WOULD LOOK LIKE

c. THE TELL: If EWS says something "reflects" X, ask yourself:

1. Do they quote or cite the thing that supposedly "reflects" X?

2. Do they explain HOW it reflects X?

3. Do they provide specific evidence supporting the "reflects" assertion?

If the answer to all three is "no," then "reflects" is doing the work that evidence should do.

### V.    LEGAL STANDARD EWS SHOULD MEET:

For Privilege: Must show the communication was made for the purpose of obtaining legal advice (not just that it "reflects" legal advice).

For Trade Secrets: Must identify the specific trade secret with particularity (not just documents "reflecting" trade secrets).

For Bad Faith: Must show specific facts demonstrating improper purpose (not actions that "reflect" bad faith).

For Knowledge/Involvement: Must show actual connection through evidence (not filings that "reflect" knowledge).

### VI.    CONCLUSION:

"Reflect" is EWS's linguistic crutch. It appears precisely where evidence should appear but doesn't. It transforms speculation into assertion, inference into fact, and characterization into proof.

When the Court sees "reflect" or its variations in EWS's filings, it should require EWS to provide the underlying evidence that supposedly creates the reflection. Otherwise, EWS is asking the Court to accept shadows in place of substance.