**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Early Warning Services LLC, | No. CV-24-01587-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| Warren Vurl Johnson, et al., | |
| Defendants. | |

The Court **grants** Early Warning Services LLC's ("EWS") Motion for Leave to File Excess Pages for Motion for Default Judgment (Doc. 391) and thus considers EWS's Lodged Proposed Motion for Default Judgment as to Defendant Warren Johnson (Doc. 392). The Court also considers EWS's Motion for Default Judgment as to Defendant Brandon O'Loughlin (Doc. 231). The Court rules as follows.

## I.     BACKGROUND

On March 19, 2026, the Court ordered: "Defendant Warren Vurl Johnson shall appear in-person before the Honorable Susan M. Brnovich on Wednesday, April 22, 2026, at 10:00 a.m. (Arizona time) in Courtroom 506, 401 West Washington Street, Phoenix, Arizona 85003, to show cause why he should not be adjudged in contempt of this Court's December 2024 Order (Doc. 70) and its September 2025 Order (Doc. 243)." (Doc. 372 at 3.) The Court further ordered: "Defendant Warren Vurl must bring 'all digital electronic devices and media and all electric mail and storage accounts' in accordance with the December 2024 Order (Doc. 70) and the Forensic Imaging Order as discussed in the

September 2025 Order (Doc. 243) to the April 22 hearing." (*Id.*) The Court also stayed the action until the April 22 hearing, ordering "that no further motions may be filed without leave of Court." (*Id.*)

On April 11, 2026, Johnson, without this Court's leave, requested the Court to vacate the April 22 hearing. (Doc. 377.) The Court denied Johnson's request. (Doc. 378.) On April 20, Johnson filed a Notice of Non-Appearance on (Doc. 382) in which he stated he would not be present at the April 22 hearing. Johnson claims he would not appear "due to travel obligations" and "severe financial hardship." (*Id.* at 1–2.) Johnson provided that he could appear virtually, (*id.* at 3), but did not indicate that he planned to abide by this Court's order to turn over his electronic devices in accordance with the December 2024 and September 2025 Orders.

The Court held the April 22 hearing and Johnson did not appear. (Doc. 383.) During the hearing, the Court struck Johnson's Answer (Doc. 58) and noted that this matter will proceed by default judgment. (Doc. 383.)

## II.     DEFAULT JUDGMENT AS A SANCTION

The Court may enter default judgment as a sanction for violations of court orders. *See Transamerica Life Ins. Co. v. Arutyunyan*, 93 F.4th 1136, 1146 (9th Cir. 2024); *see also Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1210 (W.D. Wash. 2014) ("District courts, however, also have the authority to declare a default as a sanction."); *Reidhead v. Meyers*, 490 F. App'x 884, 885 & n.7 (9th Cir. 2012). Though this is an extreme sanction—it is appropriate here. Johnson has willfully, and in bad faith, disobeyed this Court's orders on multiple occasions.

There are "five factors that a district court must consider before . . . declaring a default: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the other party; (4) the public policy favoring the disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990) (citation modified). "[I]t is not required that the district court make explicit findings in order to

show that it has considered these factors." *Yourish v. Cal. Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999) (citation modified).

The Court considered these factors and finds that default judgment is appropriate. This case began over two years ago and has generated over 400 docket entries amounting to thousands of pages of filings. This case's expansiveness is due in large part to Johnson's behavior. This Court has chronicled Johnson's troublesome conduct on numerous occasions. Only a brief survey of the docket is needed to ascertain the nature of Johnson's conduct. At bottom, entry of default is appropriate based on Johnson's longstanding and willful defiance of this Court's orders, particular its December 4, 2024 (Doc. 70), September 24, 2025 (Doc. 243), and March 19, 2026 (Doc. 372) Orders.

The events giving rise to default judgment began on December 4, 2024. At that time, the Court entered a preliminary injunction, ordering Johnson to:

> (1) return all hard copies of documents comprising or containing EWS's Confidential Information or Trade Secrets to EWS, without retaining any physical copies of those documents; (2) preserve, without modification, all digital electronic copies of documents comprising or containing EWS's Confidential Information or Trade Secrets within their position, custody, or control; and (3) provide access to all digital electronic devices and media and all electric mail and storage accounts within their possession, custody, or control—including, without limitation, all computers, laptops, tablets, external hard drives, other external media and storage devices, smartphones, personal email accounts, OneDrive, Dropbox, Box, Google Drive and similar accounts—that may include EWS's Confidential Information or Trade Secrets for forensic imaging of those devices and accounts (including all metadata) by EWS's forensics vendor.

(Doc. 70 at 16–17.) The Court refers to this order as the "PI Order." Johnson appealed the PI Order, but the Ninth Circuit affirmed. *Early Warning Servs., LLC v. Brandon O'Loughlin, P.A.Z.E. LLC*, No. 24-7315, 2025 WL 1895313, at *2 (9th Cir. July 9, 2025). Johnson then filed a Motion for Clarification (Doc. 198), which the Court denied and ordered Johnson to "comply with the terms of the injunction no later than Friday, August 15, 2025." (Doc. 218 at 3). Johnson refused, claiming it would be "legally impossible" for him to comply with the PI Order. (Doc. 222 at 1.) EWS then filed a Motion to hold Defendants in Contempt. (Doc. 225.)

The Court held oral argument on this motion on September 22, 2025, during which, the Court ordered EWS to propose examination protocols and a list of search terms and parameters for forensic imaging. (Doc. 239.) As the Court previously explained, "EWS sent its proposal to Johnson and the Court." (Doc. 243 at 2.) "The Court continued oral argument on September 24, 2025 to discuss EWS's proposals." (*Id.*) "During oral argument, the Court found Johnson in contempt of the PI Order and adopted, and ordered Johnson's compliance with, EWS's proposals (the "Forensic Imaging Order")." (*Id.*) "The Court further ordered that Johnson had forty-eight hours to comply with the Forensic Imaging Order and imposed a $1,000 per-day fine for each day Johnson did not comply." (*Id.*) The Court then issued an Order explaining its contempt finding. (*See id.*) At bottom, Johnson's non-compliance with the PI Order was—and still is—premised on his mistaken belief that the preliminary injunction is invalid. (*Id.* at 3.) As noted, the Ninth Circuit affirmed the preliminary injunction. Additionally, Johnson had the ability to comply with the PI Order; he simply chose not to. Johnson appealed this Court's contempt finding, which is still pending. (Doc. 245.)

In his recent filings, Johnson claims that "default was entered because Johnson—an indigent pro se litigant residing in Lawrence, Kansas, approximately 1,200 miles from this Court—was physically and financially unable to appear at a show cause hearing in Phoenix, Arizona."[1] (Doc. 384 at 2.) Johnson misunderstands the reasons for default and the purpose of the April 22 hearing. Johnson's failure to attend the April 22 reason was one of many examples of his failure to comply with this Court's orders. Additionally, the Court was not interested in securing Johnson's physical presence for its own sake. The Court mandated an in-person hearing so Johnson could bring the materials subject to the PI Order. This is the only time the Court has required Johnson to appear in person. The Court allowed Johnson to appear virtually on every other occasion. Although Johnson

[1] Johnson claimed he was unable to appear "due to travel obligations." (Doc. 382 at 1.) Johnson provided no additional information about these obligations. Johnson also cited "severe financial hardship." (*Id.*) Johnson did not provide any evidence corroborating this assertion. Nonetheless, Johnson cited that the $1,000 per-diem fine contributed to his financial hardship. (*Id.*) Johnson has not paid this fine and this fine is otherwise the direct consequence of Johnson's actions.

indicated that he would be willing to attend the hearing virtually, he did not express any indication that he would comply with the PI Order.  Undoubtably, Johnson wished to appear at the April 22 hearing virtually to explain why he would not comply with the PI Order; Johnson's filings after the April 22 hearing expressly challenge the propriety of the PI Order and this Court's contempt findings.

At this point, it is clear that Johnson will not abide by this Court's orders.  Johnson has ignored the PI Order for over two years.  The Court gave Johnson time to appeal that order, and even after the Ninth Circuit affirmed the PI Order, Johnson still failed to comply.  The Court then gave Johnson an opportunity to comply before holding him in contempt.  The Court also only held Johnson in contempt on September 24, 2025—approximately nine months after the Court issued the PI Order.  Johnson refused this opportunity and has thus been in contempt for approximately nine months.  Johnson still refused to comply even facing a $1,000 per diem penalty.  The Court then ordered Johnson to attend an Order to Show Cause Hearing to discuss his contempt and continued failure to comply with the PI Order.  Johnson did not attend that hearing and continued to ignore the PI Order.  Johnson did so even after the Court expressly warned Johnson that it may strike his Answer and enter default.  (Doc. 372 at 2.)  At no point has Johnson gave any indication that he will comply with the PI Order.

Accordingly, the court enters default judgment against Johnson.

### III.    MOTION FOR DEFAULT JUDGMENT (JOHNSON)

The Court notes that EWS otherwise lodged a Proposed Motion for Default Judgment (Doc. 392).  Although default judgment is appropriate as a sanction, the Court otherwise reviewed the Motion and alternatively finds that it presents a sufficient basis upon which to grant default judgment.

Generally, "[b]efore analyzing the merits of a motion for default judgment, the Court 'has an affirmative duty to look into its jurisdiction over both the subject matter and the parties.'" *Cruz v. N.V. & Sons Builders Inc.*, No. CV-24-02128-PHX-DJH, 2025 WL 2733269, at *1 (D. Ariz. Sept. 25, 2025) (quoting *In re Tuli*, 172 F.3d 707, 712 (9th Cir.

- 5 -

1999)). "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). The Court notes that it has jurisdiction over the subject matter of this case and over Johnson. As to the subject matter, the Complaint (Doc. 1) asserts claims under federal and state law. The Court has original jurisdiction over the federal claims, *see* 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claims, *see* 28 U.S.C. § 1367(a). The Court has personal jurisdiction over Johnson because he lived in Arizona at the beginning of this lawsuit. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile . . . ."); *see also Steel v. United States*, 813 F.2d 1545, 1549 (9th Cir. 1987) ("[O]ne cannot defeat personal jurisdiction by a move away from the state in which the underlying events took place.")

> If jurisdiction is established, the Court considers the "*Eitel* factors":
> (1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). As noted, default judgment is appropriate as a sanction in this case so the Court will not conduct an exhaustive review of the *Eitel* factors. However, the Court notes that it reviewed EWS's Motion for Default Judgment and finds that most of these factors weigh in favor of granting default judgment against Johnson. The Court previously conducted an *Eitel* analysis in this case when it entered default judgment against Defendant P.A.Z.E. (Doc. 208.) Much of that analysis applies with equal force here.

Nonetheless, the Court briefly reviews the Complaint and EWS's Motion, which narrows the claims and relief sought against Johnson. The background of this case has been set forth in the Court's Order granting EWS's requested Preliminary Injunction (Doc.

70).  The Court repurposes that summary.  "EWS is a financial services technology company that operates Zelle®, a digital payment network" and Paze℠, a "digital wallet for ecommerce solutions."  (Doc. 70 at 1–2 (citation modified).)  "Johnson worked as senior intellectual property counsel at EWS between September 2014 and January 2023." (*Id.* at 2.)  "Johnson's primary responsibilities included acquiring, protecting, and enforcing EWS's intellectual property rights" and he was "entrusted . . . with confidential information regarding private, internal business plans, and discussions." (*Id.*)  Johnson expressed his intent to resign and the "began sending EWS's documents from his work email to his personal email, including a large volume of sensitive and confidential information and materials." (*Id.*)  Johnson was fired for these activities.  (*Id.* at 3.)

Johnson sued EWS for wrongful termination and that case was settled.  (*Id.*)  In a corresponding settlement agreement, "Johnson affirmed that he returned all of EWS's property, documents, and/or any confidential information in his possession or control and agreed to maintain the confidentiality of all of EWS's privileged, trade secret, proprietary or confidential information." (*Id.* (citation modified).)  "Johnson also agreed to refrain from disparaging EWS in any public forum." (*Id.*)  This suit is predicated on the claim accusing "Johnson of having engaged in acts that violate the Settlement Agreement, company policy, and federal and state trade secrets law." (*Id.*)  In short, EWS alleges that Johnson leaked "list of domain names EWS planned to acquire" and participated in "P.A.Z.E., LLC ("P.A.Z.E."), which EWS describes as a sham gripe website at a domain name containing EWS's PAZE mark, with content directed at disparaging EWS and its business including the Zelle® and Paze℠ services." (*Id.* (citation modified).)

EWS sued Johnson for: (1) misappropriation of trade secrets under the Defend Trade Secrets Act of 2016 ("DTSA") (18 U.S.C. § 1836); (2) misappropriation of trade secrets under the Arizona Uniform Trade Secrets Act  (A.R.S. § 44-401 *et seq.*); (3) breach of fiduciary duty; (4) unjust enrichment; (5) declaration of noninfringement of an unregistered mark under the Federal Declaratory Judgment Act, the Lanham Act, and Arizona common law (28 U.S.C. § 2201(a) and 15 U.S.C. § 1125(a)); and (6) breach of

contract.  (Doc. 1 at 18–27.)  In its Motion for Default Judgment, EWS waives its unjust competition claim[2] and its request for declaration of noninfringement.  (Doc. 392 at 12–13.)

The Court has already evaluated the Complaint as to the misappropriation claims and found that EWS "has shown that it will likely enjoy success on the merits of its trade secrets misappropriation claims against" Johnson.  (Doc. 70 at 12.)  EWS only seeks monetary damages predicated on the misappropriation claims.  The Court finds that the Complaint also states breach of contract and breach of fiduciary claims—both of which are predicated in large part on the same behavior giving rise to the trade secret misappropriation claim.

Accordingly, the Court proceeds to discuss damages.  "[A]llegations pertaining to damages are not taken as true when considering a motion for default judgment."  *Joe Hand Promotions Inc. v. La Casa De Las Flores Gourmet Kitchen LLC*, No. CV-24-00991-PHX-MTL, 2025 WL 1580967, at *4 (D. Ariz. June 4, 2025).  "Nonetheless, a district court has wide latitude in determining the amount of damages to award upon default judgment."  *Id.* (citation modified).

The Court reviewed EWS's requested relief and finds that it is reasonable under the circumstances.  In short, EWS's requests monetary relief in form of Johnson paying any monetary damages left unsatisfied by P.A.Z.E. in accordance with this Court's Order granting default judgment as to P.A.Z.E.  (Doc. 208 at 9; Doc. 392-1 at 6.)  The Court already found these damages reasonable as to P.A.Z.E.  (Doc. 208 at 9).  Given that Johnson is now liable for the same conduct giving rise to those damages, those damages are similarly reasonable as to Johnson.  EWS also seeks permanent injunctive relief that functionally mirrors what the Court ordered in the PI Order.  (Doc. 392-1 at 5.)  Because EWS has succeeded on the merits, such relief is appropriate.  *See Williams v. Lobel Fin. Corp.*, 673 F. Supp. 3d 1101, 1105–06 (C.D. Cal. 2023) ("The standard for a permanent

---

[2]  The Motion provides that EWS waives its claim for "unfair competition" but cites to the paragraphs in the Complaint relating to unjust enrichment. (Doc. 392 at 13.) Nevertheless, EWS, in its Proposed Order, confirms it waives its unjust enrichment claim. (Doc. 392-1 at 4.)

injunction is essentially the same as for a preliminary injunction, except that a litigant must actually succeed on the merits."). The Court, in its discretion, denies EWS's request for the attorneys' fees associated with and incurred in connection with the Motion. However, the Court notes that Johnson is still obligated to pay the previously granted attorneys' fees in the amount of $5,000. (Doc. 183.)

In light of this Order, the Court also waives the $1,000 per-diem fine Johnson has been incurring as a result of this Court's September 24, 2025 Contempt Order. (Doc. 243.) That sanction was solely intended to motivate Johnson to comply with the PI Order.

## IV. MOTION FOR DEFAULT JUDGMENT (O'LOUGHLIN)

The Court now considers EWS Motion for Default Judgment Against Defendant O'Loughlin. (Doc. 231.) O'Loughlin is an acquaintance of Johnson and the Complaint alleges that O'Loughlin formed P.A.Z.E. (Doc. 70 at 3.) O'Loughlin's alleged involvement in this matter was detailed by this Court in the PI Order. (Doc. 70). EWS asserts the following claims against O'Loughlin: (1) misappropriation of trade secrets under the DTSA; (2) misappropriation of trade secrets under the Arizona Uniform Trade Secrets Act; (3) cybersquatting under the Anticybersquatting Consumer Protection Act ("ACPA") (15 U.S.C. § 1125(d)); (4) unjust enrichment; (5) declaration of noninfringement of an unregistered mark under the Federal Declaratory Judgment Act, the Lanham Act, and Arizona common law (28 U.S.C. § 2201(a) and 15 U.S.C. § 1125(a)). O'Loughlin has not made an appearance in this matter since October 31, 2024, when he filed a responsive brief in connection with his Motion to Dismiss (Doc. 45; Doc, 50.) That Motion was denied on May 12, 2025. (Doc. 141.) The Clerk of Court entered Default on June 16, 2025. (Doc. 171.)

Default judgment against O'Loughlin is appropriate. An exhaustive analysis is unnecessary because default judgment is appropriate against O'Loughlin for nearly the same reasons default judgment was appropriate against P.A.Z.E. and Johnson. In short, the Court has subject matter jurisdiction over this dispute for the reasons provided. The Court has personal jurisdiction over O'Loughlin because he is an Arizona resident. The

*Eitel* factors favor default judgment for the same reasons they favor default judgment as to P.A.Z.E. and Johnson; O'Loughlin and Johnson are alleged to have acted cooperatively in regard to the misappropriation of trade secrets claims.  The only meaningful difference is there is an ACPA claim asserted against O'Loughlin.  However, this claim is not worth special consideration because EWS does not seek any relief specifically connected to this claim.  Instead, EWS seeks essentially the same relief it seeks as to Johnson.  Namely, EWS seeks: (1) monetary damages premised on the misappropriation claims; (2) permanent injunctive relief mirroring the PI Order; and (3) certain costs and fees.  For the same reasons as to P.A.Z.E. and Johnson, the Court will grant this relief apart from the requests for attorneys' fees and the costs associated with serving O'Loughlin.

## V.    REMAINING MOTIONS

Even after deciding the default judgment issues as to O'Loughlin and Johnson there are 26 pending motions which fall into two categories: (1) EWS's motions to seal documents filed by Johnson that contained privileged information; and (2) motions filed by EWS or Johnson that are rendered moot based on this Order.  The Court grants the first category of motions and dismisses the second category of motions as moot.

## VI.   CONCLUSION

**IT IS ORDERED granting** default judgment against Defendant Johnson and O'Loughlin and thus **granting** Doc. 231, Doc. 391, and Doc. 392.

**IT IS THUS ORDERED**:

1. Defendants Johnson and O'Loughlin and their agents, employees, attorneys, successors, assigns, affiliates, and joint venturers, and any person(s) in active concert or participation with him, or any person(s) acting for, with, by, through or under them, is permanently enjoined from:

    a. directly or indirectly acquiring, possessing, using, disclosing, or disseminating any of Plaintiff's Trade Secrets or Plaintiff's privileged, confidential, or proprietary information, including but not limited to the contents of Plaintiff's intellectual property indices and the Teams Chat; and

b. registering, acquiring, renewing, maintaining, or using any domain names containing any of Plaintiff's trademarks or service marks, including but not limited to the PAZE mark or confusingly similar versions of it.

2. Within 30 days of the date of this Order, Defendants Johnson and O'Loughlin shall remove from public view all documents containing any of Plaintiff's Trade Secrets or privileged or confidential information within Defendants Johnson's and O'Loughlin's possession, custody, or control.  Based on the evidence of record, this Court finds that Defendants Johnson and O'Loughlin have sufficient control of P.A.Z.E. to cause that entity to remove from public view all documents containing any of Plaintiff's Trade Secrets or privileged or confidential information that P.A.Z.E. has posted online or elsewhere, including archived copies of websites and social media pages.

3. Within 30 days of the date of this Order, Defendant Johnson shall, first, return to Plaintiff all hard copies and electronic copies of (a) documents that Johnson created during and within the scope of his employment by EWS and (b) documents that Johnson downloaded from or uploaded to EWS's servers (collectively, "EWS's Documents") within Mr. Johnson's possession, custody, or control, then permanently delete all electronic copies of EWS's Documents on all digital electronic devices and media and all electric mail and storage accounts within Mr. Johnson's possession, custody, or control.

4. Within 30 days of the date of this Order, Defendant Johnson shall file under seal with the Court and serve on Plaintiff's counsel the unredacted contents of each disclosure to the persons or entities described in Mr. Johnson's Consolidated Emergency Motion for Leave to File Motion for Appointment of Neutral Forensic Examiner and Court Reporter (Doc. 296).

5. Within 30 days of the date of this Order, Defendant Johnson shall pay to Plaintiff the previously granted attorneys' fees (Doc. 183) associated with the First Motion for Sanction (Doc. 133) in the amount of $5,000.

6.  Within 30 days of the date of this Order, Defendant Johnson shall file with the Court and serve on Plaintiff's counsel a written report under oath setting forth in detail the manner in which he has complied with Paragraphs (5) through (8) of this Order. Such written report shall not include or describe any of Plaintiff's Trade Secrets or privileged or confidential information.

7.  If P.A.Z.E. does not satisfy this Court's judgment against it (Doc. 208) within 30 days of the date of this Order, Defendants Johnson and/or O'Loughlin shall pay to Plaintiff an award in the amount of $68,850.60 within 60 days of the date of this Order. Such award shall consist of (i) Plaintiff's actual damages of $22,950.20 and (ii) exemplary damages of $45,900.40, owing to Defendants Johnson's and O'Loughlin's acts of willful and malicious misappropriation of Plaintiff's Trade Secrets; provided, however, that Plaintiff shall not be entitled to receive a double recovery of this $68,850.60 award from P.A.Z.E., Johnson, and O'Loughlin.

8.  If P.A.Z.E. does not satisfy this Court's judgment against it (Doc. 208) within 30 days of the date of this Order, Defendants Johnson and O'Loughlin also shall pay to Plaintiff interest on the foregoing award of $68,850.60 accruing between the date of this Order and Defendants Johnson's and O'Loughlin's payment of that amount to Plaintiff, with the rate of interest being calculated by reference to the weekly average one-year constant maturity (nominal) Treasury yield, as published by the Federal Reserve System.

**IT IS FURTHER ORDERED dismissing** the following Motions as moot: Doc. 212; Doc. 241; Doc. 254; Doc. 258; Doc. 272; Doc. 275; Doc. 284; Doc. 287; Doc. 296; Doc. 299; Doc. 305; Doc. 308; Doc. 329; Doc. 337; Doc. 339; Doc. 384; Doc. 385; Doc. 386; and Doc. 387.

**IT IS FURTHER ORDERED granting** the following Motions: Doc. 345; Doc. 353; Doc. 364; Doc. 367; Doc. 379; Doc. 388; and Doc. 396.

**IT IS THUS ORDERED** directing the Clerk of Court to seal the following: Doc. 308; Doc. 309; Doc. 310; Doc. 316; Doc. 320; Doc. 362; Doc. 366; Doc. 377; Doc. 384;

and Doc. 385.

**IT IS FURTHER ORDERED** waiving the $1,000 per-diem fine imposed by the September 24, 2025 Contempt Order (Doc. 243). Johnson is released from any obligation to pay this fine.

**IT IS FURTHER ORDERED** directing the Clerk of Court to accordingly enter judgment in favor of EWS and close this case. The Court retains jurisdiction of this matter for the purpose of making any further orders necessary or proper for the enforcement of this Order and Judgment and the punishment of any violations thereof.

Dated this 16th day of June, 2026.

Honorable Susan M. Brnovich
United States District Judge

- 13 -